**FOLEY & LARDNER LLP**
Jeffrey R. Blease (CA Bar. No. 134933)
Tel: (617) 226-3155; jblease@foley.com
Thomas F. Carlucci (CA Bar No. 135767)
Tel: (415) 984-9824; tcarlucci@foley.com
Shane J. Moses (CA Bar No. 250533)
Tel: (415) 438-6404; smoses@foley.com
Emil P. Khatchatourian (CA Bar No. 265290)
Tel: (312) 832-5156; ekhatchatourian@foley.com
Ann Marie Uetz (pro hac vice application pending)
Tel: (313) 234-7114; auetz@foley.com
Matthew D. Lee (pro hac vice application pending)
Tel: (608) 258-4203; mdlee@foley.com
555 California Street, Suite 1700
San Francisco, CA 94104-1520

*Proposed Counsel for the Debtor
and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br>Debtor. | Case No. 23-40523<br><br>Chapter 11<br><br>**DEBTOR'S MOTION FOR AN ORDER AUTHORIZING AND APPROVING SPECIAL NOTICING AND CONFIDENTIALITY PROCEDURES**<br><br>Judge: Hon. William J. Lafferty<br>Date: TBD<br>Time: TBD<br>Place: United States Bankruptcy Court<br>1300 Clay Street<br>Courtroom 220<br>Oakland, CA 94612 |

-1-

The Roman Catholic Bishop of Oakland, a California corporation sole, and the debtor and debtor in possession (the "Debtor" or "RCBO") in the above-captioned chapter 11 bankruptcy case (the "Chapter 11 Case" or the "Bankruptcy Case"), hereby files this motion (the "Notice and Confidentiality Motion"), pursuant to section 107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's Procedures for Filing Redacted or Sealed Confidential or Highly Sensitive Documents, effective February 7, 2022, for entry of an order (i) requiring all schedules, statements of financial affairs, creditor matrices, motions, pleadings, and any other entry into the record to be filed under seal or redacted to the extent they contain (a) non-public names of abuse claimants, potential abuse claimants, or those accused of committing or covering up abuse, (b) the private contact information of the Debtor's current or former employees, or (c) personally identifying information of workers' compensation claimants or minors, and (ii) limiting notice to a specific list of recipients on all but certain discrete matters identified herein.

By a separate application, the Debtor is requesting an order shortening time for notice and setting a hearing on this matter and other first day motions on an expedited basis.

This Notice and Confidentiality Motion is based on the Memorandum of Points and Authorities set forth herein, the notice of hearing on first day motions filed by the Debtor, the *Declaration of Charles Moore, Managing Director of Alvarez & Marsal North America, LLC, Proposed Restructuring Advisor to the Roman Catholic Bishop of Oakland, in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and incorporated herein by reference and upon such oral and documentary evidence as may be presented at the hearing on the Notice and Confidentiality Motion.

The Debtor's proposed forms order granting the relief requested herein on an interim basis (the "Interim Order") and a final basis (the "Final Order") are attached hereto as **Exhibit A** and **Exhibit B**.

///

**Table of Contents**

I. INTRODUCTION ..................................................................................................................1

II. JURISDICTION ...................................................................................................................2

III. BACKGROUND FACTS .....................................................................................................2

IV. RELIEF REQUESTED .........................................................................................................7

V. BASIS FOR RELIEF.............................................................................................................7

VI. RESERVATION OF RIGHTS ............................................................................................14

VII. NOTICE...............................................................................................................................14

VIII. CONCLUSION ...................................................................................................................15

# Table of Authorities

Page(s)

Cases

*In re Orion Pictures Corp.*,
   21 F.3d 24 (2d Cir. 1994) ................................................................................................... 8
*Starbucks Corp. v. Superior Court*,
   (2008) 168 Cal.App.4th 1436 ............................................................................................ 9

Statutes

11 U.S.C. § 107 ............................................................................................................................ 11
11 U.S.C. § 107(a) ......................................................................................................................... 8
11 U.S.C. § 107(b) ..................................................................................................................... 3, 8
11 U.S.C. § 107(b)(2) .................................................................................................................... 8
11 U.S.C. § 107(c) ......................................................................................................................... 9
11 U.S.C. § 341 ............................................................................................................................ 14
11 U.S.C. § 365 ............................................................................................................................ 16
11 U.S.C. § 1102 .................................................................................................................... 11, 13
11 U.S.C. §§ 1107(a) and 1108 ..................................................................................................... 3
28 U.S.C. § 157(b) ......................................................................................................................... 2
28 U.S.C. §§ 157 and 1334 ............................................................................................................ 2
28 U.S.C. §§ 1408 and 1409 .......................................................................................................... 2
42 U.S.C. §§ 2000bb-2000bb-4 ................................................................................................... 16
Cal. Const. Art. I, § 1 ..................................................................................................................... 9
California Corporations Code §§ 10000-10015 .......................................................................... 16

Rules

Fed. R. Bankr. P. 2002 and 9018 ................................................................................. 2, 14, 15, 17
Fed. R. Bankr P. 2002(i) .............................................................................................................. 13
Fed. R. Bankr. P. 6003 ................................................................................................................. 16
Fed. R. Bankr. P. 6003(b) ............................................................................................................ 16
Fed. R. Bankr. P. 9018 .................................................................................................................. 9
Fed. R. Bankr. P. 9037(c) .............................................................................................................. 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

1. The Debtor is committed to transparency and openness during the pendency of its Bankruptcy Case. It is important to the Debtor, however, that the individuals who have filed lawsuits or otherwise asserted claims against the Debtor arising out of alleged sexual abuse by clergy or other Debtor-affiliated persons continue to enjoy the anonymity and privacy afforded them under California law. That should not change for the individual abuse claimants, or for those they have accused of wrongdoing, simply because the Debtor has filed for bankruptcy. The Debtor therefore requests that the Bankruptcy Court enter a standing order directing any document containing the identity or personal identifying information of any abuse claimant, potential abuse claimant, or accused individual or entity to be filed under seal or redacted, as necessary. The Debtor further requests that this sealing or redaction requirement be extended to all parties-in-interest who need to file documents containing this specific, sensitive information.

2. The Debtor further requests that all parties be directed to seal or redact any documents containing the personal contact information of the Debtor's current or former employees. Many of those individuals will be listed as creditors for the simple reason that they are owed wages or benefits in the ordinary course of the Debtor's business as of the Petition Date. It makes sense to keep their personal contact information non-public to avoid the risk of identity theft or harassment. Additionally, the Debtor requests that all documents containing the identities of minor persons or containing personally identifying information of workers' compensation claimants be required to be redacted or sealed.

3. This Notice and Confidentiality Motion also seeks to streamline the provision of notice to parties-in-interest in this Chapter 11 Case. There are approximately 1,800 known parties-in-interest in this case. The Debtor expects this number will increase over time. Serving every filing in this Chapter 11 Case on every party-in-interest will be burdensome to everyone – to the Debtor, because of the expense and time required to complete service, and to the recipients, who will have no stake or interest in most of the documents filed. For example, neither abuse claimants, the Debtor's current or former employees, nor

the vast majority of parties-in-interest need to be inundated with the hundreds if not thousands of filings that can be expected in this case. The Debtor proposes to designate a small but central group of parties who will receive all filings in the case, and to limit all-party service to certain key case milestones such as, for example, notice of the section 341 meeting of creditors and notice of the proof of claim deadline. This has been done in the bankruptcies of other Catholic dioceses. It will reduce the estate's administrative burden and enable the Debtor to more efficiently provide parties-in-interest with notice in this Bankruptcy Case.

## II.
## JURISDICTION

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order No. 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules"). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The legal bases for the relief requested herein include Rules 2002 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), section 107(b) of the Bankruptcy Code, and this Court's *Procedures for Filing Redacted or Sealed Confidential or Highly Sensitive Documents, effective February 7, 2022*.

## III.
## BACKGROUND FACTS

6. On the date of this Motion (the "Petition Date"), the Debtor caused its attorneys to file a voluntary petition for chapter 11 bankruptcy relief under Bankruptcy Code. The Debtor continues to operate its ministry and manage its properties as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in this Chapter 11 Case.

7. The Debtor is a corporation sole organized under the laws of the State of California. The Debtor conducts its civil affairs under the laws of the State of California and the United States of America and in accordance with the Code of Canon Law ("Canon Law"), the ecclesiastical law of the Roman Catholic Church (the "Catholic Church").

8. The Diocese of Oakland was established by the Holy See on January 13, 1962 as the spiritual home of the Catholic Church in Northern California. The diocese spans roughly 1,467 square miles and encompasses two counties, Alameda and Contra Costa. The diocese is situated along the eastern shore of the San Francisco Bay.

9. The Debtor estimates that it serves nearly 550,000 resident Catholics and assists approximately 260,000 people through its ministry and charitable services. The Debtor has been under the leadership of the incumbent bishop, Most Reverend Michael C. Barber, SJ ("Bishop Barber" or the "Bishop"), since his appointment on May 25, 2013. The diocese includes 82 parishes and missions and is home to 159 diocesan priests, 160 religious priests, 35 extern priests and 118 permanent deacons.

10. The Debtor provides resources, programming, spiritual leadership, and other key services and support to local Catholics and the East Bay community at large, including substantial support for the poor and for minority communities. The ministry of the Debtor is therefore critical to not only the faithful within the diocese, but also to the public-at-large, including non-Catholics.

11. To carry out its Catholic mission, the Debtor works closely with its 82 parish churches (the "Churches"). The Churches play a central role in the lives of Catholics living within the diocese by administering key aspects of the Catholic Faith, including baptism, education, communion, Mass, confirmation, marriage, and bereavement, including last rites, funeral services and grief support. In this way, the Churches provide the critical connection between the Debtor and the faithful from the beginning of life to the end.

12. None of the Churches within the diocese are separately incorporated entities under California law. To the extent the Bishop holds goods belonging to a parish—including, for example, real and personal property—he does so in trust for the benefit of the applicable Church.

13. Through common missions, the Debtor is affiliated with certain entities that are separately incorporated under California law and which are not debtors in this Bankruptcy Case (each such affiliated incorporated entity a "<u>Non-Debtor Catholic Entity</u>," and collectively, the "<u>Non-Debtor Catholic Entities</u>"). The Debtor provides administrative services (centralized human resources, accounting, and financial management) and programmatic support services to certain Non-Debtor Catholic Entities in support of their religious, educational and charitable missions. Each Non-Debtor Catholic Entity operates independently and accounts for its operations separately. None of the Non-Debtor Catholic Entities have sought relief under chapter 11 or are debtors in this Bankruptcy Case.

14. Among the affiliates of the Debtor are the Non-Debtor Catholic Entities. This includes, without limitation, the Roman Catholic Welfare Corporation of Oakland, a California nonprofit religious corporation ("<u>RCWC</u>"), and the Roman Catholic Cemeteries of the Diocese of Oakland, a California corporation ("<u>RCC</u>"). RCWC oversees 32 elementary schools and two high schools. RCC operates and administers the six diocesan cemeteries, five diocesan mortuaries, two mausoleums, and one crematory. RCC is also the Debtor's secured lender.

15. Under Canon Law, a diocese is "a portion of the people of God which is entrusted to a bishop for him to shepherd with the cooperation of the presbyterium…." (c. 369). As such, a diocese is inherently *territorial*, comprised of a specific geographic area and the faithful within it. A diocese conducts its civil affairs for the practice of the Catholic Church within that geographic area and for the faithful within the area.

16. Also under Canon Law, every diocese is divided into distinct parts, known as parishes, that are ecclesiastical entities consisting of communities of the faithful whose pastoral care is entrusted to a pastor (i.e., a priest) whom the bishop appoints to serve the parish to which he is assigned. (cc. 374 §1, 515 §1.)

17. Each diocese, and each parish within a diocese, is a separate public juridic person. (cc. 573, 515 §3.) The administration of property belonging to a juridic person pertains to its administrator, such as the diocesan bishop over the property of a diocese, and the priest over the property of a parish.

(cc. 393, 532.) Each such administrator is obligated to acquire, hold, administer, and/or alienate such property in accordance with Canon Law (c. 1257), which requires that property held by any juridic person—diocese, parish, or otherwise—must be used for the purposes of the Catholic Church. The bishop is responsible for administering the property belonging to the diocese, and each pastor is responsible for being the exclusive administrator of the property belonging to his parish. Similarly, the pastoral care of the faithful across the entire diocese is entrusted to the bishop, whereas the pastoral care of the faithful within each particular parish is entrusted to the pastor for the parish.

18. Addressing the needs of victim-survivors of clergy sexual abuse, and the protection of children, have long been priorities of the Debtor. More than a decade before the U.S. Conference of Catholic Bishops adopted in the Spring of 2002 the *Charter for the Protection of Children and Young People* (the "Charter"), the Debtor established a "Sensitive Issues Committee" to assist the bishop in reviewing and handling allegations of sexual abuse by persons acting in the name of the Catholic Church.

19. Following the Charter's adoption, the Sensitive Issues Committee was renamed the Diocesan Review Board in 2003 and again renamed the Minor Diocesan Review Board in 2022 (the "MDRB"). The MDRB actively functions today. Its five lay members (including a victim-survivor of clergy sexual abuse and business consultant, a former district attorney, a social worker, a retired educational administrator, and a lay pastoral associate) and three clergy members meet at least quarterly to assess allegations and make recommendations on the handling of those allegations of sexual abuse of children by clergy. This consultative body is critical to the Debtor's work to address crimes against children. The MDRB works with the bishop to analyze and properly respond to claims so credibility can be determined and acted upon in the best interest of the victim-survivor.

20. In 2004, the Debtor began developing specific "safe environment" trainings for all adults – whether volunteer or employed – who serve in the diocese. The Debtor gives rigorous attention to training materials and teaches adult parish and school leaders to facilitate the training program. Processes have been put in place to refer anyone with claims regarding clergy sexual abuse to law enforcement and Debtor representatives for assistance.

21. The Office of Safe Environment has continually improved the content of its trainings and, when online platforms became available, former Bishop John S. Cummins approved their use. In 2016, Bishop Barber moved the training program to an online synchronous platform provided by The National Catholic Risk Retention Group known as Virtus, an international leader in abuse awareness training. The Debtor now has local safe environment coordinators in each of the Churches. There are local safe environment coordinators in every Catholic school within the diocese.

22. In the State of California, there have been two "open window" periods allowing individuals to bring claims under civil law for childhood sexual abuse which otherwise were barred because the statute of limitations (prescription) had expired. In 2002, the California Legislature permitted certain expired claims of childhood sexual abuse not only against the perpetrators but also against third-party defendants (like the Debtor) for a one-year period starting January 1, 2003 (the "First Legislation"). The Debtor paid approximately $56,000,000 to 52 plaintiffs in settlement of claims brought in the wake of the First Legislation.

23. On October 13, 2019, Governor Gavin Newsom signed into law California Assembly Bill No. 218 ("AB 218"). AB 218 revived the statute of limitations for individuals to file civil lawsuits for childhood sexual abuse. This allowed certain individuals to bring what had been time-barred claims against individuals and entities for such claims through and including December 31, 2022. As of May 4, 2023, there were approximately 332 separate, active lawsuits or mediation demands pending against the Debtor filed by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor.[1]

24. In this Chapter 11 Case, the Debtor will pursue a plan of reorganization that will (a) ensure a fair and equitable outcome for victim-survivors of sexual abuse, and (b) allow the Debtor to stabilize its finances, continue its mission to serve the needs of the faithful within the diocese, and continue to provide services to underserved people and groups in the East Bay.

---

[1] It is the Debtor's understanding that there is a backlog associated with the processing of these cases in the Clerk's Office for Alameda County, and it is possible that other timely filed claims will be processed after the filing of this case of which the Debtor is not currently aware.

25. Additional information regarding the Debtor, its mission, ministries, and operations, and the events and circumstances preceding the Petition Date is set forth in the First Day Declaration.

## IV.
## RELIEF REQUESTED

26. By this Notice and Confidentiality Motion, the Debtor requests that the Court enter an order requiring (i) all schedules, statements of financial affairs, creditor matrix, motions, pleadings, and any other entry into the record under seal to the extent it contains (a) non-public names of abuse claimants, potential abuse claimants, or those accused of committing or covering up abuse, (b) the personal contact information of any current or former employee of the Debtor, or (c) personally identifying information of workers' compensation claimants or minors, and (ii) limiting notice of filings to a specific list of recipients for all but a few discrete matters identified herein.

## V.
## BASIS FOR RELIEF

A. **The Redaction of Information Identifying Abuse Claimants Protects Those Individuals, Comports With California Law, And Promotes Efficiency.**

27. Bankruptcy courts have the power to issue orders that will protect persons from potential harm that may result from the disclosure of confidential information. *See* 11 U.S.C. § 107(b)(2) ("On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title."). Although section 107(b) of the Bankruptcy Code is an exception to the general rule of open disclosure, applying it to this Bankruptcy Case is appropriate. *See In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) ("Congress, itself, has recognized that under compelling or extraordinary circumstances, an exception to the general policy of public access is necessary . . . . Section 107(b) of the Bankruptcy Code, a statutory exception to the broad principle of § 107(a), [ ] responds to this need.").

28. Section 107(c) of the Bankruptcy Code provides that the court "for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury . . . [a]ny means of identification . . . contained in a paper filed, or to be filed, in a case under" the Bankruptcy Code.

29. Further, on motion or by its own initiative, "the court may make any order which justice requires . . . to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code. . . ." FED. R. BANKR. P. 9018. And the "court may order that a filing be made under seal without redaction." FED. R. BANKR. P. 9037(c).

30. The Debtor requests permission to file under seal or redact any document containing the names of abuse claimants, potential abuse claimants, or accused priests or other defendants named in the Abuse Lawsuits.

31. The California Constitution states that a person's inalienable rights includes "pursuing and obtaining . . . privacy." Cal. Const. Art. I, § 1. To that end, California courts allow the use of pseudonyms where a "legitimate privacy concern" exists. *See Starbucks Corp. v. Superior Court* (2008) 168 Cal.App.4th 1436, 1452. This applies to plaintiffs in sexual abuse cases, including those in each and every one of the Abuse Lawsuits.

32. Bankruptcy filings are public records and are easily accessible. Abuse claimants generally prefer to not have their names associated with making claims of abuse. For example, virtually all of the Abuse Lawsuits are filed in the name of a Doe plaintiff, indicating that the plaintiffs in those lawsuits designated their identities as confidential and wanted them to remain that way. Additionally, due to the nature of the allegations in the Abuse Lawsuits, the redaction of the identities and identifying information of both the claimants and the accused from all documents filed in this Bankruptcy Case will aid in protecting those persons against the disclosure of a "scandalous" and deeply personal matter in publicly-filed court documents.

33. The Debtor makes this request out of respect for the confidentiality of the claimants, and in light of the unusually public nature of bankruptcy proceedings. The relief requested in this Motion is in

the best interests of its estate and its creditors and will not prejudice the rights of any party-in-interest. As noted in the Debtor's application to employ a noticing agent, the noticing agent will post copies of all pleadings filed by any party on a web page to allow free public access to all pleadings on the docket in this matter.

34. Documents that may be subject to sealing or redaction include the creditor matrix, the Debtor's schedules of assets and liabilities, and any pleadings or other documents, including affidavits of service, filed in this chapter 11 case containing information that might identify abuse claimants, potential abuse claimants, or accused priests or other defendants named in the Abuse Lawsuits.

35. After the filing of any sealed or redacted document, the Debtor will promptly serve an unsealed or unredacted version of the document on the Bankruptcy Court, the Office of the U.S. Trustee for Region 17, and counsel for any statutory creditors' committee appointed in this Bankruptcy Case under section 1102 of the Bankruptcy Code (the "<u>Distribution Parties</u>"). The Distribution Parties shall keep strictly confidential all copies of unsealed or unredacted documents provided by the Debtor.

36. Additionally, the Debtor is required to list its current and former employees in the creditor matrix, among other submissions. In order to protect against the risk of identity theft and the disclosure of personal identifying information of its employees and former employees, the Debtor also requests authority to redact the home addresses and other personal contact information for these individuals.

37. The Debtor respectfully submits that it is appropriate under section 107 of the Bankruptcy Code to authorize the Debtor to redact from any paper filed with the Court in this chapter 11 case personal contact information of the Debtor's employees. That information could be used to perpetrate identity theft or to harass those individuals. The threat of identity theft or harassment is of particular importance in these proceedings, which the Debtor expects to garner substantial media publicity. The Debtor proposes to provide an unredacted version of the creditor matrix and any related schedules and statements of financial affairs to the Distribution Parties.

38. Courts routinely grant similar relief in comparable chapter 11 cases. *See, e.g., In re Diocese of Rochester*, Case No. 19-20905 (Bankr. W.D.N.Y. Sept. 13, 2019) [ECF No. 29] (authorizing filing of

portions of schedules and creditor matrix under seal); *In re Charming Charlie Holdings Inc.*, Case No. 19-11534 (Bankr. D. Del. July 12, 2019), [ECF No. 74] (granting authority to redact "personal information of [debtors'] employees and former employees listed on the Creditor Matrix," subject to providing unredacted versions upon reasonable request); *In re Cloud Peak Energy Inc.*, Case No. 19-11047 (Bankr. D. Del. May 14, 2019), [ECF No. 97] (debtors "authorized to redact the address information of employees from any list of creditors"); *In re CGG Holdings (U.S) Inc.*, No. 17-11637 (MG) (Bankr. S.D.N.Y. June 14, 2017), [ECF No. 306] (authorizing debtors to redact personal information of current and former employees from statements and schedules); *In re Soundview Elite LTD.*, No. 13-13098 (REG) (Bankr. S.D.N.Y. 2017) [ECF No. 404] (authorizing trustee to identify investors by descriptive identifiers only and redact investor addresses from schedules and statements per Cayman Islands privacy laws).

39. In recognition of the sensitivity of disclosure related to these individuals, the Debtor respectfully submits that the Court has the authority to approve the sealing or redaction of any document containing their personal contact information.

40. There are two other groups of individuals who should be subject to a global sealing or redaction order. One is individuals who have submitted workers' compensation claims in connection with the Debtor's workers' compensation policies. Documents related to those claims may contain personally identifying information (PII), the disclosure of which is prohibited by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Any such PII should be redacted or sealed from public view. The other is individuals under the age of 18. There is no compelling public interest to have the identities of minors made public in these proceedings. All PII relating to minors should likewise be redacted or sealed.

41. It will be more efficient to enter a single order allowing these limited, specific categories of information to be sealed or redacted, one that is applicable for the duration of the case, than to require parties-in-interest to move to seal or redact every time they need to file a document containing this information.

42. The Debtor requests that the order approving these confidentiality and sealing procedures be a standing order that will remain in force for the duration of the Bankruptcy Case and that shall be

followed by all parties-in-interest. The Debtor further requests that it and all other parties-in-interest be permitted to file the confidential information described herein under seal or redacted, as necessary, without further order of the Bankruptcy Court.

B. **The Proposed Limited Notice Procedures Will Reduce Administrative Expenses And Provide Adequate Due Process.**

43. Bankruptcy Rule 2002(m) provides that the court may from time to time enter orders designating the manner in which notices may be sent, and the entities to whom notices may be sent. Bankruptcy Rule 2002(i) provides that:

> . . . the Court may order that notices required under subdivision (a)(2), (3) and (6) of this rule to be transmitted to the United States trustee and be mailed only to the committees elected under § 705 or appointed under § 1102 of the Code or to their authorized agents and to the creditors and equity security holders who serve on the trustee or debtor in possession and file a request that all notices be mailed to them. A committee appointed under § 1114 shall receive copies of all notices required by subdivisions (a)(1), (a)(5), (b), (f)(2) and (f)(7), and such other notices as the court may direct.

FED. R. BANKR P. 2002(i). Courts in other diocese bankruptcies have recognized the importance of limited notice in chapter 11 cases and have granted similar motions to limit notice. *See, e.g., In re Roman Catholic Bishop of Stockton*, Case No. 14-20371, Dkt. No. 67 (Bankr. E.D.Cal. 2014); *In re The Roman Catholic Church of the Archdiocese of New Orleans*, 20-10846, Dkt. No. 22 (Bankr. E.D. La. 2020).

44. The Debtor estimates that as many as 1,800 creditors and parties-in-interest, and possibly more, may be technically entitled to notice in this case. To require the Debtor to provide notice of all pleadings and other papers filed in this case to all parties-in-interest, no matter how limited their interest may be in a particular matter, would be burdensome and costly to the estate in light of the photocopying, postage, and other expenses associated with large mailings.

45. The Debtor proposes to create a service list comprised of the core parties-in-interest in the Bankruptcy Case (the "Core Service List") who would be entitled to receive service of all filings. Those parties-in-interest should include: (i) the Office of the United States Trustee for Region 17; (ii) the Debtor; (iii) the attorneys for the Debtor; (iv) the attorneys for the unsecured creditors' committee (the

DEBTOR'S MOTION TO AUTHORIZE AND APPROVE
SPECIAL NOTICING AND CONFIDENTIALITY PROCEDURES

-11-

4861-3257-0720.3

"Creditors' Committee") once that committee has been appointed; (v) the Debtor's twenty (20) largest unsecured creditors via their attorneys, until such time as the Creditors' Committee is appointed; (vi) those persons who have formally appeared by filing a Notice of Appearance, a Request for Notice, or a similar document and requested notice in this case under Bankruptcy Rule 2002; (vii) the California Attorney General's Office; and (viii) RCC or its counsel.

46. In furtherance of the Debtor's request and consistent with the relief requested in this Motion, the Debtor has prepared a proposed initial Core Service List, a copy of which is attached hereto as **Exhibit C** and incorporated herein by reference.

47. The matters with respect to which notice would be limited to the Core Service List would include all matters covered by Bankruptcy Rule 2002, with the express exception of the following: (i) notice of the first meeting of creditors under section 341 of the Bankruptcy Code; (ii) the time fixed for filing proofs of claim under Bankruptcy Rule 3003(c); (iii) the time fixed for filing objections to, and the hearing to consider approval of, a disclosure statement or confirmation of a plan of reorganization; (iv) notice and transmittal of ballots for accepting or rejecting a plan of reorganization; (v) notice of the time fixed to accept or reject a proposed modification of a chapter 11 plan; and (vi) notice of any hearing on a motion to dismiss the Bankruptcy Case or to convert the Bankruptcy Case to chapter 7. In addition to Rule 2002 matters, the Core Service List also would be used for matters that may be required by the Bankruptcy Local Rules to be served upon all parties-in-interest.

48. The Debtor will serve a copy of the order approving this Motion on all parties-in-interest within three days of the entry of the order. The proposed order includes instructions on how a party-in-interest can be included on the Core Service List.

49. The Debtor will update the Core Service List to include those persons or parties who have made a written request to be included on the Core Limited Service List: (i) every seven (7) days during the first thirty (30) calendar days of this case; and (ii) monthly thereafter throughout the pendency of this case to include the name and address of any party-in-interest that has made a written request for notice since the Core Service List was last updated. Such updated Core Service List will be filed with the Court

DEBTOR'S MOTION TO AUTHORIZE AND APPROVE
SPECIAL NOTICING AND CONFIDENTIALITY PROCEDURES
-12-

Case: 23-40523  Doc# 6  Filed: 05/08/23  Entered: 05/08/23 08:13:58  Page 16 of 19
4861-3257-0720.3

and circulated to all parties appearing on the Core Service List only in the event that there is a change to the Core Service List.

50. Upon the completion of noticing any particular matter, the serving party or its agent will submit to the Court an affidavit or certificate of service and an attached list of parties receiving notice within three (3) business days of service. The affidavit or certificate of service may state that all parties on the Core Service List were served in lieu of individually identifying each party on the Core Service List.

51. The Debtor requests that the order approving these notice procedures be a standing order that will remain in force for the duration of the Bankruptcy Case and that shall be followed by all parties-in-interest. The Debtor further requests that it and any other party-in-interest be permitted to limit service to the parties on the Core Service List, other than for the matters described in paragraph 48, without further order of the Bankruptcy Court.

        **C.**      **Basis for Relief Under Bankruptcy Rule 6003(b)**

52. Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, the Court may issue an order within the first 21 days of a chapter 11 case granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition." Fed. R. Bankr. P. 6003(b).

53. As described herein and in the First Day Declaration, the Debtor is required to keep the identity of abuse claimants confidential. Because the Debtor is obligated to file certain disclosures like a creditor matrix, a list of its top 20 unsecured creditors, and its schedules and statements of financial affairs within the first days and weeks of this case, the ability to seal or redact confidential information is needed immediately. The Debtor also needs to file additional motions and applications in the coming days, and will need to send all such filings to all parties if the relief requested herein is not granted. Accordingly, the Debtor respectfully submits that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## VI.
## RESERVATION OF RIGHTS

54.  Nothing contained in this Notice and Confidentiality Motion is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

55.  Nothing contained in this Notice and Confidentiality Motion is intended to be or shall be construed as a waiver of any of the Debtor's rights under any applicable law, including, without limitation, the Code of Canon law, the First Amendment of the United States Constitution, the Constitution of the State of California, California Corporations Code §§ 10000-10015, the Religious Freedom Restoration Act of 1993 (42 U.S.C. §§ 2000bb-2000bb-4), the church autonomy doctrine, charitable trust law, California trust law, and the Debtor's rights under any insurance policies and to proceeds thereof, and to object to disclosure of information and contend that certain assets discussed in this Notice and Confidentiality Motion are not property of the estate.

## VII.
## NOTICE

56.  Notice of this Notice and Confidentiality Motion will be provided to (i) the Office of the U.S. Trustee for Region 17; (ii) the Debtor's 20 largest unsecured creditors; (iii) the Office of the California Attorney General; (iv) counsel for RCC; and (v) those persons who have formally appeared in this Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002. Based on the urgency of the circumstances surrounding this Notice and Confidentiality Motion and the nature of the relief requested herein, the Debtor respectfully submits that no further notice is required.

## VIII.
## CONCLUSION

57. WHEREFORE, the Debtor respectfully requests entry of an order granting the relief requested in this Notice and Confidentiality Motion and such other and further relief as the Court may deem just and appropriate.

DATED: May 8, 2023

**FOLEY & LARDNER LLP**
Jeffrey R. Blease
Thomas F. Carlucci
Shane J. Moses
Emil P. Khatchatourian
Ann Marie Uetz
Matthew D. Lee

/s/ Thomas F. Carlucci
THOMAS F. CARLUCCI

*Proposed Counsel for the Debtor
and Debtor in Possession*