GREGORY S. POWELL, State Bar No. 182199
Assistant United States Trustee
JASON BLUMBERG (CA SBN 330150)
Trial Attorney
TREVOR R. FEHR (CA SBN 316699)
Trial Attorney
PHILLIP J. SHINE (CA SBN 318840)
Trial Attorney
Office of the United States Trustee
450 Golden Gate Avenue, Room 05-0153
San Francisco, California 94102
Phone: (415) 705-3333
Facsimile: (415) 705-3379
Email: jason.blumberg@usdoj.gov

Attorneys for Tracy Hope Davis,
United States Trustee for Region 17

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br><br>Debtor. | Bankruptcy Case<br>No. 23-40523 WJL<br><br>Chapter 11<br><br>Date: May 9, 2023<br>Time: 1:30 p.m.<br>Place: 1300 Clay Street, Ctrm 220<br>       Oakland, CA<br>       [In Person or via Zoom] |

**UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO
DEBTOR'S FIRST DAY MOTIONS [ECF Nos. 6, 13, & 16]
<u>AND RESERVATION OF RIGHTS</u>**

Tracy Hope Davis, United States Trustee for Region 17 (the "UST"), hereby files this

omnibus objection (the "Omnibus Objection") to three first-day motions filed in this case. These

first day motions are referred to collectively hereafter as the "First Day Motions", or

individually, as set forth below:

- *Debtor's Motion for an Order Authorizing and Approving Special Noticing and Confidentiality Procedures* (ECF No. 6) (the "Confidentiality Procedures Motion");

1

- *Debtor's Motion for Interim and Final Orders Authorizing the Debtor to (I) Pay Prepetition Employee Wages, Salaries, Benefits and Other Related Items, (II) Reimburse Prepetition Employee Business Expenses, (III) Continue Employee Benefit Programs, and (IV) Pay All Costs and Expenses Incident to the Foregoing* (ECF No. 13) (the "Wages Motion"); and

- *Debtor's Motion for Interim and Final Orders Authorizing the Debtor to (I) (A) Continue Existing Cash Management System, (B) Honor Certain Prepetition Obligations Related to the Use Thereof, (C) Continue Intercompany Arrangements, (D) Maintain Existing Bank Accounts and Business Forms, and (E) Continue Use of Existing Credit Card Accounts; and (II) Waive Certain Requirements of 11 U.S.C. § 345(b)* (ECF No. 16) (the "Cash Management Motion").[1]

This Omnibus Objection is supported by the following memorandum of points and authorities and any argument the Court may permit on the Omnibus Objection.[2]

## I.     MEMORANDUM OF POINTS AND AUTHORITIES

### A.    Introduction

1.    The Debtor's requests for relief in the First Day Motions should be: (a) denied; (b) denied in part; or (c) limited to only emergency relief to permit the Debtor to sustain business operations.  The UST is scheduling the initial debtor interview.  The meeting of creditors pursuant to 11 U.S.C. § 341 is currently scheduled for June 12, 2023.  The UST is in the process of soliciting creditors to form an official committee of unsecured creditors.  In the best interest of

---

[1]    The UST takes no position on the following additional "first day motions" filed by the Debtor: (i) the application to appoint Kurtzman Carson Consultants LLC as claims and noticing agent (ECF No. 5); (ii) the motion with respect to abuse survivors' assistance and safe environment programs (ECF No. 8); (iii) the motion regarding utility services under 11 U.S.C. § 366 (ECF No. 14); and (iv) the motion regarding insurance coverage (ECF No. 15).  The UST reserves all rights to object to any final relief sought by the Debtor in these motions.

[2]    The UST requests that the Court take judicial notice of the pleadings and documents filed in this case pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that the Omnibus Objection contains factual assertions predicated upon statements made by the Debtor, any of its current or former affiliates, agents, attorneys, professionals, officers, directors or employees, the UST submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).

2

creditors, the Court should either sustain this Omnibus Objection or adjourn the hearing on these

First Day Motions to a later date to allow any creditors committee or other creditors a

meaningful opportunity to evaluate these First Day Motions.

2. The UST reserves all rights with respect to all the Debtor's First Day Motions

which are scheduled for hearing on the above-captioned date and time, including, but not limited

to her right to take any appropriate action under the Bankruptcy Code, the Federal Rules of

Bankruptcy Procedure, and the Local Bankruptcy Rules for the U.S. Bankruptcy Court for

Northern District of California.

**B.** **Background Facts and Procedural Posture**

3. On May 8, 2023 (the "Petition Date"), the Debtor commenced the above-

captioned case under Chapter 11 of the Bankruptcy Code. *See* ECF No. 1. The Debtor is

currently a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

4. On the Petition Date, the Debtor filed its list of 20 largest unsecured creditors.

*See* ECF No. 1

5. The Debtor has not yet filed the required Schedules and Statements, including

Schedule A/B, Schedule D, Schedule E/F, and the Statement of Financial Affairs. *See*

Bankruptcy Docket, *generally*.

6. The UST is in the process of scheduling the Initial Debtor Interview.

7. The UST is in the process of soliciting creditors to form an official committee of

unsecured creditors.

8. The meeting of creditors under 11 U.S.C. § 341(a) is currently scheduled for June

12, 2023.

3

9.      According to the first day declaration of Charles Moore (ECF No. 19) (the "First Day Declaration"), the Debtor was established "in 1962 from the eastern territory of the Archdiocese of San Francisco. The territory of the diocese spans roughly 1,467 square miles and encompasses two counties, Alameda and Contra Costa." *See* First Day Declaration, at ¶ 13. There are 82 parish churches within the diocese. *Id.*, at ¶ 22. The parish churches are not separately incorporated under California law. *Id.*, at ¶ 19.

10.     According to the First Day Declaration, there are "approximately 332 separate, active lawsuits or mediation demands pending against the Debtor filed by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor." *See* First Day Declaration, at ¶ 84.

## II.     ARGUMENT

11.     Four principles for Courts to consider with regard to first day motions are:

> First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can affect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties.
>
> Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.
>
> Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.
>
> Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

*See In re The Colad Group, Inc.*, 324 B.R. 208, 213-14 (Bankr. W.D.N.Y. 2005).

4

12.     Accordingly, the relief sought in the First Day Motions, if granted at all, should be granted only on an interim basis, with a final hearing set so that an Official Committee of Unsecured Creditors, if one can be formed, can review and respond to the final relief sought, preferably after schedules are filed and a meeting of creditors is held.

A.     **The Confidentiality Procedures Motion**

13.     As part of the Confidentiality Procedures Motion, the Debtor seeks entry of an Order requiring all parties (not just the Debtor) to file under seal or in redacted form the creditor matrix, schedules, statements and all other documents to the extent such documents contain: (i) non-public names of abuse claimants or those accused of abuse; (ii) contact information of the Debtor's current and former employees; and (iii) personally identifiable information of worker's compensation claimants or minors.  *See* Confidentiality Procedures Motion, at ¶¶ 1-2, 26, 41; proposed interim Order (ECF No. 6-1), at ¶ 2.

14.     Bankruptcy Code Section 107(a) "evidences congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings."  *See In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994); *see also In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 429 (9th Cir.  2011) (Section 107(a) "establishes a general right of public access to bankruptcy filings.").

15.     The right of public access is subject to only three exceptions, which are set forth in 11 U.S.C. §§ 107(b)(1), 107(b)(2), and 107(c)(1).  *See In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d at 430.  These exceptions are construed "narrowly."  *See In re Khan*, 2013 WL 6645436, at *3 (B.A.P. 9th Cir. Dec. 17, 2013).

16.     The burden is on the moving party to show that a request to place documents under seal falls within the parameters of one of these exceptions.  *See In re Dreier LLP*, 485 B.R.

821, 822–23 (Bankr. S.D.N.Y. 2013); *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011).

17.     Under the circumstances of this case, the UST does not oppose the Debtor's request that it be permitted to file under the seal documents containing the names of survivors and/or the names of those accused of abuse.  *Cf., In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d at 433 ("Under the common usage of the word, allegations that a priest has sexually abused children are most assuredly 'scandalous' because they bring discredit onto the alleged perpetrators. In light of the mandatory language of § 107(b), the bankruptcy court erred in not granting Fathers M and D's motion to strike the punitive damage estimation memorandum and its attachments.").

18.     However, the UST opposes the Debtor's request for a standing Order requiring other parties in interest to file under seal or in redacted form documents containing the names of abuse survivors or the names of those accused of abuse.  Besides the Debtor, no person has sought to file a document containing such information.  Thus, the Debtor's request is premature and overbroad.  *Cf. In re Anthracite Cap., Inc.*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013) ("Inherent in the language of § 107(b) is the requirement that the party requesting the extraordinary relief provide the court with specific factual and legal authority demonstrating that a *particular document* at issue is properly classified as 'confidential' or 'scandalous.'") (emphasis added).[3]

19.     The UST also opposes the Debtor's request to seal or redact employee contact information on the mailing matrix, schedules, statements, and other filings.  Federal Bankruptcy

---

[3]     Any notice of appointment of a creditors' committee in this case will include the names of the committee members.

Rule 1007(a) requires debtors to file with the bankruptcy petition a "list *containing the name and address of each entity* included or to be included on Schedules D, E/F, G, and H .…" *See* Fed. R. Bankr. P. 1007(a)(1) (emphasis added). Federal Bankruptcy Rule 1007(b)(1) similarly requires debtors to file schedules of assets and liabilities. *See* Fed. R. Bankr. Proc. 1007(b)(1).

20.    The Debtor's concerns about potential identity theft and harassment are present in almost every bankruptcy case. It would turn Section 107 on its head if these speculative concerns could establish an exception to the general right of public access to bankruptcy documents. *Cf.*, *In re Crawford,* 194 F.3d 954, 960 (9th Cir. 1999) ("[W]e conclude that the speculative possibility of identity theft is not enough to trump the importance of the governmental interests behind § 110 and § 107."); *see also In re DSRD, Inc.*, Case No. 21-51050 (Bankr. N.D. Cal. August 10, 2021) (unnumbered docket entry) (denying debtor's motion to, *inter alia*, redact home address information on creditor matrix and list of top 30 unsecured creditors).[4]

**B.    The Wages Motion**

21.    As set forth in the Wages Motion, the Debtor employs 30 full-time employees and 42 part-time employees. The Debtor also utilizes approximately 40 independent contractors. *See* Wages Motion, at ¶ 2.

22.    The Debtor seeks authority to, *inter alia*, pay (i) pre-prepetition employee compensation of approximately $269,000 ($252,000 on an interim basis), (ii) unreimbursed pre-petition employee expenses of approximately $26,000, (iii) pre-petition benefit obligations of approximately $487,000 ($166,000 on an interim basis), and (iv) pre-petition payroll costs of

---

[4]    The UST does *not* oppose the Debtor's request to redact personally identifiable information of worker's compensation claimants or minors to the extent such information qualifies as personally identifiable information under Fed. R. Bankr. P. 9037 or for which disclosure is prohibited by HIPAA. *See* Confidentiality Procedures Motion, at ¶ 40.

Case: 23-40523    Doc# 30    Filed: 05/09/23    Entered: 05/09/23 10:27:41    Page 7 of 14

approximately $12,000.  *See* Wages Motion, at ¶¶ 35, 48, 52, 106, 108.  The Debtor asserts that "the overwhelming majority, if not all, of claims of the Employees and Contractors will be entitled to priority treatment under section 507 of the Bankruptcy Code."  *Id.*, at ¶ 5.

23.     It appears that approximately $17,000 of the proposed payments would be made to insiders of the Debtor.  *See* Wages Motion, at ¶ 48.  It further appears that some of the Debtor's pre-petition benefit obligations may not be entitled to priority status under 11 U.S.C. §§ 507(a)(4) or (5), such as health benefits for retired priests and extended study assignments for clergy.  *Id.*, at ¶¶ 80-82, 101.

24.     The UST takes no position on the payment of (i) pre-petition claims of the Debtor's non-insider employees that are entitled to priority under Sections 507(a)(4) and 507(a)(5), or (ii) the related payroll taxes, deductions and withholdings, provided these amounts do not exceed the statutory cap.

25.     However, the UST opposes any payments on claims that are not entitled to priority status (including reimbursement of pre-petition business expenses) or that do not comply with 11 U.S.C. § 503(c)(1) and (3).  *See, e.g., In re B & W Enterprises, Inc.,* 713 F.2d 534, 537 (9th Cir. 1983) ("The Necessity of Payment Rule was created for and has been applied only to railroad cases. Absent compelling reasons, we deem it unwise to tamper with the statutory priority scheme devised by Congress in the 1978 Act."); *In re EcoSmart, Inc.*, 2015 WL 9274245, at *9 (Bankr. C.D. Cal. Dec. 18, 2015) ("[A]bsent the priority status of claims, the courts have not seen justification to allow payment of prepetition claims of so-called 'critical vendors,' and this court will follow such examples and require Debtor to demonstrate that the priority status of wage, salary and commission claims of its employees and independent

8

contractors … to warrant immediate payment in advance of general distribution on prepetition claims.").[5]

26.     Additionally, the Wages Motion does not address whether any proposed payments would be made to accused perpetrators of abuse.  *See* Wages Motion generally.  Given the sensitivities, no such payments should be authorized at least until the Court holds a final hearing on notice to parties in interest.  *See*, *e.g.*, *In re The Diocese of Rochester*, Case No. 19-20905 (Bankr. W.D.N.Y. Sept. 19, 2019) (Order entered as ECF No. 42, at ¶ 3).

### C.     The Cash Management Motion

27.     In the Cash Management Motion, the Debtor seeks authorization to, *inter alia*, (i) continue to use its existing cash management system, (ii) continue intercompany transactions with the parish churches and Non-Debtor Catholic Entities, (iii) maintain its pre-petition accounts and business forms, (iv) continue to use its existing credit cards and pay approximately $25,000 of pre-petition charges, and (v) waive the requirements of 11 U.S.C. § 345(b) to the extent applicable.  *See* Cash Management Motion, at ¶¶ 74, 81, 89.

28.     Bankruptcy Code Section 345(b) protects creditors against the loss of estate funds deposited or invested by debtors.  *Cf. In re Columbia Gas Systems Inc.*, 33 F.3d 294, 301 (3d Cir. 1994) ("Ensuring the safety of the bankruptcy funds has been the foremost goal.").

29.     Specifically, Section 345(b) provides that money of the estate shall be insured or guaranteed by the United States or by a department, agency or instrumentality of the United

---

[5]     The Debtor asserts that in *In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987), the Ninth Circuit recognized the doctrine of necessity in the context of employee wages and benefits.  *See* Wages Motion, at ¶ 117.  The narrow issue before the Court of Appeals, however, was whether a good faith finding under Section 364(e) mooted an appeal challenging the legality of a cross-collateralization clause in a post-petition financing.  *Id.* at 1486.  Thus, the quoted language from the *Adams Apple* case is dicta.  *See*, *e.g.*, *In re Timberhouse Post and Beam Ltd.*, 196 B.R. 547, 550 (Bankr. D. Mont. 1996).

9

States or backed by the full faith and credit of the United States.  Money of the estate may also be deposited in an entity that has posted a bond in favor of the United States or has deposited securities with the Federal Reserve Bank.

30.     A court may waive the requirements of Section 345 upon a showing of "cause." *See* 11 U.S.C. § 345(b).  Thus, the Court may modify the requirements of Section 345(b) for "'just cause' where strict compliance might 'work to *needlessly handcuff* larger, more sophisticated debtors.'"  *See In re Ditech Holding Corp.*, 605 B.R. 10, 22 (Bankr. S.D.N.Y. 2019) (emphasis added).

31.     In order to ensure compliance with Section 345(b), the UST has implemented guidelines for debtors in possession regarding bank accounts (the "UST Guidelines").  Among other things, the UST Guidelines require debtors in possession to close their pre-petition bank accounts and provide proof of the establishment of debtor in possession account(s) at an authorized depositary.  *See United States Trustee Chapter 11 Operating and Reporting Guidelines for Debtors in Possession* (Region 17), at § 3, available at https://www.justice.gov/ust-regions-r17/region-17-general-information#ch11.[6]

32.     Authorized depositories have agreed to maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount of no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit.  *See* United States Trustee Program Policy and Practices Manual, Volume 7,

---

[6]     The UST is mindful that some courts have concluded that guidelines established by the UST do not have the force and effect of law.  *See, e.g., In re Young*, 205 B.R. 894, 897 (Bankr. W.D. Tenn. 1997); *In re Lani Bird, Inc.*, 113 B.R. 672, 673 (Bankr. D. Hawaii 1990); *In re Gold Standard Baking, Inc.*, 179 B.R. 98, 105-06 (Bankr. N.D. Ill. 1995); *In re Johnson*, 106 B.R. 623, 624-25 (Bankr. D. Neb. 1989).  As a result, "if the court is to require debtors to comply with particular provisions of the U.S.T.'s Guidelines, it must be for a reason independent of the Guidelines themselves." *Johnson*, 106 B.R. at 624.

Case: 23-40523    Doc# 30    Filed: 05/09/23    Entered: 05/09/23 10:27:41    Page 10 of 14

"Banking and Bonding," (the "UST Manual"), §§ 7-1.1 and 7-1.2.1, at pp. 1-2, available at

https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual.

Authorized depositories have also agreed to make periodic reports so that the UST can monitor

compliance. *See* UST Manual, § 7-1.3.2, at p. 5.

33. Here, according to Exhibit D to the Cash Management Motion, the Debtor

maintains fourteen bank accounts and one investment account. *See* ECF No. 16-4, at p. 2 of 2

("Exhibit D"). Specifically, the Debtor holds:

- three (3) accounts at Union Bank, N.A.;

- ten (10) account at U.S. Bank, N.A;

- one (1) account at Citibank, N.A.; and

- one (1) account at Charles Schwab & Co. ("Schwab") to monetize donated stock. As of the Petition Date, the Debtor is holding approximately $32,000 in the Schwab account.

*Id.*; Cash Management Motion, at ¶¶ 30, 63-64.

34. According to the Cash Management Motion, the Debtor's cash management

system is "comprised of (a) Bank Accounts into which unrestricted receipts and other

receivables generated are collected and from which funds are subsequently disbursed to pay

the general operating expenses of the Chancery and other ordinary course obligations of the

Debtor [and] (b) Bank Accounts into which restricted, entrusted, and/or insurance-related pass-

through funds are collected and from which funds are subsequently disbursed or otherwise

transferred to the intended beneficiaries or recipients …." *See* Cash Management Motion, at ¶

2.

35. The Cash Management Motion does not comprehensively address the respective

balances in the Debtor's accounts, including the balance in the Debtor's Unrestricted General

11

Operating Account at Union Bank. *See* Cash Management Motion, at ¶¶ 37-39, 52, 55, and 64 and Exhibit D.

36. Union Bank of California, U.S. Bank, and Citibank F.S.B. are authorized depositories in the Northern District of California. *See* https://www.justice.gov/ust-regions-r17/region-17-general-information#ch11; *see also* Cash Management Motion, at ¶ 30.

37. The UST objects to the Cash Management Motion and the entry of an order waiving the requirements of Section 345 because the Debtor has failed to provide evidence that supports a finding that cause exists for the waiver of the requirements of Section 345(b). The Debtor has provided incomplete information regarding the funds held in the Debtor's accounts, including the balance of each account. Although the Debtor asserts that the benefits of a waiver of Section 345(b) "far outweigh any potential harm" (Cash Management Motion, at ¶ 125), the Debtor's self-serving conclusion is insufficient to establish cause under Section 345.

38. While the Debtor suggests that funds in one or more of the accounts may or may not be property of the estate, the overriding concern of the UST is that, should a failure contemplated by Section 345 occur resulting in the loss of funds in the accounts, the Debtor would remain liable. In contrast, by virtue of the collateralization and reporting requirements imposed on authorized depositories, compliance with the UST Guidelines will ensure compliance with the requirements of 11 U.S.C. § 345(b). These requirements would not "needlessly handcuff" the Debtor, but rather protect estate funds as Congress envisioned. *Cf. In re Ditech Holding Corp.*, 605 B.R. at 22 (requiring debtors to bring accounts into compliance with Section 345(b)).

39. To the extent the Court is inclined to approve the Cash Management Motion, such approval should be on an interim basis only and such relief should be limited to the

Case: 23-40523    Doc# 30    Filed: 05/09/23    Entered: 05/09/23 10:27:41    Page 12 of 14

accounts specially identified on the Debtor's Exhibit D.[7]  Moreover, the interim Order should

(i) require the Debtor to have its accounts at Union Bank of California, U.S. Bank, and

Citibank F.S.B designated as "Debtor in Possession" accounts by the institutions within 15

days of entry of the Interim Order, (ii) provide proof to the UST that the accounts have been

converted to "Debtor in Possession" accounts no later than the final hearing on the First Day

Motions; (iii) require the Debtor to institute a system to regularly "sweep" the funds from its

Schwab account into a debtor in possession account at an authorized depository; (iv) prohibit

the Debtor from opening new accounts unless such accounts are debtor in possession accounts

at authorized depositories in the Northern District of California;[8] and (v) track all

intercompany transactions.

40.    Finally, the UST opposes payment of pre-petition balances owing on the

Debtor's credit cards.  The Debtor has not demonstrated that payment of these pre-petition

claims is necessary to avoid immediate and irreparable harm.  *See* Fed. R. Bankr. P. 6003(b).

Rather, maintenance of the credit cards merely "provides the Debtor with greater flexibility."

*See* Cash Management Motion, at ¶ 81.

### III.    CONCLUSION

41.    In view of the shortened notice provided to creditors and the Debtor's failure to

establish a sufficient evidentiary record for the relief sought, the objected to First Day Motions

should either be denied in the entirety, denied in part as set forth herein, or any relief granted

---

[7]    Paragraph 4 of the proposed Interim Order indicates that the requested relief is not limited to the accounts specifically identified in the Cash Management Motion.  *See* ECF No. 16-1, at p. 4 of 8 ("The Debtor is … authorized to … maintain … any or all of its existing Bank Accounts … including those accounts listed on Schedule 1 ….").

[8]    Paragraph 6 of the proposed Interim Order appears to provide broader authority to open new accounts.  *See* ECF No. 16-1, at pp. 4-5 of 8.

Case: 23-40523    Doc# 30    Filed: 05/09/23    Entered: 05/09/23 10:27:41    Page 13 of 14

should be limited for the Debtor to sustain operations and to provide adequate protection, if any.

Alternatively, the First Day Motions should be adjourned until a later date. The adjournment

would permit parties that were not provided sufficient notice and any committee the opportunity

to be heard on the First Day Motions. The UST reserves all her rights with respect to the First

Day Motions and other motions filed on the Petition Date.


   **WHEREFORE**, the UST requests the Court to sustain her Omnibus Objection; and grant

such other relief as is just under the circumstances.



Dated: May 9, 2023                          TRACY HOPE DAVIS
                                            UNITED STATES TRUSTEE

                                            By:/s/ Jason Blumberg
                                            Jason Blumberg
                                            Trial Attorney for the United States Trustee

14