**FOLEY & LARDNER LLP**
Jeffrey R. Blease (CA Bar. No. 134933)
Tel: (617) 226-3155; jblease@foley.com
Thomas F. Carlucci (CA Bar No. 135767)
Tel: (415) 984-9824; tcarlucci@foley.com
Shane J. Moses (CA Bar No. 250533)
Tel: (415) 438-6404; smoses@foley.com
Emil P. Khatchatourian (CA Bar No. 265290)
Tel: (312) 832-5156; ekhatchatourian@foley.com
Ann Marie Uetz (admitted *pro hac vice*)
Tel: (313) 234-7114; auetz@foley.com
Matthew D. Lee (admitted *pro hac vice*)
Tel: (608) 258-4203; mdlee@foley.com
555 California Street, Suite 1700
San Francisco, CA 94104-1520

*Counsel for the Debtor
and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re: | Case No. 23-40523 WJL |
| THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole, | Chapter 11 |
| Debtor. | **DEBTOR'S OMNIBUS REPLY TO OBJECTIONS OF THE UNITED STATES TRUSTEE AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO FINAL APPROVAL OF DEBTOR'S MOTION FOR AN ORDER AUTHORIZING AND APPROVING SPECIAL NOTICING AND CONFIDENTIALITY PROCEDURES** |
| | Judge: Hon. William J. Lafferty |
| | Date: June 20, 2023<br>Time: 9:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>1300 Clay Street<br>Courtroom 220<br>Oakland, CA 94612 |

The Debtor files this reply in response to the (a) *Objection of the United States Trustee to Final Approval of Debtor's Motion for Approval of Confidentiality Procedures* [Dkt. No. 53] (the "UST Objection") and (b) *Objection of the Official Committee of Unsecured Creditors to Final Approval of Debtor's Motion for Approval of Confidentiality Procedures* [Dkt. No. 132] (the "Committee Objection," and together with the UST Objection, the "Objections"), and in support of final approval of the *Debtor's Motion for an Order Authorizing and Approving Special Noticing and Confidentiality Procedures* [Dkt. No. 6] (the "Motion").[1]

## I.

## INTRODUCTION

1. The Objections are narrow, and the majority of the relief sought in the Motion remains unopposed. In the UST Objection, the U.S. Trustee's Office ("UST") does not oppose, "under the circumstances of this case," the Debtor's request that it be permitted to redact "the names of survivors or the names of those accused of committing abuse." (ECF 53 at ¶ 18). The UST does, however, oppose the Debtor's request to seal and/or redact the names of persons alleged to have covered up abuse, claiming that the "Debtor has not provided the Court with factual and legal authority demonstrating that this information is confidential or scandalous within the meaning of Section 107(b)." The Committee Objection goes a bit further than the UST, objecting to redaction of the names of individuals accused of abusing children, as well as the names of individuals accused of covering up abuse.[2]

2. Both Objections should be overruled based upon the facts and circumstances of this matter and the controlling authority of *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland in Or.)*, 661 F.3d 417 (9th Cir. 2011) ("Archbishop of Portland"). *Archbishop of Portland* has definitively determined in this circuit that (a) Section 107(b) of the Bankruptcy Code "displaces the common law right of access in the bankruptcy context," *id.* at 430, (b) it is mandatory that a court protect a party from "scandalous or defamatory matter," without any need to balance public and private interests

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] The UST also requests that the final order on the Motion preserve parties' rights to seek to unseal documents or remove redactions (ECF 53 at ¶ 21), to which request the Debtor does not object.

as required by the common law right of access to documents filed with a court, *id.*, and, importantly, (c) "[u]nder the common usage of the word, allegations that a priest has sexually abused a child are most assuredly 'scandalous'," within the meaning of the "mandatory language of § 107(b)." *Id.* at 433. At least one lower court in this circuit has extended the Ninth Circuit's reasoning to classify as "scandalous" allegations that a person covered up sexual abuse.

3. The Objections should also be overruled on the basis of this authority, which is consistent with the fact that the Debtor's requested relief is not unusual or unique in diocesan bankruptcy cases. At least four other bankruptcy courts have granted similar relief protecting individuals from the disclosure of scandalous and defamatory matters. Lastly, the Debtor's requested relief is consistent with the State of California's constitutional protection of privacy rights and similar state laws, which themselves are in harmony with Section 107(b)'s mandatory protections.

## II.

## ARGUMENT

4. The Bankruptcy Code provides that, "[o]n request of a party in interest, the bankruptcy court shall . . . protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b)(2). Essentially, if a bankruptcy court finds scandalous or defamatory material in a filing, it must issue a protective order to protect such material from public view. *See Archbishop of Portland*, 661 F.3d at 430-31.

### A. The Identities of Individuals Accused of Abuse and Accused of Covering Up Alleged Abuse Must Be Protected Because Such Allegations Constitute Scandalous and Defamatory Matters under Section 107(b)(2) of the Bankruptcy Code

#### a. Scandalous Matters

5. The Ninth Circuit Court of Appeals defines "scandalous"—as such term is used in Section 107(b)—to mean "among other things, 'bringing discredit on one's class or position' or 'grossly disgraceful.'" *Archbishop of Portland*, 661 F.3d at 432 (quoting Oxford English Dictionary 575 (2d ed. 2001)). Importantly, the court in *Archbishop of Portland* explicitly held that "allegations that a priest has sexually abused children are most assuredly 'scandalous[.]'" *Id*. at 433.

6. Further, at least one lower court in the Ninth Circuit has invoked *Archbishop of Portland* to classify allegations that a person covered up sexual abuse as "scandalous." *See, e.g.*, *Doe v. W. Am. Province of the Capuchin Franciscan Friars*, No. 2:14-cv-01428-HZ, 2015 U.S. Dist. LEXIS 124071, at *15 (D. Or. Sep. 17, 2015) ("Capuchin") (citing *Archbishop of Portland* and holding allegations that defendants covered up sexual abuse were "scandalous" in the context of a motion to strike under Rule 12(f)).

7. In *Archbishop of Portland*, the Ninth Circuit held—in no uncertain terms—that allegations of sexual abuse against children are scandalous under Section 107(b). *See Archbishop of Portland*, 661 F.3d at 433 (requiring redaction of all identifying information). Here, the identities of the accused fall within this very same category of scandalous allegations of sexual abuse. Therefore, any information that would identify individuals accused of sexual abuse would be a scandalous matter that this Court must protect under Section 107(b)(2) and prevailing Ninth Circuit case law.

8. The identities of individuals accused of covering up alleged sexual abuse likewise constitute scandalous material. *Capuchin* is instructive here. In that case, the movant filed a motion to strike allegations that certain defendants knew of sexual abuse of children, arguing the allegations were "scandalous" under Federal Rule of Civil Procedure 12(f). *See Capuchin*, 2015 U.S. Dist. LEXIS 124071, at *6. The District Court of Oregon cited the Ninth Circuit's opinion in *Archbishop of Portland* to support its holding that the allegations were scandalous, *id.* at *15, thus implying that the definition of "scandalous" is consistent across Rule 12(f) and Section 107(b)(2). Moreover, allegations that one knew of alleged sexual abuse and did nothing with that knowledge would surely "bring[] discredit on one's class or position" or be "grossly disgraceful"—consistent with the ordinary usage of the term "scandalous," as understood by the Ninth Circuit in *Archbishop of Portland*. Accordingly, any information that would identify individuals accused of covering up alleged sexual abuse would be a scandalous matter that also must be protected under Section 107(b)(2).

   b. **<u>Defamatory Matters</u>**

9. The other prong of Section 107(b)(2)'s mandatory protection language relates to "defamatory" matters. "Within the Ninth Circuit, we interpret the term, 'defamatory,' according to its

common meaning." *See In re Khan*, No. CC-13-1297-DPaTa, 2013 Bankr. LEXIS 5303, at *8 (B.A.P. 9th Cir. Dec. 17, 2013) (interpreting Section 107(b)) (citing *Archbishop of Portland*, 661 F.3d at 432):

> For [a] matter in a document to be considered "defamatory," it must "damage the reputation, character, or good name of [sic] by slander or libel." "Libel" is "[a] false publication, as in writing, print, signs, or pictures, that damages a person's reputation" or "[t]he act of presenting such material to the public."

*Id.* (citing The American Heritage Dictionary of the English Language 476 (4th ed. 2000)).

10. Under California law, "[p]erhaps the clearest example of libel per se is an accusation of crime." *See Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 385, 226 Cal. Rptr. 354, 358 (1986); *see also Henley v. Jacobs*, No. C 18-2244 SBA, 2018 U.S. Dist. LEXIS 235733, at *12 (N.D. Cal. Dec. 21, 2018) ("false accusations of crime are libel per se"). Sexual abuse of a child is a crime under California statutes, *see* Cal. Penal Code §§ 287-288, and aiding and abetting any felony or misdemeanor makes one a principal to the crime under California law. *See* Cal. Penal Code § 31.

11. Here, unproven accusations of sexual abuse of children and of covering up such crimes are libelous and thus defamatory. Such allegations either claim an individual committed a crime or covered up a crime—either violations of California Penal Code § 287-288 or aiding and abetting the violation of California Penal Code § 287-288. This is libel per se, under the "common meaning" of the term in California. Publishing the identities of those accused of abuse or covering up abuse, but not yet found liable for those crimes, would defame those individuals. Accordingly, any information that would identify individuals accused of such crimes would be a defamatory matter that also must be protected under Section 107(b)(2).

c. **Protection Is Required**

12. Section 107(b)(2) requires a bankruptcy court, upon request from a party, to protect parties-in-interest with respect to scandalous or defamatory matters contained in any filings. *See* 11 U.S.C. § 107(b) (specifying that "the bankruptcy court *shall*" provide specified protections on "request of a party in interest") (emphasis added). The Ninth Circuit in *Archbishop of Portland* observed that "[b]ecause § 107(b) imposes this mandatory requirement, it eliminates the balancing of public and private interests required by the common law rule if a document is scandalous or defamatory," 661 F.3d at 430, and

underscored that "the strength of the public's interest in a particular judicial record is irrelevant; if the exception pertains, the bankruptcy court *must issue a protective order* on a motion by the affected person or party." *Id.* at 431 (emphasis added).

13. The "scandalous or defamatory matters" exception of Section 107(b) pertains here, and therefore, the Debtor's request for protection under the Motion must be granted.

### B. Similar Relief Has Been Granted in Other Diocesan Bankruptcy Cases

14. The relief requested by the Debtor is consistent with similar relief provided in other diocesan bankruptcy cases across the country. In four such cases, the bankruptcy courts approved procedures or otherwise entered orders requiring the protection of alleged perpetrator information. *See, e.g.*, *In re The Catholic Bishop of Spokane*, Docket No. 1196, Case No. 04-08822 (Bankr. E.D. Wash. May 24, 2006) (entering a final order granting the debtor's motion to seal pleadings and documents relating to confidential claims and approving protocols requiring redaction of "all information that could be used to identify the claimant or alleged abuser"); *In re The Diocese of Buffalo*, Docket No. 256, Case No. 20-10322 (Bankr. W.D.N.Y. Apr. 21, 2020) (entering a final order authorizing the debtor to file certain documents under seal and redacting "the names and addresses of any alleged abuse perpetrator, *provided that*, the Diocese shall not be required to redact the name of any" credibly accused clergy previously posted on their website)[3]; *In re The Roman Catholic Diocese of Syracuse*, Docket No. 73, Case No. 20-30663 (Bankr. N.D.N.Y. Aug. 7, 2020) (entering a final order authorizing the debtor to file certain documents under seal that contain "Accused Information," defined to include the names and addresses of alleged perpetrators except with respect to credibly accused clergy, as to which only addresses were protected); *In re The Diocese of Camden*, Docket No. 2012, Case No. 20-21257 (Bankr. D.N.J. July 13, 2022) (entering a protective order relating to discovery dispute that sealed information to "protect the identity of any alleged abuser who has not been publicly accused of abuse" and "protect the identity of any alleged abuser for which it has not been determined that the alleged abuse was a credible allegation").

---

[3] The Debtor does not object to the inclusion of such an exception in the final order here. In or around 2019, the Debtor prepared and published a list of priests and former priests as to whom the Debtor determined a credible accusation of sexual abuse of a minor had been made. The names of these priests and former priests and the criteria the Debtor used to assess whether an accusation was credible can be found on the Debtor's website, https://oakdiocese.org/credible-accusations.

### C. California State Law Regarding Privacy Supports Granting the Motion

15. California law also directly supports the mandatory application of Section 107(b) to protect the identities of those accused of committing or covering up sexual abuse. The State of California has not only expressly codified privacy rights for those accused under California Code of Civil Procedure Section 340.1 ("CCP 340.1"), but it has also constitutionally enumerated an individual right of privacy, which has been deemed both unique and sacrosanct. *See* Article 1, Section 1 of the California State Constitution.

16. The California legislature built into CCP 340.1 explicit safeguards to protect the names of those alleged to have committed or covered up childhood sexual assault. Specifically, an accused cannot be publicly named in a civil lawsuit alleging childhood sexual assault or cover up unless the plaintiff's attorney at some point during the lawsuit executes and submits to the judge a Certificate of Corroborative Fact. CCP 340.1(l). This is an affirmative obligation of the plaintiff under the law. The Certificate must "declare that the attorney has discovered one or more facts corroborative of one or more of the charging allegations against a defendant or defendants and shall set forth in clear and concise terms the nature and substance of the corroborative fact." CCP 340.1(m)(1).

17. California law disallows even the service of lawsuits alleging childhood sexual assault or cover up without a court's scrutiny and permission. Section 340.1(i) disallows the service of a complaint on a defendant absent the court's finding that "there is reasonable and meritorious cause for the filing of the action against that defendant." Under this process, a plaintiff must submit privately to the state court two separate Certificates of Merit: one from plaintiff's counsel, and one from a mental health practitioner. These certificates represent to the court that the attorney and the mental health practitioner believe there is reasonable and meritorious cause for the filing of the action. If the Court were to adopt the Committee's position, individuals and institutions against whom lawsuits have been filed *but not even been served* would also be allowed to be named publicly.

18. CCP 340.1 therefore prohibits the public disclosure of individuals and institutions accused of childhood sexual assault absent the submission by the plaintiff of certificates of merit and of corroborative fact, each of which must be reviewed and approved by a judge. Public policy concerns underlying CCP 340.1 require such a strict bar in order to protect the innocent from false, public

allegations. The protections of CCP 340.1 regarding privacy speak directly to due process concerns where accusations can be made in a civil lawsuit without any measure of corroboration, leaving accused individuals exposed to naming without even a modicum of proof.

19. It is therefore a plaintiff's affirmative obligation to seek *exception* to the absolute right of privacy under CCP 340.1 before an accused can be named. This belies the Committee's argument in Paragraph 23 of the Committee Objection. There, the Committee cites a deprivation of a plaintiff's right to "seek permission to unseal a document" under CCP 340.1(m) because of the underlying stay of the state court proceedings. This argument misunderstands the law and its application to this matter. Privacy is the threshold and the presumption. Yet the Committee's argument—and for that matter the entirety of the Committee Objection—ignores this fundamental right of privacy and instead asserts that privacy should be broadly and unilaterally abandoned because plaintiffs allegedly lack the ability to avail themselves of a right of exception. This is, of course, not true. Individual claimants could ask this Court to lift the automatic stay, if they can show that the criteria of Section 362(d) of the Bankruptcy Code are met. Nothing in the Notice and Confidentiality Motion seeks to prevent this, nor does the Debtor seek a blanket protection against such relief at this time.

## III.

## CONCLUSION

For the foregoing reasons, and those set forth in the Motion and the record in this Chapter 11 Case, the Debtor respectfully requests that the Court overrule the Objections and enter an order granting the relief requested in the Motion, on a final basis, and any further relief as may be appropriate.

//

//

DATED: June 16, 2023

**FOLEY & LARDNER LLP**
Jeffrey R. Blease
Thomas F. Carlucci
Shane J. Moses
Emil P. Khatchatourian
Ann Marie Uetz
Matthew D. Lee

*/s/ Thomas F. Carlucci*
THOMAS F. CARLUCCI

*Counsel for the Debtor and Debtor in Possession*