**LOWENSTEIN SANDLER LLP**
JEFFREY D. PROL (Admitted Pro Hac Vice)
jprol@lowenstein.com
MICHAEL A. KAPLAN (Admitted Pro Hac Vice)
mkaplan@lowenstein.com
BRENT WEISENBERG (Admitted Pro Hac Vice)
bweisenberg@lowenstein.com
COLLEEN M. RESTEL (Admitted Pro Hac Vice)
crestel@lowenstein.com
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
tkeller@kbkllp.com
JANE KIM (Cal. Bar No. 298192)
jkim@kbkllp.com
GABRIELLE L. ALBERT (Cal. Bar No. 190895)
galbert@kbkllp.com
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| In re: | Case No. 23-40523 WJL |
| THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole, | Chapter 11 |
| Debtor. | **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' REPLY TO THE LIMITED OBJECTION OF CONTINENTAL CASUALTY COMPANY AND CERTAIN OTHER INSURERS TO DEBTOR'S MOTION TO ESTABLISH BAR DATES AND FOR OTHER RELIEF, [DKT. 181]** |
| | Judge: Hon. William J. Lafferty |
| | Date: July 18, 2023
Time: 9:00 a.m. (Pacific Time)
Place: United States Bankruptcy Court
1300 Clay Street, Courtroom 220
Oakland, CA 94612 |

The Official Committee of Unsecured Creditors (the "**Committee**") of The Roman Catholic Bishop of Oakland (the "**Debtor**") files this reply ("**Reply**") to the *Limited Objection of Continental Casualty Company and Certain Other Insurers to Debtor's Motion to Establish Bar Dates and for Other Relief*, [Dkt. 218], (the "**Insurers' Objection**") filed by the insurers listed in footnote 1 of the Insurers' Objection (collectively, the "**Insurers**"). In support of this Reply, the Committee relies on its limited objection (the "**Committee's Objection**") to the *Motion of the Debtor for an Order Establishing Deadlines for Filing Proofs of Claim and Granting Related Relief*, [Dkt. 181], (the "**Bar Date Motion**") and states as follows:[1]

## I.

## PRELIMINARY STATEMENT

1. Before the Insurers may be heard to object to the Bar Date Motion, they must establish that they have standing to do so. Ninth Circuit law requires, among other things, that the Insurers demonstrate that they hold a legally protected interest that could be concretely injured by this Court's decision on the form used to file a claim *against the Debtor* in this case. This, they cannot do. The contents of the proof of claim form used in this Chapter 11 Case is irrelevant to the Insurers. Rather, an Insurer will only suffer an injury in fact on account of a Sexual Abuse Claim if (i) the Insurer agrees to pay some amount on account of the Sexual Abuse Claim or (ii) a court of competent jurisdiction determines that the Insurer is liable under the relevant insurance policy and governing state law. The latter decision will be made on a full and fair record and will not turn on the contents of a proof of claim form or even whether a Sexual Abuse Claim is allowed. In fact, the Debtor already commenced an adversary proceeding against the Insurers seeking a declaratory judgment related to the Insurers' coverage obligations wherein the Insurers' rights and obligations will be fully determined. Thus, the Insurers cannot establish that they will suffer any cognizable injury by this Court's determining which proof of claim form to use.

2. Ignoring this fact, the Insurers' request that Sexual Abuse Claimants file a proof of claim form that *materially alters* Official Form 410. This request should be denied for the reasons established in the Committee's Objection. Indeed, the questions the Insurers seek to add (the

---

[1] Capitalized terms not defined in this Reply have the meaning ascribed to them in the Committee's Objection.

"**Insurer Additional Questions**") should be excluded from the Sexual Abuse Proof of Claim Form because they are unnecessary and are more like interrogatories than the information required to assert a claim against a bankruptcy estate. Specifically, the Insurer Additional Questions should be rejected because:

3. <u>First</u>, the Insurers' request that questions be added to "elicit the factual allegations necessary to state an Abuse Claim under California law" fails to reflect the fact that the evidence the Insurers seek to elicit is, for the most part, in the possession of the Debtor and its affiliates. Indeed, these questions are not reflective of other means through which a plaintiff may establish that the defendant owed a duty to Sexual Abuse Claimants under California law.

4. <u>Second</u>, the Insurers' request that Sexual Abuse Claimants submit their state law complaint and certificate of merit required by California Code of Civil Procedure Section 340.1 should be denied because (i) the filed complaints do not add any probative information given that they each adopt a court approved Master Complaint which is the operative pleading in each state court action[2] and (ii) the certificates of merit are strictly for *in camera* review by the state court and hold no evidentiary value. In fact, the certificates of merit contain no facts, only ultimate conclusions as required by the form ordered for use in the Northern California Cases coordination proceedings.

5. <u>Third</u>, questions about a Sexual Abuse Claimant's background and the possibility of prior claims, settlements, or adjudications seek to elicit facts that have nothing to do with the *prima facie* validity of a claim, but rather are designed to assist with the valuation of a claim.

6. <u>Fourth</u>, counsel to Sexual Abuse Claimants should be permitted to sign the Sexual Abuse Proof of Claim Form for the reasons set forth in the Committee's Objection, and in accordance with Bankruptcy Rule 3001(b).

7. Though couched as additions that will aid this Court in shepherding this Chapter 11 Case to resolution, the Insurer Additional Questions—and the Insurers' premature participation in this case, in general—will create more issues than solutions. Determining that the Insurers do

---

[2] Moreover, the complaints are publicly available on the California state court docket should the Insurers believe that there is some benefit to reviewing them.

not have standing now, at least as it relates to the dispute surrounding the proof of claim form, will streamline this Court's resolution of this matter and allow the actual parties-in-interest to further their clients' interests in search of a consensual resolution.

## II.

## THE INSURERS LACK STANDING TO OBJECT TO THE BAR DATE MOTION

8. Standing is a threshold requirement in every case, the defect of which cannot be waived. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). To have standing in bankruptcy court, a party "must meet three requirements: (1) they must meet statutory 'party in interest' requirements under § 1109(b) of the bankruptcy code; (2) they must satisfy Article III constitutional requirements; and (3) they must meet federal court prudential standing requirements." *In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir. 2012). The Insurers bear the burden of proving they meet all three requirements. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

**A.  The Insurers Lack Party In Interest Standing under 11 U.S.C. § 1109(b)**

9. In Chapter 11 proceedings, Section 1109(b) of the Bankruptcy Code governs the right to be heard and provides: "A *party in interest*, including the debtor, the trustee, a creditors' committee, an equity security holder's committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." *In re Tower Park Props., LLC*, 803 F.3d 450, 456 (9th Cir. 2015) (quoting 11 U.S.C. § 1109(b)). Though the list of parties described in Section 1109(b) is not exhaustive and courts generally construe the party in interest standard broadly, "[c]ourts must determine on a case by case basis whether the prospective party has a sufficient stake in the proceedings so as to require representation." *Thorpe*, 677 F.3d at 844 (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)). But this broad construction does not mean that "anyone who might be affected by the bankruptcy proceedings" has standing. *Tower Park Props.*, 803 F.3d at 457 (internal quotation marks and citation omitted). Rather it means that a party in interest must have a "*legally protected interest* that could be affected by a bankruptcy proceeding." *Id.* (citations omitted) (emphasis in original). Therefore, a party that may suffer "collateral damage" from a bankruptcy proceeding,

but has no "legally protected interest," lacks standing under Section 1109(b). *Id.* (quoting *In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014)). Those kinds of indirect interests are "too remote to entitle the entity to intervene in a bankruptcy case." *Id.* (citation omitted); *see also* 7 Collier on Bankruptcy ¶ 1109.01[1] ("The general theory behind [11 U.S.C. § 1109(b)] is that anyone holding a direct financial stake in the outcome of the case should have an opportunity . . . to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest.").

10. The Insurers have no ***direct*** financial stake in the contents required to be included in a proof of claim form. Indeed, courts find that "party-in-interest standing does not extend to those seeking to assert rights that are purely derivative of another party's rights . . . ." *Tower Park Props.*, 803 F.3d at 459 (discussing *In re Refco Inc.*, 505 F.3d 109 (2d Cir. 2007)). The Debtor and Committee have the right to determine the substance of the proof of claim form, not only because they are identified as parties in interest under Section 1109(b), but because the proof of claim form is designed to elicit claims that are ***asserted against the Debtor's estate – not the Insurers***. Allowance of a Sexual Abuse Claim against the Debtor's estate has no impact on the Insurers unless and until the Debtor seeks coverage from one or more of the Insurers under the policies that they issued to the Debtor. Here, the Debtor is prosecuting an adversary proceeding seeking a declaratory judgment with respect to the Insurers' coverage obligations, and the Insurers will have an opportunity to assert their rights and defenses in that adversary proceeding. Thus, the Insurers cannot establish that they hold any ***direct*** financial stake in the Debtor's proposed proof of claim form. *See e.g.*, *id.* at 460 (finding that the beneficiary of a trust could not object—as a party in interest—to a settlement involving the trust assets because "[t]he legally protected interest in the properties at issue here rests with the trustees, not the beneficiary"); *see also Refco*, 505 F.3d at 117 (finding that although investors had a financial interest in a company's assets because any impact to the company would affect their return on investment, they had no control over the assets and therefore could not assert claims or negotiate settlements of those assets they invested in).

### B. The Insurers Lack Article III Standing

11. To establish constitutional standing under Article III, a party "must show (1) that they 'suffered an injury in fact that is concrete, particularized, and actual or imminent'; (2) that

the injury was likely caused by the defendants;' and (3) 'that the injury would likely be redressed by judicial relief.'" *Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). These three factors are the "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560. In Chapter 11 cases, "Article III standing exists where 'the participant holds a financial stake in the outcome of the proceeding such that the participant has an appropriate incentive to participate in an adversarial form to protect his or her interests.'" *Thorpe*, 677 F.3d at 887 (citation omitted).

12. To demonstrate an "injury in fact," the Insurers must identify a concrete injury that is real and *actually* exists. *See In re Sisk*, 962 F.3d 1133, 1141 (9th Cir. 2020). The injury cannot be "abstract, remote, or speculative." *See id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted)). The form and contents of the proof of claim form in this Chapter 11 Case cannot and will not injure the Insurers in any cognizable way. Indeed, the mere allowance of a Sexual Abuse Claim for purposes of this bankruptcy is of no moment to the Insurers. Rather, the only "injury" that may befall the Insurers is if a court of competent jurisdiction holds that the Insurer is liable under an insurance policy issued to the Debtor and governing state law. Such a contingent event is not grounds on which courts find standing. *See, e.g.*, *In re Venegas*, B.A.P. No. CC-20-1077-GLS, 2020 WL 7212310, at *4 (B.A.P. 9th Cir. Dec. 4, 2020) ("The bankruptcy filing did not cause an injury in fact to [insurer] because [insurer] had no interest in the outcome of the bankruptcy case. It is not a creditor."). Moreover, the Insurers have thus far denied their coverage obligations. By doing so they have denied having any interest in resolving claims being filed against the Debtor's estate, further establishing their lack of a legally protected interest at this stage of the case. Accordingly, any injury the Insurers may assert now is remote and speculative and thus no injury in fact exists to establish Article III standing.

13. Because the Insurers cannot establish an injury in fact, they also cannot establish a causal connection between such injury and the filing of Sexual Abuse Claims. As established above, because the proof of claim form is designed to elicit claims that are asserted ***against the Debtor's estate—not the Insurers***—the contents of that proof of claim form is irrelevant to the Insurers. Any financial interest the Insurers may have to the Debtor or Sexual Abuse Claimants is

-6-

being adjudicated through the adversary proceeding seeking a declaratory judgment with respect to the Insurers' coverage obligations.

14. Likewise, the Insurers cannot establish the final element of Article III standing—redressability. "[R]edressability analyzes the connection between the alleged injury and requested judicial relief." *Nw. Requirements Utils. v. FERC*, 798 F.3d 796, 806 (9th Cir. 2015) (citation omitted). It "does not require certainty, but only a substantial likelihood that the injury will be redressed by a favorable judicial decision." *Id.* (citation omitted).

15. The Insurers need standing to object to the proof of claim form. If the requested judicial relief is to be heard in relation to the proof of claim form, this relief has no connection to the Insurers' alleged injuries. As any injuries the Insurers assert are speculative, there is no action this Court can take at present to redress such injuries.

    **C.**    **The Insurers Do Not Meet Federal Prudential Standing Requirements**

16. Along with proving Section 1109(b) and Article III standing, the Ninth Circuit also adheres "to a set of prudential principles that bear on the question of standing." *Thorpe*, 677 F.3d at 887 (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)). The relevant prudential limitation here is that the Insurers "must allege an interest that is arguably within the zone of interests protected or regulated by the statute in question." *In re Chiu*, 266 B.R. 743, 749 (B.A.P. 9th Cir. 2001). This "'zone of interests' requirement is analogous to 'statutory standing.'" *Id.* (citations omitted). The statutory provision relevant to the "zone of interests" test in this case is 11 U.S.C. § 1109(b), which, as discussed above, the Insurers do not have standing under. Though "Congress intended § 1109(b) to confer broad standing so that those whose rights would be affected by reorganization proceedings could participate and protect their rights," those rights are not absolute. *Thorpe*, 677 F.3d at 888. For the reasons stated above, the Insurers do not have Section 1109(b) standing and thus cannot satisfy the zone of interests requirement for prudential standing.

/ / /

/ / /

/ / /

/ / /

## III.

## IF THE INSURERS HAVE STANDING, THE INSURER ADDITIONAL QUESTIONS SHOULD BE EXCLUDED

17. If this Court holds that the Insurers have standing to object to the Bar Date Motion, the Insurers' Objection should be overruled because the Insurers' proposed ***material modifications*** to Official Form 410 are not permitted for the reasons established in the Committee's Objection. The Insurers' proposed Sexual Abuse Proof of Claim Form (the "**Insurer Sexual Abuse Proof of Claim Form**") adds five pages of Insurer Additional Questions to the already excessive seven-page sexual abuse claim form proposed by the Debtor. A ***twelve-page proof of claim form*** for use by Sexual Abuse Claimants, almost by definition, cannot comply with Bankruptcy Rule 3001(a)'s requirement to substantially conform with Official Form 410—a three-page document.

### A. The Insurer Additional Questions Seek to Require Sexual Abuse Claimants to Provide Evidence That Is Not in Their Possession

18. The Insurers seek to add a series of questions asking Sexual Abuse Claimants to set forth their knowledge of whether the Debtor knew or should have known of their alleged abusers' propensity for abuse. *See* Insurer Sexual Abuse Proof of Claim Form, Questions J–M, [Dkt. 218-1]. But that information is largely in the possession of the Debtor and its affiliates and is known to employees or agents of the Debtor or other institutions.[3]

19. While the Insurers assert that the recent *Rockville Centre* decision supports the need for these questions, the Insurers fail to address a meaningful aspect of the *Rockville Centre* court's decision: the court did not expunge sexual abuse claimants' proofs of claim with prejudice for

---

[3] The Insurers assert that their questions are intended to require Sexual Abuse Claimants to establish that the defendant had prior notice of the abuser's propensity to commit abuse. But there are a variety of ways to plead/prove notice under California law that are not anticipated by the Insurers' questions. *See, e.g.*, *Doe v. Roman Cath. Archbishop of L.A.*, 285 Cal. Rptr. 3d 613, 628 (Cal. Ct. App. 2021), *reh'g denied* (Nov. 4, 2021), *review denied* (Feb. 9, 2022), (finding Archbishop could reasonably foresee "that minors attending catechism classes in 1988 might be sexually molested by a priest" where the Archbishop received reports of sexual abuse by clergy in its parishes and schools); *Brown v. USA Taekwondo*, 253 Cal. Rptr. 3d 708, 717, 728 (Cal. Ct. App. 2019), *as modified on denial of reh'g* (Nov. 6, 2019), *aff'd*, 483 P.3d 159 (Cal. 2021), (finding governing body for taekwondo could reasonably foresee that youths attending competitions with their coaches might be sexually molested by them, even though the governing body had no knowledge of prior sexual misconduct by a specific coach, where the plaintiff alleged the governing body regularly received complaints from athletes or their parents regarding improper sexual conduct by coaches); *Doe v. U.S. Youth Soccer Ass'n, Inc.*, 214 Cal. Rptr. 3d 552, 567 (Cal. Ct. App. 2017), *as modified on denial of reh'g* (Mar. 16, 2017), (finding youth soccer associations could reasonably foresee minors might be sexually abused by their coaches where the associations "were aware that sexual predators were drawn to their organization in order to exploit children and that there had been prior incidents of sexual abuse of children in their programs").

failure to allege that the debtor knew or should have known of the propensity of the abuse. *See In re The Roman Cath. Diocese of Rockville Centre, N.Y.*, 651 B.R. 146, 178 (Bankr. S.D.N.Y. 2023). Rather, the court permitted additional discovery from the debtor to allow sexual abuse claimants to file amended claims because the information needed to plead "knowledge" was in the possession of the *Rockville Centre* debtor. *See id.*

20. Moreover, these series of questions—asking, among other things, what others knew—not only seeks inadmissible hearsay, but expects a child to know and comprehend nefarious conduct by devious and manipulative adults entrusted with their care that he/she likely was not a part of and would have no reason to know or have the ability to comprehend. Thus, these proposed additions are inappropriate.

21. Compounding the issues with adding these particular questions is that the questions may dissuade Sexual Abuse Claimants from asserting a claim because the questions suggest the Sexual Abuse Claimant should know what the Debtor knew about the abuse. The questions unfairly place the burden on the Sexual Abuse Claimant to provide the Insurers with facts designed to establish insurance defenses to the Sexual Abuse Claimant's claim as a prerequisite to filing a claim. The questions also imply that the Sexual Abuse Claimant should have told the Debtor about the abuse and, by failing to do so, the Sexual Abuse Claimant was somehow complicit in the abuse and the cover-up. This may make the Sexual Abuse Claimant feel inadequate and unwilling to answer the questions or file a claim. Because of their likely chilling effect, the questions should not be included in the Sexual Abuse Proof of Claim Form.

**B. The Insurers' Request That Sexual Abuse Claimants Submit Their Complaint and Certificates of Merit Should Be Denied**

22. The Insurers request Sexual Abuse Claimants (i) attest "Yes" or "No" as to whether they filed a complaint in California state court and a certificate of merit and (ii) attach those documents to the Sexual Abuse Proof of Claim Form. The Insurers' basis for doing so lies in their argument that anyone who did not file a timely complaint during the "revival window period" and, if over age forty, failed to file a certificate of merit, cannot assert a viable claim under California

law. But the Insurers' basis for these additional questions is not supported by the Bankruptcy Rules or California law.

23. Contrary to the Insurers' assertions, supporting documentation, such as attaching the underlying state court complaints, is not required by the Bankruptcy Rules. Bankruptcy Rule 3001(c) expressly provides for when supporting documentation must be annexed to proofs of claim. As noted in the Committee's Objection, when no writing is required to create a liability, Bankruptcy Rule 3001(c) does not apply to proofs of claim for such debt. *See In re L.A. Int'l Airport Hotel Assocs.*, 106 F.3d 1479, 1480 (9th Cir. 1997). This rationale applies equally to claims arising "by operation of tort law." *In re Cluff*, 313 B.R. 323, 332 (Bankr. D. Utah 2004). Sexual Abuse Claims arise by operation of tort law—not by writing or contract—and so, no supporting documentation is required by the Bankruptcy Rules to file a valid proof of claim.

24. In addition, the documents sought by the Insurers are of no meaningful value or are otherwise not available to defendants under California Code of Civil Procedure Section 340.1. The state court complaints filed against the Debtor are "form complaints" which would not provide the particularized information needed to establish a *prima facie* claim. By order of the Coordination Trial Judge in the Northern California Clergy Cases pending in California state court (the "**Order Approving Master Complaint**"), the operative complaint for plaintiffs pursuing claims related to clergy sexual assault is the "Master Complaint." (*See Order Approving Master Complaint and Notice of Adoption Forms and Requiring Use by All Plaintiffs*, *N. Cal. Clergy Cases*, No. JCCP 5108 (Cal. Super. Ct. Mar. 25, 2021) and *Master Complaint*, attached as **Exhibit A**.)[4] The Master Complaint requires plaintiffs to adopt the Master Complaint, after which it is considered the operative complaint. (*See* Order Approving Master Complaint, ¶¶ 2–3.) Accordingly, the Master Complaint will not provide any additional relevant information.

25. In addition, the certificates of merit required by Section 340.1 are not evidentiary and cannot be reviewed by defendants in the state court action. *See* Cal. Civ. Proc. Code § 340.1(g)–(i) (West 2023). Under California Code of Civil Procedure Section 340.1, an action

---

[4] The Master Complaint included as part of Exhibit A is believed to be in a form substantially similar to the Master Complaint that was to be attached as an exhibit to the *Order Approving Master Complaint*. The Committee, however, was unable to locate that exhibit.

commenced by a plaintiff aged forty years or older must include a "certificate[] of merit" executed by the plaintiff's attorney and a licensed mental health practitioner setting forth certain facts intended to assure the court that there is reasonable and meritorious cause for the filing of the action. *See id*. § 340.1(g). The certificate of merit is reviewed by the court *in camera* and is not served on the defendant(s). *See id.* § 340.1(i). Moreover, the certificates of merit contain no facts, only conclusions, in compliance with the form ordered for use in the Northern California Cases coordination proceedings. (*See Order Approving C.C.P 3401.1(g) and (m) Certificate Forms*, *N. Cal. Clergy Cases*, No. JCCP 5108 (Cal. Super. Ct. May 26, 2021), attached as **Exhibit B**.)

### C. Questions About a Sexual Abuse Claimant's Background and Prior Claims Are Not Questions That Are Intended to Establish the Prima Facie Validity of a Claim

26. The Insurers attempt to add a series of questions that they themselves concede are intended to elicit facts to assist with an assessment of damages and have nothing to do with establishing a *prima facie* claim. Those questions range from whether a Sexual Abuse Claimant is married, had children, attended school, attended certain religious services, received any diplomas or degrees, served in the armed forces, or is retired. There are also questions relating to a Sexual Abuse Claimant's current employment (if any), employment history, or self-employment.

27. The Insurers' ability to assess damages of Sexual Abuse Claims is irrelevant at this juncture. Rather, the assessment of damages is a procedure for another day. The Bankruptcy Rules and Bankruptcy Code contemplate and provide a procedure for estimating unliquidated claims, such as these, and there is no justification to expand on what is required through a proof of claim form. *See* Fed. R. Bankr. P. 3003(c)(2); 11 U.S.C. § 502(c)(1).

28. These questions go well beyond the scope of information required to submit a proof of claim, seek intrusive details intended to elicit facts to establish defenses against Sexual Abuse Claims, and contain questions that may deter Sexual Abuse Claimants from filing claims. All of this extraneous information either has no nexus to the Sexual Abuse Claims committed under the auspices of the Debtor or goes far beyond the information appropriate for a proof of claim under the Bankruptcy Rules.

29. The questions are like interrogatories served by a defendant in a tort case rather than the proof of claim form required by Bankruptcy Rule 3001. The intrusive interrogatories are especially inappropriate because such questions in an interrogatory served during litigation would be subject to objection by the witness. But Sexual Abuse Claimants cannot object to the scope of questions on a proof of claim form and risk having their claim disallowed at the outset by failure to provide the requested information. In fact, the Insurers concede that they believe the Insurer Additional Questions "will minimize the need for formal discovery and claims objections in this case . . . ." (Insurers' Obj. at 16:13–14.) This is an inappropriate abrogation of the Bankruptcy Rules and merely an attempt by the Insurers to relieve themselves of the burden ascribed to objectors of claims under Section 502 of the Bankruptcy Code.

30. Accordingly, the Insurer Additional Questions do not conform substantially to the appropriate Official Form 410, far exceed what is required for a Sexual Abuse Claimant to establish a presumptively valid claim, and carry the risk of dissuading claimants from filing Sexual Abuse Claims.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**WHEREFORE**, the Committee requests that this Court (i) hold that the Insurers lack standing to object to the Bar Date Motion, (ii) sustain the Committee's Objection, (iii) overrule the Insurers' Objection, and (iv) grant any other relief to the Committee as is just and proper.

Dated: July 14, 2023

By: *Gabrielle L. Albert*
Tobias S. Keller (Cal. Bar. No. 151445)
Jane Kim (Cal. Bar No. 298192)
Gabrielle L. Albert (Cal. Bar No. 190895)
**KELLER BENVENUTTI KIM LLP**
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

- and -

Jeffrey D. Prol (Admitted Pro Hac Vice)
Michael A. Kaplan (Admitted Pro Hac Vice)
Brent Weisenberg (Admitted Pro Hac Vice)
Colleen M. Restel (Admitted Pro Hac Vice)
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400

*Counsel for the Official Committee of Unsecured Creditors*