**LOWENSTEIN SANDLER LLP**
JEFFREY D. PROL
jprol@lowenstein.com
MICHAEL A. KAPLAN
mkaplan@lowenstein.com
BRENT WEISENBERG
bweisenberg@lowenstein.com
COLLEEN M. RESTEL
crestel@lowenstein.com
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
tkeller@kbkllp.com
JANE KIM (Cal. Bar No. 298192)
jkim@kbkllp.com
GABRIELLE L. ALBERT (Cal. Bar No. 190895)
galbert@kbkllp.com
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br>Debtor. | Case No. 23-40523 WJL<br><br>Chapter 11<br><br>**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' EX PARTE APPLICATION FOR ENTRY OF AN ORDER UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004** |

The Official Committee of Unsecured Creditors (the "**Committee**") of The Roman Catholic Bishop of Oakland (the "**Debtor**"), files this ex parte application (the "**Motion**") under Federal Rule of Bankruptcy Procedure ("**Rule**") 2004 and Bankruptcy Local Rule for the Northern District

1

of California ("**Local Rule**") 2004-1, seeking court approval and entry of the order attached as **Exhibit A** (the "**Proposed Order**") compelling the Debtor to produce certain documents and appear for the taking of a Rule 2004 examination.

## PRELIMINARY STATEMENT[1]

1. While the Debtor claims to be committed to transparency, openness, and truth during this Chapter 11 Case, its actions are to the contrary. Again and again, the Debtor seeks to keep key information away from the Committee and the Survivors and has shown that its goal is secrecy, not transparency.

2. The Committee recently learned that two priests currently employed by the Debtor were accused of sexually abusing children. The Committee immediately requested documents in connection with the Debtor's investigation and response to the allegations. Instead of being forthcoming, the Debtor chose to hide behind purported privacy concerns, which have no place here. This lack of openness is concerning given the serious nature of the allegations and the Debtor's self-proclaimed interest in preventing further abuse.

3. The information sought by the Committee is further critical to any negotiation of a consensual resolution between the Debtor and the Committee. The information sought is necessary for the Committee to assess the Debtor's liability—a cornerstone of any plan of reorganization put forth by the Debtor.

4. Ironically, the Debtor and its insurers are seeking to obtain information from Survivors in the proof of claim beyond what is required in Official Form 410, insisting that such information is necessary to reach a resolution or formulate a plan, *but refuse to reciprocate by providing the Committee or Survivors information required to sufficiently negotiate a resolution and support their claims*. Most diocesan bankruptcy cases that have been consensually resolved include aspects of non-monetary relief, primarily providing for measures to ensure abuse of children by priests is not perpetuated. This includes, for example, understanding the Debtor's procedures for assessing allegations of abuse and measures taken to protect children. Non-

---

[1] Capitalized terms not defined in this Preliminary Statement shall have the meanings set forth herein.

2

monetary relief cannot be considered, and therefore no consensual resolution can be had, without the Committee's access to information sought herein.

5. The Committee has endeavored to work cooperatively with the Debtor regarding its investigation and to obtain the documents it needs informally. However, the Debtor has delayed and obstructed discovery, unfortunately necessitating this Motion.

6. The Court should order the Debtor what it promised, but so far has failed to do: create a transparent and open process that ensures abuse claimants are fairly compensated and that procedures are in place to ensure the horrific abuse does not happen again.

**RELEVANT FACTUAL BACKGROUND**

7. On May 8, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief [Dkt. 1] under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in this Court for the purpose of "fairly and equitably" compensating survivors of childhood sexual abuse (the "**Survivors**"). (*See Declaration of Charles Moore, Managing Director of Alvarez & Marsal North America, LLC, Proposed Restructuring Advisor to the Roman Catholic Bishop of Oakland, in Support of Chapter 11 Petition and First Day Pleadings* [Dkt. 19] (the "**Moore Decl.**"), ¶ 86.)

8. The Debtor claimed that it would "take responsibility for the suffering of Abuse Survivors" and that it "is and will remain committed to transparency, openness, and truth during this Bankruptcy Case." (*Id*. ¶ 87.)

9. No trustee or examiner has been appointed. The Debtor continues to operate as a debtor-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

10. On May 23, 2023, the Office of the United States Trustee for Region 17 appointed the Committee under Section 1102(a) of the Bankruptcy Code. [Dkt. 58.] The Committee consists of nine individuals who assert claims of childhood sexual abuse at the hands of the Debtor.

11. Immediately after its counsel was retained, the Committee began its investigation. In an attempt to work cooperatively with the Debtor, and with the hope of reaching a resolution efficiently, on June 6, 2023, the Committee sent informal document requests to the Debtor (the "**Informal Requests**").

12. Included in the Informal Requests, and as discussed with counsel to the Debtor on multiple occasions, critical requests for information included Topics 47 and 48 of the Informal Requests (together, the "**Abuser-Related Requests**"):

>   47. All Documents relating to the review and investigation of any priest or employee of RCBO, the Parishes, or the Other Catholic Entities that has been named as a defendant in a lawsuit, mediation, arbitration, or demand letter whose name does not appear on RCBOs Credibly Accused List.
>
>   48. All Priest Files relating to any priest of RCBO, the Parishes, or the Other Catholic Entities that has been accused of childhood sexual abuse.

13. Subsequently, at the Rule 341(a) Meeting of Creditors held on June 21, 2023, a representative of the Debtor disclosed that it currently employs two priests accused of having sexually abused children (the "**Accused Employees**"). At that time, the Committee reiterated its request for a response to the Abuser-Related Requests, particularly relating to the Accused Employees so that the Committee could understand the allegations made against the Accused Employees and any actions taken by the Debtor as a result of the allegations.

14. Although the Debtor began producing a small number of documents in response to the Informal Requests, it has now, a month after the Informal Requests were made, made clear that it will not voluntarily produce documents in response to the Abuser-Related Requests. Additionally, although an appearance has not yet been entered in this Court, the Committee has been advised that the Accused Employees intend to dispute the production of any documents and information relating to allegations made against them and any investigation taken in response to those allegations.

**RELIEF REQUESTED**

15. By this Motion, the Committee respectfully requests that this Court enter an Order compelling the Debtor to immediately produce documents responsive to the Abuser-Related Requests[2] and appear for the taking of a Rule 2004 examination, and granting such other relief as the Court deems just and proper.

---

[2] The Committee reserves the right to seek an order from this Court compelling the production of documents relating to the remaining Informal Requests.

Case: 23-40523   Doc# 239   Filed: 07/14/23   Entered: 07/14/23 16:51:01   Page 4 of 8

16. The Committee proposes a deadline of fourteen (14) days for the Debtor to produce all documents responsive to the Abuser-Related Requests, including but not limited to all documents relating to the Accused Employees and any investigation into the allegations against the Accused Employees, and fourteen (14) days after the completion of the production of documents responsive to the Abuser-Related Requests to appear for a Rule 2004 examination relating to the Abuser-Related Requests.

17. No previous application for the relief sought herein has been made to this Court.

**LEGAL ARGUMENT**

18. Rule 2004 provides that the Court may order the examination and the production of documents concerning any matter relating to "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). "Rule 2004 is the basic discovery device in bankruptcy cases" and is not subject to the same limitations as discovery under the Federal Rules of Civil Procedure. *In re Mastro*, 585 B.R. 587, 596 (B.A.P. 9th Cir. 2018). Instead, the scope of Rule 2004 examinations is "unfettered and broad" and has been compared to a "fishing expedition." *Id*. at 597 (quoting *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011)). This is because a Rule 2004 examination is meant to be non-adversarial in nature and is aimed at "discovering assets and unearthing frauds" and "discovering evidence upon which future causes of action may be based." *In re North Plaza, LLC*, 395 B.R. 113, 122 n.9 (Bankr. S.D. Cal. 2008).

19. The documents sought from the Debtor fit squarely within the scope of Rule 2004. In order to determine whether any proposed plan provides for a fair recovery for Survivors, and to be able to conduct informed negotiations with the other parties in interest, the Committee must investigate the allegations made against the Debtor and its employees, including the Accused Employees, and any investigation into the allegations undertaken by the Debtor (and the results of that investigation). This investigation will ultimately inform the Committee as to the potential liability of the Debtor in this Chapter 11 Case.

20.     The Debtor and its insurers have already insisted that discovery is required *from the Survivors* to determine this liability, but have refused to reciprocate.  The insurers made their intention clear to utilize the information provided by the Survivors to argue that the Survivors have not sufficiently plead their claims against the Debtor—a standard part of the insurers' playbook in diocesan bankruptcy cases.  However, *it is the Debtor* that has information crucial to the Survivors' claims.  *See, e.g.*, *In re Roman Cath. Diocese of Rockville Ctr.*, No. 20-12345 (MG), 2023 Bankr. LEXIS 1153, at *63–64 (Bankr. S.D.N.Y. May 1, 2023) (giving abuse claimants an opportunity to amend their claims, in part because they had not received information necessary to state a claim which was in the debtor's possession).  Thus, discovery cannot be a one-way street, and cannot be used as both a sword and a shield against Survivors.

21.     In addition, the Committee remains alarmed that two priests accused of sexual abuse remain currently employed by the Debtor.  An immediate investigation is necessary with respect to the Accused Employees because they (i) remain in contact with children, and (ii) are continuing to collect a salary and benefits from assets of the Debtor's estate.

22.     The Debtor's website includes specific procedures it has committed to complete when allegations of sexual abuse are brought.[3]  These steps include, *inter alia*, notifying law enforcement, placing the accused individual on temporary suspension, and an independent private investigation.  By refusing to provide responses to the Abuser-Related Requests, the Debtor is refusing to allow the Committee to investigate whether these steps were properly taken, or the result of any investigation.  This is particularly concerning in light of the Accused Employees' continued employment and access to children.

23.     The Debtor's knowledge of, investigation into, and remedial actions taken in connection with allegations of sexual abuse are also critical to the Committee's ability to negotiate a consensual resolution with the Debtor.  Aspects of negotiated non-monetary relief have been a critical element of most diocesan bankruptcy cases that have been consensually resolved.  *See, e.g.*, *Findings of Fact, Conclusions of Law and Order Confirming the Amended*

---

[3] *See Reporting & Victims Assistance*, Diocese of Oakland, https://oakdiocese.org/victims-assistance (last visited July 13, 2023).

*Joint Plan of Reorganization for the Roman Catholic Diocese of Harrisburg*, *In re Roman Catholic Diocese of Harrisburg*, Case No. 1:20-bk-00599 (HWV), Dkt. 1530 (Bankr. M.D. Pa. Feb. 17, 2023), at IV.W. ("Public Disclosure Under Child Protection Protocols"), Ex. H ("Child Protection Protocols"); *Second Amended Chapter 11 Plan of Reorganization of Catholic Diocese of Wilmington, Inc.*, *In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560(CSS), Dkt. 1493 (Bankr. D. Del. Aug. 8, 2011), at 17.5(c) ("Additional Non-Monetary Undertakings for the Protection of Children"), Ex. E ("Settlement Plan: Non-Monetary Undertakings"). The Committee cannot participate in any such discussion, and therefore no consensual resolution can be reached, until the Committee has had the opportunity to investigate and understand the Debtor's current policies and procedures relating to both allegations and prevention of sexual abuse.

24. To date, the Debtor failed to produce any documents responsive to the Abuser-Related Requests, and the Accused Employees have asserted a privacy interest over the production of any documents relating to allegations of sexual abuse against them.

25. The purported privacy interest of the Debtor and Accused Employees does not outweigh the Committee's significant need for Rule 2004 discovery on this issue. In an analogous situation, courts routinely find that the privacy interests police officers have in their personnel files do not outweigh a civil rights plaintiff's need for the documents. *See Soto v. City of Concord*, 162 F.R.D. 603, 617 (N.D. Cal. 1995) (citing cases). This is because the information contained in police personnel files is unlikely to be available from any other source, and there is a "strong public interest in uncovering civil rights violations" involving police departments. *Id*. at 621 (citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 660–61 (N.D. Cal. 1987)). Similarly, there is a strong public interest in addressing allegations of sexual abuse of children and preventing further abuse. As with police department civil rights violations, "[t]hese interests would be substantially harmed if access to the relevant portions of the requested personnel files is denied." *Soto*, 162 F.R.D. at 617.

26. Additionally, courts recognize that privacy interests can be protected with a carefully drafted protective order specifying that only the parties, their counsel, and any experts

7

will have access to the documents. *See id*. The Committee and the Debtor already negotiated the form of such a protective order and, with its entry, any purported privacy concerns will be alleviated.

## CONCLUSION

This application is properly made on an ex parte basis under Local Rule 2004-1(a) and the Debtor respectfully requests this Court to immediately take notice of this application and enter an order substantially in the form attached hereto, granting the relief requested herein, and such other and further relief as may be just.

Dated: July 14, 2023

By: *Gabrielle L. Albert*
Tobias S. Keller (Cal Bar. No. 151445)
Jane Kim (Cal. Bar No. 298192)
Gabrielle L. Albert (Cal. Bar No. 190895)
**KELLER BENVENUTTI KIM LLP**
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*- and -*

Jeffrey D. Prol
Michael A. Kaplan
Brent Weisenberg
Colleen M. Restel
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400