**FOLEY & LARDNER LLP**
Jeffrey R. Blease (CA Bar. No. 134933)
Tel: (617) 226-3155; jblease@foley.com
Thomas F. Carlucci (CA Bar No. 135767)
Tel: (415) 984-9824; tcarlucci@foley.com
Shane J. Moses (CA Bar No. 250533)
Tel: (415) 438-6404; smoses@foley.com
Emil P. Khatchatourian (CA Bar No. 265290)
Tel: (312) 832-5156; ekhatchatourian@foley.com
Ann Marie Uetz (admitted *pro hac vice*)
Tel: (313) 234-7114; auetz@foley.com
Matthew D. Lee (admitted *pro hac vice*)
Tel: (608) 258-4203; mdlee@foley.com
555 California Street, Suite 1700
San Francisco, CA 94104-1520

*Counsel for the Debtor
and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br>Debtor. | Case No. 23-40523<br><br>Chapter 11<br><br>**STATUS CONFERENCE STATEMENT FOR BANKRUPTCY CASE**<br><br>Judge: Hon. William J. Lafferty<br><br>**Status Conference:**<br>Date: August 8, 2023<br>Time: 9:00 a.m.<br>Place: United States Bankruptcy Court<br>　　　　1300 Clay Street<br>　　　　Courtroom 220<br>　　　　Oakland, CA  94612 |

**TO THE HONORABLE WILLIAM J. LAFFERTY, UNITED STATES BANKRUPTCY JUDGE AND ALL INTERESTED PARTIES AND/OR THEIR COUNSEL OF RECORD:**

The Roman Catholic Bishop of Oakland, a California corporation sole, and the debtor and debtor in possession (the "Debtor" or "RCBO") in the above-captioned chapter 11 bankruptcy case (the "Chapter 11 Case" or the "Bankruptcy Case"), hereby submits its status conference statement for the August 8, 2023, status conference (the "Status Conference").

The Debtor's objective in this Chapter 11 Case is to achieve confirmation of a plan of reorganization that will (a) ensure a fair and equitable outcome for victim-survivors of sexual abuse, and (b) allow the Debtor to stabilize its finances, continue its mission to serve the needs of the faithful within the Diocese of Oakland, and continue to provide services to underserved people and groups in the East Bay. As set forth below, it has made substantial progress in setting the necessary groundwork.

**1. The factors (business, financial, operational and any other problems) leading to this bankruptcy filing, the Debtor's objectives in this Chapter 11 Case, and the means proposed to achieve those objectives.[1]**

On October 13, 2019, Governor Gavin Newsom signed into law California Assembly Bill No. 218 ("AB 218"). AB 218 revived the statute of limitations for individuals to file civil lawsuits for childhood sexual abuse. The passage of AB 218 allowed certain individuals to bring what had been time-barred claims against individuals and entities for such claims through and including December 31, 2022. As of May 4, 2023, there were approximately 332 separate, active lawsuits or mediation demands pending against the Debtor filed by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor.

The Debtor has neither the financial means nor the practical ability to litigate all of the abuse claims in state court. This Chapter 11 Case will allow all of the claims to be filed and decided in a single forum – the Bankruptcy Court – and will ensure that all meritorious abuse claims be paid on a fair and equitable basis pursuant to an approved plan.

---

[1] The headings herein reflect the topics to be addressed pursuant to the Court's *Order and Notice of Chapter 11 Status Conference* [Docket No. 68], entered on May 24, 2023.

In this Chapter 11 Case, the Debtor will pursue a plan of reorganization that will fairly and equitably compensate abuse survivors and will also enable the Debtor to continue its mission to serve the needs of the faithful within the diocese, and to continue to provide social services to numerous underserved people and groups in the East Bay, regardless of their religious faith. The Debtor will take responsibility for the suffering of abuse survivors and ensure that credible claims of abuse are compensated through an expedited, uniform claims process. The Debtor will also endeavor to move through the Chapter 11 Case quickly in order to preserve assets and to hasten the payment of compensation to abuse survivors. One of the Debtor's most significant assets is its portfolio of insurance policies from which it is pursuing coverage to help pay abuse claims, through a declaratory judgment adversary proceeding filed in this Court, described in more detail below.

**2. A proposed schedule for filing a plan and disclosure statement, and for confirmation of the proposed plan.**

The schedule for this remains to be determined.

**3. An outline of the proposed plan.**

The outline of the proposed plan remains to be determined.

**4. The type, status and adequacy of insurance coverage of the Debtor's assets.**

The Debtor maintains a comprehensive insurance program as part of the ordinary course of its operations. This program includes more than twenty insurance policies issued by a number of carriers (the "Program Policies") and a self-insurance program covering losses within the deductible and self-insured retention amounts of the policies (the "Self-Insured Coverages"). Collectively, these Program Policies and Self-Insured Coverages (together, the "Insurance Program") provide coverages for, among other things, real property, general and specialized liability, equipment, cyber and privacy, and excess lines related to the foregoing. See generally, *Debtor's Motion for Interim and Final Orders Authorizing the Debtor to (I) Continue Existing Insurance Coverage and Satisfy Obligations Related Thereto, and (II) Renew, Amend, Supplement, Extend or Purchase Insurance Policies in the Ordinary Course of Business* [Docket No. 15]. Most of the Debtor's Program Policies are renewed annually, at the beginning of July of each year, and consistent with the ordinary course, the Debtor renewed its Program Policies effective July 1, 2023, for a term through July 1, 2024. See generally, *Debtor's Motion for Order Approving*

*Insurance Premium Finance and Security Agreement and Granting Post-Petition Security Interest* [Docket No. 197].

In addition, the Debtor has worked to identify and preserve insurance policies in effect when clergy sexual abuse allegedly occurred, including, at various points, primary and excess insurance policies. The Debtor has made substantial effort to pull together insurance policies and secondary evidence of insurance coverage from the early 1960's to the present. Due to the passage of time and the ordinary course of the Debtor's business, some documents regarding insurance coverage could not be located, and in some cases, evidence of insurance policies were pulled together from various documents. The Debtor has maintained insurance coverage through a series of primary, excess and umbrella insurers from the early 1960's through the present. Relevant to coverage of claims for alleged clergy sexual abuse, the Debtor has investigated and continues to investigate available insurance policies in existence since the Debtor's inception.

On June 22, 2023, the Debtor filed an adversary proceeding complaint for declaratory relief and breach of contract, seeking to liquidate the Debtor's claims against numerous of its historical insurance carriers. See generally, *Roman Catholic Bishop of Oakland v. Pacific Indemnity, et. al.*, Adversary Proceeding No. 23-04028 (the "Insurance Adversary Proceeding"), and *First Amended Complaint for Breach of Contract and Declaratory Judgment Relief* [AP Docket No. 2]. The Debtor is working to retain an insurance archaeologist to review historical general liability and excess policies issued to RCBO.

**5. Whether the Debtor has met the requirements for retaining professionals in the case, and the estate's need for retaining any additional professionals (e.g., attorneys, accountants, brokers, etc.).**

Thus far, this Court has entered orders approving the Debtor's retention of: Foley & Lardner LLP, Kurtzman Carson Consultants, LLC, and Alvarez & Marsal North America, LLC as professionals in this Chapter 11 Case.

In addition, on July 20, 2023, the Court entered an order approving the Debtor's *Motion for an Order (i) Authorizing the Retention and Payment, Effective as of the Petition Date, of Professionals Utilized by the Debtor in the Ordinary Course of Business and (ii) Granting Related Relief* [Docket No.

178], providing for the ongoing retention and compensation of professionals employed by the Debtor in the ordinary course of its operations.

**6.     The Debtor's post-petition operations, revenue, and financial results.**

During the initial months of this Chapter 11 Case, the Debtor has focused on a smooth transition into Chapter 11 and obtaining essential first day and other relief.  On the Petition Date, the Debtor filed first day motions seeking essential relief with respect to, among other things, employment of the Debtor's claims and noticing agent [Docket No. 5], noticing and confidentiality issues [Docket No. 6], assistance programs for abuse survivors [Docket No. 8], employee compensation and benefit programs [Docket No. 13], adequate assurance for the Debtor's utility providers [Docket No. 14], the Debtor's insurance program [Docket No. 15], and the Debtors' cash management system [Docket No. 16] (collectively, the "First Day Motions").  The Debtor worked constructively with the U.S. Trustee, and, after its appointment, the Committee to resolve disputes and issues regarding the First Day Motions.  As a result of these efforts, the Debtor was able to obtain consensual final orders on all but one of the First Day Motions.  The Court entered a final order granting the Debtor's noticing and confidentiality motion (as amended) on July 25, 2023. [Docket No. 292].

The Debtor timely filed its Schedules of Assets and Liabilities [Docket No. 54] (as amended, the "Schedules") and Statement of Financial Affairs [Docket No. 55] (as amended, the "SOFA") on May 22, 2023 [Docket No. 82].  The Debtor also filed Amended Schedules and an Amended SOFA on June 8, 2023 [Docket Nos. 102, 103], and further Amended Schedules on June 21, 2023 [Docket No. 161].

As reflected in the Debtor's monthly operating reports ("MORs") for the periods ending May 31, 2023, and June 30, 2023, the Debtor's cash balance remains strong, and has increased approximately seven percent since the Petition Date.

**7.     The status of any litigation pending in or outside of this Court.**

As set forth in Section 1, above, as of May 4, 2023, the Debtor was subject to approximately 332 separate claims by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor.  The civil lawsuits alleging sexual abuse are coordinated in the California Superior Court for the County of Alameda, in Judicial Council Coordinated Proceeding 5108 ("JCCP 5108").  Promptly following filing of the petition, the Debtor filed notice of the bankruptcy stay in the abuse cases through the JCCP 5108

4885-9974-6413.5

lead case, which was served on all plaintiffs' counsel firms by electronic service, and in other non-abuse cases not included in the JCCP 5108 process.

In certain pending state court litigation in JCCP 5108 (Cases 22-CV-017872 and 22-CV-023118), certain individual priests employed by the Debtor have retained separate counsel, Dan Webb of Winston & Strawn LLP, to address potential violations of California privacy law.

In addition, the counsel for the Debtor has addressed what it believes to be violations of the automatic stay with two counsel for certain plaintiffs in the state court litigation. Those two issues remain open, the Debtor expects that discussions may continue, and will bring a motion for appropriate relief before this Court only if necessary.

As mentioned above, the Debtor filed the Insurance Adversary Proceeding on June 22, 2023. All the Defendants have been served, and, pursuant to a stipulation with the defendant insurance carriers, responsive pleadings are due not later than September 5, 2023. A status conference in the Insurance Adversary Proceeding has been set for September 6, 2023. The Committee has filed a motion to intervene in the Insurance Adversary proceeding, which is set for hearing on August 9, 2023 [AP Docket No. 16]. On August 1, 2023, the Debtor filed a response reflecting that, for the reasons stated in the response, the Debtor does not object to the Committee's intervention [AP Docket No. 37].

**8. The Debtor's attendance at a meeting of creditors pursuant to 11 U.S.C. § 341(a), and compliance with requests for information from the U.S. Trustee (including but not limited to requests made in the Initial Debtor Interviews).**

The Section 341 Meeting of Creditors was held and concluded on June 21, 2023. Bishop Michael Barber, Paul Bongiovanni (the Debtor's CFO) and Charles Moore (the Debtor's financial consultant) testified at the Meeting. The Debtor believes it has responded to all outstanding requests from the U.S. Trustee, other than as it relates to one bank account, as detailed in No. 9 below.

**9. The status of monthly operating reports, debtor-in-possession (DIP) accounts and required post-petition payments to taxing authorities**.

On June 22, 2023, the Court entered its *Order (1) Pursuant to L.B.R. 2015-2(e) Extending Time to File Monthly Operating Reports, and (2) Modifying Order for Payment of State and Federal Taxes*

Case: 23-40523    Doc# 320    Filed: 08/01/23    Entered: 08/01/23 19:21:52    Page 6 of 9
4885-9974-6413.5

[Docket No. 165] (the "MOR Order"), extending the time for the Debtor to file its MORs in the initial months of the Chapter 11 Case.

Pursuant to the MOR Order, the Debtor timely filed its MORs for the periods ending May 31, 2023 [Docket No. 277], and June 30, 2023 [Docket No. 303], on July 17, 2023, and July 31, 2023, respectively.

With one limited exception, the Debtor has converted all bank accounts to debtor-in-possession accounts. The Debtor is still in the process of converting one remaining bank account from Citibank to a debtor-in-possession account at US Bank. The Debtor has informed the U.S. Trustee of this fact and will update when the transfer is complete.

All required tax payments have been made.

The Debtor also timely paid its quarterly fees to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6).

**10. Whether the Debtor has met the requirements for using cash collateral and obtaining credit.**

Not applicable.

**11. Orders entered in the case granting relief from the automatic stay, extending or refusing to extend the automatic stay or determining there is no automatic stay in effect as to any or all creditors.**

None to date.

**12. Motions to assume or reject any executory contracts or unexpired leases that have been or are expected to be filed.**

On July 7, 2023, the Debtor filed its *Debtor's Motion Under 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006 to Reject Executory Contract with Blackbaud Inc.* [Docket No. 196], by which the Debtor sought to reject a contract with Blackbaud, Inc., relating to analytics services for fundraising, which the Debtor had determined to be no longer beneficial to the estate. No objections were timely filed, and the Debtor will be submitting a proposed order granting the motion.

No other motions to assume or reject executory contracts or unexpired leases have been filed to date, or are expected in the near term.

**13. Unique issues concerning secured debt, employees, cash collateral, executory contracts, existing management and/or equity owners.**

None to date.

**14. Unusual developments or events that have occurred or are expected to occur in the case, and any other matters that might materially affect the administration of this case.**

Following extensive discussions with the Committee, the Debtor secured approval of a motion to set September 11, 2023, as the bar date and to approve claims procedures and proof of claim forms [Docket No. 181] (the "Bar Date Motion"). The Court entered the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* (the "Bar Date Order") approving the Bar Date Motion, on July 25, 2023 [Docket No. 293]. The Debtor is in the process of timely completing all notice and service requirements under the Bar Date Order.

The Debtor has also engaged constructively with the Committee since it was appointed and retained counsel. The Committee has requested extensive information from the Debtor in conducting its due diligence, and the Debtor is actively working to provide that information. The Debtor successfully negotiated and reached agreement with the Committee on the terms of a *Confidentiality Agreement and Stipulated Protective Order*, the original of which was filed with the Court on July 14, 2023, and a revised version of which was filed with the Court on July 21, 2023 (the "Stipulated Protective Order"). The Stipulated Protective Order will govern the procedures under which the Debtor will provide the Committee with confidential documents and information it has requested or will in the future request in this Chapter 11 Case. Reaching agreement on the terms of the Stipulated Protective Order was an essential step in that process, because of the confidential nature of much of the information requested by the Committee.

Counsel for the Debtor, its financial consultant A&M, counsel for the Committee, and its financial consultant BRG, have met in person once, and are working to schedule another in-person meeting, in order to help move the Chapter 11 Case forward in a constructive direction. This group has also conducted numerous telephone conferences and meetings to help move the Chapter 11 Case forward in a constructive direction. Counsel for the Debtor has also had electronic meetings with counsel for certain insurers, and with proposed insurance counsel for the Committee, also for the purpose of moving the Chapter 11 case

1 | forward in a constructive direction.  Counsel for the Debtor will continue its efforts to facilitate these kinds
2 | of meetings in order to achieve a consensual plan of reorganization in this Chapter 11 Case.

DATED: August 1, 2023			Respectfully submitted,

**FOLEY & LARDNER LLP**
Jeffrey R. Blease
Thomas F. Carlucci
Shane J. Moses
Ann Marie Uetz
Matthew D. Lee

*/s/ Shane J. Moses*
SHANE J. MOSES

*Counsel for the Debtor
and Debtor in Possession*

STATUS CONFERENCE STATEMENT FOR BANKRUPTCY CASE
9

4885-9974-6413.5