**FOLEY & LARDNER LLP**
Jeffrey R. Blease (CA Bar. No. 134933)
Tel: (617) 226-3155; jblease@foley.com
Thomas F. Carlucci (CA Bar No. 135767)
Tel: (415) 984-9824; tcarlucci@foley.com
Shane J. Moses (CA Bar No. 250533)
Tel: (415) 438-6404; smoses@foley.com
Emil P. Khatchatourian (CA Bar No. 265290)
Tel: (312) 832-5156; ekhatchatourian@foley.com
Ann Marie Uetz (admitted *pro hac vice*)
Tel: (313) 234-7114; auetz@foley.com
Matthew D. Lee (admitted *pro hac vice*)
Tel: (608) 258-4203; mdlee@foley.com
555 California Street, Suite 1700
San Francisco, CA 94104-1520

*Counsel for the Debtor
and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br>Debtor. | Case No. 23-40523<br><br>Chapter 11<br><br>**STATUS CONFERENCE STATEMENT FOR BANKRUPTCY CASE**<br><br>Judge: Hon. William J. Lafferty<br><br>**Status Conference:**<br>Date: September 26, 2023<br>Time: 9:30 a.m.<br>Place: United States Bankruptcy Court<br>1300 Clay Street<br>Courtroom 220<br>Oakland, CA 94612 |

TO THE HONORABLE WILLIAM J. LAFFERTY, UNITED STATES BANKRUPTCY JUDGE AND ALL INTERESTED PARTIES AND/OR THEIR COUNSEL OF RECORD:

The Roman Catholic Bishop of Oakland, a California corporation sole, and the debtor and debtor in possession (the "Debtor" or "RCBO") in the above-captioned chapter 11 bankruptcy case (the "Chapter 11 Case" or the "Bankruptcy Case"), hereby submits its status conference statement for the September 26, 2023, continued status conference (the "Status Conference").

The Debtor's objective in this Chapter 11 Case is to achieve confirmation of a plan of reorganization that will (a) ensure a fair and equitable outcome for victim-survivors of sexual abuse, and (b) allow the Debtor to stabilize its finances, continue its mission to serve the needs of the faithful within the Diocese of Oakland, and continue to provide services to underserved people and groups in the East Bay. As set forth below, it continues to make substantial progress in setting the necessary groundwork.

A. **Significant Progress in the Case**

1. *Update Regarding the Bar Date and Claims*

Following extensive discussions with the Committee and some discussions with counsel for the insurers, the Debtor filed its motion to set the bar date and to approve claims procedures and proof of claim forms [Docket No. 181] (the "Bar Date Motion") on June 27, 2023. The Court entered the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* (the "Bar Date Order") approving the Bar Date Motion on July 25, 2023 [Docket No. 293], establishing September 11, 2023, as the bar date for non-governmental claims (the "Bar Date").

The Debtor timely completed all initial notice and service requirements under the Bar Date Order, as set forth in (1) the *Certificate of Service* filed on August 4, 2023 [Docket No. 333], by Kurtzman Carson Consultants LLC ("KCC"), the claims and noticing agent for the Debtor, and (2) the *Certificate of Counsel Regarding Compliance With Certain Provisions of the Bar Date Order* filed by the Debtor on the same date [Docket No. 334]. Debtor's counsel then worked extensively with various entities related to the Debtor to ensure continued compliance with the Bar Date Order, with the Committee and other parties to facilitate access to KCC's electronic-filing system for counsel for various plaintiffs, and to provide the Committee with timely updates on the claims being filed following execution of the approved

confidentiality agreement. Debtor's counsel has also recently engaged with counsel for certain insurers regarding similar access to survivor proofs of claim pursuant to the Bar Date Order.

The general bar date for filing proofs of claim for non-governmental claims, including abuse claims as well as other claims, was September 11, 2023, eight days before the filing of this statement. Immediately after the Bar Date, the Debtor and its professionals began the process of analyzing the filed claims, with the assistance of KCC and its other professionals. A total of 560 proofs of claim were filed, including a small number that were filed with the Court, rather than with KCC. Of these, approximately 400 are abuse survivor claims, including a small number of duplicate claims already identified, with the remainder being primarily commercial vendor claims. Based on the Debtor and KCC's initial review, approximately 363 (or approximately ninety percent) of the abuse claims included some form of the optional supplement along with the Form 410 official proof of claim form.[1] Because the vast majority of claims are unliquidated personal injury claims based on allegations of sexual abuse, in contrast to the commercial claims that predominate typical Chapter 11 cases, there cannot be a meaningful statement of the monetary value of the claims at this stage of the case.

2. *Discussions with The Committee and Other Parties*

The Debtor has continued to engage constructively with the Committee. Counsel for the Debtor, the Debtor's financial consultant A&M, counsel for the Committee, and the Committee's financial consultant Berkeley Research Group, LLC, have held multiple in person meetings, as well as numerous telephone conference and online meetings, in order to move the Chapter 11 Case forward in a constructive direction. Now that the claims deadline has passed, the Debtor anticipates additional meetings in the coming weeks to discuss claims review, retaining expert witnesses to review claims, and matters attendant to mediation.

The Committee has requested extensive information from the Debtor in conducting its due diligence, and the Debtor has worked to provide that information, and continues to produce additional information. Pursuant to the stipulated protective order between the Committee and the Debtor [Docket

---

[1] As described in more detail in the Bar Date Motion and Bar Date Order, the optional supplement allowed abuse claimants to provide additional detail regarding their claims, to assist the Debtor and Committee in reviewing and evaluating the proofs of claim.

No 288], the Debtor has been producing documents to the Committee on a rolling basis over the past approximately two months. To date, the Debtor has produced hundreds, if not thousands of documents to the Committee. Based on the mutual cooperation between the Debtor and Committee, the Committee withdrew its previously filed motion for a 2004 order on September 5, 2023.

Counsel for the Debtor has participated in meetings with counsel for certain insurers, as well as special insurance counsel for the Committee, also for the purpose of moving the Chapter 11 case forward in a constructive direction with regard to insurance coverage for abuse claims. This has included a meet and confer call conducted September 14, 2023, with insurers' counsel and Committee counsel regarding the pending Rule 2004 motion filed by certain insurers. While the insurer Rule 2004 motion has not been fully resolved and remains on calendar for September 26, the Debtor believes the parties have made progress in resolving certain of the issues regarding production of documents requested by the insurers. The Debtors have proposed a protective order to counsel for the insurers and that remains under consideration/discussion. The Debtors have also scheduled a Rule 26 conference with counsel for the insurers who have appeared in the case or otherwise requested to be included and counsel for the Committee, but the insurers needed to reschedule that conference to June 22, 2023, due to weather and travel schedules which interfered with the earlier date.

Counsel for the Debtor will continue its efforts to facilitate these kinds of meetings in order to achieve a consensual plan of reorganization in this Chapter 11 Case.

### B. Other Factors Pursuant to Status Conference Order[2]

1. *The factors (business, financial, operational and any other problems) leading to this bankruptcy filing, the Debtor's objectives in this Chapter 11 Case, and the means proposed to achieve those objectives.*

On October 13, 2019, Governor Gavin Newsom signed into law California Assembly Bill No. 218 ("AB 218"). AB 218 revived the statute of limitations for individuals to file civil lawsuits for childhood sexual abuse. The passage of AB 218 allowed certain individuals to bring what had been time-barred claims against individuals and entities for such claims through and including December 31, 2022. As of

---

[2] The sub-headings in this section reflect the topics to be addressed pursuant to the Court's *Order and Notice of Chapter 11 Status Conference* [Docket No. 68], entered on May 24, 2023.

May 4, 2023, there were approximately 332 separate, active lawsuits or mediation demands pending against the Debtor filed by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor.

The Debtor has neither the financial means nor the practical ability to litigate all of the abuse claims in state court. Litigation of the abuse claims individually in state court could also result in inequitable results between claimants. This Chapter 11 Case will allow all of the claims to be filed and their treatment decided in a single forum – the Bankruptcy Court – and will ensure that all meritorious abuse claims be paid on a fair and equitable basis pursuant to an approved plan.

In this Chapter 11 Case, the Debtor will pursue a plan of reorganization that will fairly and equitably compensate abuse survivors and will also enable the Debtor to continue its mission to serve the needs of the faithful within the diocese, and to continue to provide social services to numerous underserved people and groups in the East Bay, regardless of their religious faith. The Debtor will take responsibility for the suffering of abuse survivors and ensure that credible claims of abuse are compensated through an expedited, uniform claims process. The Debtor will also endeavor to move through the Chapter 11 Case quickly in order to preserve assets and to hasten the payment of compensation to abuse survivors. One of the Debtor's most significant assets is its portfolio of insurance policies from which it is pursuing coverage to help pay abuse claims, through a declaratory judgment adversary proceeding filed in this Court, described in more detail below.

### 2. *A proposed schedule for filing a plan and disclosure statement, and for confirmation of the proposed plan.*

The schedule for this remains to be determined. Because of the need for further negotiations with the Committee and other parties, as well as the needs for final information regarding filed claims, among other factors, on August 1, 2023, the Debtor filed a motion to extend its exclusive period to file and solicit acceptance of a filed plan of reorganization [Docket No. 316] (the "Exclusivity Motion"). There was no opposition to the Exclusivity Motion, and the Court entered an order on August 22, 2023, granting it and extending the Debtor's exclusive period to file a plan through January 5, 2024, and its exclusive period to solicit acceptance of a filed plan through March 4, 2024. Relatedly, the Debtor hopes to begin facilitation with the Committee, and facilitation with the insurers, in or around November 2023. The Debtor hopes to

be in a position to propose to this Court at an October 2023 status conference, certain mediator(s) to consider for any such mediation and any other matters attendant to any such mediation.

       3.    *An outline of the proposed plan.*

The outline of the proposed plan remains to be determined.

       4.    *The type, status and adequacy of insurance coverage of the Debtor's assets.*

The Debtor maintains a comprehensive insurance program as part of the ordinary course of its operations. This program includes more than twenty insurance policies issued by a number of carriers (the "Program Policies") and a self-insurance program covering losses within the deductible and self-insured retention amounts of the policies (the "Self-Insured Coverages"). Collectively, these Program Policies and Self-Insured Coverages (together, the "Insurance Program") provide coverages for, among other things, real property, general and specialized liability, equipment, cyber and privacy, and excess lines related to the foregoing. See generally, *Debtor's Motion for Interim and Final Orders Authorizing the Debtor to (I) Continue Existing Insurance Coverage and Satisfy Obligations Related Thereto, and (II) Renew, Amend, Supplement, Extend or Purchase Insurance Policies in the Ordinary Course of Business* [Docket No. 15]. Most of the Debtor's Program Policies are renewed annually, at the beginning of July of each year, and consistent with the ordinary course, the Debtor renewed its Program Policies effective July 1, 2023, for a term through July 1, 2024. See generally, *Debtor's Motion for Order Approving Insurance Premium Finance and Security Agreement and Granting Post-Petition Security Interest* [Docket No. 197]. Since the August 8, 2023, Status Conference, the Debtor has also renewed the accident policies covering potential injuries for students and participants in diocesan programs.

In addition, the Debtor has worked to identify and preserve insurance policies in effect when clergy sexual abuse allegedly occurred, including, at various points, primary and excess insurance policies. The Debtor has made substantial effort to pull together insurance policies and secondary evidence of insurance coverage from the early 1960's to the present. Due to the passage of time and the ordinary course of the Debtor's business, some documents regarding insurance coverage could not be located, and in some cases, evidence of insurance policies were pulled together from various documents. The Debtor has maintained insurance coverage through a series of primary, excess and umbrella insurers from the early 1960's through the present. Relevant to coverage of claims for alleged clergy sexual abuse, the Debtor has

investigated and continues to investigate available insurance policies in existence since the Debtor's inception.

On June 22, 2023, the Debtor filed an adversary proceeding complaint for declaratory relief and breach of contract, seeking to liquidate the Debtor's claims against numerous of its historical insurance carriers. See generally, *Roman Catholic Bishop of Oakland v. Pacific Indemnity, et. al.*, Adversary Proceeding No. 23-04028, and *First Amended Complaint for Breach of Contract and Declaratory Judgment Relief* [AP Docket No. 2] (the "Insurance Adversary Proceeding"). On August 30, 2023, the Debtor filed a second adversary proceeding complaint for declaratory relief and breach of contract, alleging similar claims to the initial Insurance Adversary Proceeding against two additional historical insurance carriers. See generally, *Roman Catholic Bishop of Oakland v. American Home Assurance Co. and Lexington Insurance Co.*, Adversary Proceeding No. 23-04037 (the "Additional Insurance Adversary Proceed

The Debtor has review and analyzed of the Creditor Committee's motion to intervene in the adversary proceeding (and attended related hearings) and reviewed and analyzed the insurers' 2004 motion for materials and briefing regarding same. The Debtor has produced documents to counsel for the insurers and will continue to seek production of documents. The defendant insurers filed multiple different initial responses to the adversary proceeding complaint, to wit: a motion to dismiss, motion to dismiss and/or for more definite statement, and an answer. The Debtor is working on timely responding to each of the pending motions, while moving forward with the Rule 26 conference, initial disclosures and discovery. The Debtor is working toward a proposed deadline of December 29, 2023 for dispositive motions related to the important issue of the impact of the Clergy 3 settlement.

In the meantime, the Debtor has continued to receive actions from the Alameda Superior Court regarding claims of abuse (which now appear to total approximately 380 with additional cases in the process of being tendered), and Foley has worked with the Debtor's broker, Arthur J. Gallagher ("AJG"), to tender those matters to the insurers, follow up with the insurers regarding those tenders, and request copies of correspondence with the insurers about the tenders from AJG. Finally, the Debtor has been reviewing candidates to act as an insurance archeologist for purposes of the adversary proceeding.

Case: 23-40523　Doc# 458　Filed: 09/19/23　Entered: 09/19/23 16:47:12　Page 7 of 13
4857-5702-3103.3

The Debtor continues to work to identify and retain an insurance archaeologist to review historical general liability and excess policies issued to RCBO.

5. *Whether the Debtor has met the requirements for retaining professionals in the case, and the estate's need for retaining any additional professionals (e.g., attorneys, accountants, brokers, etc.).*

This Court has entered orders approving the Debtor's retention of: Foley & Lardner LLP ("Foley"), KCC, and Alvarez & Marsal North America, LLC ("A&M") as professionals in this Chapter 11 Case. In addition, since the last status conference, the Court has approved the retention of Breall & Breall LLP as special insurance counsel ("Breall") to represent the Debtor as plaintiff in the Additional Insurance Adversary Proceeding.

In addition, on July 20, 2023, the Court entered an order approving the Debtor's *Motion for an Order (i) Authorizing the Retention and Payment, Effective as of the Petition Date, of Professionals Utilized by the Debtor in the Ordinary Course of Business and (ii) Granting Related Relief* [Docket No. 178] (the "OCP Order"), providing for the ongoing retention and compensation of professionals employed by the Debtor in the ordinary course of its operations. Pursuant to the OCP Order, the Debtor has the required contacts disclosures for retention of Moss Adams LLP (auditor) [Doc. 324], Allen, Glaessner, Hazelwood & Werth, LLP (general legal services) [Docket No. 325], VeraCruz Advisory LLC (operational, financial, and strategic consulting) [Docket No. 326], Plageman, Lund & Cannon LLP (trusts & estates representation) [Docket No. 327], Monsignor Ronny E. Jenkins (advice regarding canon law) [Docket No. 329], and Best Best & Krieger LLP (representation regarding benefit plans) [Docket No. 449]. Pursuant to the OCP Order, the Debtor will be filing a quarterly report regarding OCP compensation not later than October 30, 2023.

As noted in section 4, above, the Debtor may also seek approval for employment of an insurance archaeologist for review of its historical general liability and excess insurance policies, in support of its efforts to maximize insurance coverage assets. And the Debtor expects that it and the Committee will each likely seek to retain an expert consultant for the purpose of analyzing claims in the case.

The Debtor has fully complied with its obligations regarding compensation of estate professionals. The Debtor filed its motion seeking approval of interim compensation procedures on May 26, 2023, and

on June 23, 2023, the Court entered an order approving procedures for compensation [Docket No. 170] (the "Compensation Procedures Order"). The Compensation Procedures Order provides for estate professionals employed under Section 327 to circulate monthly fee statements to notice parties including the Debtor, Committee, and US Trustee, as well as a schedule for filing of regular interim fee applications. The first monthly fee statements covering May (partial) and June were due not later than July 31. Foley, A&M, Lowenstein Sandler LLP (Committee counsel), and Keller Benvenutti Kim LLP (Committee local counsel) submitted timely monthly fee statements on July 31, 2023. The same parties, together with Burns Bair LLP (Committee special insurance counsel) submitted timely monthly fees statements for July on August 30, 2023. Based on certificates of no objection filed by the respective professionals, no objections were filed to any of the monthly fee statements. Pursuant to the Compensation Procedures Order, the Debtor has paid 80% of fees and 100% of expenses set forth in the each of the estate professionals' monthly fee statements for May, June, and July.

The Compensation Procedures Order provides that first interim fee applications are to be filed not later than October 16, 2023, covering the period ending August 31, 2023. The Debtor intends to file its first interim fee application for that period, on September 19, 2023, and understand that other professionals including A&M, and counsel for the Committee, intend to file on that schedule also. The Debtor hopes for a hearing on the interim fee applications to be scheduled October 17, 2023.

      6. *The Debtor's post-petition operations, revenue, and financial results.*

During the initial months of this Chapter 11 Case, the Debtor focused on a smooth transition into Chapter 11 and obtaining essential first day and other relief. On the Petition Date, the Debtor filed first day motions seeking essential relief with respect to, among other things, employment of the Debtor's claims and noticing agent [Docket No. 5], noticing and confidentiality issues [Docket No. 6], assistance programs for abuse survivors [Docket No. 8], employee compensation and benefit programs [Docket No. 13], adequate assurance for the Debtor's utility providers [Docket No. 14], the Debtor's insurance program [Docket No. 15], and the Debtors' cash management system [Docket No. 16] (collectively, the "First Day Motions"). The Debtor worked constructively with the U.S. Trustee, and, after its appointment, the Committee to resolve disputes and issues regarding the First Day Motions. As a result of these efforts, the Debtor was able to obtain consensual final orders on all but one of the First Day Motions. The Court

entered a final order granting the Debtor's noticing and confidentiality motion (as amended) on July 25, 2023. [Docket No. 292].

The Debtor timely filed its Schedules of Assets and Liabilities [Docket No. 54] (as amended, the "Schedules") and Statement of Financial Affairs [Docket No. 55] (as amended, the "SOFA") on May 22, 2023 [Docket No. 82]. The Debtor also filed Amended Schedules and an Amended SOFA on June 8, 2023 [Docket Nos. 102, 103], and further Amended Schedules on June 21, 2023 [Docket No. 161].

As reflected in the Debtor's most recent monthly operating report ("MOR") for the period ending and July 31, 2023 [Docket Nos. 410] and the Debtor's cash balance remains strong.

7. *The status of any litigation pending in or outside of this Court.*

As mentioned above, the Debtor filed the Insurance Adversary Proceedings on June 22, 2023. Most defendants filed responsive pleadings (either answers or motions to dismiss) on August 31, 2023, pursuant to a stipulation extending the time for all defendants to respond through that date.[3] On September 7, 2023, the Court entered an order granting the Committee's motion to intervene in the Insurance Adversary Proceeding [AP Docket No. 15]. An initial scheduling conference in Insurance Adversary Proceeding was held on September 6, 2023, at which time the Court set a continued scheduling conference for September 26, 2023, corresponding with the Status Conference in the bankruptcy case. Counsel for the Debtor and the insurers have been in discussions regarding the Rule 26 initial discovery conference and anticipate holding the conference later in the week following the filing of this statement.

Responsive pleadings from the two defendants in the Additional Insurance Adversary Proceeding are due on October 2, 2023. An initial scheduling conference has been set in the Additional Insurance Adversary Proceeding for November 1, 2023.

As set forth in Section 1, above, as of May 4, 2023, the Debtor was subject to approximately 332 separate claims by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor. The civil lawsuits alleging sexual abuse are coordinated in the California Superior Court for the County of Alameda, in Judicial Council Coordinated Proceeding 5108 ("JCCP 5108"). Promptly following filing of the petition, the Debtor filed notice of the bankruptcy stay in the abuse cases through the JCCP 5108

---

[3] The Debtor stipulated to further extend the response deadline to September 28, 2023, for certain London market insurers and the California Insurance Guarantee Association.

lead case, which was served on all plaintiffs' counsel firms by electronic service, and in other non-abuse cases not included in the JCCP 5108 process.

On August 1, 2023, the Debtor filed a motion to extend the deadline for removal to the District Court of pending state court actions pursuant to 28 U.S.C. § 1452(a) and Federal Rule of Bankruptcy Procedure 9027 (the "Removal Extension Motion"). There was no opposition to the Removal Extension Motion, and the Court entered an order on August 22, 2023, granting it and extending the deadline for removal through and including February 5, 2024. The enlargement of time obtained through the Removal Extension Motion was simply to afford the Debtor a reasonable amount of time to determine whether to remove any pending actions and ensure that the Debtor does not forfeit valuable rights under 28 U.S.C. § 1452. To date, the Debtor has not determined whether it will seek to remove any state court actions in due course.

In certain pending state court litigation in JCCP 5108 (Cases 22-CV-017872 and 22-CV-023118), certain individual priests employed by the Debtor have retained separate counsel, Dan Webb of Winston & Strawn LLP, to address potential violations of California privacy law.

8. *The Debtor's attendance at a meeting of creditors pursuant to 11 U.S.C. § 341(a), and compliance with requests for information from the U.S. Trustee (including but not limited to requests made in the Initial Debtor Interviews).*

The Section 341 Meeting of Creditors was held and concluded on June 21, 2023. Bishop Michael Barber, Paul Bongiovanni (the Debtor's CFO) and Charles Moore (the Debtor's financial consultant) testified at the Meeting. The Debtor believes it has responded to all outstanding requests for information from the U.S. Trustee.

9. *The status of monthly operating reports, debtor-in-possession (DIP) accounts and required post-petition payments to taxing authorities.*

On June 22, 2023, the Court entered its *Order (1) Pursuant to L.B.R. 2015-2(e) Extending Time to File Monthly Operating Reports, and (2) Modifying Order for Payment of State and Federal Taxes* [Docket No. 165] (the "MOR Order"), extending the time for the Debtor to file its MORs in the initial months of the Chapter 11 Case.

Pursuant to the MOR Order, the Debtor timely filed its MORs for the periods ending May 31, 2023 [Docket No. 277], June 30, 2023 [Docket No. 303], and July 31, 2023 [Docket No. 410]. The Debtor will timely file its MOR for the period ending August 31, 2023, not later than September 25, 2023, as provided in the MOR Order.

With one limited exception, the Debtor has converted all bank accounts to debtor-in-possession accounts. The Debtor is still in the process of converting one remaining bank account from Citibank to a debtor-in-possession account at US Bank. This account is a specialized account managed by, and in the name of, the Debtor's third party administrator for its self-insurance program. The Debtor has informed the U.S. Trustee of its intent to convert this account to a DIP account at US Bank, and will update when the transfer is complete. The balance in this account is maintained at an amount less than $250,000.

All required tax payments have been made.

The Debtor also timely paid its quarterly fees to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6).

  10. *Whether the Debtor has met the requirements for using cash collateral and obtaining credit.*

Not applicable. There are no parties with a security interest in the Debtor's cash.

  11. *Orders entered in the case granting relief from the automatic stay, extending or refusing to extend the automatic stay or determining there is no automatic stay in effect as to any or all creditors.*

None to date.

  12. *Motions to assume or reject any executory contracts or unexpired leases that have been or are expected to be filed.*

On July 7, 2023, the Debtor filed its *Debtor's Motion Under 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006 to Reject Executory Contract with Blackbaud Inc.* [Docket No. 196], by which the Debtor sought to reject a contract with Blackbaud, Inc., relating to analytics services for fundraising, which the Debtor had determined to be no longer beneficial to the estate. No objections were timely filed, and the Court entered an order approving rejection [Docket No. 365].

The Debtor also has two leases of real property as to which it is the Debtor, to which the deadline to assume or reject under Section 365(d)(4) applies. One lease is for the Debtor's use of facilities and grounds in Oakland owned by the Catholic Cathedral Corporation of the East Bay ("CCCEB"), which includes the Cathedral of Christ the Light and the Debtor's Chancery offices. The other lease is for the housing of aged and retired priests at the Mercy Retirement and Care Center in Oakland. On August 15, 2023, the Debtor filed a motion to extend its time to assume or reject these non-residential real property leases [Docket No. 367]. No objections were filed, and the Court entered an order on September 1, 2023, extending the time to assume or reject these leases through December 4, 2023 [Docket No. 421]. The Debtor will further address assumption or rejection of those leases prior to December 4.

No other motions to assume or reject executory contracts or unexpired leases have been filed to date, or are expected in the near term.

13. *Unique issues concerning secured debt, employees, cash collateral, executory contracts, existing management and/or equity owners.*

None to date.

14. *Unusual developments or events that have occurred or are expected to occur in the case, and any other matters that might materially affect the administration of this case.*

None, other than as addressed above.

DATED: September 19, 2023

Respectfully submitted,

**FOLEY & LARDNER LLP**
Jeffrey R. Blease
Thomas F. Carlucci
Shane J. Moses
Ann Marie Uetz
Matthew D. Lee

*/s/ Shane J. Moses*
SHANE J. MOSES

*Counsel for the Debtor and Debtor in Possession*

STATUS CONFERENCE STATEMENT FOR SEPTEMBER 26, 2023
-13-