# EXHIBIT 2

1            UNITED STATES BANKRUPTCY COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3                      -oOo-

4   In Re:                    ) Case No. 4:23-Bk-40523
                              ) Chapter 11
5   THE ROMAN CATHOLIC BISHOP OF  )
    OAKLAND                   ) Oakland, California
6                             ) Friday, December 1, 2023
                   Debtor.    ) 9:00 AM
7   _____ )
                              MOTION FOR ENTRY OF AN ORDER
8                             PERMITTING INSURER EXPERTS
                              AND/OR CONSULTANTS TO HAVE
9                             ACCESS TO SEXUAL ABUSE PROOFS
                              OF CLAIMS AND SUPPLEMENTS
10

11               TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE WILLIAM J. LAFFERTY
             UNITED STATES BANKRUPTCY JUDGE
12

    APPEARANCES (All present by video or telephone):
13  For the Debtor:          MATTHEW D. LEE, ESQ.
                             EILEEN R. RIDLEY, ESQ.
14                           Foley & Lardner LLP
                             555 California Street
15                           Suite 1700
                             San Francisco, CA 94104
16                           (415)434-4484

17  For the Committee:       GABRIELLE L. ALBERT, ESQ.
                             Keller Benvenutti Kim LLP
18                           425 Market Street
                             26th Floor
19                           San Francisco, CA 94105
                             (415)364-6791
20
                             COLLEEN RESTEL, ESQ.
21                           Lowenstein Sandler LLP
                             1 Lowenstein Drive
22                           Roseland, NJ 07068
                             (973)597-6310
23
    Also Present:            Bradley Puklin
24                           London Market Insurers

25

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 2 of 30

```
 1  Also Present (cont'd):      Clinton Cameron
                                 London Market Insurers
 2
                                Tancred Schiavoni
 3                               Pacific Indemnity and PIC

 4                              Mark Plevin
                                 Continental Casualty Company
 5
                                Blaise Curet
 6                               Westport Insurance Corporation

 7

 8

 9

10

11

12

13

14

15

16

17

18  Court Recorder:            DA'WANA CHAMBERS
                                United States Bankruptcy Court
19                              1300 Clay Street
                                Oakland, CA 94612
20

21  Transcriber:               JOCELYN FINOCCHIARO
                                eScribers, LLC
22                              7227 N. 16th Street
                                Suite #207
23                              Phoenix, AZ 85020
                                (800) 257-0885
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.
```

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 3 of 30

 1          OAKLAND, CALIFORNIA, FRIDAY, DECEMBER 1, 2023, 9:00 AM

 2                              -oOo-

 3       (Call to order of the Court.)

 4          THE CLERK:  Good morning.  Please come to attention.

 5   The Court is in session.  This is the United States Bankruptcy

 6   Court, Northern District, California.  The Honorable William J.

 7   Lafferty presiding.

 8          THE COURT:  Okay.  This is Judge Lafferty, and this is

 9   a matter that I especially requested some appearances for, so

10   let's go ahead and call that matter.

11          THE CLERK:  Yes, Your Honor.  Calling line item number

12   1 for the Roman Catholic Bishop of Oakland, case number 23-

13   34052.  The parties are being moved over now, Your Honor.

14          THE COURT:  Okay.

15       (Pause.)

16          THE COURT:  Okay.  So I have nine folks on the screen.

17   Are there more?

18          THE CLERK:  These are the parties who accepted the

19   invite to be moved over, Your Honor.

20          THE COURT:  Okay.  Let's have appearances, please.

21   Why don't we start with the debtor's representatives?

22          MR. LEE:  Morning, Your Honor.  Matt Lee of Foley and

23   Lardner, appearing for the debtor.

24          THE COURT:  Okay.  Good morning.

25          MS. RIDLEY:  Good morning, Your Honor.  Eileen Ridley

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 4
of 30

1  appearing for the debtor, specifically regarding the adversary

2  proceeding as well.

3          THE COURT:  Okay.  Let me hear from the committee's

4  representatives.

5          MS. ALBERT:  Your Honor, Gabrielle Albert, local

6  counsel for the committee.

7          THE COURT:  Okay.  Anybody else for the committee?

8          MS. RESTEL:  Good morning, Your Honor.  Colleen

9  Restel, Lowenstein Sandler, on behalf of the committee.

10          THE COURT:  Okay.  Great.  Okay.  I assume the rest of

11  the appearances are insurance company folks.  Why don't we go

12  ahead and take the roll call there, please?  Okay.

13          MR. PUKLIN:  Good morning, Your Honor.  Brad Puklin

14  and Clinton Cameron for London Market Insurers.

15          THE COURT:  Okay.  I don't think I heard Mr.

16  Schiavoni.  I think he might have been muted.

17          MR. SCHIAVONI:  Sorry, Your Honor.  Tancred Schiavoni

18  for --

19          THE COURT:  Schiavoni.  I'm sorry.

20          MR. SCHIAVONI:  -- for Pacific Indemnity --

21          THE COURT:  I always do that to you.  Thank you.

22          MR. SCHIAVONI:  That's fine, Your Honor.  Pacific

23  Indemnity and PIC.

24          THE COURT:  Okay.

25          MR. PLEVIN:  Good morning, Your Honor.  This is Mark

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 5
of 30

1    Plevin for Continental Casualty Company.

2              THE COURT:  Okay.

3              MR. CURET:  Good morning, Your Honor.  Blaise Curet

4    for Westport Insurance Corporation.

5              THE COURT:  Okay.  That's everybody, I think.  Yes,

6    correct?

7              THE CLERK:  Yes, Your Honor.

8              THE COURT:  Okay.  Well, first of all, thanks to all

9    of you for making yourselves available on a Friday morning.  I

10   hope you all had a nice Thanksgiving.

11             Not long after I adjourned the hearing on the issue of

12   the ability of the insurance companies, experts and/or

13   professionals to review claims information, it occurred to me

14   that I had elided over something that I shouldn't have.  And

15   maybe it's a nonissue or maybe it's exactly what we're arguing

16   about.  I'm not sure.

17             So let me just pose the question to either the

18   committee/debtor and/or the insurance companies.  Is the issue

19   here whether any information may be shared with the insurance

20   companies, experts/professionals, or whether it's just PII?

21             MS. RESTEL:  Good morning, Your Honor.  Colleen Restel

22   on behalf of the committee.  The issue is we have no -- I mean,

23   we have no basis to object to any information that's publicly

24   available being shared.  It's really the proof of claim forms

25   themselves that can make --

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 6
of 30

1          THE COURT:  Well, let me -- can I stop you there?  I

2     mean, in my mind, and you're going to correct me if you think

3     I'm wrong, okay, in my mind, there's a lot of difference

4     between something that could be extracted from a proof of claim

5     form that would tend to show a pattern or would tend to show a

6     tendency or an argument that might be supported by the facts

7     that would be culled from different ways of looking at the

8     information on the claim form, and who the claimant is.  Those

9     are two, in my mind, very different questions.

10          I'm having a hard time understanding why the first

11     category couldn't and shouldn't be shared with not just the

12     insurance companies but also their experts.  If their experts

13     are going to be asked to extrapolate and make other arguments

14     based on what is or isn't in the claim forms, putting aside the

15     PII for a second, so do you have a -- I'd like your reaction to

16     that.

17          MS. RESTEL:  Sure.  I think the distinction there is

18     that the committee doesn't have any opposition to the

19     experts -- the insurers having experts and the claims and all

20     the information being shared.  It's just a matter of the notice

21     and the disclosure to the claimants of who is receiving that

22     information.

23          THE COURT:  Well, again, my same question.  Well, let

24     me phrase it slightly differently.  Is there a reason why a

25     claimant would care that something in their claim that could

1 not be tied to them personally were shared with an expert so

2 that the expert could assist the insurance companies in making

3 arguments about the correct amount of a claim or a matrix or

4 whatever it is you want to say.  Is there a reason why, if that

5 individual is not identified, that that individual could or

6 should care about that?

7         MS. RESTEL:  I think the distinction there is

8 determining what information is personally sensitive .

9         THE COURT:  Yeah.

10         MS. RESTEL:  If we're going to --

11         THE COURT:  No, I hear you.  I hear you.  I mean, the

12 person --

13         MS. RESTEL:  We're talking about the --

14         THE COURT:  I mean, look, the person -- I mean, we'll

15 get to this in a second.  The person's name, I'm not sure why

16 the experts need to know that right away; although, they may

17 have arguments that there are some fraud issues that we might

18 be getting to down the road.  And I'm happy to hear about

19 those.  I'm not sure we're there yet.

20         But something like, for example, maybe the year of

21 birth, without the actual date of birth, would be relevant

22 because maybe one would look at a damage issue differently if

23 the victim were fourteen than if the victim were twenty, for

24 example.  I mean, that's kind of the level at which I'm trying

25 to parse this.

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 8
of 30

1    Now, is there another reason why putting aside

2    something that would link the information, and I deeply believe

3    and agree with you this is traumatic, it's traumatic whether it

4    happened yesterday or thirty years ago, it doesn't matter, it's

5    traumatic, but if we can shield the identity of the person from

6    the rest of the information subject to the insurance companies

7    telling me at some point they may need that as well to do some

8    sort of fraud check or something along those lines or double

9    counting check or whatever you want to call it.  Putting that

10    aside for a second, is there a reason why the rest of the

11    information couldn't and shouldn't be shared so their experts

12    can do what experts do, which is extrapolate from a big bunch

13    of information down to patterns and arguments and tendencies

14    and numbers?

15    MS. RESTEL:  Sure.  I think the difference is

16    something like the year of birth or where the abuse occurred.

17    I think that that's something that definitely, as long as that

18    couldn't be tied back to the claimant, I don't think that

19    that's what the issue is.  I think it more goes to the

20    narrative of the abuse that occurred that a claimant may not

21    want -- they may just want to know the universe of who that's

22    shared with.

23    THE COURT:  Well, again, if it isn't tied back to them

24    individually, what is the -- what's the concern or what's the

25    due process issue if it's not -- if one could not otherwise

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 9
of 30

1    say, okay, that happened to John Doe.

2            MS. RESTEL:  Well, I think that the issue is if you

3    look at the proofs of claims, some of the descriptions of the

4    abuse are very detailed, and sometimes, the description of the

5    abuse (audio interference) necessarily narrow the number of

6    people it could be.

7            THE COURT:  Okay.  Okay.  Okay.  All right.  Does

8    anybody else want to speak to this from the debtor/committee

9    side of things before I turn to the insurance companies and ask

10   them a couple of questions?

11           MR. LEE:  Not for the debtor, Your Honor.

12           THE COURT:  Okay.  Thank you very much, and by the

13   way, thank you, Ms. Restel.  That was extremely helpful.  I

14   appreciate it.

15           Let me turn to the insurance companies and ask, well,

16   you see where I'm going with this, right?  I mean, I can see

17   why it would be very helpful to professional/experts to have

18   information from which they can extract the data that they need

19   to have to do what they're going to do, which is to offer

20   opinions about things like valuations or matrices or whatever

21   else you want to call it, without necessarily, at the moment,

22   having to know what's the name of the person associated with

23   this event.

24           So if I were to carve this that way for now, is that

25   helpful, or do you have another thought about this?

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 10
of 30

1    MR. SCHIAVONI:  So Your Honor, this is Tanc Schiavoni

2  from O'Melveny.  If I can just sort of, like, just put this in

3  context.  I mean, our clients handle personal injury actions

4  all the time, many of which involve all kinds, like putting

5  aside sexual abuse, involve all kinds of sensitive information,

6  medical subject to HIPAA, and other sorts of things.  And you

7  know, we're sensitive to how this material is handled.  We have

8  a huge self-interest for various reasons to be very careful

9  about not sharing it willy nilly, not sharing unless it's

10  really absolutely necessary with experts.

11    So there are some experts we would use to do things,

12  say, for instance, like an allocation of claim periods.  Okay?

13  I don't need to give that person the narrative data in the so-

14  called proofs of claim.  I don't need to do that.  But it is an

15  important issue here about sort of who these people are.

16    I have a claim in a Diocese in New York case where the

17  person has made serial claims, which was the subject of

18  argument just last week in Syracuse, the subject of serial

19  allegations in other cases and before the Social Security

20  Administration, where they found that the person had made

21  fraudulent claims, et cetera, et cetera.  All right.

22    So we need some ability to provide the names of the

23  people to the expert in the right circumstances.

24    THE COURT:  But wait a minute.  Let me ask you a

25  question.  Why is that the expert's job, I mean, if you happen

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 11
of 30

1    to know somebody's filed a claim.  You, Mr. Schiavoni, who are

2    a leading insurance company litigator on these issues, why does

3    your expert have to know the claim for you to match them up

4    with something that you think is troubling in another case or

5    duplicative of another case?

6            MR. SCHIAVONI:  Your Honor, I'm a partner, a lawyer at

7    O'Melveny.

8            THE COURT:  Yeah.

9            MR. SCHIAVONI:  I do not investigate individual claims

10   as a general matter.  It's not my skill set, so to speak, in

11   some instances.  I will say, in that particular case, we were

12   the ones to run the search of the Social Security

13   Administration, but other things we did, in Boy Scouts, there

14   were handwriting experts that looked at and found literally

15   forged proofs of claim, hundreds of them (audio interference).

16           THE COURT:  Okay.  Well, but yeah, there were also

17   80,000 claims.  There were also 80,000 claims in that case, and

18   we're talking about a different universe here.

19           MR. SCHIAVONI:  I hear, Your Honor.

20           THE COURT:  Okay.

21           MR. SCHIAVONI:  But also just to understand this,

22   okay, we submitted an affidavit in connection with this that

23   shows that almost half or more of the claimants publicly filed

24   their complaints with their names in the complaints, who they

25   alleged the abuser was, and some description of the abuse.

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 12
of 30

1        In the tort system, there is not anonymity preventing

2   the parties from exercising their rights under the Federal

3   Rules and the Rules of California practice to use experts.

4   There just isn't.  It's like the experts have to sign

5   confidentiality agreements and be careful.  But you're not --

6   one isn't prohibited.  It's like that's just not what happens

7   in the tort system.  And in fact, they're publicly filing the

8   complaints.  That's what the affidavit says.

9        So we have a huge interest in exercising due care and

10  being cautious, but putting burdens on us from just doing basic

11  investigations if we need to.  And you know, candidly, the

12  other thing that did come out in Boy Scouts, when the trustee

13  assumed the role she now has, and she's appointed with the

14  consent of the claimants, she recently applied and got approval

15  for antifraud protections to be put in place.  She asked for

16  confidentiality on specifically exactly what she was doing to

17  check and confirm the claims, and that was granted by Judge

18  Christine.

19       So to put us in the position of having to disclose

20  exactly who we're using and when we're using them, it's not

21  contemplated by the Federal Rules or by state practice.  For

22  instance, like just to give you an example here, it's like if

23  we were to -- if I were to decide, look, maybe now is the time

24  to use a jury consultant.  Normally, I would not disclose that

25  to my adversary.  I'm not suggesting I want to disclose

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 13
of 30

1  necessarily proofs of claim to a jury consultant, but I

2  wouldn't necessarily go to my adversary and say, oh, let me

3  tell you, now is the time we've selected to use a jury

4  consultant, and here's who it is.  It's invasive to just the

5  basic process here.

6         We would want to be extremely careful here about how

7  we're handling things, but half the claimant's names are

8  already in the public system.  It's like they're in Docket

9  Search if you just look for them there.  Is that responsive to

10 your question, Your Honor?  I think (audio interference).

11         THE COURT:  No.  Partly.  But as usual, like a good

12 lawyer, you're trying to steer me in a different direction.  I

13 appreciate that.  You're really good at that.  Partly, it is.

14         MR. SCHIAVONI:  I got carried away, I think, is what I

15 did.

16         THE COURT:  No, no, that's fine.  I mean, it's fine.

17 I always learn something.  Okay.  That's fine.

18         Does anybody else want to be heard?  I have some

19 further thoughts, but before I express them, why don't I invite

20 anybody else who wants to be heard on the subject?  Nobody?

21 Okay.

22         Well, here's my inclination.  My inclination is to say

23 that we can talk for a moment about what is PII here, and look,

24 I hear a lot of what Mr. Schiavoni is saying.  I'm sure they

25 take very seriously their confidentiality obligations, and I'm

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 14
of 30

1  sure anybody they hire would because they'd be well-advised by

2  O'Melveny to do so.  I have no doubt of that at all.

3  I also realize that there's some level of nonanonymity

4  here if people have been filing things in a state court tort

5  system.  That's arguably a little bit different from what we

6  ask people to do in a proof of claim form, arguably.  I don't

7  necessarily take it that that ethic should hold when we're

8  talking about proofs of claim that we have asked people to file

9  here that have a fair amount of data and a fair amount of

10  narrative that might be very difficult for somebody to put to

11  paper in the first place.  It might be even more difficult for

12  them to know it's being shared with others.

13  But to me, the linchpin of all this is, are we at a

14  place now where I can say that an expert, or other

15  professional, other than the people already covered by the Bar

16  Date Order, needs to know the personal identifying information

17  of a claimant.  And to me, the answer right now is no.

18  There may come a time when that's more important

19  because we've drilled down to something that is much more

20  definable as a problem where that information is going to have

21  to be disclosed to experts because the experts are doing

22  something very particular to determine what's the right

23  universe there, and is there overlap, is there fraud, is there

24  duplication?

25  What I do think we should have right now is some

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 15
of 30

1 protocol that allows the basic information outside of the PII,

2 but for the year of birth to be shared by the insurance

3 companies with their experts/professionals. To the extent that

4 they want to tell me later, there's a reason why we need to get

5 into the PII as well for them to perform some other function

6 that I don't think is really materially in front of us right

7 now, I'm happy to hear that, but I'm not hearing it right now.

8　　　　So that's my direction here. Anybody want to divert

9 me or suggest something else?

10　　　　MR. SCHIAVONI: Your Honor, can I first -- Tanc

11 Schiavoni again. Can I just ask you a question?

12　　　　THE COURT: Yeah.

13　　　　MR. SCHIAVONI: What do you -- I apologize for this,

14 but I'm not quite sure what you're referring to as PII.

15　　　　THE COURT: Well, I mean, for example, if there's --

16 there was -- in the Bar Date Order, if I remember correctly,

17 there was a notion that some -- there was going to be some way

18 to identify a claim without identifying a claimant, so these

19 things are keyed in some way.

20　　　　As far as I'm concerned, if that can be replicated

21 with the experts so that, for example, the name of the claimant

22 or maybe the address of the claimant or something else that

23 might reasonably identify the claimant as that person could be

24 shielded from the experts and professionals, then I think the

25 other information I think is relevant to what experts do. What

1  kind of a claim is this?  How old was the claimant?  What are

2  the circumstances?  How often did it happen?  I think that's

3  all something that an expert is going to need to look at to be

4  able to advise the insurance companies about their responses to

5  things like matrices and the other things that go into the way

6  one resolves these issues.  So is that helpful?

7          MR. SCHIAVONI:  Yeah, I understand.  Thank you, Your

8  Honor.  I understand.  (Audio interference).

9          THE COURT:  All right.  Is anybody else -- no, Mr.

10  Schiavoni, you go ahead.  I keep cutting you off.

11          MR. SCHIAVONI:  I'm sorry.  That leaves us with the

12  ability to sort of basically review the proof of claim to

13  determine what is asserted there.

14          THE COURT:  Yeah.

15          MR. SCHIAVONI:  But Your Honor, if you remember, it's

16  like the proofs of claim are not even signed.  I think we're

17  going to find when we get them, they're not even signed by the

18  claimants.  They're signed by lawyers.  So it's like getting

19  complaints without the names on them.  We're not able to

20  investigate independently what it's -- like, in other words,

21  we're left with having to take in the complaint as fact,

22  instead of investigate separately whether it's like actually

23  reality, so to speak.

24          THE COURT:  But I guess my question is, to what extent

25  are the experts going to help you with that?  That's not

1  what -- that's just not clear to me right now.

2  MR. SCHIAVONI: Okay. So I'll tell you some things,

3  but the more you push us, the more basically sort of we have to

4  get into work product, but (audio interference).

5  THE COURT: Well, all right, then, I'll tell you what,

6  then don't do that. Take my ruling for today and I'm reserving

7  the idea if you need -- if you come back and tell me, well,

8  look, the experts at this stage are specifically going to need

9  more information than they have now, you can tell me that, and

10  the committee can respond, and we can see what we do about

11  giving notice to the claimants or anything else.

12  But for today's purposes, I think that the basic

13  information in the proof of claim form should be shared, should

14  be shareable, by the insurance companies with their experts

15  without getting into what I'll call personal identifying

16  information. Okay?

17  MR. SCHIAVONI: Your Honor, may I ask this? May we,

18  at least, match for the experts for those claimants for whom we

19  have publicly filed complaints, can we match those names to the

20  to the POCs? I mean, we can take them with redactions, but

21  we're able to --

22  THE COURT: I can imagine why that might strike the

23  committee as problematic, so let me throw that to the

24  committee.

25  MS. RESTEL: Sure. Again, Your Honor, the committee

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 18
of 30

1  doesn't have any issue with the publicly filed proofs of

2  claim -- publicly filed complaints being shared, but it's a

3  matter of matching it with the complaint and putting those

4  pieces together.  Suddenly, some of that PII may be shared or

5  more information may be shared, and we just don't see the need

6  for that at this time.

7          THE COURT:  Well, let me resolve it this way.  Okay?

8  I will leave that an open issue.  Okay?  I will let Mr.

9  Schiavoni or others tell me that, no, we need to do that match

10 up.  And at that point, I mean, the difference is we're

11 arguably asking for different information for arguably

12 different reasons and arguably at greater levels of detail

13 depending on whether we're in a complaint or whether we're in a

14 proof of claim form with a supplement.

15          At that point, Ms. Restel, it's going to be up to you

16 to convince me that those differences are significant enough

17 that it matters, that I shouldn't let Mr. Schiavoni match those

18 up.  Okay?  Because I think that's going to be the issue.  I

19 mean, he may well be right that, look, it's public, and you may

20 say, well, it's public, but there's something about the

21 matching that's problematic because we're asking for something

22 more, something different, something more embarrassing,

23 something more traumatic in the proof of claim form.

24          You can make that argument, and I'll decide it on that

25 basis.  Okay?  Makes sense?

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 19
of 30

1          MS. RESTEL:  Understood, Your Honor.

2          THE COURT:  All right.  Thank you very much.  So to

3   this extent, I am granting the insurance companies motion to

4   the extent I'm suggesting today, that I think that information,

5   other than what I'm loosely calling PII, should be shareable

6   with the insurance companies, experts/professionals.  And I

7   will reserve for another day the question of whether other

8   information, including this matching information, should be

9   available to the experts.

10          And I'll let Mr. Schiavoni and others make that

11   argument when it's appropriate to do so.  I'll let the

12   committee respond in the way I've suggested and possibly other

13   ways as well.  All right?

14          Okay.  Thank you very much, everybody.  And I'll see

15   you guys on the 19th, right?  Okay.  Thank you.

16          THE CLERK:  Your Honor, Mr. Plevin has his hand up.

17          THE COURT:  I'm sorry.  Somebody has their hand up?

18   Yeah.

19          MR. PLEVIN:  Your Honor, Mark Plevin for Continental.

20   I had a question that perhaps the committee or the debtor could

21   answer.

22          THE COURT:  Sure.

23          MR. PLEVIN:  And I ask this question because I'm

24   confused in my mind as to the different proof of claim forms

25   and different cases and the drafts that we had that were

1  accepted in part and not accepted in part.  But at least some

2  of these cases or drafts being negotiated among the cases,

3  there's a checkbox for a claimant to say whether they want to

4  maintain anonymity because some claimants don't.  Some

5  claimants are happy to have their information public.  I mean,

6  we've seen in other cases news conferences where claimants

7  provide information about their claims.

8          And it would seem to me that if we have that feature

9  on these proofs of claim and if a claimant has indicated

10 through a checkbox that they don't want to maintain anonymity,

11 that that information should not be subject to the restrictions

12 that you've just ordered.

13         THE COURT:  You may be right.  So let me turn that to

14 the committee, and then, depending on their answer, I've got

15 another thought.  Okay?

16         MS. RESTEL:  Thank you, Your Honor.  I think I would

17 need to go back.  As Mr. Plevin said, all of these proof of

18 claim forms are a little different.  I would need to take a

19 minute to pull it up to see if that checkbox is there.

20         THE COURT:  Yeah.

21         MS. RESTEL:  I don't recall it being there, and I

22 recall there being specific language that proofs of claim are

23 all confidential.  But again, I don't want to misspeak, and I

24 would have to go back and look.

25         THE COURT:  Well, I think that's a fair response.  And

1 when you do so, I know what I'll be doing, I'll be looking at

2 the claim Bar Date Order to see if there's anything in there

3 that might have made it somewhat ambiguous what the effect of

4 checking that box would be.  I don't remember that either, but

5 that will be the direction I'll be going.

6       So if you wouldn't mind checking that and having a

7 conversation with Mr. Plevin, and if that's clarifiable in the

8 order that Mr. Schiavoni and Mr. Plevin, I suggest, you're

9 going to be drafting, then that's fine.  Okay?

10       MS. RESTEL:  No problem, Your Honor.

11       THE CLERK:  Your Honor, Mr. Schiavoni also

12 disconnected.

13       THE COURT:  Mr. Schiavoni might have dropped off.  Was

14 that --

15       THE CLERK:  Yes, Your Honor.  Yes, Your Honor.

16       THE COURT:  Do we know if that was --

17       THE CLERK:  I believe Mr. Schiavoni thought the

18 hearing had concluded.

19       THE COURT:  Well, Mr. Schiavoni has left us.  Did

20 you --

21       MR. PLEVIN:  I will talk to him, Your Honor.  Do you

22 want him to draft the order?

23       THE COURT:  Yeah.  It can be for the reasons stated on

24 the record.  If he needs me to do it because he wants me to

25 articulate something I said, he can let me know.  But I think

1  that, as usual, we have a fairly broad discussion of these

2  things when I have the privilege of having all of you in front

3  of me.  So for me, for the reasons stated on the record is

4  usually sufficient.  Okay?

5          MR. PLEVIN:  Yeah, I will talk to him, Your Honor.

6          THE COURT:  All right.  Thank you very much.

7          MR. PLEVIN:  Thank you, Your Honor.

8          THE COURT:  Thank you.

9          MR. PLEVIN:  Bye-bye.

10          THE COURT:  See you guys in two weeks.

11     (Whereupon these proceedings were concluded at 9:25 AM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 23
of 30

1                    I N D E X

2  RULINGS:                              PAGE LINE

3  Motion partially granted.             19     2

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3    I, Jocelyn Finocchiaro, certify that the foregoing transcript

4    is a true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ JOCELYN FINOCCHIARO, CDLT-304

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  December 9, 2023

16

17

18

19

20

21

22

23

24

25

## A

**ability (3)**
5:12;10:22;16:12
**able (3)**
16:4,19;17:21
**absolutely (1)**
10:10
**abuse (6)**
8:16,20;9:4,5;10:5;
11:25
**abuser (1)**
11:25
**accepted (3)**
3:18;20:1,1
**actions (1)**
10:3
**actual (1)**
7:21
**actually (1)**
16:22
**address (1)**
15:22
**adjourned (1)**
5:11
**Administration (2)**
10:20;11:13
**adversary (3)**
4:1;12:25;13:2
**advise (1)**
16:4
**affidavit (2)**
11:22;12:8
**again (5)**
6:23;8:23;15:11;
17:25;20:23
**ago (1)**
8:4
**agree (1)**
8:3
**agreements (1)**
12:5
**ahead (3)**
3:10;4:12;16:10
**Albert (2)**
4:5,5
**allegations (1)**
10:19
**alleged (1)**
11:25
**allocation (1)**
10:12
**allows (1)**
15:1
**almost (1)**
11:23
**along (1)**
8:8
**although (1)**
7:16
**always (2)**
4:21;13:17

**ambiguous (1)**
21:3
**among (1)**
20:2
**amount (3)**
7:3;14:9,9
**and/or (2)**
5:12,18
**anonymity (3)**
12:1;20:4,10
**antifraud (1)**
12:15
**apologize (1)**
15:13
**appearances (3)**
3:9,20;4:11
**appearing (2)**
3:23;4:1
**applied (1)**
12:14
**appointed (1)**
12:13
**appreciate (2)**
9:14;13:13
**appropriate (1)**
19:11
**approval (1)**
12:14
**arguably (5)**
14:5,6;18:11,11,12
**arguing (1)**
5:15
**argument (4)**
6:6;10:18;18:24;
19:11
**arguments (4)**
6:13;7:3,17;8:13
**articulate (1)**
21:25
**aside (4)**
6:14;8:1,10;10:5
**asserted (1)**
16:13
**assist (1)**
7:2
**associated (1)**
9:22
**assume (1)**
4:10
**assumed (1)**
12:13
**attention (1)**
3:4
**audio (5)**
9:5;11:15;13:10;
16:8;17:4
**available (3)**
5:9,24;19:9
**away (2)**
7:16;13:14

## B

**back (5)**
8:18,23;17:7;20:17,
24
**Bankruptcy (1)**
3:5
**Bar (3)**
14:15;15:16;21:2
**based (1)**
6:14
**basic (4)**
12:10;13:5;15:1;
17:12
**basically (2)**
16:12;17:3
**basis (2)**
5:23;18:25
**behalf (2)**
4:9;5:22
**big (1)**
8:12
**birth (4)**
7:21,21;8:16;15:2
**Bishop (1)**
3:12
**bit (1)**
14:5
**Blaise (1)**
5:3
**box (1)**
21:4
**Boy (2)**
11:13;12:12
**Brad (1)**
4:13
**broad (1)**
22:1
**bunch (1)**
8:12
**burdens (1)**
12:10
**Bye-bye (1)**
22:9

## C

**CALIFORNIA (3)**
3:1,6;12:3
**Call (6)**
3:3,10;4:12;8:9;
9:21;17:15
**called (1)**
10:14
**Calling (2)**
3:11;19:5
**Cameron (1)**
4:14
**can (21)**
5:25;6:1;8:5,12;
9:16,18;10:2;13:23;
14:14;15:10,11,20;
17:9,10,19,20,22;
18:24;21:23,25
**candidly (1)**

12:11
**care (3)**
6:25;7:6;12:9
**careful (3)**
10:8;12:5;13:6
**carried (1)**
13:14
**carve (1)**
9:24
**case (6)**
3:12;10:16;11:4,5,
11,17
**cases (5)**
10:19;19:25;20:2,2,
6
**Casualty (1)**
5:1
**category (1)**
6:11
**Catholic (1)**
3:12
**cautious (1)**
12:10
**cetera (2)**
10:21,21
**check (3)**
8:8,9;12:17
**checkbox (3)**
20:3,10,19
**checking (2)**
21:4,6
**Christine (1)**
12:18
**circumstances (2)**
10:23;16:2
**claim (28)**
5:24;6:4,8,14,25;
7:3;10:12,14,16;11:1,
3,15;13:1;14:6,8;
15:18;16:1,12,16;
17:13;18:2,14,23;
19:24;20:9,18,22;
21:2
**claimant (12)**
6:8,25;8:18,20;
14:17;15:18,21,22,23;
16:1;20:3,9
**claimants (9)**
6:21;11:23;12:14;
16:18;17:11,18;20:4,
5,6
**claimant's (1)**
13:7
**claims (10)**
5:13;6:19;9:3;
10:17,21;11:9,17,17;
12:17;20:7
**clarifiable (1)**
21:7
**clear (1)**
17:1
**CLERK (8)**
3:4,11,18;5:7;

19:16;21:11,15,17
**clients (1)**
10:3
**Clinton (1)**
4:14
**Colleen (2)**
4:8;5:21
**committee (12)**
4:6,7,9;5:22;6:18;
17:10,23,24,25;19:12,
20;20:14
**committee/debtor (1)**
5:18
**committee's (1)**
4:3
**companies (13)**
5:12,18,20;6:12;
7:2;8:6;9:9,15;15:3;
16:4;17:14;19:3,6
**company (3)**
4:11;5:1;11:2
**complaint (3)**
16:21;18:3,13
**complaints (6)**
11:24,24;12:8;
16:19;17:19;18:2
**concern (1)**
8:24
**concerned (1)**
15:20
**concluded (2)**
21:18;22:11
**conferences (1)**
20:6
**confidential (1)**
20:23
**confidentiality (3)**
12:5,16;13:25
**confirm (1)**
12:17
**confused (1)**
19:24
**connection (1)**
11:22
**consent (1)**
12:14
**consultant (3)**
12:24;13:1,4
**contemplated (1)**
12:21
**context (1)**
10:3
**Continental (2)**
5:1;19:19
**conversation (1)**
21:7
**convince (1)**
18:16
**Corporation (1)**
5:4
**correctly (1)**
15:16
**counsel (1)**

Case: 23-40523    Doc# 781-2    Filed: 01/16/24    Entered: 01/16/24 15:52:36    Page 26
of 30

4:6
**counting (1)**
8:9
**couple (1)**
9:10
**Court (54)**
3:3,5,6,8,14,16,20,
24;4:3,7,10,15,19,21,
24;5:2,5,8;6:1,23;7:9,
11,14;8:23;9:7,12;
10:24;11:8,16,20;
13:11,16;14:4;15:12,
15;16:9,14,24;17:5,
22;18:7;19:2,17,22;
20:13,20,25;21:13,16,
19,23;22:6,8,10
**covered (1)**
14:15
**culled (1)**
6:7
**CURET (2)**
5:3,3
**cutting (1)**
16:10

**D**

**damage (1)**
7:22
**data (3)**
9:18;10:13;14:9
**date (4)**
7:21;14:16;15:16;
21:2
**day (1)**
19:7
**debtor (4)**
3:23;4:1;9:11;
19:20
**debtor/committee (1)**
9:8
**debtor's (1)**
3:21
**DECEMBER (1)**
3:1
**decide (2)**
12:23;18:24
**deeply (1)**
8:2
**definable (1)**
14:20
**definitely (1)**
8:17
**depending (2)**
18:13;20:14
**description (2)**
9:4;11:25
**descriptions (1)**
9:3
**detail (1)**
18:12
**detailed (1)**
9:4

**determine (2)**
14:22;16:13
**determining (1)**
7:8
**difference (3)**
6:3;8:15;18:10
**differences (1)**
18:16
**different (11)**
6:7,9;11:18;13:12;
14:5;18:11,12,22;
19:24,25;20:18
**differently (2)**
6:24;7:22
**difficult (2)**
14:10,11
**Diocese (1)**
10:16
**direction (3)**
13:12;15:8;21:5
**disclose (3)**
12:19,24,25
**disclosed (1)**
14:21
**disclosure (1)**
6:21
**disconnected (1)**
21:12
**discussion (1)**
22:1
**distinction (2)**
6:17;7:7
**District (1)**
3:6
**divert (1)**
15:8
**Docket (1)**
13:8
**Doe (1)**
9:1
**double (1)**
8:8
**doubt (1)**
14:2
**down (3)**
7:18;8:13;14:19
**draft (1)**
21:22
**drafting (1)**
21:9
**drafts (2)**
19:25;20:2
**drilled (1)**
14:19
**dropped (1)**
21:13
**due (2)**
8:25;12:9
**duplication (1)**
14:24
**duplicative (1)**
11:5

9:13;13:6

**E**

**effect (1)**
21:3
**Eileen (1)**
3:25
**either (2)**
5:17;21:4
**elided (1)**
5:14
**else (9)**
4:7;9:8,21;13:18,
20;15:9,22;16:9;
17:11
**embarrassing (1)**
18:22
**enough (1)**
18:16
**especially (1)**
3:9
**et (2)**
10:21,21
**ethic (1)**
14:7
**even (3)**
14:11;16:16,17
**event (1)**
9:23
**everybody (2)**
5:5;19:14
**exactly (3)**
5:15;12:16,20
**example (5)**
7:20,24;12:22;
15:15,21
**exercising (2)**
12:2,9
**expert (6)**
7:1,2;10:23;11:3;
14:14;16:3
**experts (23)**
5:12;6:12,12,19,19;
7:16;8:11,12;10:10,
11;11:14;12:3,4;
14:21,21;15:21,24,25;
16:25;17:8,14,18;
19:9
**expert's (1)**
10:25
**experts/professionals (3)**
5:20;15:3;19:6
**express (1)**
13:19
**extent (4)**
15:3;16:24;19:3,4
**extract (1)**
9:18
**extracted (1)**
6:4
**extrapolate (2)**
6:13;8:12
**extremely (2)**

**F**

**fact (2)**
12:7;16:21
**facts (1)**
6:6
**fair (3)**
14:9,9;20:25
**fairly (1)**
22:1
**far (1)**
15:20
**feature (1)**
20:8
**Federal (2)**
12:2,21
**file (1)**
14:8
**filed (5)**
11:1,23;17:19;18:1,
2
**filing (2)**
12:7;14:4
**find (1)**
16:17
**fine (5)**
4:22;13:16,16,17;
21:9
**first (4)**
5:8;6:10;14:11;
15:10
**Foley (1)**
3:22
**folks (2)**
3:16;4:11
**forged (1)**
11:15
**form (6)**
6:5,8;14:6;17:13;
18:14,23
**forms (4)**
5:24;6:14;19:24;
20:18
**found (2)**
10:20;11:14
**fourteen (1)**
7:23
**fraud (3)**
7:17;8:8;14:23
**fraudulent (1)**
10:21
**FRIDAY (2)**
3:1;5:9
**front (2)**
15:6;22:2
**function (1)**
15:5
**further (1)**
13:19

**G**

**Gabrielle (1)**
4:5
**general (1)**
11:10
**giving (1)**
17:11
**goes (1)**
8:19
**Good (10)**
3:4,24,25;4:8,13,
25;5:3,21;13:11,13
**granted (1)**
12:17
**granting (1)**
19:3
**Great (1)**
4:10
**greater (1)**
18:12
**guess (1)**
16:24
**guys (2)**
19:15;22:10

**H**

**half (2)**
11:23;13:7
**hand (2)**
19:16,17
**handle (1)**
10:3
**handled (1)**
10:7
**handling (1)**
13:7
**handwriting (1)**
11:14
**happen (2)**
10:25;16:2
**happened (2)**
8:4;9:1
**happens (1)**
12:6
**happy (3)**
7:18;15:7;20:5
**hard (1)**
6:10
**hear (7)**
4:3;7:11,11,18;
11:19;13:24;15:7
**heard (3)**
4:15;13:18,20
**hearing (3)**
5:11;15:7;21:18
**help (1)**
16:25
**helpful (4)**
9:13,17,25;16:6
**here's (2)**

13:4,22
**HIPAA (1)**
10:6
**hire (1)**
14:1
**hold (1)**
14:7
**Honor (35)**
3:11,13,19,22,25;
4:5,8,13,17,22,25;5:3,
7,21;9:11;10:1;11:6,
19;13:10;15:10;16:8,
15;17:17,25;19:1,16,
19;20:16;21:10,11,15,
15,21;22:5,7
**Honorable (1)**
3:6
**hope (1)**
5:10
**huge (2)**
10:8;12:9
**hundreds (1)**
11:15

## I

**idea (1)**
17:7
**identified (1)**
7:5
**identify (2)**
15:18,23
**identifying (3)**
14:16;15:18;17:15
**identity (1)**
8:5
**imagine (1)**
17:22
**important (2)**
10:15;14:18
**inclination (2)**
13:22,22
**including (1)**
19:8
**Indemnity (2)**
4:20,23
**independently (1)**
16:20
**indicated (1)**
20:9
**individual (3)**
7:5,5;11:9
**individually (1)**
8:24
**information (28)**
5:13,19,23;6:8,20,
22;7:8;8:2,6,11,13;
9:18;10:5;14:16,20;
15:1,25;17:9,13,16;
18:5,11;19:4,8,8;20:5,
7,11
**injury (1)**
10:3

**instance (2)**
10:12;12:22
**instances (1)**
11:11
**instead (1)**
16:22
**insurance (16)**
4:11;5:4,12,18,19;
6:12;7:2;8:6;9:9,15;
11:2;15:2;16:4;17:14;
19:3,6
**Insurers (2)**
4:14;6:19
**interest (1)**
12:9
**interference (5)**
9:5;11:15;13:10;
16:8;17:4
**into (4)**
15:5;16:5;17:4,15
**invasive (1)**
13:4
**investigate (3)**
11:9;16:20,22
**investigations (1)**
12:11
**invite (2)**
3:19;13:19
**involve (2)**
10:4,5
**issue (11)**
5:11,18,22;7:22;
8:19,25;9:2;10:15;
18:1,8,18
**issues (3)**
7:17;11:2;16:6
**item (1)**
3:11

## J

**job (1)**
10:25
**John (1)**
9:1
**Judge (2)**
3:8;12:17
**jury (3)**
12:24;13:1,3

## K

**keep (1)**
16:10
**keyed (1)**
15:19
**kind (2)**
7:24;16:1
**kinds (2)**
10:4,5

## L

**Lafferty (2)**
3:7,8
**language (1)**
20:22
**Lardner (1)**
3:23
**last (1)**
10:18
**later (1)**
15:4
**lawyer (2)**
11:6;13:12
**lawyers (1)**
16:18
**leading (1)**
11:2
**learn (1)**
13:17
**least (2)**
17:18;20:1
**leave (1)**
18:8
**leaves (1)**
16:11
**Lee (3)**
3:22,22;9:11
**left (2)**
16:21;21:19
**level (2)**
7:24;14:3
**levels (1)**
18:12
**linchpin (1)**
14:13
**line (1)**
3:11
**lines (1)**
8:8
**link (1)**
8:2
**literally (1)**
11:14
**litigator (1)**
11:2
**little (2)**
14:5;20:18
**local (1)**
4:5
**London (1)**
4:14
**long (2)**
5:11;8:17
**look (10)**
7:14,22;9:3;12:23;
13:9,23;16:3;17:8;
18:19;20:24
**looked (1)**
11:14
**looking (2)**
6:7;21:1
**loosely (1)**
19:5
**lot (2)**

6:3;13:24
**Lowenstein (1)**
4:9

## M

**maintain (2)**
20:4,10
**Makes (1)**
18:25
**making (2)**
5:9;7:2
**many (1)**
10:4
**Mark (2)**
4:25;19:19
**Market (1)**
4:14
**match (5)**
11:3;17:18,19;18:9,
17
**matching (3)**
18:3,21;19:8
**material (1)**
10:7
**materially (1)**
15:6
**matrices (2)**
9:20;16:5
**matrix (1)**
7:3
**Matt (1)**
3:22
**matter (6)**
3:9,10;6:20;8:4;
11:10;18:3
**matters (1)**
18:17
**may (13)**
5:19;7:16;8:7,20,
21;14:18;17:17,17;
18:4,5,19,19;20:13
**maybe (6)**
5:15,15;7:20,22;
12:23;15:22
**mean (15)**
5:22;6:2;7:11,14,
14,24;9:16;10:3,25;
13:16;15:15;17:20;
18:10,19;20:5
**medical (1)**
10:6
**might (9)**
4:16;6:6;7:17;
14:10,11;15:23;
17:22;21:3,13
**mind (5)**
6:2,3,9;19:24;21:6
**minute (2)**
10:24;20:19
**misspeak (1)**
20:23
**moment (2)**

9:21;13:23
**more (13)**
3:17;8:19;11:23;
14:11,18,19;17:3,3,9;
18:5,22,22,23
**morning (10)**
3:4,22,24,25;4:8,13,
25;5:3,9,21
**motion (1)**
19:3
**moved (2)**
3:13,19
**much (5)**
9:12;14:19;19:2,14;
22:6
**muted (1)**
4:16

## N

**name (3)**
7:15;9:22;15:21
**names (5)**
10:22;11:24;13:7;
16:19;17:19
**narrative (3)**
8:20;10:13;14:10
**narrow (1)**
9:5
**necessarily (5)**
9:5,21;13:1,2;14:7
**necessary (1)**
10:10
**need (15)**
7:16;8:7;9:18;
10:13,14,22;12:11;
15:4;16:3;17:7,8;
18:5,9;20:17,18
**needs (2)**
14:16;21:24
**negotiated (1)**
20:2
**New (1)**
10:16
**news (1)**
20:6
**nice (1)**
5:10
**nilly (1)**
10:9
**nine (1)**
3:16
**Nobody (1)**
13:20
**nonanonymity (1)**
14:3
**nonissue (1)**
5:15
**Normally (1)**
12:24
**Northern (1)**
3:6
**notice (2)**

Case: 23-40523    Doc# 781-2    Filed: 01/16/24    Entered: 01/16/24 15:52:36    Page 28
of 30

6:20;17:11
**notion (1)**
15:17
**number (3)**
3:11;12;9:5
**numbers (1)**
8:14

### O

**OAKLAND (2)**
3:1,12
**object (1)**
5:23
**obligations (1)**
13:25
**occurred (3)**
5:13;8:16,20
**off (2)**
16:10;21:13
**offer (1)**
9:19
**often (1)**
16:2
**old (1)**
16:1
**O'Melveny (3)**
10:2;11:7;14:2
**one (4)**
7:22;8:25;12:6;
16:6
**ones (1)**
11:12
**oOo- (1)**
3:2
**open (1)**
18:8
**opinions (1)**
9:20
**opposition (1)**
6:18
**order (6)**
3:3;14:16;15:16;
21:2,8,22
**ordered (1)**
20:12
**others (3)**
14:12;18:9;19:10
**otherwise (1)**
8:25
**out (1)**
12:12
**outside (1)**
15:1
**over (3)**
3:13,19;5:14
**overlap (1)**
14:23

### P

**Pacific (2)**
4:20,22

**paper (1)**
14:11
**parse (1)**
7:25
**part (2)**
20:1,1
**particular (2)**
11:11;14:22
**parties (3)**
3:13,18;12:2
**Partly (2)**
13:11,13
**partner (1)**
11:6
**pattern (1)**
6:5
**patterns (1)**
8:13
**Pause (1)**
3:15
**people (7)**
9:6;10:15,23;14:4,
6,8,15
**perform (1)**
15:5
**perhaps (1)**
19:20
**periods (1)**
10:12
**person (8)**
7:12,14;8:5;9:22;
10:13,17,20;15:23
**personal (3)**
10:3;14:16;17:15
**personally (2)**
7:1,8
**person's (1)**
7:15
**phrase (1)**
6:24
**PIC (1)**
4:23
**pieces (1)**
18:4
**PII (8)**
5:20;6:15;13:23;
15:1,5,14;18:4;19:5
**place (3)**
12:15;14:11,14
**Please (3)**
3:4,20;4:12
**PLEVIN (13)**
4:25;5:1;19:16,19,
19,23;20:17;21:7,8,
21;22:5,7,9
**POCs (1)**
17:20
**point (3)**
8:7;18:10,15
**pose (1)**
5:17
**position (1)**
12:19

**possibly (1)**
19:12
**practice (2)**
12:3,21
**presiding (1)**
3:7
**preventing (1)**
12:1
**privilege (1)**
22:2
**problem (2)**
14:20;21:10
**problematic (2)**
17:23;18:21
**proceeding (1)**
4:2
**proceedings (1)**
22:11
**process (2)**
8:25;13:5
**product (1)**
17:4
**professional (1)**
14:15
**professional/experts (1)**
9:17
**professionals (2)**
5:13;15:24
**prohibited (1)**
12:6
**proof (9)**
5:24;6:4;14:6;
16:12;17:13;18:14,
23;19:24;20:17
**proofs (9)**
9:3;10:14;11:15;
13:1;14:8;16:16;18:1;
20:9,22
**protections (1)**
12:15
**protocol (1)**
15:1
**provide (2)**
10:22;20:7
**public (4)**
13:8;18:19,20;20:5
**publicly (6)**
5:23;11:23;12:7;
17:19;18:1,2
**Puklin (2)**
4:13,13
**pull (1)**
20:19
**purposes (1)**
17:12
**push (1)**
17:3
**put (4)**
10:2;12:15,19;
14:10
**putting (2)**
6:14;8:1,9;10:4;
12:10;18:3

### Q

**quite (1)**
15:14

### R

**reaction (1)**
6:15
**reality (1)**
16:23
**realize (1)**
14:3
**really (4)**
5:24;10:10;13:13;
15:6
**reason (5)**
6:24;7:4;8:1,10;
15:4
**reasonably (1)**
15:23
**reasons (4)**
10:8;18:12;21:23;
22:3
**recall (2)**
20:21,22
**receiving (1)**
6:21
**recently (1)**
12:14
**record (2)**
21:24;22:3
**redactions (1)**
17:20
**referring (1)**
15:14
**regarding (1)**
4:1
**relevant (2)**
7:21;15:25
**remember (3)**
15:16;16:15;21:4
**replicated (1)**
15:20
**representatives (2)**
3:21;4:4
**requested (1)**
3:9
**reserve (1)**
19:7
**reserving (1)**
17:6
**resolve (1)**
18:7
**resolves (1)**
16:6
**respond (2)**
17:10;19:12
**response (1)**
20:25
**responses (1)**
16:4

**responsive (1)**
13:9
**rest (3)**
4:10;8:6,10
**RESTEL (17)**
4:8;9:5;21;6:17;
7:7,10,13;8:15;9:2,
13;17:25;18:15;19:1;
20:16,21;21:10
**restrictions (1)**
20:11
**review (2)**
5:13;16:12
**Ridley (1)**
3:25,25
**right (19)**
7:16;9:7,16;10:21,
23;14:17,22,25;15:6,
7;16:9;17:1,5;18:19;
19:2,13,15;20:13;
22:6
**rights (1)**
12:2
**road (1)**
7:18
**role (1)**
12:13
**roll (1)**
4:12
**Roman (1)**
3:12
**Rules (3)**
12:3,3,21
**ruling (1)**
17:6
**run (1)**
11:12

### S

**same (1)**
6:23
**Sandler (1)**
4:9
**saying (1)**
13:24
**Schiavoni (32)**
4:16,17,17,19,20,
22;10:1,1;11:1,6,9,19,
21;13:14,24;15:10,11,
13;16:7,10,11,15;
17:2,17;18:9,17;
19:10;21:8,11,13,17,
19
**Scouts (2)**
11:13;12:12
**screen (1)**
3:16
**search (2)**
11:12;13:9
**second (3)**
6:15;7:15;8:10
**Security (2)**

Case: 23-40523    Doc# 781-2    Filed: 01/16/24    Entered: 01/16/24 15:52:36    Page 29
of 30

10:19;11:12
**seem (1)**
20:8
**selected (1)**
13:3
**self-interest (1)**
10:8
**sense (1)**
18:25
**sensitive (3)**
7:8;10:5,7
**separately (1)**
16:22
**serial (2)**
10:17,18
**seriously (1)**
13:25
**session (1)**
3:5
**set (1)**
11:10
**sexual (1)**
10:5
**shareable (2)**
17:14;19:5
**shared (13)**
5:19,24;6:11,20;
7:1;8:11,22;14:12;
15:2;17:13;18:2,4,5
**sharing (2)**
10:9,9
**shield (1)**
8:5
**shielded (1)**
15:24
**show (2)**
6:5,5
**shows (1)**
11:23
**side (1)**
9:9
**sign (1)**
12:4
**signed (3)**
16:16,17,18
**significant (1)**
18:16
**skill (1)**
11:10
**slightly (1)**
6:24
**so- (1)**
10:13
**Social (2)**
10:19;11:12
**somebody (2)**
14:10;19:17
**somebody's (1)**
11:1
**sometimes (1)**
9:4
**somewhat (1)**
21:3

**Sorry (4)**
4:17,19;16:11;
19:17
**sort (5)**
8:8;10:2,15;16:12;
17:3
**sorts (1)**
10:6
**speak (3)**
9:8;11:10;16:23
**specific (1)**
20:22
**specifically (3)**
4:1;12:16;17:8
**stage (1)**
17:8
**start (1)**
3:21
**state (2)**
12:21;14:4
**stated (2)**
21:23;22:3
**States (1)**
3:5
**steer (1)**
13:12
**stop (1)**
6:1
**strike (1)**
17:22
**subject (6)**
8:6;10:6,17,18;
13:20;20:11
**submitted (1)**
11:22
**Suddenly (1)**
18:4
**sufficient (1)**
22:4
**suggest (2)**
15:9;21:8
**suggested (1)**
19:12
**suggesting (2)**
12:25;19:4
**supplement (1)**
18:14
**supported (1)**
6:6
**sure (10)**
5:16;6:17;7:15,19;
8:15;13:24;14:1;
15:14;17:25;19:22
**Syracuse (1)**
10:18
**system (4)**
12:1,7;13:8;14:5

**T**

**talk (3)**
13:23;21:21;22:5
**talking (3)**

7:13;11:18;14:8
**Tanc (2)**
10:1;15:10
**Tancred (1)**
4:17
**telling (1)**
8:7
**tend (2)**
6:5,5
**tendencies (1)**
8:13
**tendency (1)**
6:6
**thanks (1)**
5:8
**Thanksgiving (1)**
5:10
**thirty (1)**
8:4
**thought (3)**
9:25;20:15;21:17
**thoughts (1)**
13:19
**throw (1)**
17:23
**tied (3)**
7:1;8:18,23
**today (1)**
17:6;19:4
**today's (1)**
17:12
**together (1)**
18:4
**tort (3)**
12:1,7;14:4
**traumatic (4)**
8:3,3,5;18:23
**troubling (1)**
11:4
**trustee (1)**
12:12
**trying (2)**
7:24;13:12
**turn (3)**
9:9,15;20:13
**twenty (1)**
7:23
**two (2)**
6:9;22:10

**U**

**under (1)**
12:2
**Understood (1)**
19:1
**United (1)**
3:5
**universe (3)**
8:21;11:18;14:23
**unless (1)**
10:9
**up (7)**

11:3;18:10,15,18;
19:16,17;20:19
**use (4)**
10:11;12:3,24;13:3
**using (2)**
12:20,20
**usual (2)**
13:11;22:1
**usually (1)**
22:4

**V**

**valuations (1)**
9:20
**various (1)**
10:8
**victim (2)**
7:23,23

**W**

**wait (1)**
10:24
**wants (2)**
13:20;21:24
**way (7)**
9:13,24;15:17,19;
16:5;18:7;19:12
**ways (2)**
6:7;19:13
**week (1)**
10:18
**weeks (1)**
22:10
**well-advised (1)**
14:1
**Westport (1)**
5:4
**what's (4)**
8:24,24;9:22;14:22
**Whereupon (1)**
22:11
**William (1)**
3:6
**willy (1)**
10:9
**without (5)**
7:21;9:21;15:18;
16:19;17:15
**words (1)**
16:20
**work (1)**
17:4
**wrong (1)**
6:3

**Y**

**year (3)**
7:20;8:16;15:2
**years (1)**
8:4

**yesterday (1)**
8:4
**York (1)**
10:16

**1**

**1 (2)**
3:1,12
**19th (1)**
19:15

**2**

**2023 (1)**
3:1
**23- (1)**
3:12

**3**

**34052 (1)**
3:13

**8**

**80,000 (2)**
11:17,17

**9**

**9:00 (1)**
3:1
**9:25 (1)**
22:11

Case: 23-40523   Doc# 781-2   Filed: 01/16/24   Entered: 01/16/24 15:52:36   Page 30
of 30