CHRISTINA L. GOEBELSMANN (SBN 273379)
Assistant United States Trustee
JASON BLUMBERG (SBN 330150)
Trial Attorney
TREVOR R. FEHR (SBN 316699)
Trial Attorney
DEANNA K. HAZELTON (SBN 202821)
Trial Attorney
United States Department of Justice
Office of the United States Trustee
450 Golden Gate Avenue, Room 05-0153
San Francisco, California 94102
Telephone: (415) 705-3333
Facsimile: (415) 705-3379
Email: jason.blumberg@usdoj.gov

Attorneys for Tracy Hope Davis,
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br>Debtor. | Bankruptcy Case No. 23-40523 WJL<br><br>Chapter 11<br><br>Date: March 19, 2024<br>Time: 10:30 a.m.<br>Place: 1300 Clay Street, Ctrm 220<br>Oakland, CA<br>[In Person or via Zoom] |

**OBJECTION AND RESERVATION OF RIGHTS OF THE**
**UNITED STATES TRUSTEE TO SECOND INTERIM FEE APPLICATION**
**OF FOLEY & LARDNER LLP (ECF NO. 881)**

Tracy Hope Davis, United States Trustee for Region 17 (the "**UST**"), by and through her undersigned counsel, hereby files this objection and reservation of rights (the "**Objection**") to the second interim fee application (ECF No. 881) (the "**Fee Application**") of Foley & Lardner

1

LLP (the "**Firm**"), general bankruptcy counsel for the above-referenced Debtor. In support of her Objection, the UST respectfully represents as follows:

## I.   INTRODUCTION

1.   The Firm seeks interim fees and expenses totaling **$2,299,780.21**. As set forth in greater detail below, this compensation request should be reduced by **$56,206.05** for the following reasons:

- The Firm's fee request includes **$10,814** for the services of 3 attorneys who each billed less than 9 hours during the application period. Absent a satisfactory explanation, the fees for these "transitory" billers should be disallowed.

- The Firm's billing records reflect at least 20 instances where more than two professionals billed for the same conference (some internal; some with outside professionals). The fees associated with the participation of the additional professionals at the conferences (*i.e.*, the third, fourth, or fifth professional) total **$28,447.50**. Absent a satisfactory explanation, these fees should be denied.

- The Firm's time entries include approximately 18.3 hours for research performed by a senior attorney. Because these assignments may have been more appropriately delegated to junior attorneys, the related fees should be reduced by **$8,235** (to reflect the hourly rate of less seasoned attorneys).

- The Firm's time records include at least 7 entries in which different tasks have been "lumped" together. The fees associated with these time entries should be reduced by 20% or **$1,884.80**.

- The Firm's time records include approximately 19 entries for which the task description may be too vague to allow the Court to make a meaningful assessment of the necessity of the communication and/or services described therein. The fees associated with these time entries should be denied or reduced by 50% (approximately **$6,124.75**).

- The Firm's time records include 1 entry for which the recorded time exceeds the amount reflected in the underlying task description. The Firm's fee request should be reduced by **$700** to reflect the apparent time miscount.[1]

---

[1]   In connection with the Firm's first interim fee application, the UST informally raised potential issues involving: (i) participation by multiple professionals at the same hearing or meeting; (ii) time miscounts; (iii) transitory billers; (iv) block billing; and (v) vague time entries. *See* ECF No. 536.

2

2. In addition, the UST requests that the Debtor be permitted to pay no more than 80% of the Firm's allowed fees and 100% of the Firm's allowed expenses.

3. The UST reserves all her rights, including to object to final allowance of the fees and expenses sought in the Fee Application.

## II. FACTUAL BACKGROUND

### A. General Case Background

4. On May 8, 2023 (the "**Petition Date**"), the Debtor commenced the above-captioned case under Chapter 11 of the Bankruptcy Code. *See* ECF No. 1. The Debtor is currently a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

5. On May 23, 2023, the UST appointed the official committee of unsecured creditors (the "**Committee**"). *See* ECF No. 58.

6. The meeting of creditors under 11 U.S.C. § 341(a) was held and concluded on June 21, 2023. *See* docket generally.

7. Between February 13, 2024 and February 15, 2024, professionals for the Debtor and the Committee filed their interim fee applications for the period ending December 31, 2023. These interim fee and expense requests total more than $6.4 million as follows:

- $2,299,780.21 for the Debtor's general counsel (Foley & Lardner LLP);
- $1,489,987.01 for the Debtor's financial advisor (Alvarez & Marsal North America, LLC);
- $32,627.20 for the Debtor's special insurance counsel (Breall & Breall LLP);
- $1,061,857.27 for the Committee's general counsel (Lowenstein Sandler LLP);
- $62,233.65 for the Committee's local counsel (Keller Benvenutti Kim LLP);
- $721,806.22 for the Committee's financial advisor (Berkeley Research Group);
- $450,219.09 for the Committee's special insurance counsel (Burns Bair LLP); and

- $304,516.00 for the Committee's claim valuation consultant (Stout Risius Ross, LLC).

*See* ECF Nos. 860, 864, 867, 870, 873, 876, 881, 884.[2]

8. Previously, for the period ending August 31, 2023, the Court awarded professionals for the Debtor and the Committee interim fees and expenses totaling approximately $6.4 million. See ECF Nos. 559, 626.

9. According to the Debtor's monthly operating report for January 2024, its cumulative disbursements have exceeded its cumulative receipts by more than $8.8 million ($34,850,900 in receipts *minus* $43,711,161 in disbursements). *See* ECF No. 892, at p. 2 of 100.

**B.    The Firm's Fee Application**

10. For the period covering September 1, 2023 through December 31, 2023 (the "**Application Period**"), the Firm seeks allowance of fees and expenses of $2,273,753.50 and $26,026.71, respectively. *See* Fee Application, at p. 2 of 26.

11. During the Application Period, approximately thirty-seven (37) attorneys and twelve (12) non-attorneys from the Firm billed 3,554.70 hours to the case. *See* Fee Application, at p. 5 of 26; Exhibit C to the Fee Application (ECF No. 881-3).

12. As set forth in the Fee Application, the Firm's fee request reflects a reduction of $35,203 for sixteen (16) timekeepers who each billed less than 15 hours during the Application Period. *See* Fee Application, at pp. 2, 5 of 26 & nn.2, 10.

---

[2] In the recently filed interim fee applications for the case of the *Roman Catholic Bishop of Santa Rosa*, the fee and expense requests totaled approximately $790,000. *See* ECF Nos. 578, 581, 584, 587, 590, 594, 597, and 600 in Case No. 23-10113. In the recently filed interim fee applications for the case of the *Roman Catholic Archbishop of San Francisco*, the fee and expense requests total approximately $2.5 million. *See* ECF Nos. 523 and 524 in Case No. 23-30564.

4

13. Attorneys whose time has not been written off billed approximately 2,914.5 hours during the Application Period. Partners accounted for approximately 1,402 hours or 48% of this amount. *See* Exhibit C to the Fee Application (ECF No. 881-3); Declaration of Katina Umpierre filed herewith (the "**Umpierre Declaration**"), at ¶ 6.

14. The Firm's blended hourly rate for attorneys was $707.61 and its blended hourly rate for all timekeepers was $649.55. *See* Fee Application, at p. 2; Exhibit C to the Fee Application (ECF No. 881-3). For non-bankruptcy engagements during the preceding year, the Firm's blended hourly rate for all timekeepers was $537.08. *See* Exhibit B to the Fee Application (ECF No. 881-2).

### III. OBJECTION

15. Bankruptcy Code Section 330(a)(1) provides that:

> [a]fter notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –
>
> (A) *reasonable compensation for actual, necessary services* rendered by the trustee … professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, *necessary* expenses.

*See* 11 U.S.C. § 330(a)(1)(A) and (B) (emphasis added).

16. The fee applicant bears the burden of proof to show entitlement to the requested fees. *See In re Scoggins*, 517 B.R. 206, 221 (Bankr. E.D. Cal. 2014) ("The fee applicant has the burden of proof on the merits and bears the correlative risk of non-persuasion.").

17. A professional person may not be compensated for services that are unnecessarily duplicative. *See* 11 U.S.C. § 330(a)(4)(A)(i); *see also In re Genay-Wolf*, 2012 WL 2064527, at *2 (Bankr. D. Idaho June 7, 2012) ("The Court cannot allow compensation for unnecessary

5

duplication of services ….").

18. Nor may a professional person be compensated for services that are excessive in relation to the task accomplished. *See In re Mohsen*, 473 B.R. 779, 792 (Bankr. N.D. Cal. 2012); *In re SonicBlue Inc.*, 2006 WL 2067882, at *3 (Bankr. N.D. Cal. July 24, 2006) ("[h]ours that are excessive, redundant, or unnecessary in view of the services performed should not be compensated"). A court may rely on "its own experience" in determining whether billings are excessive. *See In re Rancourt*, 207 B.R. 338, 363 (Bankr. D.N.H. 1997).

### A. The UST Objects to Allowance of Fees for Services Rendered by Transitory Timekeepers.

19. The Firm's fee request includes approximately **$10,814** for the services of 3 attorneys who each billed less than 9 hours during the Application Period. *See* Exhibit C to the Fee Application (ECF No. 881-3); Umpierre Declaration at ¶ 4a and Exhibit 1.[3]

20. Timekeepers who work on large matters for only a few hours are often referred to as "transitory" timekeepers. *Cf. In re Quigley Co.*, 500 B.R. 347, 362 (Bankr. S.D.N.Y. 2013).

21. The primary concern with transitory billing is the cost of bringing attorneys up to speed "to the extent necessary to perform his or her task, and the theory goes that the cost of this education can be saved or minimized if attorneys already familiar with the case perform the service instead. This concern diminishes where the 'transitory' timekeeper provides services on an ad hoc basis within an area of expertise that is not possessed by the attorneys regularly assigned to the case or the task is so focused that it is unnecessary to spend time learning the details of the case." *See id*; *see also In re Jefsaba*, 172 B.R. 786, 801 (Bankr. E.D. Pa. 1994) ("It

---

[3] Exhibits 1 through 8 to the Umpierre Declaration are charts of specific fee and expense objections, which were created using LEDES billing data provided on behalf of the Firm. *See* Umpierre Declaration, at ¶¶ 2-4.

is inappropriate for each new addition to the team to bill for time spent reviewing the file or otherwise familiarizing him or herself with the matter.").

22. Thus, absent a satisfactory explanation, the UST requests that the Court reduce the Firm's compensation by **$10,814**, which is the amount of fees generated by the transitory timekeepers. *See In re Maruko Inc.*, 160 B.R. 633, 641 (Bankr. S.D. Cal. 1993) (disallowing fees of attorney who was "a transient biller to this file").

**B.** **Fees for Excessive Participation in Conferences Should be Disallowed or Reduced.**

23. The Firm's billing records reflect at least twenty (20) instances where more than two professionals billed for the same conference (some internal; some with outside professionals). For instance, 8 professionals billed for an internal conference on September 15, 2023. *See* Exhibit G to the Fee Application (ECF No. 881-7), at pp. 33-34 of 303; Umpierre Declaration, at ¶¶ 4f, 4g and Exhibits 7 and 8.

24. The fees associated with the participation of additional professionals at the conferences (*i.e.*, the third, fourth, or fifth professional) total **$28,447.50**. *See* Exhibits 7 and 8 to the Umpierre Declaration.

25. Absent a satisfactory explanation, these fees should be denied. *See*, *e.g.*, *In re Off. Prod. Of Am., Inc.*, 136 B.R. 964, 976–77 (Bankr. W.D. Tex. 1992) ("While intraoffice conferences are not prohibited, they must be justified…. Even when an intraoffice conference is justified, only one attorney may charge for it unless the necessity for each attorney's participation is explained."); *NDCA Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees* Nos. I.15 and I.16.

7

Case: 23-40523    Doc# 933    Filed: 03/07/24    Entered: 03/07/24 09:50:15    Page 7 of 11

## C. A Fee Reduction May Be Warranted for Research Performed by Senior Attorneys.

26. The Firm's time entries include approximately 18.3 hours for research performed by a senior attorney. *See* Umpierre Declaration, at ¶ 4c and Exhibit 3.

27. These assignments may have been more appropriately delegated to junior attorneys. *See*, *e.g.*, *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 842 (Bankr. D. Vt. 1987) ("A Michelangelo charging Sistine Chapel rates should not be painting a farmer's barn…. Senior counsel has an obligation to delegate those tasks that require less expertise to junior associates or paralegals.") (internal citations omitted).

28. Accordingly, the hourly rate for this research should be reduced to $700, which is commensurate with the rate of the Firm's less seasoned attorneys. Application of this rate would result in a fee reduction of **$8,235**. *See* Exhibit 3 to the Umpierre Declaration.

## D. Fees for Services Described in "Lumped" Entries Should be Disallowed or Reduced.

29. The Firm's time records include at least seven (7) instances of "block-billing" in which different tasks have been "lumped" into a single billing entry of at least .5 hours. The corresponding fees total approximately $9,424.00. *See* Umpierre Declaration, at ¶ 4d and Exhibit 4.

30. "Lumping" multiple services into a single billing entry is "universally disapproved" by bankruptcy courts. *See In re Thomas*, 2009 WL 7751299, at *5 (B.A.P. 9th Cir. July 6, 2009). "Lumping" prevents courts from assessing the reasonableness of the time spent on each of the activities. *Id.*

31. Courts may reduce compensation for "lumped" entries. *Id.*, 2009 WL 7751299, at *6; *see also In re Virissimo*, 354 B.R. 284, 293 (Bankr. D. Nev. 2006) ("[E]ntries … that lump together different services are not compensable.").

32. To do so, courts routinely apply across the board reductions in the number of hours. *See, e.g., In re Thomas,* 2009 WL 7751299, at *6-7 ("In setting a percentage penalty for lumping, most courts 'typically make an adjustment ranging from 5% to over 30%, which is consistent with the finding of the California State Bar's Committee on Mandatory Fee Arbitration that block billing may increase time by 10% to 30%.'") (citations omitted).

33. Accordingly, the fees associated with the Firm's "lumped" time entries should be reduced by 20% or **$1,884.80**. *Cf. In re Stewart*, 2008 WL 8462960, at *6 (B.A.P. 9th Cir. Mar. 14, 2008) (bankruptcy court's reduction of time entries by 20% for lumping was not an abuse of discretion).

E.  **Fees for Services Described in Vague Time Entries Should be Disallowed or Reduced.**

34. The Firm's time records include approximately nineteen (19) entries for which the task description may be too vague to allow the Court to make a meaningful assessment of the necessity of the communication and/or services described therein. The corresponding fees total approximately $12,249.50. *See* Umpierre Declaration, at ¶ 4e and Exhibits 5 and 6.

35. For instance, Ms. Glahn billed 2.6 hours on September 11, 2023 for "[w]ork with client on internal matters." *See* Exhibit 6 to the Umpierre Declaration; Exhibit G to the Fee Application (ECF No. 881-7), at p. 85 of 303.

36. The fees associated with these time entries should be denied or reduced by 50% - approximately **$6,124.75**. *See, e.g., In re Sonicblue Inc.*, 2006 WL 2067882, at *8 ("Time entries that contain such vague characterization of the services performed as 'attention to' and 'work on' fail to adequately describe the services provided."); *In re Virissimo*, 354 B.R. at 293 ("Vague entries … are not compensable."); *In re Bennett Funding Group, Inc.*, 213 B.R. 234, 244-45 (Bankr. N.D.N.Y. 1997) ("[T]ime entries for telephone calls must indicate the parties

9

involved and the purpose and length of the conversation…. Entries such as 'telephone call with Mr. X' are insufficient descriptions of services ….."); *In re Quigley Co.*, 500 B.R. at 365 (reducing fees related to vague time entries by 50%).

**F.      Only Fees for Services that were Actually Rendered Should be Awarded.**

37.     The Firm's time records include one (1) entry for which the recorded time exceeds the amount reflected in the underlying task description. Specifically, on December 28, 2023, Mr. Moore billed 1.7 hours, even though the time notations in the task description total only .7 hours. *See* Umpierre Declaration, at ¶ 4b and Exhibit 2; Exhibit G to the Fee Application (ECF No. 881-7), at p. 252 of 303.

38.     The Firm's fee request should be reduced by **$700** to reflect the apparent time miscount. *See* 11 U.S.C. § 330(a)(1)(A) (services must be "actual, necessary"); *see also In re Temple Ret. Cmty., Inc.*, 97 B.R. 333, 336 (Bankr. W.D. Tex. 1989) ("The award of fees is discretionary, bounded by (1) whether the compensation is reasonable and (2) whether the services were *actually rendered* and were necessary.") (emphasis added).

**G.      The UST Requests that the Court Impose a 20% Holdback**

39.     As noted above, the Debtor's disbursements have exceeded its receipts by more than $8.8 million. Professional fees requested through the first two sets of interim fee applications exceed $12 million. *See* ¶¶ 7-9, supra.

40.     Accordingly, the UST requests that the Debtor be authorized to pay no more than 80% of any fees allowed pursuant to the Fee Application. *Cf. In re Value City Holdings, Inc.*, 436 B.R. 300, 303 (Bankr. S.D.N.Y. 2010) ("[I]t has become standard practice for interim fee orders to include a holdback in a percentage (often in the range of ten to twenty percent) that is acceptable to the applicant and to the UST with the understanding that the amount held back will

be available for distribution at a later date depending on developments in the case and the results achieved."); *In re Child World, Inc.*, 185 B.R. 14, 18 (Bankr. S.D.N.Y. 1995) ("Such holdbacks, while not mandated by statute (and subject to some criticism), are commonly used by courts to moderate potentially excessive interim allowances and to offer an incentive for timely resolution of the case.").

## IV. CONCLUSION

41. Based on the foregoing, the UST respectfully requests that the Court (i) sustain the Objection, (ii) reduce the fees and expenses sought in the Fee Application by **$56,206.05**, and (iii) authorize the Debtor to pay no more than 80% of any fees and 100% of any expenses allowed pursuant to the Fee Application

42. The UST reserves all her rights, including to object to final allowance of the fees and expenses sought in the Fee Application. *See In re Strand*, 375 F.3d 854, 858 (9th Cir. 2004) (interim fee awards are "'always'" subject to reexamination during the case).

Dated: March 6, 2024.

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By: /s/ Jason Blumberg
JASON BLUMBERG
Trial Attorney for the United States Trustee