**LOWENSTEIN SANDLER LLP**
JEFFREY D. PROL (Pro Hac Vice)
jprol@lowenstein.com
MICHAEL A. KAPLAN (Pro Hac Vice)
mkaplan@lowenstein.com
BRENT WEISENBERG (Pro Hac Vice)
bweisenberg@lowenstein.com
COLLEEN M. RESTEL (Pro Hac Vice)
crestel@lowenstein.com
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500

*Counsel for the Official Committee of Unsecured Creditors*

**BURNS BAIR LLP**
TIMOTHY W. BURNS (Pro Hac Vice)
tburns@burnsbair.com
JESSE J. BAIR (Pro Hac Vice)
jbair@burnsbair.com
10 East Doty Street, Suite 600
Madison, Wisconsin 53703-3392
Telephone: (608) 286-2808

*Special Insurance Counsel for the Official Committee of Unsecured Creditors*

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
tkeller@kbkllp.com
JANE KIM (Cal. Bar No. 298192)
jkim@kbkllp.com
GABRIELLE L. ALBERT (Cal. Bar No. 190895)
galbert@kbkllp.com
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| *In re:* <br><br> THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole, <br><br> Debtor. | Case No. 23-40523 WJL <br><br> **OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO LMI'S MOTION FOR LEAVE TO APPEAL** |

The Official Committee of Unsecured Creditors (the "**Committee**") of The Roman Catholic Bishop of Oakland (the "**Debtor**") files this objection (this "**Objection**") to the *Motion for Leave to Appeal; Memorandum of Points and Authorities in Support of Motion for Leave to Appeal; Certificate of Compliance* [Dkt. 906] (the "**Motion**")[1] filed by Certain Underwriters at Lloyd's, London, subscribing severally and not jointly to Slip Nos. CU 1001 and K 66034 issued to the Roman Catholic Archbishop of San Francisco, and Nos. K 78138 and CU 3061 issued to the Roman Catholic Bishop of Oakland ("**LMI**"). In support of this Objection, the Committee states as follows:

## PRELIMINARY STATEMENT[2]

1. The question before the Court on the Motion is whether the question on appeal is of substantial enough importance to the resolution of the Chapter 11 Case to permit the extraordinary remedy of an interlocutory appeal.

2. LMI has not met its burden with respect to any of the factors—and certainly has not met its burden with respect to all three factors. Indeed, LMI does not cite to any rulings where a court analyzing Bankruptcy Rule 2004 came to a different result than this Court, and a resolution of the Chapter 11 Case is not dependent on the outcome of the Appeal, nor will the Appeal remove parties or issues from the underlying Chapter 11 Case. Further, LMI fails to even argue that the second two factors (substantial grounds for difference of opinion and materially advancing termination of litigation) are satisfied with respect to underwriting information.

3. To the contrary, the Motion sets forth the exact reason the discovery should be (and was) permitted—it relates to assets of the estate (insurance is one of the Debtor's most significant assets), liabilities of the Debtor (Dkt. 906 at 10), and administration of the Debtor's estate (*id.* at 14–15).

---

[1] Although Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**") 8004 directs the Objection to be filed in the District Court, the Motion and underlying appeal had not been transferred from the Bankruptcy Court to the District Court as of the date of filing this Objection; therefore, the Objection is being filed in the Bankruptcy Court.

[2] Capitalized terms not defined in this Preliminary Statement shall have the meanings set forth herein.

-2-

4. In arguing its position, LMI primarily cites to non-bankruptcy cases and cases decided outside the context of a Bankruptcy Rule 2004 examination. The case that LMI cites to within the Bankruptcy Rule 2004 context *agrees* with the holding in the 2004 Order.

5. For these reasons, and the reasons discussed herein, the Motion should be denied.

## RELEVANT BACKGROUND

6. On October 5, 2023, the Committee filed *The Official Committee of Unsecured Creditors Ex Parte Application for Federal Rule of Bankruptcy Procedure 2004 Examination of Insurers* [Dkt. 502] (the "**Rule 2004 Motion**") in the United States Bankruptcy Court for the Northern District of California (the "**Court**" or "**Bankruptcy Court**").[3]

7. On October 11, 2023, Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation and Insurance Company of North America, Pacific Indemnity Company, and Pacific Employers Insurance Company ("**Pacific**") filed the *Insurers' (I) Preliminary Statement & Response to Committee's 2004 Motion and (II) Request for Court to Abstain Entry of an Order in Connection Therewith Pending Further Discussion* [Dkt. 521] (the "**Insurer Preliminary Objection**"). On October 12, 2023, LMI joined in the Insurer Preliminary Objection [Dkt. 528].

8. Prior to the Hearing (defined below), the Committee met and conferred with the Insurers and the Debtor in an attempt to consensually resolve the Rule 2004 Motion. At the conclusion of the meet and confer, a resolution could not be reached.

9. On October 12, 2023, the Debtor filed a response [Dkt. 532] in support of the Rule 2004 Motion and requested that any order granting the Rule 2004 Motion "require all responsive, non-privileged documents produced to the Committee be contemporaneously produced to the Debtor." [Dkt. 532 at 2.]

---

[3] Capitalized terms not defined herein shall have the meanings set forth in the Rule 2004 Motion.

10. On November 1, 2023, the Insurers, including LMI, filed the *Insurers' Objection to Committee's Rule 2004 Motion Seeking Discovery from Debtor's Insurers* [Dkt. 571] (the "**Insurer Objection**").

11. On November 7, 2023, the Committee filed a reply in further support of the Rule 2004 Motion [Dkt. 583].

12. On November 10, 2023, Pacific and Continental Casualty Company filed a sur-reply in further support of the Insurer Objection [Dkt. 604].

13. On November 14, 2023, the Court held a lengthy hearing during which it considered the Rule 2004 Motion, among other motions (the "**Hearing**").

14. At the conclusion of the Hearing, the Court granted the Rule 2004 Motion with respect to a narrower subset of documents than originally requested in the Rule 2004 Motion, without prejudice to the Committee's ability to request the remaining documents at a later date.

15. The Court specifically found that certain categories of documents—namely, claim files, underwriting information, and reserves—were relevant to the Committee's investigation and granted the Rule 2004 Motion with respect to those categories, along with other categories which the Insurers agreed to (as set forth on the record at the November 14, 2023 hearing, the "**Rule 2004 Ruling**").

16. Following the Hearing, the Committee narrowed the requests in the subpoenas attached to the Rule 2004 Motion (the "**Requests**") in accordance with the Rule 2004 Ruling.

17. On December 7, 2023, at the Court's direction, the Committee met and conferred with the Insurers regarding the form of the subpoenas and made certain changes based on input from the Insurers. However, the parties did not reach complete agreement regarding the form of the subpoenas.

18. On December 15, 2023, LMI filed the Motion to Reconsider. No other Insurer joined in the Motion to Reconsider.

19. During the January 9, 2024 hearing, the Court held a status conference in connection with the Rule 2004 Motion and Motion to Reconsider, during which the Court reaffirmed that it

-4-

Case: 23-40523    Doc# 964    Filed: 03/13/24    Entered: 03/13/24 17:19:38    Page 4 of 11

had already ruled on relevancy issues with respect to the Rule 2004 Motion but determined that it would leave the Motion to Reconsider on the calendar for the January 31, 2024 hearing date.

20. On January 18, 2024, the Bankruptcy Court entered the *Order Granting the Official Committee of Unsecured Creditors' Ex Parte Application for Federal Rule of Bankruptcy Procedure 2004 Examination of Insurers* [Dkt. 796] ("**2004 Order**").

21. The 2004 Order requires LMI to produce documents responsive to the Requests by March 4, 2024.

22. On January 19, 2024, the Committee served a subpoena as permitted by the 2004 Order (the "**Subpoena**") on LMI's counsel via email. On January 22, 2024, LMI's counsel confirmed acceptance of service of the Subpoena. [*See* Dkt. 838 at 2.]

23. On February 5, 2024, LMI served their *Responses and Objections to the Subpoena for Rule 2004 Examination* (the "**Responses and Objections**"), whereby LMI primarily reserved their right to object and/or refuse to produce documents pending the outcome of their objections to several requests pending the hearing on the Motion to Reconsider and any subsequent appeal.

24. On February 7, 2024, the Court held a hearing on the Motion to Reconsider.

25. On February 12, 2024, the Court denied the Motion to Reconsider. During the oral ruling on the Motion to Reconsider, the Court reiterated that the Requests are relevant and "fair game," noting that the information sought in the Requests is "the mirror image of the claim information," which the Insurers obtained based on their claim that such information was necessary to a productive mediation. [*See Declaration of Nathan Reinhardt*, [Dkt. 906-1], Ex. C at 13:1–7.] The Court further emphasized the importance of exchanging this information to assist in entering mediation with the "optimum amount of information." [*Id.* at 14:14.]

26. On February 14, 2024, the Court entered the Reconsideration Order.

27. Following entry of the Reconsideration Order, the Committee requested that LMI revise its Responses and Objections in light of the Court's ruling. LMI refused.

28. On February 28, 2024, LMI filed (i) the *Notice of Appeal and Statement of Election* [Dkt. 905], seeking an appeal (the "**Appeal**") of the Rule 2004 Order to be heard by the United

-5-

States District Court for the Northern District of California (the "**District Court**"), (ii) a motion seeking a stay of enforcement of the 2004 Order pending a resolution of the Appeal (the "**Motion for Stay**"), and (iii) the Motion.

29. On March 4, 2024, LMI electronically produced certain documents responsive to the Requests in the Subpoena, comprised of copies of insurance policies and coverage letters. LMI did not produce a privilege log describing the basis for any responsive documents withheld from the production on the basis of privilege. On March 4, 2024, LMI also filed a motion seeking a protective order in connection with the Subpoena in the Bankruptcy Court and a motion to quash the Subpoena in the United States District Court for the District of New Jersey. LMI subsequently agreed to transfer the motion to quash to be heard by the Bankruptcy Court.

## OBJECTION

30. The District Court has jurisdiction to hear appeals of final judgments, orders, and decrees pursuant to 28 U.S.C. § 158(a)(1). "A final order is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *In re Slotkin*, No. 2:23-cv-04060-FWS, 2023 U.S. Dist. LEXIS 217967, at *4 (C.D. Cal. Oct. 26, 2023) (citation omitted). LMI concedes the 2004 Order is not a final order, judgment, or decree and instead seeks leave to appeal the interlocutory Rule 2004 Order.

31. Absent "exceptional circumstances," this Court must deny leave to appeal an interlocutory order. *Id.* at *5. Because an appeal of an interlocutory order is "a departure from the normal rule that only final judgments are appealable," any exceptions must be construed narrowly. *Id.* at *6.

32. When considering whether an interlocutory order may be appealed, courts in the Ninth Circuit look to 28 U.S.C. § 1292(b), which governs the analogous appellate review by the Circuit Court of interlocutory orders entered by a district court. *Id.* at *5. Specifically, to hear an appeal on an interlocutory order, this Court must find: "(1) that there [is] a controlling question of law, (2) that there [is] substantial grounds for difference of opinion, *and* (3) that an immediate

appeal may materially advance the ultimate termination of the litigation." *Id.* (emphasis added and citations omitted).

33. Because LMI cannot show that any of the above requirements have been met, let alone that all three have been met (as required), the Motion should be denied.

**A.  THERE IS NO CONTROLLING QUESTION OF LAW.**

34. For an issue to be a "controlling question of law," the resolution of that legal issue must have a material impact on the outcome of the litigation—here the Chapter 11 Case. *Id.* at *5 (citation omitted).

35. Further, "Ninth Circuit precedent is clear that the focus of the 'controlling question of law' inquiry must be the connection that the interlocutory appeal has to the underlying case, not whether the resolution of the question on appeal will resolve the portion of the case implicated by the appeal." *Id.* at *7–8 (citation omitted).

36. A controlling question of law is one where, for example, the issue must be resolved before the remainder of the action can be adjudicated. *Untied States v. Adam Bros. Farming, Inc.*, 369 F. Supp. 2d 1180, 1182 (CD. Cal. 2004). As LMI acknowledges, discovery orders are scarcely found to be controlling questions of law.

37. Here, whether LMI is required to produce information to the Debtor and the Committee pursuant to Bankruptcy Rule 2004—while significant to any hope of a settlement with LMI—will not impact, from a legal perspective, the outcome of the Chapter 11 Case (namely, whether a chapter 11 plan can be confirmed, which can either include a resolution with LMI or not).

38. Indeed, whether or not the Motion is granted, and regardless on how the District Court rules on the merits of the Appeal (if the Motion is granted), the Chapter 11 Case will proceed and can proceed to a conclusion. That may mean, if LMI continues to withhold the information it was ordered to produce (for example during the pendency of the Appeal), *LMI's* ability to participate in the case may be altered. However, the Chapter 11 Case itself, and several potential paths to resolution for the Debtor and Committee, will remain unchanged.

-7-

39. As such, LMI has not, and cannot, show that an immediate appeal on the issue of whether Bankruptcy Rule 2004 permits the requested discovery from LMI is in any way "controlling" of or necessary to progress to an ultimate resolution of the Chapter 11 Case.

**B.    THERE ARE NOT SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION.**

40. LMI similarly cannot satisfy the requirement that the 2004 Order presents an issue for which substantial grounds for difference on the question posed—"[w]hether LMI's reserve and underwriting information is discoverable under FRBP 2004, where no party has alleged a bad faith insurance claim"—exist. [Dkt. 906 at 6.]

41. LMI points to two cases where the relevance of insurer reserve information pursuant to a Bankruptcy Rule 2004 exam was analyzed: the present case and *The Roman Catholic Diocese of Rockville Centre, New York*. <u>In both cases the court found the information was relevant and discoverable</u>. Indeed, as noted by LMI, in *Rockville Centre*, the court found that "whether [the insurer] could pay sexual abuse claims against its insured related to the debtor's assets and liabilities, as well as administration of the estate, pursuant to Rule 2004." [*Id.* at 25–26 (citing Corrected Order Compelling Rule 2004 Discovery from Arrowood Indemnity Company at 1, *Rockville Centre*, No. 20-12345 (Bankr. S.D.N.Y. Sept. 27, 2023), Dkt. 2518).] The reasoning is *exactly* on point here and precisely explains one reason why the Requests fall within the scope of Bankruptcy Rule 2004. Although LMI attempts to differentiate the *Rockville Centre* case by arguing that LMI does not have any solvency concerns, the record is devoid of any evidence to support that position, and a ruling of relevance is not dependent on such a finding in any event. Indeed, the statements of counsel are not evidence.

42. The cases cited by LMI as presenting the "majority" view were determined outside of this circuit, more than twenty five years ago, under wholly different circumstances: *outside of the context of Bankruptcy Rule 2004 and, in all but one case, untethered to any bankruptcy proceeding at all.* [*See* Dkt. 906 at 15, n. 68 (citing *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 263 (D.D.C. 1986); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 623 A.2d 1099 (Del. Super. 1991); *Fid. & Deposit Co. of Maryland v. McCulloch*, 168

-8-

F.R.D. 516 (E.D. Pa. 1996)).] Therefore, the cases are insufficient to show substantial grounds for a difference of opinion with respect to the scope of Bankruptcy Rule 2004.

43. In addition, and notably, LMI provides *no* discussion regarding whether there is any difference of opinion regarding the Bankruptcy Court's ruling on underwriting files.

44. The *only* court that LMI cites, which has evaluated whether Requests at issue here are permissible under Bankruptcy Rule 2004, came to the *same* conclusion as this Court. Thus, no substantial grounds for difference of opinion exist, and the Motion should be denied.

45. Throughout the Motion, LMI contends that underwriting and reserve information does not relate to the property of the Debtor, a prerequisite for disclosure under Bankruptcy Rule 2004(b). This is not the case. Underwriting and reserve information relate directly to the value of one of the most important assets of the Debtor in this Chapter 11 Case—the insurance available to satisfy the sexual abuse claims. Notably, certain of the Insurers have already produced some underwriting files, and another has indicated that underwriting files will be forthcoming. *See also Hoechst*, 623 A.2d at 1104, 1107 (noting that certain underwriting files were already produced and that additional underwriting files were required to be produced).

46. For example, the Insurers' underwriting files usually contain a copy of the relevant insurance policies that the insurers sold to their policyholder, secondary evidence of the policy if the file does not contain the entire policy, and information on whether and to what extent the Insurer reinsured the policy. Information in the underwriting file is thus crucial to valuing the insurance asset. It may show whether a policy existed as well as the terms, conditions, and amount of the coverage. The reinsurance information in the underwriting file may contain further evidence of the terms, limits of liability, and existence of the policies. And, it will assist the Committee (and Debtor) in determining whether the insurance is readily collectible.

47. For financial purposes, insurers are statutorily required to set reserves that reflect the anticipated value of the claims against the insurers. Reserves do not come out of nowhere. They reflect earlier resolution of claims and anticipated future resolutions. The documents relied on by LMI in making these determinations are thus relevant to the value of the claims and the

-9-

insurance and will aid the Committee in its task of valuing the insurance asset. These papers are likely to include relevant information on how the current sexual abuse claims may impact LMI's solvency or prompt a need for reinsurance or other financial protection. Under California law, an insurer that reserves its rights must settle the claims against its insured if it has the opportunity to do so at a reasonable value. In determining a reasonable value, the insurer must not consider its coverage defenses. *Rappaport-Scott v. Interinsurance Exch. of Auto. Club*, 146 Cal. App. 4th 831, 836 (2007) ("The insurer must evaluate the reasonableness of an offer to settle a lawsuit against the insured by considering the probable liability of the insured and the amount of that liability, without regard to any coverage defenses.").[4] Thus, the appropriate valuation of claims becomes the touchstone of whether an insurer must perform its duty and, accordingly, how the insurer has valued the claims is relevant to the value of the insurance.

## C. THE APPEAL WILL NOT MATERIALLY ADVANCE TERMINATION OF LITIGATION.

48. Although LMI quotes various cases regarding how the final factor—whether the appeal will materially advance termination of the Chapter 11 Case—is applied, the Motion offers no explanation of how a resolution of the discovery dispute meets the criterion.

49. In fact, none of the cases cited by LMI with respect to this factor relate to the resolution of a bankruptcy case or to appeals relating to discovery disputes.

50. In reality, permitting the Appeal to go forward with respect to the interlocutory 2004 Order will have *no* bearing on the speed at which this Chapter 11 Case will conclude and will not remove any claims or parties from the pending Chapter 11 Case. In fact, the only impact the Appeal may have is elongating the time before *LMI* can enter mediation with the parties.

---

[4] *See also Howard v. Am. Nat. Fire Ins. Co.*, 187 Cal. App. 4th 498, 530–31 (2010) ("[I]t is a long-standing rule that 'the only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer.' '[A] belief that the policy does not provide coverage [ ] should not affect a decision as to whether the settlement offer in question is a reasonable one.'") (internal citations omitted).

51. The Chapter 11 Case can proceed with or without LMI's participation. Whether the issues are resolved through an immediate Appeal or not, the Debtor and the Committee will continue working towards a (hopefully consensual) resolution of the Chapter 11 Case. The only difference is whether LMI is a party to those negotiations (if the appropriate and necessary documentation is received) or if LMI will be a bystander to the process.

52. Because an immediate hearing on the Appeal will not advance the termination of the Chapter 11 Case, the Motion should be denied.

For the foregoing reasons, the Committee respectfully requests that this Court deny the Motion.

Dated: March 13, 2024

**LOWENSTEIN SANDLER LLP**
**KELLER BENVENUTTI KIM LLP**

By: *Gabrielle L. Albert*
Jeffrey D. Prol
Michael A. Kaplan
Brent Weisenberg
Colleen M. Restel

- and –

Tobias S. Keller
Jane Kim
Gabrielle L. Albert

*Counsel for the Official Committee of Unsecured Creditors*

**BURNS BAIR LLP**
Timothy W. Burns
Jesse J. Bair

*Special Insurance Counsel for the Official Committee of Unsecured Creditors*