Russell W. Roten (SBN 170571)
Jeff D. Kahane (SBN 223329)
Betty Luu (SBN 305793)
Timothy W. Evanston (SBN 319342)
DUANE MORRIS LLP
865 South Figueroa Street, Suite 3100
Los Angeles, California 90017
Telephone: (213) 689-7400
Fax: (213) 689-7401
RWRoten@duanemorris.com
JKahane@duanemorris.com
BLuu@duanemorris.com
TWEvanston@duanemorris.com

Catalina J. Sugayan
Clinton E. Cameron (*pro hac vice*)
Yongli Yang (*pro hac vice*)
Clyde & Co US LLP
30 S Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: (312) 635-7000
Facsimile: (312) 635-6950
Catalina.Sugayan@clydeco.us
Clinton.Cameron@clydeco.us
Yongli.Yang@clydeco.us

Attorneys for *Certain Underwriters at Lloyd's, London, subscribing severally and not jointly to Slip Nos. CU 1001 and K 66034 issued to the Roman Catholic Archbishop of San Francisco, and Nos. K 78138 and CU 3061 issued to the Roman Catholic Bishop of Oakland*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br>Debtor. | Bankruptcy Case No.: 23-40523 WJL<br><br>Hon. William J. Lafferty<br><br>Chapter 11<br><br>**LIMITED OBJECTION TO NOTICE OF SUPPLEMENTAL RETENTION OF ORDINARY COURSE PROFESSIONAL INSURANCE ARCHAEOLOGY SERVICES, LLC PURSUANT TO ORDER**<br><br>Date:  [Hearing Not Yet Set]<br>Time:  [Hearing Not Yet Set]<br>Place:  United States Bankruptcy Court<br>        1300 Clay Street<br>        Courtroom 220<br>        Oakland, CA 94612 |

Certain Underwriters at Lloyd's, London, subscribing severally and not jointly to Slip Nos. CU 1001 and K 60034 issued to the Roman Catholic Bishop of San Francisco, and Nos. K 78318 and CU 3061 issued to the Roman Catholic Bishop of Oakland ("LMI"), hereby file this limited objection to the *Notice of Supplemental Retention of Ordinary Course Professional Insurance Archaeology Services, LLC Pursuant to Order (I) Authorizing the Retention and Payment, Effective as of the Petition Date, of Professionals Utilized by the Debtor in the Ordinary Course of Business; and (II) Granting Related Relief* ("Notice"), filed by The Roman Catholic Bishop of Oakland ("Debtor"). In support of this Limited Objection, LMI respectfully state as follows:

## I. PRELIMINARY STATEMENT

LMI do not object to the Debtor retaining Insurance Archaeology Services, LLC ("IAS"). LMI, however, oppose the Debtor's request to retain IAS as an "ordinary course professional" ("OCP"). Early in its case, the Debtor filed a motion requesting authority to retain certain OCPs ("Motion to Retain OCPs") without having to file employment applications.[1] The OCPs included: "(1) VeraCruz Advisory, LLC: the Debtor's long-time consultants with respect to facility, financial, and operational issues; (2) Monsignor Ronny Jenkins: the Debtor's expert on Canon Law; (3) Moss Adams: the Debtor's long-time auditor…; (4) Allen, Glaessner, Hazewood & Werth, LLP: the Debtor's outside general legal services provider, including labor and employment matters; (5) Plageman, Lund & Cannon LLP: the Debtor's outside trusts and estates counsel; and (6) Best Best & Krieger LLP: the Debtor's outside counsel for its retirement plans."[2]

In its Motion to Retain OCPs, the Debtor described the OCPs as "provid[ing] services in connection with the Debtor's ongoing operations in a similar manner as would be required for the Debtor outside of the Chapter 11 Context."[3] These OCPs, the Debtor argued, "are essential to the

---

[1] *See* Debtor's Motion for an Order (I) Authorizing the Retention and Payment, Effective as of the Petition Date, of Professionals Utilized by the Debtor in the Ordinary Course of Business and (II) Granting Related Relief ("Motion to Retain OCPs"), Dkt. 178.

[2] *Id.*, at 4:7-11.

[3] *Id.,* at 6:9-10.

Debtor's ability to maintain its operations and continue its mission."[4] Thus, because "the Debtor will continue to need these services while in bankruptcy to maintain its operations,"[5] employment under section 327 could create "unnecessary administrative burden and cost" and interfere with the Debtor's operations.[6] To prevent future disruption, the Debtor also proposed a procedure where it could later seek to retain additional OCPs by filing a notice.[7] If no party objected to the notice, the Debtor could then move forward with retention.[8] Once retained, the OCPs would not be required to file a fee application unless their services exceed a certain amount.[9] The Court agreed and granted the Debtor's motion.[10] By the Notice, the Debtor now seeks to retain IAS as an OCP.[11] The Court should not approve the request.

      IAS is not an OCP. The Debtor's Notice states that the Debtor is seeking to retain IAS to research insurance policies and assist the Debtor in its insurance-related litigation. But, researching insurance policies is irrelevant to the Debtor's operations. IAS's work is specialized and its retention is no doubt intended to help the Debtor monetize its insurance assets. If IAS's services are needed, then it is because of the bankruptcy case, not in spite of it. Because IAS is not an OCP, the Debtor must file a retention application under 11 U.S.C. § 327.[12] Moreover, the Debtor's potential retention

---

[4] *Id*. at 2:20-22.

[5] *Id*. at 4:12-14.

[6] *Id*. at 2:22-24.

[7] *Id*. at 5:11-19.

[8] *Id*. at 5:22-28 to 6:1-2.

[9] *Id*. at 5:22-28 to 6:1-2.

[10] *See* Order (I) Authorizing the Retention and Payment, Effect as of the Petition Date, of Professionals Utilized by the Debtor in the Ordinary Course of Business and (II) Granting Related Relief, Dkt 263.

[11] Notice, Dkt 1211.

[12] In the bankruptcy case of The Diocese of Camden, New Jersey, the Diocese of Camden and the Official Committee of Tort Claimant Creditors filed a joint Application for Retention of Professional Insurance Archeology Group as Insurance Archeologist. *See* Case No. 20-212-57-JNP (Bankr. N.J.), Dkt. 824. The Court entered an order granting that application on September 28, 2021. *Id*., Dkt, 832. In the bankruptcy case of the Roman Catholic Church of the Diocese of Gallup, the debtor retained

of IAS is not an ordinary course transaction under 11 U.S.C. § 363(c). The operations of any insured, including religious organizations like the Debtor, do not ordinarily require a professional to research insurance policies.

To be clear, LMI's objection is not a matter of semantics. If IAS is retained as an ordinary course professional, it will not be required to file a fee application. Transparency is a key policy objective of the Bankruptcy Code. As a party in interest, LMI are entitled to review how the debtor pays to investigate potential estate assets. IAS is no different from any other non-ordinary course professional and should be treated the same. Accordingly, the Court should deny the Debtor's request to retain IAS an OCP.

## II. RELEVANT FACTS

### A. The Motion to Retain OCPs and the Notice

On May 8, 2023, the Debtor filed a chapter 11 petition. On June 27, 2023, the Debtor filed its Motion to Retain OCPs.[13] On July 18, 2023, the Court entered an order ("Order") granting the Motion to Retain OCPs.[14] Under this Order, the Court authorized the Debtor to retain OCPs without requiring the Debtor to file employment applications under 11 U.S.C. § 327.

The Order authorized the Debtor to pay each OCP up to $40,000.00 per month, without requiring the OCP to file a fee application.[15] Instead, an OCP is only required to file a fee application if its services exceed $40,000.00 in a single month, calculated on a rolling three-month average.[16] Finally, the Order also authorized the Debtor to later retain additional OCPs by filing a notice of retention, with parties having 14 days to object to the notice.[17] If an objection is filed timely, then

---

Insurance Archeology Group as an insurance archeologist. *See* Case No. 13-13676-t11 (Bankr. N.M.), Dkt. 211. The Court entered an order granting this application on April 30, 2014. *Id*., Dkt. 226.

[13] Dkt. 178.

[14] Dkt. 263.

[15] *Id*. at 3:23-28 to 4:1-3.

[16] *Id*.

[17] *Id*. at 4:5-9.

the parties have 10 days to resolve the dispute.[18]  If the dispute is not resolved, then the matter is scheduled for hearing.[19]

On June 25, 2024, the Debtor filed the Notice, seeking to retain IAS as an OCP.  According to the Debtor, "IAS will provide research and other services to the Debtor regarding insurance policies issued in the name or on behalf of the Roman Catholic Bishop of Oakland in support of the Debtor's insurance-related litigation."[20]  The Retention Questionnaire attached to the Notice states that IAS will "[i]dentify and locate old insurance policies."[21]

### III. ARGUMENT

#### A. IAS Is a "Professional Person" that Must Be Employed under 11 U.S.C. § 327

IAS is a "professional person" that must be employed under 11 U.S.C. § 327.  Although "[o]rdinary course professionals are not covered by the retention requirements",[22] there is limited case law on what constitutes a "professional person" under section 327.[23]  "Not every person employed by a trustee is a 'professional person' within the meaning of 327.  A 'professional person' is one who takes a central role in the administration of the bankruptcy estate and in the bankruptcy proceedings.  Individuals or entities that perform mechanical, nondiscretionary tasks are not 'professional persons' within the meaning of 327."[24]

Other courts consider a number of factors when determining whether a person is a "professional" under section 327.[25]  These factors include "(1) whether the entity or individual controls, manages, administers, invests, purchases, or sells assets that are significant to the debtor's

---

[18] *Id*.

[19] *Id*.

[20] Notice, Dkt. 1211 at 1:28 to 2-12.

[21] Notice, Dkt. 1211, Ex. 2 at 1:21-22.

[22] 1 Bankruptcy Law Manual § 4:22 (5th ed. 2024).

[23] *In re California Indep. Petroleum Assoc.*, 2022 WL 162439 at *5 (E.D. Cal. Jan. 18, 2022).

[24] *In re East Coast Foods, Inc.*, 2019 WL 6893015 at *6 (C.D. Cal. Dec. 8, 2019).

[25] *In re California Indep. Petroleum Assoc.*, 2022 WL 162439 at *5.

reorganization; (2) whether the entity or individual is involved in negotiating the terms of a plan of reorganization; (3) whether the entity or individual is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (4) whether the entity or individual is given discretion or autonomy to exercise professional judgment in some part of the administration of the debtor's estate; (5) the extent of the entity's or individual's involvement in the administration of the debtor's estate; and (6) whether the entity's or individual's services involve some degree of special knowledge or skill, such that the employee can be considered a 'professional' within the ordinary meaning."[26] *Id*. If an entity is not a "professional person," the Debtor may be able to retain them under section 363(c).[27]

IAS is a "professional" under section 327. Although IAS is not taking a central role in the administration of the Debtor's estate, IAS is assisting with the Debtor's work in monetizing potential assets by locating insurance policies. These insurance policies may later prove to be a key asset of the Debtor's bankruptcy estate. Moreover, some of the six factors are present here. IAS will be exercising its professional judgment, to "provide research and other services to the Debtor regarding insurance policies…in support of the Debtor's insurance related litigation."[28] IAS is also providing a specialized service—research and investigation of insurance policies. IAS's expertise is self-evident. If IAS's services were not specialized, then the Debtor's own counsel could review and investigate the policies. Instead, the Debtor wants to retain IAS because it needs IAS's "special knowledge or skill."[29] As such, IAS is a professional that must be retained under 11 U.S.C. § 327.

### B. The Debtor Cannot Retain IAS as an OCP Under 11 U.S.C. 363

The Debtor's proposed retention of IAS is not an ordinary course transaction that can be approved under 11 U.S.C. § 363(c). There are two tests to determine whether a transaction is within the ordinary course of business under section 363(c): the vertical dimension test and the horizontal

---

[26] *Id*.

[27] *Id*. at *8.

[28] Notice, Dkt. 1211 at 1:28 to 2-12.

[29] *Id*.

dimension test.[30] A court must conclude that the transaction occurred in the ordinary course of business if the transaction satisfies both tests.[31] Under the vertical dimension test, a court "views the disputed transaction 'from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit.'"[32] Review under the vertical dimension test thus requires "an examination of the pre-petition relationship between the debtor and his creditors to determine whether the transaction in question was ordinary in the context of that relationship."[33] When applying the horizontal dimension test, "the question is 'whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business.'"[34] At its core, the horizontal test's purpose is "to assure that neither the debtor nor the creditor [did] anything abnormal to gain an advantage over other creditors…"[35]

The Debtor's proposed retention of IAS is not an ordinary course transaction that can be approved under 11 U.S.C. § 363(c) because it fails the vertical and horizontal tests. First, the Debtor's proposed retention cannot satisfy the vertical test. The Debtor is a religious organization. It does not ordinarily need to retain a professional to investigate and research insurance policies. Such services are not critical to the Debtor's faith-based mission. As noted earlier, the Debtor is also retaining IAS to assist with its insurance-related litigation—the Debtor would not have ordinarily engaged in insurance-related litigation. Hence, the vertical test is not satisfied. Second, the Debtor's proposed retention does not satisfy the horizontal test. Religious organizations, like the Debtor, do not ordinarily

---

[30] *Aalfs v. Wirum (In re Straightline Inv., Inc.)*, 525 F.3d 870, 879 (9th Cir. 2008).

[31] *Id.* citing in part *Credit Alliance Corp. v. Idaho Asphalt Supply, Inc. (In re Blumer)*, 95 B.R. 143, 147 & n. 4 (9th Cir. BAP 1988) (recognizing that the Ninth Circuit has set forth two tests but that it is unclear whether both tests need to be satisfied).

[32] *In re Straightline Inv., Inc.*, 525 F.3d at 879 citing *Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 705 (9th Cir. 1988).

[33] *In re Straighline Inv., Inc.*, 525 F.3d at 879.

[34] *Id*. at 881 citing *In re Dant & Russell, Inc.*, 853 F.2d at 704.

[35] *In re Straightline Inv.*, Inc., 525 F.3d at 881.

need to retain insurance experts to carry out their mission. Thus, the Debtor does not satisfy the horizontal tests. In sum, because the Debtor's proposed retention of IAS fails both the vertical and horizontal tests, the Debtor cannot retain IAS under 11 U.S.C. § 363(c).

IAS is not an OCP. Indeed, IAS does not fall within the Debtor's own definition of an "ordinary course professional." In its Motion to Retain OCPs, the Debtor describes OCPs as "essential to the Debtor's ability to maintain its operations and continue its mission."[36] IAS is not critical to the Debtor's operations. As the Debtor acknowledges in its Notice, it is seeking to employ IAS "in support of the Debtor's insurance-related litigation."[37] Insurance-related litigation is not critical to the Debtor's operations. The Debtor is only retaining IAS because of the abuse claims that led to the filing of its bankruptcy case. Notably, the Debtor filed the Notice more than one year after it filed its Motion. If IAS was truly critical to the Debtor's continuing operations, the Debtor would not have waited more than a year to seek authority to retain IAS. Requiring the Debtor to file an application to employ IAS will not result in any disruption to the Debtor's operations. Hence, IAS is not an OCP and cannot be retained under 11 U.S.C. § 363(c).

**C. IAS is Required to File Fee Applications**

As a professional, section 330 requires IAS to file fee applications. LMI do not oppose the Debtor retaining IAS. But IAS should be held to the same standard as every other non-ordinary course professional. If retained, IAS will be paid for its services from the Debtor's estate. All parties in interest have an interest in reviewing the billing statements that will be included with IAS's fee applications. "The honest and comprehensive disclosure of compensation payments plays such a vital role in maintaining the integrity of the bankruptcy system…"[38] In short, parties in interest are entitled to know how estate funds are spent to research and analyze a potential key asset of the estate.

LMI acknowledges that the Debtor is only proposing to pay IAS a flat fee of $9,500.00 at this time. It is unclear, however, if the Debtor will have authority to increase the amount it pays IAS in

---

[36] Motion to Retain OCPs, Dkt. 178 at 2:20-22.

[37] Notice, Dkt. 1211 at 1:28 to 2:1-2.

[38] *In re Mayeaux*, 269 B.R. 614, 628 (Bankr. E.D. Tex. 2001).

the future. Under the order granting the Motion to Retain OCPs, the Debtor may pay OCPs up to $40,000.00 per month before fee applications are required. The Notice's open-ended description of IAS's services raises similar questions. Because the Notice states that IAS "will provide research and other services" in connection with the insurance-related litigation, it is unclear whether IAS's role will expand to serve as an expert in the litigation. Moreover, LMI's proposal to pay IAS $9,500.00 is likely an underestimate. In other diocesan bankruptcy cases, insurance archeology professionals have incurred fees and costs *four to five times more* than the Debtor's estimate.[39] In the Roman Catholic Church of the Diocese of Gallup case, the bankruptcy court approved fees and costs of $48,818.70 to the insurance archeologist. And, more recently, the bankruptcy court approved fees and costs of $38,547.58 to the insurance archeologist in the Diocese of Camden bankruptcy case.[40] Thus, the Debtor could potentially be paying significant estate funds to a non-ordinary course professional with little oversight from the Bankruptcy Court.[41] Accordingly, the Debtor should be required to file an application to employ IAS so that IAS is required to file fee applications in the future.

## IV. CONCLUSION

Based on the foregoing, LMI respectfully request the Court deny the Debtor's request to retain IAS as an OCP and require the Debtor to file a fee application to retain IAS, with IAS required to file fee applications for its services.

Dated: July 9, 2024　　　　　　　　　　　　By:　/s/ *Jeff D. Kahane*
　　　　　　　　　　　　　　　　　　　　　　　　Russell W. Roten
　　　　　　　　　　　　　　　　　　　　　　　　Jeff D. Kahane
　　　　　　　　　　　　　　　　　　　　　　　　Betty Luu
　　　　　　　　　　　　　　　　　　　　　　　　Timothy W. Evanston
　　　　　　　　　　　　　　　　　　　　　　　　DUANE MORRIS, LLP

---

[39] *See* Order Approving "First and Final Application for Allowance and Payment of Professional Compensation and Reimbursement of Expenses by Insurance Archaeology Group", Roman Catholic Church of the Diocese of Gallup, Case No. 13-13676-t11 (Bankr. N.M.), Dkt 629; *see* Order Allowing First Interim Allowances to Insurance Archaeology Group as Insurance Archeologist for the Debtor, The Diocese of Camden, New Jersey, Case No. 20-21257 (Bankr. N.J.), Dkt 2708.

[40] *Id*.

[41] The fee statements required to be filed under Order only require that the ordinary course professional state the amount paid for the current quarter, "a general description of the services rendered by each Ordinary Course Professional during the previous quarter", and the total amount paid post-petition to the ordinary course professional. *See* Order at 4:4-10.

| | |
|---|---|
| 1 | 865 S. Figueroa Street, Suite 3100 |
| 2 | Los Angeles, California 90017<br>Telephone: (213) 689-7400 |
| 3 | Fax: (213) 689-7401<br>RWRoten@duanemorris.com |
| 4 | JKahane@duanemorris.com<br>BLuu@duanemorris.com |
| 5 | TWEvanston@duanemorris.com |
| 6 | By /s/ *Catalina J. Sugayan* |
| 7 | Catalina J. Sugayan<br>Clinton E. Cameron (*pro hac vice*) |
| 8 | Yongli Yang (*pro hac vice*)<br>Clyde & Co US LLP |
| 9 | 30 S Wacker Drive, Suite 2600<br>Chicago, IL 60606 |
| 10 | Telephone: (312) 635-7000<br>Catalina.Sugayan@clydeco.us |
| 11 | Clinton.Cameron@clydeco.us<br>Yongli.Yang@clydeco.us |
| 12 | Attorneys *Certain Underwriters at Lloyd's,* |
| 13 | *London, subscribing severally and not jointly to Slip Nos. CU 1001 and K 66034 issued to* |
| 14 | *the Roman Catholic Archbishop of San Francisco, and Nos. K 78138 and CU 3061* |
| 15 | *issued to the Roman Catholic Bishop of Oakland* |