**FOLEY & LARDNER LLP**
Thomas F. Carlucci (CA Bar No. 135767)
Tel: (415) 984-9824; tcarlucci@foley.com
Shane J. Moses (CA Bar No. 250533)
Tel: (415) 438-6404; smoses@foley.com
Ann Marie Uetz (admitted *pro hac vice*)
Tel: (313) 234-7114; auetz@foley.com
Matthew D. Lee (admitted *pro hac vice*)
Tel: (608) 258-4203; mdlee@foley.com
Mark C. Moore (admitted *pro hac vice*)
Tel: (214) 999-4150; mmoore@foley.com
555 California Street, Suite 1700
San Francisco, CA 94104-1520

*Counsel for the Debtor*
*and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br>Debtor. | Case No. 23-40523 WJL<br><br>Chapter 11<br><br>Judge: Hon. William J. Lafferty<br><br>Date: TBD<br>Time: TBD<br>Place: United States Bankruptcy Court<br>1300 Clay Street<br>Courtroom 220<br>Oakland, CA 94612 |

# DEBTOR'S PLAN OF REORGANIZATION

### *Dated November 8, 2024*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARTICLE I
    DEFINITIONS AND RULES OF INTERPRETATION ................................................ 1

    1.1.    DEFINITIONS ........................................................................................................ 1

    1.2.    CONSTRUCTION OF TERMS ............................................................................ 16

    1.3.    APPENDICES AND PLAN DOCUMENTS ........................................................ 17

ARTICLE II
    SUMMARY OF CLASSIFICATION OF CLAIMS .................................................... 17

    2.1.    CLAIMS PROVIDED FOR HEREIN ................................................................... 17

    2.2.    UNCLASSIFIED CLAIMS ................................................................................... 17

    2.3.    CLAIMS CLASSIFICATION .............................................................................. 17

ARTICLE III
    TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS,
    PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE'S FEES ............................. 18

    3.1.    ADMINISTRATIVE EXPENSE CLAIMS ......................................................... 18

    3.2.    PRIORITY TAX CLAIMS ................................................................................... 19

    3.3.    FEE CLAIMS ....................................................................................................... 20

    3.4.    CURE CLAIMS .................................................................................................... 20

    3.5.    UNITED STATES TRUSTEE FEES .................................................................... 20

ARTICLE IV
    TREATMENT OF CLASSIFIED CLAIMS ............................................................... 21

    4.1.    CLASS 1 – SECURED CLAIM OF RCC ............................................................ 21

    4.2.    CLASS 2 – PRIORITY UNSECURED CLAIMS ................................................ 21

    4.3.    CLASS 3 – GENERAL UNSECURED CLAIMS ................................................ 21

    4.4.    CLASS 4 – ABUSE CLAIMS .............................................................................. 22

    4.5.    CLASS 5 – UNKNOWN ABUSE CLAIMS ........................................................ 22

    4.6.    CLASS 6 – NON-ABUSE LITIGATION CLAIMS ............................................ 23

    4.7.    CLASS 7A – ABUSE RELATED CONTRIBUTION CLAIMS RELATED TO
    CLASS 4 CLAIMS .............................................................................................. 23

4.8.     CLASS 7B – ABUSE RELATED CONTRIBUTION CLAIMS RELATED TO CLASS 5 CLAIMS ................................................................................. 24

4.9.     CLASS 8 – OPF CLAIM ................................................................................ 24

ARTICLE V
DISPUTED CLAIMS AND CLAIM DISTRIBUTIONS ............................................ 25

5.1.     SINGLE CLAIM .............................................................................................. 25

5.2.     CLAIMS OBJECTIONS ................................................................................. 25

5.3.     TREATMENT OF DISPUTED CLAIMS .................................................... 26

5.4.     LATE-FILED CLAIMS .................................................................................. 26

5.5.     CLAIM ESTIMATION .................................................................................. 26

5.6.     NO DISTRIBUTION TO DISALLOWED CLAIMS ................................... 27

5.7.     TIMING OF DISTRIBUTIONS TO ALLOWED CLAIMS ......................... 27

5.8.     TRANSFERS OF CLAIMS ............................................................................ 27

5.9.     PREPAYMENT ............................................................................................... 27

5.10.    DELIVERY OF DISTRIBUTIONS .............................................................. 28

5.11.    UNCLAIMED DISTRIBUTIONS ............................................................... 28

5.12.    NO INTEREST ................................................................................................ 28

5.13.    PROVISIONS GOVERNING UNIMPAIRED CLAIMS ............................ 28

5.14.    ADDITIONAL TERMS REGARDING CLASS 4 AND CLASS 5 CLAIMS ............ 28

ARTICLE VI
VOTING ON THE PLAN ............................................................................................ 29

6.1.     VOTING CLASSES ....................................................................................... 29

6.2.     OPT-OUT RELEASE FORMS ..................................................................... 29

6.3.     ELIMINATION OF VACANT CLASSES .................................................. 29

6.4.     EFFECT OF OBJECTIONS ......................................................................... 29

ARTICLE VII
EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................... 30

7.1.     PRIOR ORDERS ............................................................................................ 30

7.2.     ASSUMPTION OF CONTRACTS AND UNEXPIRED LEASES .............. 30

7.3.     REJECTION OF CCCEB LEASE ............................................................... 31

7.4. REJECTION OF CONTRACTS ...........................................................32

ARTICLE VIII
INSURANCE ASSIGNMENT AND OTHER INSURANCE MATTERS ...........................32

8.1. THE INSURANCE ASSIGNMENT ........................................................32

8.2. INSURANCE COVERAGE FOR ABUSE CLAIMS.....................................34

8.3. PRESERVATION OF THE RIGHTS OF NON-SETTLING INSURERS.................35

8.4. SCOPE OF PLAN INJUNCTIONS.........................................................41

8.5. NON-SETTLING INSURERS' CONTRIBUTION CLAIMS AGAINST SETTLING INSURERS ............................................................42

8.6. COOPERATION. ...........................................................................42

8.7. REDUCTIONS IN NON-SETTLING INSURERS' LIABILITY ..............................43

8.8. SETTLING INSURERS ....................................................................43

ARTICLE IX
THE SURVIVORS' TRUST ...........................................................................45

9.1. CREATION OF THE SURVIVORS' TRUST AND APPOINTMENT OF TRUSTEE ...................................................................................45

9.2. APPOINTMENT AND POWERS OF THE SURVIVORS' TRUSTEE .....................45

9.3. PROPERTY AND FUNDING OF THE SURVIVORS' TRUST ...............................47

9.4. UNKNOWN ABUSE CLAIMS RESERVE ...............................................50

9.5. VESTING. ....................................................................................51

9.6. SURVIVORS' TRUST ASSUMPTION OF LIABILITIES FOR ABUSE CLAIMS ......................................................................................51

9.7. RIGHT TO ELECT TO RECEIVE AN IMMEDIATE DISTRIBUTION...................51

9.8. METHOD OF DETERMINATION OF ABUSE CLAIMS AND RIGHTS OF ABUSE CLAIMANTS TO PURSUE LITIGATION.......................................52

9.9. COMPENSATION AND REIMBURSEMENT OF EXPENSES TO SURVIVORS' TRUSTEE AND SURVIVORS' TRUST PROFESSIONALS. ...........55

9.10. EXCESS SURVIVORS' TRUST ASSETS.................................................55

9.11. INDEMNIFICATION OF DEBTOR, REORGANIZED DEBTOR, AND CONTRIBUTING NON-DEBTOR CATHOLIC ENTITIES......................................55

9.12. MODIFICATION OF SURVIVORS' TRUST DOCUMENTS................................56

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 4 of
93

ARTICLE X
CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN ................56

10.1.  CONDITIONS TO CONFIRMATION ........................................................56

10.2.  CONDITIONS TO EFFECTIVENESS .......................................................57

10.3.  WAIVER OF CONDITIONS ..................................................................58

10.4.  REVOCATION OF THE PLAN ..............................................................59

ARTICLE XI
EXIT FINANCING ............................................................................................59

11.1.  THE EXIT FACILITY ..........................................................................59

11.2.  EFFECT OF THE EXIT FACILITY .........................................................59

11.3.  AUTHORIZATION .............................................................................60

ARTICLE XII
MEANS FOR IMPLEMENTING THE PLAN .........................................................60

12.1.  REVESTING .....................................................................................60

12.2.  NON-MONETARY COMMITMENT TO HEALING AND RECONCILIATION.....61

12.3.  CCCEB SETTLEMENT ........................................................................61

12.4.  TREATMENT OF ACTIONS AND CAUSES OF ACTION....................................62

12.5.  CONTINUED EXISTENCE .....................................................................62

12.6.  THE SURVIVORS' TRUST ....................................................................63

12.7.  POST-EFFECTIVE DATE PROSECUTION OF NON-ABUSE LITIGATION
       CLAIMS ...........................................................................................63

12.8.  BANKRUPTCY PROCEDURE AND TRANSITION ......................................64

12.9.  POST-PETITION DEPOSITS ..................................................................65

12.10. OTHER ACTIONS ..............................................................................65

12.11. GENERAL SETTLEMENT .....................................................................65

12.12. CLOSING OF THE CASE .......................................................................66

ARTICLE XIII
EFFECT OF PLAN CONFIRMATION .................................................................66

13.1.  BINDING EFFECT OF CONFIRMATION .................................................66

13.2.  RATIFICATION..................................................................................67

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 5 of
93

13.3. DISCHARGE OF CLAIMS ....................................................................... 67

13.4. CONFIRMATION INJUNCTION ............................................................ 67

13.5. INJUNCTION AGAINST INTERFERENCE WITH THE PLAN ............... 68

13.6. EXCULPATION .................................................................................. 68

13.7. INJUNCTION RELATED TO EXCULPATION .......................................... 69

13.8. RELEASES BY THE DEBTOR ............................................................. 69

13.9. RELEASES BY HOLDERS OF ABUSE CLAIMS ..................................... 70

13.10. INJUNCTION RELATED TO RELEASES ............................................... 71

13.11. DISALLOWED CLAIMS ..................................................................... 71

13.12. CHANNELING INJUNCTION .............................................................. 71

13.13. PROVISIONS RELATING TO THE CHANNELING INJUNCTION ............... 73

13.14. EFFECT OF CHANNELING INJUNCTION. ........................................... 73

ARTICLE XIV
MODIFICATION ........................................................................................... 74

14.1. MODIFICATION OF THE PLAN .......................................................... 74

14.2. CORRECTION OF DEFECTS .............................................................. 74

14.3. SAVINGS CLAUSE ............................................................................ 74

14.4. REMEDY OF DEFECTS ..................................................................... 74

ARTICLE XV
RETENTION OF JURISDICTION ................................................................... 75

15.1. SCOPE OF THE BANKRUPTCY COURT'S RETAINED JURISDICTION .............. 75

15.2. FAILURE OF BANKRUPTCY COURT TO EXERCISE JURISDICTION .............. 76

ARTICLE XVI
MISCELLANEOUS PROVISIONS .................................................................. 76

16.1. ENFORCEMENT ............................................................................... 76

16.2. EXEMPTION FROM CERTAIN TRANSFER TAXES AND RECORDING
FEES ............................................................................................... 77

16.3. EFFECTUATING DOCUMENTS .......................................................... 77

16.4. GOVERNING LAW ............................................................................ 77

16.5. INTEGRATION ................................................................................. 77

16.6.   INCONSISTENCY ................................................................. 77

16.7.   SECTION HEADINGS ........................................................... 78

16.8.   SEVERABILITY ................................................................... 78

ARTICLE XVII
    REQUEST FOR CONFIRMATION ............................................... 78

17.1.   CONFIRMATION PURSUANT TO § 1129(B) ........................... 78

**INTRODUCTION**

This Plan of Reorganization dated November 8, 2024 (as amended, modified or supplemented from time to time, the "Plan"), is proposed by The Roman Catholic Bishop of Oakland, a California corporation sole, and the debtor and debtor in possession (the "Debtor" or "RCBO") in the above-captioned chapter 11 bankruptcy case (the "Chapter 11 Case"). Holders of Claims (as those terms are defined below) may refer to the Disclosure Statement (as defined below) for a summary and description of the Plan and a discussion of the Debtor's history, estate, assets, mission, operations, historical financial information, and projections of future operations. The Debtor is the proponent of this Plan within the meaning of Section 1129 of title 11 of the United States Code, as amended from time to time and as in effect during the Chapter 11 Case (the "Bankruptcy Code").

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING.

**ARTICLE I**
**DEFINITIONS AND RULES OF INTERPRETATION**

**1.1.  *Definitions.*** As used in this Plan, unless defined in the above Introduction or elsewhere in the Plan, capitalized terms shall have the meanings set forth in this Section 1.1. Any term not otherwise defined herein but defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure as amended from time to time and as in effect during the Chapter 11 Case (the "Bankruptcy Rules") will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. The following definitions apply in this Plan:

1.1.1.  **"Abuse"** means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault and/or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such

activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

1.1.2. **"Abuse Claim"** means any Claim relating to, in whole or in part, directly or indirectly, an act of Abuse committed by any Person before the Effective Date for which the Debtor, a Non-Debtor Catholic Entity, or any of their respective agents, employees, or representatives is allegedly responsible. Except as otherwise provided herein, the term "Abuse Claim" includes Unknown Abuse Claims and Trust Claims but not Abuse Related Contribution Claims.

1.1.3. **"Abuse Claimant"** means a Holder of an Abuse Claim.

1.1.4. **"Abuse Claims Reviewer"** means the person identified in the Survivors' Trust Documents to review and score all Abuse Claims except for those Abuse Claims held by Abuse Claimants who have elected to receive an Immediate Distribution, in accordance with the procedures set forth in the Survivors' Trust Documents.

1.1.5. **"Abuse Insurance Policies"** means any insurance policy alleged in the Coverage Action or in any Abuse Claim Litigation (as defined in Section 9.8.4 of the Plan) to provide insurance coverage for any Abuse Claim.

1.1.6. **"Abuse Related Contribution Claim"** means any Person's Claim against any other Person for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery, arising because such Person has paid or defended against any Abuse Claim including but not limited to a joint tortfeasor or the like, but excluding any claim by an Insurer for contribution or similar relief.

1.1.7. **"Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Estate of the Debtor, any actual and necessary costs and expenses of the Debtor's operations, and any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business, but not including Fee Claims, Cure Claims, or U.S. Trustee Fees. Administrative Expense Claims are further described in in Section 3.1 below.

1.1.8. **"Administrative Expense Claims Bar Date"** means the date that is 45 days after the Effective Date.

1.1.9. **"Adventus"** means a California nonprofit public benefit corporation that is one of the Contributing Non-Debtor Catholic Entities.

1.1.10. **"Affiliate"** shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

1.1.11. **"Allowed"** means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the applicable Claims Bar Date, (b) a Claim for which a Proof of Claim is or shall not be required to be Filed under the Plan, the Bankruptcy Code, or a Final Order of the Court, (c) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed, or (d) a Claim Allowed pursuant to the Plan or a Final Order of the Court; provided, however, that with respect to a Claim described in clauses (a), (b), and (c) above, such Claim shall be considered Allowed only if no objection to its allowance has been made before the Claims Objection Deadline, or within such time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court.

1.1.12. **"Assigned Insurance Interests"** means the following rights and interests of the Debtor in the Non-Settling Insurer Policies: (a) the right to receive insurance proceeds for any Abuse Claim (including any Unknown Abuse Claim) covered by the Non-Settling Insurer Policies; and (b) the right to pursue relief for all Claims against the Non-Settling Insurers that derive from the Non-Settling Insurers' handling of any Abuse Claim including but not limited to the failure to defend or resolve any Abuse Claim.

1.1.13. **"Assumed Employee Benefit Plans"** means any written contracts, agreements, policies, programs, and plans (including any related trust or other funding vehicle) governing any obligations relating to compensation, reimbursement, indemnity, health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation and sick leave benefits, paid time off, savings, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance, and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs, and plans for bonuses and other incentives or compensation for the current and former officers,

employees, and priests, as applicable, of the Debtor, but excluding the Priest Long-Term Care Plan and the SERP.

1.1.14. **"Assumption Objection"** means an objection to assumption or cure of an Executory Contract, as described in Section [7.2.1], below.

1.1.15. **"Avoidance Actions"** means any and all rights to recover or avoid transfers or Liens under Chapter 5 of the Bankruptcy Code or otherwise, including Sections 506(d), 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions; subject, however, to any releases thereof provided in this Plan, the Confirmation Order, or any other Final Order of the Bankruptcy Court.

1.1.16. **"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of California, Oakland Division, having jurisdiction over the Chapter 11 Case.

1.1.17. **"Bar Date Order"** means the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 293], entered by the Bankruptcy Court on July 25, 2023, and as may be expressly amended from time to time.

1.1.18. **"Business Day"** means any day other than a Saturday, Sunday, or any "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.1.19. **"Cash"** means the legal tender of the United States of America, or its equivalent.

1.1.20. **"Cathedral Property"** means the parcel of real estate described on <u>Schedule 1.1.20</u>, the parcel owned as of the Petition Date by CCCEB.

1.1.21. **"Cause of Action"** means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any

other theory of law. For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any Claim pursuant to Section 362 or Chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and any other defenses set forth in Section 558 of the Bankruptcy Code; (e) any state or foreign law fraudulent transfer or similar claim; (f) any cause of action asserted by the Debtor in the Coverage Action; and (g) any cause of action described on the Debtor's Schedules or Statements of Financial Affairs.

1.1.22. **"CCCEB Note"** means that certain Promissory Note dated as of April 16, 2009, payable by CCCEB to the Debtor, as amended, modified, or restated including by that certain Amendment #1 to Promissory Note dated as of January 1, 2014, by and between the Debtor and CCCEB, and that certain Amendment #1 to Promissory Note dated as of February 1, 2017, by and between the Debtor and CCCEB.

1.1.23. **"CCCEB Settlement"** means the transaction described in Section 12.3 of the Plan, as set forth in the CCCEB Settlement Documents.

1.1.24. **"CCCEB Settlement Documents"** means all documents necessary to effectuate the CCCEB Settlement as of the Effective Date.

1.1.25. **"Channeled Claim"** means any Abuse Claim and/or any Claim, excluding Opt-Out Abuse Claims, against a Released Party or any Settling Insurer arising from, in connection with, or related to an Abuse Claim, or any of the Abuse Insurance Policies issued by any Settling Insurers, including Abuse Related Contribution Claims, but not including an Abuse Claim against any Person who personally committed an act or acts of Abuse resulting in a Claim against the Debtor or Contributing Non-Debtor Catholic Entity.

1.1.26. **"Channeling Injunction"** means the injunction imposed pursuant to Section 13.12 of this Plan and the Confirmation Order.

1.1.27. **"Churches"** means the individual Catholic churches within the Diocese of Oakland, each of which is part of the corporation sole that is the Debtor, and each of which is listed on Schedule 1.1.27 attached hereto.

1.1.28. **"Claim"** shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.1.29. **"Claims Bar Date"** means, including without limitation for Claims arising under Section 503(b)(9) of the Bankruptcy Code, and in accordance with the terms of the Bar Date Order, (i) for all Claims other than Claims of Governmental Units, September 11, 2023, at 5:00 p.m. Pacific Time, and (ii) for Claims of Governmental Units, November 6, 2023, at 5:00 p.m. Pacific Time.

1.1.30. **"Claims Objection Deadline"** means the deadline for objecting to a Claim, which shall be on the date that is the later of: (a) 12 months after the Effective Date, and (b) such other period of limitation as may be specifically fixed by the Debtor or the Reorganized Debtor, as applicable, or by an order of the Court for objecting to such Claims.

1.1.31. **"Claims Register"** means the official register of Claims maintained by the Debtor or Reorganized Debtor, as applicable.

1.1.32. **"Class"** means a category of Holders of Claims as set forth in Section 2.3 of this Plan, under Section 1122(a) of the Bankruptcy Code.

1.1.33. **"Committee"** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case on May 23, 2023.

1.1.34. **"Confirmation"** means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

1.1.35. **"Confirmation Order"** means a Final Order of the Bankruptcy Court confirming the Plan under Section 1129 of the Bankruptcy Code.

1.1.36. **"Contributing Non-Debtor Catholic Entity"** means a Non-Debtor Catholic Entity that contributes assets to the Survivors' Trust on or after the Effective Date pursuant to Section 9.3 of the Plan.

1.1.37. **"Coverage Action"** means the proceeding captioned *In re: The Roman Catholic Bishop of Oakland Insurance Adversary Proceeding Litigation*, Case Nos. 3:24-cv-00709-JSC & 3:24-cv-00711-JSC (N.D. Cal.) and all adversary proceedings consolidated thereunder.

1.1.38. **"Coverage Claims"** means all Claims against a Non-Settling Insurer under or relating to the policies issued by such Non-Settling Insurer.

1.1.39. **"Creditor"** shall have the meaning set forth in Section 101(10) of the Bankruptcy Code.

1.1.40. **"Cure Amount"** means all amounts, including an amount of $0.00, required to cure any monetary default under any Executory Contract or Unexpired Lease (or any lesser amount agreed to by the counterparty to an Executory Contract or Unexpired Lease of the Debtor) to be assumed by the Debtor under Sections 365 or 1123 of the Bankruptcy Code.

1.1.41. **"Cure Claim"** means a monetary Claim arising out of the Debtor's default(s) under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to Section 365 of the Bankruptcy Code.

1.1.42. **"Debtor"** shall have the meaning set forth in the Introduction.

1.1.43. **"Disallowed"** means, with respect to any Claim, a Claim or any portion thereof that: (a) has been disallowed by a Final Order, (b) is listed on the Schedules as having a value of zero dollars or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Expense Claim was timely filed or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (c) is not listed on the Schedules and as to which no Proof of Claim or request for payment of an Administrative Expense Claim was timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Court or otherwise deemed timely filed under applicable law or this Plan, (d) has been withdrawn by agreement of the Debtor and the Holder thereof, or (e) has been withdrawn by the Holder thereof. Any Claim or portion of a Claim not Disallowed shall be either Allowed or Disputed as provided in the Plan.

1.1.44. **"Disclosure Statement"** means the *Disclosure Statement for the Debtor's Plan of Reorganization* (as amended, supplemented, or modified from time to time) filed in the Chapter 11 Case, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

1.1.45. **"Disputed"** means, with reference to any Claim: (i) a Claim as to which an objection has been filed and which objection has not either been withdrawn, determined by a Final Order, or otherwise finally resolved pursuant to the Plan; or (ii) a Claim specifically stated herein to be Disputed.

1.1.46. **"District Court"** means the United States District Court for the Northern District of California, Oakland Division, having jurisdiction over the Coverage Action.

1.1.47. **"Effective Date"** means the date of the first business day after confirmation of the Plan on which all conditions precedent to the effectiveness of the Plan have either been satisfied or waived.

1.1.48. **"Entity"** shall have the meaning set forth in Section 101(15) of the Bankruptcy Code.

1.1.49. **"Estate"** means the estate created for the Debtor in this Chapter 11 Case under Section 541 of the Bankruptcy Code.

1.1.50. **"Exculpated Parties"** means each of the following in their capacity as such: (a) the Exit Facility Lender, (b) the Debtor, including the Churches, (c) the Reorganized Debtor, including the Churches, (d) the Committee, (e) the Committee's members, (f) each Contributing Non-Debtor Catholic Entity, (g) the College of Consultors of the Diocese of Oakland and each of its members, (h) The Diocese of Oakland Finance Council and each of its members, (i) the Presbyteral Council of the Diocese of Oakland and each of its members, (j) the Meditators, (k) the Unknown Abuse Claims Representative, and (l) for each of the foregoing, their respective officers, directors, agents, employees, equity holders, attorneys, financial advisors, accountants, representatives, and other duly authorized employed Professionals in this Chapter 11 Case.

1.1.51. **"Exculpation"** means the treatment of an Exculpated Party under, or the effect of, the Exculpation Clause.

1.1.52. **"Exculpation Clause"** means Section 13.6 of this Plan.

1.1.53. **"Executory Contract"** means a contract to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

1.1.54. **"Executory Contract Cure Schedule"** means a schedule that may be, but is not required to be, filed by the Debtor as part of the Plan Supplement, setting forth the amount the Debtor asserts is required to be paid pursuant to Section 365(b)(1) of the Bankruptcy Code in connection with the Debtor's assumption of any Executory Contract.

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 15 of 93

1.1.55. **"Executory Contract Rejection Schedule"** means a schedule that may be, but is not required to be, filed by the Debtor as part of the Plan Supplement, identifying any Executory Contracts to be rejected by the Debtor as of the Effective Date of the Plan.

1.1.56. **"Exit Facility"** means the new senior secured lending facility that RCBO will enter into on the Effective Date, the form of which shall be included in the Plan Supplement.

1.1.57. **"Exit Facility Documents"** means the documents evidencing the Exit Facility.

1.1.58. **"Exit Facility Lender"** means the Roman Catholic Cemeteries of the Diocese of Oakland ("RCC"), the Entity financing the Exit Facility.

1.1.59. **"Fee Claim"** means a Claim under Sections 328, 330, 331, 503, or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services provided to the Debtor or Committee, or expenses incurred in the course of providing services to the Estate, during the Chapter 11 Case.

1.1.60. **"File," "Filed," or "Filing"** means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Case or the Coverage Action.

1.1.61. **"Final Decree"** means the decree contemplated under Bankruptcy Rule 3022.

1.1.62. **"Final Order"** means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the Bankruptcy Court (or any other court) on the docket in the Chapter 11 Case (or the docket of such other court), which has not been reversed, stayed, modified, amended, or vacated, and as to which: (a) the time to appeal, petition for *certiorari*, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or motion for new trial, stay, reargument, or rehearing shall be pending, or (b) if an appeal, writ of *certiorari*, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure,

or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause an order not to be a Final Order.

1.1.63. **"Governmental Unit"** shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

1.1.64. **"Holder"** means a Person or Entity with ownership or legal control of a Claim, including without limitation an Abuse Claim.

1.1.65. **"Immediate Distribution"** means a one-time distribution of $50,000 paid to the Holder of an Abuse Claim from the Survivors' Trust, paid by the Survivors' Trustee without objection as set forth in the Plan and to the exclusion of such Holder's (a) right to any further distributions from the Survivors' Trust and (b) right to pursue an Abuse Claim against any Non-Settling Insurers or other parties.

1.1.66. **"Impaired"** means, with respect to a Class of Claims, a Class of Claims that is not Unimpaired.

1.1.67. **"Insurance Assignment"** means the transaction described in Section 8.1 of the Plan, subject to the terms of the Plan, the Abuse Insurance Policies, and applicable law.

1.1.68. **"Insurance Recoveries"** means the rights to any proceeds of an Abuse Insurance Policy, whether pursuant to the policy outright, an Insurance Settlement Agreement, or a judgment, award, decree, or other court or administrative order.

1.1.69. **"Insurance Settlement Agreement"** means any settlement agreement between (i) the Debtor and any Settling Insurer, if executed and approved by a final, non-appealable order of the Bankruptcy Court before the Effective Date, or (ii) the Survivors' Trust and any Settling Insurer, if executed after the Effective Date.

1.1.70. **"Insurers"** means the defendants in the Coverage Action. For the avoidance of doubt, this term, whether or not qualified with "Settling" or "Non-Settling", shall include the California Insurance Guarantee Association.

1.1.71. **"Livermore Property"** means the real property owned by Adventus having a street address of 3658 Las Colinas Road, Livermore, California, and bearing the legal description set forth on Schedule 1.1.71 attached hereto.

1.1.72. **"Mediators"** means, individually and collectively: (i) the Honorable Christopher Sontchi (Ret.), Sontchi, LLC; (ii) Jeffrey Krivis, Mediation Offices of Jeffrey Krivis; (iii) Timothy Gallagher, The Gallagher Law Group; and (iv) the Honorable Randall J. Newsome (Ret.).

1.1.73. **"Non-Abuse Litigation Claims"** means Claims arising out of litigation pending against the Debtor prior to the Petition Date asserting Causes of Action unrelated to Abuse.

1.1.74. **"Non-Debtor Catholic Entity"** means any of the following: RCC, the Oakland Parochial Fund ("OPF"), Roman Catholic Welfare Corporation of Oakland (or any school it managed, manages, operated or operates) ("RCWC"), Lumen Christi Academies of the Roman Catholic Diocese of Oakland, The Catholic Cathedral Corporation of the East Bay ("CCCEB"), The Oakland Society for the Propagation of the Faith, Catholic Charities of the Diocese of Oakland, Inc. (d/b/a Catholic Charities of the East Bay), Catholic Church Support Services (d/b/a Catholic Management Services), Furrer Properties, Inc., Adventus, Catholic Foundation for the Diocese of Oakland, Christ the Light Cathedral Corporation, or any religious order.

1.1.75. **"Non-Settling Insurer"** means any defendant in the Coverage Action that is not a Settling Insurer.

1.1.76. **"Non-Settling Insurer Policy"** means any Abuse Insurance Policy issued by a Non-Settling Insurer.

1.1.77. **"OPF Claim"** means the Class 8 Claim of OPF.

1.1.78. **"Opt-Out Abuse Claim"** means any Abuse Claim for which the Holder of such Abuse Claim completed and submitted pursuant to Section 6.2 of the Plan an Opt-Out Release Form in which the Holder affirmatively opted out of the releases provided by the Plan.

1.1.79. **"Opt-Out Release Form"** means that certain form to be served on each Holder of a Claim giving such Holder the option to affirmatively opt out of the releases provided by the Plan.

1.1.80. **"Person"** shall have the meaning set forth in Section 101(41) of the Bankruptcy Code.

1.1.81. **"Petition Date"** means May 8, 2023, the date on which the Chapter 11 Case commenced in the Bankruptcy Court.

1.1.82. **"Plan Documents"** means this Plan, the Plan Supplement, all appendices and exhibits to the forgoing, the CCCEB Settlement Documents, the Survivors' Trust Documents, the Confirmation Order, and any other documents entered into pursuant to the Plan.

1.1.83. **"Plan Supplement"** means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules), to be Filed no later than five (5) Business Days before the Voting Deadline, and additional documents or amendments to previously Filed documents, Filed before the Effective Date as amendments to the Plan Supplement, including without limitation the following: (a) the Exit Facility Documents, (b) the Schedule of Assumed Executory Contracts and Unexpired Leases, (c) the CCCEB Settlement Documents, (d) the form of the Survivors' Trust Agreement, and (e) the form of the Survivors' Trust Distribution Plan.

1.1.84. **"Post-Confirmation Notice List"** means the list of Persons or Entities to receive notice of matters after the Confirmation Date, specifically: (a) the Reorganized Debtor; (b) the Survivors' Trustee; (c) the Office of the United States Trustee; (d) Persons against whom relief is sought; and (e) Persons who request notice of such matters through a written request that is filed with the Bankruptcy Court and served on the Debtor not earlier than the Confirmation Date.

1.1.85. **"Priest Long-Term Care Plan"** means the long-term care plan maintained by the Debtor for priests employed by the Debtor, Churches, and Non-Debtor Catholic Entities.

1.1.86. **"Priority Tax Claim"** means any Claim of a Governmental Unit under Section 507(a)(8) of the Bankruptcy Code.

1.1.87. **"Priority Unsecured Claim"** means any Claim against the Debtor that is entitled to priority in right of payment under Section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

1.1.88. **"Professional"** means any Entity employed by the Debtor, the Committee, or the Estate in the Chapter 11 Case under Sections 327 or 1103 of the Bankruptcy Code, any of the Mediators, or any Person or Entity seeking compensation or reimbursement of expenses under Section 503(b)(4) of the Bankruptcy Code.

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 19 of 93

1.1.89. **"Proof of Claim"** means a Claim, along with any supporting documentation, Filed against the Debtor in the Chapter 11 Case.

1.1.90. **"Rejection Claim"** means a Claim for rejection damages arising out of the rejection of an Executory Contract or Unexpired Lease by the Debtor, whether the rejection occurs through an order of the Bankruptcy Court approving a motion to reject an Executory Contract or Unexpired Lease or through confirmation of this Plan or any other chapter 11 plan.

1.1.91. **"Rejection Claims Bar Date"** means, as to a particular Rejection Claim, the date that is 60 calendar days following the entry of an order rejecting an Executory Contract or Unexpired Lease, the rejection of which gave rise to the Rejection Claim.

1.1.92. **"Released Parties"** means collectively: (a) the Debtor, (b) the Reorganized Debtor, (c) the Churches, (d) the Contributing Non-Debtor Catholic Entities, but each only as to the Abuse Claims for which it is receiving a Release under Section 13.9 of the Plan, and (e) with respect to each of the foregoing Persons and Entities in clauses (a) through (d), such Person and their, or such Entity and its, current and former directors, managers, officers, employees, equity holders (regardless of whether such interests are held directly or indirectly), interest holders, predecessors, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; provided, however, this term expressly excludes (i) any Person accused of committing a physical act of Abuse upon a Holder of an Abuse Claim or their predecessor(s)-in-interest, and (ii) any Non-Debtor Catholic Entity that is not a Contributing Non-Debtor Catholic Entity.

1.1.93. **"Releasing Parties"** means collectively: (a) the Released Parties; (b) all Holders of Claims that vote to accept the Plan; (c) all Holders of Class 4 Abuse Claims or Class 5 Unknown Abuse Claims that do not affirmatively opt out of the releases provided by the Plan by checking the appropriate box on the Opt-Out Release Form indicating that they opt not to grant the releases provided in the Plan; and (d) with respect to each of the foregoing Persons and Entities in clauses (a) through (c), such Person and their, or such Entity and its, current and former directors, managers, officers, employees, equity

holders (regardless of whether such interests are held directly or indirectly), interest holders, predecessors, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

1.1.94. **"Reorganized Debtor"** means the Debtor upon the occurrence of the Effective Date and thereafter.

1.1.95. **"Schedules"** means, to the extent required, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor under Section 521 of the Bankruptcy Code, as the same may have been amended, modified, or supplemented from time to time.

1.1.96. **"Secured"** means, when referring to a Claim, a Claim: (a) secured by a lien on property in which the Estate has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed by the Plan as a Secured Claim.

1.1.97. **"SERP"** means the Diocese of Oakland Priests Supplemental Retirement Plan.

1.1.98. **"Settling Insurer"** means any defendant in the Coverage Action with whom (i) the Debtor has executed a settlement agreement as of the Effective Date, or (ii) the Survivors' Trust executes a settlement agreement after the Effective Date.

1.1.99. **"Survivors' Trust"** means the trust created for the benefit of Holders of Allowed Class 4 and Class 5 Claims (the "Survivors' Trust Beneficiaries") in accordance with this Plan, the Confirmation Order, and the Survivors' Trust Agreement.

1.1.100. **"Survivors' Trust Agreement"** means the agreement establishing the Survivors' Trust in conformity with the provisions of the Plan approved in the Confirmation Order and entered into by the Reorganized Debtor on behalf of the Survivors' Trust Beneficiaries and the Survivors'

Trustee on the Effective Date, pursuant to the terms of the Plan. A copy of the form of the Survivors' Trust Agreement shall be Filed with the Plan Supplement.

1.1.101. **"Survivors' Trust Assets"** means collectively, whether contributed on or after the Effective Date, and including all proceeds thereof, (i) the Debtor Cash Contribution, (ii) all Non-Debtor Catholic Entity Contributions, (iii) the Livermore Property, as-is, where-is, (iv) any proceeds of Insurance Settlement Agreements realized by the Debtor (before the Effective Date) or the Survivors' Trust (after the Effective Date), and (v) the Assigned Insurance Interests.

1.1.102. **"Survivors' Trust Distribution Plan"** means the plan and guidelines for distributing liquid assets of the Survivors' Trust to Holders of Abuse Claims and Unknown Abuse Claims, the form of which shall be filed with the Plan Supplement.

1.1.103. **"Survivors' Trust Documents"** means all documents necessary to establish and administer the Survivors' Trust, including without limitation the Survivors' Trust Agreement and the Survivors' Trust Distribution Plan.

1.1.104. **"Survivors' Trustee"** means the person appointed as trustee of the Survivors' Trust in accordance with the terms of the Plan, the order confirming the Plan, and the Survivors' Trust Documents, or any of their successors.

1.1.105. **"Tax Code"** means the Internal Revenue Code of 1986, as amended.

1.1.106. "**Trust Claims**" means the Abuse Claims of Holders who have not elected to receive an Immediate Distribution, which Claims shall be reviewed and scored by the Abuse Claims Reviewer pursuant to the procedures set forth in the Survivors' Trust Documents.

1.1.107. **"U.S. Trustee"** means the Office of the United States Trustee for Region 17, which includes the Northern District of California.

1.1.108. **"U.S. Trustee Fees"** means quarterly fees owed to the U.S. Trustee under 28 U.S.C. § 1930(a)(6).

1.1.109. **"Unexpired Lease"** means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 22 of 93

1.1.110. **"Unimpaired"** means, with respect to a Class of Claims, a Claim that is unimpaired within the meaning of Section 1124 of the Bankruptcy Code, including without limitation through payment in full in Cash.

1.1.111. **"Unknown Abuse Claim"** means an Abuse Claim arising out of an alleged act of sexual abuse that occurred on or before the Effective Date for which (a) no Proof of Claim was Filed or deemed timely Filed on or before the Claims Bar Date, or (b) a Proof of Claim was Filed after the bar date or otherwise submitted to the Survivors' Trustee, if such Abuse Claim was not untimely under California state law (*e.g.* not discovered or reasonably discoverable before the Claims Bar Date, or subject to a new law re-opening the claims window).

1.1.112. **"Unknown Abuse Claims Representative"** means the Person or Entity appointed by the Court to represent the interests of Holders of Unknown Abuse Claims, including without limitation for actions to be taken on behalf of Holders of Unknown Abuse Claims under this Plan.

1.1.113. **"Unknown Abuse Claims Reserve"** means the reserve established on the Effective Date pursuant to the Survivors' Trust Documents for the benefit of Holders of Class 5 Claims.

1.1.114. **"Unsecured"** means a Claim, including without limitation an Abuse Claim or Unknown Abuse Claim, that is not an Administrative Claim, Fee Claim, Priority Claim, Priority Tax Claim, or Secured Claim.

1.1.115. **"Voting Deadline"** means the date that is fourteen (14) calendar days before the hearing on Confirmation of the Plan.

### 1.2. *Construction of Terms*

1.2.1. The singular of any of the foregoing definitions includes the plural and vice versa where the context so requires, "includes" and "including" are not limiting, "may not" is prohibitive and not permissive, and "or" is not exclusive.

1.2.2. A term used in the Plan, whether or not capitalized, that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to the term in the Bankruptcy Code or Bankruptcy Rules, as applicable.

1.2.3. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

**1.3.      *Appendices and Plan Documents.***

All Plan Documents and appendices to the Plan are incorporated into this Plan by reference and are a part of this Plan as if set forth in full herein.  The documents contained in the exhibits and the Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  Holders of Claims or their counsel may inspect a copy of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or may obtain a copy of the Plan Documents by sending a written request to the following email address: RCBOInfo@veritaglobal.com.

**ARTICLE II**
**SUMMARY OF CLASSIFICATION OF CLAIMS**

**2.1.      *Claims Provided For Herein.***  Various types of Claims are defined or described in this Plan.  This Plan is intended to deal with all Claims against the Debtor or property of the Debtor or the Debtor's Estate of whatever character, whether or not with recourse, contingent or non-contingent, liquidated or unliquidated, and whether or not previously Allowed by the Bankruptcy Court pursuant to Section 502 of the Bankruptcy Code, which arise in any manner or from any event or circumstance arising before the Effective Date.  However, only those Claims Allowed pursuant to Section 502 of the Bankruptcy Code will receive any distribution under this Plan.  All Claims against the Debtor will be discharged without any distribution, recovery, recourse, or residual interest or right to the extent not expressly included in any Class or otherwise provided any treatment hereunder.

**2.2.      *Unclassified Claims.***  All Claims except Administrative Expense Claims, Priority Tax Claims, Fee Claims, U.S. Trustee Fee Claims, and Cure Claims (collectively, the "Unclassified Claims") are placed in the Classes listed in this Article II.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, the Unclassified Claims, as described in Article III of this Plan, have not been classified and thus are excluded from the Classes summarized in Section 2.3 and Article IV of the Plan.

**2.3.      *Claims Classification.***  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes to the extent that

any remainder of the Claim qualifies within the description of such other Classes. For purposes of this Plan, the Classes of Claims against the Debtor shall be as follows:

| Class | Class Description | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| Class 1 | RCC Secured Claim | Unimpaired | Non-voting<br>Deemed to accept |
| Class 2 | Priority Unsecured Claims, other than non-classified claims set forth in Article III | Unimpaired | Non-voting<br>Deemed to accept |
| Class 3 | General Unsecured Claims | Impaired | Eligible to vote |
| Class 4 | Abuse Claims | Impaired | Eligible to vote |
| Class 5 | Unknown Abuse Claims | Impaired | Eligible to vote via the Unknown Abuse Claims Representative |
| Class 6 | Non-Abuse Litigation Claims | Impaired | Eligible to vote |
| Class 7A | Abuse Related Contribution Claims Related to Class 4 Claims | No recovery | Non-voting<br>Deemed to reject |
| Class 7B | Abuse Related Contribution Claims Related to Class 5 Claims | No recovery | Non-voting<br>Deemed to reject |
| Class 8 | OPF Claim | Impaired | Eligible to vote |

**ARTICLE III**
**TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE'S FEES**

The following Claims shall not be classified hereunder but shall be entitled to the treatment set forth in this Article.

### 3.1. *Administrative Expense Claims*

3.1.1. *Treatment of Administrative Expense Claims.* Except to the extent a Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with respect to such Allowed Administrative Expense Claim, each Holder of an Allowed Administrative Expense Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Claim, payment of Cash in an amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable after the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed

Administrative Expense Claim; (c) such other date(s) as such Holder and the Debtor or the Reorganized Debtor shall have agreed; or (d) such other date ordered by the Bankruptcy Court; provided, however, Allowed Administrative Expense Claims arising in the ordinary course of the Debtor's operations during the Chapter 11 Case may be paid by the Debtor or the Reorganized Debtor (as applicable) in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, course of dealing, course of operations, or customary practice.

3.1.2. *Administrative Expense Claims Bar Date.* Except as provided for herein or in any order of the Bankruptcy Court, and subject to Section 503(b)(1)(D) of the Bankruptcy Code, Holders of Administrative Expense Claims, other than a Fee Claim or a Claim for U.S. Trustee Fees, accruing on or before the Confirmation Date must file and serve on the Debtor requests for the payment of such Claims not previously Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order, on or before the Administrative Expense Claims Bar Date, or such Claims shall be automatically Disallowed, forever barred from assertion, and unenforceable against the Debtor or the Reorganized Debtor, the Estate, or their property without the need for any objection or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Claims shall be deemed fully satisfied, released, and discharged. Administrative Expense Claims representing obligations incurred by the Debtor or Reorganized Debtor (as applicable) after the date and time of the entry of the Confirmation Order shall not be subject to application to the Bankruptcy Court and may be paid by the Debtor or Reorganized Debtor (as applicable) in the ordinary course of business and without Bankruptcy Court approval.

**3.2.** **Priority Tax Claims.** The legal and equitable rights of Holders of Priority Tax Claims are Unimpaired under the Plan. Except to the extent a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of: (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (b) the first Business Day after the date that is thirty (30) days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; provided, however, that the Debtor and

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 26 of 93

Reorganized Debtor each reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.

    **3.3.**    **Fee Claims.** All Professionals or other Entities requesting the final allowance and payment of a Fee Claim for services rendered during the period from the Petition Date to and including the Effective Date shall File final applications for allowance and payment of such Fee Claims no later than the first Business Day that is forty-five (45) days after the Effective Date. Objections to any Fee Claim must be Filed and served on the Reorganized Debtor and the applicable Professional no later than the first Business Day that is 30 days after the Filing of the final fee application that relates to the Fee Claim (unless otherwise agreed by the Debtor or the Reorganized Debtor, as applicable, and the Professional requesting allowance and payment of a Fee Claim). An Allowed Fee Claim, including any amounts previously held back by Order of the Bankruptcy Court, shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court no later than the first Business Day that is twenty-one (21) calendar days after the entry of a Final Order Allowing the Fee Claim. The Reorganized Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred by its Professionals after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval. Unless otherwise directed by the Bankruptcy Court, all Professionals filing final fee applications shall comply with the *Order Appointing Fee Examiner and Establishing Procedures for Review of Interim and Final Fee Applications Filed by Estate Professionals* [Docket No. 1122] entered in the Chapter 11 Case, including any subsequent amendments.

    **3.4.**    **Cure Claims.** Cure Claims shall be paid in full in accordance with, and at such times as are set forth in, Section 7.2 of the Plan.

    **3.5.**    **United States Trustee Fees.** To the extent any U.S. Trustee Fees have become due before the Effective Date and have not previously been paid, then such fees shall be paid pursuant to 11 U.S.C.

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 27 of 93

§ 1129(a)(12) and 28 U.S.C. § 1930. Any U.S. Trustee Fees relating to the period from and after the Effective Date shall be paid as provided in Section [12.8.4] of the Plan.

**ARTICLE IV**
**TREATMENT OF CLASSIFIED CLAIMS**

**4.1.    *Class 1 – Secured Claim of RCC***

4.1.1.    *Description*. Class 1 shall consist of the Allowed Secured Claim of RCC.

4.1.2.    *Treatment*. Except to the extent RCC agrees to less favorable treatment of its Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Secured Claim, RCC shall receive reinstatement under Section 1124 of the Bankruptcy Code.

4.1.3.    *Impairment and Voting*. Class 1 is Unimpaired under the Plan. Each Holder of a Class 1 Claim is conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and is not entitled to vote on the Plan.

**4.2.    *Class 2 – Priority Unsecured Claims***

4.2.1.    *Description*. Class 2 shall consist of all Allowed Priority Unsecured Claims, other than non-classified claims set forth in Article III.

4.2.2.    *Treatment*. Except to the extent a Holder of an Allowed Priority Unsecured Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Unsecured Claim, each such Holder shall receive payment in Cash in an amount equal to such Allowed Priority Unsecured Claim, payable on or as soon as reasonably practicable after the later of (a) the Effective Date, (b) the date when such Priority Unsecured Claim becomes an Allowed Priority Unsecured Claim, or (c) the date on which the Holder of such Priority Unsecured Claim and the Debtor or Reorganized Debtor, as applicable, shall otherwise agree in writing.

4.2.3.    *Impairment and Voting*. Class 2 is Unimpaired under the Plan. Each Holder of a Class 2 Claim is conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and is not entitled to vote on the Plan.

**4.3.    *Class 3 – General Unsecured Claims***

4.3.1.    *Description*. Class 3 shall consist of all Allowed General Unsecured Claims. Class 3 does not include Abuse Claims.

4.3.2.   *Treatment*. Except to the extent a Holder of an Allowed General Unsecured Claim (including an Allowed Rejection Claim) agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each such Holder shall receive payment in Cash from the general operating revenues of the Reorganized Debtor in an amount equal to such Allowed General Unsecured Claim, payable no later than the later of (a) the date that is one year after the Effective Date, (b) the date that is twenty-one (21) days after the date when such General Unsecured Claim becomes an Allowed General Unsecured Claim, or (c) the date on which the Holder of such General Unsecured Claim and the Reorganized Debtor shall otherwise agree in writing.

4.3.3.   *Impairment and Voting*. Class 3 is Impaired under the Plan. Each Holder of a Class 3 Claim is entitled to vote to accept or reject the Plan.

### 4.4.   *Class 4 – Abuse Claims*

4.4.1.   *Description*.   Class 4 shall consist of all Allowed Abuse Claims, other than Unknown Abuse Claims.

4.4.2.   *Treatment*.  This Plan creates the Survivors' Trust to fund payments to Holders of Allowed Abuse Claims entitled to such payments under the Plan and the Survivors' Trust Documents. Except to the extent a Holder of an Allowed Abuse Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Allowed Abuse Claim, each such Holder shall receive their allocable share of the Survivors' Trust Assets at the time and in the manner set forth in the Survivors' Trust Documents.  It is intended that any payment on an Allowed Abuse Claim will constitute payment for damages on account of personal physical injuries or sickness arising from an occurrence, within the meaning of Section 104(a)(2) of the Tax Code.

4.4.3.   *Impairment and Voting*.  Class 4 Claims are Impaired under the Plan.  Each Holder of a Class 4 Claim is entitled to vote to accept or reject the Plan.

### 4.5.   *Class 5 – Unknown Abuse Claims*

4.5.1.   *Description*. Class 5 shall consist of all Allowed Unknown Abuse Claims.

4.5.2.   *Treatment*. The Unknown Abuse Claims Reserve shall be established on the Effective Date pursuant to the Survivors' Trust Documents.  Except to the extent a Holder of an Allowed Unknown Abuse Claim agrees to less favorable treatment of such Claim, in full and final satisfaction,

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 29 of 93

settlement, release, and discharge of and in exchange for such Allowed Unknown Abuse Claim, each such Holder shall receive their allocable share of the Unknown Abuse Claims Reserve at the time and in the manner set forth in the Survivors' Trust Documents. It is intended that any payment on an Allowed Unknown Abuse Claim will constitute payment for damages on account of personal physical injuries or sickness arising from an occurrence, within the meaning of Section 104(a)(2) of the Tax Code.

4.5.3. *Impairment and Voting*. Class 5 Claims are Impaired under the Plan. The Unknown Abuse Claims Representative is entitled to vote to accept or reject the Plan on behalf of all Holders of Class 5 Claims and shall submit a single ballot on behalf of all such Holders.

### 4.6.    Class 6 – Non-Abuse Litigation Claims

4.6.1. *Description*. Class 6 shall consist of all Allowed Non-Abuse Litigation Claims.

4.6.2. *Treatment*. This Plan creates the Non-Abuse Litigation Reserve to fund payments to Holders of Allowed Non-Abuse Litigation Claims in accordance with Section 12.7 of the Plan. Except to the extent a Holder of an Allowed Non-Abuse Litigation Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Allowed Non-Abuse Litigation Claim, each such Holder shall receive their allocable share of the Non-Abuse Litigation Reserve.

4.6.3. *Impairment and Voting*. Class 6 Claims are Impaired under the Plan. Each Holder of a Class 6 Claim is entitled to vote to accept or reject the Plan.

### 4.7.    Class 7A – Abuse Related Contribution Claims Related to Class 4 Claims

4.7.1. *Description*. Class 7A shall consist of all Abuse Related Contribution Claims against the Debtor arising out of a Class 4 Claim.

4.7.2. *Treatment*. Any Holder of a Class 7A Claim who is also a Contributing Non-Debtor Catholic Entity shall be deemed to have waived its Class 7A Claim against the Debtor, Reorganized Debtor, the Estate, the Survivors' Trust, and any Settling Insurer in exchange for the Release and Exculpation provided by this Plan. Any Holder of a Class 7A Claim who is not a Contributing Non-Debtor Catholic Entity shall have its Class 7A Claim Disallowed.

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 30
of 93

4.7.3. *Impairment and Voting*. Class 7A Claims are Impaired under the Plan. Holders of Class 7A Claims shall not receive a distribution under this Plan and are therefore deemed to reject the Plan.

### 4.8. *Class 7B – Abuse Related Contribution Claims Related to Class 5 Claims*

4.8.1. *Description*. Class 7B shall consist of all Abuse Related Contribution Claims against the Debtor arising out of a Class 5 Claim.

4.8.2. *Treatment*. Any Holder of a Class 7B Claim who is also a Contributing Non-Debtor Catholic Entity shall be deemed to have waived its Class 7B Claim against the Debtor, Reorganized Debtor, the Estate, the Survivors' Trust, and any Settling Insurer in exchange for the Release and Exculpation provided by this Plan. Any Holder of a Class 7B Claim who is not a Contributing Non-Debtor Catholic Entity shall have its Class 7B Claim Disallowed.

4.8.3. *Impairment and Voting*. Class 7B Claims are Impaired under the Plan. Holders of Class 7B Claims shall not receive a distribution under this Plan and are therefore deemed to reject the Plan.

### 4.9. *Class 8 – OPF Claim*

4.9.1. *Description*. Class 8 shall consist of the Allowed OPF Claim.

4.9.2. *Treatment*. Except to the extent OPF agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for the Allowed OPF Claim, the Reorganized Debtor shall pay the Allowed Class 8 Claim in full and in Cash, without interest. Payment on the Allowed OPF Claim shall commence on or before the date that is ten (10) years after the Effective Date. Payments shall be made on a schedule and on such terms as may be agreed by the Reorganized Debtor and OPF; provided, however, the Allowed OPF Claim shall be paid in full no later than the date that is thirty (30) years after the Effective Date.

4.9.3. *Impairment and Voting*. Class 8 Claims are Impaired under the Plan. Each Holder of a Class 8 Claim is entitled to vote to accept or reject the Plan.

**ARTICLE V**
**DISPUTED CLAIMS AND CLAIM DISTRIBUTIONS**

**5.1.    Single Claim.**  Except as otherwise provided by this Plan, a Person that holds multiple Allowed Claims based on the same indebtedness or obligation shall be deemed to have only one Allowed Claim against the Estate in an amount equal to the largest of all such similar Claims for the purposes of voting and distribution under the Plan.

**5.2.    Claims Objections.**

5.2.1.    *Who May Object*. Subject to the terms of this Section 5.2, any party in interest shall be entitled to object to Claims to the extent permitted under Section 502(a) of the Bankruptcy Code, and the Holder of any Claim to which an objection is made is entitled to assert their defenses to such objection.

5.2.2.    *Objections to Abuse Claims*.  All parties in interest reserve the right to object, in the Bankruptcy Court, to Abuse Claims pursuant to Section 502(a) of the Bankruptcy Code, and Holders of Abuse Claims may reserve their defenses to such objections. All parties in interest, including without limitation the Non-Settling Insurers, reserve the right to object to any Proofs of Claim based on any applicable defense arising under the Bankruptcy Code (including untimeliness and any injunction barring late or unfiled claims); provided, however, (i) any determination of the dollar amount of liability, and any defense based upon non-bankruptcy law, shall be made in a court of competent jurisdiction as determined under applicable non-bankruptcy law, and (ii) all determinations regarding coverage shall be made in the District Court or such other venue as the affected parties (including without limitation any Non-Settling Insurer) may agree. The Non-Settling Insurers shall be entitled to defend against any Abuse Claim in the non-bankruptcy court system based upon any of the objections that could otherwise have been asserted in the Chapter 11 Case.

5.2.3.    *Time for Objections*.  The Reorganized Debtor and the Survivors' Trust may File an objection to any Claim at any time through the closing of the Chapter 11 Case.  For all other parties in interest, an objection to a Claim must be Filed on or before the Claims Objection Deadline.

5.2.4.    *Disputed Claim*.  Upon the filing of an objection to a Claim, the Claim shall be a Disputed Claim.

**5.3.** **_Treatment of Disputed Claims._** Until such time as an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Plan distributions. No distribution shall be made on account of any Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by an order which has become a non-appealable order, and the Disputed Claim has become an Allowed Claim. In the event that Disputed Claims in Class 2 or Class 3 are pending at the time of a distribution under the Plan, the Reorganized Debtor shall maintain a reasonable reserve for such Disputed Claims. No distribution of such reserved funds for a Disputed Claim shall be made until such Disputed Claim has been resolved by order of the Court or compromise consistent with the terms of the Plan and the Bankruptcy Code. Distributions for Disputed Claims in Class 4 or Class 5 shall be as provided in the Survivors' Trust Distribution Plan and/or other Survivors' Trust Documents.

**5.4.** **_Late-Filed Claims._** Proofs of Claim that are not Filed on or before the applicable Claims Bar Date, or otherwise deemed timely and/or Allowed by order of the Court, shall receive no distribution under this Plan, shall be deemed Disallowed Claims, and shall be expunged. The submission of a ballot to vote on the Plan shall not constitute an amendable informal Proof of Claim or an amendment to a previously filed Proof of Claim or scheduled Claim. Any amendment to an otherwise timely filed Proof of Claim must be Filed on or before the Confirmation Date, provided that the foregoing shall not waive or modify the right of any party in interest to object to amendment of a Claim before the Confirmation Date.

**5.5.** **_Claim Estimation._** To effectuate distributions pursuant to the Plan and avoid undue delay in the administration of the Plan, the Reorganized Debtor or the Survivors' Trustee, as applicable, shall have the right to seek an order of the Court pursuant to Section 502(c) of the Bankruptcy Code as to any Disputed Claim, estimating or limiting: (i) the amount that must be withheld from or reserved for distribution purposes on account of such Disputed Claim, (ii) the amount of such Claim for allowance or disallowance purposes, or (iii) the amount of such Claim for any other purpose permitted under the Bankruptcy Code. Whether any such Claim is subject to estimation pursuant to Section 502(c) of the

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 33 of 93

Bankruptcy Code, and the timing and procedures for such estimation proceedings, if any, shall be determined by the Court pursuant to applicable law.

**5.6.** ***No Distribution to Disallowed Claims.*** Notwithstanding any provision herein to the contrary, no distribution shall be made on account of any Claim which (i) is not an Allowed Claim in whole or in part, or (ii) has otherwise been deemed or determined to be a Disallowed Claim.

**5.7.** ***Timing of Distributions to Allowed Claims.***

5.7.1. *Next Business Day*. Whenever any distribution to be made pursuant to the Plan would otherwise be due on a day other than a Business Day, such distribution shall be due on the immediately succeeding Business Day.

5.7.2. *Timeliness*. Any distribution to be made by the Reorganized Debtor pursuant to the Plan or agreements entered into pursuant to the Plan, or by the Survivors' Trust pursuant to the Plan or Survivors' Trust Documents or agreements entered into pursuant to either, shall be deemed to have been timely made if made within fifteen (15) days after the time therefor specified in the Plan or such other agreements between the Holder of a Claim and the Debtor, Reorganized Debtor, or Survivors' Trust, as applicable. No additional interest shall accrue or be paid with respect to any distribution as a consequence of such distribution not having been made on the date specified therefor herein. For the avoidance of doubt, this section does not modify the terms of assumed Executory Contracts or Unexpired Leases of non-residential real property.

**5.8.** ***Transfers of Claims.*** As of the close of business on the Confirmation Date, there shall be no further changes in the record Holders of Claims for purposes of distributions under the Plan unless the Reorganized Debtor (as to all Claims other than Class 4 and Class 5 Claims) or the Survivors' Trustee (as to Class 4 and Class 5 Claims) otherwise agree. Neither the Reorganized Debtor nor the Survivors' Trustee shall have any obligation to recognize any unapproved transfer of Claims occurring after the Confirmation Date.

**5.9.** ***Prepayment.*** Notwithstanding anything to the contrary herein or in the Plan Documents, the Reorganized Debtor may prepay all or any portion of an Allowed Claim payable by the Reorganized

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 34 of 93

Debtor or a note issued by the Debtor or Reorganized Debtor in payment of an Allowed Claim at any time without charge or penalty.

**5.10.   *Delivery of Distributions.*** Distributions to Holders of Allowed Claims, other than Class 4 or Class 5 Claims, will be sent to (i) the addresses set forth in any written notice of address change delivered to the Debtor or the Reorganized Debtor after the date of any related Proof of Claim; (ii) the address set forth on such Holder's Proof of Claim Filed with the Court; (iii) the address set forth on the Schedules, if no Proof of Claim has been filed and no notice of change of address has been received; or (iv) the last known address reflected in the Debtor's books and records. Distributions to Abuse Claimants and Unknown Abuse Claimants from the Survivors' Trust Assets will be made in accordance with the Survivors' Trust Documents.

**5.11.   *Unclaimed Distributions.*** If a Holder of an Allowed Claim cannot be located after reasonable effort, or otherwise fails to accept a distribution within ninety (90) days following the date of such distribution, then the distribution to such Holder shall be canceled and there shall be no further distributions required with respect to such Claim.

**5.12.   *No Interest.*** Unless otherwise specifically provided for in the Plan, by applicable law (including Section 506(b) of the Bankruptcy Code), or agreed to by the Debtor or the Reorganized Debtor (as applicable): (i) interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim; and (ii) without limiting the foregoing, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**5.13.   *Provisions Governing Unimpaired Claims.*** Except as otherwise provided in the Plan, nothing will affect the Debtor's or the Reorganized Debtor's rights and defenses with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to, or setoffs or recoupments against, such Unimpaired Claims.

**5.14.   *Additional Terms Regarding Class 4 and Class 5 Claims.*** Except as otherwise provided above, terms for resolution of and distribution in connection with Abuse Claims in Class 4 or Class 5 shall be as provided in the Survivors' Trust Documents. For the avoidance of doubt, any such Holder of an

Abuse Claim shall not recover in the aggregate from the Survivors' Trust and any Non-Settling Insurer an amount greater than the amount of the judgment issued by the applicable court of competent jurisdiction in connection with the underlying Abuse Claim.

## ARTICLE VI
## VOTING ON THE PLAN

**6.1.** **_Voting Classes._** Only Holders of Claims in Classes 3, 4, 5, 6, and 8 are Impaired and entitled to vote to accept or reject the Plan. Class 1 and 2 Claims are Unimpaired, and the Holders of such Claims are presumed to accept the Plan. Class 7A and 7B Claims are Impaired, and Holders of such Claims are presumed to reject the Plan. A Class shall have accepted this Plan if this Plan is accepted by at least two-thirds in the aggregate dollar amount, and more than one-half in number of Holders, of the Allowed Claims of such Class that have voted to either accept or reject the Plan.

**6.2.** **_Opt-Out Release Forms._** Each Holder of a Class 4 Claim and the Unknown Abuse Claims Representative on behalf of all Holders of Class 5 Claims shall receive with their Ballot an Opt-Out Release Form giving such Holder the right to affirmatively opt out of the Releases provided under Section 13.9 of this Plan. Any Holder of a Claim who does not, on or before the Voting Deadline, affirmatively opt out of such Releases by returning their Opt-Out Release Form after checking the appropriate box on the Opt-Out Release Form indicating they opt not to grant such Releases shall be deemed to have consented to and granted such Releases.

**6.3.** **_Elimination of Vacant Classes._** Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court for purposes of voting as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

**6.4.** **_Effect of Objections._** If an objection to a Claim is filed before the deadline established for voting on the Plan, the Holder of such Claim cannot vote and any ballot submitted by such Holder

shall not be counted unless the Court, after notice and hearing, either overrules the objection or orders that the Claim be Allowed for voting purposes.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1. *Prior Orders.*** All orders of the Court entered in the Chapter 11 Case authorizing the assumption or rejection of Executory Contracts or Unexpired Leases pursuant to Section 365 of the Bankruptcy Code are hereby ratified.

**7.2. *Assumption of Contracts and Unexpired Leases.***

7.2.1. *Contracts to be Assumed*. The following Executory Contracts shall be assumed as of the Effective Date, pursuant to Section 365 of the Bankruptcy Code, by confirmation of this Plan. Entry of the Confirmation Order shall constitute approval, pursuant to Sections 365(a) and 1123 of the Bankruptcy Code, for the assumption of each Executory Contract assumed under this Section 7.2. Each Executory Contract assumed by the Debtor will re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption, or by applicable law.

7.2.1.1. *Employee Benefits*: On the Effective Date, all Assumed Employee Benefit Plans are deemed to be, and shall be treated as, Executory Contracts under this Plan, and shall be assumed as of the Effective Date. All outstanding payments which are accrued and unpaid as of the Effective Date pursuant to the Assumed Employee Benefit Plans shall be made by the Reorganized Debtor on the later of (i) the Effective Date, (ii) as soon as practicable thereafter, or (iii) when otherwise due under the applicable Assumed Employee Benefit Plan. Such assumption shall have the effect of curing and reinstating the rights of the employee beneficiaries, and shall result in the full release and satisfaction of any Claims and Causes of Action against the Debtor or defaults by the Debtor arising under any Assumed Employee Benefit Plan at any time before the Effective Date. Any Proofs of Claim filed with respect to an Assumed Employee Benefit Plan shall be deemed Disallowed Claims and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 37 of 93

7.2.1.2. *Assumption of Other Contracts*: Except for any Executory Contract: (i) previously rejected by order of the Bankruptcy Court, (ii) subject to a pending motion to reject before the Bankruptcy Court, (iii) previously expired or terminated pursuant to its own terms, or (iv) treated otherwise under this Plan, each Executory Contract entered into by the Debtor prior to the Petition Date shall be assumed, unless and except as otherwise provided in the Plan, Confirmation Order, or Insurance Settlement Agreement.

7.2.2. *Cure Amount and Payment*. As to each assumed Executory Contract, unless an Assumption Objection is filed no later than the deadline set forth below, the cure amount required under Section 365(b)(l) of the Bankruptcy Code shall be the amount set forth on the Executory Contract Cure Schedule, as it may be amended from time to time prior to Confirmation, or no payment if such Executory Contract is not listed on the Executory Contract Cure Schedule (for the avoidance of doubt, unless a different amount is set forth on the Executory Contract Cure Schedule, the Debtor contends that no cure payment is required). Such payment shall be made by the Debtor in full in Cash on the later of the Effective Date or when any Assumption Objection regarding the cure amount for the applicable Executory Contract is resolved by the Bankruptcy Court, or on such other terms as the parties to each such Executory Contract may otherwise agree.

7.2.3. *Objections to Assumption and Cure*. Any Person who is a party to an Executory Contract assumed under the Plan must File with the Court and serve upon interested parties an Assumption Objection. An Assumption Objection shall be accompanied by a declaration or other sufficient evidence setting forth the basis for any objection to assumption of that party's Executory Contract or Unexpired Lease, including without limitation as to the cure amount, on or before the later of: (i) the deadline set for filing of objections to confirmation of the Plan, or (ii) seven (7) days after the filing of the Executory Contract Cure Schedule (or any amendment thereto affecting such executory contract). Any Entity that fails to timely file and serve an Assumption Objection will be deemed to waive any and all objections to the proposed assumption of its Executory Contract. A hearing on the Assumption Objections will take place at the hearing on Confirmation, or as soon thereafter as the Court is available.

**7.3. Rejection of CCCEB Lease.** In connection with and contingent upon the execution of the CCCEB Settlement, the Unexpired Lease between the Debtor and CCCEB in effect as of the Petition Date,

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 38 of 93

together with any other contracts or agreements between the Debtor and CCCEB related to use or possession of the Cathedral Property, shall be rejected as of the Effective Date.

### 7.4. Rejection of Contracts.

7.4.1. *Rejected Contracts*.  Any Executory Contract or Unexpired Lease specifically identified in the Executory Contract Rejection Schedule shall be rejected as of the Effective Date.  Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of such Executory Contracts and Unexpired Leases pursuant to the provisions of the Plan.

7.4.2. *Bar Date for Rejection Claims*.  Any Claim arising out of the rejection of an Executory Contract or Unexpired Lease shall be a Disallowed Claim and forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, the Estate, or the Survivors' Trust and shall not be entitled to any distribution under the Plan, unless a Proof of Claim for such rejection Claim is filed and served on the Reorganized Debtor within twenty-one (21) days after the later of (a) the entry of an order of the Court approving the rejection of the Executory Contract or Unexpired Lease or (b) the Confirmation Date; provided that nothing contained in this Plan shall extend any deadline previously approved by the Court for a Person to file a Proof of Claim with respect to any Executory Contract or Unexpired Lease previously rejected in the Chapter 11 Case.

7.4.3. *Treatment of Rejection Claims*.  Any Claim arising from the rejection of an Executory Contract or Unexpired Lease shall be classified and treated as a Class 3 General Unsecured Claim against the Debtor.

### ARTICLE VIII
### INSURANCE ASSIGNMENT AND OTHER INSURANCE MATTERS

### 8.1. The Insurance Assignment.  Subject to the rights of the Non-Settling Insurers set forth in Section 8.3 of this Plan, in addition to the Debtor Cash Contribution and contributions from Contributing Non-Debtor Catholic Entities being paid to the Survivors' Trust, the Insurance Assignment shall become effective and the Assigned Insurance Interests shall be automatically and without further act or deed assigned and transferred to the Survivors' Trust on the Effective Date. The Insurance Assignment shall not be construed as an assignment of the Non-Settling Insurer Policies but rather an assignment of the

right to receive proceeds and remedies for Coverage Claims available under the Non-Settling Insurers' Abuse Insurance Policies, notwithstanding any anti-assignment provision in or incorporated into any such Abuse Insurance Policy. Upon the assignment of the Assigned Insurance Interests to the Survivors' Trust, Holders of Abuse Claims shall have the right to either receive a distribution of their individual allocable shares of contributions to the Survivors' Trust or to pursue all available insurance coverage and remedies for Coverage Claims under the Non-Settling Insurer Policies pursuant to, and in accordance with, applicable law and the terms of the Non-Settling Insurer Policies, as set forth in Article IX of the Plan. Upon the assignment of the Assigned Insurance Interests to the Survivors' Trust, recourse to the Released Parties shall be limited to the Assigned Insurance Interests and any other rights or interests expressly granted to the Survivors' Trust under this Plan. In furtherance of the Insurance Assignment:

8.1.1. The Insurance Assignment is made free and clear of all Claims, liens, encumbrances, or Causes of Action of any nature whatsoever pursuant to Section 363(f) of the Bankruptcy Code, except for available limits of liability for coverage of certain types of claims under one or more of the Abuse Insurance Policies that may have been reduced by certain prepetition payments made by an Insurer under any of the Abuse Insurance Policies.

8.1.2. The Survivors' Trust shall be solely responsible for satisfying, to the extent required under applicable law or the Abuse Insurance Policies, any premiums, deductibles, self-insured retentions, and fronting obligations arising in any way out of any and all Abuse Claims.

8.1.3. Upon the effectiveness of the Insurance Assignment, the Survivors' Trust shall have whatever obligations, if any, that exist under the Abuse Insurance Policies under applicable law, including without limitation all notice obligations required under the Abuse Insurance Policies and applicable law pertaining to Abuse Claims.

8.1.4. The Insurance Assignment is absolute upon entry of the Confirmation Order, and conditioned upon the occurrence of the Effective Date, and requires no further action by the Released Parties, the Survivors' Trust, the Bankruptcy Court, the Non-Settling Insurers, or any other Entity.

8.1.5. The Insurance Assignment shall be governed by, and construed in accordance with, the Bankruptcy Code and the laws of the state of California, without regard to conflict of law principles.

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 40 of 93

8.1.6.  The Insurance Assignment shall be effective to the maximum extent permissible under applicable law and the terms of the Abuse Insurance Policies.

**8.2.  *Insurance Coverage for Abuse Claims.***

8.2.1.  As set forth in Article IX of this Plan, Holders of Abuse Claims who do not elect to receive an Immediate Distribution (defined below) may seek to have their claim satisfied by electing either (i) the Distribution Option (defined below), or (ii) for the purpose of recovering from one or more Non-Settling Insurers under their respective Insurance Policies, the Litigation Option (defined below). Absent agreement of the applicable Non-Settling Insurer(s), the Holder of an Abuse Claim may only litigate coverage of such Holder's Abuse Claim under the Non-Settling Insurer's Abuse Insurance Policy(ies) by electing the Litigation Option.

8.2.2.  After Confirmation, any Holder of an Abuse Claim who elects to pursue his or her Claims against the Debtor, as a nominal party only, or (only to the extent permitted under applicable non-bankruptcy law) a Non-Settling Insurer in the non-bankruptcy court system, solely for the purpose of recovering from one or more Non-Settling Insurers under their respective Insurance Policies, shall be granted leave to pursue such Claim by filing in the Chapter 11 Case a written statement of intent to do so by electing the Litigation Option (which may be filed under a pseudonym if the claimant's name has not been previously publicly identified, *provided* that (i) the notice otherwise adequately identifies the relevant Claim including the case number for the pending litigation and (ii) the claimant or his or her counsel notifies the Non-Settling Insurers of the claimant's actual name). After the expiration of ninety (90) days following the filing of such written statement, such Holder of an Abuse Claim may continue to pursue such Claim in a Separate Action filed in a non-bankruptcy court of competent jurisdiction as determined by applicable law, solely to seek a recovery from Abuse Insurance Policies. Affected Non-Settling Insurers shall have the right (and the obligation, to the extent so provided under their respective Abuse Insurance Policy(ies)), to defend such claim, consistent with the terms of their Abuse Insurance Policies and applicable non-bankruptcy law. Such affected Non-Settling Insurers are also granted leave to defend against Abuse Claims and take other actions authorized in their respective Abuse Insurance Policies in response to Abuse Claims, including paying settlements to which the affected Non-Settling Insurers agree or any judgments. The Debtor (including the estate and the Reorganized Debtor) and the Survivors' Trust

will cooperate in the defense of any such claim to the extent provided under the applicable Abuse Insurance Policy or Policies and as requested by an affected Non-Settling Insurer.

8.2.3.   If the Holder of an Abuse Claim elects the Litigation Option then, among other things, (1) the rights of affected Non-Settling Insurers to defend or associate in the defense of such Abuse Claims shall be fully preserved so that a Non-Settling Insurer who has offered to, or has an obligation to, defend may do so, and (2) the rights of affected Non-Settling Insurers to assert all coverage defenses and issues in any insurance recovery action (under Cal. Ins. Code § 11580 or otherwise) shall also be fully preserved. In any such insurance recovery action (under Cal. Ins. Code § 11580 or otherwise), Holders of Abuse Claims shall have no greater or lesser rights than the Debtor, including as to any findings of fact, conclusions of law, or rulings issued in connection with the Coverage Action or any other coverage litigation between the Debtor or the Survivors' Trust and any of the Insurers.  To the extent any applicable Non-Settling Insurer elects not to defend an Abuse Claim in the non-bankruptcy court system after receiving proper notice and opportunity to do so, the Holder of an Abuse Claim shall be entitled to seek a default judgment against the Debtor as nominal party only, solely to allow such Holder of an Abuse Claim to then pursue insurance rights under Cal. Ins. Code § 11580 in accordance with the provisions in the Plan.

8.2.4.   If a Holder of an Abuse Claim elects the Litigation Option and obtains a judgment against a Non-Settling Insurer, such Non-Settling Insurer shall pay the amount of the judgment to the Holder of such Claim in accordance with the provisions of the Plan.

### 8.3.    Preservation of the Rights of Non-Settling Insurers.

8.3.1.   With respect to Non-Settling Insurers, nothing in the Plan, the Plan Documents, the Confirmation Order, or the Survivors' Trust Documents, including any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying (i) the terms and conditions of any Abuse Insurance Policy, (ii) the rights and obligations of the Debtor (or its Estate) and any Non-Settling Insurers (and third-party claims administrators) under any of the Abuse Insurance Policies, or (iii) the coverage or benefits provided under the Abuse Insurance Policies; provided, however, that because the Non-Settling Insurers would solely be potentially financially responsible for payment of Abuse Claims (and the Debtor would have no such potential financial responsibility), the provisions of Cal. Civil Code § 2860 entitling

an insured to appointment of independent counsel in certain circumstances shall not apply to any claims pursued by Holders of Abuse Claims against the Debtor (as a nominal party only) or the Survivors' Trust in the non-bankruptcy court system for the purpose of recovering from Non-Settling Insurers.

8.3.2. With respect to the Non-Settling Insurers, notwithstanding any provision in the Plan, the Plan Documents, the Confirmation Order, or the Survivors' Trust Documents, nothing contained in any such documents or in this paragraph shall impose, or shall be deemed or construed to impose, any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim. Rather, a Non-Settling Insurer's obligations, if any, with respect to an Abuse Claim shall be determined solely by and in accordance with the applicable Abuse Insurance Policy or Abuse Insurance Policies issued by that Non-Settling Insurer subject to applicable non-bankruptcy law. Nothing in the Plan, the Plan Documents, the Confirmation Order, or the Survivors' Trust Documents shall diminish or impair, or be deemed to diminish or impair, the rights of any Non-Settling Insurer to defend any Abuse Claim or to assert any claim, defense, right, or counterclaim in connection with any Abuse Claim or Abuse Insurance Policy in accordance with applicable law; provided, however, that any claim or counterclaim for Contribution (as defined below) against a Settling Insurer shall be addressed as provided herein.

8.3.3. For all issues relating to insurance coverage concerning Non-Settling Insurers, the provisions, terms, conditions, and limitations of the applicable Abuse Insurance Policies shall control, subject to applicable non-bankruptcy law.

8.3.4. A Non-Settling Insurer's obligation, if any, with respect to an Abuse Claim shall be determined solely by and in accordance with the applicable Abuse Insurance Policy or Abuse Insurance Policies issued by that Non-Settling Insurer subject to applicable non-bankruptcy law. Liability with respect to any Abuse Claim for purposes of any recovery against an Abuse Insurance Policy will be determined pursuant to applicable non-bankruptcy law.

8.3.5. With respect to the Non-Settling Insurers, for purposes of establishing the value of any Abuse Claim for purposes of recovery from, or coverage under, any Abuse Insurance Policy issued by a Non-Settling Insurer, no determination made in the Chapter 11 Case, nor any determinations made by the Claims Reviewer or Survivors' Trustee concerning any Abuse Claim at any time, shall be binding

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 43 of 93

on or against a Non-Settling Insurer, nor shall any party (including any Holder of an Abuse Claim against the Debtor) offer into evidence, or seek to admit into evidence, any such alleged determination in any tort actions pursued by Holders of Abuse Claims against the Debtor (as a nominal party only) or the Survivors' Trust in the non-bankruptcy court system for the purpose of recovering from Non-Settling Insurers, except for the limited purpose of establishing the amount of any credit to which Debtor (as a nominal party) may be entitled to offset any verdict in favor of a holder of an Abuse Claim.

        8.3.6.   The determination of, qualification, estimation of claims, and payment of trust distributions is not an admission of liability by the Debtor or Reorganized Debtor (as applicable), any Non-Settling Insurer, the Survivors' Trust, or any other Person with respect to any Abuse Claims and has no *res judicata* or collateral estoppel effect on any Non-Settling Insurer, the Debtor, the Survivors' Trust, or any other Person, except that such determination may be introduced for the limited purpose of establishing the amount of any credit to which the Debtor (as a nominal party) or the Survivors' Trust may be entitled to offset any verdict in favor of a Holder of an Abuse Claim.

        8.3.7.   Neither the Claims Reviewer's nor Survivors' Trustee's review of an Abuse Claim and determination of qualification, nor anything in the Survivors' Trust Documents (including any action or decision pursuant to the Survivors' Trust Documents, including any estimation of claims or payment of distributions), shall constitute a trial or an adjudication on the merits, or evidence of liability or damages, in any litigation with the Non-Settling Insurer or any other Person.

        8.3.8.   With respect to Non-Settling Insurers, nothing in the Plan, the Plan Documents, the Confirmation Order, or the Survivors' Trust Documents shall, under any theory, (a) constitute a trial, a judgment, an adjudication on the merits, or evidence establishing the liability (in the aggregate or otherwise) or obligation of the Debtor or the Survivors' Trust with respect to any Abuse Claim, (b) constitute a trial, a judgment, an adjudication on the merits, or evidence (or be introduced as evidence) establishing the liability of any Non-Settling Insurer in current or subsequent litigation for any Claim, including, without limitation, any Abuse Claim, or under any Abuse Insurance Policy, (c) constitute, or be deemed to constitute (or be introduced to support a determination) of the reasonableness of the amount of any Claim, including any Abuse Claim, either individually or in the aggregate with other Claims, (d) be deemed to grant to any Person or Entity any right to sue any Non-Settling Insurer directly, in connection

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 44 of 93

with a Claim, including any Abuse Claim, or any Abuse Insurance Policy, that such Person or Entity did not otherwise have under applicable non-bankruptcy law, (e) constitute a finding or determination (or be introduced to support a finding or determination) that the Debtor is a named insured, additional insured, or insured in any other way under any Abuse Insurance Policy, (f) constitute a finding or determination (or be introduced to support a finding or determination) that any Insurer in fact issued any alleged Abuse Insurance Policy or that any alleged Abuse Insurance Policy has any particular terms or conditions, (g) constitute a finding or determination (or be introduced to support a finding or determination) that any Insurer has any defense or indemnity obligation with respect to any Claim or Abuse Claim, or (h) constitute a finding or determination (or be introduced to support a finding or determination) on any matter at issue or which may be raised as an issue in any action, including the Coverage Action. In addition, no payment made in accordance with the Plan shall be, or be deemed to be, a waiver of any rights of any Non-Settling Insurer under any Abuse Insurance Policy.

8.3.9. Other than with respect to the effectiveness of the Insurance Assignment contemplated by the Plan (if necessary) and the findings necessary to confirm the Plan under Section 1129 of the Bankruptcy Code for such purpose only, no Non-Settling Insurer shall be bound in any current or future litigation concerning an Abuse Claim or an Abuse Insurance Policy by any factual findings or conclusions of law issued in connection with Confirmation of the Plan, and no such findings of fact or conclusions of law shall have any *res judicata* or collateral estoppel effect on any Claim, defense, right, offset, or counterclaim that has been asserted or that may be asserted in any current or subsequent litigation concerning an Abuse Claim or an Abuse Insurance Policy. Non-Settling Insurers shall retain, and be permitted to assert, (i) all of their insurance coverage defenses subject to applicable non-bankruptcy law in connection with Abuse Claims notwithstanding any provision of the Plan, the Plan Documents, or the Confirmation Order, provided, however, no Non-Settling Insurer may assert the Insurance Assignment as a defense to any Coverage Claim nor challenge the efficacy or validity of the Insurance Assignment, and (ii) all of the Debtor's defenses to liability, both legal and equitable, in connection with any asserted Abuse Claim, and the Non-Settling Insurers' rights to assert all such underlying defenses and insurance coverage defenses in connection with Abuse Claims will not be impaired in any way by the Plan, the Plan

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 45 of 93

Documents, the Confirmation Order, or the Survivors' Trust Documents, but shall be subject to applicable non-bankruptcy law.

8.3.10. Any disputes regarding a Non-Settling Insurer's liability for Abuse Claims and/or coverage therefor under any Abuse Insurance Policy shall be resolved under applicable non-bankruptcy law in the District Court overseeing the Coverage Action or such other venue as the affected parties (including the Non-Settling Insurer(s)) may agree.

8.3.11. Nothing herein shall limit the ability of any Non-Settling Insurer to agree to different terms or treatment of its Abuse Insurance Policies as part of a consensual settlement with the Debtor, Survivors' Trust, and/or Holders of Abuse Claims.

8.3.12. Any Non-Settling Insurer's legal, equitable, or contractual rights and obligations relating to the Abuse Insurance Policies issued by such Non-Settling Insurer shall be determined under applicable non-bankruptcy law. Nothing in the Plan shall be construed to impair or diminish the Debtor's or any Non-Settling Insurer's legal, equitable, or contractual rights or obligations under any Abuse Insurance Policy including, but not limited to, the ability to negotiate resolution of any dispute; provided, however, (a) that because Non-Settling Insurers would solely be potentially financially responsible for payment of Abuse Claims (and the Debtor would have no such potential financial responsibility), the provisions of Cal. Civil Code § 2860 entitling an insured to appointment of independent counsel in certain circumstances shall not apply to any claims pursued by Holders of Abuse Claims against the Debtor (as a nominal party only) in the non-bankruptcy court system for the purpose of recovering from Debtor (as a nominal party) and (b) the Debtor (including the Estate and the Reorganized Debtor) shall have no right to (i) direct or interfere with a Non-Settling Insurer's defense of a tort action asserting an Abuse Claim, or (ii) settle an Abuse Claim without the consent of all affected Non-Settling Insurers; provided, however, that at the Reorganized Debtor's election and at its sole expense, the Reorganized Debtor may appoint its own counsel ("Reorganized Debtor Counsel") to represent the Bishop in the defense of any action by a Holder of an Abuse Claim against the Debtor (as a nominal party only). Any such Reorganized Debtor Counsel shall cooperate and coordinate with defense counsel appointed by the Non-Settling Insurers to represent the Debtor in such action, and the Reorganized Debtor's election to appoint Reorganized Debtor Counsel shall not constitute direction of or interference with a Non-Settling Insurer's defense of a tort

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 46 of 93

action asserting an Abuse Claim. The Non-Settling Insurers reserve all policy defenses and claims, including without limitation all rights, claims, and defenses concerning cooperation, offsets, recoupments, deductions, deductibles, self-insured retentions, and all rights, claims, and defenses provided in their policies.

8.3.13. Except as expressly stated herein, any coverage issues involving the Non-Settling Insurers or the Abuse Insurance Policies issued by the Non-Settling Insurers shall be determined in accordance with applicable non-bankruptcy law. All positions and arguments with respect to available coverage under such Abuse Insurance Polices shall be fully preserved for assertion by the Non-Settling Insurers and Abuse Claimants in any litigation of coverage issues. Subject to the terms of the Plan, the Non-Settling Insurers and Holders of Abuse Claims reserve their rights, if any, to (i) bring proceedings concerning the application and interpretation of the terms of the Abuse Insurance Policies and rights thereunder, as well as whether defense and/or indemnity are owed under the Abuse Insurance Policies, and (ii) oppose any such proceeding commenced by any other person or entity in any court of appropriate jurisdiction as determined under applicable non-bankruptcy law; provided, however, except as provided below, because the Debtor will have received a discharge under the Plan, any effort to collect from Abuse Insurance Policies issued by the Non-Settling Insurers to satisfy an Abuse Claim after Confirmation of the Plan shall be sought individually by the applicable Holder of an Abuse Claim after such Holder's Claim has been liquidated as provided herein. Any disputes regarding a Non-Settling Insurer's liability for Abuse Claims (after such Abuse Claim has been liquidated under the provisions set forth above) and/or coverage therefor under Abuse Insurance Policies shall be resolved under applicable non-bankruptcy law in the District Court or such other venue as the affected parties (including the Non-Settling Insurer(s)) may agree.

8.3.14. The limitations in this Section 8.3 are for the benefit of the Non-Settling Insurers to preserve their ability to assert the Debtor's defenses to Abuse Claims as well as Non-Settling Insurers' own coverage defenses. For the avoidance of doubt, the Debtor (and the Reorganized Debtor, as applicable) reserves its right to enforce the Plan, including without limitation its discharge, and to the benefits of any settlements reached with Settling Insurers, provided that the foregoing will not limit the protections afforded to the Non-Settling Insurers herein. All parties in interest in this Chapter 11 Case

shall retain the right to enforce the Claims Bar Date Order (as amended) and all confidentiality orders issued in the Bankruptcy Case.

8.3.15. The foregoing provisions of Section 8.3 of this Plan shall be incorporated into the Confirmation Order.

**8.4.** **_Scope of Plan Injunctions._** Any injunction under the Plan or Confirmation Order shall not enjoin a Non-Settling Insurer's right to assert any Claims against the Survivors' Trust for contribution, subrogation, indemnification, reimbursement, or other similar Cause of Action (collectively, "Contribution") for any Settling Insurer's alleged share or equitable share relating to the defense and/or indemnity obligation for any Abuse Claim, or for any Cause of Action released in any Insurance Settlement Agreements. If a Non-Settling Insurer asserts it has (a) Contribution Claims directly or indirectly arising out of or in any way relating to such Non-Settling Insurer's payment of loss on behalf of the Debtor or defense expenses incurred in any action that should have been paid by or are otherwise attributable to a Settling Insurer related to any Abuse Claim or (b) rights to recover any self-insured retentions/obligations and/or deductibles (collectively, "Payment Obligations") in connection with its payment of defense and/or indemnity related to an Abuse Claim, then (i) such Contribution Claims or Payment Obligations may be asserted as a setoff, defense, or counterclaim against any Abuse Claimant and/or the Survivors' Trust in any insurance action or insurance recovery action (under Cal. Ins. Code § 11580 or otherwise) involving such Non-Settling Insurer and (ii) to the extent such Contribution Claims or Payment Obligations are determined to be valid, the liability (if any) of such Non-Settling Insurer to the holder of the Abuse Claim or the Survivors' Trust shall be reduced by the amount of such Contribution Claims or Payment Obligations, provided that if any such Contribution Claim exceeds the liability of such Non-Settling Insurer to the Survivors' Trust, the Non-Settling Insurer does not waive any excess claim and may seek affirmative recovery from the Survivors' Trust. To the extent payment of a self-insured retention is a condition to a Non-Settling Insurer's obligation to provide defense or indemnity under applicable non-bankruptcy law and the Non-Settling Insurer's applicable insurance policies, the failure of the Survivors' Trust to pay such self-insured retention to the Non-Settling Insurer shall result in the Non-Settling Insurer having the right to argue that such failure of payment is a complete defense to any claim

for coverage by the Non-Settling Insurer to, or related to, any claim for recovery of insurance from the Non-Settling Insurer.

**8.5.** ***Non-Settling Insurers' Contribution Claims Against Settling Insurers.*** In any Action, including the Coverage Action, involving the Holder of an Abuse Claim and one or more Non-Settling Insurers, where a Non-Settling Insurer has asserted, asserts, or could assert any Contribution Claim against any of the Settling Insurers or the Survivors' Trust, and such Contribution Claims are determined by the court presiding over such Claims to be valid, then any judgment or award obtained against such Non-Settling Insurer by such Holder of an Abuse Claim shall be automatically reduced by the amount, if any, that the Survivors' Trust or any of the Settling Insurers is liable to pay such Non-Settling Insurer as a result of the Non-Settling Insurer's Contribution Claim, so that the Contribution Claim is thereby satisfied and extinguished; provided, however, that, as against the Survivors' Trust (as successor to the Debtor), a Non-Settling Insurer may only assert any such Contribution Claim for the payment of deductible or self-insured retention. The Settling Insurers shall be required to cooperate in good faith with the Debtor, the Reorganized Debtor, and/or the Survivors' Trust to take commercially reasonable steps to defend against any Contribution Claim by a Non-Settling Insurer.

**8.6.** ***Cooperation.*** The Survivors' Trust and the Debtor (including the Estate and the Reorganized Debtor) shall have the obligation as provided in the Abuse Insurance Policies to cooperate with the Non-Settling Insurers with respect to the investigation and defense of Abuse Claims pursuant to the terms of the Non-Settling Insurers' respective Abuse Insurance Policies, including with respect to preserving any documents relevant to liability or coverage disputes, making documents and witnesses available to the Non-Settling Insurers concerning such disputes, and maintaining privilege with regard to the defense. The Reorganized Debtor and its agents will not voluntarily waive any privilege under applicable non-bankruptcy law applicable to documents or communications related to alleged Abuse Claims (collectively, "Privileged Communications"). Without limiting the generality of the foregoing, neither the Reorganized Debtor nor its agents shall provide the Survivors' Trust or any Holder of an Abuse Claim with any Privileged Communications, absent the express consent of all affected Non-Settling Insurers or a court order compelling such a production. The Reorganized Debtor shall provide prompt notice of any requests and/or motions to compel disclosure of Privileged Communications and cooperate

with affected Insurers with respect to the same. The Non-Settling Insurers reserve all coverage defenses with respect to any current or future failure to cooperate. The Debtor and the Survivors' Trust reserve all rights under the applicable Abuse Insurance Policies of the Non-Settling Insurers. The Insurance Assignment does not violate and shall not be deemed to violate any cooperation requirements in any Abuse Insurance Policy.

**8.7.** ***Reductions In Non-Settling Insurers' Liability.*** If a Holder of an Abuse Claim is seeking both (a) a recovery from the Survivors' Trust and (b) a non-bankruptcy court action against the Debtor (as a nominal party only) for the purpose of seeking coverage and recovery under an Abuse Insurance Policy, and obtains both a distribution from the Survivors' Trust and a judgment against a Non-Settling Insurer from a court of competent jurisdiction, then the Non-Settling Insurer's liability shall be reduced on a dollar-for-dollar basis by the amount distributed to the Holder of such Abuse Claim from the Survivors' Trust. To the extent a Non-Settling Insurer pays an Abuse Claim as so determined without a credit for any recovery provided by the Survivors' Trust to the Holder of such Abuse Claim under the Plan, such No-Settling Insurer shall be entitled to recover from the Survivors' Trust on account of its payment to such Holder an amount equal to the amount paid to such Holder by the Survivors' Trust. No Holder of an Abuse Claim shall recover in the aggregate from the Survivors' Trust and the Non-Settling Insurer an amount greater than the amount of the judgment issued by the applicable court of competent jurisdiction in connection with such Holder's underlying Abuse Claim.

**8.8.** ***Settling Insurers.***

    8.8.1. *Pre-Confirmation Insurance Settlement Agreements.* If, before Confirmation, an Insurer enters into an Insurance Settlement Agreement with the Debtor under which the Insurer would become a Settling Insurer under this Plan upon entry of the Confirmation Order, the Debtor shall file with the Plan Supplement providing for any provisions required by the proposed Settling Insurer, and agreed to by the Debtor, to be made a part of this Plan. Any such provisions set forth in the Plan Supplement shall be deemed incorporated into this Section as part of the Plan. Any Insurer that becomes a Settling Insurer shall receive the treatment as may be provided in any Insurer Settlement Agreement approved by a Final Order. Each Insurance Settlement Agreement is effective and binding upon all Persons who have notice, and any of the foregoing Persons' successors and assigns, upon the entry of a Final Order approving the Insurance

Settlement Agreement and satisfaction of all conditions precedent. Payments by each Settling Insurer to the Survivors' Trust, and the releases by the Debtor and/or the Contributing Non-Debtor Catholic Entities of each Settling Insurer, pursuant to the Insurance Settlement Agreements shall occur and/or be effective according to the terms of each such agreement. The Insurance Settlement Agreements shall survive the Confirmation and the Effective Date. The rights of the parties under any Insurance Settlement Agreement shall be determined exclusively under the applicable Insurance Settlement Agreement and those provisions of the Final Order approving such Insurance Settlement Agreement, the Plan, and the Confirmation Order.

8.8.2. *Sale Free and Clear*. Each Settling Insurer Abuse Insurance Policy shall be sold to the issuing Settling Insurer, pursuant to Sections 105, 363, and 1123 of the Bankruptcy Code, free and clear of all liens and Claims of all Persons, to the extent provided for in each applicable Insurance Settlement Agreement.

8.8.3. *Timing.* The injunctions, releases, and discharges to which any Settling Insurer is entitled pursuant to such Insurance Settlement Agreement, the Plan, the Confirmation Order, the Final Order approving the Insurance Settlement Agreement, and the Bankruptcy Code shall become effective pursuant to the terms of such Insurance Settlement Agreement.

8.8.4. *Contribution Claims of Settling Insurers.* Each Settling Insurer agrees that it will not pursue any Abuse Related Contribution Claim that it might have against any other Insurer (a) whose Contribution Claim against Settling Insurers is satisfied and extinguished entirely; or (b) that does not make an Abuse Related Contribution Claim against the Settling Insurers, or any of them. If, in the future, a Non-Settling Insurer releases its Abuse Related Contribution Claims, if any such exist, that it may have against the Settling Insurers, then such released Settling Insurer shall release its Abuse Related Contribution Claims against such releasing Insurer. If any Non-Settling Insurer asserts a Claim directly against the Survivors' Trust arising from or concerning the one or more Settling Insurers' Abuse Insurance Policies, any Abuse Related Contribution Claim of the Settling Insurers shall be transferred to the Survivors' Trust, and the Survivors' Trust shall be authorized to assert the Contribution Claims of such Settling Insurer against such Non-Settling Insurer.

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 51 of 93

# ARTICLE IX
# THE SURVIVORS' TRUST

**9.1.** ***Creation of the Survivors' Trust and Appointment of Trustee.***

9.1.1. *Establishment and Purpose of the Survivors' Trust.* On the Effective Date, the Survivors' Trust shall be established in accordance with the Survivors' Trust Documents. The Survivors' Trust will, upon its creation, and without limitation: (1) assume liability for all Abuse Claims, including without limitation Unknown Abuse Claims, of the Debtor, Contributing Non-Debtor Catholic Entities, and any Settling Insurers; and (2) receive, hold, administer, liquidate, and distribute the Survivors' Trust Assets in accordance with this Plan and the Survivors' Trust Documents. The Survivors' Trust shall administer, process, settle, resolve, liquidate, satisfy, and make Trust Distributions in such a way that Holders of Abuse Claims are treated equitably and in a substantially similar manner, subject to the applicable terms of the Plan Documents and the Survivors' Trust Documents. From and after the Effective Date, (x) the Abuse Claims and Unknown Abuse Claims against the Debtor and (y) Claims against any Settling Insurer for or relating to insurance coverage in connection with such Claims, shall be channeled to the Survivors' Trust pursuant to the Channeling Injunction set forth in Section 13.12 of the Plan and may be asserted only and exclusively against the Survivors' Trust. The Survivors' Trust shall have no liability for Non-Abuse Litigation Claims. Holders of Non-Abuse Litigation Claims shall have no recourse to the Survivors' Trust with respect to such Claims.

9.1.2. *Qualified Settlement Fund.* The Survivors' Trust is intended to qualify as a "qualified settlement fund" pursuant to Section 468B of the Tax Code and the regulations promulgated thereunder (the "Treasury Regulations"). The Debtor shall be the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Survivors' Trustee shall be the "administrator" of the Survivors' Trust within the meaning of Treasury Regulation Section 1.468B-2(k)(3).

**9.2.** ***Appointment and Powers of the Survivors' Trustee.*** On the Confirmation Date, the Bankruptcy Court shall appoint the Survivors' Trustee to serve in accordance with, and who shall have the functions and rights provided in, the Survivors' Trust Documents. Any successor Survivors' Trustee shall be appointed in accordance with the terms of the Survivors' Trust Documents. For purposes of the Survivors' Trustee performing his or her duties and fulfilling his or her obligations under the Survivors' Trust and the

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 52 of 93

Plan, the Survivors' Trust and the Survivors' Trustee shall be deemed to be "parties in interest" within the meaning of Section 1109(b) of the Bankruptcy Code. The Survivors' Trustee shall have such powers and duties as are set forth in the Survivors' Trust Documents, including without limitation the following:

9.2.1. *Survivors' Trustee as Fiduciary*. The Survivors' Trustee shall be deemed to be a fiduciary of the Survivors' Trust under the terms of the Survivors' Trust Agreement and shall have all rights, powers, authority, responsibilities, and benefits under California law specified in the Plan and as reflected in the Survivors' Trust Agreement, including commencing, prosecuting or settling causes of action, enforcing contracts, and asserting Claims, defenses, offsets and privileges. If there is any inconsistency or ambiguity between the Confirmation Order and the Survivors' Trust Agreement with respect to Trustee's authority to act, the provisions of the Survivors' Trust Agreement shall control.

9.2.2. *Liquidation of Survivors' Trust Assets*. The Survivors' Trustee shall liquidate and convert to Cash the Survivors' Trust Assets, make timely distributions, and not unduly prolong the duration of the Survivors' Trust. The Survivors' Trustee may also abandon any property which the Survivors' Trustee determines in the Survivors' Trustee's reasonable discretion to be of *de minimus* value or of more burden than the value of the Survivors' Trust.

9.2.3. *Protection of Survivors' Trust Assets*. The Survivors' Trustee shall protect and enforce the rights in and to the Survivors' Trust Assets under the Survivors' Trust Documents.

9.2.4. *Bank Accounts of the Survivors' Trust*. The Survivors' Trustee may open and maintain bank accounts on behalf of the Survivors' Trust to deposit funds in and draw checks on the bank accounts as appropriate under the Survivors' Trust Documents. Notwithstanding anything herein to the contrary, the Survivors' Trustee may open and maintain bank accounts on behalf of the Survivors' Trust after Confirmation but before the Effective Date.

9.2.5. *Insurance*. The Survivors' Trustee shall obtain all reasonably available insurance coverage with respect to any property that is, or may in the future become, a Survivors' Trust Asset.

9.2.6. *Taxes.* The Survivors' Trustee may request an expedited determination of taxes of the Survivors' Trust under Section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Survivors' Trust for all taxable periods through the dissolution of the Survivors' Trust.

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 53 of 93

9.2.7.  *Settlements With Non-Settling Insurers*. The Survivors' Trustee shall be authorized to enter into consensual settlements with one or more Non-Settling Insurers on and after the Effective Date, covering some or all of the Abuse Claims insured thereby, provided that such settlements shall not impair the rights of any other Non-Settling Insurers, including those rights set forth herein. Approval requirements, if any, for such settlements shall be as specified in the Survivors' Trust Agreement.  No settlement (whether in the Plan or otherwise) as among any of the Debtor, its Estate, the Survivors' Trust, and Holder of an Abuse Claim, and the Settling Insurers, including payment obligations, shall bind a Non-Settling Insurer in any way without its consent.

**9.3.     *Property and Funding of the Survivors' Trust.***  The Survivors' Trust shall be funded with (i) aggregate Cash contributions from the Debtor and Reorganized Debtor (as applicable) of $103 million, (ii) any Cash contributions from a Contributing Non-Debtor Catholic Entity pursuant to Section 9.3.2 of this Plan, (iii) title to the Livermore Property, on an as-is, where-is basis, (iv) any proceeds held by the Debtor or the Reorganized Debtor on account of Insurance Settlement Agreements as set forth in this Section 9.3, and (v) the Assigned Insurance Interests.  These contributions to the Survivors' Trust shall be made according to the schedule set forth in this Section 9.3.  The Debtor Cash Contribution (as defined in this Section 9.3) and any Non-Debtor Catholic Entity Contribution (as defined in this Section 9.3) shall be made in respect of the uninsured exposure of the Debtor and any Contributing Non-Debtor Catholic Entities for Abuse Claims (including Unknown Abuse Claims), including, but not limited to, years in which no Non-Settling Insurer Policies are available and, to the extent required under applicable law, when a self-insured retention or deductible must be satisfied to access coverage under Non-Settling Insurer Policies. The Debtor Cash Contribution and any Non-Debtor Catholic Entity Contributions are not, and shall not be construed as, a discharge and/or release of any Abuse Claim (including any Unknown Abuse Claim) covered or alleged to be covered under any of the Non-Settling Insurer Policies. Notwithstanding the foregoing, the Debtor and any Contributing Non-Debtor Catholic Entity shall have no further financial obligations under this Plan or the Plan Documents to Holders of Allowed Abuse Claims, including Allowed

Unknown Abuse Claims, other than the obligations required to be paid to the Survivors' Trust in Section 9.3 of this Plan.

       9.3.1.  *Debtor Cash Contribution.* On the Effective Date of the Plan, the Debtor shall transfer $63 million in good and available funds to the Survivors' Trust using wiring instructions provided by the Survivors' Trustee (the "<u>Initial Debtor Contribution</u>"). The Initial Debtor Contribution will consist of (i) approximately $53 million in Cash received through the Exit Facility, and (ii) approximately $10 million in non-restricted Cash held by the Debtor. The Survivors' Trust shall also receive Cash from the Debtor as set forth below (collectively, the "<u>Additional Debtor Contributions</u>" and together with the Initial Debtor Contribution, the "<u>Debtor Cash Contribution</u>"):

           9.3.1.1.  On the date that is one year after the Effective Date, the Debtor shall transfer $10 million in good and available funds to the Survivors' Trust using wiring instructions provided by the Survivors' Trustee.

           9.3.1.2.  On the date that is two years after the Effective Date, the Debtor shall transfer $10 million in good and available funds to the Survivors' Trust using wiring instructions provided by the Survivors' Trustee.

           9.3.1.3.  On the date that is three years after the Effective Date, the Debtor shall transfer $10 million in good and available funds to the Survivors' Trust using wiring instructions provided by the Survivors' Trustee.

           9.3.1.4.  On the date that is four years after the Effective Date, the Debtor shall transfer $10 million in good and available funds to the Survivors' Trust using wiring instructions provided by the Survivors' Trustee.

       9.3.2.  *Contributions from Non-Debtor Catholic Entities.* Any Non-Debtor Catholic Entity against whom the Holder of a Class 4 Claim has asserted liability in connection with an Abuse Claim may become a Contributing Non-Debtor Catholic Entity by contributing Cash or other assets to the Survivors' Trust in exchange for Releases by such Holders of Class 4 Claims.

           9.3.2.1.  *Roman Catholic Welfare Corporation of Oakland.* RCWC shall contribute Cash to the Survivors' Trust in an aggregate amount that is contingent on the number of Releases it secures from those Holders of Class 4 Claims and Class 5 Claims who have asserted

liability against RCWC in connection with an Abuse Claim ("RCWC Claimants"). RCWC shall transfer a total of $14,250,000.00 (the "RCWC Cash Contribution") to the Survivors' Trust, as follows: $2,000,000.00 on the Effective Date, $3,000,000.00 on the date that is one year after the Effective Date, $3,000,000.00 on the date that is two years after the Effective Date, $3,000,000.00 on the date that is three years after the Effective Date, and $3,250,000.00 on the date that is four years after the Effective Date; provided, however, if less than 100% of all RCWC Claimants grant RCWC a release pursuant to Section 13.9 of the Plan, then the RCWC Cash Contribution, and each of its installments set forth in this Section 9.3.2.2, shall be reduced by a percentage proportional to the percentage of RCWC Claimants who opt out of granting RCWC such release. By way of illustration only, if 80% of RCWC Claimants grant RCWC a release pursuant to Section 13.9 of the Plan, RCWC need only contribute 80% of the aggregate RCWC Cash Contribution, or $11,400,000.00, to the Survivors' Trust, in installments of $1,600,000.00 on the Effective Date, $2,400,000.00 on the first, second, and third anniversaries of the Effective Date, and $2,600,000.00 on the fourth anniversary of the Effective Date.

9.3.2.2.    *Other Contributing Non-Debtor Catholic Entities*.  Should any other Non-Debtor Catholic Entity become a Contributing Non-Debtor Catholic Entity between the filing of this Plan and the date of the filing of the Plan Supplement, the Plan Supplement shall set forth the amount of Cash contributed by any such Non-Debtor Catholic Entity (or, if the Contribution is not in Cash, the nature and approximate Cash-value of the contribution by any such Non-Debtor Catholic Entity) and shall set forth the extent to which such Non-Debtor Catholic Entity's contribution is conditioned on the number of Releases it receives from Holders of Class 4 and Class 5 Claims asserting liability against such Non-Debtor Catholic Entity in connection with an Abuse Claim.

9.3.2.3.    *Release by Holders of Class 5 Claims*.  For purposes of calculating the percentage of releases under Section 13.9 of the Plan a Non-Debtor Catholic Entity receives, the Unknown Abuse Claims Representative shall count as a single Holder, and each Holder of a Class 4 Claim shall count as a single Holder.

9.3.3. *Separate Contributions*. Any contribution to the Survivors' Trust by a Contributing Non-Debtor Catholic Entity shall be in addition to and separate from the Debtor Cash Contribution.

9.3.4. *Livermore Property.* The Debtor, through its affiliate Adventus, shall transfer ownership of the Livermore Property to the Survivors' Trust on the Effective Date. Adventus shall be treated as a Contributing Non-Debtor Catholic Entity under the Plan.

9.3.5. *Insurance Settlement Agreements*. In addition to the Debtor Cash Contribution, any Cash received by the Debtor on or before the Effective Date in connection with an Insurance Settlement Agreement shall be transferred to the Survivors' Trust on the Effective Date. After the Effective Date, the Survivors' Trust may enter into such Insurance Settlement Agreements as in its business judgment and in accordance with the Survivors' Trust Documents it deems necessary and beneficial to the Survivors' Trust.

9.3.6. *Assignment of Assigned Insurance Interests*. On the Effective Date, the Insurance Assignment described in Article VIII of the Plan shall become effective.

9.3.7. *Use of Survivors' Trust Assets*. The Survivors' Trust Assets shall be used in accordance with and for the purposes set forth in the Survivors' Trust Documents, including without limitation to pay Abuse Claims, reasonable expenses of the Survivors' Trust, and to pursue the Coverage Action or other actions to recover from Non-Settling Insurers. Notwithstanding anything herein to the contrary, no monies, choses in action, and/or assets comprising the Survivors' Trust Assets that are transferred, granted, assigned, or otherwise delivered to the Survivors' Trust shall be used for any purpose other than in accordance with the Plan and the Survivors' Trust Documents.

9.3.8. *No Insurer Reimbursement Obligation.* The Non-Settling Insurers shall not be liable for or obligated to reimburse any contribution to the Plan made by the Debtor and its Estate, nor shall the Survivors' Trust be authorized to seek such recovery.

**9.4. *Unknown Abuse Claims Reserve.*** Upon the Effective Date, the Survivors' Trust shall segregate $5,000,000.00 (Five Million Dollars and Zero Cents) of the Initial Debtor Contribution into the Unknown Abuse Claims Reserve. The Unknown Abuse Claims Reserve shall be maintained for the greater of (i) four years after the Effective Date, and (ii) resolution of all Unknown Abuse Claims submitted to the Survivors' Trustee within four years after the Effective Date. On that date, the remaining

funds in the Unknown Abuse Claims Reserve will be de-segregated and returned to the Survivors' Trust's general accounts, and neither the Debtor, Reorganized Debtor, Survivors' Trust, nor any Settling Insurer shall have any more liability for any Unknown Abuse Claim.

**9.5.    *Vesting.*** On the Effective Date, all Survivors' Trust Assets shall vest in the Survivors' Trust, and the Debtor, Reorganized Debtor, Contributing Non-Debtor Catholic Entities, and Settling Insurers shall be deemed for all purposes to have transferred all of their respective interests in the Survivors' Trust Assets to the Survivors' Trust. On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtor, any other Released Party, and Settling Insurers, as applicable, shall take all actions reasonably necessary to transfer any Survivors' Trust Assets to the Survivors' Trust. Upon the transfer of control of Survivors' Trust Assets in accordance with this paragraph, the Debtor, Reorganized Debtor, Contributing Non-Debtor Catholic Entities, and the Settling Insurers shall have no further interest in the Survivors' Trust Assets except as otherwise explicitly provided in this Plan.

**9.6.    *Survivors' Trust Assumption of Liabilities for Abuse Claims.*** The transfer to, vesting in and assumption by the Survivors' Trust of the Survivors' Trust Assets as contemplated by the Plan shall, as of the Effective Date, discharge all obligations and liabilities of and bar any recovery or action against the Released Parties for or in respect of all Abuse Claims (including Unknown Abuse Claims).  The Confirmation Order shall provide for such discharge.  The Survivors' Trust shall, as of the Effective Date, assume sole and exclusive responsibility and liability for all Abuse Claims against the Released Parties, and such Claims shall be paid by the Survivors' Trust from the Survivors' Trust Assets or as otherwise directed in the Survivors' Trust Documents.  From and after the Effective Date, all Abuse Claims against the Released Parties shall be considered Channeled Claims subject to the Channeling Injunction under Section 105(a) of the Bankruptcy Code and the provisions of the Plan and the Confirmation Order.  From and after the Effective Date, the Released Parties shall not have any obligation with respect to any liability of any nature or description arising out of, relating to, or in connection with any Abuse Claims.

**9.7.    *Right to Elect to Receive an Immediate Distribution.*** Before the Effective Date, Abuse Claimants may elect to receive the Immediate Distribution from the Survivors' Trust.  If a Holder of an Abuse Claim elects to receive the Immediate Distribution, the payment will be made within thirty (30) days of the Effective Date.  After receipt of the Immediate Distribution, the Holder of an Abuse Claim

shall not be entitled to any further distributions from the Survivors' Trust and shall not be entitled to pursue any Abuse Claim against the Non-Settling Insurers or any other party.

**9.8. Method of Determination of Abuse Claims and Rights of Abuse Claimants to Pursue Litigation.** After the Effective Date, every Abuse Claim held by an Abuse Claimant who has not elected to receive an Immediate Distribution (the "Trust Claims") shall be reviewed and scored by the Abuse Claims Reviewer in order to determine the distribution to each such Holder in accordance with the terms of the Survivors' Trust Documents.

9.8.1. *Notice of Initial Determination.* The Abuse Claims Reviewer shall provide a determination of the distribution to which each Holder of each Trust Claim is entitled (the "Initial Determination"), in accordance with the terms of the Survivors' Trust Documents. Each Holder of a Trust Claim will receive a notice containing the Initial Determination, including a projected recovery based on the anticipated available assets of the Survivors' Trust at the time of the Initial Determination.

9.8.2. *Right to Appeal Notice of Initial Determination.* Within thirty (30) days of receipt of the notice of the Initial Determination, each Holder of a Trust Claim shall have the right to request an appeal of the Initial Determination to a neutral decisionmaker (the "Neutral"), who shall provide a subsequent determination (the "Neutral Determination"), as provided for in the Survivors' Trust Documents. The Neutral Determination shall be the "Final Determination" for purposes of such Holder's distributions from the Survivors' Trust. For the avoidance of doubt, no determination will be made in the Chapter 11 Case concerning the alleged dollar value of an Abuse Claim for purposes of unsettled Insurance. Neither the Claims Reviewer's or Survivors' Trustee's review of an Abuse Claim and determination of qualification, nor the Survivors' Trust's estimation of claims or payment of distributions, shall constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation with the Non-Settling Insurer or any other Person.

9.8.3. *Distributions to Trust Claimants from the Survivors' Trust.* Subject to the Survivors' Trust Documents, the following procedures will govern distributions to Holders of Trust Claims ("Trust Claimants," and individually a "Trust Claimant") from the Survivors' Trust:

9.8.3.1. Within 30 days of the Neutral's completion of all Neutral Determinations, the Survivors' Trustee shall make a projection of anticipated distributions to each Holder of a Trust Claim.

9.8.3.2. The Survivors' Trustee will make an initial distribution (the "Initial Distribution") to each Trust Claimant, except for those Trust Claimants who elect the Litigation Option (defined below). The Initial Distribution shall be comprised of each such Trust Claimants' *pro rata* share of the Survivors' Trust Assets existing on that date, less reasonable reserves for the Survivors' Trust, to be determined by the Survivors' Trustee in accordance with the Survivors' Trust Documents (the "Initial Reserve"). The Survivors' Trustee may, but need not, wait until the liquidation of the Livermore Property to make the Initial Distribution.

9.8.3.3. Upon the receipt of additional contributions into the Survivors' Trust, including from sales of real property owned by the Survivors' Trust, the Survivors' Trustee shall make further distributions (the "Additional Distributions") to the Holders of Trust Claims in accordance with this Section of the Plan and the Survivors' Trust Documents, less such appropriate reserves (the "Additional Reserves").

9.8.3.4. After the final resolution of all Trust Claims the Holders of which selected the Litigation Option, the Survivors' Trustee shall make a final distribution to the Holders of Trust Claims (the "Final Distribution"), which shall include previously withheld reserves and any reallocated funds. If, after 180 days from the date of the Final Distribution, there are any funds which are not claimed by the Holder of a Trust Claim, such unclaimed funds shall be returned to the Reorganized Debtor.

9.8.4. *Right to Elect Litigation Against Non-Settling Insurers and Other Parties*. Irrespective of whether a Trust Claimant has requested an appeal of the Initial Determination to the Neutral, within ninety (90) days of receiving the notice of the Initial Determination of the Holder's Trust Claim, such Holder may elect either to receive an Initial Distribution (the "Distribution Option") or to pursue litigation against the Non-Settling Insurers and/or other parties (excluding the Debtor or Reorganized Debtor as appropriate) (the "Abuse Claim Litigation" and, the election of the Abuse Claim

Litigation, the "<u>Litigation Option</u>") by filing the notice described in Section 8.2.2 of the Plan. Trust Claimants who do not make an election will be deemed to have chosen the Distribution Option.

9.8.4.1.    In the event the Holder of a Trust Claim elects the Litigation Option, the Survivors' Trustee shall reserve the amount of such Claimant's Final Determination pending the resolution of the Abuse Claim Litigation.

9.8.4.2.    The liability of the Survivors' Trust to the Holder of a Trust Claim who elects the Litigation Option shall be limited to the Final Determination, even in the event that the Holder of a Trust Claim obtains a judgment through the Abuse Claim Litigation that is higher than the Final Determination.

9.8.4.3.    The distribution from the Survivors' Trust to the Holder of a Trust Claim who obtains a judgment through the Abuse Claim Litigation that is lower than the Final Determination shall be capped at the amount of such judgment (the "<u>Litigation Judgment</u>"); <u>provided</u>, <u>however</u>, that such distribution from the Survivors' Trust shall be further reduced by the amount of any liability for the Litigation Judgment that is apportioned to (i) one or more third-party defendants in the Abuse Claim Litigation, and/or (ii) any Non-Settling Insurer on account of such Non-Settling Insurer's coverage obligations under an Abuse Insurance Policy, if any, subject to such Non-Settling Insurer's rights to Contribution and other rights under this Plan and the applicable Abuse Insurance Policy(ies).  The difference between the Final Determination and the reduced distribution from the Survivors' Trust shall be reallocated to all of the Survivors' Trust Beneficiaries in their *pro rata* share.

9.8.4.4.    If a Holder of a Trust Claim obtains a judgment against a Non-Settling Insurer or other third party, any party found liable for payment to such Holder shall pay that judgment directly to such Holder.  The Holder shall have no further claims against the Survivors' Trust and any amount reserved for that Holder's Trust Claim shall be reallocated to all Survivors' Trust Beneficiaries in their *pro rata* share.

9.8.4.5.    Following final resolution of each Abuse Claim Litigation, the Survivors' Trustee will make an initial distribution (the "<u>Initial Litigation Distribution</u>") to each

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 61 of 93

Trust Claimant who selected the Litigation Option, in accordance with the terms of this Article IX of the Plan and the Survivors' Trust Documents and subject to reasonable reserves.

9.8.4.6. Upon written notice to the Survivors' Trustee, subject to the Survivors' Trustee's sole and absolute discretion, a Trust Claimant who selected the Litigation Option may rescind that election in favor of the Distribution Option. Notwithstanding the foregoing, the Survivors' Trustee shall consent to such rescission if such written notice of rescission is given prior to entry of an order of dismissal or a final judgment in the Abuse Claim Litigation in favor of a Released Party.

9.8.4.7. Following final resolution of the last Abuse Claim Litigation, the Survivors' Trustee will make the Final Distribution as set forth in Section 9.8.3.4 above.

9.8.5. *Reporting Requirement*. The Survivors' Trustee shall report to the Reorganized Debtor, on a quarterly basis, or upon reasonable request, (i) the date on which each Holder of an Abuse Claim is notified of their award under the Survivors' Trust Distribution Plan, (ii) whether each Holder of an Abuse Claim has elected the Immediate Distribution, the Distribution Option, or the Litigation Option, and (iii) any modification made by any Holder of an Abuse Claim to their treatment status.

**9.9. *Compensation and Reimbursement of Expenses to Survivors' Trustee and Survivors' Trust Professionals.*** The Survivors' Trustee shall be entitled to compensation as provided for in the Survivors' Trust Documents. The Survivors' Trustee may retain and reasonably compensate, without Bankruptcy Court approval and without the consent of the Reorganized Debtor, counsel and other Professionals as reasonably necessary to assist in the duties of the Survivors' Trustee subject to the terms of the Survivors' Trust Documents. All fees and expenses incurred in connection with the foregoing shall be payable from the Survivors' Trust, as provided for in the Survivors' Trust Documents.

**9.10. *Excess Survivors' Trust Assets.*** After the payment of all Abuse Claims that are entitled to a distribution from the Survivors' Trust and all expenses of the Survivors' Trust Expenses, all remaining Assets in the Survivors' Trust shall be transferred to the Reorganized Debtor concurrent with the termination of the Survivors' Trust pursuant to the Survivors' Trust Documents.

**9.11. *Indemnification of Debtor, Reorganized Debtor, and Contributing Non-Debtor Catholic Entities.*** The Survivors' Trust shall indemnify and hold harmless the Debtor, Reorganized Debtor, and

the Contributing Non-Debtor Catholic Entities from and against any and all Abuse Claims, as well as indemnify and reimburse such parties for all fees, costs and expenses related to Abuse Claims (including such fees, costs and expenses incurred in connection with discovery), to the extent set forth in this Plan and the Survivors' Trust Documents. The Survivors' Trust shall not have any obligation to indemnify any Person accused of committing a physical act of Abuse against a Holder of an Abuse Claim or such Holder's predecessor(s)-in-interest.

**9.12. Modification of Survivors' Trust Documents.** The Survivors' Trust Documents may not be amended or modified without the consent of the Reorganized Debtor. The Reorganized Debtor shall also have consent rights with respect to the appointment of any successor Survivors' Trustee and Survivors' Trust Advisory Committee members, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, the indemnification obligations of the Survivors' Trust described in this Plan as to any Released Party may not be amended or modified without the consent of such Released Party.

**ARTICLE X**
**CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN**

**10.1. Conditions to Confirmation.** The following are conditions precedent to Confirmation of this Plan that must be (i) satisfied, or (ii) waived, subject to Court approval:

10.1.1. A Final Order, finding the Disclosure Statement contains adequate information pursuant to Section 1125 of the Bankruptcy Code, shall have been entered by the Court.

10.1.2. The Plan, Plan Supplement, Disclosure Statement, Survivors' Trust Documents, and any other Plan Documents are in a form acceptable to the Debtor and Contributing Non-Debtor Catholic Entities. Except as to the Debtor, all such documents shall be deemed acceptable to each of the foregoing Persons unless such Person Files a written objection to confirmation of the Plan.

10.1.3. The proposed Confirmation Order is acceptable to the Debtor and Contributing Non-Debtor Catholic Entities. Except as to the Debtor, all such documents shall be deemed acceptable to each of the foregoing Persons unless such Person Files a written objection to the form of the proposed Confirmation Order.

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 63 of 93

10.1.4. The Confirmation Order approves the Channeling Injunction and Exculpation Clause.

10.1.5. The Confirmation Order approves the release of, and releases, all Contributing Non-Debtor Catholic Entities to the extent provided in the Plan.

10.1.6. The Confirmation Order shall include findings of fact that: (i) the release of each of the Contributing Non-Debtor Catholic Entities is fair and necessary to the Debtor's reorganization and reorganization is unlikely without that Entity's release; (ii) sufficient identity of interests exists between the Debtor and the released Contributing Non-Debtor Catholic Entities such that a suit against any of the released Contributing Non-Debtor Catholic Entities is a suit against the Debtor or will deplete Estate assets; (iii) all consideration given by a released Contributing Non-Debtor Catholic Entity provides significant and critical funding for this Plan constituting a substantial contribution to the success of the Plan; and (iv) released Contributing Non-Debtor Catholic Entities would not make a substantial contribution absent the benefits they obtain from the third-party releases.

10.1.7. The Confirmation Order shall include a finding of fact that the Debtor, each of the Contributing Non-Debtor Catholic Entities, any Settling Insurers, and each of their respective present and former members, officers, directors, employees, advisors, attorneys, and agents acted in good faith within the meaning of and with respect to all of the actions described in Section 1125(e) of the Bankruptcy Code and are, therefore, not liable for the violation of any applicable law, rule, or regulation governing such actions.

10.1.8. The Confirmation Order in a form consistent with the foregoing shall be entered in the Chapter 11 Case.

**10.2.    *Conditions to Effectiveness.*** The following are conditions precedent to the Effective Date that must be (i) satisfied, or (ii) waived, subject to Court approval (for the avoidance of doubt, the Effective Date is not conditioned on resolution of any litigation or assumption of any Unexpired Leases or Executory Contracts):

10.2.1. The Confirmation Order shall have been entered and shall be a Final Order in a form reasonably acceptable to the Debtor, and there shall be no stay or injunction that would prevent the

occurrence of the Effective Date. The Debtor in its sole discretion may waive the requirement that the Confirmation Order be a Final Order.

10.2.2. There shall have been no material amendments to the Plan or Confirmation Order.

10.2.3. The Debtor and all other necessary parties shall have executed all documents and entered into all agreements as may be necessary in connection with the Exit Facility described in Article XI of the Plan.

10.2.4. The Debtor, the Survivors' Trustee, and any other necessary parties shall have executed all documents necessary for formation of the Survivors' Trust, and for the Survivors' Trustee to administer and operate the Survivors' Trust.

10.2.5. All approvals necessary to effectuate the transfer of the Livermore Property to the Survivors' Trust have been obtained.

10.2.6. Transfer of funds to the Survivors' Trust for all initial contributions to the Survivors' Trust shall have been made, and the proof thereof provided to the Debtor and the Survivors' Trustee.

10.2.7. All other actions, authorizations, filings, consents, and approvals required (if any), including but not limited to canonical approvals, shall have been obtained, effected, or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

10.2.8. All other actions, documents, and agreements necessary to implement and effectuate the Plan shall have been effected or executed.

10.2.9. The statutory fees owing to the United States Trustee as of the deadline for payment immediately preceding the Effective Date shall have been paid in full.

**10.3. Waiver of Conditions.** The conditions to Confirmation set forth in Section 10.1 or the Effective Date set forth in Section 10.2 may be waived, in whole or in part, by the Debtor, subject to approval of the Court, provided that Sections 10.2.3 and 10.2.4 are not waivable. The failure to satisfy any material condition to Confirmation or the Effective Date may be asserted by the Debtor in its sole discretion so long as such failure was not primarily caused by any action or inaction by the Debtor. The

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 65 of 93

failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**10.4.    Revocation of the Plan.**  If Confirmation does not occur, an order denying Confirmation is entered by the Court, or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims against the Debtor; (b) constitute a waiver or release of any right, claim or cause of action of the Debtor; (c) constitute an admission of any fact or legal conclusion by the Debtor or any other Person; (d) prejudice in any manner the rights of the Debtor or any other party in any related or further proceedings; or (e) constitute a settlement, implicit or otherwise, of any kind whatsoever.

**ARTICLE XI**
**EXIT FINANCING**

**11.1.    The Exit Facility.**  On the Effective Date, the Reorganized Debtor shall enter into the Exit Facility with the Exit Facility Lender.  Confirmation of the Plan shall be deemed approval of the Exit Facility, the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor in connection therewith.  Upon entry of the Confirmation Order, the Debtor and Reorganized Debtor (as applicable) shall be authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Facility, including the Exit Facility Documents, without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtor and the Exit Facility Lender may deem to be necessary to consummate the Exit Facility. Proceeds of the Exit Facility shall be used to fund the Initial Debtor Contribution and the operations of the Reorganized Debtor.

**11.2.    Effect of the Exit Facility.**  On the Effective Date, the Exit Facility shall constitute legal, valid, binding and authorized indebtedness and obligations of the Reorganized Debtor, enforceable in accordance with its terms and such indebtedness and obligations (and the transactions effectuated to implement the Exit Financing) shall not be and shall not be deemed to be, enjoined or subject to discharge, impairment, release or avoidance under the Plan, the Confirmation Order or on account of the confirmation or consummation of the Plan.  On the Effective Date, all the liens and security interests granted in

accordance with the Exit Facility Documents shall be legal, valid, binding upon the Reorganized Debtor, enforceable in accordance with their respective terms, and no obligation, payment, transfer or grant of security under the Exit Facility Documents shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law or subject to any defense, reduction, recoupment, setoff or counterclaim. Such liens and security interests shall be deemed automatically perfected on the Effective Date without the need for the taking of any further filing, recordation, approval, consent or other action, and such liens and security interests shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

**11.3.    Authorization.**  On the Effective Date, the Reorganized Debtor and the Exit Facility Lender shall be authorized to make all filings and recordings, obtain all governmental approvals and consents, and take any other actions necessary to establish and perfect such liens and security interests under the provisions of the applicable state, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfections shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and the Reorganized Debtor shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

## ARTICLE XII
## MEANS FOR IMPLEMENTING THE PLAN

**12.1.    Revesting.**

12.1.1. *Revesting of Property in the Reorganized Debtor.* On the Effective Date, all property of the Estate as defined in Section 541 of the Bankruptcy Code, including any Causes of Action, shall revest in the Reorganized Debtor, free and clear of all liens and encumbrances and all Claims, rights, interests, and entitlements.  Thereafter, the Reorganized Debtor may use, sell, transfer or exchange such property in its discretion, subject to any restriction or limitation set forth in the Plan.

12.1.2. *Obtaining Credit.* At any time after the Effective Date the Reorganized Debtor may obtain credit in its sole discretion without approval of the Bankruptcy Court.

12.1.3. *No Waiver.* No claim, right, Cause of Action, or other property of the Estate shall be deemed waived or otherwise forfeited by the Debtor's failure to identify such property in the Schedules or the Disclosure Statement accompanying the Plan.

**12.2. Non-Monetary Commitment to Healing and Reconciliation.** In order to further promote healing and reconciliation, and in order to continue efforts to protect children and vulnerable adults and to prevent Abuse from occurring in the future, the Reorganized Debtor shall, as of the Effective Date (unless a different date is provided in the Confirmation Order), continue the non-monetary measures outlined in Article IV(G) of the Disclosure Statement entitled "Debtor's Mission to Effect Reconciliation and Compensation," which non-monetary measures are expressly incorporated herein.

**12.3. CCCEB Settlement.** Upon the occurrence of the Effective Date, the CCCEB Settlement, in accordance with the CCCEB Settlement Documents, shall become effective. The CCCEB Settlement shall include the following terms:

12.3.1. In full and complete satisfaction of all obligations under the CCCEB Note, CCCEB shall transfer to RCBO on the Effective Date fee simple title to the Cathedral Property, together with all improvements thereon and all tangible personal property owned by CCCEB and located on or used in connection with operation of the Cathedral Property.

12.3.2. CCCEB shall assign to RCBO, and RCBO shall assume all obligations of CCCEB under, all current contracts related to maintenance, operation, and security of the Cathedral Property, provided that RCBO may decline to assume any such contract following reasonable diligence review, and further provided that to the extent any such contracts are not assignable under their terms or applicable law or assignment would constitute a breach under the terms of such contract, RCBO may instead, at its election, fund CCCEB's obligations for payment under any such contracts.

12.3.3. Funds in deposit accounts in the name of or controlled by CCCEB for operation of the Cathedral Property shall, at RCBO's election, be transferred to RCBO, or otherwise used for operating expenses related to the Cathedral Property or otherwise to pay the debts of CCCEB.

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 68 of 93

12.3.4. CCCEB shall assign to RCBO, and RCBO shall assume all obligations under the existing leases and user agreements with tenants and other users of the Cathedral Property, including (i) that certain License and Services Agreement dated as of January 1, 2020, with RCC regarding the mausoleum on the Cathedral Property; (ii) that certain Commercial Office Lease Agreement with RCC dated as of April 3, 2024; (iii) that certain Lease Agreement with the Order of Malta Clinic of Northern California dated January 25, 2008, and amended February 10, 2023; and (iv) agreements for use of Cathedral Property space with RCWC, and the Cathedral of Christ the Light parish Church.

12.3.5. CCCEB shall have no further obligation or liability of any kind for the debt evidenced by the CCCEB Note, or in connection with the CCCEB Note.

12.3.6. The Debtor and CCCEB shall agree to such other terms, not inconsistent with the Plan, as are necessary or desired to complete the CCCEB Settlement.

**12.4.    *Treatment of Actions and Causes of Action.*** On the Effective Date, all Causes of Action held by the Estate or the Debtor other than the Assigned Insurance Interests shall be deemed fully vested in the Reorganized Debtor. Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor shall retain and have the exclusive authority and standing to prosecute, enforce, pursue, sue on, settle or compromise any and all Causes of Action (including Avoidance Actions), arising before the Effective Date, including all Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code, but not including the Coverage Action, Assigned Insurance Interests, and any other Causes of Action expressly released or compromised as part of or pursuant to the Plan or by other order of the Bankruptcy Court entered prior to the Effective Date. The Reorganized Debtor shall also retain and may prosecute and enforce all defenses, counterclaims, and rights that have been asserted or could be asserted by the Debtor against or with respect to all Claims asserted against the Debtor or property of the Estate. Failure to specifically identify potential Causes of Action in the Plan shall not be deemed a waiver of any such Cause of Action by the Debtor, Reorganized Debtor, or the Survivors' Trust.

**12.5.    *Continued Existence.*** From and after the Effective Date, the Debtor shall continue in existence as the Reorganized Debtor in accordance with applicable law for all purposes, including, among other things, (a) enforcing and prosecuting claims, interests, rights, and privileges of the Debtor including, without limitation, prosecuting Causes of Action, (b) resolving Disputed Claims, (c) administering the

Plan, (d) filing appropriate tax returns and refund requests, and (e) performing all such other acts and conditions required by and consistent with consummation of the Plan.

**12.6.   *The Survivors' Trust.***   On the Effective Date, the Survivors' Trust shall be created, as provided in Article IX of the Plan.

**12.7.   *Post-Effective Date Prosecution of Non-Abuse Litigation Claims.***

12.7.1. *Relief from the Automatic Stay*. Effective upon the Effective Date, Holders of Class 6 Claims are granted relief from the automatic stay of Section 362 of the Bankruptcy Code solely for the purpose of continuing to prosecute their Class 6 Claim in a court of competent jurisdiction (each, a "Class 6 Action"), including but not limited to litigating such action through entry of a judgment, prosecution of any appeals and/or settlement of such action, subject to the terms and conditions set forth herein.   All Holders of Class 6 Claims shall be permitted, but not required, to liquidate their Class 6 Action in a court of competent jurisdiction in accordance with 28 U.S.C. § 157(b)(2)(B).

12.7.2. *Sources of Recovery for Non-Abuse Litigation Claims.* Notwithstanding any provision to the contrary in the Plan Documents, Holders of Class 6 Claims shall be entitled to prosecute and/or settle their respective Class 6 Action, provided that each such Holder shall be limited to recovering from (i) the proceeds of any applicable insurance policy which provides coverage, or could provide coverage, with respect to such Class 6 Claim and (ii) its *pro rata* portion of the Non-Abuse Litigation Reserve.  Effective upon the Effective Date, Holders of Class 6 Claims shall be otherwise barred and enjoined from seeking recovery on any judgment or settlement obtained in their respective Class 6 Action from the assets of the Debtor, Reorganized Debtor, Contributing Non-Debtor Catholic Entities, Survivors' Trust, and any other party receiving a release under this Plan.

12.7.3. *Insurance Coverage for Non-Abuse Litigation Claims.*  All parties, including, but not limited to, any insurer under any insurance policy alleged to provide coverage of a Class 6 Claim, reserve and expressly do not waive any of their rights, remedies and/or defenses with respect to any Class 6 Claim. If any insurer denies and/or disclaims coverage of a Class 6 Claim, the Debtor or Reorganized Debtor (as applicable) shall reasonably cooperate at the sole cost of the Holder of such Class 6 Claim to assign to that Holder the right to pursue and receive the proceeds of any applicable coverage under such Insurer's Abuse Insurance Policy or Abuse Insurance Policies.  Nothing contained herein shall be deemed

a representation or warranty concerning the availability, scope or interpretation of any insurance coverages which may or may not exist.

### 12.8. **Bankruptcy Procedure and Transition.**

12.8.1. *Notice Required Post-Confirmation*. Except as otherwise specifically provided in this Plan, notice of Filings in the Bankruptcy Court after the Confirmation Date, including fee applications, shall be required to be given only to Persons or Entities on the Post-Confirmation Notice List. Consistent with the Local Rules of the Bankruptcy Court, no other form of service shall be required on parties receiving service through ECF.

12.8.2. *Post-Confirmation Matters*. Except as otherwise specified herein, matters arising after the Confirmation Date and subject to the Court's retained jurisdiction may be initiated in the same manner and with the same effect as if the Chapter 11 Case was pending before the Bankruptcy Court and the Plan had not been confirmed. Subject to the provisions of the Plan and the Bankruptcy Code governing compensation of Professionals, and except as provided in Article XIII of the Plan, every party to such a matter shall bear its own attorneys' fees and costs in connection therewith.

12.8.3. *Dissolution of the Committee*. On the Effective Date, the Committee shall be dissolved and the Committee and its members, as of the Effective Date, shall be discharged of and from all further authority, duties, responsibilities, and obligations related to, arising from and in connection with the Chapter 11 Case.

12.8.4. *Statutory Fees*.

12.8.4.1. The Reorganized Debtor shall continue to pay all U.S. Trustee Fees accruing on or before the earlier of (i) the closing of the Chapter 11 Case, and (ii) December 31, 2026. Should the Chapter 11 Case remain open through January 1, 2027 or later, the Survivors' Trust shall pay all U.S. Trustee Fees accruing on or after that date until the Chapter 11 Case is closed. All U.S. Trustee Fees shall be paid at the rate in effect at the time such fees come due.

12.8.4.2. Solely for purposes of calculating U.S. Trustee Fees on account of the amounts to be funded by the Debtor to the Survivors' Trust, such amounts shall be considered distributions from the Debtor pursuant to 28 U.S.C. § 1930(a)(6) on the date of such distributions.

12.8.4.3.    Contributions by any party to the Survivors' Trust other than the Debtor, including without limitation a Contributing Non-Debtor Catholic Entity or a Settling Insurer, shall not be considered distributions by or on behalf of the Debtor or Reorganized Debtor for purposes of calculating U.S. Trustee Fees.

12.8.4.4.    Distributions from the Survivors' Trust shall not be considered distributions by or on behalf of the Debtor or Reorganized Debtor for purposes of calculating U.S. Trustee Fees.

### 12.9.    *Post-Petition Deposits.*

12.9.1. *Closing of Utility Deposit Account*.   As of the Effective Date, the Reorganized Debtor shall be authorized to close the Adequate Assurance Account, as defined in the *Final Order Establishing Adequate Assurance Procedures With Respect to The Debtor's Utility Providers* [Docket No. 114], and retain all funds held therein.

12.9.2. *Other Deposits*.   From and after the Effective Date, the Reorganized Debtor may, at its election, demand the refund of any deposit provided to a Person other than a utility after the Petition Date or may offset the amount of such deposit, at the Reorganized Debtor's election, against either post-Effective Date billings or against distributions to the holder of such deposit on account of its Allowed Claims, or otherwise take any actions permitted by law to obtain recovery of such deposit; for the avoidance of any doubt, the foregoing supersedes any pre- or post-petition agreement between the holder of such deposit and the Debtor.

### 12.10.   **Other Actions.**   On and after the Effective Date, the Reorganized Debtor shall be authorized to take such actions as are reasonably necessary to complete and effectuate the terms of this Plan, subject only to the specific limitations contained in this Plan, the Bankruptcy Code or Bankruptcy Rules, and any order of the Court.

### 12.11.   **General Settlement.**   Pursuant to Sections 105 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including without limitation the CCCEB Settlement.  On or before the Effective Date, the Bankruptcy Court will

PLAN OF REORGANIZATION, Dated November 8, 2024

have approved, by Final Order, such compromises, and the Bankruptcy Court's findings will constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, Holders of Abuse Claims (including Unknown Abuse Claims), Holders of other Claims, and other parties in interest, and are fair, equitable, and within the range of reasonableness. To the extent a separate Final Order is not entered on or before the Confirmation Date, the entry of the Confirmation Order will constitute the Final Order approving the compromises and settlements hereunder.

**12.12. Closing of the Case.** As soon as reasonably practicable when the Reorganized Debtor deems appropriate, consistent with the provisions of this Plan, the Bankruptcy Code including without limitation Section 350 of the Bankruptcy Code, the Bankruptcy Rules including without limitation Bankruptcy Rule 3022, and the Local Rules of this Court, the Reorganized Debtor shall file and serve an application for entry of a Final Decree closing the Chapter 11 Case, together with a proposed Final Decree. A Final Decree may be entered before the Survivors' Trust is fully administered, and the expectation that the Survivors' Trust will make further distributions shall not be a basis for delaying entry of a Final Decree. Entry of a Final Decree closing the Chapter 11 Case shall, whether or not specified therein, be without prejudice to the right of the Reorganized Debtor, the United States Trustee, the Survivors' Trustee, or any other party in interest to reopen the Chapter 11 Case for any matter over which the Bankruptcy Court or the District Court has retained jurisdiction under this Plan. Any Final Decree or order closing this Chapter 11 Case will provide that the Bankruptcy Court or the District Court, as appropriate, will retain (a) jurisdiction to enforce, by injunctive relief or otherwise, the Confirmation Order, any other orders entered in this Chapter 11 Case, and the obligations created by this Plan and the Plan Documents; and (b) all other jurisdiction and authority granted to it under this Plan and the Plan Documents.

**ARTICLE XIII**
**EFFECT OF PLAN CONFIRMATION**

**13.1. Binding Effect of Confirmation.** As of the Confirmation Date, but subject to occurrence of the Effective Date, the provisions of this Plan shall be binding on and inure to the benefit of the Debtor, the Estate, all Holders of Claims against the Debtor, and all other Persons or Entities whether or not such Persons or Entities have accepted this Plan. The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan will be binding on, and will inure to the benefit of, the executors,

administrators, successors and assigns of each Person or Entity (as applicable), whether or not they have accepted the Plan.

**13.2. Ratification.** Subject to all of the terms of this Plan, the Confirmation Order shall be deemed to ratify all transactions effectuated by the Debtor during the pendency of the Chapter 11 Case to the extent occurring pursuant to an order of the Court.

**13.3. Discharge of Claims.** Under Section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any agreement or document executed pursuant to the Plan, the distributions, rights, and treatment of Claims and Causes of Action in the Plan shall be in complete satisfaction, discharge, and release, as of the Effective Date, of Claims and Causes of Action that arose prior to the Effective Date, whether known or unknown, against the Debtor (including for the avoidance of doubt the Churches) or any of its assets or properties, including without limitation (i) any demands, liabilities, and Causes of Action that arose before the Effective Date, (ii) any liability to the extent such Claims relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, (iii) any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and (iv) all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Any default by the Debtor with respect to any Claim existing immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims subject to the Effective Date occurring. Nothing in this Section 13.3 shall prohibit a Holder of an Abuse Claim from exercising the Litigation Option to pursue recovery from any applicable Non-Settling Insurer Abuse Insurance Policy in accordance with this Plan.

**13.4. Confirmation Injunction.**

Except as expressly provided in the Plan or the Confirmation Order, as of the Effective Date all Holders of Claims of any nature whatsoever against or in the Debtor or any of its assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred before the Effective Date shall be precluded and permanently enjoined from prosecuting or asserting any such discharged Claim against the Debtor or the Reorganized Debtor or the property of the Debtor or Reorganized Debtor. In accordance with the foregoing, except as expressly provided in the Plan or the

Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, and other debts and liabilities against or in the Debtor pursuant to Sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time to the extent such judgment relates to a discharged Claim.

**13.5.    *Injunction Against Interference with the Plan.*** Upon the entry of the Confirmation Order, all Holders of Claims and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, attorneys, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

**13.6.    *Exculpation.*  Subject to the occurrence of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Releases by the Debtor or the Releases by Holders of Abuse Claims, and except as otherwise specifically provided in the Plan or the Confirmation Order, none of the Exculpated Parties shall have or incur any liability to any Holder of a Claim or any other Person for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the Plan, the pursuit of Confirmation of the Plan, the negotiation and consummation of the Plan, or the administration of the Chapter 11 Case and the Plan,  the property to be distributed under the Plan, the administration of the Survivors' Trust Assets and the Survivors' Trust by the Survivors' Trustee, or any other related agreement, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into during the Chapter 11 Case in connection with the Chapter 11 Case, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to the foregoing, and each Exculpated Party hereby is exculpated from any claim or Cause of Action related to the foregoing; provided, however, that the foregoing shall not operate as an exculpation, waiver or release for (i) any express contractual obligation owing by any such Person or Entity, (ii) willful misconduct or gross negligence, and (iii) with respect to Professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall be**

deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan.

**13.7. *Injunction Related to Exculpation.*** As of the Effective Date, all Holders of Claims that are the subject of Section 13.6 are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party and, solely to the extent provided by Section 1125(e) of the Bankruptcy Code, any Entity described in Section 1125(e) or its or their property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any lien or encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Section 13.3 or exculpated under Section 13.6.

**13.8. *Releases by the Debtor.*** **As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to Section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties and Settling Insurers, and each of them, to facilitate and implement the reorganization of the Debtor, as an integral component of the Plan, the Debtor, the Reorganized Debtor, and the Estate shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties and Settling Insurers of and from any and all Causes of Action (including Avoidance Actions), any and all other Claims, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtor, the Reorganized Debtor, or the Estate), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or**

unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtor, the Reorganized Debtor, the Estate, their respective assets and properties, the Chapter 11 Case, the Plan Documents, and any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case, the pursuit of entry of the Confirmation Order, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 13.8 shall not be construed as releasing any post-Effective Date obligations of any Person or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan or reinstated under the Plan.

    **13.9.**    *Releases by Holders of Abuse Claims.*  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to Section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtor, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Holders of Abuse Claims (including without limitation Unknown Abuse Claims and any Abuse Claims that are Disputed Claims) that have not affirmatively opted out of the Releases pursuant to Section 6.2 of the Plan, shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release each and all of the Released Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution,

indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims.

**13.10. *Injunction Related to Releases.*** As of the Effective Date, all Holders of Claims that are the subject of Section 13.9 of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any lien or encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Section 13.3 of the Plan or released under Section 13.9 of the Plan.

**13.11. *Disallowed Claims.*** On and after the Effective Date, the Debtor and the Reorganized Debtor shall be fully and finally discharged of any and all liability or obligation on any and all Disallowed Claims, and any order Disallowing a Claim that is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such Order pursuant to Section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on and as of the Effective Date. The Confirmation Order, except as otherwise provided herein, shall constitute an order Disallowing all Claims to the extent such Claims are not allowable under any provision of Section 502 of the Bankruptcy Code, including time-barred Claims, and Claims for unmatured interest.

**13.12. *Channeling Injunction.*** **IN CONSIDERATION OF THE UNDERTAKINGS UNDER THIS PLAN BY THE RELEASED PARTIES, THEIR CONTRIBUTIONS TO THE SURVIVORS' TRUST, AND OTHER CONSIDERATION AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS AMONG THE RELEASED PARTIES AND THE SETTLING**

INSURERS AND TO SUPPLEMENT WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE:

13.13.1.     ANY AND ALL CHANNELED CLAIMS, INCLUDING WITHOUT LIMITATION UNKNOWN ABUSE CLAIMS, ARE CHANNELED INTO THE SURVIVORS' TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, RESOLVED AND PAID IN THE AMOUNTS AS PROVIDED BY THE SURVIVORS' TRUST DISTRIBUTION PLAN AND PROCEDURES ESTABLISHED UNDER THIS PLAN AND THE SURVIVORS' TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS; AND

13.13.2.     ALL PERSONS WHO HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT ANY CHANNELED CLAIMS ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIM AGAINST THE RELEASED PARTIES AND THE SETTLING INSURERS, INCLUDING: (i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE RELEASED PARTIES OR SETTLING INSURERS OR AGAINST THE PROPERTY OF ANY OF THE RELEASED PARTIES OR SETTLING INSURERS; (ii) ENFORCING, ATTACHING, COLLECTING OR RECOVERING, BY ANY MANNER OR MEANS, FROM ANY OF THE RELEASED PARTIES OR THE PROPERTY OF ANY OF THE RELEASED PARTIES OR SETTLING INSURERS, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE RELEASED PARTIES OR SETTLING INSURERS; (iii) CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE RELEASED PARTIES OR SETTLING INSURERS OR THE PROPERTY OF THE RELEASED PARTIES OR SETTLING INSURERS; (iv) ASSERTING, IMPLEMENTING OR

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 79 of 93

EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST ANY OBLIGATION DUE ANY OF THE RELEASED PARTIES OR SETTLING INSURERS, ANY OF THE RELEASED PARTIES OR SETTLING INSURERS, OR THE PROPERTY OF ANY OF THE RELEASED PARTIES OR SETTLING INSURERS; (v) TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN OR THE SURVIVORS' TRUST DOCUMENTS; AND (vi) ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE TO ANY OF THE RELEASED PARTIES OR SETTLING INSURERS.

**13.13.** *Provisions Relating to the Channeling Injunction.*

**13.13.1.** *Modifications.* The Channeling Injunction is a permanent injunction. It shall not be modified, dissolved, or terminated.

**13.13.2.** *Non-Limitation.* Nothing in the Plan or the Survivors' Trust Documents shall or shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction or the assumption by the Survivors' Trust of all liability with respect to the Abuse Claims.

**13.13.3.** *Bankruptcy Rule 3016 Compliance.* The Debtor's compliance with the requirements of Bankruptcy Rule 3016 shall not constitute or be deemed to constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**13.13.4.** *No Duplicative Recovery.* In no event shall any Holder of an Abuse Claim be entitled to receive any payment, reimbursement, or restitution from any Released Party under any theory of liability for the same loss, damage, or other Abuse Claim that is reimbursed by the Survivors' Trust or is otherwise based on the same events, facts, matters, or circumstances that gave rise to the applicable Abuse Claim. This provision does not prohibit the Survivors' Trust from pursuing recovery from Non-Settling Insurers for coverage of an Abuse Claim for which the Holder of such Abuse Claim has received a recovery from the Survivors' Trust.

**13.14.** *Effect of Channeling Injunction.* The Channeling Injunction is an integral part of this Plan and is essential to this Plan's consummation and implementation. It is intended that the channeling of the Channeled Claims as provided in Section 13.12 of the Plan shall inure to the benefit of the Released Parties

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 80 of 93

and the Settling Insurers. In any action to enforce the injunctive provisions of Section 13.12 of the Plan against a Holder of a Claim whereby it is held by a Final Order that such Holder willfully violated the terms of Section 13.12 of the Plan, the moving party may seek an award of costs including reasonable attorneys' fees against such Holder, and such other legal or equitable remedies as are just and proper, after notice and a hearing. The Channeling Injunction does not bar claims against any Non-Settling Insurer except to the extent a Non-Settling Insurer becomes a Settling Insurer.

## ARTICLE XIV
## MODIFICATION

### 14.1. *Modification of the Plan.*

14.1.1. To the fullest extent permitted under Section 1127 of the Bankruptcy Code, the Plan may be altered, amended or modified by the Debtor (or Reorganized Debtor as appropriate) at any time prior to its substantial consummation.

14.1.2. In the event of any modification, alteration or amendment on or before Confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Court finds that the modification, alteration or amendment materially and adversely affects the rights of parties in interest which have cast said votes.

### 14.2. *Correction of Defects.* Following the Effective Date, the Reorganized Debtor may initiate a proceeding or motion in the Court in order to remedy any defects or omissions, or to reconcile any inconsistencies, in the Plan or the Confirmation Order, upon notice of such proceedings or motion served on all parties listed in the Post-Confirmation Notice List and any other parties who may be materially and adversely affected.

### 14.3. *Savings Clause.* Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

### 14.4. *Remedy of Defects.* After the Effective Date, the Reorganized Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Holders of Claims, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order

in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtor.

**ARTICLE XV**
**RETENTION OF JURISDICTION**

**15.1.    *Scope of the Bankruptcy Court's Retained Jurisdiction.***    The Bankruptcy Court shall retain and have jurisdiction over the Chapter 11 Case for all purposes provided by the Bankruptcy Code, including for the following purposes:

15.1.1. To hear and determine motions for the assumption or rejection of Executory Contracts or Unexpired Leases, if any are pending on the Effective Date and not otherwise determined by Confirmation, and the allowance of Claims resulting therefrom.

15.1.2. To grant full and complete relief upon the request of the Reorganized Debtor.

15.1.3. To determine any and all objections to the allowance of Claims and to allow, disallow, estimate, liquidate or determine any Claim.

15.1.4. To determine any and all applications for compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan which accrued on or prior to the Confirmation Date.

15.1.5. To determine any and all applications, adversary proceedings and contested or litigated matters (a) that may be pending on the Effective Date, except as provided in the Confirmation Order; or (b) which shall be commenced on or after the Effective Date and be properly before the Bankruptcy Court.

15.1.6. To consider any modifications of the Plan, any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code.

15.1.7. To implement the provisions of the Plan and to issue orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code.

15.1.8. To resolve any disputes and otherwise hear such additional matters brought by the Survivors' Trustee or otherwise related to the Survivors' Trust Assets or to the fulfillment of the Survivors' Trustee's duties pursuant to the Plan and the Survivors' Trust Documents.

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 82 of 93

15.1.9. To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan.

15.1.10.    To enter a Final Decree and orders reopening the Chapter 11 Case as appropriate after entry of a Final Decree, *provided that* the Bankruptcy Court shall retain jurisdiction to enter an order terminating the Survivors' Trust and discharging the Survivors' Trustee in accordance with the terms of the Survivors' Trust, notwithstanding the issuance of the Final Decree and closing of the Chapter 11 Case and without the necessity of reopening the Chapter 11 Case.

15.1.11.    To hear any other matter consistent with the Bankruptcy Code.

**15.2.    Failure of Bankruptcy Court to Exercise Jurisdiction.**  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including matters set forth in this Article XV, such lack of jurisdiction will not diminish, control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

**16.1.    Enforcement.**  The Reorganized Debtor may take such actions, including the initiation of proceedings or the prosecution of a motion, as may be reasonably necessary in order to interpret or enforce the purposes and intent of the Plan.

16.1.1. *Forum for Enforcement*. Subject to the retained jurisdiction of the Bankruptcy Court, any motion or proceeding to enforce the Plan may be brought before the Bankruptcy Court or any other court of competent jurisdiction.

16.1.2. *Expenses of Enforcement*.  In the event that any action, motion, contested matter, complaint, answer, counterclaim, cross-claim or other action is filed or taken by the Reorganized Debtor either in the Bankruptcy Court or otherwise, in order to enforce or interpret any terms of the Plan or the Confirmation Order, or any order or agreement made in implementation of the Plan, the prevailing party in such matter (as determined by a court of competent jurisdiction) shall be entitled to recover from any opposing party its expenses, including reasonable attorneys' fees and costs, incurred in such matter.

Case: 23-40523    Doc# 1444    Filed: 11/08/24    Entered: 11/08/24 18:26:01    Page 83 of 93

**16.2.  Exemption from Certain Transfer Taxes and Recording Fees.**  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax.  The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

**16.3.  Effectuating Documents.**  The Debtor or the Reorganized Debtor, as the case may be, is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate, and further evidence the terms and conditions of the Plan and any notes or interests issued pursuant to the Plan.

**16.4.  Governing Law.**  Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and the Bankruptcy Rules, the laws of the State of California (without reference to its conflict of law rules) will govern the construction and implementation of the Plan and any agreement, documents, and instruments executed in connection with the Plan unless otherwise specifically provided in such agreements, documents, or instruments.

**16.5.  Integration.**  The provisions of this Plan and the Confirmation Order shall supersede any and all prior agreements, documents, understandings, written or otherwise, in respect of any Claim, and the treatment or satisfaction thereof, except as provided in any order of the Court.  All such prior agreements, documents or understandings are merged herein, and no Person may thereafter pursue or prosecute any Claim or demand arising out of or pertaining to such superseded agreements, documents or understandings as against the Debtor or Reorganized Debtor.

**16.6.  Inconsistency.**  In the event of any inconsistency between the Plan and any Exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, including the

Case: 23-40523   Doc# 1444   Filed: 11/08/24   Entered: 11/08/24 18:26:01   Page 84 of 93

Survivors' Trust Documents, the Plan shall govern. In the event of any inconsistency between the Plan or any other document and the Confirmation Order, the Confirmation Order shall govern.

**16.7. _Section Headings._** Headings are used in the Plan for convenience and reference only and shall not affect in any way the meaning or interpretation of the Plan or constitute a part of the Plan for any other purpose.

**16.8. _Severability._** If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**ARTICLE XVII**
**REQUEST FOR CONFIRMATION**

**17.1. _Confirmation Pursuant to § 1129(b)._** If necessary, the Debtor requests Confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

[signature on the next page]

PLAN OF REORGANIZATION, Dated November 8, 2024

DATED: November 8, 2024

**THE ROMAN CATHOLIC BISHOP OF OAKLAND**

By: _/s/ Attila Bardos_
Attila Bardos
Chief Financial Officer

Presented by:
**FOLEY & LARDNER LLP**
Thomas F. Carlucci
Shane J. Moses
Ann Marie Uetz
Matthew D. Lee
Mark C. Moore

_/s/Shane J. Moses_
Shane J. Moses

_Counsel for the Debtor_
_and Debtor in Possession_

Schedule 1.1.20

Legal Description of Cathedral Property Parcel

# LEGAL DESCRIPTION OF LAND - CATHEDRAL

Real property in the City of Oakland, County of Alameda, State of California, described as follows:

Parcel 2, Parcel Map 6031, filed March 4, 1991 in Book 196, Pages 41 and 42 of Maps, Alameda County Records.

APN: 008 -0653-024

Schedule 1.1.27

Schedule of Churches

# Church Listing

| Church Names | City |
| --- | --- |
| HOLY SPIRIT/NEWMAN HALL CHURCH | BERKELEY |
| ST. MARY MAGDALEN CHURCH | BERKELEY |
| CATHEDRAL OF CHRIST THE LIGHT | OAKLAND |
| ST. THERESA CHURCH | OAKLAND |
| ST. PATRICK MISSION | CROCKETT |
| ST. BARNABAS CHURCH | ALAMEDA |
| ST. JOSEPH BASILICA | ALAMEDA |
| ST. AMBROSE CHURCH | BERKELEY |
| OUR LADY OF GRACE CHURCH | CASTRO VALLEY |
| TRANSFIGURATION CHURCH | CASTRO VALLEY |
| ST. RAYMOND PENAFORT CHURCH | DUBLIN |
| CORPUS CHRISTI CHURCH | FREMONT |
| HOLY SPIRIT CHURCH | FREMONT |
| ST. JAMES THE APOSTLE CHURCH | FREMONT |
| ST. JOSEPH CHURCH | FREMONT |
| OUR LADY OF GUADALUPE CHURCH | FREMONT |
| ALL SAINTS CHURCH | HAYWARD |
| ST. BEDE CHURCH | HAYWARD |
| ST. CLEMENT CHURCH | HAYWARD |
| ST. JOACHIM CHURCH | HAYWARD |
| ST. CHARLES BORROMEO CHURCH | LIVERMORE |
| ST. MICHAEL CHURCH | LIVERMORE |
| ST. EDWARD CHURCH | NEWARK |
| ST. AUGUSTINE CHURCH | OAKLAND |
| ST. BENEDICT CHURCH | OAKLAND |
| ST. BERNARD CHURCH | OAKLAND |
| ST. ELIZABETH CHURCH | OAKLAND |
| ST. LEO THE GREAT CHURCH | OAKLAND |
| OUR LADY OF LOURDES CHURCH | OAKLAND |
| ST. MARGARET MARY CHURCH | OAKLAND |
| ST. PATRICK CHURCH | OAKLAND |
| SACRED HEART CHURCH | OAKLAND |
| CORPUS CHRISTI CHURCH | PIEDMONT |
| CATHOLIC COMMUNITYofPLEASANTON | PLEASANTON |
| CHURCH OF THE ASSUMPTION | SAN LEANDRO |
| OUR LADY OF GOOD COUNSEL | SAN LEANDRO |
| ST. FELICITAS CHURCH | SAN LEANDRO |
| ST. LEANDER CHURCH | SAN LEANDRO |
| ST. JOHN THE BAPTIST CHURCH | SAN LORENZO |
| OUR LADY OF THE ROSARY CHURCH | UNION CITY |
| ST. ANNE CHURCH | UNION CITY |
| ST. IGNATIUS OF ANTIOCH CHURCH | ANTIOCH |
| IMMACULATE HEARTofMARY CHURCH | BRENTWOOD |
| ST. AGNES CHURCH | CONCORD |
| ST. BONAVENTURE CHURCH | CONCORD |
| ST. FRANCIS OF ASSISI CHURCH | CONCORD |

# Church Listing

| Church Names | City |
|---|---|
| QUEEN OF ALL SAINTS CHURCH | CONCORD |
| ST. ROSE OF LIMA CHURCH | CROCKETT |
| ST. ISIDORE CHURCH | DANVILLE |
| ST. JEROME CHURCH | EL CERRITO |
| ST. JOHN THE BAPTIST CHURCH | EL CERRITO |
| ST. CALLISTUS CHURCH | EL SOBRANTE |
| ST. PERPETUA CHURCH | LAFAYETTE |
| ST. CATHERINE OF SIENA CHURCH | MARTINEZ |
| ST. MONICA CHURCH | MORAGA |
| ST. ANTHONY CHURCH | OAKLEY |
| SANTA MARIA CHURCH | ORINDA |
| ST. JOSEPH CHURCH | PINOLE |
| CHURCH OF THE GOOD SHEPHERD | PITTSBURG |
| OUR LADY QUEEN OF THE WORLD | BAY POINT |
| ST. PETER MARTYR CHURCH | PITTSBURG |
| CHRIST THE KING CHURCH/ST. STEPHEN CHURCH | PLEASANT HILL/WALNUT CREEK |
| OUR LADY OF MERCY CHURCH | POINT RICHMOND |
| ST. CORNELIUS CHURCH | RICHMOND |
| ST. DAVID OF WALES CHURCH | RICHMOND |
| ST. PATRICK CHURCH | RODEO |
| ST. JOAN OF ARC CHURCH | SAN RAMON |
| ST. ANNE CHURCH | WALNUT CREEK |
| ST. JOHN VIANNEY CHURCH | WALNUT CREEK |
| ST. MARY CHURCH | WALNUT CREEK |
| DIVINE MERCY CHURCH | OAKLAND DIVIMERCC |
| ST. MARK CHURCH | RICHMOND |
| ST. ANTHONY | MARY HELP OF CHRISTIANS |
| ST. COLUMBA CHURCH | OAKLAND |
| ST. JARLATH CHURCH | OAKLAND |
| ST. LOUIS BERTRAND | OAKLAND |
| MOST HOLY ROSARY CHURCH | ANTIOCH |
| ST. JOSEPH THE WORKER CHURCH | BERKELEY |
| ST. ANNE CHURCH | BYRON |
| ST. PAUL CHURCH | SAN PABLO |
| ST. PHILIP NERI | ST. ALBERT THE GREAT CHURCH ALAMEDA |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Schedule 1.1.71

Legal Description of Livermore Property

## LEGAL DESCRIPTION LIVERMORE PROPERTY

REAL Property in the Unincorporated Area, County of Alameda, State of California, described as follows:

Commencing at [h• Southeasterly comer of that certain 0.157 of an acre parcel of land described in the deed to the State of California recorded September 30, 1952 in Volume 6837, Page 111, Official Records of Ala da County; thence North 2° 26' 15" East, 10.11 feet to the Northerly line of said parcel; thence along said Northerly line South 83° 57' 10" west, 684.28 feet; thence South 1° 31' 50" East, 40.12 feet;;hence North 83° 57' 10" East, 583.02 feet; thence along a tangent curve to the right with a radius of 0 feet, through an angle of 61° 36' 54" an arc distance of 53,77 feet to the Westerly line of that cert in 0.047 of an acre, parcel of land conveyed to the State of California by deed recorded June I,,1953 in Volume 7043, Page 61, Official Records of Alameda County; thence along said Westerly South 2° 26' 15" West, 212.44 feet; thence South 86° 42' 45" East, 25.00 feet; thence South 3° 17' 15" West, 43.00 feet to a point distant North 3° 17' 15" East, 237.00 feet from Engineer's Stati4n 690 + 70.00 on the "A4" line of the Department of Public Works' survey for the State freeway, in Alameda County, road IV-Ala-5-F; thence South 86° 42' 45" East, 15.64 feet; thence North 2° 26' 15' East, 318.86 feet; thence North 83° 57' 10" East, IO. I 1 feet to the to the point of commencement,

As described in the Relinquishment of State Highway in the County of Alameda recorded June 10, 1956, Book 806(, Page 455, and being a portion of Las Colinas Road.

FIRST AMERICAN TITLE