# **Exhibit 1**

In re: THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole

Debtor(s)

Bankruptcy No.: 23-40523 WJL
R.S. No.:
Hearing Date: 12/18/2024
Time: 10:30 am

## Relief From Stay Cover Sheet

Instructions: Complete caption and Section A for all motions.  Complete Section B for mobile homes, motor vehicles, and personal property. Complete Section C for real property.  Utilize Section C as necessary.  If moving party is not a secured creditor, briefly summarize the nature of the motion in Section D.

(A)  Date Petition Filed: 05/08/2023  Chapter: 11

Prior hearings on this obligation: None  Last Day to File §523/§727 Complaints: _____

(B)  Description of personal property collateral (e.g. 1983 Ford Taurus):

Secured Creditor [   ] or lessor [   ]

| | | |
|---|---|---|
| Fair market value: $_____ | Source of value: _____ | |
| Contract Balance: $_____ | Pre-Petition Default: $_____ | |
| Monthly Payment: $_____ | No. of months: _____ | |
| Insurance Advance: $_____ | Post-Petition Default: $_____ | |
| | No. of months: _____ | |

(C)  Description of real property collateral (e.g. Single family residence, Oakland, CA):

Fair market value: $_____  Source of value: _____  If appraisal, date: _____

Moving Party's position (first trust deed, second, abstract, etc.):

| | |
|---|---|
| Approx. Bal. $_____ | Pre-Petition Default: $_____ |
| As of (date): _____ | No. of months: _____ |
| Mo. payment: $_____ | Post-Petition Default: $_____ |
| Notice of Default (date): _____ | No. of months: _____ |
| Notice of Trustee's Sale: _____ | Advances Senior Liens: $_____ |

Specify name and status of other liens and encumbrances, if known (e.g. trust deeds, tax liens, etc.):

| Position | Amount | Mo. Payment | Defaults |
|---|---|---|---|
| 1st Trust Deed: _____ | $_____ | $_____ | $_____ |
| 2nd Trust Deed: _____ | $_____ | $_____ | $_____ |
| _____ : | | | |
| _____ : | | | |
| _____ : | | | |
| (Total) | $_____ | $_____ | $_____ |

(D)  Other pertinent information: The Official Committee of Unsecured Creditors seeks entry of an order authorizing the Superior Court of the State of California, County of Alameda to release six cases  commenced by survivors of sexual abuse against the Debtor for trial by jury solely for purposes of liquidation, not collection against the Debtor.

Dated: 11/20/2024

_____
Signature

Gabrielle L. Albert
Print or Type Name

Attorney for Official Committee of Unsecured Creditors

**LOWENSTEIN SANDLER LLP**
JEFFREY D. PROL (*pro hac vice*)
jprol@lowenstein.com
BRENT WEISENBERG (*pro hac vice*)
bweisenberg@lowenstein.com
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
tkeller@kbkllp.com
JANE KIM (Cal. Bar No. 298192)
jkim@kbkllp.com
GABRIELLE L. ALBERT (Cal. Bar No. 190895)
galbert@kbkllp.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 496-6723

**BURNS BAIR LLP**
TIMOTHY W. BURNS (*pro hac vice*)
tburns@burnsbair.com
JESSE J. BAIR (*pro hac vice*)
jbair@burnsbair.com
10 East Doty Street, Suite 600
Madison, Wisconsin 53703-3392
Telephone: (608) 286-2808

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| *In re*:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br>Debtor. | Case No. 23-40523 WJL<br><br>Chapter 11<br><br>**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO LIFT THE AUTOMATIC STAY TO PERMIT CERTAIN PLAINTIFFS' PERSONAL INJURY CLAIMS TO PROCEED IN STATE COURT**<br><br>Judge: Hon. William J. Lafferty<br><br>Date: December 18, 2024<br>Time: 10:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>1300 Clay Street, Courtroom 220<br>Oakland, CA 94612 |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......................................................................................... 1

JURISDICTION AND VENUE ..................................................................................... 4

BACKGROUND ........................................................................................................... 5

    A.    The Catholic Church's Asset Shielding Scheme .................................... 5

    B.    The State Court Actions .......................................................................... 5

    C.    The Chapter 11 Case ............................................................................... 8

    D.    The Insurance Coverage Litigation......................................................... 8

    E.    Mediation Sessions ................................................................................. 9

    F.    The Diocese Plan and Disclosure Statement .......................................... 9

CAUSE EXISTS TO GRANT RELIEF FROM THE AUTOMATIC STAY SO THAT
THE CLAIMS OF SIX SURVIVOR PLAINTIFFS MAY BE LIQUIDATED BY
THE STATE COURT............................................................................................. 11

    A.    Whether the Relief Will Result in a Partial or Complete Resolution of the
Issues ..................................................................................................... 12

    B.    The Lack of Any Connection or Interference with the Bankruptcy Case............ 16

    C.    Whether a Specialized Tribunal Has Been Established to Hear the
Particular Cause of Action and Whether That Tribunal Has the Expertise
to Hear Such Cases ................................................................................ 17

    D.    Whether the Debtor's Insurance Carrier Has Assumed Full Financial
Responsibility for Defending the Litigation .......................................... 18

    E.    Whether the Litigation in Another Forum Would Prejudice the Interests of
Other Creditors, the Creditors Committee and Other Interested Parties .............. 21

    F.    The Interests of Judicial Economy and the Expeditious and Economical
Determination of Litigation for the Parties ............................................ 21

    G.    Whether the Foreign Proceedings Have Progressed to the Point Where the
Parties Are Prepared for Trial ............................................................... 22

    H.    The Impact of the Stay and the "Balance of Hurt" ............................... 23

THE AUTOMATIC STAY DOES NOT APPLY TO ANY NON-DEBTOR ENTITY,
INCLUDING  THE DEFENDANT SCHOOLS .................................................... 24

NOTICE.................................................................................................................. 26

# TABLE OF AUTHORITIES

## CASES

*Advanced Ribbons and Off. Prods., Inc. v. U.S. Interstate Distrib., Inc. (In re Advanced Ribbons and Off. Prods., Inc.)*
    *125 B.R. 259 (B.A.P. 9th Cir. 1991)* ............................................................................... 30

*Ashcroft v. Free Speech Coal.*
    *535 U.S. 234 (2002)* ...................................................................................................... 28

*Chugach Timber Corp. v. N. Stevedoring & Handling Corp. (In re Chugach Forest Prods., Inc.)*
    *23 F.3d 241 (9th Cir. 1994)* ......................................................................................... 30

*Doe v. Franciscan Friars of Cal., Inc. (In re The Clergy Cases I)*
    *116 Cal. Rptr. 3d 360 (Cal. Ct. App. 2010)* ............................................................... 28

*Garedakis v. Brentwood Union Sch. Dist.*
    *No. 14-cv-04799, 2015 U.S. Dist. LEXIS 54979 (N.D. Cal. Apr. 27, 2015)* ............. 28

*In re Advanced Med. Spa Inc.*
    *2016 WL 6958130* ......................................................................................................... 27

*In re Aquarius Disk Servs., Inc.*
    *254 B.R. 253 (Bankr. N.D. Cal. 2000)* ....................................................................... 25

*In re Archbishop of Agaña*
    *No. 19-00010 (D. Guam 2019)* ...................................................................................... 6

*In re Castlerock Props.*
    *781 F.2d 159 (9th Cir. 1986)* ....................................................................................... 21

*In re Curtis*
    *40 B.R.795 (Bankr. D. Utah 1984)* ..................................................................... 13, 27

*In re Glunk*
    *342 B.R. 717 (Bankr. E.D. Pa. 2006)* ......................................................................... 22

*In re Korean W. Presbyterian Church of Los Angeles*
    *618 B.R. 282 (Bankr. C.D. Cal. 2020)* ....................................................................... 25

*In re Mariner Health Cent. Inc.*
    *2023 WL 187175 (Bankr. N.D. Cal. Jan. 12, 2023)* ............................................. 30, 31

*In re N. Cal. Clergy Cases*
    *JCCP 5108 (Cal. Super. Ct., Apr. 24, 2024)* ................................................................ 9

*In re Northern California Clergy Cases*
    *5108 (Sup. Ct. Ca. Apr. 24, 2024)* .............................................................................. 29

In re PG&E Corp.
2019 WL 3889247 (Bankr. N.D. Cal. Aug. 16, 2019) ........................................... passim

*In re Plumberex Specialty Prods., Inc.*
    *311 B.R. 551 (Bankr. C.D. Cal. 2004)* ....................................................................... 27

*In re Project Orange Assocs., LLC*
  432 B.R. 89 (Bankr. S.D.N.Y. 2010) ............................................................. 20

*In re Rabin*
  53 B.R. 529 (Bankr. D.N.J. 1985) ................................................................. 26

*In re Roman Cath. Church of the Archdiocese of Santa Fe*
  No. 18-13027 (Bankr. D.N.M. 2018) .............................................................. 6

*In re Roman Cath. Diocese of Harrisburg*
  No. 20-00599 (Bankr. M.D. Pa. 2020) ........................................................... 6

*In re Roman Catholic Archbishop of Portland*
  338 B.R. 414 (Bankr. D. Or. 2006) ......................................................... 15, 18

*In re Santa Clara Cnty. Fair Ass'n, Inc.,*
  180 B.R. 564 (B.A.P. 9th Cir. 1995) ............................................................. 26

*In re The Archdiocese of Saint Paul and Minneapolis*
  No. 15-30125 (Bankr. D. Minn. 2015) ............................................................ 5

*In re The Roman Cath. Bishop of San Diego*
  374 B.R. ....................................................................................................... 18

*In re The Roman Cath. Diocese of Rockville Ctr.*
  No. 20-12345 (Bankr. S.D.N.Y. Nov. 1, 2024) ............................................ 16

*In re The Roman Catholic Bishop of San Diego*
  374 B.R. 756 (Bankr. S.D. Cal. 2007) ..................................................... 16, 22

*In re The Roman Catholic Diocese of Rockville Centre*
  No. 20-12345 (Bankr. S.D.N.Y. 2020) .......................................................... 15

*In re Tucson Ests., Inc.*
  912 F.2d 1162 (9th Cir. 1990) ................................................. 12, 19, 21, 27

*Johansen v. Cal. State Auto. Ass'n Inter-Ins. Bureau,*
  538 P.2d 744, 748–49 (Cal. 1975) .................................................................. 4

*Kayle v. Lake Balboa Health Care, Inc.*
  No. LA CV15-01629, 2015 U.S. Dist. LEXIS 63629 (C.D. Cal. May 14, 2015) ...... 20

*Kronemyer v. Am. Contractors Indemn. Co. (In re Kronemyer)*
  405 B.R. 915 (B.A.P. 9th Cir. 2009) ............................................................. 13

*Lapierre v. Advanced Med. Spa Inc. (In re Advanced Med. Spa Inc.)*
  WL 6958130 (B.A.P. 9th Cir. Nov. 28, 2016) ............................................... 22

*New Life Ctr., Inc. v. Fessio*
  2000 WL 1157800 (4th Cir. Aug. 16, 2000) ................................................. 28

*Off. Comm. of Unsecured Creditors v. Hancock Park Cap. II, L.P. (In re Fitness Holdings Int'l, Inc.)*
  714 F.3d 1141, 1146 (9th Cir. 2013) ............................................................ 16

*Pruyn v. Agric. Ins.*
  42 Cal. Rptr. 2d 295 (Cal. Ct. App. 1995) ................................................... 23

*Ripon Self Storage, LLC v. Exch. Bank (In re Ripon Self Storage, LLC)*
    *2011 WL 3300087 (B.A.P. 9th Cir. Apr. 1, 2011)* .................................................................. 30

*Roman Cath. Diocese of Rockville Ctr. v. ARK 320 DOE (In re The Roman Cath. Diocese of Rockville Ctr.*
    *Ch. 11 Case No. 20-12345, Adv. No. 20-01226 (Bankr. S.D.N.Y. June 9, 2023)* ................. 15

*Russell v. Andersen*
    *226 P.2d 350 (Cal. Dist. Ct. App. 1951)* ...................................................................... 21

*Santa Clara Cnty. Fair Ass'n, Inc. v. Sanders (In re Santa Clara Cnty. Fair Ass'n, Inc.)*
    *180 B.R. 564 (B.A.P. 9th Cir. 1995)* ........................................................................... 24

*The Roman Cath. Bishop of Oakland v. Am. Home Assurance Co. (In re The Roman Catholic Bishop of Oakland)*
    *Ch. 11 Case No. 23-40523, Adv. No. 23-04037 (Bankr. N.D. Cal. Aug. 30, 2023)* ............... 10

*The Roman Cath. Bishop of Oakland v. Pacific Indem. (In re The Roman Catholic Bishop of Oakland)*
    *Ch. 11 Case No. 23-40523, Adv. No. 23-04028 (Bankr. N.D. Cal. June 22, 2023)* ................. 9

*Truebro Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*
    *311 B.R. 551 (Bankr. C.D. Cal. 2004)* ........................................................................ 14

## **STATUTES**

11 U.S.C. § 105(a) ........................................................................................................ 1, 4, 25

11 U.S.C. § 1107(a) ............................................................................................................... 8

11 U.S.C. § 1108 .................................................................................................................... 8

11 U.S.C. § 362(a) ........................................................................................................... 1, 25

11 U.S.C. § 362(a)(1) ........................................................................................................... 25

11 U.S.C. § 362(d) ............................................................................................................. 1, 4

11 U.S.C. § 362(d)(1) ............................................................................................... 11, 12, 22

28 U.S.C. § 1334 .................................................................................................................... 4

28 U.S.C. § 1408 .................................................................................................................... 4

28 U.S.C. § 1409 .................................................................................................................... 4

28 U.S.C. § 157 ...................................................................................................................... 4

28 U.S.C. § 157(b)(2)(B) ...................................................................................................... 17

28 U.S.C. § 157(b)(2)(G) ........................................................................................................ 4

28 U.S.C. § 157(b)(5) ........................................................................................................... 17

Cal. Code Civ. Proc. § 340.1 ................................................................................................. 5

Cal. Code Civ. Proc. § 404 .................................................................................................... 6

Cal. Ins. Code § 11580 ...................................................................................... 19

## OTHER AUTHORITIES

California Assembly Bill No. 218 ......................................................................... 6

H.R. REP. NO. 95-595, at 341 (1977) ........................................................... 13, 21

MANUAL FOR COMPLEX LITIGATION (FOURTH)
    § 20.132 (2004) ........................................................................................... 18

*New Appleman on Insurance Law Library Edition*
    § 150.08[1] .................................................................................................. 17

## RULES

B.L.R. 2002 ...................................................................................................... 26

## PUBLICATIONS

*"Otherwise Consistent": A Due Process Framework for Mass-Tort Bankruptcies*
    98 N.Y.U. L. REV. 1696, 1748 (2023) ......................................................... 13

*Catholic Church Shields $2 Billion in Assets to Limit Abuse Payouts*, BLOOMBERG (Jan. 8, 2020,
    5:00 AM) ........................................................................................................ 5

*Due Process Alignment in Mass Restructurings*
    91 FORDHAM L. REV. 325, 357–58 (2022) ................................................. 13

The Official Committee of Unsecured Creditors (the "**Committee**") of The Roman Catholic Bishop of Oakland (the "**Debtor**" or the "**Diocese**") files this motion (this "**Motion**"), under sections 362(d) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order, substantially in the form attached as **Exhibit A** (the "**Proposed Order**"), authorizing the Superior Court of the State of California, County of Alameda (the "**State Court**") overseeing the "Northern California Clergy Cases," being administered under Judicial Council Coordination Proceeding (JCCP 5108) (the "**Coordinated Proceedings**"), to release six cases (the selected cases are defined as the "**State Court Actions**") commenced by survivors of sexual abuse ("**Survivors**") against the Debtor for trial by jury, *solely for purposes of liquidation, not collection against the Debtor*, in accordance with the orders issued, and procedures used, by the State Court before this chapter 11 case (the "**Chapter 11 Case**") was filed.

Along with the foregoing relief, the Committee seeks confirmation that the automatic stay imposed by section 362(a) does not stay State Court actions commenced by Survivors against any non-Debtor affiliate, including The Roman Catholic Welfare Corporation of Oakland ("**RCWC**") and the 32 elementary schools and two high schools that it operates (the "**Defendant Schools**"), religious orders, individual perpetrators, and other non-Debtors where the Diocese is named as a co-defendant.

In support of this Motion, the Committee states:

## PRELIMINARY STATEMENT

After nearly nine months of mediation, the Debtor filed *The Debtor's Plan of Reorganization* (the "**Diocese Plan**") without the Committee's support. By doing so, the Debtor not only elected litigation over compromise, but ignored the approximately 20 prior diocesan bankruptcy cases, none of which ended in cramdown of a plan over survivors' objections.[1] Tellingly, the two other diocesan debtors that solicited votes for their plans without the survivor

---

[1]     There are about 20 pending diocesan bankruptcy cases. This Chapter 11 Case is the only one where a debtor is seeking to cramdown its plan on survivors. While the Archbishop of New Orleans filed a plan of reorganization without the committee's support, the committee filed its own plan, and the court has since retained an expert to facilitate resolution of the case. *See In re The Roman Cath. Church for the Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La. May 16, 2024), Dkt. Nos. 3382, 3384, 3385, 3308.

committee's support failed to receive the necessary votes to confirm their plans. The votes were not close and that should come as no surprise: a tortfeasor does not get to unilaterally determine what constitutes fair and equitable compensation for its tort victims, here, the children the Diocese was entrusted to protect but failed to.

A gating issue preventing the Debtor and the Committee from reaching agreement on the terms of a consensual Plan of Reorganization is the value of Survivors' claims. In its Disclosure Statement, the Debtor values Survivors' claims at approximately $98 million, without submitting an expert report or any evidence to support its conclusion. If the Committee were to accept the Debtor's assertion that there are 320 Survivors' claims that will ultimately be entitled to distribution (the number is actually 375 or so), the Debtor would have this Court accept that an average payment of $306,250 per Survivor is fair and equitable for the childhood rape and sodomy Survivors endured. Yet the average payment this Diocese made to Survivors to settle claims asserted during a prior opening of the statute of limitations in the early 2000s was $1.1 million per claim (and $1.7 million after adjusting for inflation).[2] In any event, the Committee vigorously disagrees with the Debtor's conclusion, which is unsupported by analysis or evidence.

To help the parties gain clarity on the value of Survivor claims, to unlock the liability insurance assets, and to set this case on a path towards resolution, the Committee requests that this Court lift the automatic stay so that six cases pending against the Diocese may proceed to trial by jury, *solely for purposes of liquidation and not collection against the Debtor*. Similar motions filed by official committees in diocesan bankruptcy cases have received opposition because, among other things, the committees in those cases sought authority to select the cases that would proceed to trial. To avoid that dispute, the Committee proposes that if stay relief is granted, the State Court will select the cases that will proceed to trial just as it did prior to the filing of this Chapter 11 Case. There is already an order entered in the Coordination Proceedings setting forth the criteria and selection process for bellwether trials and several rounds of trials were contemplated before this Chapter 11 Case began, some of which included the Diocese as

---

[2] Of course, the Debtor fails to mention in its Disclosure Statement the $650,000 average per survivor recovery in the recently announced Los Angeles Archdiocese settlement.

defendant. Thus, the Committee does not seek to cherry-pick the cases that move to trial. Rather, the process of releasing the State Court Actions for trial will be left to the system used, and orders entered, in the State Court.

Lifting the automatic stay to permit State Court Actions to proceed will inform the Debtor and the Committee of actual claim values adjudicated in the state court system and, in turn, will better inform the parties of the amount of tort liability the Debtor owes, which will facilitate negotiations. Indeed, where the threat of looming trial does not exist, progress in diocesan cases has slowed to a halt.[3] Allowing the State Court Actions to proceed will dramatically expedite resolution of Survivor claim values, all while the Debtor and Committee will try to resolve, or ask this Court to resolve, their disputes over the extent and value of the assets of the estate.

Although the automatic stay exists to protects the Debtor and its estate only, the Insurers will oppose this Motion.[4] That is no surprise: the Insurers prefer and enjoy the benefits bankruptcy provides in resolving mass tort like claims. While the Debtor commenced a declaratory judgment action to facilitate resolution of its many disputes with the Insurers, just before this Motion was filed, the Debtor was trying to establish whether its *fifth* amended complaint could survive a motion to dismiss.[5] In other words, nearly a year and a half after the action was started, the parties are no closer to resolution. Meanwhile, well over a million dollars of estate funds was spent and the Insurers continue to enjoy a bankruptcy holiday where they do not have to defend or pay Survivor claims because they choose to lie in wait while the Debtor and the Committee battle. At the same time, Insurers benefit from the fact that Survivors continue to pass away, often much too young and often as a result of the trauma they have endured for decades stemming from the childhood sexual abuse the Diocese negligently failed to stop.

---

[3]    *See, e.g., In re The Diocese of Buffalo*, No. 20-10322 (Bankr. W.D.N.Y. 2020) (case pending for over 4 years without a confirmed plan); *In re The Roman Cath. Church of the Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La. 2020) (case pending for over 4 years without a confirmed plan).

[4]    "**Insurers**" is defined in **Exhibit B.**

[5]    On November 19, 2024, counsel for the Debtor informed counsel to the Committee and the Insurers that it would be filing a motion in the District Court requesting that the declaratory judgment action be stayed pending a decision on confirmation of the Diocese Plan. The motion was filed later that day. *See* District Court Insurance Case (defined below) [Dkt. No. 146].

The Debtor's inability to prosecute its case against the Insurers has impeded the path to global resolution because it has failed to force the Insurers to come to the table and negotiate fairly and in good faith. The Debtor has now chosen to abandon pursuit of hundreds of millions of dollars of insurance assets and make the monetization of this asset the Committee's problem. But monetization of the Debtor's insurance assets requires the immediate pursuit of judgments against the Debtor before the Insurers are likely to pay anywhere close to the amounts due. Accordingly, the Debtor itself should have moved to lift the automatic stay to allow for test cases to proceed to unlock the value of the insurance. In addition, the Debtor should have more aggressively pursued the insurance adversary proceeding, which has remained stalled for nearly 18 months because of the Debtor failing to properly plead a complaint that can survive a motion to dismiss.

Lifting the automatic stay will also help facilitate a resolution of the parties' disputes with the Insurers. Because lifting the automatic stay will put the Insurers at risk of state-law consequences of refusing to settle cases, it will no doubt move this Chapter 11 Case to resolution in a way the bankruptcy process cannot. This is particularly consequential in California because insurers here have no right to refuse a reasonable settlement demand based on coverage defenses, and are at risk of being held liable for amounts in excess of policy limits if they do not accept reasonable within-limits settlement demands. *See Johansen v. Cal. State Auto. Ass'n Inter-Ins. Bureau,* 538 P.2d 744, 748–49, 752 (Cal. 1975).

## JURISDICTION AND VENUE

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

Venue of this proceeding and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief requested herein are sections 105(a) and 362(d) of the Bankruptcy Code.

/ / /

/ / /

/ / /

# **BACKGROUND**

### A.     **The Catholic Church's Asset Shielding Scheme**

This Chapter 11 Case does not take place in a vacuum.  According to one investigative journalist, the Roman Catholic Church, through dioceses and archdioceses, uses bankruptcy to preserve its assets and minimize payments to survivors of childhood sex abuse in three ways.  Josh Saul, *Catholic Church Shields $2 Billion in Assets to Limit Abuse Payouts*, BLOOMBERG (Jan. 8, 2020, 5:00 AM),  https://www.bloomberg.com/news/features/2020-01-08/the-catholic-church-s-strategy-to-limit-payouts-to-abuse-victims.

*First*, Catholic dioceses reportedly "precede bankruptcy by transferring and reclassifying assets … to shrink the pot of money available to clergy abuse victims."  *Id.*  Not surprisingly, as set forth below, the Diocese took these actions.

*Second*, typically only the diocese or archdiocese files for bankruptcy protection.  As a result, its vast enterprise of purported non-debtor affiliates need not disclose their assets and liabilities.  But—just as this Diocese seeks to do in this Chapter 11 Case—the debtor seeks bankruptcy-equivalent relief for its schools, parishes and affiliates in the form of exculpation, third-party releases and a channeling injunction.  *See, e.g.*, *In re The Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Bankr. D. Minn. 2015); *In re Roman Cath. Church of the Archdiocese of Santa Fe*, No. 18-13027 (Bankr. D.N.M. 2018); *In re Archbishop of Agaña*, No. 19-00010 (D. Guam 2019); *In re Roman Cath. Diocese of Harrisburg*, No. 20-00599 (Bankr. M.D. Pa. 2020).

*Third*, dioceses use the bankruptcy system to tamp down the value of Survivor Claims to pay the minimum to Survivors while preserving as much of their assets as possible for the reorganized diocese.

### B.     **The State Court Actions**

On October 13, 2019, California Governor Gavin Newsom signed into law Assembly Bill No. 218 ("**AB 218**").  AB 218 amended California Code of Civil Procedure section 340.1. This amendment permitted certain individuals to file overwise time-barred suits for childhood sexual assault or abuse during a "look-back" window of January 1, 2020 through December 31, 2022.

All plaintiffs over the age of 40 years old at the time of filing were required to file with the court a certificate of merit executed by a licensed mental health practitioner who, through a review of the relevant facts of the case and an interview with the plaintiff, found a reasonable basis to believe that plaintiff had been subject to childhood sexual abuse.

Due to the high volume of childhood sexual abuse cases filed during the look-back window, the California Supreme Court created three separate coordination proceedings to consolidate the cases under three superior court judges.

Cases naming the Diocese and related entities as defendants were consolidated within Judicial Council Coordination Proceeding ("**JCCP**") 5108, handled by the complex department in the Superior Court of the County of Alameda.[6]

As of May 4, 2023, the week the Debtor petitioned for bankruptcy protection, Survivors had filed 332 lawsuits against the Debtor.

The purpose of the coordinated proceeding is to facilitate the efficient and fair handling and resolution of childhood sexual assault cases involving Catholic institutional defendants, where common questions of law and fact predominate in each of the actions and uniform rulings and management orders promote judicial economy and fairness to all parties (Cal. Code Civil Procedure section 404), *see Order Granting Petition to Coordinate* filed July 22, 2020. The Order is attached as Exhibit 1 to the declaration of Gabrielle L. Albert in support of this Motion, filed concurrently herewith (the "**Albert Dec.**"). There is a single Coordination Judge who has presided over all pre-trial matters for these cases. The Coordination Judge has issued uniform case management orders to govern the proceedings and has ruled on pre-trial motions.

On November 18, 2022, the State Court Coordination Trial Judge issued an *Order on Criteria for Bellwether Cases*. The November 18, 2022 order is attached as Exhibit 2 to the Albert Dec. The order indicates that six bellwether trials had been set and the State Court was "inclined to select cases for bellwether trials based on whether they will present legal or factual issues that are present in many of cases *or that will otherwise provide information that will permit the parties*

---

[6] JCCP 5108 is also referred to as *In re Northern California Clergy Cases*. The JCCP 5108 coordination judge oversees cases based on geography, which includes the Diocese of Oakland, Diocese of Monterey, Diocese of Fresno, Diocese of Santa Rosa, Diocese of Sacramento and the Archdiocese of San Francisco.

*to evaluate the value of other cases*." Emphasis added. Additionally, the State Court provided direction on the selection of criteria for cases that the parties propose for additional bellwether trials, and then requested certain information (and permitted counsel to identify additional information) that could be relevant to the selection of a second set of bellwether trials.

On December 5, 2022, the State Court entered an *Amended Case Management Conference Order*. The December 5, 2022 order is attached as Exhibit 3 to the Albert Dec. Through the order, the State Court set six bellwether cases for trial, with the first trial set to begin on April 17, 2023.

The State Court then approved the following criteria for further bellwether trials: (i) case name and number; (ii) the geographic location of the alleged assault, including the county of the alleged assault; (iii) the accused perpetrator's associated parish, school or local institution; (iv) the basis of alleged notice to the Institutional Defendant and whether prior notice will be an issue; (v) the number of claims and alleged victims of the accused perpetrator; (vi) the severity and type of alleged abuse; (vii) the frequency and duration of alleged abuse; (viii) the severity and nature of alleged emotional injury on plaintiff; (ix) the severity of alleged economic loss (therapy bills, inability to hold a job, etc.); (x) the plaintiff's age at the time of alleged abuse; (xii) the time period of the alleged abuse; (xiii) the particular institutional defendant(s) involved and whether any trials have previously been set against them. If so, how does that prior trial compare in criteria to the proposed new trial; and (xiv) whether the perpetrator was already the subject of discovery during Clergy III.[7]

The December 5, 2022 order also ordered plaintiffs' and defendants' liaison counsel to submit a list of any agreed bellwether trials, up to six, at least five court days before the next Case Management Conference. If the parties failed to agree, the State Court directed "each side [to] submit a list of up to six proposed bellwether trials that for each case states where it is ranked in that side's preference, a short summary argument (*e.g.*, 60 words) about why it is an appropriate bellwether case, and the information in the criteria list. The court can then pick the next six trials."

---

[7]     JCCP 4359, also known as The Clergy Cases III, was the coordination proceeding that oversaw similar cases during the previous look-back window in 2003.

On April 24, 2024, the State Court held a case management conference wherein it declined to weigh in on whether it would allow state court actions to proceed against non-debtor defendants where the Debtor was named as a co-defendant. Rather, the State Court stated plaintiffs' counsel would need to obtain clarification from this Court as to whether the state court actions are stayed. *See* Tr. of Case Management Conference at 33:2–16, *In re N. Cal. Clergy Cases*, JCCP 5108 (Cal. Super. Ct., Apr. 24, 2024), attached as Exhibit 4 to the Albert Dec.

### C. The Chapter 11 Case

Just before the first trial against the Diocese was to begin, wherein Committee Chairperson Steven Woodall was prepared to prosecute his case, the Debtor filed a voluntary petition for chapter 11 bankruptcy relief on May 8, 2023 (the "**Petition Date**"). The Debtor continues to operate its ministry and manage its properties as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 Case.

On May 23, 2023, the Office of the United States Trustee for Region 17 appointed the Committee.

### D. The Insurance Coverage Litigation

On June 22, 2023, the Debtor commenced an adversary proceeding, captioned *The Roman Cath. Bishop of Oakland v. Pacific Indem. (In re The Roman Catholic Bishop of Oakland)*, Ch. 11 Case No. 23-40523, Adv. No. 23-04028 (Bankr. N.D. Cal. June 22, 2023) (the "**Pacific Adversary**"), by filing a complaint for declaratory relief and breach of contract, seeking to liquidate the Debtor's claims against many of its historical insurers [Dkt. No. 2]. On August 30, 2023, the Debtor commenced an additional adversary proceeding, captioned *The Roman Cath. Bishop of Oakland v. Am. Home Assurance Co. (In re The Roman Catholic Bishop of Oakland)*, Ch. 11 Case No. 23-40523, Adv. No. 23-04037 (Bankr. N.D. Cal. Aug. 30, 2023), by filing a complaint seeking declaratory relief and alleging breach of contract against two additional insurers [Dkt. No. 1] (the "**American Home Adversary**" and, together with the Pacific Adversary, the "**Insurance Coverage Litigations**").

Reference of the Insurance Coverage Litigations has since been withdrawn from this Court and they are proceeding before Judge Corley in the United States District Court for the Northern

District of California under District Court Case Nos. 3:24-cv-00709-JSC and 3:24-cv-00711-JSC (the "**District Court Insurance Case**").

The Debtor failed to pursue the District Court Insurance Case with even a whiff of the aggression and urgency that the Debtor now shows in abandoning mediation and rushing to cramdown a plan on Survivors. After almost 18 months, the District Court Insurance Case is still not at issue because the Insurers have yet to answer the Debtor's most recent amended complaint, *its fifth*. On November 19, 2024, the Debtor threw in the towel by seeking a stay of the District Court Insurance Case pending Plan confirmation.

### E.     Mediation Sessions

This Court entered the *Order Referring Parties to Mediation, Appointing Mediators, and Granting Related Relief* [Dkt. No. 810] (as amended to add RCWC as a "Mediation Party," the "**Mediation Order**") on January 24, 2024.

The Committee and the Debtor each met individually with mediators Judge Christopher Sontchi (ret.) and since deceased, Jeffrey Krivis, exchanged initial proposals, and participated in mediation beginning on March 18 and 19, 2024. Additional in-person mediation sessions were held on April 15-16, May 13-14, and June 18-19, 2024. Counsel for the Debtor and Committee held virtual one-hour meetings approximately each week in July. Further in-person mediation sessions with the Debtor were held on August 13, September 10-11 and 30, October 1 and 16-17, 2024.

Mediation sessions with the Insurers, the Debtor and the Committee were held in-person on June 18-19 and October 22, 2024. A virtual mediation was held on October 31, 2024.

### F.     The Diocese Plan and Disclosure Statement[8]

On November 8, 2024, the Debtor filed the Diocese Plan and an accompanying Disclosure Statement (the "**Disclosure Statement**").

---

[8]     Capitalized terms not defined in this Section have the meaning ascribed to them in the Diocese Plan.

The Diocese Plan would create a Survivors' Trust to make distributions to holders of Class 4 and Class 5 Claims, which are the two Classes of Abuse Claims under the Diocese Plan. The Survivors' Trust would be funded with:

(i)     $103 million in cash contributed by the Debtor;

(ii)    a parcel of real estate (the "**Livermore Property**");[9]

(iii)   $14.25 million in cash (the "**RCWC Cash Contribution**") contributed by RCWC, which is a co-defendant with the Diocese in about 70 state court actions, subject to reduction if it does not receive consensual releases from all plaintiffs holding claims against it; and

(iv)   The rights and interests of the Debtor in the Non-Settling Insurer Policies.

The proposed Survivors' Trust funding would be made over 4 years on the following schedule:

(i)     On the Effective Date:

      (a) From the Debtor: $63 million in cash;

      (b)    From the Debtor (via non-debtor affiliate Adventus): the Livermore Property;

      (c)    From RCWC: $2 million in cash;

(ii)    On the first, second, third and fourth anniversary of the Effective Date: $10 million from the Debtor each year;

(iii)   On the first, second and third anniversary of the Effective Date: $3 million from RCWC each year; and

(iv)   On the fourth anniversary of the Effective Date: $3.25 million from RCWC.

As noted earlier, after months of doing little to nothing to maximize and collect insurance policy proceeds, the Debtor—with the Insurers' consent—dumps the insurance problem on Survivors, providing in the Diocese Plan that much of the sexual abuse litigation against the Debtor and its affiliates will ride through confirmation solely to allow individual Survivors to collect

---

[9]    The Diocese asserts, without evidence or analysis, that the Livermore Property has value of $43 million to $81 million "(or more)" yet concedes that such value is contingent on the property being rezoned and receiving entitlements to permit construction of residential housing. *See* Disclosure Statement, at 2:10, Dkt. No. 1445. The property is currently zoned for agricultural use and there are no guarantees, let alone evidence, that the property can be rezoned for residential development. In addition, the Debtor's valuation of the Livermore Property fails to take into account that it will likely take years and significant expense to obtain the necessary approvals to maximize the value of the Livermore Property, which timeframe would undoubtedly see Survivors pass-away. Ironically, in the Disclosure Statement the Debtor states that its real estate is difficult to value because any sale would likely necessitate a zoning change for the subject property. *See* Disclosure Statement, Liquidation Analysis, Ex. B, ¶ F, Dkt. No. 1445-2.

against the Insurers. If that is to be the case, the State Court litigation should proceed immediately and not wait until the Debtor is forced to revise its payment to Survivors that more fairly reflects its culpability and vast wealth.

<u>**CAUSE EXISTS TO GRANT RELIEF FROM THE AUTOMATIC STAY**</u>

<u>**SO THAT THE CLAIMS OF SIX SURVIVOR PLAINTIFFS**</u>

<u>**MAY BE LIQUIDATED BY THE STATE COURT**</u>

A bankruptcy court shall lift the automatic stay for cause. 11 U.S.C. § 362(d)(1). What constitutes cause is not defined in the Bankruptcy Code but is decided case-by-case. *Christensen v. Tucson Ests., Inc. (In re Tucson Ests., Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990). If a bankruptcy court may abstain from deciding issues that could be decided by an imminent state court trial involving the same issues, cause may exist to allow the state court trial to proceed. *Id.* In fact, the legislative history to section 362(d)(1) suggests that the automatic stay should be lifted to allow state court cases to continue in forums outside the bankruptcy court.

> It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.

H.R. REP. NO. 95-595, at 341 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 6297.

To determine whether cause exists, courts often use the twelve factors set forth in *In re Curtis*, 40 B.R.795 (Bankr. D. Utah 1984) (the "**Curtis Factors**"), which are (excluding the factors irrelevant to this proceeding):[10] (i) whether the relief will result in a partial or complete resolution of the issues; (ii) the lack of any connection with or interference with the bankruptcy case; (iii) whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; (iv) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (v) whether the

---

[10]    The Curtis Factors not relevant to this discussion are: (i) whether the foreign proceeding involves the debtor as a fiduciary; (ii) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (iii) whether the judgment claim arising from the foreign action is subject to equitable subordination under 11 U.S.C. § 510; and (iv) whether the movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under 11 U.S.C. § 522. *Id.* at 799-800.

11

litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (vi) the interests of judicial economy and the expeditious and economical determination of litigation for the parties; (vii) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (viii) the impact of the stay and the "balance of hurt." *Id.* at 799-800 (citations omitted); *see also Kronemyer v. Am. Contractors Indemn. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) ("We agree that the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum.").

The burden of proving cause shifts between the movant and the debtor. "To obtain relief from the automatic stay, the party seeking relief must first establish a *prima facie* case that 'cause' exists for relief under § 362(d)(1). . . . Once a *prima facie* case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted." *Truebro Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311 B.R. 551, 557 (Bankr. C.D. Cal. 2004) (footnote omitted) (citations omitted).

When the Curtis Factors are applied to the facts at hand, cause exists to modify the stay so that the State Court Actions may proceed.

### A. Whether the Relief Will Result in a Partial or Complete Resolution of the Issues

Lifting the automatic stay to permit State Court Actions to proceed will drive resolution of this case. Indeed, courts faced with analogous facts have recognized the benefit of lifting the automatic stay to facilitate case resolution. For example, Judge Dennis Montali found cause for granting a limited number of tort claimants relief from the automatic stay in *In re PG&E Corp*. Judge Montali held that: "First, relief from stay will definitively bring a resolution as to Debtors' liability in the [named wildfire], and provide an important data point that most likely will facilitate resolution of the wildfire tort claims in this case." 2019 WL 3889247, at *2 (Bankr. N.D. Cal. Aug. 16, 2019). Emphasizing that jury verdicts outside of bankruptcy should be the basis for claims valuation, scholars have cited *In re PG&E Corp.* when advocating for lifting of the stay to permit bellwether trials that would aid the valuation of mass tort claims. *See* Jonathan L. Goldberg, Note,

*"Otherwise Consistent": A Due Process Framework for Mass-Tort Bankruptcies*, 98 N.Y.U. L. REV. 1696, 1748 (2023) (citing Sergio Campos & Samir D. Parikh, *Due Process Alignment in Mass Restructurings*, 91 FORDHAM L. REV. 325, 357–58 (2022)).

In *In re Roman Catholic Archbishop of Portland*, the court granted relief from stay to liquidate tort claims because "settlement efforts with respect to individual claims have been tried and have largely failed, it is time to move forward with the liquidation of the claims for distribution purposes. . . . Trying a few of the claims will help solve that problem, and may cause some of the parties to reevaluate their position." 338 B.R. 414, 418 (Bankr. D. Or. 2006).

The most recent example establishing that litigants' willingness to settle increases when faced with the binary choice a jury faces—you win or you lose—can be seen in *In re The Roman Catholic Diocese of Rockville Centre*, No. 20-12345 (Bankr. S.D.N.Y. 2020). Nearly three years after the Rockville Centre debtor's bankruptcy case began, the Bankruptcy Court permitted the continued prosecution of 225 state court actions against non-debtor affiliates. *See* Order Denying the Debtor's Mot. for a Prelim. Inj., *Roman Cath. Diocese of Rockville Ctr. v. ARK 320 DOE (In re The Roman Cath. Diocese of Rockville Ctr.)*, Ch. 11 Case No. 20-12345, Adv. No. 20-01226 (Bankr. S.D.N.Y. June 9, 2023), Dkt. No. 203. As a result, many of those actions proceeded in state court and some were on the verge of trial. *See, e.g.*, four orders issued by Supreme Court of the State of New York, County of Nassau setting jury selection for dates within October 2024, attached as Exhibits 5 through 8 to the Albert Dec. Not surprisingly, earnest settlement discussions quickly ensued and resulted in a settlement among the Debtor, the tort claimants committee and each of the debtor's solvent insurers. *See* Mot. of the Debtor, Pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 2019, for Entry of an Order (A) Approving the Settlement Agreements, Release and Buyback with Certain Insurers and other Parties, and (B) Granting Related Relief at ¶ 52 n.3, *In re The Roman Cath. Diocese of Rockville Ctr.*, No. 20-12345 (Bankr. S.D.N.Y. Nov. 1, 2024), Dkt. No. 3358.

Another instructive case is *In re The Roman Catholic Bishop of San Diego*, where the court remanded 42 state law sexual abuse lawsuits to state court because: (1) resolution of the lawsuits was central to administration of the case, noting "[t]he lawsuits are the reason the Debtor filed this

15

case"; (2) absent a settlement, prompt resolution of the claims through the bankruptcy process was unlikely; (3) the court foresaw a lengthy confirmation process; (4) state law, not federal law, issues predominated; and (5) the subject matter was of compelling state interest and factors of comity favored the state court system. 374 B.R. 756, 762–64 (Bankr. S.D. Cal. 2007).[11]

A key issue in resolving the disputes in this Chapter 11 Case is establishing the value of the claims asserted by Survivors against the Debtor. There is no dispute that Survivor claims must be liquidated in accordance with state law. *See Off. Comm. of Unsecured Creditors v. Hancock Park Cap. II, L.P. (In re Fitness Holdings Int'l, Inc.)*, 714 F.3d 1141, 1146 (9th Cir. 2013) ("Supreme Court precedent establishes that, unless Congress has spoken, the nature and scope of a right to payment is determined by state law."). To that end, the Committee, on behalf of Survivors, has attempted to value Survivor Claims by estimating the value that would be awarded by a jury to those claims in the tort system or as may otherwise be agreed to by the parties in a consensual settlement.

The Debtor rejects the Committee's estimate. Through its Disclosure Statement, the Debtor argues, using unsubstantiated charts, that Survivor Claims should be valued by referencing amounts paid to Survivors under settlements that resulted in confirmed plans in other diocesan bankruptcy cases. The Committee wholly rejects this approach, as does blackletter law on how personal injury claims are liquidated in bankruptcy. The Debtor's charts (i) select certain precedents and omit others and (ii) fail to disclose critical information necessary for any meaningful comparison to the Debtor's valuation in this case, such as the applicable law and statute of limitations governing claims in the bankruptcy case, the debtor's assets, the availability of insurance, the severity of the claims being settled, and the average amount paid to survivors in or about 2002, when the statute of limitations was previously opened. There is no "market" for the resolution of sexual abuse claims. What a group of survivors settled for in other cases, in other jurisdictions, is irrelevant to what is fair and equitable in this case.

---

[11]    While the issue before the *San Diego* court was whether to remand 42 of the approximately 127 removed child sexual abuse adversary proceedings to the state court pursuant to 28 U.S.C. § 1452(b), the analysis used by the court—application of the "factors" governing discretionary abstention to assist with the remand decision—is equally applicable here. Indeed, the *San Diego* court held that such standard was "any equitable ground." *Id.* at 762.

At the same time, insurers seldom have great incentive to listen to or accede to the long before-trial settlement demands of tort claimants. Time is on the Insurers' side, and they know it. Especially in an inflationary environment, insurers perceive it to their benefit to engage in real settlement talks with tort plaintiffs only when the tort plaintiffs are close to a resolution by settlement or judgment with the defendant. Until then, if a tort plaintiff wants to settle, it is ordinarily at the insurance company's mercy, and the settlement amount reflects that fact. *See New Appleman on Insurance Law Library Edition* § 150.08[1] ("[I]n most states, an injured party cannot file a lawsuit directly against the tortfeasor's insurer unless the injured party has obtained a judgment against the insured or has received a valid assignment of rights from the insured.").

Allowing the State Court Actions to proceed will provide current data points regarding the value of Survivor Claims and from which the value of all Survivor Claims filed in this Chapter 11 Case may be estimated. It will also afford the Debtor, Survivors, and the Committee the ability to unlock the value of the insurance assets by putting the Insurers at risk of financial consequences for failing to fulfill their state-law obligation to pay reasonable settlements without regard for coverage defenses. Thus, allowing Survivors to prosecute bellwether cases in State Court will aid in the complete resolution of this Chapter 11 Case. Permitting the State Court Actions to continue will force the parties to face the reality of what an Alameda County, California jury will award. That alone should motivate the parties to reach a consensual plan and, in turn, lead to a complete resolution of the issues.

Moreover, permitting state court actions to proceed in waves is a generally accepted model for resolving mass torts cases and facilitates settlement discussions based on the results of the actions. In fact, courts in other Catholic diocesan cases have found just that. In *In re Roman Catholic Archbishop of Portland*, the court concluded "that sending the [abuse] claims asserting only compensatory damages to state court is likely to result in quicker trials or settlements of those claims than keeping them in federal court." 338 B.R. 414, 419 (Bankr. D. Or. 2006). "Based on the history of the Clergy cases statewide, the Court belives that trying (or the possibility of [] trying) the first five actions [in state court] may spur settlements . . . ." *In re The Roman Cath. Bishop of San Diego*, 374 B.R. at 763; *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) §

20.132 (2004) (test trial "may otherwise promote settlement in the remaining actions.").  Here, the State Court has already acknowledged the importance of bellwether cases and has established the criteria and dispute resolution mechanisms for selection of the bellwether cases.  Thus, no time will be lost in choosing cases and placing them on a path to trial.

## B. The Lack of Any Connection or Interference with the Bankruptcy Case

Allowing the State Court Actions to proceed in State Court will not interfere with the Chapter 11 Case.  *First*, Survivor plaintiffs are not seeking to enforce any judgment they may obtain against the Debtor or its estate and, thus, relief from the stay will not interfere with the Chapter 11 Case.  *See, e.g.*, *In re Tucson Ests., Inc.*, 912 F.2d 1162, 1169 (9th Cir. 1990) (finding no intereference with the debtor's bankruptcy where plaintiff had a right to complete state court litigation and reserve enforcement of the judgment to the bankruptcy court).

*Second*, allowing the State Court Actions to proceed will help resolve the Chapter 11 Case. Letting the State Court Actions proceed to trial will resolve a core issue—the value of Survivors' claims—while this Court adjudicates disputes over the assets of the estate  *See In re PG&E Corp.*, 2019 WL 3889247, at *2 (Bankr. N.D. Cal. Aug. 16, 2019) (holding that state court litigation "may proceed on a parallel track" to the bankruptcy case); *In re Tucson Ests., Inc.*, 912 F.2d at 1169-1170 (affirming the bankruptcy court's decision that "state litigation would not interfere with the bankruptcy proceedings but would in fact facilitate them by liquidating 1,600–2,300 class action plaintiff claims" and overturning the bankruptcy court's decision not to grant relief for all claims to proceed in that litigation).  It also will help unlock and increase the value of the insurance asset that otherwise will go to waste.

Specifically, this Court is being called upon to help resolve disputes over what is property of the estate, the validity of certain transfers and whether certain non-debtor affiliates are separate from the Debtor.  Thus, Survivor Claim valuation issues and property of the estate issues can proceed on dual tracks with the goal of hopefully reaching consensus on a plan of reorganization down the road.  *See, e.g.*, *In re Project Orange Assocs., LLC*, 432 B.R. 89, 108 (Bankr. S.D.N.Y. 2010) ("By permitting the parties to resolve issues surrounding termination in the state court where the court is very familiar with the facts and history of the case . . . this Court will be better equipped

to determine any remaining bankruptcy law issues, including any assumption motion, more quickly."). Thus, the automatic stay should be lifted because the State Court Actions will not interfere with the Chapter 11 Case. Rather, they are vital to its resolution.

Perhaps most importantly, the Diocese is not using the Chapter 11 Case to (i) restructure its operations or (ii) work with many different constituencies to agree on the terms of a plan. Rather, the Diocese need only work with the Committee, and only with respect to Survivor claim value and estate assets, to reach agreement on a plan. In that way, the protection the automatic stay provides to allow a debtor to focus on its rehabilitation is entirely consistent with the relief requested in this Motion. Nor is there any risk of a chaotic and uncontrolled scramble for the Debtor's assets because the plaintiffs in the State Court Actions are not seeking to enforce any judgment they may obtain against the Debtor.

**C.**    **Whether a Specialized Tribunal Has Been Established to Hear the Particular Cause of Action and Whether That Tribunal Has the Expertise to Hear Such Cases**

The State Court Actions involve matters of purely state law. Even though state court is a court of general jurisdiction rather than a specialized tribunal, bankruptcy courts have found this factor supports lifting the automatic stay when the action involves state law, and the state court has greater familiarity with that law. *See In re PG&E Corp.*, 2019 WL 3889247, at *2 (finding cause exists to grant stay relief because, among other reasons, "[t]he state court is also suited for a proceeding which consists entirely of state law issues" and there is "inherent suitability of the state court to bring about that resolution."); *see also Kayle v. Lake Balboa Health Care, Inc.*, No. LA CV15-01629, 2015 U.S. Dist. LEXIS 63629, at *2, *4 (C.D. Cal. May 14, 2015) (referring a wrongful death action to state court because of the predominance of state law issues and the state court's familiarity with them).

Furthermore, the Bankruptcy Court is not permitted to preside over a trial of plaintiffs' personal injury claims. *See* 28 U.S.C. § 157(b)(5); 28 U.S.C. § 157(b)(2)(B) (core proceedings do not include the "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11 . . . .").

And personal injury claimants, like Survivors, are entitled to a jury trial under California law. *See Russell v. Andersen*, 226 P.2d 350, 358 (Cal. Dist. Ct. App. 1951) (citation omitted). Thus, the trial and final adjudication and liquidation of the Survivor plaintiffs' claims in the State Court Actions must occur in another court under all circumstances.

In addition, "[a] clear congressional policy exists to give state law claimants a right to have claims heard in state court." *In re Castlerock Props.*, 781 F.2d 159, 163 (9th Cir. 1986) (citing to 28 U.S.C. § 1334(c)); *see also* H.R. REP. NO. 95-595, at 341 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 6297 (It is often "more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere."). "If a bankruptcy court may abstain from deciding issues that could be decided by an imminent state court trial involving the same issues, cause may exist to allow the state court trial to go forward." *In re PG&E Corp.*, 2019 WL 3889247, at *1 (citing *In re Tucson Ests., Inc.*, 912 F.2d at 1166).

The State Court has unparalleled understanding and expertise in handling the intricate and sensitive matters at the heart of the State Court Actions. This expertise is critical for a nuanced and informed approach to liquidate Survivors' claims, which will help drive a settlement with both the Debtor and its Insurers. When faced with whether to remand abuse cases to state court, the court in *In re The Roman Catholic Bishop of San Diego* granted the underlying motion stating that "the past and future rulings in state court for these 42 cases, and the history of the rulings in prior Clergy cases together with the continuity of procedural rules, makes prosecution . . . in the state court more efficient and uniform than in the district court." 374 B.R. 756, 763 (Bankr. S.D. Cal. 2007).

D.      **Whether the Debtor's Insurance Carrier Has Assumed Full Financial Responsibility for Defending the Litigation**

The presence of the Debtor's insurance weighs strongly in favor of granting relief from the stay. As one court noted:

> The rationale for granting relief from the automatic stay for this purpose is that the prejudice to the debtor, who may suffer modest

> or even no adverse financial consequences but may only have to expend some time and effort in cooperating with his insurer in the defense of the litigation, is outweighed by the prejudice to the creditor whose ability to prosecute the action and reach the insurance benefits may be undermined by the "aging of evidence, loss of witnesses, and crowded court dockets."

*In re Glunk*, 342 B.R. 717, 740 (Bankr. E.D. Pa. 2006) (citations omitted); *see also Lapierre v. Advanced Med. Spa Inc. (In re Advanced Med. Spa Inc.)*, 2016 WL 6958130, at *6 (B.A.P. 9th Cir. Nov. 28, 2016) (vacating bankruptcy court's denial of relief from stay, finding Curtis Factors weighed in favor of relief from stay, including the fact that plaintiff sought relief "for the purposes of collecting whatever insurance proceeds were available . . . which necessarily would limit the potential impact on [the debtor's] estate."). Bankruptcy courts have thus made clear that the automatic stay benefits the debtor, not its insurers.

Here, there is little risk that the Insurers will refuse to defend the Debtor and thus cause the estate to deplete its assets. Moreover, if Survivors obtain judgments, they can proceed directly against the Insurers, rather than the Debtor. The Insurers are required under their insurance policies and California state law to defend the State Court Actions and would put themselves at risk of grave financial consequences if they fail to do so. If the Insurers refuse to defend the State Court Actions, the Debtor and the Committee will be permitted to reach a settlement independently and request a default "prove-up" trial to acquire judgments that Survivors or a post-confirmation litigation trust may then pursue against the Insurers under California Insurance Code § 11580 (West 1935). *See Pruyn v. Agric. Ins.,* 42 Cal. Rptr. 2d 295, 304 (Cal. Ct. App. 1995) (citations omitted) ("In order to bring a direct action against an insurer under Insurance Code section 11580, the third-party judgment creditor must have obtained a final judgment against the insured. However, a number of cases have held that such judgment need not be based on a contested or adversarial trial, but may rest upon a default hearing held following a settlement . . . or an uncontested trial where the insured settled with the claimant and thereafter presented no defense."). Accordingly, whether or not they intend to fulfill their obligation to fairly and reasonably settle claims once liability becomes clear, in almost all the diocesan bankruptcies, the insurers have been more than eager to say they will defend.

1    Relatedly, requiring the Insurers to stand by their contractual obligations or accept the risk

2    of breaching their contracts is vital in facilitating a global settlement among the Debtor, Survivors,

3    and Insurers.  Historically, without the threat of trial, insurers seldom have incentive to listen to or

4    accede to the settlement demands of tort claimants.  Indeed, insurers enjoy what can only be

5    described as a bankruptcy holiday while a debtor and committee seek to resolve their disputes.

6    Meanwhile, the Insurers seek to delay, defer and avoid being called upon to satisfy their contractual

7    obligations.  Such is the case here, where 18 months after the Petition Date, the Insurers have still

8    not even conceded that a cause of action exists against them, and the Debtor has since ceased

9    prosecuting its claims in the District Court Insurance Case in the hopes that it can make monetizing

10   the insurance asset the Committee's problem.[12]

11   To help reach a global settlement, the State Court will likely oversee the selection of State

12   Court Actions which allege abuse during time periods covered by the Insurers.  Therefore, certain

13   Insurers will have an obligation to pay the defense costs and indemnify the claims subject to certain

14   limitations, including applicable limits of liability—unless the Insurers in bad faith refuse a

15   reasonable settlement demand.  Moreover, the impact on the Survivors can be enormously

16   consequential, as acknowledged by the Bankruptcy Appellate Panel, because "all plaintiffs are

17   prejudiced by failing memories and the like, and that the [debtor] would not be greatly prejudiced

18   by granting [plaintiff] relief since it would have to defend itself in either forum."  *Santa Clara*

19   *Cnty. Fair Ass'n, Inc. v. Sanders (In re Santa Clara Cnty. Fair Ass'n, Inc.)*, 180 B.R. 564, 566

20   (B.A.P. 9th Cir. 1995).

21   Time is on the Insurers' side, and they know it.  In fact, and especially in an inflationary

22   environment, the Insurers perceive it to their benefit to engage in real settlement talks with tort

23   plaintiffs only when they are on the courthouse steps, knowing that a jury empaneled in Alameda

24   County will not look kindly on the Debtor's failure to keep its children safe and in turn, will almost

---

[12]    To help break this logjam, Survivors are likely to begin asserting reasonable within-limits demands against
the Insurers because those demands do not implicate the automatic stay.  *See, e.g.*, Tr. of Hr'g on Mots. for Relief
From Stay at 19:1–24:5, *In re The Roman Cath. Diocese of Rockville Ctr.*, No. 20-12345 (Bankr. S.D.N.Y. Oct. 23,
2023), Dkt. No. 2645 (The Court:  "Go ahead and send your demand letters, you know, that's fine.").  The transcript
is attached as Exhibit 9 to the Albert Dec.

certainly require the Insurers to pay for such negligence given that they are contractually bound to do so.[13]

## E. Whether the Litigation in Another Forum Would Prejudice the Interests of Other Creditors, the Creditors Committee and Other Interested Parties

The interests of other creditors and the estate are furthered, not prejudiced, by granting stay relief. The treatment of Survivor claims is the fulcrum issue here. Until it is resolved, the Debtor cannot exit bankruptcy, general unsecured creditors cannot be paid, and the Diocese cannot turn its singular focus to its charitable mission. As established above, allowing the State Court Actions to proceed will drive this case to resolution, which benefits the Debtor, the Committee, Survivors, general unsecured creditors and the greater Oakland area which enjoys the Debtor's charitable work. *See, e.g.*, *In re PG&E Corp.*, 2019 WL 3889247, at *2 ("There is nothing to show that other creditors would be prejudiced if relief were granted . . . ."); *In re Korean W. Presbyterian Church of Los Angeles*, 618 B.R. 282, 289-90 (Bankr. C.D. Cal. 2020) (granting stay relief, finding resolution of the issues to be "far from interfering with this bankruptcy case or causing prejudice. . . . Starting over and re-litigating the issues would be prejudicial to all parties in interest . . . ."); *In re Aquarius Disk Servs., Inc.*, 254 B.R. 253, 260-61 (Bankr. N.D. Cal. 2000) (granting relief from stay so that attachment lien creditor may liquidate its claim in state court).

## F. The Interests of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties

Judicial efficiency is also served by allowing the State Court Actions to proceed to trial because the parties filed these actions before the bankruptcy and the State Court has already released one case against the Diocese for trial and has procedures in place to release more cases.

---

[13] The Proposed Order allows Survivors to begin collection efforts against the Debtor's insurers to the extent that collection efforts of that Survivor do not impair the recovery rights of other Survivors. California Insurance Code § 11580(b)(2) provides that "that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." Most of the Debtor's insurance policies that provide coverage to the State Court Actions were sold on a "per occurrence" basis and do not have aggregate limits that apply to the State Court Action. Thus, recovery based on the abuse of one Survivor does not impair the ability of other Survivors to recover under the same insurance policies.

*See In re PG&E Corp.*, 2019 WL 3889247, at *2 (finding judicial economy is served by lifting the stay for state court actions to proceed where, "while they do not appear to be completely ready for trial, the parties filed this action prior to the bankruptcy and . . . are on a schedule for resolution."). By contrast, because the State Court Actions cannot be determined by this Court, no judicial economy is served by continuing the stay.

Indeed, when a claim "will have to be liquidated either in state court or the bankruptcy court. . . . [i]t is unreasonable to presume" that litigation of the state law claims in state court instead of bankruptcy court "would subject the debtor's estate to a greater expense." *In re Rabin*, 53 B.R. 529, 531–32 (Bankr. D.N.J. 1985); s*ee also In re Santa Clara Cnty. Fair Ass'n, Inc.*, 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995) (affirming bankruptcy court holding that "judicial economy and economy for the parties would be better served by allowing the actions to proceed in district court."). The Chapter 11 Case was filed on the eve of trial for one of the State Court Actions. It was then, and is now, ready for trial to commence.

Moreover, while the Committee expects that the Debtor will urge this Court to proceed with plan confirmation, rather than allow the State Court Actions to continue, doing so would be inefficient and a costly detour. As will be set forth in the Committee's coming objection to the Disclosure Statement, the Diocese Plan is unconfirmable. Assuming that the Committee's objections are valid, proceeding with plan confirmation will waste months of time and millions of dollars of the estate, leaving the Debtors' creditors even worse off than they are today. In contrast, allowing the State Court Actions and the Committee's adversary proceedings to continue will provide answers to issues the parties cannot agree on. In turn, those answers will facilitate a global settlement, making the time and money spent well worth it.

**G.** **Whether the Foreign Proceedings Have Progressed to the Point Where the Parties Are Prepared for Trial**

Courts in the Ninth Circuit have granted relief from the stay under section 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the non-bankruptcy suit is ready for trial. *See In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 556 (Bankr. C.D. Cal. 2004) (citing *In re Tucson Ests.*, 912 F.2d at 1166). As discussed above, at least one of the State

Court Actions is ready to proceed to trial promptly upon relief from the stay being granted. Others have sufficiently progressed such that they can be ready for trial in short order.

### H. The Impact of the Stay and the "Balance of Hurt"

The "balance of hurt" aims to weigh the hardship suffered by the movant maintaining the stay against the burden on the debtor by lifting it. This categorically tips in favor of moving forward with the State Court Actions. *See In re Curtis*, 40 B.R. at 806 ("Financial hardship to the movants must, of course, be balanced against financial hardship to the debtors."); *see also In re Advanced Med. Spa Inc.*, 2016 WL 6958130, at *6 (citations omitted) (because the movant "met her burden of production, the ultimate burden of persuasion was on the debtor and trustee to demonstrate that [the estate's] harm outweighed [the movant's] harm."); *In re PG&E Corp.*, 2019 WL 3889247, at *2 (considering the "balance of hurt," the court finds cause to lift the stay because a state court trial would "commence in an expeditious fashion" and "advance these cases toward . . . a just resolution of the claims of victims of the wildfires . . . .").

When comparing the respective hardships imposed on the Debtor and the Committee, it is plain to see that the Debtor's hardship is minimal while the Committee's burden is substantial. If the requested relief is granted, there will be little to no financial impact on the Debtor since it has insurance to cover its defense costs. The burden on the Survivors, on the other hand, is substantial. The negotiations between the Debtor and Committee have stalled while Survivors continue to wait, suffer and some, pass away. Allowing a handful of State Court Actions to proceed will provide a path to a successful mediation and faster exit from bankruptcy.

The "balance of hurt" also tips in favor of moving forward with the State Court Actions when considering California's strong public policy of protecting children and allowing those already harmed to have the right to seek redress in the state court system. The California legislature, by passing Assembly Bill 218, recognized the public importance of compensation for survivors of child sexual abuse and accountability for perpetrators and the institutions that failed to protect them. As the U.S. Supreme Court has explained, the "sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). Specific to the childhood sexual abuse context, "there

can be no real dispute that the controversy over the misconduct of priests, as well as the Church's responsibility for the misconduct and its alleged cover-up, is a 'public controversy' . . . ." *New Life Ctr., Inc. v. Fessio*, 2000 WL 1157800, at *4 (4th Cir. Aug. 16, 2000). Indeed, California state courts have repeatedly recognized the compelling social interests in protecting children from molestation. *See, e.g.*, *Doe v. Franciscan Friars of Cal., Inc. (In re The Clergy Cases I)*, 116 Cal. Rptr. 3d 360, 363 (Cal. Ct. App. 2010) ("We hold that compelling social interests in protecting children from molestation outweigh the Individual Friars' privacy rights . . . ."); *Garedakis v. Brentwood Union Sch. Dist.*, No. 14-cv-04799, 2015 U.S. Dist. LEXIS 54979, at *13–14 (N.D. Cal. Apr. 27, 2015) (District Court for the Northern District of California refused to keep confidential the names of administrators in a public school system that were accused of abusing, or having knowledge about the abuse of, children, noting that the public interest in protecting children outweighed any private interests of the administrators).

The State Court Actions were commenced by Survivors after, finally, being given the opportunity to hold the Diocese liable for both the personal harm they suffered but also, the societal harm sexual abuse of children causes. Allowing the Chapter 11 Case to linger is thus contrary to the legislature's intent. By contrast, allowing Survivors their day in court, and holding wrongdoers accountable, will satisfy the will of the people.

## THE AUTOMATIC STAY DOES NOT APPLY
## TO ANY NON-DEBTOR ENTITY, INCLUDING
## THE DEFENDANT SCHOOLS

The Debtor is not the only defendant in many of the State Court Actions. But litigation against those non-debtor parties has been put on hold. The State Court judge has stated that the Survivors "are going to need clarification from the bankruptcy court" to proceed against non-debtor defendants in actions that name the Debtor as a co-defendant and the court "is going to stay in its own lane and allow the bankruptcy court to do whatever it thinks is appropriate." Tr. of Case Management Conference at 33:2–16, *In re Northern California Clergy Cases*, JCCP 5108 (Sup.

Ct. Ca. Apr. 24, 2024).[14]   Thus, for Survivors to proceed against non-debtor co-defendants, including the Defendant Schools, the State Court requires instruction from this Court clarifying or confirming that the automatic stay under section 362(a) of the Bankruptcy Code does not apply.

Section 362(a) of the Bankruptcy Code imposes an automatic stay that applies to any "proceeding against ***the debtor*** that was . . . commenced before the commencement of the case . . . ." 11 U.S.C. § 362(a)(1) (emphasis added).   According to this Court, "[a]ny discussion of whether to extend the automatic stay to a party other than the Debtor must begin with an acknowledgement: Congress granted debtors a stay, not non-debtors."   *In re Mariner Health Cent. Inc.*, 2023 WL 187175, at \*9 (Bankr. N.D. Cal. Jan. 12, 2023) (citations omitted); *see also Chugach Timber Corp. v. N. Stevedoring & Handling Corp. (In re Chugach Forest Prods., Inc.)*, 23 F.3d 241, 246 (9th Cir. 1994); *Advanced Ribbons and Off. Prods., Inc. v. U.S. Interstate Distrib., Inc. (In re Advanced Ribbons and Off. Prods., Inc.)*, 125 B.R. 259, 263 (B.A.P. 9th Cir. 1991) (citation omitted).   And specifically relevant to the relief requested herein, "any extension of the automatic stay to nondebtors does not occur automatically but requires the filing of an adversary proceeding requesting the bankruptcy court to act under § 105(a)."   *Ripon Self Storage, LLC v. Exch. Bank (In re Ripon Self Storage, LLC)*, 2011 WL 3300087, at \*6 (B.A.P. 9th Cir. Apr. 1, 2011).

While bankruptcy courts extend the automatic stay to a non-debtor upon a request from the debtor as an extraordinary remedy, such request has not been made in this Chapter 11 Case.   *See In re Mariner Health Cent., Inc.*, 2023 WL 187175, at \*8–9.   The Debtor has not sought relief (i) to extend the automatic stay under section 362(a)(1) of the Bankruptcy Code or (ii) for a preliminary injunction under section 105(a) of the Bankruptcy Code to halt the State Court Actions against its non-debtor co-defendants, including the Defendant Schools.   In light of this blackletter law, the Committee requests the Court grant this Motion to permit Survivors to proceed in their action against non-debtors, including the Defendant Schools.

/ / /

/ / /

---

[14]      The April 24, 2024, transcript is attached as Exhibit 4 to the Albert Dec.

<u>**NOTICE**</u>

Notice of this Motion will be provided to (i) the Debtor; (ii) the Insurers; (iii) the United States Trustee and (iv) those persons who have formally appeared in this Chapter 11 Case and requested service under Bankruptcy Rule 2002. Based on the nature of the relief requested herein, the Committee submits that no further notice is required.

**WHEREFORE**, the Committee requests entry of the Proposed Order and any other relief that the Court may deem just and appropriate.

Dated: November 20, 2024

**LOWENSTEIN SANDLER LLP**
**KELLER BENVENUTTI KIM LLP**
**BURNS BAIR LLP**

By:  /s/ Gabrielle L. Albert
Tobias S. Keller
Gabrielle L. Albert

-and-

Jeffrey D. Prol
Brent Weisenberg

*Counsel for the Official Committee of Unsecured Creditors*

-and-

Timothy W. Burns
Jesse J. Bair

*Special Insurance Counsel for the Official Committee of Unsecured Creditors*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Exhibit A</u>**

**LOWENSTEIN SANDLER LLP**
JEFFREY D. PROL (*pro hac vice*)
jprol@lowenstein.com
BRENT WEISENBERG (*pro hac vice*)
bweisenberg@lowenstein.com
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
tkeller@kbkllp.com
JANE KIM (Cal. Bar No. 298192)
jkim@kbkllp.com
GABRIELLE L. ALBERT (Cal. Bar No. 190895)
galbert@kbkllp.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Counsel for the Official Committee of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

|  |  |
|---|---|
| *In re*: | Case No. 23-40523 WJL |
| THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole, | Chapter 11 |
| Debtor. | **[PROPOSED] ORDER GRANTING MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO LIFT THE AUTOMATIC STAY TO PERMIT CERTAIN PLAINTIFFS' PERSONAL INJURY CLAIMS TO PROCEED IN STATE COURT** |

Upon the *Motion of the Official Committee of Unsecured Creditors to Lift the Automatic Stay to Permit Certain Plaintiffs' Personal Injury Claims to Proceed in State Court* (the "**Motion**")[1]; the Court having reviewed the Motion and having considered the statements of counsel and the evidence adduced regarding the Motion at a hearing before the Court (the "**Hearing**"); the Court finding that (a) the Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district under 28 U.S.C. §§ 1408 and 1409, (c) this is a core proceeding under 28 U.S.C. § 157(b)(2), and (d) notice of the Motion and the Hearing was sufficient under the circumstances; and (e) the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing further establish just cause for the relief granted;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The automatic stay is terminated to allow six State Court Actions to proceed, as directed by the State Court.

3.      The automatic stay shall remain in full force and effect for all other purposes including with respect to the enforcement of any judgment against the Debtor that may be obtained by reason of the termination of the automatic stay as provided above.

4.      The automatic stay does not extend to non-Debtor defendants in the State Court Actions, including, but not limited to, The Roman Catholic Welfare Corporation of Oakland and the 32 elementary schools and two high schools that it operates, religious orders, individual perpetrators, and other non-Debtors where the Diocese is named as a co-defendant.

5.      Notwithstanding Bankruptcy Rule 4001(a)(3), or any other Bankruptcy Rule, this Order shall be immediately effective and enforceable upon its entry.

6.      This Court shall retain exclusive jurisdiction over any matters arising from or related to the implementation, interpretation or enforcement of this Order.

***END OF ORDER***

---

[1]     Capitalized terms not defined herein have the meaning ascribed to them in the Motion.

## **Exhibit B**

"**Insurers**" means:

(i)     American Home Assurance Company

(ii)     California Insurance Guarantee Association, a state entity

(iii)     Catalina Worthing Insurance Ltd F/K/A HFPI (As Part VII Transferee of Excess Insurance Co. Ltd.)

(iv)     Certain Underwriters At Lloyd's, London, Subscribing Severally And Not Jointly To Slip Nos. Cu 1001 And K 66034 Issued To The Roman Catholic Archbishop Of San Francisco, And Nos. K 78138 And CU 3061 Issued To The Roman Catholic Bishop Of Oakland

(v)     Companhia de Seguros Fidelidade SA F/K/A Fidelidade Insurance Company of Lisbon, Subscribing to Slip No. K 78138 Issued to the Roman Catholic Bishop of Oakland

(vi)     Continental Casualty Company

(vii)     Dominion Insurance Company Limited

(viii)     English & American Insurance Company Limited

(ix)     Insurance Company of North America

(x)     Lexington Insurance Compnay

(xi)     London and Overseas Insurance Company Limited

(xii)     Ocean Marine Insurance Company Limited (As Part VII Transferee of the World Auxiliary)

(xiii)     Insurance Corporation Limited

(xiv)     Orion Indemnity Company

(xv)     Pacific Employers Insurance

(xvi)     Pacific Indemnity

(xvii)     R&Q Gamma Company Limited (as Part VII Transferee of Anglo French Ltd.)

(xviii)     River Thames Insurance Company Limited

(xix)     Travelers Casualty & Surety Company F/K/A Aetna Casualty & Surety Company

1    (xx)  United States Fire Insurance

2    (xxi)  Westchester Fire Insurance Company

3    (xxii) Westport Insurance Corporation

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28