# **Exhibit 2**

1              UNITED STATES BANKRUPTCY COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3                 -oOo-

| | |
|---|---|
| In Re: | ) Case No. 23-40523 |
| | ) Chapter 11 |
| THE ROMAN CATHOLIC BISHOP OF | ) |
| OAKLAND | ) Oakland, California |
| | )Tuesday, January 21, 2025 |
| Debtor. | ) 10:00 AM |
| _____ | ) |

1. HEARING ON APPROVAL OF
DISCLOSURE STATEMENT. CONT'D
FROM 12/18/24, 1/16/25

2. MOTION TO AMEND MEDIATION
ORDERS AND REQUIRING PARTIES
TO ATTEND GLOBAL MEDIATION
(DOC. 1612). CONT'D FROM
1/16/25

3. STATUS CONFERENCE. CONT'D
FROM 11/27/24, 1/16/25

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE WILLIAM J. LAFFERTY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| For the Debtor: | ANN MARIE UETZ, ESQ. |
|---|---|
| | Foley & Lardner LLP |
| | 500 Woodward Avenue |
| | Suite 2700 |
| | Detroit, MI 48826 |
| | (313)234-2800 |
| | |
| | EILEEN R. RIDLEY, ESQ. |
| | Foley & Lardner LLP |
| | 555 California Street |
| | Suite 1700 |
| | San Francisco, CA 94104 |
| | (415)434-4507 |

```
 1  For the Debtor (Cont'd):    MARK C. MOORE, ESQ.
                                 Foley & Lardner LLP
 2                               2021 McKinney Avenue
                                 Suite 1600
 3                               Dallas, TX 75201
                                 (214)999-4667
 4
                                MATTHEW D. LEE, ESQ.
 5                               Foley & Lardner LLP
                                 150 East Gilman Street
 6                               Suite 5000
                                 Madison, WI 53703
 7                               (608)258-4258

 8  For Official Committee of   JEFFREY D. PROL, ESQ.
    Unsecured Creditors:        Lowenstein Sandler LLP
 9                               One Lowenstein Drive
                                 Roseland, NJ 07068
10                               (973)597-2490

11  Special Insurance Counsel   JESSE J. BAIR, ESQ.
    for Official Committee of   TIMOTHY W. BURNS, ESQ.
12  Unsecured Creditors:        Burns Bair LLP
                                 10 East Doty Street
13                               Suite 600
                                 Madison, WI 53703
14                               (608)286-2302

15  For Continental Casualty    MARK D. PLEVIN, ESQ.
    Company:                    Crowell & Moring LLP
16                               Three Embarcadero Center
                                 26th Floor
17                               San Francisco, CA 94111
                                 (415)986-2800
18
    For Westport Insurance      TODD C. JACOBS, ESQ.
19  Corporation:                Parker, Hudson, Rainer & Dobbs LLP
                                 Two North Riverside Plaza
20                               Suite 1850
                                 Chicago, IL 60606
21                               (312)477-3306

22                              BLAISE S. CURET, ESQ.
                                 Sinnott, Puebla, Campagne & Curet,
23                               APLC
                                 2000 Powell Street
24                               Suite 830
                                 Emeryville, CA 94608
25                               (415)352-6200
```

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 3 of 90

```
1   For Office of the United      JASON BLUMBERG, ESQ.
    States Trustee:               United States Department of
2                                  Justice
                                   501 I Street
3                                 Suite 7-500
                                   Sacramento, CA 95814
4                                 (916)930-2100

5   For RCC, RCWC, OPF, and       RYAN E. MANNS, ESQ. (ZOOM)
    Aventis:                      Norton Rose Fulbright US LLP
6                                  2200 Ross Avenue
                                   Suite 3600
7                                 Dallas, TX 75201
                                   (214)855-8304
8
    For Pacific Indemnity         TANCRED V. SCHIAVONI, ESQ.
9   Company:                      O'Melveny & Myers LLP
                                   7 Times Square
10                                 New York, NY 10036
                                   (212)326-2000

11

12

13

14

15

16

17

18  Court Recorder:               PL WRIGHT
                                  United States Bankruptcy Court
19                                1300 Clay Street
                                  Oakland, CA 94612
20

21  Transcriber:                  RIVER WOLF
                                  eScribers, LLC
22                                7227 N. 16th Street
                                  Suite #207
23                                Phoenix, AZ 85020
                                  (800) 257-0885
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.
```

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 4 of 90

1    OAKLAND, CALIFORNIA, TUESDAY, JANUARY 21, 2025, 9:46 AM

2                          -oOo-

3    (Call to order of the Court.)

4         THE CLERK:  Calling line item number 1 for the Roman

5    Catholic Bishop of Oakland, case number 23-40523.

6         And I'm moving the parties over now, Your Honor.

7         THE COURT:  Okay.

8    (Pause.)

9         THE CLERK:  And Your Honor, all the parties have been

10   moved over.

11        THE COURT:  Okay.  Let's take appearances.  And why

12   don't we start with everybody who's going to be representing

13   the debtor today?

14        MS. UETZ:  Good morning, Your Honor.  Anne Marie Uetz

15   of Foley & Lardner for --

16        THE COURT:  Hi.

17        MS. UETZ:  -- the debtor.  We have a few others.

18        THE COURT:  Okay.  Go ahead.

19        MR. LEE:  Good morning, Your Honor.  Matt Lee of Foley

20   & Lardner appearing for the debtor.

21        THE COURT:  Okay.  Nice to see you again.

22        MR. LEE:  Likewise.

23        THE COURT:  Okay.

24        MR. MOORE:  Good morning, Your Honor.   Mark Moore

25   from Foley & Lardner on behalf of the debtor.

1        THE COURT:  Okay.  Good morning.

2        MS. RIDLEY:  Good morning, Your Honor.  Eileen Ridley,

3    Foley & Lardner, on behalf of the debtor.

4        THE COURT:  Right.  Good morning.

5        MR. MOSES:  And finally, Your Honor, Shane Moses,

6    Foley & Lardner, on behalf of the debtor.  Good morning.

7        THE COURT:  Okay.  Thank you.

8        Let's get anybody representing the committee.

9        MR. PROL:  Good morning, Your Honor.  Jeff Prol,

10    Lowenstein Sandler.

11        THE COURT:  Okay.  Good morning.

12        MR. PROL:  It is my partner Brent Weisenberg.  And

13    also Tim Burns from the Burns Bair firm.

14        THE COURT:  Okay.  I see Mr. Burns.

15        Mr. Weisenberg, you want to separately appear or --

16        MR. WEISENBERG:  Sure, Your Honor.  Brent Weisenberg

17    of Lowenstein Sandler on behalf of the committee.

18        THE COURT:  Okay.  Mr. Bair.

19        MR. BAIR:  Good morning, Your Honor.  Jesse Bair from

20    Burns Bair, special insurance counsel for the committee.

21        THE COURT:  Okay.  And then we have some folks

22    representing insurance companies.  Let's hear from them.

23        Okay.  Mr. Plevin, we're not hearing you.

24        MR. PLEVIN:  Trying to keep you from hearing my dog.

25    Good morning, Your Honor.  Mark Plevin on behalf of Continental

1 Casualty Company.

2          THE COURT:  Okay.  Anybody else for the insurance

3 companies?

4          MR. JACOBS:  Yeah.  Good morning, Your Honor.  Todd

5 Jacobs from Parker Hudson on behalf of Westport.  And I am here

6 with my co-counsel, Blaise Curet.

7          MR. CURET:  Good morning, Your Honor.

8          THE COURT:  Okay.  Wonderful.  Anybody else?

9          Okay.  How about the U.S. Trustee?

10          MR. BLUMBERG:  Good morning, Your Honor.  Jason

11 Blumberg for the United States Trustee.

12          THE COURT:  Okay.  Anybody else whom I have not

13 mentioned yet?

14          MR. MANNS:  Good morning, Your Honor.  Ryan Manns on

15 behalf of RCC, RCWC, OPF, and Aventis.

16          THE COURT:  Okay.  Very good.  Mr. Plevin, can I tell

17 a dog story?

18          MR. PLEVIN:  Sure.

19          THE COURT:  Okay.

20          MR. PLEVIN:  I have lots of them though.

21          THE COURT:  Yeah.  Here's mine.  Years ago, when we

22 were fairly early into the pandemic, we had a Zoom hearing on a

23 motion for summary judgment.  And counsel for the party

24 defending against the motion was making an impassioned argument

25 to me.  And at one point, he turned very slightly and said,

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 7
of 90

1   you're just not helping.  And everybody froze.  And he said,

2   oh, I'm sorry.  I was talking to the dog, who's been trying to

3   jump into my lap for the past ten minutes.  Well, so if you

4   have a -- if you have a dog who's going to make an appearance

5   today, I'm sure we'll all find it very helpful.

6               MR. PLEVIN:  Well, my (indiscernible) --

7               MS. UETZ:  I may put --

8               MR. PLEVIN:  -- very well-known to Judge Silverstein

9   because he's made several appearances in both Boy Scouts and

10  Imerys.

11              THE COURT:  Very good.  Okay.  Then he's a veteran.

12  Okay.

13              MS. UETZ:  Your Honor, if it would be helpful to our

14  cause, my four-pound dog is at my feet in my office right now,

15  and I would be happy to have him make an appearance.

16              THE COURT:  Well, I mean, it's only fair.  I mean, if

17  Plevin's --

18              MS. UETZ:  Whatever happens.

19              THE COURT:  Whatever.  So let me begin this way.  If

20  there have been any developments as a result of you folks

21  talking over the long weekend and since Thursday, I'm happy to

22  hear them.  We had a few things that were open-ended and not

23  yet decided on Thursday, and I'm prepared to give you my

24  thoughts on a number of them, but I certainly want to lead off

25  with whatever -- if you guys have made some progress on

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 8
of 90

1  something, or if you have something that you think should be

2  noted at the beginning about a different approach or whatever,

3  I want to defer first to you, and then I'll give you my

4  thoughts.

5        MS. UETZ:  Thank you, Your Honor.  If I may, Anne

6  Marie Uetz for the debtor.  We have had much internal caucusing

7  and review since we were with you last week.

8        THE COURT:  Okay.

9        MS. UETZ:  Recognizing the holiday, we have not yet

10  had that follow up with the committee, which we will intend to

11  have.

12        THE COURT:  Sure.  Okay.

13        MS. UETZ:  We did have some follow up with Mr. Plevin

14  in respect of one of the issues that arose sort of late --

15        THE COURT:  Yeah.

16        MS. UETZ:  -- in the hearing.  And I would ask Mr.

17  Plevin if he could -- well, I would ask Your Honor to consider

18  Mr. Plevin's view as to one of the questions that you raised

19  late in the hearing concerning the litigation option and

20  exactly what was being assigned.  So if it please the Court, I

21  do think that there's an update to be had --

22        THE COURT:  Okay.

23        MS. UETZ:  -- and I'm directing my comments to the

24  Court rather than Mr. Plevin.  But I know --

25        THE COURT:  Yeah.

1          MS. UETZ:  -- that we've had the discussion with Mr.
2     Plevin.
3          THE COURT:  Okay.  Can I just clarify one thing to
4     make sure we're all on the same page?
5          MS. UETZ:  Yes.  Of course.
6          THE COURT:  In my mind, and I hope I articulated this
7     well the other day, there's a difference between what the legal
8     effect is of a plan doing X, something we can argue about at
9     confirmation, and whether the debtor and a counterparty to
10    effectively an agreement -- we'll call it an agreement, for
11    lack of a better word for it, are in agreement about what they
12    are -- to what they are agreeing because that, to me, is a
13    disclosure statement issue.  What happens when you do X is more
14    likely a confirmation issue.  And I was trying to separate
15    those two.  As kind of intertwined as they are, that's what I
16    was getting at.
17         So I'm not trying to put words in Mr. Plevin's mouth.
18    But if we're talking about the disclosure statement aspect of
19    this, I am more worried about is there an agreement or not.  If
20    there isn't, can we really solicit if it's uncertain what the
21    what the understanding is between the debtor and one of the
22    insurance companies?
23         Mr. Plevin, that's what I was trying to get at.  I
24    suspect you knew that, but I wanted to make sure we began with
25    that.  Okay.

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 10
of 90

1        MR. PLEVIN:  Right.  And Your Honor, I guess I should

2    plead confusion because I'm not a hundred-percent sure what

3    conversation Ms. Uetz is referring to.  And maybe --

4        THE COURT:  Well --

5        MR. PLEVIN:  we can have a break later, and she and I

6    can talk.

7        THE COURT:  Sure.  That's fine.  That's fine.  Yeah, I

8    mean, I don't want to put you on the spot about something

9    that -- well, we can take a break in a little while.

10       Mr. Weisenberg, you want to go ahead?

11       MR. WEISENBERG:  Yes, Your Honor.  Brent Weisenberg,

12   on behalf of the committee.  Your Honor, it's the committee's

13   position that both of the issues that you identified are

14   present here, meaning there's a disclosure issue.

15       THE COURT:  Yeah.

16       MR. WEISENBERG:  But there is also a plan confirmation

17   issue.  And it's our position that if the plan on its face runs

18   afoul of California law, it will be impossible for the plan to

19   be confirmed.  And as you know --

20       THE COURT:  Right.

21       MR. WEISENBERG:  -- at times, courts have decided that

22   rather than going down that road, they would --

23       THE COURT:  Yes.

24       MR. WEISENBERG:  -- take that issue up now.  And so we

25   can discuss that at length if you'd --

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 11
of 90

1          THE COURT:  Sure.

2          MR. WEISENBERG:  -- like, Your Honor, but I did want

3   to make clear that we sit on both sides of that argument.

4          THE COURT:  Well, I know I've heard you say that, and

5   I certainly understand it.  I think let's get where we can get

6   with my rulings and what's left that may be -- I mean, some of

7   the matters that are left may be fairly easily dealt with or

8   less consequential.  And if we need to take a break and have

9   Mr. Plevin and Ms. Uetz talk about that.

10          I agree with you.  I saw them as two different issues,

11  and I was not yet as convinced as you'd like me to be that I

12  need to stop the presses with respect to the second one, but

13  I'm going to hear you today.  Okay.  I get it.

14          Makes sense?  Okay.

15          MS. UETZ:  Thanks, Your Honor.

16          THE COURT:  Does anybody else have anything

17  preliminary before I give you guys some thoughts on matters

18  that were sort of hanging out there on Thursday?

19          No?  Ready to go?

20          Okay.  Let me address a few things here.  The first

21  one -- well, the first thing we talked about Thursday was what

22  I think we called in shorthand form the OPF motion, which was

23  the committee's motion to have standing to prosecute various

24  claims, most notably what the committee has identified as at

25  least a potential fraudulent transfer claim or maybe preference

1    claim that sort of was articulated as we went along, but most

2    obviously, a fraudulent transfer claim with respect to the

3    transfer of about 106-million dollars and then I think about 5-

4    million dollars each within the forty days prior to the

5    commencement of the bankruptcy case.

6         The question that I -- well, the first question to

7    deal with in this analysis most typically is is there a

8    colorable action here. And that is usually defined as is there

9    an action that one believes would survive a 12(b)(6) motion. I

10    believe that the critical question in that analysis, and I kept

11    trying to figure out if we could preview that or get some sense

12    of that before we decided to go forward with this or not was

13    the fairly simple sounding, but not probably simple in practice

14    question whether there was a transfer of property to the debtor

15    because although I think these funds were located at the

16    diocese, the debtor has arguments that significant portions of

17    them really weren't the debtor's property.

18         There's a significant portion that was belonging to

19    the schools and would have been their -- although it was in the

20    debtor's bank accounts, maybe for investment purposes, it

21    really was money that belonged to the schools. And there were

22    other funds as to which I'm told, at the very least, the use is

23    restricted.

24         So I began the analysis with, okay, how would we think

25    about those issues and how 12(b)(6)-able (sic) would this be on

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 13
of 90

1  that basis because I thought that's really where the debtor was

2  coming from. There was an elongated discussion between me and

3  one of the debtor's counsel where I kept trying to ask, well,

4  is this something more than just that question of property of

5  the estate or debtor's property. And counsel was urging on me

6  some further theories as to why this couldn't be a fraudulent

7  transfer, which maybe it's my shortcoming, but I didn't find to

8  be all that analytically helpful. To me, the question keeps

9  coming back to, well, was this the debtor's property or not.

10       So again, the debtor elongated somewhat the

11  description of why that's problematic during oral argument,

12  which is fine. As to the question of whether some property is

13  the school's, it wasn't so clear to me. I know that there were

14  different programs referenced for money that came into the

15  diocese but was held for different purposes.

16       One question that I don't think is articulated quite

17  yet is well, in what form was it held. Were these all held in

18  different segregated accounts, or were they held with some

19  understanding that, gee, this is for this and this is for that,

20  even though it's in the same account? Some courts have relied

21  on the manner in which the money was held as being very helpful

22  in determining whether this kind of question is 12(b)(6)-able

23  (sic) or not. I'm not sure I would rely solely on that, but

24  that's a matter as to which I don't think I quite have the

25  understanding that I would need if I were to make a decision on

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 14
of 90

1    that basis.

2         I'll note as well that all of you guys who are

3    bankruptcy lawyers know that it is frequently the creditors

4    position that, well, I know the debtor's holding that, but it's

5    "really mine".  I don't have a claim to it.  It's mine.  I'll

6    take it.  The rest of you have a lot of -- have a lot of fun

7    with the bankruptcy, and I'll just go home and take my stuff.

8    That's an argument that obviously we hear all too often, and

9    there's a big difference between somebody having a claim and

10   somebody actually being able to assert that was mine.  Those

11   are two very different things.

12        And while the Bankruptcy Code and the bankruptcy cases

13   certainly understand and respect a difference between property

14   that the debtor may hold for another and property the debtor

15   otherwise holds, I think it's also fair to say that the

16   bankruptcy cases take a fairly jaundiced view of the broad way

17   the creditors would like to assert that position.  So I don't

18   think it's a position that I should assume is easily taken or

19   easily proven.

20        So the debtor's statements about, well, it's really

21   the school's money are fine.  I'm not so sure I would accept

22   them at face value enough to be certain that I would grant a

23   12(b)(6) motion on that.  And I think similarly with respect to

24   restricted funds, it may be that there really was something

25   like a trust that was set up here under California law, and

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 15
of 90

1    that would be a fairly easy answer.  It doesn't sound like it.
2    If that were the case, I think we'd be having -- we'd be
3    hearing different arguments.
4         So the extent of the restriction in my mind is
5    something that would probably take a little bit more legal
6    sleuthing and fact examining than a 12(b)(6) motion would be
7    likely to involve.  It may well be that the debtor would, on a
8    summary judgment motion or something along those lines, be
9    successful or partially successful here.  But in the
10   hypothetical world of I would look at a 12(b)(6) motion, I
11   don't necessarily feel at the moment that it is so certain that
12   I would grant that, that I would find this claim isn't
13   colorable.  But having made that determination for this
14   purpose, I would also want to skip down to the last factor,
15   which is would the pursuit of this action -- sort of cut
16   through and make the language simpler -- benefit the estate.
17   It might, but not now.
18        So my instinct is to recognize that there may well be
19   a claim worth pursuing here, but that I continue to believe
20   that we need to play out some issues with respect to the plan
21   and that allowing the litigation to go forward now would not
22   presently be a benefit to the estate.  It would be, I believe,
23   a significant monetary drain and a significant drain on
24   attention.  Having said that, if we do not make progress with
25   the plan, then I think that this is exactly the thing that, for

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 16
of 90

1 a whole bunch of reasons, might well be appropriately pursued.

2 So I mean, just hypothetically, for example, if we get to May

3 and the plan is voted down or is not going to be pursued or

4 there other issues that come up, I think I would look at this

5 very differently for that purpose.

6 So I'm basically going to deny the motion without

7 prejudice on the theory that I think the timing is really

8 critical here and the timing very much informs the question of

9 benefit to the estate. Having said all that, I'm very mindful,

10 as I'm sure the committee is, that there's a two year statute

11 on these kinds of things. And I'll just say, if the debtor

12 wants to entertain a stipulation with the committee to extend

13 any 546(b) statute of limitation issues, I would approve that.

14 If they don't do it, I'll do it myself. We are not going to

15 run up against the 546(b) limitations here. So if you guys

16 want to pay some attention to that, great. If you don't, I'll

17 just keep it on my docket to do it, and I will extend the

18 deadline on my own. So that's the OPF motion.

19 With respect to the motion for relief from stay, I was

20 leaning very much toward granting that. I thought an awful lot

21 of good could come from getting some real data on the claims.

22 And frankly, I don't mean to be flip here, but also from

23 creating in everybody's mind the possibility that you're going

24 to hear something in those determinations that you don't like,

25 which I think has been and an incentive to move cases along

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 17
of 90

1    more quickly than perhaps they were proceeding without that

2    incentive.

3           But I'm a little bit concerned that what I heard the

4    other day, and I thank Mr. Simons and others for their candor,

5    was that really only one of the six advertised potential

6    bellwether actions is potentially ready anytime soon.  That

7    undercuts the practical effect and the practical benefit of

8    this.

9           I'm also somewhat concerned about the fact that

10   there's a new presiding judge with respect to these matters and

11   that that person has yet to have a hearing with respect to the

12   consolidated matter.  And I'm both not sure how that judge

13   would otherwise want to handle matters.  And I want to be very

14   loathe about either dictating anything in that proceeding or

15   not understanding that once I grant relief from stay, I don't

16   want to ungrant (sic) it.  I think that doing it is going to be

17   consequential if and when I do it, and I don't want to do it

18   with any strings.

19          So at the moment, because of my uncertainty about how

20   fast we would get to anything that looked like a helpful data

21   point, for the moment, I'm going to deny the motion for relief

22   from stay, but it's very much without prejudice because things

23   may change, and it may be that it's something that will be very

24   helpful in the future.  I don't have the sense that it would be

25   helpful now.

1        Turning to the disclosure statement, I want to deal

2    sort of in tandem with the questions of whether to include

3    charts, and if I let the debtor include charts, whether let the

4    committee include charts, as well as the committee's request

5    that I require that the debtor, for lack of a better word,

6    estimate the total amount of the survivor claims.  I'm going to

7    answer both those questions in the negative.

8        I think that charts, while the debtor may believe that

9    they're helpful in the context of what has been accomplished in

10   different bankruptcy cases, I'm going to agree with the

11   committee that I think every one of these situations is

12   different enough, every context is different enough, that

13   including charts -- I don't think anybody's trying to be

14   misleading here.  I just believe that it's really not terribly

15   helpful to the otherwise uneducated reader of disclosure

16   statements to look at a chart without understanding all the

17   reasons why the context and many base facts might be completely

18   different from one case to another, let alone the fact that

19   there are other ways of resolving these kinds of claims that do

20   not depend upon a bankruptcy case.  And those results might be

21   very different.  And that's exactly something that I think a

22   claimant is entitled to think about, if we're not in a

23   bankruptcy, what might happen.  So I think that for all those

24   reasons, I think charts are better left out of this exercise.

25        And in my mind, analytically, for a similar reason,

1   I'm going to resist the urge to ask the debtor to, for lack of

2   a better word, estimate or come up with a aggregate number with

3   respect to the abuse survivor claims. I'm going to agree with

4   the debtor that again, there are ways in which every claim is

5   different, although I realize that when we treat these things

6   under the post-confirmation world, we do treat them in a -- we

7   try to routinize them in some fashion.

8         But having said that, these claims are unliquidated,

9   and most of the claim forms, I'm told, don't even purport to

10   include an amount. And I'm not sure what it would help to have

11   the debtor take even what might be a very educated guess as to

12   what those numbers are. I think that also would end up being

13   more confusing than anything else, and I don't see that it

14   really helps the process all that much to have the debtor take

15   that position and have somebody who has a dog in that fight in

16   terms of each of their own claims try to make sense of what

17   that means. So I'm going to resist the urge to have the debtor

18   estimate the claims.

19         With respect to the liquidation analysis and the

20   1129(a)(7) issues, we had an extensive discussion about that.

21   The debtor at the moment is not providing what you would think

22   of as a traditional liquidation analysis on the theory that

23   really, we couldn't be liquidated outside of bankruptcy. And I

24   think that may well be correct, but it may also be the case

25   that under those circumstances, the debtor simply isn't a good

1    candidate for reorganization under Chapter 11. I'm going to

2    agree with the committee that 1129(a)(7) is an integral part of

3    the confirmation process. And the liquidation analysis is

4    required in every case. And I think that I'm prepared to

5    discuss some practical ways we deal with that, but I think the

6    argument that we can't be liquidated overstates the proposition

7    in a number of ways.

8          The legal protections that underlie that assertion by

9    the debtor, I think, are real. There clearly are protection of

10   religious functions and First Amendment issues that go to why

11   we would never entertain thoroughly liquidating a debtor. But

12   those are not protections that go to any particular asset.

13   It's not as if state law says a judgment creditor may execute

14   against assets, except something affiliated with a religious

15   organization. The point is more that as you go through that

16   liquidation, a time would come, I believe, when the liquidation

17   would severely enough impinge upon the function and the sacred

18   duties of a religious organization that, for public policy

19   reasons, you wouldn't want to continue it.

20          Now, I think all of this in the bankruptcy context is

21   pretty undefined, which is why I was asking the debtor as a

22   matter of disclosure and in the disclosure statement, to

23   articulate what is the theory that would limit the liquidation

24   in your minds in this context. And it could be anything from

25   well, given that we are providing the service and it's the

1   bishop's sacred duty to do it, given all that, it's whatever we

2   say it is because we're the only ones who can judge at what

3   point we're effectively not being able to perform our religious

4   duties and our religious functions.  If that were the debtor's

5   position, they can say it, and then everybody could decide

6   whether that's consistent with what they believe nonbankruptcy

7   law to be and whether it's "fair and equitable".  It may be

8   that there is a way to articulate a functional agreement that

9   at this point if we liquidate these kinds of assets at this

10   level, at that point, we are unquestionably no longer able to

11   perform our duties.

12         So I think, first of all, what we need from the debtor

13   is just some statement of whatever they think it is that limits

14   that in this context.  And I realize that's -- I'm assuming

15   that the fact that I haven't gotten a lot of case law about

16   this is because I don't think this has been all that well

17   articulated.  So the debtor just has to take a position.

18         And I think that's going to be helpful on a disclosure

19   basis, both to explain, if they have two liquidation analyzes,

20   why one is perfectly persuasive and the other one isn't.  And

21   we'll come back to that in a second.  I think it's also

22   appropriate for creditors to see this because one of the things

23   a creditor decides in voting on a plan is the embrace of the

24   stark reality if they vote a plan down, there may be no other

25   options and then back out in the cold, cruel world.  But I

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 22
of 90

1   think that's something for creditors to decide.

2           So I think that that analysis and that articulation of

3   the principle would be helpful not only to the Court.  It would

4   be helpful, frankly, to the creditors at disclosure statement

5   time to decide whether this plan comports with their

6   understanding and their sense of what's fair and equitable.

7   And I think that's a fight we have -- we don't have to have

8   that fight now.  We have to be able to have that fight at

9   confirmation, which is why I think it's important for the

10  debtor to articulate it now for all those purposes.

11          Also, I also believe that, although I want to -- I

12  think I'm prepared to hear some flexible approaches to how we

13  have a liquidation analysis.  I think we need one that, at

14  least hypothetically, encompasses everything that might in some

15  world be liquidated.  And I realize that's not going to be

16  easy.  Just for my own curiosity, I went back into the docket

17  and looked at the initial schedule A and schedule B and SOFA

18  statements by the debtor and the various amendments.  And one

19  thing that I noticed, and I know you guys all know this better

20  than I do, as stated and as amended from time to time, the

21  debtor's position on the value of real property was

22  undetermined.  And it's still that, as far as I can tell.

23          So I want to -- in making this determination, I want

24  to be open to ideas as to how we might come up with some

25  numbers or otherwise express this liquidation analysis concept.

1    But I think we need something that goes beyond, well, we

2 couldn't be made to do it, so therefore we're not going to give

3 it to you. And I'm not trying to be flip because I'm going to

4 give you a number here, and it's a little misleading because a

5 parcel of real property doesn't mean that it's 400-square

6 acres. It just means that for certain purposes and recording

7 and so on, there are different parcels that are deemed to be

8 separate entities. There are 205 parcels of real property that

9 the debtor identifies here. None of them have a value. Again,

10 I'm willing to be somewhat open minded about how we skin this

11 cat, but this is something that we simply have to address.

12       Moving on a little bit, the request from the committee

13 that I require the affiliates seeking a release to include

14 financial information in the disclosure statement, I think I

15 was a little abrupt with Mr. Prol because I think we were

16 really more in agreement than I was letting on. I agree with

17 him that -- well, I don't know that we want to hold up the

18 disclosure statement for this information. I agree with him

19 it's important to anybody voting on this plan and deciding

20 whether to give a release or not. I think that analysis should

21 be informed by some understanding of what the assets are and

22 what, for lack of a better word, the net worth is of any party

23 seeking such a release.

24       On that matter, I'll give you a preview. I think we

25 are likely to have a very involved discussion. If we do

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 24
of 90

1 approve a disclosure statement here, we're likely to have a

2 very involved discussion of the timing, which would include

3 discovery and which would include voting. I don't think

4 this -- if I approve a disclosure statement in the next week or

5 so, I don't think that means we have to have votes in twenty-

6 eight or thirty-five days.

7          I think we can -- with your guys indulgence and your

8 intelligent thinking about this, I think we can stage this in a

9 way that will make sense and will make the discovery that I

10 think is fairly important here meaningful to the process and to

11 the people voting on the plan. So I agree with Mr. Prol that

12 information is important. I think that all gets worked out in

13 how we schedule the voting and how we schedule the discovery

14 that I'm sure the committee is going to want to take of anybody

15 seeking a release.

16          The last point that I had in my open list was the

17 motion to compel further mediation, which we at least began to

18 talk about. The place where I'm a little bit stuck here is

19 there are clearly conflicting versions of how things were left

20 in Judge Sontchi's view of the status. One way or the other,

21 I'm going to want to know his views. I can literally give him

22 a call and not get into anything that's confidential and behind

23 the settlement mediation privilege. We could have him file a

24 declaration that would clarify his views. We could have him

25 appear at a hearing to clarify his views.

1     But before I make a ruling on that motion, I think

2     it's a very important motion.  I would want to be informed by

3     his views.  So we can talk about different ways we do that.

4     But that's a prelude to me to making a decision on that motion.

5         So those are the matters that I had outstanding that I

6     wanted to give you my thoughts on.  With that, I'm prepared to

7     resume discussion of other disclosure statement points or take

8     a break and let Ms. Uetz and Mr. Plevin talk and get square on

9     whatever points they want to make.  So it's your guys'

10    pleasure.

11        MS. UETZ:  Your Honor, I have at least one follow-up

12    question, if I may, posed to the Court, if you're willing to

13    answer it or not.  But I'd like to ask it, if I may, about your

14    ruling so I understand something better.

15        THE COURT:  Sure.

16        MS. UETZ:  Thank you.  And then I have one or two

17    other things.  But your ruling with respect to the charts, my

18    question is I'm trying to understand the scope of the Court's

19    ruling there.  I understand that the charts ought not be in the

20    disclosure statement, and so we will take them out.

21        THE COURT:  Right.  But I think --

22        MS. UETZ:  I take that in your ruling.

23        THE COURT:  But could that be relevant to

24    confirmation?  Sure.  That answer your question?

25        MS. UETZ:  It answers my question, Your Honor.

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 26
of 90

1    THE COURT:  Yeah.  I mean, the other side can say,

2  well, no, it isn't.  Or we took some discovery and we don't

3  agree.  Yeah, I mean, I think is that a reasonable as a

4  confirmation issue?  Sure.  I mean, that's a version of fair

5  and equitable.  Right?

6    MS. UETZ:  And Your Honor, just relatedly, related to

7  that, then, because it is -- because it will come up at

8  confirmation and the debtor would include, among its arguments

9  as to why the plan is fair and reasonable, a reference to some

10  outcomes in other cases will be part of what we argue.  It

11  won't be all of what we argue, clearly.

12    THE COURT:  Yeah.

13    MS. UETZ:  But it will be part of it.  My question,

14  just for clarity as we revise the disclosure statement, is may

15  we say anything in the narrative about outcomes in other

16  bankruptcy cases, or should we just leave that alone?

17    THE COURT:  I would leave it alone because among other

18  things, I'm willing to bet that if you preview that issue as a

19  confirmation issue, there may be the world's greatest motion in

20  lim (sic) coming from the committee.  We'll see.  Right.  I

21  mean, I don't want to prejudge that.  If I were committee

22  counsel, I might certainly have that in mind.  So I would --

23    MS. UETZ:  It might be the committee's worst great

24  motion in limine.  I'm just kidding.

25    THE COURT:  You never know.  You never know.

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 27
of 90

1          MS. UETZ:  Understand.

2          THE COURT:  I mean, I think of all of you as heroic.

3   I know you know that so that's why.  No, I --

4          MS. UETZ:  No, I appreciate your (indiscernible)

5   question.

6          THE COURT:  -- I think that -- I expect the question.

7   I don't think it's irrelevant at confirmation, but the

8   committee may have a position why, as presented, it's should be

9   limited in some way, or we shouldn't go there for some other

10  reason I'm not articulating now but they will.  Okay.

11         THE COURT:  Okay.

12         THE COURT:  Makes sense?

13         MS. UETZ:  That really helps clarify for us, Your

14  Honor --

15         THE COURT:  I appreciate it.

16         MS. UETZ:  -- and I appreciate that.

17         THE COURT:  I appreciate it.  Okay.

18         MS. UETZ:  One other point I want to raise, which was

19  left open the other day, admittedly, we have not had the

20  further meet-and-confer with the committee, but I think this

21  will help inform it if I ask --

22         THE COURT:  Sure.

23         MS. UETZ:  -- the question and depending on --

24         THE COURT:  Sure.

25         MS. UETZ:  -- how Your Honor responds.

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 28
of 90

1            THE COURT:  Sure.

2            MS. UETZ:  It has to do with the appendix versus the

3    inserting the committee's position throughout the disclosure

4    statement.

5            THE COURT:  Yeah, I had an idea about that.  Can I

6    give you an idea?

7            MS. UETZ:  Please.

8            THE COURT:  I mean, everybody is assuming that this

9    goes out in a hard-copy form?

10           MS. UETZ:  I'm not.

11           THE COURT:  Well, if it goes out, is it going to go

12   out in an electronic form?

13           MS. UETZ:  I would think it would go out in an

14   electronic form --

15           THE COURT:  Okay.

16           MS. UETZ:  -- given the length of the document, Your

17   Honor.

18           THE COURT:  Well, then here's an idea.  I'll be

19   stunned if I'm the first person to think about this.  Would it

20   be possible to have, rather than have the committee put their

21   many paragraphs disputing aspects of what the disclosure

22   statement is saying, would it be possible simply to have a link

23   to wherever in the committee discussion at that point is so

24   somebody can literally click a link and go right to what the

25   committee says about this.  Is that possible?

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 29
of 90

1          MS. UETZ:  Your Honor, if I may, I'd like to discuss

2     that with the committee.  It's an interesting concept.

3          THE COURT:  Okay.  Mr. Moore wants to tell me

4     something about that or something else.

5          MR. MOORE:  Your Honor, from a technical standpoint,

6     it's certainly possible to do that inside of a PDF document.

7          THE COURT:  Yeah.

8          MR. MOORE:  You can bookmark.  You can link.

9          THE COURT:  Right.

10         MR. MOORE:  You can hyperlink --

11         THE COURT:  Right.

12         MR. MOORE:  -- inside of the document itself.

13         THE COURT:  Right.  I mean, the committee -- I mean,

14    the committee has made the point that it's going to be -- this

15    is going to be a lot of stuff.  It's going to be cumbersome.  I

16    think they're right about that.  If there's a way to make this

17    less cumbersome --

18         MR. MOORE:  They don't the page turning.

19         THE COURT:  Sorry.

20         MR. MOORE:  They don't want the page turning, to say,

21    okay, I'm on page 7.  I need to go to page 212.

22         THE COURT:  Yeah.

23         MR. MOORE:  But if you can shortcut that somehow.

24         THE COURT:  Well, I think that's right.  I mean, I

25    think potentially that will cut down the number of people who

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 30
of 90

1  make the effort to go see what the committee says about

2  something.  If there is a way through a hyperlink to do that

3  efficiently so you just click and now here's the committee's

4  position, maybe that helps solve that problem.  If you guys

5  want to talk about that, I'm open to some clever thinking about

6  that.  I mean, I cannot be the cleverest person about that, I

7  assure you.  It's just an idea.

8           MS. UETZ:  I think, Your Honor, for the debtor's

9  perspective, and just to make really clear, we hadn't expressed

10  this, but yeah, we did assume and plan that we --

11           THE COURT:  Yeah.

12           MS. UETZ:  -- would be sending it electronically.

13           THE COURT:  Sure.  Sure.

14           MS. UETZ:  So we will absolutely discuss that --

15           THE COURT:  Okay.  All right.

16           MS. UETZ:  -- with the committee, and maybe that

17  will --

18           THE COURT:  Okay.

19           MS. UETZ:  -- help to resolve that issue.

20           THE COURT:  Okay.  Great.

21           MR. PROL:  Okay.  Judge, Jeff Prol on behalf of the

22  committee.  I think we just want to caucus amongst ourselves,

23  and talk to our client.

24           THE COURT:  Yeah.  That's fine.  And by the way, I

25  mean, I'm very sympathetic to what you're saying.  So this is

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 31
of 90

1  just --

2         MR. PROL:  Okay.

3         THE COURT:  -- an idea, Mr. Prol.

4         MR. PROL:  Yeah.

5         THE COURT:  Okay.

6         MR. PROL:  Thank you.  I appreciate it.  I guess the

7  first thing that comes to mind is, look, the disclosure

8  statement will be going not only to plaintiffs' lawyers, but

9  plaintiffs are going to want to read this themselves.

10         THE COURT:  Absolutely.  They should.

11         MR. PROL:  And a lot of them are not terribly

12  sophisticated.  And so getting something electronically with a

13  link might present a little bit of problem.  But again, it's

14  just something that I want to talk through.

15         THE COURT:  Okay.  I appreciate it.

16         MR. PROL:  Okay.  Okay.

17         THE COURT:  Thank you very much.

18         MR. PROL:  Thank you.

19         THE COURT:  Okay.  Ms. Uetz, did you have something

20  else before we --

21         MS. UETZ:  On the subject of mediation, Your Honor --

22         THE COURT:  Yes.

23         MS. UETZ:  -- I'm going to make a comment and then ask

24  my question.

25         THE COURT:  Sure.

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 32
of 90

1          MS. UETZ:  Because I was struck by your focus on

2     getting Judge Sontchi's view, presumably because it is the

3     committee which has objected.  And Judge Sontchi was

4     responsible for the committee mediation sessions that occurred.

5          THE COURT:  Yes.

6          MS. UETZ:  My suggestion, if I may, Your Honor, is I

7     think that it would be useful to get all three mediators'

8     views.  I don't know to the extent to which you have any of

9     their views.  And so I think for this Court to be best

10    informed -- and frankly, you getting the views of the three

11    mediators I think would better inform Your Honor's decision on

12    the global mediation motion more than I ever could.  And so --

13         THE COURT:  Well, it might.  It might.  I mean, I was

14    focusing -- as you're commenting, I was focusing on what I was

15    told, which is two significantly different versions of Judge

16    Sontchi's commentary when the mediation suspended, for lack of

17    a better word.  Okay.

18         MS. UETZ:  And we use the word "paused", I think.

19    Yeah.

20         THE COURT:  Yeah, I know.  I know.

21         MS. UETZ:  So if I may be so bold, I would really urge

22    the Court to get the input of all three mediators into the

23    mediation process.  Frankly, they may recommend something I

24    haven't, and it may be better.  I don't know, Your Honor.

25         THE COURT:  Okay.

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 33
of 90

1          MS. UETZ:  We really are just pushing to move that

2     forward.  And in that vein, you said, how can you be informed

3     of their views?

4          THE COURT:  Yeah.

5          MS. UETZ:  For my part, Your Honor, for the debtor, I

6     believe that the mediators would respect, of course, the

7     mediation privilege.  While not informing you as to the

8     substance of offers --

9          THE COURT:  Yeah.

10         MS. UETZ:  -- and such, I think they could absolutely

11    talk with you about the process.  And for the debtor's --

12         THE COURT:  And that's all I'm suggesting.  That's all

13    I'm suggesting.

14         MS. UETZ:  For the debtor's part, I actually think

15    that that conversation would be better had between you and the

16    mediators without the influence of counsel so --

17         THE COURT:  Yeah.  And I believe that some of my

18    colleagues have agreed with that position and have actually had

19    those conversations.  So I don't think I would be the first

20    person to do this.  But also --

21         MS. UETZ:  You would not, in our observation, Your

22    Honor --

23         THE COURT:  Yeah.  Okay.  But I'm --

24         MS. UETZ:  -- in review other matters.

25         THE COURT:  Right.  I'm happy to hear from the

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 34
of 90

1    insurers.

2          MS. UETZ:  And the debtor would be very supportive of

3    that.

4          THE COURT:  Okay.  I'm happy to hear from the

5    committee or the insurers, but I think, at the end of the day,

6    I have the ability to make a decision if a phone call is just

7    the best way to pursue this.  If people want to react to that

8    now, that's fine.  I sprang it on you.  If you want to talk

9    about it, that's fine too, and we can take this up soon.  Or we

10   can take it up after a break, if we're going to take a break

11   for Mr. Plevin and Ms. Uetz to talk about the plan confirmation

12   insurance issue.

13         MR. PROL:  Your Honor, Jeff Prol on behalf of the

14   committee.  Your Honor, once we get through the preliminaries,

15   I think a break would be very helpful.

16         THE COURT:  Yeah.

17         MR. PROL:  Not only so that they can confer, but I'd

18   also like to talk to the (indiscernible) team and in order to

19   be able to react to this (indiscernible).

20         THE COURT:  Okay.  Mr. Prol, I'm losing you a little

21   bit.  I don't know if you're close to the mic.

22         MR. PROL:  I apologize.  I have problems with my mic

23   on this computer.  Is that better?

24         THE COURT:  It's better.  Yes.  Thank you.

25         MR. PROL:  Yeah.  Okay.  Thank you.

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 35
of 90

```
 1            THE COURT:  I'm sorry.  Did you want to -- did you
 2    have something else you want to tell me?
 3            MR. PROL:  No.  No, Your Honor.  I'll repeat what I
 4    said.  And that is --
 5            THE COURT:  Which is you want a break after this would
 6    be helpful?
 7            MR. PROL:  Yes.  Thank you.
 8            THE COURT:  Gotcha.  Okay.  Thank you.
 9            All right.  Anybody else want to --
10            MR. SCHIAVONI:  Your Honor.
11            THE COURT:  Yes.
12            MR. SCHIAVONI:  Yes.  If I could, it's Tanc Schiavoni,
13    Your Honor.
14            THE COURT:  You bet.  Sure.  Nice to see you.
15            MR. SCHIAVONI:  For Century.  I'm sorry.  I had a
16    little problem with the video at the beginning.
17            THE COURT:  No problem.
18            MR. SCHIAVONI:  I honestly don't have a clue what Mr.
19    Sontchi wants -- Judge Sontchi wants to talk about because we
20    weren't really part -- like, we were excluded from his
21    discussions between the debtor and the committee.  So I don't
22    know if we could -- I would suggest that we at least be given
23    an opportunity to confer ourselves with him to find out what
24    his thoughts are in the context of the mediation.  I don't know
25    how you speaking with the mediators in a sense doesn't end up
```

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 36
of 90

1  violating the sanctity of sort of what's been mediating.  I
2  just don't see it.
3          It's like, and I know this is an issue of different
4  judges have different views, and there are some --
5          THE COURT:  Yeah.
6          MR. SCHIAVONI:  -- who just feel it just really
7  shouldn't speak to them.  And --
8          THE COURT:  Yeah.
9          MR. SCHIAVONI:  -- I do, Judge, I want to be clear, I
10 have great trust in your judgment and discretion, even if you
11 end up disagreeing with me on this.  Okay.
12         THE COURT:  Thank you.
13         MR. SCHIAVONI:  So I mean, just to be clear about
14 that, but --
15         THE COURT:  No, I --
16         MR. SCHIAVONI:  -- it might actually just be helpful
17 if we just had a day to talk to him first, though, because we
18 might at least be able to narrow the issues because I'm not
19 sure --
20         THE COURT:  Okay.
21         MR. SCHIAVONI:  -- what he thinks the issue is, so to
22 speak.
23         THE COURT:  Well, can I respond to that?  By the way,
24 thank you for saying that.  It's an important point.  Even if I
25 end up disagreeing with you, I respect the point enormously,

1  and you even more.

2      I mean, I'm reacting to the fact that I have a motion

3  to compel folks back to mediation.  It seems to be focused on

4  the mediation between the debtor and the committee on the

5  theory that, at least for now, the debtor and the insurance

6  companies have hit their stagnarian (phonetic) angle of repose.

7  And we have a plan that reflects that.  Also I'm further

8  told -- I just have different versions of what the status was

9  when the matter when the mediation suspended.  And one side's

10  telling me that the mediator basically said they were at an

11  impasse, and the other side said, no, we're only pausing.

12      So I'm just trying to follow up on that, most

13  immediately, and get a sense of if the mediator has a position

14  about what the status was when things ended.  Without knowing

15  who said what to whom, I think he can tell me what he thought

16  the status was when things ended, and that might be helpful to

17  me.  I'm not sure I need much more than that.

18      But I'm open to -- if people think it's a better

19  process for Judge Sontchi or others to be here at a hearing and

20  tell us all that or to file a declaration, I'm willing to

21  consider different ways of thinking about it.  I think there

22  are reasons why a phone call might be a little better, frankly,

23  from a candor standpoint.  But I wanted to throw that idea out

24  there, and you can all give me your thoughts about it.

25      And Mr. Schiavoni, as always, thank you for your

1    thoughts.

2          Do we have anything else that we would want to get

3    into before I take a little break and let people huddle about

4    different things?

5          MS. UETZ:  Not from the debtor's perspective, Your

6    Honor.  Thank you.

7          THE COURT:  Okay.  Anybody else?

8          How long do you want to take?

9          MS. UETZ:  I would suggest fifteen or thirty minutes.

10   And I'll be informed --

11         THE COURT:  Okay.

12         MS. UETZ:  -- by Mr. Plevin if he thinks fifteen --

13         THE COURT:  Okay.  No --

14         MS. UETZ:  -- or thirty minutes is best.

15         THE COURT:  -- one thing I -- one thing I can tell you

16   is we have a social engagement at the court today.  And I will

17   be -- I'm going to be breaking at about ten to 12 for that and

18   back at about probably 1:15-ish.  And I'm happy to go into the

19   afternoon.  I mean, we'll get as much done today as we can get

20   done.  Okay.  But I know that we're going to -- we're going to

21   need to recess for a while.

22         So if that helps you think through when you want to

23   come back, great.  If it doesn't, that's fine.  But at about

24   ten to 12, we'll be breaking one way or the other.  Okay.

25         MS. UETZ:  Thank you, Your Honor.

1          MR. PLEVIN:  Your Honor, this is Mark Plevin.  Why
2     don't we say about twenty minutes?
3          THE COURT:  All right.  That gets us to about ten
4     after; is that okay?
5          MR. PLEVIN:  Yeah.
6          MS. UETZ:  Great, Your Honor.
7          THE COURT:  Okay.  Thank you very much.  Thanks to all
8     of you.  See you in about twenty.  Thank you.
9          MS. UETZ:  Your Honor, just a technical question for
10     Ms. Fan.  If we exit --
11          THE COURT:  Yes.
12          MS. UETZ:  -- and rejoin, does that work, or do we
13     need to stay on?  I just, technically, it may help.
14          THE COURT:  Go ahead, Mr. Fan.
15          THE CLERK:  Yes, Your Honor.  Parties can exit.  I
16     will keep the Zoom open, and they can rejoin as
17          THE COURT:  Okay.
18          THE CLERK:  -- they need to, Your Honor.
19          THE COURT:  All right.
20          MS. UETZ:  Thank you.
21          THE COURT:  See you guys -- see you guys at about ten
22     after.
23          MS. UETZ:  Appreciate it.  Thank you.
24          THE COURT:  Okay.  Thank you very much.  Thank you.
25          (Recess from 10:31 a.m., until 10:31 a.m.)

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 40
of 90

1      THE CLERK:  Please come back to attention.  The court

2  is in session.

3      THE COURT:  Okay.  We're back.

4      Ms. Uetz, I think the ball's back in your court.

5  Where do you want to start?

6      MS. UETZ:  Yes, Your Honor.  Thank you, Your Honor.  I

7  would ask the Court to hear Mr. Plevin on the subject of the

8  assignment and the --

9      THE COURT:  Okay.

10      MS. UETZ:  -- issue that you described as one of the

11  two issues, whether there is a meeting of the minds as between

12  the debtor and the committee.

13      THE COURT:  Okay.

14      MS. UETZ:  Separate from that, I've given you the

15  debtor's view with respect to the motion to compel mediation

16  and --

17      THE COURT:  Yeah.

18      MS. UETZ:  -- that the debtor is absolutely fine and

19  actually thinks it would be a good thing for this Court to get

20  the input of all three mediators with respect to process.

21      THE COURT:  Okay.

22      MS. UETZ:  And not only do we not have any objection

23  to that, I actually think it would be better than the parties

24  trying to influence that discussion.

25      THE COURT:  Well, can I break that in pieces then?

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 41
of 90

1          MS. UETZ:  Sure.

2          THE COURT:  If Mr. Schiavoni wants to pick up the

3    phone and call a mediator and ask the same question I would, do

4    you have a problem with that?

5          MS. UETZ:  No, Your Honor.  I don't control that,

6    and --

7          THE COURT:  I don't either.  Okay.

8          MS. UETZ:  -- I don't purport to.

9          THE COURT:  I don't either.  Okay.  Okay.

10         MR. SCHIAVONI:  Judge, if I could, just, like, I

11   personally thought the selection of the caption for the motion

12   was not perfectly worded.  Okay.  I personally never viewed the

13   mediation as ending or that there'd be need to compel a

14   mediation.  I really saw what the debtor was doing was

15   suggesting let's get all together in February.  And I will call

16   Judge Sontchi, if that's acceptable to everyone, but I don't

17   think --

18         THE COURT:  I have no problem with it.

19         MR. SCHIAVONI:  I don't think anybody really -- at

20   least from our perspective at Pacific, we didn't view anyone as

21   suggesting the mediation was over.  So that's like, it'd be the

22   first case I ever had where we weren't talking going right into

23   the confirmation hearing.

24         THE COURT:  Right.  Understood.  Okay.  Thanks.

25         MS. UETZ:  And so Your Honor, with that, after those

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 42
of 90

1  two issues, I think ball is in my court to convene, meet-and-

2  confer, productive meeting with my friends who are counsel for

3  the committee --

4        THE COURT:  Right.

5        MS. UETZ:  -- and see what progress we can make.  In

6  terms of timing, I actually would want to have that discussion

7  and maybe return to the Court with a suggestion on timing

8  because I'm not certain how much time we will need to turn the

9  next and hopefully final amendment.  So --

10       THE COURT:  Okay.

11       MS. UETZ:  -- I'll look for direction, but that's what

12  I was thinking about timing.

13       THE COURT:  I appreciate it, but I want to make sure

14  that I'm not cutting you off if there were other issues that

15  you thought we needed to get clarity on re objections to the

16  disclosure statement.  Now is the time.  Okay.

17       MS. UETZ:  Understood, Your Honor.

18       THE COURT:  Now, maybe you're in the happy place where

19  you think where we've really resolved all the things that you

20  need a judge for.  That's fine.

21       MS. UETZ:  Not yet happy, Your Honor.  I will be happy

22  when we have a plan confirmed.  But for purposes of today --

23       THE COURT:  Well, how about content?  Okay.  Didn't

24  you say content for today?  Okay.  All right.

25       MS. UETZ:  Content for today.  And I think that you've

1  given us things that will really help inform our discussion

2  with the committee counsel --

3  　　　　THE COURT:  Okay.

4  　　　　MS. UETZ:  -- going forward and so --

5  　　　　THE COURT:  All right.  Well, why don't I -- so I

6  should hear from Mr. Plevin, and we'll see where that leaves

7  us?

8  　　　　MS. UETZ:  Yes.

9  　　　　THE COURT:  Is that fair?  Okay.

10  　　　　All right.  Mr. Plevin.

11  　　　　MR. PLEVIN:  Thank you, Your Honor.  I started off by

12  saying I was confused.  We had this morning, afternoon

13  doubleheader last week in two cities, and there were a lot of

14  conversations.  And I wasn't a hundred percent sure which

15  one --

16  　　　　THE COURT:  Sure.

17  　　　　MR. PLEVIN:  -- I was being asked to talk about.  But

18  just to clarify, there is no daylight between the debtor and

19  the insurers with respect to the terms of the assignment.  We

20  are in alignment that the debtor is assigning the rights they

21  have to the trust as described in the plan and the disclosure

22  statement.  And as Your Honor recognized last week and at the

23  beginning of the hearing today, the legal effect of

24  confirmation may have a role in how those rights are applied

25  later.  But for purposes of disclosure, there is no

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 44
of 90

1  disagreement between the debtor and the committee -- the debtor

2  and the insurers rather.

3       THE COURT:  Can I pursue that for just a second?  I

4  mean, I certainly take your point that this is unknowable in

5  the sense that a lot of what is being described here is going

6  to depend on some conduct that is going to occur, if at all,

7  after we're blessed with an effective date here.  Right.  So if

8  there are these -- I mean, putting aside your arguments about

9  the effect of confirmation, if there are these claims, they're

10  not even -- the predicate for them won't even occur until some

11  later date.  So to describe them with any kind of specificity

12  beyond they may occur if they do X is something that we really

13  can't do.

14       But I guess, where I really want to push back a little

15  bit is if the debtor says I'm transferring all my rights.  And

16  confirmation will result in the creation of a trust.  The

17  debtor's going to put some money in the pot.  At least one

18  affiliate is going to do the same thing.  Some insurance

19  companies may settle, although I don't have any sense of the

20  likelihood of that at the moment.  And at the end of the day,

21  then you're left with your rights against the insurance

22  company.

23       If the debtor says either, well, I don't think that

24  confirmation affects those rights and a discharge affects those

25  rights or I'm not sure but I'm giving you everything I have

1   otherwise, and the insurance company's position is the

2   discharge terminates some of those rights, I'm kind of at a

3   loss to how to describe that to somebody trying to vote on a

4   plan.

5         MR. PLEVIN:  Well, it's hard to -- it's hard to

6   describe because, as you pointed out, the facts haven't arisen

7   yet.

8         THE COURT:  So that part, I give you.  But you're

9   taking the position that, look, once this debtor is discharged,

10   those claims are gone as a matter of law.  The debtor either

11   agrees with that or doesn't know.  And I think that, for

12   disclosure purposes, I'm not entirely comfortable with that.

13   And I'm certainly going to let the committee weigh in on this.

14   So if you can help me with that piece of it, I'd be grateful.

15         MR. PLEVIN:  Well, I think, Your Honor, at the hearing

16   last week, there was reference.  I don't think this exact

17   phrase was used, but it was described as essentially being a

18   sort of quitclaim deed that the debtor, as I understand it,

19   hasn't necessarily gone through an analysis of the effect of

20   the discharge on these rights because once the trust is -- once

21   the effective date occurs and the trust has the rights, it's

22   not the debtor's problem.  And so I don't know that the debtor

23   has anything more that they could disclose on that point.

24         THE COURT:  Well, I guess I'll come at it from a very

25   slightly different angle.  If, for disclosure statement

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 46
of 90

1   purposes, what a creditor is looking at is look, there's no

2   other plan here.  And I'm not sure if in reality there ever

3   would be one.  You guys know better than me whether committees

4   have ever really robustly put together a plan and a religious

5   case or not and if they have, whether they've ever thought

6   they'd get it confirmed.

7           But if the decision is we either take this plan with

8   risks that the debtor either can't or won't identify but risks

9   that the insurance company believes are quite real, or we don't

10  take this and at least in that alternative universe, we

11  certainly have those claims, I mean, I think that's just, that

12  that's not a choice -- well, I'm uncomfortable with the way

13  that choice gets articulated and lined up.  That's what I'm

14  worried about.

15          I'm not trying to begrudge you your position that

16  confirmation would have a certain effect.  But I mean, I don't

17  know if we can say the insurance companies believe this.  It

18  may well be litigated after this is all said and done.  If

19  somebody thinks I can make a determination about that and I can

20  do it, I don't know, as part of this process, before we get to

21  confirmation, or at confirmation, maybe that's the way to think

22  about it.

23          But let me pause for a moment and hear from the

24  committee because I have a feeling they're going to tell me

25  this is a disclosure statement issue.

1          MR. PLEVIN:  If I could just make one point, Your

2     Honor.  I think it's an --

3          THE COURT:  Yeah.

4          MR. PLEVIN:  -- information issue.  What you're

5     basically saying is that the parties should consider putting in

6     legal briefs about the effect of the discharge on these rights,

7     and that's not a disclosure statement issue.  That's a

8     statement -- that's an issue for confirmation, where the

9     committee says, incorrectly, in my view, that the plan somehow

10    violates California law.  And if that's their view, then that's

11    a confirmation objection --

12         THE COURT:  Well --

13         MR. PLEVIN:  -- (indiscernible) 1129(a)

14    (indiscernible)

15         THE COURT:  No, I --

16         MR. PLEVIN:  -- (indiscernible) file a brief on that.

17         THE COURT:  I hear you.  I mean, another way to

18    articulate it would be in light of the plan and the

19    confirmation that the plan wishes to have happen, there is a --

20    from the insurance company's perspective, the rights will be

21    gone.  There's a significant risk.  We really can't predict

22    until a judge makes a decision.  At that point, somebody could

23    just say, well, I don't want to vote for this plan.  I don't

24    want any part of that risk.  I'm not voting for this plan.  And

25    I'm not sure -- I don't know if that's a fair choice or not.

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 48
of 90

1          So let me hear from the committee about how thoroughly

2     I've misstated what they're worried about.

3          MR. BAIR:  Thank you, Your Honor.  This is Jesse Bair

4     on behalf of the committee.

5          THE COURT:  Yeah.

6          MR. BAIR:  Setting aside the piece of this about

7     whether the plan violates California law, the committee

8     continues to believe that there is a very real disclosure

9     statement issue here.  And it sounds like what we're hearing

10    from the debtor and the insurance companies is that they agree

11    on the words on the page, but they don't agree on the legal

12    impact that those words will have on the insurance rights post-

13    confirmation.

14         And why we think that's significant is what a survivor

15    is going to see in this disclosure statement are

16    representations by the debtor that all of the insurance claims

17    are being transferred to the survivors post-confirmation.  But

18    if it's the case, as the insurance companies have said in their

19    briefing and appear to be saying today, that their view is that

20    by confirmation of the plan, an entire class of claims, bad

21    faith, extra contractual claims are being extinguished, that

22    needs to be described clearly because there's a difference

23    there between the survivors' rights --

24         THE COURT:  Okay.

25         MR. BAIR:  -- in state court and what their rights

1 will be post-confirmation --

2          THE COURT:  Yeah.  So can I --

3          MR. BAIR:  -- (indiscernible).

4          THE COURT:  I hear you.  Can I play it back and see if

5 I have it right?

6          MR. BAIR:  Sure.

7          THE COURT:  With all that, would it be sufficient in

8 your mind -- and if you don't want to answer it now, you need

9 to talk to your cocounsel, that's okay -- would it be

10 sufficient for a disclosure statement to say the debtor's

11 position is they're transferring all their rights to the abuse

12 survivors through the plan.  They are not taking a -- and I'll

13 not put words in Ms. Uetz's mouth.  They're not taking --

14 they're not warning that that necessarily means the rights

15 survive.  They're just, they're doing what trustees do, which

16 is whatever rights I have, you can have.

17          On the other hand, the insurance company's position is

18 that once that's accomplished through confirmation, the debtor

19 is discharged, those rights are, as a matter of law, gone.  It

20 is unclear what the answer is, and it will be unclear until the

21 judge makes a ruling on this at confirmation because I'm just

22 playing it out now in this fashion.  It is therefore entirely

23 uncertain, as we sit here today, whether your rights with

24 respect to certain claims against insurance companies are

25 preserved or not preserved through confirmation of this plan.

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 50
of 90

1    I mean, would that be -- if that were the disclosure, would

2    that be disclosure sufficient for you, or would that not be?

3    　　　　MR. BAIR:  I think we would want to talk.  As the

4    committee, we want to confer on that.

5    　　　　THE COURT:  Yeah.

6    　　　　MR. BAIR:  Just being presented with that, that seems

7    much clearer to me --

8    　　　　THE COURT:  Well, it's also very simplistic.

9    　　　　MR. BAIR:  -- of what's going on here.

10   　　　　THE COURT:  It's incredibly simplistic because I don't

11   know these issues the way you guys do.  But my question, Mr.

12   Bair, is this.  I think there's two levels to this.  One is, is

13   there enough information is one.  And the second is, is this so

14   uncertain that who should vote on this.  We don't know what

15   we're talking about.  I mean, because I think it would be Mr.

16   Prol's and Mr. Weisenberg's position, perhaps, that if this is

17   that uncertain, why vote on it?  Why solicit on something.

18   that's that undefined?

19   　　　　MR. BAIR:  I agree, Your Honor.

20   　　　　THE COURT:  And so I'm trying to -- I'm trying to get

21   to the answer to both of those questions.

22   　　　　MR. BAIR:  Yeah.  We do think there's a fundamental

23   issue with the fact that what appears to have happened here is

24   the debtor and the carriers reached what they represent to be a

25   consensual agreement --

1          THE COURT:  Right.

2          MR. BAIR:  -- when, in fact, the debtor is

3    representing that all of the insurance rights are being

4    transferred.  And it appears that the insurers interpret that

5    same agreement to mean bad faith claims are being

6    extinguished --

7          THE COURT:  Right.

8          MR. BAIR:  -- as a matter of law upon confirmation of

9    the plan and so --

10         THE COURT:  Well, upon discharge, really.  Yeah.  I

11   gotcha.  Yeah.

12         MR. BAIR:  Yeah.  And so in order to be coproponents

13   of the plan, I think they do need to come to a landing spot on

14   exactly how these extra contractual bad faith claims are being

15   handled and explain that clearly in the plan one way or the

16   other.

17         THE COURT:  Well, if they don't and if we are left

18   with simply a very sobering, perhaps, description of this, that

19   the debtor's position is we have no reason not to give you

20   anything we have, and we'll do it.  And the insurance company's

21   position is that's fine, but the discharge means something.

22   Means that the claims are gone.  The debtor is not taking a

23   position about that because if they're acting like a trustee,

24   they don't have to.  And I'm not trying to be cynical.  They

25   don't have to.  I mean, they're putting everything in the pot,

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 52
of 90

1  whatever it is.  The effect of putting it in the pot and having

2  the pot be managed through confirmation is the issue.

3       So on the one hand, can you make enough disclosure

4  about that that people know what the risk is, and two, at some

5  point, are you describing a risk that is just a meaningless

6  choice?

7       MR. BAIR:  I do think that, Your Honor, I do think the

8  carriers and the debtor should come to an agreement on this.  I

9  mean, if you are -- I think they've both made representations

10 that the insurance assignment is a fundamental component of

11 this plan.  And so --

12      THE COURT:  Right.

13      MR. BAIR:  -- if survivors are going to vote on it,

14 they really should be speaking with one voice about if bad

15 faith survive or don't survive confirmation.

16      THE COURT:  I don't agree that in a perfect world that

17 had happened.  I have a -- I have a feeling it might not -- we

18 may not be able to do that in the way you would like.

19      So before I hear from the committee, Ms. Uetz, you

20 want to clarify something for me?

21      MS. UETZ:  Yes.  Your Honor, I have a couple of

22 comments to this.

23      THE COURT:  Yeah.

24      MS. UETZ:  Just one, to be clear, the insurers are not

25 coproponents --

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 53
of 90

1          THE COURT:  Right.

2          MS. UETZ:  -- of this plan.  The debtor --

3          THE COURT:  Yeah.

4          MS. UETZ:  -- has proposed the plan.  There --

5          THE COURT:  Right.

6          MS. UETZ:  -- is no coproponent.

7          THE COURT:  Okay.

8          MS. UETZ:  Secondly, and I'm going to respond to Your

9    Honor's suggestion, but I want to just make one or two points

10   before I do.

11         THE COURT:  Okay.

12         MS. UETZ:  Secondly, we're not aware of any

13   requirement that a debtor's disclosure statement have to

14   describe other parties' legal positions on given issues,

15   especially where the debtor is the sole proponent of the plan.

16   Implicit in your suggestion, Your Honor, and I think what the

17   debtor would be prepared to do is to identify if this Court

18   were to require it, a risk associated with this.  But to start

19   to try to articulate the insurers' view, not a plan proponent,

20   not the committee, but the insurers' view of a legal issue and

21   how that may play out after confirmation, in our view, goes a

22   step too far at this stage for disclosure purposes.

23         I'll make another note, Your Honor, and that is that

24   the debtor is assigning its rights.  It's not assigning claims.

25   And I think, Your Honor, while stated it, we're not repping and

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 54
of 90

1  warranting.  You had that discussion with Ms. Ridley last week

2  on the record.  We're not repping and warranting that.

3      So we are in agreement with the insurers that we are

4  assigning what we are assigning.  And if the Court requires us

5  to add a sentence or two that says there's some risk associated

6  with how that may play out post-confirmation, depending on how

7  a court may decide a legal issue, that's one thing to identify

8  that as a risk.  There's a risk of that with respect to a lot

9  of different parts of any plan of reorganization, how it may

10  later be challenged, defended, interpreted, et cetera.  And I

11  just think we, from the debtor's perspective, think it goes

12  quite a step too far to try to insert into the disclosure

13  statement the legal arguments concerning this issue or other

14  issues.

15      THE COURT:  Well, at the moment, I'm not agreeing with

16  you in the following way.  Okay.  People reading this plan are

17  being told that there's a certain amount of money in a trust

18  for you, and we're transferring our rights.  And if, but for

19  this plan, those rights would unquestionably include things

20  like bad faith claims that could be pursued against insurance

21  companies, if there turn out to be any, but the plan, at least

22  by the logic of a significant player here, it's the very act of

23  confirmation that's going to radically affect those rights.

24      I think that's -- I mean, what legal position somebody

25  may take down the line once the plan is confirmed, sure.

1   There's too many of those to try to game-plan every one of
2   them.  But where the argument is, it's confirmation itself that
3   does this.  In my view, that's just a different layer of
4   complexity and risk.  I mean, it's a risk that the plan itself
5   is creating.  That's what worries me about this.
6          MS. UETZ:  Your Honor, I'm going to ask, if I may, Ms.
7   Ridley to weigh in.  But I will leave you with this for my
8   part.  I think the debtor can well identify the risk for a
9   creditor to consider voting without going down the path of
10  articulating or attempting to articulate the arguments of
11  multiple insurers on that issue, as well as the argument of the
12  committee on that issue.
13         In other words, I think there's a simpler way for the
14  debtor to identify this risk.  And maybe I'm reading too much
15  into what you suggested, but I strongly believe that trying to
16  have me articulate the legal arguments and objections of this
17  group of insurers as well as the committee, whereas instead of
18  doing that, we can identify this as a risk.  I think there's a
19  difference between those two things.
20         THE COURT:  Okay.
21         MS. UETZ:  And I think identifying it as a risk is
22  really what is important for creditors.
23         THE COURT:  Well, it may be that this is the one place
24  in the plan where we should have three modules.  Module 1 is
25  what the debtor thinks about this.  And this is just an idea,

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 56
of 90

1  so nobody freak out yet.  Okay.  Module 1 is the debtor

2  believes X.  Module 2 is the insurance companies believe Y.

3  Module 3 is the committee is very worried about Z.  And let me

4  just -- somebody had their hand up.  Was it Mr. Bair, maybe?

5              MR. BAIR:  Yes, Your Honor.  But --

6              MS. UETZ:  If -- I'm sorry.  Go ahead.

7              MR. BAIR:  Oh, Your Honor, I did have one comment in

8  response to Mr. Uetz's argument, but I --

9              THE COURT:  Yeah.

10             MR. BAIR:  -- can speak after the Court has finished

11 (indiscernible).

12             THE COURT:  Well, I want to -- I certainly wanted to

13 hear from your colleagues.  I think Mr. Weisenberg and Mr. Prol

14 have been very patient in having me say things that they're

15 going to say better than I did.  So I don't know which of you

16 is going to take the lead on this.

17             MR. BAIR:  Sure, sure.  I just wanted to respond on

18 one point, Your Honor.  And then if --

19             THE COURT:  Okay.

20             MR. BAIR:  -- any of the other committee professionals

21 wish to speak --

22             THE COURT:  Yeah.

23             MR. BAIR:  -- of course, they should speak up as well.

24             But just in response to Ms. Uetz's comment about sort

25 of the uncertainty and difficult nature of --

1          THE COURT:  Yeah.

2          MR. BAIR:  -- listing other parties' positions, I

3   mean, the whole reason we're having this discussion is because

4   the carriers have stated their position.  And I'm just looking

5   at certain insurers' opposition to --

6          THE COURT:  Yeah.

7          MR. BAIR:  -- the committee's insurance derivative

8   standing motion, they say, any confirmed plan will provide

9   debtor with a discharge, and debtor then will not be at any

10  future risk of having to pay in excess of limits verdict.  And

11  then they explain that that would, in effect, extinguish any

12  bad faith claim.  So it's not --

13         THE COURT:  Right.

14         MR. BAIR:  -- there's no mystery here about what their

15  position is.  Their position has been stated, that they believe

16  no bad faith claims will survive confirmation of this plan.

17         And we agree with Your Honor's concern here.  We think

18  this is fundamentally different than the concept of maybe

19  there's ultimately no coverage here.  We think it's different

20  to say --

21         THE COURT:  Yeah.

22         MR. BAIR:  -- maybe ultimately there is no coverage

23  versus this plan --

24         THE COURT:  Right.

25         MR. BAIR:  -- by its structure eliminates

1          THE COURT:  Right.

2          MR. BAIR:  -- an entire class of claims so --

3          THE COURT:  To me, that -- to me, I mean, look, there

4    are a lot of plans that say, we got a piece of litigation.  We

5    think it's great.  We're going to give it to the liquidating

6    trustee.  They'll pursue it.  But hey, it's litigation.  Who

7    the hell knows?

8          MR. BAIR:  Yeah.

9          THE COURT:  To me, that's different from somebody says

10   confirming this plan is going to change everybody's rights.

11   Those are apples and oranges in my view.  That's why I'm

12   pausing on this as long as I am.

13         MR. BAIR:  Agreed, Your Honor.  And two other things

14   that that I have.  The other thing, we think this case is a bit

15   unique, and this is in response to the debtor's comment about

16   putting in other parties' positions.  There's been

17   representations made in the briefing and in court about how the

18   insurance assignment is the cornerstone of this plan and how

19   this plan is so beneficial because the insurance companies

20   don't object.

21         And so if it turns out that the insurers and the

22   debtor have a different interpretation of what they agreed to,

23   and now all of a sudden there's not a meeting of the minds, it

24   could disrupt this plan.  And so we just want to get to the

25   bottom of what people's --

1          THE COURT:  Yeah.

2          MR. BAIR:  -- what their interpretation of the plan

3  is --

4          THE COURT:  Okay.

5          MR. BAIR:  -- so survivors can understand that and

6  vote.

7          THE COURT:  Okay.  All right.

8          MR. BAIR:  And lastly, Your Honor, we did raise a

9  third-party-release issue at the last hearing that I don't know

10  if we got to the bottom of.  The committee does still believe

11  that under California law, the Hand decision, 1994 court of

12  appeals decision, survivors have direct claims once they become

13  judgment creditors.  If an insurance company in bad faith

14  refuses to pay a final judgment, we do think section 5.14 of

15  this plan, as it's currently drafted releases that claim.  It

16  says there's no -- in our view, it says there's no exposure in

17  excess of the state court abuse judgment.

18          That would release any extra contractual claims.  And

19  we do think that that's a Purdue issue.  That's a nonconsensual

20  third-party release in our view.  And we continue to have that

21  objection to the disclosure statement at this point.

22          THE COURT:  Okay.  Mr. Moore, you want to have a quick

23  word before I go back to the committee?

24          MR. MOORE:  Thank you, Your Honor.  Mark Moore for the

25  Roman Catholic Bishop of Oakland.

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 60
of 90

1          Your Honor, this is the issue that we talked about
2    where I believe the language is "based on the abuse claim".
3          THE COURT:  Yeah.
4          MR. MOORE:  And it's in two different places.
5          THE COURT:  Yeah.
6          MR. MOORE:  And we discussed talking with the
7    committee about whether we --
8          THE COURT:  I thought so.
9          MR. MOORE:  -- I think the Court used the -- yeah, the
10   Court used the language --
11         THE COURT:  Yeah.
12         MR. BAIR:  -- maybe "concerning the abuse claim", or
13   something along those lines, maybe an alternate formulation.
14         THE COURT:  Uh-huh.  Uh-huh.
15         MR. MOORE:  -- but I don't think that there's any
16   dispute as between us and the insurers in any way that that
17   particular language, by preventing double-dipping or double
18   recovery from the trust and the insurer --
19         THE COURT:  Yeah.
20         MR. MOORE:  -- on the same claim --
21         THE COURT:  Yeah.
22         MR. MOORE:  -- has any third-party impact as far as
23   claims go.
24         THE COURT:  Well, and I think you can work that out.
25   I'm highly confident.  Okay.

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 61
of 90

1          MR. MOORE:  Understood.

2          MR. BAIR:  Your Honor.

3          THE COURT:  Mr. Bair, look, look, we've got ten

4     minutes.  I want to hear from the committee about the

5     disclosure aspects of it from your other professionals, if they

6     have something to say.  So just hold on one second.

7          Mr. Weisenberg, from a disclosure statement

8     standpoint, where are we with this discussion?

9          MR. WEISENBERG:  Your Honor, I think Mr. Bair was

10    going to make the point, and it's an important one --

11          THE COURT:  Yeah.

12          MR. WEISENBERG:  -- that that I don't think Mr.

13    Moore's point was on all -- was responding to the point we're

14    trying to make, which is there is a gating issue that this

15    Court needs to address, which is, frankly, the legality of the

16    plan because we believe that there are provisions of the plan

17    that, on their face, violate California law.  And so the plan

18    could not be confirmed.

19          And so I turn over the mic to Mr. Bair to see if he

20    just wanted to add more to that point.

21          MR. BAIR:  Oh, Your Honor, actually the point I did

22    want to raise is in response to Mr. Moore, I would be

23    interested in hearing from the insurance companies if they do

24    interpret section 5.14 the same way the debtor does.  If it's

25    true that they have no objection to a survivor recovering their

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 62
of 90

1  state court abuse judgment and any additional extra contractual

2  judgment that they may obtain against the insurance companies,

3  that may change things.  But I do think it's material to

4  understand if they view section 5.14 the same as the debtor or

5  if they view it differently.

6      THE COURT:  Okay.  Mr. Plevin, I think that is an

7  invitation to you.

8      MR. PLEVIN:  Yes.  So Your Honor, with respect to

9  5.1.4, or 5.14, we're prepared to talk about that with the

10  debtor and the committee.  Not, I think, on the record, but --

11      THE COURT:  Okay.

12      MR. PLEVIN:  -- to talk about that because we've read

13  the Hand case, and I don't disagree with Mr. Bair that that

14  case is different in that it does appear to give claimants

15  direct rights.  And that's why it's also misleading to

16  otherwise, putting that case to the side talk about survivors'

17  rights because survivors have no rights under California law

18  with respect to the other bad faith issues that the committee

19  is raising.  Those are rights that belong to the debtor.

20      And this is part of the problem where Mr. Bair was

21  reading from a brief that we filed.  And if we're going to try

22  to disclose a lot of the nuances and complexities of this, we

23  have to insert briefs into the disclosure statement explaining

24  what California case law says, explaining what the effect of

25  the discharge under Chapter 11 is, and so on.  And it becomes a

1   legal brief.  These are issues that are confirmation issues as

2   to whether or not there are rights.  Whether there's a

3   violation of those rights by virtue of the plan.

4           If anything, I think the much more general kind of

5   statement that Ms. Uetz was suggesting is the appropriate way

6   to go because otherwise the complexities are just going to

7   confuse people because unless they're lawyers, and bankruptcy

8   lawyers and coverage lawyers at that, it's going to -- it's

9   going to go right over their heads.  And so I think we should

10  avoid putting legal arguments here on the issue of 5.14.  We're

11  prepared to talk with the debtor and the committee about that

12  issue.

13          THE COURT:  All right.  Let's reserve 5.14.

14          And let me turn to anybody else, and I'm really, I

15  guess, leaning toward Mr. Weisenberg here.  To what extent, put

16  putting aside the issue that you can envision this disagreement

17  about what rights exist pre and post-confirmation and you could

18  argue about that at confirmation as a legal -- as a disclosure

19  statement question, comment on whether a disclosure statement

20  that says you're going to get all these wonderful things, but

21  is it -- but as one possible effect of confirmation, a lot of

22  them may be gone.

23          I mean, to what extent is that a -- what are we asking

24  people to vote on, if that's the -- if that's the disclosure?

25  Do you want to give me any thoughts on that?

1      MR. WEISENBERG:  I think Your Honor is hitting the

2 nail on the head, which is you can't ask someone to vote on

3 something that's amorphous.  Okay.  I appreciate the

4 distinction you're drawing between a trustee who says, I'm

5 going to assign this litigation for whatever it's worth,

6 versus --

7      THE COURT:  Yeah.

8      MR. WEISENBERG:  -- what may be a fundamental

9 disagreement between the parties on what they're actually

10 assigning.  And we think that goes far beyond a disclosure

11 issue that goes to the bedrock cornerstone of this plan.  I

12 mean, don't forget, Your Honor, this is not a throw in.  Right.

13 This is a cornerstone of the consideration that the debtor is

14 supposedly assigning to the trust.  Right.  I mean, in numerous

15 pages, the disclosure statement talks about the value of the

16 insurance and why that's meaningful.  And yet, on day one of if

17 this plan were confirmed, the entirety of that value would be

18 eviscerated.  That goes far beyond disclosure.

19      MR. PLEVIN:  Your Honor --

20      THE COURT:  Well, I mean, would it really be totally

21 eviscerated, or there's something that if there's some bad

22 conduct in the future, you wouldn't be able to realize on that?

23 I mean, there is a distinction, right?

24      MR. WEISENBERG:  There's a distinction.  But I also

25 think, Your Honor, it depends on how much value you put on what

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 65
of 90

1  may be extra contractual damages and whatnot.  And that could

2  be meaningful.  And that's maybe a drastic understatement.

3         THE COURT:  All right.  Why don't I hear from Ms. --

4         MR. SCHIAVONI:  Your Honor, if I may be heard?  Sorry.

5         THE COURT:  Well, before I hear from anybody else,

6  I've literally got to stop this in about five minutes.  So I

7  don't know if we're going to wrap this up.  You guys want to

8  come back this afternoon?  And I mean, would it be helpful to

9  have people talk over the next hour or hour and a half and

10 reconvene, or we're going to reconvene some other day?  What's

11 your pleasure?

12        MS. UETZ:  Your Honor, from my perspective, I doubt

13 that convening on this issue will be useful because we

14 believe --

15        THE COURT:  Today.

16        MS. UETZ:  -- that the committee wants to block

17 approval of this disclosure statement.  And this is just one

18 that we're going to have to present to Your Honor and have Your

19 Honor make a ruling.  I'm sorry to say that about this issue,

20 but I believe that we're not going to make progress on this one

21 issue without some further discussion and direction from Your

22 Honor.

23        THE COURT:  All right.  Ms. Ridley, anything you want

24 to tell me?

25        MS. RIDLEY:  I agree with Ms. Uetz.  I just want to

1 make the statement. Nothing in the assignment is violative of

2 California insurance law. What's described in the disclosure

3 is not violative of insurance law. In fact, insurance law says

4 an insured can assign their rights. What we're arguing about

5 is what might be the effect of a discharge regarding acts that

6 haven't happened that might happen in the future. And so I

7 think we're melding certain things. But for the disclosure and

8 the assignment, what's described doesn't violate California law

9 at all.

10        MR. SCHIAVONI: Your Honor, if I could just --

11        THE COURT: Um-hum.

12        MR. SCHIAVONI: Tanc Schiavoni.

13        THE COURT: Yep.

14        MR. SCHIAVONI: I am repeatedly now struck by how good

15 my adversaries here are as lawyers because I've seen them argue

16 the same point exactly the opposite in two different cases.

17        THE COURT: Well, they can't be wrong both ways.

18 Right. They've got to -- one of them's got to be right.

19        MR. SCHIAVONI: In the Camden plan that they advocated

20 and --

21        THE COURT: Yeah.

22        MR. SCHIAVONI: -- sought confirmation for that's the

23 subject of a stay by the Third Circuit, it's --

24        THE COURT: Yeah.

25        MR. SCHIAVONI: -- the language says they assign

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 67 of 90

1   whatever they have as a matter of -- like, whatever the law is,
2   it is, and that's what they assign.
3          THE COURT:  Okay.
4          MR. SCHIAVONI:  That's what they ask for.  We had
5   extensive argument.  And that's what they got.  That's what the
6   Boy Scout plan -- that's how it's phrased.  That's how the
7   Rockville Centre plan is phrased and the disclosure statement
8   is presented.  The same thing with Syracuse, which has not been
9   confirmed.  There is not some sort of extensive addition about
10  what everybody thinks might happen and what might be the law
11  and what might all be all the defenses that could happen here.
12         And the hyperbole here that like, somehow they're
13  losing all their rights, there is no bad faith claim right now.
14  The notion that they're losing all their rights, at most,
15  what's at issue is a speculative bad faith claim that they
16  don't have right now that's in excess of limits.  The plan is
17  conveying an enormous value here in conveying the coverage.
18  It's --
19         THE COURT:  Okay.  Thank you.  I hear you.  I'm
20  hearing you.
21         Okay.  Mr. Prol.
22         MR. PROL:  Judge, I didn't want to weigh in on this
23  issue, but I did, before we conclude today, wanted to see if we
24  could have a little further conversation with regard to the
25  lift stay motion.  And what I wanted to ask Your Honor to

1   consider is, given that Your Honor's concerns about that motion

2   surround what the coordinating judge might do and how this new

3   court and judge might handle it, that during this interim

4   period, while Your Honor denied it without prejudice, subject

5   to remaking it, to request that Your Honor grant -- I don't

6   know if it's from the stay or authority, at least, for the

7   coordinating attorneys to confer with the state court judge to

8   float this idea in terms of what the judge might do if state

9   relief were granted so that if as in when it becomes

10   appropriate to renew this application, we might have some

11   answers to those questions.

12         THE COURT:  Let me think about that.  Thank you.

13         MR. PROL:  Thank you, Your Honor.

14         THE COURT:  Okay.  Mr. Bair, real fast.

15         MR. BAIR:  Real quick, Your Honor.  Just responding to

16   Mr. Schiavoni, our firm's in a lot of cases.  We're not in all

17   of them, so I can't speak to Camden and Boy Scouts.  But I can

18   say that in Rochester and Syracuse, the litigation option is

19   structured differently.  So it's apples and oranges.  Our issue

20   here is the discharge.  The timing of it we think is

21   inappropriate.  It should come later at the conclusion of each

22   litigation claim.  So we do think this plan is structured

23   differently, which is why we're so concerned about this.

24         THE COURT:  Well, that's the other question I've had,

25   which is this is the only way to skin this cat.  It's the way

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 69
of 90

1    that some very sophisticated parties decided they wanted to do

2    it. So I'm not going to suggest that we go back to the drawing

3    board. But I've had that in the back of my head the whole

4    time. I very much appreciate that comment, Mr. Bair. Thank

5    you.

6            MR. BAIR: Thank you.

7            THE COURT: Okay. Ms. Uetz, you want to wrap it up

8    here?

9            MS. UETZ: I know Your Honor has got a hard stop. We

10   oppose Mr. Prol's suggestion. We think that your ruling is

11   without prejudice. If they want to bring the motion based on

12   timing at the appropriate time, we'll address it at that time.

13   But we don't think allowing what was suggested by Mr. Prol is

14   helpful to the process. And Your Honor has already ruled on

15   that motion.

16           THE COURT: Yeah. But in denying it without

17   prejudice, I am not at all offended by Mr. Prol's suggestion.

18   I want to think about that a little bit. That might be a good

19   idea.

20           MS. UETZ: And I would --

21           THE COURT: Well, in part because I'm very sensitive

22   to appearing to tell the state court what to do about this. It

23   would be a very different question to go to the state court and

24   say if there were relief from stay, what would you do. That's

25   apples and oranges to me. Okay.

1          MS. UETZ:  And Your Honor, if you are going to --

2          THE COURT:  So I'm thinking about -- I'm thinking

3     about it in that context.  Go ahead.

4          MS. UETZ:  If you are going to consider it, when we

5     have time, I would just request time to address the Court with

6     respect to it.

7          THE COURT:  Okay.  Appreciate it.  Going forward, when

8     do you guys want to reconvene?  I mean, I realize I've got a

9     question about this, the disclosure statement aspects of the

10    plan and the effect of the discharge now.  I may, for example,

11    want to, in a day or two, suggest to you that each of you give

12    me the language that you think might be sufficient to address

13    this issue as a disclosure statement issue with respect to the

14    confirmation.  If I do that, I will do it thoroughly respecting

15    Mr. Weisenberg's, Mr. Bair's, and Mr. Prol's argument that this

16    is a disclosure statement issue.  I mean, the very choice is a

17    disclosure statement issue that cannot be overcome.

18         But I may want to entertain a request to have you guys

19    tell me what you think the language would be, were we to try to

20    address this as a this-is-the-risk issue in a disclosure

21    statement.  All right.

22         So with that, I'm sorry to interrupt you.  When should

23    we -- when should we be talking again?

24         MS. UETZ:  And Your Honor, I know you mentioned that

25    you have the BAP, and I'm not clear on when that is.  So I may

1  ask the --

2          THE COURT:  It's basically Thursday and Friday.

3          MS. UETZ:  Yeah.  So I think I would ask the Court

4  when the Court -- we're going to convene with the committee,

5  Your Honor.  I'm not confident that we'll resolve many issues.

6  And so how soon would the Court, can the Court hear back from

7  us?  Do you want to see the further amendment, or do you want

8  to reconvene just to kind of see where we are, like we did

9  today?  Do you know what I mean?

10          THE COURT:  I'm more inclined to do a version of

11  today.

12          MS. UETZ:  That's what I was thinking would be

13  productive.

14          THE COURT:  Because you may suggest to me, we think

15  we're getting there.  We don't have the language yet.  And even

16  that would be helpful.  Okay.  So let --

17          MS. UETZ:  Yeah.  So with that in mind, Your Honor,

18  soonest early next week would be preferred, given your

19  Thursday, Friday BAP schedule.

20          THE COURT:  Yeah.  Where are we during the first week,

21  Mr. Fan?

22          THE CLERK:  Your Honor, we have the 27th -- I mean,

23  the week other than Wednesday is open.

24          THE COURT:  Okay.  So the 27th and 28th?

25          THE CLERK:  Yes, Your Honor.

1        THE COURT:  Is the 27th too soon, gang?  What do you

2    think?

3        MS. UETZ:  The 27th is not too soon for the debtor.

4        THE COURT:  Okay.

5        MS. UETZ:  But Tuesday would also be fine, the 28th,

6    if that's open.

7        THE COURT:  Let me hear from the committee and Mr.

8    Plevin.

9        Mr. Plevin, I'm sorry, not hearing you again.

10       MR. PLEVIN:  Unless I have my calendar mixed up, Your

11   Honor, on the 28th, I believe we have an all-day in-person

12   mediation in the Archdiocese of San Francisco case.

13       THE COURT:  Okay.

14       MR. PLEVIN:  And so that might be a little bit

15   cumbersome to try to do a hearing as well on the 28th.

16       THE COURT:  So is the 27th -- I mean, assuming the

17   27th is sufficient time to make meaningful progress, it works

18   logistically?

19       MR. PLEVIN:  We can make it happen.

20       THE COURT:  How about from Mr. Weisenberg or Mr. Prol

21   or Mr. Bair?  What do you guys think?

22       MR. PROL:  Well, Your Honor, I'm not sure exactly what

23   Ms. Uetz contemplates, whether she's going to turn another

24   draft of this or whether we're going to just discuss the

25   issue --

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 73
of 90

1  THE COURT: Mr. Prol, I'm losing you again on your
2  mic. Sorry.
3  MR. PROL: I'm sorry. I'm just not sure what Ms. Uetz
4  contemplates here with regard to how we're going to proceed.
5  Is she going to turn another draft of this that she wants us to
6  review and then discuss with her, or are we just going to
7  continue a discussion with regard to the issues generally? I
8  had thought she suggested --
9  THE COURT: Well, you can -- I mean --
10  MR. PROL: I thought she suggested earlier that we
11  meet and confer with regard to a schedule. And that might make
12  some more sense in terms of how we hope to get from here to the
13  next substantive hearing because I think there are a lot of
14  issues that we can probably agree on language, based upon the
15  advice Your Honor has given us.
16  THE COURT: Right.
17  MR. PROL: As Ms. Uetz suggested, there are some
18  issues that we may just not be able to get there on that you're
19  ultimately going to have to call.
20  THE COURT: Yeah.
21  MR. PROL: And so --
22  THE COURT: Well, let me put it to you this -- look,
23  it's not just that I love seeing all of you. I do. I find we
24  always make progress when we get this group together.
25  So whether it's going to be progress to say, okay, now

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 74
of 90

1    I've got a disclosure statement that can go out on Monday, I

2    don't know that -- I doubt it will be because I think there's

3    some pretty big homework assignments for the debtor.  And I

4    mean them, on the liquidation analysis and a couple of other

5    things.  And I think they're going to have to think about that.

6    That will not be an easy assignment to fulfill.  But even if we

7    just get together for half an hour to an hour on Monday, I

8    think we need to keep propelling things here, and I'm prepared

9    to do that.  Okay.

10            So let's say 10 o'clock on Monday.  Does that work for

11    folks?

12            MS. UETZ:  That's best for the debtor, Your Honor.

13            THE COURT:  All right.  And if in the meantime

14    something happens and you think, no, we'd be way better off

15    meeting Thursday, just tell me.  That's fine.  Okay.  I'll be

16    very flexible about that.  All right.

17            MS. UETZ:  Thank you, Your Honor.

18            MR. PROL:  That's fine, Your Honor.  Thank you.

19            THE COURT:  Okay.  Thank you very much, all of you.

20    And I look forward to seeing you next Monday.

21        (Whereupon these proceedings were concluded at 11:14 AM)

22

23

24

25

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 75
of 90

1                          I N D E X

2    RULINGS:                                    PAGE LINE

3    OPF motion is denied without prejudice       16     6

4    Motion for relief from stay is denied        17    19

5    without prejudice

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3   I, River Wolf, certify that the foregoing transcript is a true

4   and accurate record of the proceedings.

5

6

7

8   _____

9   /s/ RIVER WOLF, CDLT-265

10

11  eScribers

12  7227 N. 16th Street, Suite #207

13  Phoenix, AZ 85020

14

15  Date:  January 27, 2025

16

17

18

19

20

21

22

23

24

25

## A

**ability (1)**
34:6
**able (9)**
14:10;21:3,10;22:8;
34:19;36:18;52:18;
64:22;73:18
**abrupt (1)**
23:15
**absolutely (4)**
30:14;31:10;33:10;
40:18
**abuse (6)**
19:3;49:11;59:17;
60:2,12;62:1
**accept (1)**
14:21
**acceptable (1)**
41:16
**accomplished (2)**
18:9;49:18
**account (1)**
13:20
**accounts (2)**
12:20;13:18
**acres (1)**
23:6
**act (1)**
54:22
**acting (1)**
51:23
**action (3)**
12:8,9;15:15
**actions (1)**
17:6
**acts (1)**
66:5
**actually (9)**
14:10;33:14,18;
36:16;40:19,23;42:6;
61:21;64:9
**add (2)**
54:5;61:20
**addition (1)**
67:9
**additional (1)**
62:1
**address (7)**
11:20;23:11;61:15;
69:12;70:5,12,20
**admittedly (1)**
27:19
**adversaries (1)**
66:15
**advertised (1)**
17:5
**advice (1)**
73:15
**advocated (1)**
66:19
**affect (1)**

54:23
**affects (2)**
44:24,24
**affiliate (1)**
44:18
**affiliated (1)**
20:14
**affiliates (1)**
23:13
**afoul (1)**
10:18
**afternoon (3)**
38:19;43:12;65:8
**again (8)**
4:21;13:10;19:4;
23:9;31:13;70:23;
72:9;73:1
**against (7)**
6:24;16:15;20:14;
44:21;49:24;54:20;
62:2
**aggregate (1)**
19:2
**ago (1)**
6:21
**agree (15)**
11:10;18:10;19:3;
20:2;23:16,18;24:11;
26:3;48:10,11;50:19;
52:16;57:17;65:25;
73:14
**agreed (3)**
33:18;58:13,22
**agreeing (2)**
9:12;54:15
**agreement (10)**
9:10,10,11,19;21:8;
23:16;50:25;51:5;
52:8;54:3
**agrees (1)**
45:11
**ahead (5)**
4:18;10:10;39:14;
56:6;70:3
**alignment (1)**
43:20
**all-day (1)**
72:11
**allowing (2)**
15:21;69:13
**alone (3)**
18:18;26:16,17
**along (4)**
12:1;15:8;16:25;
60:13
**alternate (1)**
60:13
**alternative (1)**
46:10
**although (5)**
12:15;19;19:5;
22:11;44:19
**always (2)**

37:25;73:24
**amended (1)**
22:20
**Amendment (3)**
20:10;42:9;71:7
**amendments (1)**
22:18
**among (2)**
26:8,17
**amongst (1)**
30:22
**amorphous (1)**
64:3
**amount (3)**
18:6;19:10;54:17
**analysis (12)**
12:7,10,24;19:19,
22;20:3;22:2,13,25;
23:20;45:19;74:4
**analytically (2)**
13:8;18:25
**analyzes (1)**
21:19
**angle (2)**
37:6;45:25
**Anne (2)**
4:14;8:5
**apologize (1)**
34:22
**appeals (1)**
59:12
**appear (4)**
5:15;24:25;48:19;
62:14
**appearance (2)**
7:4,15
**appearances (2)**
4:11;7:9
**appearing (2)**
4:20;69:22
**appears (2)**
50:23;51:4
**appendix (1)**
28:2
**apples (3)**
58:11;68:19;69:25
**application (1)**
68:10
**applied (1)**
43:24
**appreciate (11)**
27:4,15,16,17;31:6,
15;39:23;42:13;64:3;
69:4;70:7
**approach (1)**
8:2
**approaches (1)**
22:12
**appropriate (4)**
21:22;63:5;68:10;
69:12
**appropriately (1)**
16:1

**approval (1)**
65:17
**approve (3)**
16:13;24:1,4
**Archdiocese (1)**
72:12
**argue (5)**
9:8;26:10,11;63:18;
66:15
**arguing (1)**
66:4
**argument (10)**
6:24;11:3;13:11;
14:8;20:6;55:2,11;
56:8;67:5;70:15
**arguments (8)**
12:16;15:3;26:8;
44:8;54:13;55:10,16;
63:10
**arisen (1)**
45:6
**arose (1)**
8:14
**articulate (7)**
20:23;21:8;22:10;
47:18;53:19;55:10,16
**articulated (5)**
9:6;12:1;13:16;
21:17;46:13
**articulating (2)**
27:10;55:10
**articulation (1)**
22:2
**aside (3)**
44:8;48:6;63:16
**aspect (1)**
9:18
**aspects (3)**
28:21;61:5;70:9
**assert (2)**
14:10,17
**assertion (1)**
20:8
**asset (1)**
20:12
**assets (3)**
20:14;21:9;23:21
**assign (4)**
64:5;66:4,25;67:2
**assigned (1)**
8:20
**assigning (7)**
43:20;53:24,24;
54:4,4;64:10,14
**assignment (7)**
40:8;43:19;52:10;
58:18;66:1,8;74:6
**assignments (1)**
74:3
**associated (2)**
53:18;54:5
**assume (2)**
14:18;30:10

**assuming (3)**
21:14;28:8;72:16
**assure (1)**
30:7
**attempting (1)**
55:10
**attention (3)**
15:24;16:16;40:1
**attorneys (1)**
68:7
**authority (1)**
68:6
**Aventis (1)**
6:15
**avoid (1)**
63:10
**aware (1)**
53:12
**awful (1)**
16:20

## B

**back (17)**
13:9;21:21,25;
22:16;37:3;38:18,23;
40:1,3,4;44:14;49:4;
59:23;65:8;69:2,3;
71:6
**bad (12)**
48:20;51:5,14;
52:14;54:20;57:12,
16;59:13;62:18;
64:21;67:13,15
**Bair (53)**
5:13,18,19,19,20;
48:3,3,6,25;49:3,6;
50:3,6,9,12,19,22;
51:2,8,12;52:7,13;
56:4,5,7,10,17,20,23;
57:2,7,14,22,25;58:2,
8,13;59:2,5,8;60:12;
61:2,3,9,19,21;62:13,
20;68:14,15;69:4,6;
72:21
**Bair's (1)**
70:15
**ball (1)**
42:1
**ball's (1)**
40:4
**bank (1)**
12:20
**bankruptcy (13)**
12:5;14:3,7,12,12,
16;18:10,20,23;
19:23;20:20;26:16;
63:7
**BAP (2)**
70:25;71:19
**base (1)**
18:17
**based (3)**

Case: 23-40523    Doc# 2094-2    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 78
of 90

60:2;69:11;73:14
**basically (4)**
16:6;37:10;47:5;
71:2
**basis (3)**
13:1;14:1;21:19
**become (1)**
59:12
**becomes (2)**
62:25;68:9
**bedrock (1)**
64:11
**began (3)**
9:24;12:24;24:17
**begin (1)**
7:19
**beginning (3)**
8:2;35:16;43:23
**begrudge (1)**
46:15
**behalf (11)**
4:25;5:3,6,17,25;
6:5,15;10:12;30:21;
34:13;48:4
**behind (1)**
24:22
**believes (3)**
12:9;46:9;56:2
**bellwether (1)**
17:6
**belong (1)**
62:19
**belonged (1)**
12:21
**belonging (1)**
12:18
**beneficial (1)**
58:19
**benefit (4)**
15:16,22;16:9;17:7
**best (4)**
32:9;34:7;38:14;
74:12
**bet (2)**
26:18;35:14
**better (19)**
9:11;18:5,24;19:2;
22:19;23:22;25:14;
32:11,17,24;33:15;
34:23,24;37:18,22;
40:23;46:3;56:15;
74:14
**beyond (4)**
23:1;44:12;64:10,
18
**big (2)**
14:9;74:3
**Bishop (2)**
4:5;59:25
**bishop's (1)**
21:1
**bit (10)**
15:5;17:3;23:12;

24:18;31:13;34:21;
44:15;58:14;69:18;
72:14
**Blaise (1)**
6:6
**blessed (1)**
44:7
**block (1)**
65:16
**BLUMBERG (2)**
6:10,11
**board (1)**
69:3
**bold (1)**
32:21
**bookmark (1)**
29:8
**both (9)**
7:9;10:13;11:3;
17:12;18:7;21:19;
50:21;52:9;66:17
**bottom (2)**
58:25;59:10
**Boy (3)**
7:9;67:6;68:17
**break (10)**
10:5,9;11:8;25:8;
34:10,10,15;35:5;
38:3;40:25
**breaking (2)**
38:17,24
**Brent (3)**
5:12,16;10:11
**brief (3)**
47:16;62:21;63:1
**briefing (2)**
48:19;58:17
**briefs (2)**
47:6;62:23
**bring (1)**
69:11
**broad (1)**
14:16
**bunch (1)**
16:1
**Burns (4)**
5:13,13,14,20

**C**

**calendar (1)**
72:10
**CALIFORNIA (11)**
4:1;10:18;14:25;
47:10;48:7;59:11;
61:17;62:17,24;66:2,
8
**Call (8)**
4:3;9:10;24:22;
34:6;37:22;41:3,15;
73:19
**called (1)**
11:22

**Calling (1)**
4:4
**Camden (2)**
66:19;68:17
**came (1)**
13:14
**can (58)**
6:16;9:3,8,20;10:5,
6,9,25;11:5;21:2,5;
22:22;24:7,8,21;25:3;
26:1;28:5,24;29:8,8,
10,23;33:2;34:9,10,
17;36:23;37:15,24;
38:15,19;39:15,16;
40:25;42:5;44:3;
45:14;46:17,19,19;
49:2,4,16;52:3;55:8,
18;56:10;59:5;60:24;
63:16;66:4;68:17;
71:6;72:19;73:9,14;
74:1
**candidate (1)**
20:1
**candor (2)**
17:4;37:23
**caption (1)**
41:11
**carriers (1)**
50:24;52:8;57:4
**case (17)**
4:5;12:5;15:2;
18:18,20;19:24;20:4;
21:15;41:22;46:5;
48:18;58:14;62:13,
14,16,24;72:12
**cases (8)**
14:12,16;16:25;
18:10;26:10,16;
66:16;68:16
**Casualty (1)**
6:1
**cat (2)**
23:11;68:25
**Catholic (2)**
4:5;59:25
**caucus (1)**
30:22
**caucusing (1)**
8:6
**cause (1)**
7:14
**Centre (1)**
67:7
**Century (1)**
35:15
**certain (9)**
14:22;15:11;23:6;
42:8;46:16;49:24;
54:17;57:5;66:7
**certainly (9)**
7:24;11:5;14:13;
26:22;29:6;44:4;
45:13;46:11;56:12

**cetera (1)**
54:10
**challenged (1)**
54:10
**change (3)**
17:23;58:10;62:3
**Chapter (2)**
20:1;62:25
**chart (1)**
18:16
**charts (8)**
18:3,3,4,8,13,24;
25:17,19
**choice (5)**
46:12,13;47:25;
52:6;70:16
**Circuit (1)**
66:23
**circumstances (1)**
19:25
**cities (1)**
43:13
**claim (17)**
11:25;12:1,2;14:5,
9;15:12,19;19:4,9;
57:12;59:15;60:2,12,
20;67:13,15;68:22
**claimant (1)**
18:22
**claimants (1)**
62:14
**claims (25)**
11:24;16:21;18:6,
19;19:3,8,16,18;44:9;
45:10;46:11;48:16,
20,21;49:24;51:5,14,
22;53:24;54:20;
57:16;58:2;59:12,18;
60:23
**clarify (6)**
9:3;24:24,25;27:13;
43:18;52:20
**clarity (2)**
26:14;42:15
**class (2)**
48:20;58:2
**clear (7)**
11:3;13:13;30:9;
36:9,13;52:24;70:25
**clearer (1)**
50:7
**clearly (5)**
20:9;24:19;26:11;
48:22;51:15
**CLERK (7)**
4:4,9;39:15,18;
40:1;71:22,25
**clever (1)**
30:5
**cleverest (1)**
30:6
**click (1)**
28:24;30:3

**client (1)**
30:23
**close (1)**
34:21
**clue (1)**
35:18
**cocounsel (1)**
49:9
**co-counsel (1)**
6:6
**Code (1)**
14:12
**cold (1)**
21:25
**colleagues (2)**
33:18;56:13
**colorable (2)**
12:8;15:13
**comfortable (1)**
45:12
**coming (2)**
13:2,9;26:20
**commencement (1)**
12:5
**comment (6)**
31:23;56:7,24;
58:15;63:19;69:4
**commentary (1)**
32:16
**commenting (1)**
32:14
**comments (2)**
8:23;52:22
**committee (59)**
5:8,17,20;8:10;
10:12;11:24;16:10,
12;18:4,11;20:2;
23:12;24:14;26:20,
21;27:8,20;28:20,23,
25;29:2,13,14;30:1,
16,22;32:3,4;34:5,14;
35:21;37:4;40:12;
42:3;43:2;44:1;45:13;
46:24;47:9;48:1,4,7;
50:4;52:19;53:20;
55:12,17;56:3,20;
59:10,23;60:7;61:4;
62:10,18;63:11;
65:16;71:4;72:7
**committees (1)**
46:3
**committee's (7)**
10:12;11:23;18:4;
26:23;28:3;30:3;57:7
**companies (14)**
5:22;6:3;9:27;37:6;
44:19;46:17;48:10,
18;49:24;54:21;56:2;
58:19;61:23;62:2
**Company (3)**
6:1;44:22;46:9;
59:13
**company's (4)**

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 79
of 90

45:1;47:20;49:17;
51:20
**compel (4)**
24:17;37:3;40:15;
41:13
**completely (1)**
18:17
**complexities (2)**
62:22;63:6
**complexity (1)**
55:4
**component (1)**
52:10
**comports (1)**
22:5
**computer (1)**
34:23
**concept (3)**
22:25;29:2;57:18
**concern (1)**
57:17
**concerned (3)**
17:3;9;68:23
**concerning (3)**
8:19;54:13;60:12
**concerns (1)**
68:1
**conclude (1)**
67:23
**concluded (1)**
74:21
**conclusion (1)**
68:21
**conduct (2)**
44:6;64:22
**confer (6)**
34:17;35:23;42:2;
50:4;68:7;73:11
**confident (2)**
60:25;71:5
**confidential (1)**
24:22
**confirmation (39)**
9:9,14;10:16;20:3;
22:9;25:24;26:4,8,19;
27:7;34:11;41:23;
43:24;44:9,16,24;
46:16,21,21;47:8,11,
19;48:13,20;49:18,21,
25;51:8;52:2,15;
53:21;54:23;55:2;
57:16;63:1,18,21;
66:22;70:14
**confirmed (8)**
10:19;42:22;46:6;
54:25;57:8;61:18;
64:17;67:9
**confirming (1)**
58:10
**conflicting (1)**
24:19
**confuse (1)**
63:7

**confused (1)**
43:12
**confusing (1)**
19:13
**confusion (1)**
10:2
**consensual (1)**
50:25
**consequential (2)**
11:8;17:17
**consider (6)**
8:17;37:21;47:5;
55:9;68:1;70:4
**consideration (1)**
64:13
**consistent (1)**
21:6
**consolidated (1)**
17:12
**contemplates (2)**
72:23;73:4
**content (3)**
42:23,24,25
**context (8)**
18:9,12,17;20:20,
24;21:14;35:24;70:3
**Continental (1)**
5:25
**continue (4)**
15:19;20:19;59:20;
73:7
**continues (1)**
48:8
**contractual (5)**
48:21;51:14;59:18;
62:1;65:1
**control (1)**
41:5
**convene (2)**
42:1;71:4
**convening (1)**
65:13
**conversation (3)**
10:3;33:15;67:24
**conversations (2)**
33:19;43:14
**conveying (1)**
67:17,17
**convinced (1)**
11:11
**coordinating (2)**
68:2,7
**coproponent (1)**
53:6
**coproponents (2)**
51:12;52:25
**cornerstone (3)**
58:18;64:11,13
**counsel (8)**
5:20;6:23;13:3,5;
26:22;33:16;42:2;
43:2
**counterparty (1)**

9:9
**couple (2)**
52:21;74:4
**course (3)**
9:5;33:6;56:23
**Court (272)**
4:3;7,11,16,18,21,
23;5:1,4,7,11,14,18,
21;6:2,8,12,16,19,21;
7:11,16,19;8:8,12,15,
20,22,24,25;9:3,6;
10:4,7,15,20,23;11:1,
4,16;22:3;25:12,15,
21,23;26:1,12,17,25;
27:2,6,11,12,15,17,22,
24;28:1,5,8,11,15,18;
29:3,7,9,11,13,19,22,
24;30:11,13,15,18,20,
24;31:3,5,10,15,17,
19,22,25;32:5,9,13,
20,22,25;33:4,9,12,
17,23,25;34:4,16,20,
24;35:1,8,12,15,20,23;
38:7,11,13,15,16;
39:3,7,11,14,17,19,21,
24;40:1,3,4,7,9,13,17,
19,21,25;41:2,7,9,18,
24;42:1,4,7,10,13,18,
23;43:3,5,9,16;44:3;
45:8,24;47:3,12,15,
17;48:5,24,25;49:2,4,
7;50:5,8,10,20;51:1,7,
10,17;52:12,16,23;
53:1,3,5,7,11,17;54:4,
7,15;55:20,23;56:9,
10,12,19,22;57:1,6,
13,21,24;58:1,3,9,17;
59:1,4,7,11,17,22;
60:3,5,8,9,10,11,14,
19,21,24;61:3,11,15;
62:1,6,11;63:13;64:7,
20;65:3,5,15,23;
66:11,13,17,21,24;
67:3,19;68:3,7,12,14,
24;69:7,16,21,22,23;
70:2,5,7;71:2,3,4,6,6,
10,14,20,24;72:1,4,7,
13,16,20;73:1,9,16,
20,22;74:13,19
**courts (2)**
10:21;13:20
**Court's (1)**
25:18
**coverage (4)**
57:19,22;63:8;
67:17
**creating (2)**
16:23;55:5
**creation (1)**
44:16
**creditor (4)**
20:13;21:23;46:1;

55:9
**creditors (7)**
14:3,17;21:22;22:1,
4;55:22;59:13
**critical (2)**
12:10;16:8
**cruel (1)**
21:25
**cumbersome (3)**
29:15,17;72:15
**Curet (2)**
6:6,7
**curiosity (1)**
22:16
**currently (1)**
59:15
**cut (2)**
15:15;29:25
**cutting (1)**
42:14
**cynical (1)**
51:24

# D

**damages (1)**
65:1
**data (2)**
16:21;17:20
**date (3)**
44:7,11;45:21
**day (9)**
9:7;17:4;27:19;
34:5;36:17;44:20;
64:16;65:10;70:11
**daylight (1)**
43:18
**days (2)**
12:4;24:6
**deadline (1)**
16:18
**deal (3)**
12:7;18:1;20:5
**dealt (1)**
11:7
**debtor (82)**
4:13,17,20,25;5:3,
6;8:6;9:9,21;12:14,
16;13:1,10;14:14,14;
15:7;16:11;18:3,5,8;
19:1,4,11,14,17,21,
25;20:9,11,21;21:12,
17;22:10,18;23:9;
26:8;33:5;34:2;35:21;
37:4,5;40:12,18;
41:14;43:18,20;44:1,
1,15,23;45:9,10,18,
22;46:8;48:10,16;
49:18;50:24;51:2,22;
52:8;53:2,15,17,24;
55:8,14,25;56:1;57:9,
9;58:22;61:24;62:4,
10,19;63:11;64:13;

72:3;74:3,12
**debtor's (21)**
12:17,20;13:3,5,9;
14:4,20;21:4;22:21;
30:8;33:11,14;38:5;
40:15;44:17;45:22;
49:10;51:19;53:13;
54:11;58:15
**decide (4)**
21:5;22:1,5;54:7
**decided (4)**
7:23;10:21;12:12;
69:1
**decides (1)**
21:23
**deciding (1)**
23:19
**decision (8)**
13:25;25:4;32:11;
34:6;46:7;47:22;
59:11,12
**declaration (2)**
24:24;37:20
**deed (1)**
45:18
**deemed (1)**
23:7
**defended (1)**
54:10
**defending (1)**
6:24
**defenses (1)**
67:11
**defer (1)**
8:3
**defined (1)**
12:8
**denied (1)**
68:4
**deny (2)**
16:6;17:21
**denying (1)**
69:16
**depend (2)**
18:20;44:6
**depending (2)**
27:23;54:6
**depends (1)**
64:25
**derivative (1)**
57:7
**describe (4)**
44:11;45:3,6;53:14
**described (7)**
40:10;43:21;44:5;
45:17;48:22;66:2,8
**describing (1)**
52:5
**description (2)**
13:11;51:18
**determination (3)**
15:13;22:23;46:19
**determinations (1)**

Case: 23-40523   Doc# 2094-2   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 80
of 90

16:24
**determining (1)**
13:22
**developments (1)**
7:20
**dictating (1)**
17:14
**difference (5)**
9:7;14:9,13;48:22;
55:19
**different (32)**
8:2;11:10;13:14,15,
18;14:11;15:3;18:10,
12,12,18,21;19:5;
23:7;25:3;32:15;36:3,
4;37:8,21;38:4;45:25;
54:9;55:3;57:18,19;
58:9,22;60:4;62:14;
66:16;69:23
**differently (4)**
16:5;62:5;68:19,23
**difficult (1)**
56:25
**diocese (2)**
12:16;13:15
**direct (2)**
59:12;62:15
**directing (1)**
8:23
**direction (2)**
42:11;65:21
**disagree (1)**
62:13
**disagreeing (2)**
36:11,25
**disagreement (3)**
44:1;63:16;64:9
**discharge (11)**
44:24;45:2,20;47:6;
51:10,21;57:9;62:25;
66:5;68:20;70:10
**discharged (2)**
45:9;49:19
**disclose (2)**
45:23;62:22
**disclosure (55)**
9:13,18;10:14;18:1,
15;20:22,22;21:18;
22:4;23:14,18;24:1,4;
25:7,20;26:14;28:3,
21;31:7;42:16;43:21,
25;45:12,25;46:25;
47:7;48:8,15;49:10;
50:1,2;52:3;53:13,22;
54:12;59:21;61:5,7;
62:23;63:18,19,24;
64:10,15,18;65:17;
66:2,7;67:7;70:9,13,
16,17,20;74:1
**discovery (4)**
24:3,9,13;26:2
**discretion (1)**
36:10

**discuss (6)**
10:25;20:5;29:1;
30:14;72:24;73:6
**discussed (1)**
60:6
**discussion (15)**
9:1;13:2;19:20;
23:25;24:2;25:7;
28:23;40:24;42:6;
43:1;54:1;57:3;61:8;
65:21;73:7
**discussions (1)**
35:21
**dispute (1)**
60:16
**disputing (1)**
28:21
**disrupt (1)**
58:24
**distinction (3)**
64:4,23,24
**docket (2)**
16:17;22:16
**document (3)**
28:16;29:6,12
**dog (6)**
5:24;6:17;7:2,4,14;
19:15
**dollars (2)**
12:3,4
**done (3)**
38:19,20;46:18
**double (1)**
60:17
**double-dipping (1)**
60:17
**doubleheader (1)**
43:13
**doubt (2)**
65:12;74:2
**down (7)**
10:22;15:14;16:3;
21:24;29:25;54:25;
55:9
**draft (2)**
72:24;73:5
**drafted (1)**
59:15
**drain (2)**
15:23,23
**drastic (1)**
65:2
**drawing (2)**
64:4;69:2
**during (3)**
13:11;68:3;71:20
**duties (3)**
20:18;21:4,11
**duty (1)**
21:1

**E**

**earlier (1)**
73:10
**early (2)**
6:22;71:18
**easily (3)**
11:7;14:18,19
**easy (3)**
15:1;22:16;74:6
**educated (1)**
19:11
**effect (13)**
9:8;17:7;43:23;
44:9;45:19;46:16;
47:6;52:1;57:11;
62:24;63:21;66:5;
70:10
**effective (2)**
44:7;45:21
**effectively (2)**
9:10;21:3
**efficiently (1)**
30:3
**effort (1)**
30:1
**eight (1)**
24:6
**Eileen (1)**
5:2
**either (7)**
17:14;41:7,9;44:23;
45:10;46:7,8
**electronic (2)**
28:12,14
**electronically (2)**
30:12;31:12
**eliminates (1)**
57:25
**elongated (2)**
13:2,10
**else (13)**
6:2,8,12;11:16;
19:13;29:4;31:20;
35:2,9;38:2,7;63:14;
65:5
**embrace (1)**
21:23
**encompasses (1)**
22:14
**end (2)**
19:12;34:5;35:25;
36:11,25;44:20
**ended (2)**
37:14,16
**ending (1)**
41:13
**engagement (1)**
38:16
**enormous (1)**
67:17
**enormously (1)**
36:25
**enough (6)**
14:22;18:12,12;

20:17;50:13;52:3
**entertain (3)**
16:12;20:11;70:18
**entire (2)**
48:20;58:2
**entirely (1)**
45:12;49:22
**entirety (1)**
64:17
**entities (1)**
23:8
**entitled (1)**
18:22
**envision (1)**
63:16
**equitable (3)**
21:7;22:6;26:5
**especially (1)**
53:15
**essentially (1)**
45:17
**estate (4)**
13:5;15:16,22;16:9
**estimate (3)**
18:6;19:2,18
**et (1)**
54:10
**even (10)**
13:20;19:9,11;
36:10,24;37:1;44:10,
10;71:15;74:6
**everybody (5)**
4:12;7:1;21:5;28:8;
67:10
**everybody's (2)**
16:23;58:10
**everyone (1)**
41:16
**eviscerated (2)**
64:18,21
**exact (1)**
45:16
**exactly (6)**
8:20;15:25;18:21;
51:14;66:16;72:22
**examining (1)**
15:6
**example (2)**
16:2;70:10
**except (1)**
20:14
**excess (3)**
57:10;59:17;67:16
**excluded (1)**
35:20
**execute (1)**
20:13
**exercise (1)**
18:24
**exist (1)**
63:17
**exit (2)**
39:10,15

**expect (1)**
27:6
**explain (3)**
21:19;51:15;57:11
**explaining (2)**
62:23,24
**exposure (1)**
59:16
**express (1)**
22:25
**expressed (1)**
30:9
**extend (2)**
16:12,17
**extensive (3)**
19:20;67:5,9
**extent (4)**
15:4;32:8;63:15,23
**extinguish (1)**
57:11
**extinguished (2)**
48:21;51:6
**extra (5)**
48:21;51:14;59:18;
62:1;65:1

**F**

**face (3)**
10:17;14:22;61:17
**fact (8)**
15:6;17:9;18:18;
21:15;37:2;50:23;
51:2;66:3
**factor (1)**
15:14
**facts (2)**
18:17;45:6
**fair (8)**
7:16;14:15;21:7;
22:6;26:4,9;43:9;
47:25
**fairly (6)**
6:22;11:7;12:13;
14:16;15:1;24:10
**faith (11)**
48:21;51:5,14;
52:15;54:20;57:12,
16;59:13;62:18;
67:13,15
**Fan (3)**
39:10,14;71:21
**far (6)**
22:22;53:22;54:12;
60:22;64:10,18
**fashion (2)**
19:7;49:22
**fast (2)**
17:20;68:14
**February (1)**
41:15
**feel (2)**
15:11;36:6

Case: 23-40523    Doc# 2094-2    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 81
of 90

**feeling (2)**
46:24;52:17
**feet (1)**
7:14
**few (3)**
4:17;7:22;11:20
**fifteen (2)**
38:9,12
**fight (4)**
19:15;22:7,8,8
**figure (1)**
12:11
**file (3)**
24:23;37:20;47:16
**filed (1)**
62:21
**final (2)**
42:9;59:14
**finally (1)**
5:5
**financial (1)**
23:14
**find (5)**
7:5;13:7;15:12;
35:23;73:23
**fine (14)**
10:7,7;13:12;14:21;
30:24;34:8,9;38:23;
40:18;42:20;51:21;
72:5;74:15,18
**finished (1)**
56:10
**firm (1)**
5:13
**firm's (1)**
68:16
**first (12)**
8:3;11:20,21;12:6;
20:10;21:12;28:19;
31:7;33:19;36:17;
41:22;71:20
**five (1)**
65:6
**flexible (2)**
22:12;74:16
**flip (2)**
16:22;23:3
**float (1)**
68:8
**focus (1)**
32:1
**focused (1)**
37:3
**focusing (2)**
32:14,14
**Foley (5)**
4:15,19,25;5:3,6
**folks (4)**
5:21;7:20;37:3;
74:11
**follow (3)**
8:10,13;37:12
**following (1)**

54:16
**follow-up (1)**
25:11
**forget (1)**
64:12
**form (5)**
11:22;13:17;28:9,
12,14
**forms (1)**
19:9
**formulation (1)**
60:13
**forty (1)**
12:4
**forward (6)**
12:12;15:21;33:2;
43:4;70:7;74:20
**four-pound (1)**
7:14
**Francisco (1)**
72:12
**frankly (6)**
16:22;22:4;32:10,
23;37:22;61:15
**fraudulent (3)**
11:25;12:2;13:6
**freak (1)**
56:1
**frequently (1)**
14:3
**Friday (2)**
71:2,19
**friends (1)**
42:2
**froze (1)**
7:1
**fulfill (1)**
74:6
**fun (1)**
14:6
**function (1)**
20:17
**functional (1)**
21:8
**functions (2)**
20:10;21:4
**fundamental (3)**
50:22;52:10;64:8
**fundamentally (1)**
57:18
**funds (3)**
12:15,22;14:24
**further (7)**
13:6;24:17;27:20;
37:7;65:21;67:24;
71:7
**future (4)**
17:24;57:10;64:22;
66:6

**G**

**game-plan (1)**

55:1
**gang (1)**
72:1
**gating (1)**
61:14
**gee (1)**
13:19
**general (1)**
63:4
**generally (1)**
73:7
**gets (3)**
24:12;39:3;46:13
**given (10)**
20:25;21:1;28:16;
35:22;40:14;43:1;
53:14;68:1;71:18;
73:15
**giving (1)**
44:25
**global (1)**
32:12
**goes (8)**
23:1;28:9,11;53:21;
54:11;64:10,11,18
**Good (22)**
4:14,19,24;5:1,2,4,
6,9,11,19,25;6:4,7,10,
14,16;7:11;16:21;
19:25;40:19;66:14;
69:18
**Gotcha (2)**
35:8;51:11
**grant (4)**
14:22;15:12;17:15;
68:5
**granted (1)**
68:9
**granting (1)**
16:20
**grateful (1)**
45:14
**great (7)**
16:16;26:23;30:20;
36:10;38:23;39:6;
58:5
**greatest (1)**
26:19
**group (2)**
55:17;73:24
**guess (6)**
10:1;19:11;31:6;
44:14;45:24;63:15
**guys (7)**
7:25;11:17;14:2;
16:15;22:19;24:7;
30:4;39:21,21;46:3;
50:11;65:7;70:8,18;
72:21
**guys' (1)**
25:9

**H**

**half (2)**
65:9;74:7
**hand (3)**
49:17;52:3;56:4;
59:11;62:13
**handle (2)**
17:13;68:3
**handled (1)**
51:15
**hanging (1)**
11:18
**happen (6)**
18:23;47:19;66:6;
67:10,11;72:19
**happened (3)**
50:23;52:17;66:6
**happens (3)**
7:18;9:13;74:14
**happy (8)**
7:15,21;33:25;34:4;
38:18;42:18,21,21
**hard (3)**
45:5,5;69:9
**hard-copy (1)**
28:9
**head (2)**
64:2;69:3
**heads (1)**
63:9
**hear (22)**
5:22;7:22;11:13;
14:8;16:24;22:12;
33:25;34:4;40:7;43:6;
46:23;47:17;48:1;
49:4;52:19;56:13;
61:4;65:3,5;67:19;
71:6;72:7
**heard (3)**
11:4;17:3;65:4
**hearing (19)**
5:23,24;6:22;8:16,
19;15:3;17:11;24:25;
37:19;41:23;43:23;
45:15;48:9;59:9;
61:23;67:20;72:9,15;
73:13
**held (5)**
13:15,17,17,18,21
**hell (1)**
58:7
**help (6)**
19:10;27:21;30:19;
39:13;43:1;45:14
**helpful (19)**
7:5,13;13:8,21;
17:20,24,25;18:9,15;
21:18;22:3,4;34:15;
35:6;36:16;37:16;
65:8;69:14;71:16
**helping (1)**

7:1
**helps (4)**
19:14;27:13;30:4;
38:22
**Here's (3)**
6:21;28:18;30:3
**heroic (1)**
27:2
**hey (1)**
58:6
**Hi (1)**
4:16
**highly (1)**
60:25
**hit (1)**
37:6
**hitting (1)**
64:1
**hold (3)**
14:14;23:17;61:6
**holding (1)**
14:4
**holds (1)**
14:15
**holiday (1)**
8:9
**home (1)**
14:7
**homework (1)**
74:3
**honestly (1)**
35:18
**Honor (107)**
4:6,9,14,19,24;5:2,
5,9,16,19,25;6:4,7,10,
14;7:13;8:5,17;10:1,
11,12;11:2,15;25:11,
25;26:6;27:14,25;
28:17;29:1,5;30:8;
31:21;32:6,24;33:5,
22;34:13,14;35:3,10,
13;38:6,25;39:1,6,9,
15,18;40:6,6;41:5,25;
42:17,21;43:11,22;
45:15;47:2;48:3;
50:19;52:7,21;53:16,
23,25;55:6;56:5,7,18;
58:13;59:8,24;60:1;
61:2,9,21;62:8;64:1,
12,19,25;65:4,12,18,
19,22;66:10;67:25;
68:4,5,13,15;69:9,14;
70:1,24;71:5,17,22,
25;72:11,22;73:15;
74:12,17,18
**Honor's (4)**
32:11;53:9;57:17;
68:1
**hope (2)**
9:6;73:12
**hopefully (1)**
42:9
**hour (4)**

Case: 23-40523    Doc# 2094-2    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 82
of 90

65:9,9;74:7,7

**huddle (1)**
38:3

**Hudson (1)**
6:5

**hundred (1)**
43:14

**hundred-percent (1)**
10:2

**hyperbole (1)**
67:12

**hyperlink (2)**
29:10;30:2

**hypothetical (1)**
15:10

**hypothetically (2)**
16:2;22:14

**I**

**idea (9)**
28:5,6,18;30:7;
31:3;37:23;55:25;
68:8;69:19

**ideas (1)**
22:24

**identified (2)**
10:13;11:24

**identifies (1)**
23:9

**identify (6)**
46:8;53:17;54:7;
55:8,14,18

**identifying (1)**
55:21

**Imerys (1)**
7:10

**immediately (1)**
37:13

**impact (2)**
48:12;60:22

**impasse (1)**
37:11

**impassioned (1)**
6:24

**impinge (1)**
20:17

**Implicit (1)**
53:16

**important (8)**
22:9;23:19;24:10,
12;25:2;36:24;55:22;
61:10

**impossible (1)**
10:18

**inappropriate (1)**
68:21

**incentive (2)**
16:25;17:2

**inclined (1)**
71:10

**include (9)**
18:2,3,4;19:10;

23:13;24:2,3;26:8;
54:19

**including (1)**
18:13

**incorrectly (1)**
47:9

**incredibly (1)**
50:10

**indiscernible (9)**
7:6;27:4;34:18,19;
47:13,14,16;49:3;
56:11

**indulgence (1)**
24:7

**influence (2)**
33:16;40:24

**inform (3)**
27:21;32:11;43:1

**information (5)**
23:14,18;24:12;
47:4;50:13

**informed (5)**
23:21;25:2;32:10;
33:2;38:10

**informing (1)**
33:7

**informs (1)**
16:8

**initial (1)**
22:17

**in-person (1)**
72:11

**input (2)**
32:22;40:20

**insert (2)**
54:12;62:23

**inserting (1)**
28:3

**inside (2)**
29:6,12

**instead (1)**
55:17

**instinct (1)**
15:18

**insurance (33)**
5:20,22;6:2;9:22;
34:12;37:5;44:18,21;
45:1;46:9,17;47:20;
48:10,12,16,18;49:17,
24;51:3,20;52:10;
54:20;56:2;57:7;
58:18,19;59:13;
61:23;62:2;64:16;
66:2,3,3

**insured (1)**
66:4

**insurer (1)**
60:18

**insurers (11)**
34:1,5;43:19;44:2;
51:4;52:24;54:3;
55:11,17;58:21;60:16

**insurers' (3)**

53:19,20;57:5

**integral (1)**
20:2

**intelligent (1)**
24:8

**intend (1)**
8:10

**interested (1)**
61:23

**interesting (1)**
29:2

**interim (1)**
68:3

**internal (1)**
8:6

**interpret (2)**
51:4;61:24

**interpretation (2)**
58:22;59:2

**interpreted (1)**
54:10

**interrupt (1)**
70:22

**intertwined (1)**
9:15

**into (12)**
6:22;7:3;13:14;
22:16;24:22;32:22;
38:3,18;41:22;54:12;
55:15;62:23

**investment (1)**
12:20

**invitation (1)**
62:7

**involve (1)**
15:7

**involved (2)**
23:25;24:2

**irrelevant (1)**
27:7

**issue (45)**
9:13,14;10:14,17,
24;26:4,18,19;30:19;
34:12;36:3,21;40:10;
46:25;47:4,7,8;48:9;
50:23;52:2;53:20;
54:7,13;55:11,12;
59:9,19;60:1;61:14;
63:10,12,16;64:11;
65:13,19,21;67:15,23;
68:19;70:13,13,16,17,
20;72:25

**issues (23)**
8:14;10:13;11:10;
12:25;15:20;16:4,13;
19:20;20:10;36:18;
40:11;42:1,14;50:11;
53:14;54:14;62:18;
63:1,1;71:5;73:7,14,
18

**item (1)**
4:4

**J**

**JACOBS (2)**
6:4,5

**JANUARY (1)**
4:1

**Jason (1)**
6:10

**jaundiced (1)**
14:16

**Jeff (3)**
5:9;30:21;34:13

**Jesse (2)**
5:19;48:3

**Judge (22)**
7:8;17:10,12;21:2;
24:20;30:21;32:2,3,
15;35:19;36:9;37:19;
41:10,16;42:20;
47:22;49:21;67:22;
68:2,3,7,8

**judges (1)**
36:4

**judgment (9)**
6:23;15:8;20:13;
36:10;59:13,14,17;
62:1,2

**jump (1)**
7:3

**K**

**keep (4)**
5:24;16:17;39:16;
74:8

**keeps (1)**
13:8

**kept (2)**
12:10;13:3

**kidding (1)**
26:24

**kind (6)**
9:15;13:22;44:11;
45:2;63:4;71:8

**kinds (3)**
16:11;18:19;21:9

**knew (1)**
9:24

**knowing (1)**
37:14

**knows (1)**
58:7

**L**

**lack (5)**
9:11;18:5;19:1;
23:22;32:16

**landing (1)**
51:13

**language (9)**
15:16;60:2,10,17;

66:25;70:12,19;
71:15;73:14

**lap (1)**
7:3

**Lardner (5)**
4:15,20,25;5:3,6

**last (8)**
8:7;15:14;24:16;
43:13,22;45:16;54:1;
59:9

**lastly (1)**
59:8

**late (2)**
8:14,19

**later (5)**
10:5;43:25;44:11;
54:10;68:21

**law (20)**
10:18;14:25;20:13;
21:7,15;45:10;47:10;
48:7;49:19;51:8;
59:11;61:17;62:17,
24;66:2,3,3,8;67:1,10

**lawyers (6)**
14:3;31:8;63:7,8,8;
66:15

**layer (1)**
55:3

**lead (2)**
7:24;56:16

**leaning (2)**
16:20;63:15

**least (13)**
11:25;12:22;22:14;
24:17;25:11;35:22;
36:18;37:5;41:20;
44:17;46:10;54:21;
68:6

**leave (3)**
26:16,17;55:7

**leaves (1)**
43:6

**LEE (3)**
4:19,19,22

**left (7)**
11:6,7;18:24;24:19;
27:19;44:21;51:17

**legal (15)**
9:7;15:5;20:8;
43:23;47:6;48:11;
53:14,20;54:7,13,24;
55:16;63:1,10,18

**legality (1)**
61:15

**length (2)**
10:25;28:16

**less (2)**
11:8;29:17

**letting (1)**
23:16

**level (1)**
21:10

**levels (1)**

Case: 23-40523    Doc# 2094-2    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 83
of 90

50:12
**lift (1)**
67:25
**light (1)**
47:18
**likelihood (1)**
44:20
**likely (4)**
9:14;15:7;23:25;
24:1
**Likewise (1)**
4:22
**lim (1)**
26:20
**limine (1)**
26:24
**limit (1)**
20:23
**limitation (1)**
16:13
**limitations (1)**
16:15
**limited (1)**
27:9
**limits (3)**
21:13;57:10;67:16
**line (2)**
4:4;54:25
**lined (1)**
46:13
**lines (2)**
15:8;60:13
**link (4)**
28:22,24;29:8;
31:13
**liquidate (1)**
21:9
**liquidated (3)**
19:23;20:6;22:15
**liquidating (2)**
20:11;58:5
**liquidation (10)**
19:19,22;20:3,16,
16,23;21:19;22:13,
25;74:4
**list (1)**
24:16
**listing (1)**
57:2
**literally (3)**
24:21;28:24;65:6
**litigated (1)**
46:18
**litigation (7)**
8:19;15:21;58:4,6;
64:5;68:18,22
**little (16)**
10:9;15:5;17:3;
23:4,12,15;24:18;
31:13;34:20;35:16;
37:22;38:3;44:14;
67:24;69:18;72:14
**loathe (1)**

17:14
**located (1)**
12:15
**logic (1)**
54:22
**logistically (1)**
72:18
**long (3)**
7:21;38:8;58:12
**longer (1)**
21:10
**look (12)**
15:10;16:4;18:16;
31:7;42:11;45:9;46:1;
58:3;61:3,3;73:22;
74:20
**looked (2)**
17:20;22:17
**looking (4)**
46:1;57:4
**losing (4)**
34:20;67:13,14;
73:1
**loss (1)**
45:3
**lot (14)**
14:6,6;16:20;21:15;
29:15;31:11;43:13;
44:5;54:8;58:4;62:22;
63:21;68:16;73:13
**lots (1)**
6:20
**love (1)**
73:23
**Lowenstein (2)**
5:10,17

# M

**Makes (4)**
11:14;27:12;47:22;
49:21
**making (3)**
6:24;22:23;25:4
**managed (1)**
52:2
**manner (1)**
13:21
**Manns (2)**
6:14,14
**many (4)**
18:17;28:21;55:1;
71:5
**Marie (2)**
4:14;8:6
**Mark (2)**
4:24;5:25;39:1;
59:24
**material (1)**
62:3
**Matt (1)**
4:19
**matter (9)**

13:24;17:12;20:22;
23:24;37:9;45:10;
49:19;51:8;67:1
**matters (6)**
11:7,17;17:10,13;
25:5;33:24
**may (51)**
7:7;8:5;11:6,7;
14:14,24;15:7,18;
16:2;17:23,23;18:8;
19:24,24;20:13;21:7,
24;25:12,13;26:14,
19;27:8;29:1;32:6,21,
23,24;39:13;43:24;
44:12,19;46:18;
52:18;53:21;54:6,7,9,
25;55:6,23;62:2,3;
63:22;64:8;65:1,4;
70:10,18,25;71:14;
73:18
**maybe (16)**
10:3;11:25;12:20;
13:7;30:4,16;42:7,18;
46:21;55:14;56:4;
57:18,22;60:12,13;
65:2
**mean (49)**
7:16,16;10:8;11:6;
16:2,22;23:5;26:1,3,4,
21;27:2;28:8;29:13,
13,24;30:6,25;32:13;
36:13;37:2;38:19;
44:4,8;46:11,16;
47:17;50:1,15;51:5,
25;52:9;54:24;55:4;
57:3;58:3;63:23;
64:12,14,20,23;65:8;
70:8,16;71:9,22;
72:16;73:9;74:4
**meaning (1)**
10:14
**meaningful (4)**
24:10;64:16;65:2;
72:17
**meaningless (1)**
52:5
**means (6)**
19:17;23:6;24:5;
49:14;51:21,22
**meantime (1)**
74:13
**mediating (1)**
36:1
**mediation (17)**
24:17;23;31:21;
32:4,12,16,23;33:7;
35:24;37:3,4,9;40:15;
41:13,14,21;72:12
**mediator (3)**
37:10,13;41:3
**mediators (6)**
32:11,22;33:6,16;
35:25;40:20

**mediators' (1)**
32:7
**meet (1)**
73:11
**meet-and- (1)**
42:1
**meet-and-confer (1)**
27:20
**meeting (4)**
40:11;42:2;58:23;
74:15
**melding (1)**
66:7
**mentioned (2)**
6:13;70:24
**mic (4)**
34:21,22;61:19;
73:2
**might (31)**
15:17;16:1;18:17,
20,23;19:11;22:14,
24;26:22,23;31:13;
32:13,13;36:16,18;
37:16,22;52:17;66:5,
6;67:10,10,11;68:2,3,
8,10;69:18;70:12;
72:14;73:11
**million (1)**
12:4
**mind (8)**
9:6;15:4;16:23;
18:25;26:22;31:7;
49:8;71:17
**minded (1)**
23:10
**mindful (1)**
16:9
**minds (3)**
20:24;40:11;58:23
**mine (4)**
6:21;14:5,5,10
**minutes (6)**
7:3;38:9,14;39:2;
61:4;65:6
**misleading (3)**
18:14;23:4;62:15
**misstated (1)**
48:2
**mixed (1)**
72:10
**Module (4)**
55:24;56:1,2,3
**modules (1)**
55:24
**moment (7)**
15:11;17:19,21;
19:21;44:20;46:23;
54:15
**Monday (4)**
74:1,7,10,20
**monetary (1)**
15:23
**money (6)**

12:21;13:14,21;
14:21;44:17;54:17
**Moore (21)**
4:24,24;29:3,5,8,10,
12,18,20,23;59:22,24,
24;60:4,6,9,15,20,22;
61:1,22
**Moore's (1)**
61:13
**more (16)**
9:13,19;13:4;15:5;
17:1;19:13;20:15;
23:16;32:12;37:1,17;
45:23;61:20;63:4;
71:10;73:12
**morning (16)**
4:14,19,24;5:1,2,4,
6,9,11,19,25;6:4,7,10,
14;43:12
**Moses (2)**
5:5,5
**most (4)**
11:24;12:1,7;19:9;
37:12;67:14
**motion (28)**
6:23,24;11:22,23;
12:9;14:23;15:6,8,10;
16:6,18,19;17:21;
24:17;25:1,2,4;26:19,
24;32:12;37:2;40:15;
41:11;57:8;67:25;
68:1;69:11,15
**mouth (2)**
9:17;49:13
**move (2)**
16:25;33:1
**moved (1)**
4:10
**moving (2)**
4:6;23:12
**much (17)**
8:6;16:8,20;17:22;
19:14;31:17;37:17;
38:19;39:7,24;42:8;
50:7;55:14;63:4;
64:25;69:4;74:19
**multiple (1)**
55:11
**myself (1)**
16:14
**mystery (1)**
57:14

# N

**nail (1)**
64:2
**narrative (1)**
26:15
**narrow (1)**
36:18
**nature (1)**
56:25

Case: 23-40523    Doc# 2094-2    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 84
of 90

**necessarily (3)**
15:11;45:19;49:14
**need (18)**
11:8,12;13:25;
15:20;21:12;22:13;
23:1;29:21;37:17;
38:21;39:13,18;
41:13;42:8,20;49:8;
51:13;74:8
**needed (1)**
42:15
**needs (2)**
48:22;61:15
**negative (1)**
18:7
**net (1)**
23:22
**new (2)**
17:10;68:2
**next (6)**
24:4;42:9;65:9;
71:18;73:13;74:20
**Nice (2)**
4:21;35:14
**nobody (1)**
56:1
**nonbankruptcy (1)**
21:6
**nonconsensual (1)**
59:19
**None (1)**
23:9
**notably (1)**
11:24
**note (2)**
14:2;53:23
**noted (1)**
8:2
**noticed (1)**
22:19
**notion (1)**
67:14
**nuances (1)**
62:22
**number (7)**
4:4,5;7:24;19:2;
20:7;23:4;29:25
**numbers (2)**
19:12;22:25
**numerous (1)**
64:14

## O

**OAKLAND (3)**
4:1,5;59:25
**object (1)**
58:20
**objected (1)**
32:3
**objection (4)**
40:22;47:11;59:21;
61:25

**objections (2)**
42:15;55:16
**observation (1)**
33:21
**obtain (1)**
62:2
**obviously (2)**
12:2;14:8
**occur (3)**
44:6,10,12
**occurred (1)**
32:4
**occurs (1)**
45:21
**o'clock (1)**
74:10
**off (4)**
7:24;42:14;43:11;
74:14
**offended (1)**
69:17
**offers (1)**
33:8
**office (1)**
7:14
**often (1)**
14:8
**once (8)**
17:15;34:14;45:9,
20,20;49:18;54:25;
59:12
**one (50)**
6:25;8:14,18;9:3,
21;11:12,21;12:9;
13:3,16;17:5;18:11,
18;21:20,20,22;22:13,
18;24:20;25:11,16;
27:18;37:9;38:15,15,
24;40:10;43:15;
44:17;46:3;47:1;
50:12,13;51:15;52:3,
14,24;53:9;54:7;55:1,
23;56:7,18;61:6,10;
63:21;64:16;65:17,
20;66:18
**ones (1)**
21:2
**only (9)**
7:16;17:5;21:2;
22:3;31:8;34:17;
37:11;40:22;68:25
**oOo- (1)**
4:2
**open (9)**
22:24;23:10;24:16;
27:19;30:5;37:18;
39:16;71:23;72:6
**open-ended (1)**
7:22
**OPF (3)**
6:15;11:22;16:18
**opportunity (1)**
35:23

**oppose (1)**
69:10
**opposite (1)**
66:16
**opposition (1)**
57:5
**option (2)**
8:19;68:18
**options (1)**
21:25
**oral (1)**
13:11
**oranges (3)**
58:11;68:19;69:25
**order (3)**
4:3;34:18;51:12
**organization (2)**
20:15,18
**others (3)**
4:17;17:4;37:19
**otherwise (7)**
14:15;17:13;18:15;
22:25;45:1;62:16;
63:6
**ought (1)**
25:19
**ourselves (2)**
30:22;35:23
**out (22)**
11:18;12:11;15:20;
18:24;21:25;24:12;
25:20;28:9,11,12,13;
35:23;37:23;45:6;
49:22;53:21;54:6,21;
56:1;58:21;60:24;
74:1
**outcomes (2)**
26:10,15
**outside (1)**
19:23
**outstanding (1)**
25:5
**over (7)**
4:6,10;7:21;41:21;
61:19;63:9;65:9
**overcome (1)**
70:17
**overstates (1)**
20:6
**own (3)**
16:18;19:16;22:16

## P

**Pacific (1)**
41:20
**page (6)**
9:4;29:18,20,21;
48:11
**pages (1)**
64:15
**pandemic (1)**
6:22

**paragraphs (1)**
28:21
**parcel (1)**
23:5
**parcels (2)**
23:7,8
**Parker (1)**
6:5
**part (12)**
20:2;26:10,13;33:5,
14;35:20;45:8;46:20;
47:24;55:8;62:20;
69:21
**partially (1)**
15:9
**particular (2)**
20:12;60:17
**parties (7)**
4:6,9;39:15;40:23;
47:5;64:9;69:1
**parties' (3)**
53:14;57:2;58:16
**partner (1)**
5:12
**parts (1)**
54:9
**party (2)**
6:23;23:22
**past (1)**
7:3
**path (1)**
55:9
**patient (1)**
56:14
**Pause (2)**
4:8;46:23
**paused (1)**
32:18
**pausing (2)**
37:11;58:12
**pay (3)**
16:16;57:10;59:14
**PDF (1)**
29:6
**people (10)**
24:11;29:25;34:7;
37:18;38:3;52:4;
54:16;63:7,24;65:9
**people's (1)**
58:25
**percent (1)**
43:14
**perfect (1)**
52:16
**perfectly (2)**
21:20;41:12
**perform (2)**
21:3,11
**perhaps (3)**
17:1;50:16;51:18
**period (1)**
68:4
**person (4)**

**Plevin (42)**

17:11;28:19;30:6;
33:20
**personally (2)**
41:11,12
**perspective (6)**
30:9;38:5;41:20;
47:20;54:11;65:12
**persuasive (1)**
21:20
**phone (3)**
34:6;37:22;41:3
**phonetic (1)**
37:6
**phrase (1)**
45:17
**phrased (2)**
67:6,7
**pick (1)**
41:2
**piece (3)**
45:14;48:6;58:4
**pieces (1)**
40:25
**place (3)**
24:18;42:18;55:23
**places (1)**
60:4
**plaintiffs (1)**
31:9
**plaintiffs' (1)**
31:8
**plan (67)**
9:8;10:16,17,18;
15:20,25;16:3;21:23,
24;22:5;23:19;24:11;
26:9;30:10;34:11;
37:7;42:22;43:21;
45:4;46:2,4,7;47:9,18,
19,23,24;48:7,20;
49:12,25;51:9,13,15;
52:11;53:2,4,15,19;
54:9,16,19,21,25;
55:4,24;57:8,16,23;
58:10,18,19,24;59:2,
15;61:16,16,17;63:3;
64:11,17;66:19;67:6,
7,16;68:22;70:10
**plans (1)**
58:4
**play (4)**
15:20;49:4;53:21;
54:6
**player (1)**
54:22
**playing (1)**
49:22
**plead (1)**
10:2
**please (3)**
8:20;28:7;40:1
**pleasure (2)**
25:10;65:11
**Plevin (42)**

Case: 23-40523    Doc# 2094-2    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 85 of 90

5:23,24,25;6:16,18,
20;7:6,8;8:13,17,24;
9:2,23;10:1,5;11:9;
25:8;34:11;38:12;
39:1,1,5;40:7;43:6,10,
11,17;45:5,15;47:1,4,
13,16;62:6,8,12;
64:19;72:8,9,10,14,19
**Plevin's (3)**
7:17;8:18;9:17
**point (25)**
6:25;17:21;20:15;
21:3,9,10;24:16;
27:18;28:23;29:14;
36:24,25;44:4;45:23;
47:1,22;52:5;56:18;
59:21;61:10,13,13,20,
21;66:16
**pointed (1)**
45:6
**points (3)**
25:7,9;53:9
**policy (1)**
20:18
**portion (1)**
12:18
**portions (1)**
12:16
**posed (1)**
25:12
**position (27)**
10:13,17;14:4,17,
18;19:15;21:5,17;
22:21;27:8;28:3;30:4;
33:18;37:13;45:1,9;
46:15;49:11,17;
50:16;51:19,21,23;
54:24;57:4,15,15
**positions (3)**
53:14;57:2;58:16
**possibility (1)**
16:23
**possible (5)**
28:20,22,25;29:6;
63:21
**post- (1)**
48:12
**post-confirmation (5)**
19:6;48:17;49:1;
54:6;63:17
**pot (4)**
44:17;51:25;52:1,2
**potential (2)**
11:25;17:5
**potentially (2)**
17:6;29:25
**practical (3)**
17:7,7;20:5
**practice (1)**
12:13
**pre (1)**
63:17
**predicate (1)**

44:10
**predict (1)**
47:21
**preference (1)**
11:25
**preferred (1)**
71:18
**prejudge (1)**
26:21
**prejudice (5)**
16:7;17:22;68:4;
69:11,17
**preliminaries (1)**
34:14
**preliminary (1)**
11:17
**prelude (1)**
25:4
**prepared (8)**
7:23;20:4;22:12;
25:6;53:17;62:9;
63:11;74:8
**present (3)**
10:14;31:13;65:18
**presented (3)**
27:8;50:6;67:8
**presently (1)**
15:22
**preserved (2)**
49:25,25
**presiding (1)**
17:10
**presses (1)**
11:12
**presumably (1)**
32:2
**pretty (2)**
20:21;74:3
**preventing (1)**
60:17
**preview (3)**
12:11;23:24;26:18
**principle (1)**
22:3
**prior (1)**
12:4
**privilege (2)**
24:23;33:7
**probably (4)**
12:13;15:5;38:18;
73:14
**problem (8)**
30:4;31:13;35:16,
17;41:4,18;45:22;
62:20
**problematic (1)**
13:11
**problems (1)**
34:22
**proceed (1)**
73:4
**proceeding (2)**
17:1,14

**proceedings (1)**
74:21
**process (9)**
19:14;20:3;24:10;
32:23;33:11;37:19;
40:20;46:20;69:14
**productive (2)**
42:2;71:13
**professionals (2)**
56:20;61:5
**programs (1)**
13:14
**progress (7)**
7:25;15:24;42:5;
65:20;72:17;73:24,25
**Prol (35)**
5:9,9,12;23:15;
24:11;30:21,21;31:2,
3,4,6,11,16,18;34:13,
13,17,20,22,25;35:3,
7;56:13;67:21,22;
68:13;69:13;72:20,
22;73:1,3,10,17,21;
74:18
**Prol's (4)**
50:16;69:10,17;
70:15
**propelling (1)**
74:8
**property (11)**
12:14,17;13:4,5,9,
12;14:13,14;22:21;
23:5,8
**proponent (2)**
53:15,19
**proposed (1)**
53:4
**proposition (1)**
20:6
**prosecute (1)**
11:23
**protection (1)**
20:9
**protections (2)**
20:8,12
**proven (1)**
14:19
**provide (1)**
57:8
**providing (2)**
19:21;20:25
**provisions (1)**
61:16
**public (1)**
20:18
**Purdue (1)**
59:19
**purport (2)**
19:9;41:8
**purpose (2)**
15:14;16:5
**purposes (9)**
12:20;13:15;22:10;

23:6;42:22;43:25;
45:12;46:1;53:22
**pursue (3)**
34:7;44:3;58:6
**pursued (3)**
16:1,3;54:20
**pursuing (1)**
15:19
**pursuit (1)**
15:15
**push (1)**
44:14
**pushing (1)**
33:1
**put (10)**
7:7;9:17;10:8;
28:20;44:17;46:4;
49:13;63:15;64:25;
73:22
**putting (8)**
44:8;47:5;51:25;
52:1;58:16;62:16;
63:10,16

**Q**

**quick (2)**
59:22;68:15
**quickly (1)**
17:1
**quitclaim (1)**
45:18
**quite (4)**
13:16,24;46:9;
54:12

**R**

**radically (1)**
54:23
**raise (3)**
27:18;59:8;61:22
**raised (1)**
8:18
**raising (1)**
62:19
**rather (4)**
8:24;10:22;28:20;
44:2
**RCC (1)**
6:15
**RCWC (1)**
6:15
**re (1)**
42:15
**reached (1)**
50:24
**react (2)**
34:7,19
**reacting (1)**
37:2
**read (2)**
31:9;62:12

**reader (1)**
18:15
**reading (3)**
54:16;55:14;62:21
**Ready (2)**
11:19;17:6
**real (9)**
16:21;20:9;22:21;
23:5,8;46:9;48:8;
68:14,15
**reality (2)**
21:24;46:2
**realize (5)**
19:5;21:14;22:15;
64:22;70:8
**really (32)**
9:20;12:17,21;13:1;
14:5,20,24;16:7;17:5;
18:14;19:14,23;
23:16;27:13;30:9;
32:21;33:1;35:20;
36:6;41:14,19;42:19;
43:1;44:12,14;46:4;
47:21;51:10;52:14;
55:22;63:14;64:20
**reason (4)**
18:25;27:10;51:19;
57:3
**reasonable (2)**
26:3,9
**reasons (5)**
16:1;18:17,24;
20:19;37:22
**recess (2)**
38:21;39:25
**recognize (1)**
15:18
**recognized (1)**
43:22
**Recognizing (1)**
8:9
**recommend (1)**
32:23
**reconvene (4)**
65:10,10;70:8;71:8
**record (2)**
54:2;62:10
**recording (1)**
23:6
**recovering (1)**
61:25
**recovery (1)**
60:18
**reference (2)**
26:9;45:16
**referenced (1)**
13:14
**referring (1)**
10:3
**reflects (1)**
37:7
**refuses (1)**
59:14

Case: 23-40523    Doc# 2094-2    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 86
of 90

**regard (4)**
67:24;73:4,7,11
**regarding (1)**
66:5
**rejoin (2)**
39:12,16
**related (1)**
26:6
**relatedly (1)**
26:6
**release (6)**
23:13,20,23;24:15;
59:18,20
**releases (1)**
59:15
**relevant (1)**
25:23
**relied (1)**
13:20
**relief (5)**
16:19;17:15,21;
68:9;69:24
**religious (6)**
20:10,14,18;21:3,4;
46:4
**rely (1)**
13:23
**remaking (1)**
68:5
**renew (1)**
68:10
**reorganization (2)**
20:1;54:9
**repeat (1)**
35:3
**repeatedly (1)**
66:14
**repose (1)**
37:6
**repping (2)**
53:25;54:2
**represent (1)**
50:24
**representations (3)**
48:16;52:9;58:17
**representing (4)**
4:12;5:8,22;51:3
**request (5)**
18:4;23:12;68:5;
70:5,18
**require (3)**
18:5;23:13;53:18
**required (1)**
20:4
**requirement (1)**
53:13
**requires (1)**
54:4
**reserve (1)**
63:13
**resist (2)**
19:1,17
**resolve (2)**

30:19;71:5
**resolved (1)**
42:19
**resolving (1)**
18:19
**respect (23)**
8:14;11:12;12:2;
14:13,23;15:20;
16:19;17:10,11;19:3,
19;25:17;33:6;36:25;
40:15,20;43:19;
49:24;54:8;62:8,18;
70:6,13
**respecting (1)**
70:14
**respond (3)**
36:23;53:8;56:17
**responding (2)**
61:13;68:15
**responds (1)**
27:25
**response (4)**
56:8,24;58:15;
61:22
**responsible (1)**
32:4
**rest (1)**
14:6
**restricted (2)**
12:23;14:24
**restriction (1)**
15:4
**result (2)**
7:20;44:16
**results (1)**
18:20
**resume (1)**
25:7
**return (1)**
42:7
**review (3)**
8:7;33:24;73:6
**revise (1)**
26:14
**Ridley (6)**
5:2,2;54:1;55:7;
65:23,25
**Right (50)**
5:4;7:14;10:1,20;
25:21;26:5,20;28:24;
29:9,11,13,16,24;
30:15;33:25;35:9;
39:3,19;41:22,24;
42:4,24;43:5,10;44:7;
49:5;51:1,7;52:12;
53:1,5;57:13,24;58:1;
59:7;63:9,13;64:12,
14,23;65:3,23;66:18,
18;67:13,16;70:21;
73:16;74:13,16
**rights (35)**
43:20,24;44:15,21,
24,25;45:2,20,21;

47:6,20;48:12,23,25;
49:11,14,16,19,23;
51:3;53:24;54:18,19,
23;58:10;62:15,17,17,
19;63:2,3,17;66:4;
67:13,14
**risk (15)**
47:21,24;52:4,5;
53:18;54:5,8,8;55:4,4,
8,14,18,21;57:10
**risks (2)**
46:8,8
**road (1)**
10:22
**robustly (1)**
46:4
**Rochester (1)**
68:18
**Rockville (1)**
67:7
**role (1)**
43:24
**Roman (2)**
4:4;59:25
**routinize (1)**
19:7
**ruled (1)**
69:14
**ruling (8)**
25:1,14,17,19,22;
49:21;65:19;69:10
**rulings (1)**
11:6
**run (1)**
16:15
**runs (1)**
10:17
**Ryan (1)**
6:14

**S**

**sacred (2)**
20:17;21:1
**same (10)**
9:4;13:20;41:3;
44:18;51:5;60:20;
61:24;62:4;66:16;
67:8
**San (1)**
72:12
**sanctity (1)**
36:1
**Sandler (2)**
5:10,17
**saw (2)**
11:10;41:14
**saying (6)**
28:22;30:25;36:24;
43:12;47:5;48:19
**schedule (2)**
22:17,17;24:13,13;
71:19;73:11

**SCHIAVONI (24)**
35:10,12,15,18;
36:6,9,13,16,21;
37:25;41:2,10,19;
65:4;66:10,12,12,14,
19,22,25;67:4;68:16
**schools (2)**
12:19,21
**school's (2)**
13:13;14:21
**scope (1)**
25:18
**Scout (1)**
67:6
**Scouts (2)**
7:9;68:17
**second (5)**
11:12;21:21;44:3;
50:13;61:6
**Secondly (2)**
53:8,12
**section (3)**
59:14;61:24;62:4
**seeing (2)**
73:23;74:20
**seeking (3)**
23:13,23;24:15
**seems (2)**
37:3;50:6
**segregated (1)**
13:18
**selection (1)**
41:11
**sending (1)**
30:12
**sense (12)**
11:14;12:11;17:24;
19:16;22:6;24:9;
27:12;35:25;37:13;
44:5,19;73:12
**sensitive (1)**
69:21
**sentence (1)**
54:5
**separate (3)**
9:14;23:8;40:14
**separately (1)**
5:15
**service (1)**
20:25
**session (1)**
40:2
**sessions (1)**
32:4
**set (1)**
14:25
**Setting (1)**
48:6
**settle (1)**
44:19
**settlement (1)**
24:23
**several (1)**

7:9
**severely (1)**
20:17
**Shane (1)**
5:5
**shortcoming (1)**
13:7
**shortcut (1)**
29:23
**shorthand (1)**
11:22
**sic (4)**
12:25;13:23;17:16;
26:20
**side (3)**
26:1;37:11;62:16
**sides (1)**
11:3
**side's (1)**
37:9
**significant (7)**
12:16,18;15:23,23;
47:21;48:14;54:22
**significantly (1)**
32:15
**Silverstein (1)**
7:8
**similar (1)**
18:25
**similarly (1)**
14:23
**Simons (1)**
17:4
**simple (2)**
12:13,13
**simpler (2)**
15:16;55:13
**simplistic (2)**
50:8,10
**simply (4)**
19:25;23:11;28:22;
51:18
**sit (2)**
11:3;49:23
**situations (1)**
18:11
**six (1)**
17:5
**skin (2)**
23:10;68:25
**skip (1)**
15:14
**sleuthing (1)**
15:6
**slightly (2)**
6:25;45:25
**sobering (1)**
51:18
**social (1)**
38:16
**SOFA (1)**
22:17
**sole (1)**

Case: 23-40523    Doc# 2094-2    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 87
of 90

53:15
**solely (1)**
13:23
**solicit (2)**
9:20;50:17
**solve (1)**
30:4
**somebody (10)**
14:9,10;19:15;
28:24;45:3;46:19;
47:22;54:24;56:4;
58:9
**somehow (3)**
29:23;47:9;67:12
**someone (1)**
64:2
**somewhat (3)**
13:10;17:9;23:10
**Sontchi (5)**
32:3;35:19,19;
37:19;41:16
**Sontchi's (3)**
24:20;32:2,16
**soon (5)**
17:6;34:9;71:6;
72:1,3
**soonest (1)**
71:18
**sophisticated (2)**
31:12;69:1
**sorry (11)**
7:2;29:19;35:1,15;
56:6;65:4,19;70:22;
72:9;73:2,3
**sort (9)**
8:14;11:18;12:1;
15:15;18:2;36:1;
45:18;56:24;67:9
**sought (1)**
66:22
**sound (1)**
15:1
**sounding (1)**
12:13
**sounds (1)**
48:9
**speak (6)**
36:7,22;56:10,21,
23;68:17
**speaking (2)**
35:25;52:14
**special (1)**
5:20
**specificity (1)**
44:11
**speculative (1)**
67:15
**spot (2)**
10:8;51:13
**sprang (1)**
34:8
**square (1)**
25:8

**stage (2)**
24:8;53:22
**stagnarian (1)**
37:6
**standing (2)**
11:23;57:8
**standpoint (3)**
29:5;37:23;61:8
**stark (1)**
21:24
**start (3)**
4:12;40:5;53:18
**started (1)**
43:11
**state (8)**
20:13;48:25;59:17;
62:1;68:7,8;69:22,23
**stated (4)**
22:20;53:25;57:4,
15
**statement (43)**
9:13,18;18:1;20:22;
21:13;22:4;23:14,18;
24:1,4;25:7,20;26:14;
28:4,22;31:8;42:16;
43:22;45:25;46:25;
47:7,8;48:9,15;49:10;
53:13;54:13;59:21;
61:7;62:23;63:5,19,
19;64:15;65:17;66:1;
67:7;70:9,13,16,17,
21;74:1
**statements (3)**
14:20;18:16;22:18
**States (1)**
6:11
**status (4)**
24:20;37:8,14,16
**statute (2)**
16:10,13
**stay (8)**
16:19;17:15,22;
39:13;66:23;67:25;
68:6;69:24
**step (2)**
53:22;54:12
**still (2)**
22:22;59:10
**stipulation (1)**
16:12
**stop (3)**
11:12;65:6;69:9
**story (1)**
6:17
**strings (1)**
17:18
**strongly (1)**
55:15
**struck (2)**
32:1;66:14
**structure (1)**
57:25
**structured (2)**

68:19,22
**stuck (1)**
24:18
**stuff (2)**
14:7;29:15
**stunned (1)**
28:19
**subject (4)**
31:21;40:7;66:23;
68:4
**substance (1)**
33:8
**substantive (1)**
73:13
**successful (2)**
15:9,9
**sudden (1)**
58:23
**sufficient (5)**
49:7,10;50:2;70:12;
72:17
**suggest (5)**
35:22;38:9;69:2;
70:11;71:14
**suggested (5)**
55:15;69:13;73:8,
10,17
**suggesting (5)**
33:12,13;41:15,21;
63:5
**suggestion (6)**
32:6;42:7;53:9,16;
69:10,17
**summary (2)**
6:23;15:8
**supportive (1)**
34:2
**supposedly (1)**
64:14
**Sure (40)**
5:16;6:18;7:5;8:12;
9:4,24;10:2,7;11:1;
13:23;14:21;16:10;
17:12;19:10;24:14;
25:15,24;26:4;27:22,
24;28:1;30:13,13;
31:25;35:14;36:19;
37:17;41:1;42:13;
43:14,16;44:25;46:2;
47:25;49:6;54:25;
56:17,17;72:22;73:3
**surround (1)**
68:2
**survive (5)**
12:9;49:15;52:15,
15;57:16
**survivor (4)**
18:6;19:3;48:14;
61:25
**survivors (6)**
48:17;49:12;52:13;
59:5,12;62:17
**survivors' (2)**

48:23;62:16
**suspect (1)**
9:24
**suspended (2)**
32:16;37:9
**sympathetic (1)**
30:25
**Syracuse (2)**
67:8;68:18

**T**

**talk (22)**
10:6;11:9;24:18;
25:3,8;30:5,23;31:14;
33:11;34:8,11,18;
35:19;36:17;43:17;
49:9;50:3;62:9,12,16;
63:11;65:9
**talked (2)**
11:21;60:1
**talking (7)**
7:2,21;9:18;41:22;
50:15;60:6;70:23
**talks (1)**
64:15
**Tanc (2)**
35:12;66:12
**tandem (1)**
18:2
**team (1)**
34:18
**technical (2)**
29:5;39:9
**technically (1)**
39:13
**telling (1)**
37:10
**ten (6)**
7:3;38:17,24;39:3,
21;61:3
**terminates (1)**
45:2
**terms (5)**
19:16;42:6;43:19;
68:8;73:12
**terribly (2)**
18:14;31:11
**Thanks (3)**
11:15;39:7;41:24
**them's (1)**
66:18
**theories (1)**
13:6
**theory (4)**
16:7;19:22;20:23;
37:5
**there'd (1)**
41:13
**therefore (2)**
23:2;49:22
**thinking (7)**
24:8;30:5;37:21;

42:12;70:2,2;71:12
**Third (1)**
66:23
**third-party (2)**
59:20;60:22
**third-party-release (1)**
59:9
**thirty (2)**
38:9,14
**thirty-five (1)**
24:6
**this-is-the-risk (1)**
70:20
**thoroughly (3)**
20:11;48:1;70:14
**though (3)**
6:20;13:20;36:17
**thought (9)**
13:1;16:20;37:15;
41:11;42:15;46:5;
60:8;73:8,10
**thoughts (8)**
7:24;8:4;11:17;
25:6;35:24;37:24;
38:1;63:25
**three (5)**
32:7,10,22;40:20;
55:24
**throughout (1)**
28:3
**throw (2)**
37:23;64:12
**Thursday (7)**
7:21,23;11:18,21;
71:2,19;74:15
**Tim (1)**
5:13
**times (1)**
10:21
**timing (8)**
16:7,8;24:2;42:6,7,
12;68:20;69:12
**today (15)**
4:13;7:5;11:13;
38:16,19;42:22,24,25;
43:23;48:19;49:23;
65:15;67:23;71:9,11
**Todd (1)**
6:4
**together (4)**
41:15;46:4;73:24;
74:7
**told (5)**
12:22;19:9;32:15;
37:8;54:17
**took (1)**
26:2
**total (1)**
18:6
**totally (1)**
64:20
**toward (2)**
16:20;63:15

Case: 23-40523    Doc# 2094-2    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 88
of 90

traditional (1)
19:22
transfer (5)
11:25;12:2,3,14;
13:7
transferred (2)
48:17;51:4
transferring (3)
44:15;49:11;54:18
treat (2)
19:5,6
true (1)
61:25
trust (9)
14:25;36:10;43:21;
44:16;45:20,21;
54:17;60:18;64:14
Trustee (5)
6:9,11;51:23;58:6;
64:4
trustees (1)
49:15
try (8)
19:7,16;53:19;
54:12;55:1;62:21;
70:19;72:15
Trying (19)
5:24;7:2;9:14,17,
23;12:11;13:3;18:13;
23:3;25:18;37:12;
40:24;45:3;46:15;
50:20,20;51:24;
55:15;61:14
TUESDAY (1)
4:1;72:5
turn (6)
42:8;54:21;61:19;
63:14;72:23;73:5
turned (1)
6:25
Turning (3)
18:1;29:18,20
turns (1)
58:21
twenty (2)
39:2,8
twenty- (1)
24:5
two (19)
9:15;11:10;14:11;
16:10;21:19;25:16;
32:15;40:11;42:1;
43:13;50:12;52:4;
53:9;54:5;55:19;
58:13;60:4;66:16;
70:11
typically (1)
12:7

**U**

Uetz (116)
4:14,14,17;7:7,13,

18;8:5,6,9,13,16,23;
9:1,5;10:3;11:9,15;
25:8,11,16,22,25;
26:6,13,23;27:1,4,13,
16,18,23,25;28:2,7,
10,13,16;29:1;30:8,
12,14,16,19;31:19,21,
23;32:1,6,18,21;33:1,
5,10,14,21,24;34:2,
11;38:5,9,12,14,25;
39:6,9,12,20,23;40:4,
6,10,14,18,22;41:1,5,
8,25;42:5,11,17,21,
25;43:4,8;52:19,21,
24;53:2,4,6,8,12;55:6,
21;56:6,63:5;65:12,
16,25;69:7,9,20;70:1,
4,24;71:3,12,17;72:3,
5,23;73:3,17;74:12,17
Uetz's (3)
49:13;56:8,24
ultimately (3)
57:19,22;73:19
Um-hum (1)
66:11
uncertain (4)
9:20;49:23;50:14,
17
uncertainty (2)
17:19;56:25
unclear (2)
49:20,20
uncomfortable (1)
46:12
undefined (2)
20:21;50:18
under (7)
14:25;19:6,25;20:1;
59:11;62:17,25
undercuts (1)
17:7
underlie (1)
20:8
understatement (1)
65:2
Understood (3)
41:24;42:17;61:1
undetermined (1)
22:22
uneducated (1)
18:15
ungrant (1)
17:16
unique (1)
58:15
United (1)
6:11
universe (1)
46:10
unknowable (1)
44:4
unless (2)
63:7;72:10

unliquidated (1)
19:8
unquestionably (2)
21:10;54:19
up (24)
8:10,13;10:24;
14:25;16:4,15;19:2,
12;22:24;23:17;26:7;
34:9,10;35:25;36:11,
25;37:12;41:2;46:13;
56:4,23;65:7;69:7;
72:10
update (1)
8:21
upon (5)
18:20;20:17;51:8,
10;73:14
urge (3)
19:1,17;32:21
urging (1)
13:5
use (2)
12:22;32:18
used (5)
45:17;60:9,10
useful (2)
32:7;65:13
usually (1)
12:8

**V**

value (7)
14:22;22:21;23:9;
64:15,17,25;67:17
various (2)
11:23;22:18
vein (1)
33:2
verdict (1)
57:10
version (2)
26:4;71:10
versions (3)
24:19;32:15;37:8
versus (3)
28:2;57:23;64:6
veteran (1)
7:11
video (1)
35:16
view (18)
8:18;14:16;24:20;
32:2;40:15;41:20;
47:9,10;48:19;53:19,
20,21;55:3;58:11;
59:16,20;62:4,5
viewed (1)
41:12
views (9)
24:21,24,25;25:3;
32:8,9,10;33:3;36:4
violate (2)

61:17;66:8
violates (2)
47:10;48:7
violating (1)
36:1
violation (1)
63:3
violative (2)
66:1,3
virtue (1)
63:3
voice (1)
52:14
vote (9)
21:24;45:3;47:23;
50:14,17;52:13;59:6;
63:24;64:2
voted (1)
16:3
votes (1)
24:5
voting (7)
21:23;23:19;24:3,
11,13;47:24;55:9

**W**

wants (3)
16:12;29:3;35:19,
19;41:2;65:16;73:5
warning (1)
49:14
warranting (2)
54:1,2
way (26)
7:19;14:16;21:8;
24:9,20;27:9;29:16;
30:2,24;34:7;36:23;
38:24;46:12,21;
47:17;50:11;51:15;
52:18;54:16;55:13;
60:16;61:24;63:5;
68:25,25;74:14
ways (7)
18:19;19:4;20:5,7;
25:3;37:21;66:17
Wednesday (1)
71:23
week (9)
8:7;24:4;43:13,22;
45:16;54:1;71:18,20,
23
weekend (1)
7:21
weigh (3)
45:13;55:7;67:22
Weisenberg (20)
5:12,15,16,16;
10:10,11,11,16,21,24;
11:2;56:13;61:7,9,12;
63:15;64:1,8,24;
72:20
Weisenberg's (2)

50:16;70:15
well-known (1)
7:8
weren't (3)
12:17;35:20;41:22
Westport (1)
6:5
whatnot (1)
65:1
what's (8)
11:6;22:6;36:1;
50:9;65:10;66:2,8;
67:15
whereas (1)
55:17
Whereupon (1)
74:21
wherever (1)
28:23
whole (3)
16:1;57:3;69:3
who's (3)
4:12;7:2,4
willing (4)
23:10;25:12;26:18;
37:20
wish (1)
56:21
wishes (1)
47:19
within (1)
12:4
without (11)
16:6;17:1,22;18:16;
33:16;37:14;55:9;
65:21;68:4;69:11,16
Wonderful (2)
6:8;63:20
word (7)
9:11;18:5;19:2;
23:22;32:17,18;59:23
worded (1)
41:12
words (5)
9:17;48:11,12;
49:13;55:13
work (3)
39:12;60:24;74:10
worked (1)
24:12
works (1)
72:17
world (5)
15:10;19:6;21:25;
22:15;52:16
world's (1)
26:19
worried (4)
9:19;46:14;48:2;
56:3
worries (1)
55:5
worst (1)

Case: 23-40523    Doc# 2094-2    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 89
of 90

26:23
**worth (3)**
15:19;23:22;64:5
**wrap (2)**
65:7;69:7
**wrong (1)**
66:17

## Y

**year (1)**
16:10
**Years (1)**
6:21
**Yep (1)**
66:13

## Z

**Zoom (2)**
6:22;39:16

## 1

**1 (3)**
4:4;55:24;56:1
**1:15-ish (1)**
38:18
**10 (1)**
74:10
**10:31 (2)**
39:25,25
**106-million (1)**
12:3
**11 (2)**
20:1;62:25
**11:14 (1)**
74:21
**1129a (1)**
47:13
**1129a7 (2)**
19:20;20:2
**12 (2)**
38:17,24
**12b6 (4)**
12:9;14:23;15:6,10
**12b6-able (2)**
12:25;13:22
**1994 (1)**
59:11

## 2

**2 (1)**
56:2
**2025 (1)**
4:1
**205 (1)**
23:8
**21 (1)**
4:1
**212 (1)**
29:21

**23-40523 (1)**
4:5
**27th (6)**
71:22,24;72:1,3,16,
17
**28th (4)**
71:24;72:5,11,15

## 3

**3 (1)**
56:3

## 4

**400-square (1)**
23:5

## 5

**5- (1)**
12:3
**5.1.4 (1)**
62:9
**5.14 (6)**
59:14;61:24;62:4,9;
63:10,13
**546b (2)**
16:13,15

## 7

**7 (1)**
29:21

## 9

**9:46 (1)**
4:1

Case: 23-40523    Doc# 2094-2    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 90
of 90