# **Exhibit 3**

1  UNITED STATES BANKRUPTCY COURT

2  NORTHERN DISTRICT OF CALIFORNIA

3  -oOo-

4  In Re:                          ) Case No. 23-40523
                                    ) Chapter 11
5  THE ROMAN CATHOLIC BISHOP OF     )
   OAKLAND                          )Oakland, California
6                                   ) Wednesday, January 15, 2025
                      Debtor.       ) 2:00 PM
7  _____  )
                                     ORAL RULING ON THE MOTION OF
8                                    THE OFFICIAL COMMITTEE OF
                                     UNSECURED CREDITORS (I) FOR
9                                    STANDING TO ASSERT, PROSECUTE
                                     AND COMPROMISE ALL CLAIMS AND
10                                   CAUSES OF ACTION THE DEBTOR
                                     AND ITS ESTATE HOLD AGAINST
11                                   THE INSURERS AND (II) TO BE
                                     SUBSTITUTED AS THE NAMED
12                                   PLAINTIFF IN THE INSURANCE
                                     COVERAGE ACTIONS FILED BY
13                                   OFFICIAL COMMITTEE OF
                                     UNSECURED CREDITORS OF THE
14                                   ROMAN CATHOLIC BISHOP OF
                                     OAKLAND (DOC. 1538)

15

16                 TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE WILLIAM J. LAFFERTY
17              UNITED STATES BANKRUPTCY JUDGE

   APPEARANCES (All present by video or telephone):
18  For the Debtor:          SHANE J. MOSES, ESQ.
                             EILEEN R. RIDLEY, ESQ.
19                           Foley & Lardner LLP
                             555 California Street
20                           Suite 1700
                             San Francisco, CA 94104
21                           (415)434-4507

22  For Official Committee of  GABRIELLE L. ALBERT, ESQ. (ZOOM)
    Unsecured Creditors:       Keller Benvenutti Kim LLP
23                             425 Market Street
                               26th Floor
24                             San Francisco, CA 94105
                               (415)364-6791

25

**eScribers, LLC**

```
 1   For The Continental      MARK D. PLEVIN, ESQ.
     Insurance Company:       Plevin & Turner, LLP
 2                             580 California Street
                               12th Floor
 3                             San Francisco, CA 94104
                               (202)580-6640
 4
     For Certain Underwriters BETTY LUU, ESQ.
 5   at Lloyd's of London     Duane Morris LLP
     Subscribing:             865 South Figueroa Street
 6                             Suite 3100
                               Los Angeles, CA 90017
 7                             (213)689-7428

 8

 9

10

11

12

13

14

15

16

17

18   Court Recorder:          D CHAMBERS
                               United States Bankruptcy Court
19                            1300 Clay Street
                               Oakland, CA 94612
20

21   Transcriber:             RIVER WOLFE
                               eScribers, LLC
22                            7227 N. 16th Street
                               Suite #207
23                            Phoenix, AZ 85020
                               (800) 257-0885
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

1    OAKLAND, CALIFORNIA, WEDNESDAY, JANUARY 15, 2025, 2:01 PM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Please come to attention.  The Court is in

5    session.  This is the United States Bankruptcy Court Northern

6    District of California, the Honorable William J. Lafferty

7    presiding.

8            THE COURT:  Okay.  Good afternoon, everybody.  This is

9    Judge Lafferty, and I suggested we gather Zoom-ily (sic) today

10   for something that I hope will be helpful, which is a

11   discussion of any ruling on the committee's motion to be

12   substituted in as plaintiff in the insurance litigation pending

13   before Judge Corley in the district court.

14           So let's go ahead and take appearances.

15           THE CLERK:  Your Honor, calling line item number 1 for

16   the Roman Catholic Bishop of Oakland, case number 23-40523.

17   And parties being moved over now.

18           THE COURT:  Okay.  Okay.  Anybody else appearing that

19   we know of?

20           THE CLERK:  It doesn't look like it, Your Honor.

21           THE COURT:  Well, okay.  Perhaps.  That's it?

22           THE CLERK:  Yes, Your Honor.

23           THE COURT:  Okay.  All right.  Let's have appearances.

24           I think you're muted, Mr. Moses.

25           Still.

Case: 23-40523    Doc# 2094-3    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 4
of 36

1          THE CLERK:  So Your Honor, on our end, it shows that

2   Mr. Moses is unmuted, so perhaps he --

3          THE COURT:  Oh, well.  I'm sorry then.  We don't know

4   what the problem is.

5          THE CLERK:  -- needs to change his speaker.

6          THE COURT:  Would someone else like to make an

7   appearance, and we'll see if it's us.

8          MS. RIDLEY:  Good afternoon, Your Honor.  This is

9   Eileen Ridley, Foley & Lardner, on behalf of the debtor RCBO.

10          THE COURT:  Okay.

11          MS. RIDLEY:  Mr. Moses is my colleague.  I believe I

12   have other colleagues online.  Can you hear me?

13          THE COURT:  Can you hear you, yeah.

14          MS. RIDLEY:  Okay.

15          MR. MOSES:  Your Honor, this is Shane Moses.

16          THE COURT:  There you are.  Okay.

17          MR. MOSES:  Apologies.

18          THE COURT:  That's all right.  That's okay.  Let's get

19   everybody else's appearances.

20          MS. ALBERT:  Good afternoon, Your Honor.  Gabrielle

21   Albert, Keller Benvenutti Kim, on behalf of the committee.

22          THE COURT:  Okay.  Thank you.

23          MR. PLEVIN:  Good afternoon, Your Honor.  Mark Plevin,

24   Plevin & Turner, for Continental Casualty Company.

25          THE COURT:  Okay.  Thank you.

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 5
of 36

1           MS. LUU:  Good afternoon, Your Honor.  Betty Luu of
2   Duane Morris on behalf of the London Market insurers.

3           THE COURT:  Okay.  Thank you.

4           Any other appearances?  I know we have other people on
5   the Zoom.  Right.  That's it?

6           THE CLERK:  Yes, Your Honor.

7           THE COURT:  Okay.  Can I begin with a moment of
8   levity?  At least I hope it's levity.  Sometimes, I don't know.
9   I am one of those people who is a stickler for how one dresses
10  for a hearing, but counsel in the Foley sweatshirt -- no, I'm
11  going to -- I'm going to -- I'm going to chide myself here.
12  When a judge tells everybody I'd like to see you all in two
13  hours, I really cannot dictate sartorial issues.  Okay.  So
14  this is in the parlance of our debtor, you have an indulgence.

15          MS. RIDLEY:  And I appreciate that, Your Honor.  I --

16          THE COURT:  No.

17          MS. RIDLEY:  -- tried to have a jacket over a shirt
18  so --

19          THE COURT:  No, it's okay.  When smarty-pants judge
20  tells you I want to talk to you about something and gives you
21  no time to get ready, it's not your fault.  Okay.

22          Let me take a moment for a little bit of background
23  here.  I'm aware that there is a motion on before Judge Corley
24  in the insurance -- well, what I'll just loosely call the
25  insurance action that's pending in front of her tomorrow on the

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 6
of 36

1    debtor's request that that matter be abated or held in

2    abeyance.  I deduce that it might be helpful to the parties and

3    to Judge Corley, if I am prepared to resolve this motion before

4    that hearing, that I do so.  I don't believe that my ruling

5    will be the only matter that would be of interest to folks

6    tomorrow, to either the people making arguments or to judge

7    Corley.

8            But to the extent I can level set, I guess is one way

9    to put it, both my disposition of the motion and to the extent

10   that's dependent on where I think we are in a volatile

11   environment involving a disclosure statement and plan that the

12   committee tells me is unconfirmable as a matter of law and that

13   the debtor tells me is being amended and is, while perhaps

14   imperfect, certainly not to be derailed.  So I wanted to give

15   you all some thoughts about that motion.

16           So a little bit of background.  As you all know, the

17   action that's in front of Judge Corley was commenced in front

18   of me.  And it sought various types of relief with respect to

19   the insurance companies, including declaratory relief and

20   including breaches of contract on theories that the insurers

21   were obligated to defend and weren't doing so and are obligated

22   to indemnify and arguably weren't doing so.

23           One series of motions to dismiss were brought before

24   me.  I granted them with leave to amend.  At that point, the

25   parties put their heads together and mutually determined that

Case: 23-40523    Doc# 2094-3    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 7
of 36

1    this is a matter for which the reference should be withdrawn.

2    So the Judge Corley, who is a district judge who certainly has

3    experience in determining these kinds of insurance coverage

4    issues, would be able to do that, and I would not, which was

5    perfectly fine with me.  Judge Corley obviously has seen quite

6    a few disputes of this type and certainly knows her way around

7    the resolution thereof.

8            And I did not believe there was any reason to think

9    that my losing control, for what it's worth, of that action was

10   going to be so deleterious to our process here that I should

11   suggest that not happen.  I think that that, in many ways, has

12   been on a separate track.  And that's clearly true because in

13   the meantime, over a period of months, there's been robust

14   motion practice with respect to that action in front of Judge

15   Corley, such that the debtor is on their Fifth Amendment

16   complaint now and such that Judge Corley has very directly told

17   the parties that she expects there to be -- absent the

18   abatement, she expects there to be substantial contemporary

19   progress, even though they're arguably still at a pleading

20   stage, all of which is her discretion and her good judgment.

21   And I have nothing to say about that one way or the other.

22           But now I'm understanding that the committee -- I'm

23   sorry, the debtor, in their mind, synched up with their view of

24   what the plan would accomplish were it confirmed.  The debtor

25   has taken the position that it would be smarter, all in all,

1   not to dismiss the action in front of Judge Corley or even

2   necessarily to, for lack of a better word, dispose of it by

3   some sort of trade or other disposition that would basically

4   terminate that matter, but rather more or less to put it on

5   hold while we go through the matters we need to go through to

6   determine whether this plan and disclosure statement should go

7   forward, and if so whether upon a confirmation hearing that

8   plan could be confirmed.

9         So that's a basic background.  And I will say this,

10   not meaning to be flip, understandably at a juncture where they

11   are not satisfied with the plan in several respects, including

12   the amounts that the diocese is putting into the survivor

13   trust.  Including some aspects of the disposition of the --

14   through the litigation option, the various parties' rights

15   against insurance companies and with respect to also some

16   aspects of the way the debtor is at least implicitly valuing

17   the claims.  The committee has objected to the approval of the

18   disclosure statement on the theory that it describes a plan

19   that cannot be confirmed as a matter of law.

20         Certainly, as part of that analysis, informing it as

21   well is the notion that from the committee standpoint, the plan

22   is so deficient and so unattractive to the folks that

23   represents the abuse survivors that the possibility of getting

24   an affirmative vote through that class is about zero.  And the

25   committee points out that in those circumstances, it is a rare

1   case, if any, that a bankruptcy court has confirmed a plan over

2   the dissenting vote of the abuse survivors, all of which I take

3   at absolute face value.  I think those are good points to make.

4           Whether I find the plan is nonconfirmable as a matter

5   of law is another issue.  The voting is one thing.  Objections

6   are another.  So I have tried to separate those things out in

7   my head, at least to figure out from my bankruptcy-judge-

8   traffic-cop persona how does this go forward and what's the

9   order of progression here.  Consistent with their view of the

10  plan, the committee has asked me to take a number of actions

11  that they believe better reflect the appropriate way forward.

12          One of those is that I grant a motion for relief from

13  stay, and I'll speak somewhat, hopefully, illuminatingly, but

14  not conclusively about that at the end of this discussion.

15          Another is that I permit the committee to take on the

16  prosecution of a number of actions that would have as their

17  goal the assertion of claims that the committee believes the

18  debtor is not currently pursuing.  And that's a classic

19  derivative standing motion.

20          The third, for today's purposes, is a motion that the

21  committee be allowed to take on basically the role of the

22  plaintiff in what I'm calling the insurance litigation, the

23  litigation in front of Judge Corley.  Now, as originally set

24  forth, the committee made the points they wanted to make in

25  that motion, but they did not set it out necessarily under the

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 10
of 36

1  four-part standard re derivative standing.  And that's not a

2  critique.  That's an observation.

3       In the response by the debtor, the debtor did set

4  forth the four-part standing for -- four-part standard for

5  derivative standing to assert and prosecute a claim.  And

6  although the parties disagree fundamentally about whether

7  certain aspects of that standard are relevant to the analysis

8  we have in light of all the facts and circumstances of the

9  request in light of the insurance litigation, I think nobody

10 has told me that that standard is completely inapplicable here

11 or it wouldn't be helpful in working our way through how we

12 should think about this.  So I think there's some agreement

13 there.

14       So the four-part standard that was identified, and

15 it's from Yellowstone Mountain Club LLC, which is at a Westlaw

16 cite that's at page 13 of the debtors' response to the

17 committee's motion.  One, a demand has been made upon the

18 statutorily authorized party to take action.  Two, the demand

19 is declined.  Three, a colorable claim that would benefit the

20 estate if successful exists based on a cost-benefit analysis

21 performed by the Court.  And four, the inaction is an abuse of

22 discretion or unjustified in light of the debtor-in-

23 possession's duties in a Chapter 11 case.

24       There was initial disagreement about two of those

25 factors.  There was disagreement -- well, one factor and one

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 11
of 36

1 overall concern. The debtor took the position that the
2 derivative standing standard, although it would be the way to
3 think about this problem, was in many ways inapplicable and the
4 relief was not available to the committee because the action
5 had been commenced. So this is not the what might be the more
6 classic version of this problem, where there is an action that
7 is identified by a party who is not presently situated to bring
8 it. That party writes a letter to the party who has the
9 ability to bring the action, outlines the action, outlines what
10 they believe the benefits of it to be, maybe takes the position
11 about the overall cost benefit analysis, requests that the
12 action be taken, and awaits a response. This has not played
13 out exactly that way.

14 So the argument presented first by the debtor was,
15 well, without that initial question of an action has not been
16 brought, the committee really is not pursuing this in an
17 appropriate way. This fails at that initial stage. And then
18 the case law was cited back and forth for that proposition, the
19 committee taking the position that cases that seem to say that
20 really were distinguishable factually and in other contextual
21 matters.

22 I'm going to agree with the committee on that part. I
23 do not believe that this is a matter that cannot be considered
24 because there was an action pending. I think we're going to
25 get past that objection. To the extent that there was also an

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 12
of 36

1  objection that, well, the committee did not technically make a

2  request that the action be commenced because one, it has been

3  commenced, and two, they simply didn't couch their request of

4  the debtor in those terms.  And therefore, another necessary

5  factor of the test has not been made.

6          I'm going to rule with the committee on that one too,

7  that, in fact, in light of the whole point of this analysis in

8  this context is what's actually happening in this case.  What

9  have parties done, what would happen if we go different

10 directions, and what really is to be balanced here between the

11 committee's request that the insurance actions simply go

12 forward in a different manner under their direction or that

13 that not happen.

14         So I think with all those factors, and given the fact

15 that what the committee is complaining about here, and I think

16 understandably, is that while the asset is not necessarily

17 being completely forgone, it is being put on a back burner such

18 that the committee believes it is not being utilized as it

19 should be, given the fact that they're doing that because the

20 debtor has proposed a plan that does suggest that the proper

21 way to go forward is to utilize the insurance assets through an

22 option that claimants have to pursue that sort of relief in a

23 different court and along state law lines.

24         Given that reality, I think the committee -- I

25 wouldn't say that it was futile that they would ask, but it was

1    not going to advance the ball in any sort of analytical way for

2    the committee to ask that the debtor just not pursue their plan

3    and therefore do this.  So as to that, I'm going to agree with

4    the committee as well, that those two factors, to the extent

5    they're factors, are not gating and aren't disqualifying for

6    this request.

7          So then we get into what's really at stake here.  And

8    I think if we look at the cases and we look at the kinds of

9    analysis courts do, what they're trying to figure out is is

10   there a colorable claim.  The quick answer to that question is

11   there is because it's been asserted, and it's survived four

12   motions to dismiss.  So technically, the first question, is

13   there a colorable claim?  Yes, there is.

14         Then the question becomes what should be done about

15   it.  And I agree with the debtor that -- well, I agree with the

16   committee that while the fact that an action is pending isn't

17   disqualifying, the fact that an action is pending does change

18   the way we think about these things.  The action is out there.

19   It is pending.  The debtor has prosecuted it.

20         The debtor's position right now is we've spent a

21   million-and-a-half on this litigation.  We're almost done with

22   the pleading stage.  And frankly, we have a plan that in our

23   mind, while it undeniably shifts the burden of these

24   determinations away from the debtor and onto the claimants,

25   noneforth allows for some appropriate understanding and

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 14
of 36

1   disposition of the question whether there is insurance

2   coverage, number one.  If so, who's on the hook.  And beyond

3   that, whether there are rights -- which is both with respect to

4   the debtor, in name, at least, with respect to the liability,

5   but then possibly with respect to the insurance companies as

6   the parties who may be paying a significant part of this, if

7   not all of it in some circumstances.

8         So what's in front of me is not the traditional simple

9   case of the debtor has decided simply not and never to pursue

10   an action on the theory that it's a bad idea.  The classic

11   instance of that might be you don't want to sue your most

12   important trade creditor for a preference because they don't

13   have to do business with you, and it's better to keep that

14   relationship than to terminate it, effectively.  So what the

15   debtor is telling me is that we're not terminating this action.

16   We're not trading it for something else so that it is no longer

17   available for use.  We're asking that it be put on hold for a

18   while we play out, in our view, what we think is at least at

19   the moment a confirmable plan.

20         The committee's position is that to the extent that is

21   a request that I honor the business judgment of the debtor,

22   that's inappropriate.  We had a long discussion about that and

23   the basis for that argument by the committee during arguments

24   last week.  And I pressed Mr. Burns somewhat on the assertion

25   that I had found in the committee's papers that any deference

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 15
of 36

1  to what we might think of as business judgment rule in favor of

2  the debtor was inappropriate, where the debtor's judgment was

3  arguably tainted and arguably tainted by a conflict.  So we

4  explored to some depth whether this was a conflict or not.  And

5  not meaning to be flip, but Mr. Burns, in the course of that

6  argument, I think, retreated a bit from the position that it

7  either were a conflict or needed to be one to change the

8  analysis for a business judgment rule.  And that conversation

9  went where it went.

10        I will say, for what it's worth, I will reiterate my

11  skepticism that if the committee is alleging a conflict here, I

12  just don't see this that way.  This would be a conflict if

13  there were two entities to whom the debtor owed a duty and the

14  duties were equal and they were adverse and one could not

15  satisfy one without disappointing the other.  And I just don't

16  see this that way.

17        The debtor is a fiduciary, that's absolutely true, to

18  the unsecureds.  But the debtor's decision, in my view, to

19  reformulate the way one would go after and monetize and utilize

20  an asset of the estate, the insurance, the right to insurance,

21  and the proceeds, the debtor's decision to do that in one way

22  rather than another is not the sort of stark I'm favoring one

23  party over another, where I have duties to both.  Scenario that

24  I think describes a conflict.

25        So in my view, it's not a conflict, nor do I see

1  anything in the process that's been revealed to me so far, by

2  which the debtor made that decision, that -- while the

3  committee may not enjoy that decision, may think it's the wrong

4  one, and may someday even convince me that's the case, for sort

5  of threshold gate purposes, I don't see anything in the process

6  that the debtor has taken on here or that has led to the

7  decision that is itself wrongful or corrupt or nefarious or

8  anything that would give me reason to pause about how they got

9  from the initial analysis to the result, which is here's a plan

10  that we think is going to work.

11        So to the extent that we begin with the conflict

12  analysis, I will tell you, I don't find that compelling.  I

13  don't think it's a conflict.  I think this comes down to a

14  question of, among various options, can I make a decision right

15  now that the option to pause this and not to have it go forward

16  as robustly as the committee might like is necessarily harmful

17  to the estate or is necessarily even the wrong answer.  And the

18  bottom line is I cannot do that at this point.

19        The beauty of Chapter 11, as you all know, is that

20  sometimes we have several balls in the air, and that actually

21  helps.  This is one of those moments.  The debtor has proposed

22  a plan.  We will continue the discussion tomorrow about whether

23  the disclosure statement on file now describes a plan that is

24  patently unconfirmable.  I have not made up my mind about that

25  in terms of all the arguments that have been made to me and the

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 17
of 36

1   papers that I have so far.

2           What I can say, and if this is helpful to the parties

3   and to Judge Corley, as I sit here today, I do not have -- I

4   have not reached the conclusion, as I sit here today, that this

5   plan is unconfirmable as a matter of law.  Now, what will

6   happen with the vote is a whole other question, and I am very

7   mindful of that and how we talk about how we proceed from here

8   to a confirmation hearing is something we'll talk about

9   tomorrow and probably after tomorrow.  But to the extent that

10  this would all turn on me determining right now before Judge

11  Corley will have her hearing on the abatement motion that Judge

12  Corely, full speed ahead.  Whatever you want to do.  This plan

13  is a nonstarter.  I have not made that conclusion yet.

14          It doesn't mean it's perfect.  It doesn't mean there

15  won't be lots of robust discussion tomorrow about why I should

16  come to the conclusion that the plan is unconfirmable, and I

17  will listen to all those arguments.  And there's also likely to

18  be lots of discussion about what we need to do to make the plan

19  better than it is.  All that's fine.  But in my view, what I

20  have in front of me now is simply the debtor's decision that

21  the better course of action, for now -- and not for all time.

22  We're not trading the asset.  We're not terminating the asset.

23  For now, the better course of action is to pursue a plan that

24  they believe is, at least theoretically, confirmable, as to

25  which there is no gating objection, because of which I have to

1  stop this process, and that is an intelligent assessment of the
2  risks and rewards.

3  So on all that basis, I think it's appropriate for me
4  to deny the motion. I'll make a couple of other comments.
5  This is not for all time. As I've said in other context, time
6  is a long thing. And if we end up in a situation where I am
7  convinced, either by legal arguments or by the vote of
8  constituents, that the plan the debtor proposes cannot be
9  confirmed, we'll be in a different place. And at that point,
10 it will be -- there will be nothing wrong with reconsidering
11 whether, as part of that scenario, the better course is to is
12 to allow the committee to be more of a protagonist here than
13 they are right now.

14 I will make another couple of comments. In coming to
15 this conclusion, I'm very mindful of the abuse of discretion
16 standard that's referenced. And I think it's referenced both
17 with respect to how the parties who are jostling over these
18 kinds of actions should look at their choices and how a court
19 should review those choices once they are made, perhaps even
20 how a reviewing court would review my choice if someone were to
21 tell them that I made a mistake.

22 But abuse of discretion, as you all know, is an
23 extremely broad standard. And what it basically -- for
24 appellate review standards, what it means is the party making
25 the decision has proceeded in a way -- they have chosen a rule

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 19
of 36

1    that is consistent with the decision to be made.  And they have

2    exercised that discretion in a way that is not implausible or

3    unlikely or totally without support from the factual record

4    before us.

5            I think I can say at the moment, without making a

6    final decision on this, for abuse of discretion purposes, I

7    think the debtor looking at this from a cost benefit analysis

8    of is it worth pursuing at full speed the insurance litigation

9    in front of a Judge Corley versus this plan, I think, without

10   deciding whether that's ultimately the right decision, I think

11   I can say that it strikes me that from an abuse of discretion

12   standpoint, that is not so wrongful a decision that I would

13   stop it in its tracks right now.

14           I will also remark that the debtor and all the parties

15   are certainly mindful of what is actually at stake before Judge

16   Corley now, and there are certainly arguments.  While the

17   matter is colorable, there are arguments that it's a little

18   less, oh, I don't know, disputatious than it might have been

19   some time ago, as the insurance companies agree that they're

20   going to -- they're going to defend actions.  That's maybe not

21   as salient an argument as it had been before.  And as well as

22   Mr. Plevin and others make remarks to me that for the indemnity

23   purposes, that's not really ripe until one gets a judgment.  I

24   think Judge Corley is very well aware of that doctrine, and she

25   can make those decisions certainly.

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 20
of 36

1    And to the extent that there's a virtue in determining

2 over time who is responsible at different times for the

3 insurance obligations and who's primary, who's excess, whether

4 things have been exhausted or not, those are all matters that

5 are in front of Judge Corley but for which there are unlikely

6 to be answers tomorrow or the next day.  Those would play out

7 over some time.

8    So that's all to suggest that the exigency of

9 immediately proceeding full speed with the insurance litigation

10 may not be of the highest order either, in the context of where

11 we are today.  So I will make all those observations.

12    I will also observe that the committee's request to be

13 allowed to exercise the privilege of the debtor, given the

14 decision I'm making, I don't have to go into that in detail.  I

15 will tell you.  I paused long over that.  I thought that was

16 potentially of concern.  And although the committee was quite

17 sincere in telling me that this motion to -- that I was the

18 person to whom this motion should be brought re standing,

19 having said that, this was not an attempt to end run something

20 Judge Corley would do or otherwise not do or otherwise

21 complicate that matter unnecessarily.

22    I take the committee's statement at face value that

23 this was a good faith attempt to get the jurist whom they

24 believe has the power to decide who should be prosecuted and

25 actually to make that decision.  Having said that, it is not

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 21
of 36

1    lost on me that deciding that in the committee's favor right

2    now, especially in light of the abatement motion, would likely

3    have been at least distracting, if not a stronger word than

4    distracting, to Judge Corley's determination of the abatement

5    motion.

6            So for all those reasons, and with enormous respect

7    for the wonderful arguments that everybody made here -- I'm

8    sorry Mr. Burns isn't here to hear my flattery of him.  I think

9    he did a wonderful job conceiving of the problem from his

10   perspective.  But for all those reasons, I'm going to deny the

11   committee's motion to be entitled to assert standing with

12   respect to the insurance motion.  Again, this is not for all

13   time.  This is in light of the facts and circumstances present

14   now.  And if those change, well, we'll take the question up

15   again when those factors change.

16           Unless someone has a question about this, certainly,

17   Mr. Moses, to the extent you folks are the prevailing party, do

18   not try to encapsulate all of my rulings here or all my

19   impressions.  You can simply say that under FRBP 7052, for the

20   reasons stated on the record, the Court has denied the motion.

21           Unless somebody has a particular request to this, I

22   have two other matters I want to touch on very briefly for

23   tomorrow.

24           Anybody?  We're good?

25           Okay.  And I assume that people will inform Judge

1    Corley of this outcome.  You're certainly free to do that.

2    Okay.

3            With respect to the motion for relief from stay, I am

4    leaning toward granting that.  But I am concerned about the

5    following.  And to the extent anyone can give some thought to

6    this and give me some guidance or thoughts or suggestions

7    between now and tomorrow, I'd be grateful.

8            I'm very mindful of the fact that these matters have

9    been -- well, the matters that are in front of the coordination

10   judge in Alameda County are the matters from which maybe as

11   many as six actions would be selected to represent bellwether

12   litigation.  That's fine.  I'm mindful of two things that Mr.

13   Simons told me with great candor, and I appreciate his candor

14   the other day, that of those six, three of those did not

15   involve the Oakland diocese.  And one, I think, had come to a

16   different resolution.

17           So whereas before, I might have been somewhat

18   heartened by there were six matters kind of ready to go, that

19   doesn't seem to be the case now.  So I am a little bit worried

20   about the efficacy of granting the motion for relief from stay

21   if one would go back to square one, even to determine what

22   other four matters would be brought, if six seems to be a

23   reasonably representative number.

24           The second matter that concerns me is I'm mindful of

25   the fact that the judge who had been presiding over this matter

1   now has a different judicial role, and there was a new judge

2   appointed to this.  And my understanding, also from Mr. Simons,

3   and I think this was confirmed by others, is I don't remember

4   who that judge is, but whoever that person is has not yet had a

5   hearing of any sort in the consolidated matter.  So I'm a

6   little bit concerned that -- again, a granting a motion for

7   relief from stay, I'm just not sure what is going to happen in

8   any kind of prompt schedule.  So I'm not suggesting there's an

9   answer to those questions today, but I want to take up this

10  question as well tomorrow and just see what else people can

11  tell me about those questions and about timing and about the

12  efficacy of granting a motion and letting the matters go

13  forward in light of those factors.

14          Secondly, with respect to the committee's other motion

15  to take on standing to prosecute various actions, I understand

16  that the committee the other day had said they would stand on

17  the papers.  I know that the debtor's counsel, one, has some

18  points that they want to make in opposition to that motion.

19  And two, their schedule is such that they're asking that that

20  matter be argued first.  That's perfectly fine with me.  I'm

21  assuming that if there is argument by the debtor, the committee

22  will want to respond at the lectern, and that's understandable.

23  Okay.  But the thing I'm grappling with here is what is, to me,

24  kind of an obvious gating question, and I just want to know

25  either why this isn't an obvious gating question or what you

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 24
of 36

1    guys think we should do about it.

2          If the single biggest piece of this, and not to

3    denigrate all the things the debtor would like to do, that's

4    fine.  If the single biggest and most obvious piece of this is

5    an alleged fraudulent transfer or other clawback action with

6    respect to the money that was transferred from the debtor to

7    OPF prior to the commencement of the case, there seems to be an

8    unarticulated disagreement between the parties as to the

9    consequence of the debtor's position that while those monies

10   might have been property of the estate for broadest 541

11   purposes, they were not usable by the debtor for various

12   purposes because of the terms of the grant.  So they are

13   restricted in some way.

14         So the debtor's position is, well, they may be estate

15   funds, but clawing them back is really kind of meaningless.  So

16   one wouldn't undertake the effort because they're property

17   estate, and they aren't.  They're not usable to pay creditors.

18   So therefore, a fraudulent transfer action really is neither

19   here nor there.

20         The committee seems to disagree with that position,

21   and maybe for several reasons.  And it may be they may include

22   that in order to take advantage of that kind of argument, the

23   debtor would really have to have something more akin to a trust

24   agreement or something that would more satisfy the requirements

25   of California law that an asset not be disposable by the party

Case: 23-40523   Doc# 2094-3   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 25
of 36

1  to whom it was given, by the donee.

2       So my question for tomorrow will be whether we should

3  try to figure out a mechanism to answer that question before we

4  get into whether the committee should be taking on matters that

5  the that the debtor doesn't believe should be taken on if

6  there's a gating legal issue as to whether that would benefit

7  the estate in any event.  So if parties could let appropriate

8  folks know that that's on my mind and if people could be

9  prepared to talk about that, I'd be grateful.  This is

10  nothing -- this is not within light years of a decision on the

11  committee's motion, which I think is very intriguing, but it

12  does pose for me a question that if I could answer that at the

13  outset, I might be a lot smarter.

14       So in that context and in that vein, I would pose it

15  back to you folks and ask that we address that fairly early in

16  the presentation.  Okay.  I mean, there's lots of ways we might

17  do that.  There might just be a contested matter now that we

18  could create one that we could just determine in the course of

19  the bankruptcy without having to file a lawsuit.  It may be

20  that you can't do that, and so the committee's position would

21  be, no, we have to follow the lawsuit and we'll have that

22  fight.  That's fine.  But it seems to me that's fairly gating.

23  So I wanted to get that out there.

24       All right.  Okay.  Anything else from anybody?

25       Thank you for your patience.  Thank you for your

1   wonderful arguments on January 8th and before. And I look

2   forward to seeing all of you tomorrow. Okay. Thank you very

3   much.

4      (Whereupon these proceedings were concluded at 2:36 PM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                         I N D E X

2  RULINGS:                                    PAGE LINE

3  Committee's standing motion is denied        18    3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3    I, River Wolfe, certify that the foregoing transcript is a true

4    and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ RIVER WOLFE, CDLT-265

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  January 17, 2025

16

17

18

19

20

21

22

23

24

25

## A

**abated (1)**
6:1
**abatement (4)**
7:18;17:11;21:2,4
**abeyance (1)**
6:2
**ability (1)**
11:9
**able (1)**
7:4
**absent (1)**
7:17
**absolute (1)**
9:3
**absolutely (1)**
15:17
**abuse (7)**
8:23;9:2;10:21;
18:15,22;19:6,11
**accomplish (1)**
7:24
**action (23)**
5:25;6:17;7:9,14;
8:1;10:18;11:4,6,9,9,
12,15,24;12:2;13:16,
17,18;14:10,15;17:21,
23;24:5,18
**actions (7)**
9:10,16;12:11;
18:18;19:20;22:11;
23:15
**actually (4)**
12:8;16:20;19:15;
20:25
**address (1)**
25:15
**advance (1)**
13:1
**advantage (1)**
24:22
**adverse (1)**
15:14
**affirmative (1)**
8:24
**afternoon (5)**
3:8;4:8,20,23;5:1
**Again (3)**
21:12,15;23:6
**against (1)**
8:15
**ago (1)**
19:19
**agree (5)**
11:22;13:3,15,15;
19:19
**agreement (1)**
10:12;24:24
**ahead (2)**
3:14;17:12
**air (1)**

16:20
**akin (1)**
24:23
**Alameda (1)**
22:10
**ALBERT (2)**
4:20,21
**alleged (1)**
24:5
**alleging (1)**
15:11
**allow (1)**
18:12
**allowed (2)**
9:21;20:13
**allows (1)**
13:25
**almost (1)**
13:21
**along (1)**
12:23
**although (3)**
10:6;11:2;20:16
**amend (1)**
6:24
**amended (1)**
6:13
**Amendment (1)**
7:15
**among (1)**
16:14
**amounts (1)**
8:12
**analysis (10)**
8:20;10:7,20;11:11;
12:7;13:9;15:8;16:9,
12;19:7
**analytical (1)**
13:1
**Apologies (1)**
4:17
**appearance (1)**
4:7
**appearances (4)**
3:14,23;4:19;5:4
**appearing (1)**
3:18
**appellate (1)**
18:24
**appointed (1)**
23:2
**appreciate (2)**
5:15;22:13
**appropriate (5)**
9:11;11:17;13:25;
18:3;25:7
**approval (1)**
8:17
**arguably (4)**
6:22;7:19;15:3,3
**argued (1)**
23:20
**argument (6)**

11:14;14:23;15:6;
19:21;23:21;24:22
**arguments (9)**
6:6;14:23;16:25;
17:17;18:7;19:16,17;
21:7;26:1
**around (1)**
7:6
**aspects (3)**
8:13,16;10:7
**assert (2)**
10:5;21:11
**asserted (1)**
13:11
**assertion (2)**
9:17;14:24
**assessment (1)**
18:1
**asset (5)**
12:16;15:20;17:22,
22;24:25
**assets (1)**
12:21
**assume (1)**
21:25
**assuming (1)**
23:21
**attempt (2)**
20:19,23
**attention (1)**
3:4
**authorized (1)**
10:18
**available (2)**
11:4;14:17
**awaits (1)**
11:12
**aware (2)**
5:23;19:24
**away (1)**
13:24

## B

**back (5)**
11:18;12:17;22:21;
24:15;25:15
**background (3)**
5:22;6:16;8:9
**bad (1)**
14:10
**balanced (1)**
12:10
**ball (1)**
13:1
**balls (1)**
16:20
**Bankruptcy (1)**
3:5;9:1;25:19
**bankruptcy-judge- (1)**
9:7
**based (1)**
10:20

11:14;14:23;15:6;
19:21;23:21;24:22
**basic (1)**
8:9
**basically (2)**
8:3;9:21;18:23
**basis (2)**
14:23;18:3
**beauty (1)**
16:19
**becomes (1)**
13:14
**begin (2)**
5:7;16:11
**behalf (3)**
4:9,21;5:2
**believes (2)**
9:17;12:18
**bellwether (1)**
22:11
**benefit (4)**
10:19;11:11;19:7;
25:6
**benefits (1)**
11:10
**Benvenutti (1)**
4:21
**better (7)**
8:2;9:11;14:13;
17:19,21,23;18:11
**Betty (1)**
5:1
**beyond (1)**
14:2
**biggest (2)**
24:2,4
**Bishop (1)**
3:16
**bit (5)**
5:22;6:16;15:6;
22:19;23:6
**both (4)**
6:9;14:3;15:23;
18:16
**bottom (1)**
16:18
**breaches (1)**
6:20
**briefly (1)**
21:22
**bring (2)**
11:7,9
**broad (1)**
18:23
**broadest (1)**
24:10
**brought (4)**
6:23;11:16;20:18;
22:22
**burden (1)**
13:23
**burner (1)**
12:17
**Burns (3)**
14:24;15:5;21:8

**business (4)**
14:13;21;15:1,8

## C

**CALIFORNIA (3)**
3:1,6;24:25
**Call (2)**
3:3;5:24
**calling (2)**
3:15;9:22
**Can (12)**
4:12,13;5:7;6:8;
16:14;17:2;19:5,11,
25;21:19;22:5;23:10
**candor (2)**
22:13,13
**case (9)**
3:16;9:1;10:23;
11:18;12:8;14:9;16:4;
22:19;24:7
**cases (2)**
11:19;13:8
**Casualty (1)**
4:24
**Catholic (1)**
3:16
**certain (1)**
10:7
**certainly (9)**
6:14;7:2,6;8:20;
19:15,16,25;21:16;
22:1
**change (5)**
4:5;13:17;15:7;
21:14,15
**Chapter (2)**
10:23;16:19
**chide (1)**
5:11
**choice (1)**
18:20
**choices (2)**
18:18,19
**chosen (1)**
18:25
**circumstances (4)**
8:25;10:8;14:7;
21:13
**cite (1)**
10:16
**cited (1)**
11:18
**claim (4)**
10:5,19;13:10,13
**claimants (2)**
12:22;13:24
**claims (2)**
8:17;9:17
**class (1)**
8:24
**classic (3)**
9:18;11:6;14:10

Case: 23-40523    Doc# 2094-3    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 30
of 36

**clawback (1)**
24:5
**clawing (1)**
24:15
**clearly (1)**
7:12
**CLERK (7)**
3:4,15,20,22;4:1,5;
5:6
**Club (1)**
10:15
**colleague (1)**
4:11
**colleagues (1)**
4:12
**colorable (4)**
10:19;13:10,13;
19:17
**coming (1)**
18:14
**commenced (4)**
6:17;11:5;12:2,3
**commencement (1)**
24:7
**comments (2)**
18:4,14
**committee (33)**
4:21;6:12;7:22;
8:17,21,25;9:10,15,
17,21,24;11:4,16,19,
22;12:1,6,15,18,24;
13:2,4,16;14:23;
15:11;16:3,16;18:12;
20:16;23:16,21;
24:20;25:4
**committee's (12)**
3:11;10:17;12:11;
14:20,25;20:12,22;
21:1,11;23:14;25:11,
20
**companies (4)**
6:19;8:15;14:5;
19:19
**Company (1)**
4:24
**compelling (1)**
16:12
**complaining (1)**
12:15
**complaint (1)**
7:16
**completely (2)**
10:10;12:17
**complicate (1)**
20:21
**conceiving (1)**
21:9
**concern (2)**
11:1;20:16
**concerned (2)**
22:4;23:6
**concerns (1)**
22:24

**concluded (1)**
26:4
**conclusion (4)**
17:4,13,16;18:15
**conclusively (1)**
9:14
**confirmable (2)**
14:19;17:24
**confirmation (2)**
8:7;17:8
**confirmed (6)**
7:24;8:8,19;9:1;
18:9;23:3
**conflict (9)**
15:3,4,7,11,12,24,
25;16:11,13
**consequence (1)**
24:9
**considered (1)**
11:23
**Consistent (2)**
9:9;19:1
**consolidated (1)**
23:5
**constituents (1)**
18:8
**contemporary (1)**
7:18
**contested (1)**
25:17
**context (4)**
12:8;18:5;20:10;
25:14
**contextual (1)**
11:20
**Continental (1)**
4:24
**continue (1)**
16:22
**contract (1)**
6:20
**control (1)**
7:9
**conversation (1)**
15:8
**convince (1)**
16:4
**convinced (1)**
18:7
**coordination (1)**
22:9
**Corely (1)**
17:12
**Corley (19)**
3:13;5:23;6:3,7,17;
7:2,5,15,16;8:1;9:23;
17:3,11;19:9,16,24;
20:5,20;22:1
**Corley's (1)**
21:4
**corrupt (1)**
16:7
**cost (2)**

11:11;19:7
**cost-benefit (1)**
10:20
**couch (1)**
12:3
**counsel (2)**
5:10;23:17
**County (1)**
22:10
**couple (2)**
18:4,14
**course (5)**
15:5;17:21,23;
18:11;25:18
**Court (26)**
3:3,4,5,8,13,18,21,
23;4:3,6,10,13,16,18,
22,25;5:3,7,16,19;9:1;
10:21;12:23;18:18,
20;21:20
**courts (1)**
13:9
**coverage (2)**
7:3;14:2
**create (1)**
25:18
**creditor (1)**
14:12
**creditors (1)**
24:17
**critique (1)**
10:2
**currently (1)**
9:18

**D**

**day (3)**
20:6;22:14;23:16
**debtor (38)**
4:9;5:14;6:13;7:15,
23,24;8:16;9:18;10:3,
3;11:1,14;12:4,20;
13:2,15,19,24;14:4,9,
15,21;15:2,13,17;
16:2,6,21;18:8;19:7,
14;20:13;23:21;24:3,
6,11,23;25:5
**debtor-in- (1)**
10:22
**debtors' (1)**
10:16
**debtor's (9)**
6:1;13:20;15:2,18,
21;17:20;23:17;24:9,
14
**decide (1)**
20:24
**decided (1)**
14:9
**deciding (2)**
19:10;21:1
**decision (15)**

15:18,21;16:2,3,7,
14;17:20;18:25;19:1,
6,10,12;20:14,25;
25:10
**decisions (1)**
19:25
**declaratory (1)**
6:19
**declined (1)**
10:19
**deduce (1)**
6:2
**defend (2)**
6:21;19:20
**deference (1)**
14:25
**deficient (1)**
8:22
**deleterious (1)**
7:10
**demand (2)**
10:17,18
**denied (1)**
21:20
**denigrate (1)**
24:3
**deny (2)**
18:4;21:10
**dependent (1)**
6:10
**depth (1)**
15:4
**derailed (1)**
6:14
**derivative (4)**
9:19;10:1,5;11:2
**describes (3)**
8:18;15:24;16:23
**detail (1)**
20:14
**determination (1)**
21:4
**determinations (1)**
13:24
**determine (3)**
8:6;22:21;25:18
**determined (1)**
6:25
**determining (3)**
7:3;17:10;20:1
**dictate (1)**
5:13
**different (7)**
12:9,12,23;18:9;
20:2;22:16;23:1
**diocese (2)**
8:12;22:15
**direction (1)**
12:12
**directions (1)**
12:10
**directly (1)**
7:16

**disagree (2)**
10:6;24:20
**disagreement (3)**
10:24,25;24:8
**disappointing (1)**
15:15
**disclosure (4)**
6:11;8:6,18;16:23
**discretion (7)**
7:20;10:22;18:15,
22;19:2,6,11
**discussion (6)**
3:11;9:14;14:22;
16:22;17:15,18
**dismiss (3)**
6:23;8:1;13:12
**disposable (1)**
24:25
**dispose (1)**
8:2
**disposition (4)**
6:9;8:3,13;14:1
**disputatious (1)**
19:18
**disputes (1)**
7:6
**disqualifying (2)**
13:5,17
**dissenting (1)**
9:2
**distinguishable (1)**
11:20
**distracting (2)**
21:3,4
**District (3)**
3:6,13;7:2
**doctrine (1)**
19:24
**done (3)**
12:9;13:14,21
**donee (1)**
25:1
**down (1)**
16:13
**dresses (1)**
5:9
**Duane (1)**
5:2
**during (1)**
14:23
**duties (3)**
10:23;15:14,23
**duty (1)**
15:13

**E**

**early (1)**
25:15
**effectively (1)**
14:14
**efficacy (2)**
22:20;23:12

Case: 23-40523    Doc# 2094-3    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 31
of 36

**effort (1)**
24:16

**Eileen (1)**
4:9

**either (5)**
6:6;15:7;18:7;
20:10;23:25

**else (5)**
3:18;4:6;14:16;
23:10;25:24

**else's (1)**
4:19

**encapsulate (1)**
21:18

**end (4)**
4:1;9:14;18:6;
20:19

**enjoy (1)**
16:3

**enormous (1)**
21:6

**entities (1)**
15:13

**entitled (1)**
21:11

**environment (1)**
6:11

**equal (1)**
15:14

**especially (1)**
21:2

**estate (7)**
10:20;15:20;16:17;
24:10,14,17;25:7

**even (6)**
7:19;8:1;16:4,17;
18:19;22:21

**event (1)**
25:7

**everybody (4)**
3:8;4:19;5:12;21:7

**exactly (1)**
11:13

**excess (1)**
20:3

**exercise (1)**
20:13

**exercised (1)**
19:2

**exhausted (1)**
20:4

**exigency (1)**
20:8

**exists (1)**
10:20

**expects (2)**
7:17,18

**experience (1)**
7:3

**explored (1)**
15:4

**extent (10)**
6:8,9;11:25;13:4;

14:20;16:11;17:9;
20:1;21:17;22:5

**extremely (1)**
18:23

**F**

**face (2)**
9:3;20:22

**fact (7)**
12:7,14,19;13:16,
17;22:8,25

**factor (2)**
10:25;12:5

**factors (6)**
10:25;12:14;13:4,5;
21:15;23:13

**facts (2)**
10:8;21:13

**factual (1)**
19:3

**factually (1)**
11:20

**fails (1)**
11:17

**fairly (2)**
25:15,22

**faith (1)**
20:23

**far (2)**
16:1;17:1

**fault (1)**
5:21

**favor (2)**
15:1;21:1

**favoring (1)**
15:22

**few (1)**
7:6

**fiduciary (1)**
15:17

**Fifth (1)**
7:15

**fight (1)**
25:22

**figure (3)**
9:7;13:9;25:3

**file (2)**
16:23;25:19

**final (1)**
19:6

**find (2)**
9:4;16:12

**fine (6)**
7:5;17:19;22:12;
23:20;24:4;25:22

**first (3)**
11:14;13:12;23:20

**flattery (1)**
21:8

**flip (2)**
8:10;15:5

**Foley (2)**

4:9;5:10

**folks (5)**
6:5;8:22;21:17;
25:8,15

**follow (1)**
25:21

**following (1)**
22:5

**forgone (1)**
12:17

**forth (3)**
9:24;10:4;11:18

**forward (8)**
8:7;9:8,11;12:12,
21;16:15;23:13;26:2

**found (1)**
14:25

**four (3)**
10:21;13:11;22:22

**four-part (4)**
10:1,4,4,14

**frankly (1)**
13:22

**fraudulent (2)**
24:5,18

**FRBP (1)**
21:19

**free (1)**
22:1

**front (11)**
5:25;6:17,17;7:14;
8:1;9:23;14:8;17:20;
19:9;20:5;22:9

**full (3)**
17:12;19:8;20:9

**fundamentally (1)**
10:6

**funds (1)**
24:15

**futile (1)**
12:25

**G**

**Gabrielle (1)**
4:20

**gate (1)**
16:5

**gather (1)**
3:9

**gating (6)**
13:5;17:25;23:24,
25;25:6,22

**gets (1)**
19:23

**given (5)**
12:14,19,24;20:13;
25:1

**gives (1)**
5:20

**goal (1)**
9:17

**Good (9)**

3:8;4:8,20,23;5:1;
7:20;9:3;20:23;21:24

**grant (2)**
9:12;24:12

**granted (1)**
6:24

**granting (4)**
22:4,20;23:6,12

**grappling (1)**
23:23

**grateful (2)**
22:7;25:9

**great (1)**
22:13

**guess (1)**
6:8

**guidance (1)**
22:6

**guys (1)**
24:1

**H**

**happen (5)**
7:11;12:9,13;17:6;
23:7

**happening (1)**
12:8

**harmful (1)**
16:16

**head (1)**
9:7

**heads (1)**
6:25

**hear (3)**
4:12,13;21:8

**hearing (6)**
5:10;6:4;8:7;17:8,
11;23:5

**heartened (1)**
22:18

**held (1)**
6:1

**helpful (4)**
3:10;6:2;10:11;
17:2

**helps (1)**
16:21

**here's (1)**
16:9

**highest (1)**
20:10

**hold (2)**
8:5;14:17

**Honor (12)**
3:15,20,22;4:1,8,15,
20,23;5:1,6,15;14:21

**Honorable (1)**
3:6

**hook (1)**
14:2

**hope (2)**
3:10;5:8

**hopefully (1)**
9:13

**hours (1)**
5:13

**I**

**idea (1)**
14:10

**identified (2)**
10:14;11:7

**illuminatingly (1)**
9:13

**immediately (1)**
20:9

**imperfect (1)**
6:14

**implausible (1)**
19:2

**implicitly (1)**
8:16

**important (1)**
14:12

**impressions (1)**
21:19

**inaction (1)**
10:21

**inapplicable (2)**
10:10;11:3

**inappropriate (2)**
14:22;15:2

**include (1)**
24:21

**including (4)**
6:19,20;8:11,13

**indemnify (1)**
6:22

**indemnity (1)**
19:22

**indulgence (1)**
5:14

**inform (1)**
21:25

**informing (1)**
8:20

**initial (4)**
10:24;11:15,17;
16:9

**instance (1)**
14:11

**insurance (19)**
3:12;5:24,25;6:19;
7:3;8:15;9:22;10:9;
12:11,21;14:1,5;
15:20,20;19:8,19;
20:3,9;21:12

**insurers (1)**
5:2;6:20

**intelligent (1)**
18:1

**interest (1)**
6:5

**into (4)**

Case: 23-40523    Doc# 2094-3    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 32
of 36

8:12;13:7;20:14;
25:4
**intriguing (1)**
25:11
**involve (1)**
22:15
**involving (1)**
6:11
**issue (2)**
9:5;25:6
**issues (2)**
5:13;7:4
**item (1)**
3:15

**J**

**jacket (1)**
5:17
**JANUARY (2)**
3:1;26:1
**job (1)**
21:9
**jostling (1)**
18:17
**Judge (29)**
3:9,13;5:12,19,23;
6:3,6,17;7:2,2,5,14,
16;8:1;9:23;17:3,10,
11;19:9,15,24;20:5,
20;21:4,25;22:10,25;
23:1,4
**judgment (6)**
7:20;14:21;15:1,2,
8;19:23
**judicial (1)**
23:1
**juncture (1)**
8:10
**jurist (1)**
20:23

**K**

**keep (1)**
14:13
**Keller (1)**
4:21
**Kim (1)**
4:21
**kind (5)**
22:18;23:8,24;
24:15,22
**kinds (3)**
7:3;13:8;18:18
**knows (1)**
7:6

**L**

**lack (1)**
8:2
**Lafferty (2)**

3:6,9
**Lardner (1)**
4:9
**last (1)**
14:24
**law (7)**
6:12;8:19;9:5;
11:18;12:23;17:5;
24:25
**lawsuit (2)**
25:19,21
**leaning (1)**
22:4
**least (7)**
5:8;8:16;9:7;14:4,
18;17:24;21:3
**leave (1)**
6:24
**lectern (1)**
23:22
**led (1)**
16:6
**legal (2)**
18:7;25:6
**less (2)**
8:4;19:18
**letter (1)**
11:8
**letting (1)**
23:12
**level (1)**
6:8
**levity (2)**
5:8,8
**liability (1)**
14:4
**light (8)**
10:8,9,22;12:7;
21:2,13;23:13;25:10
**likely (2)**
17:17;21:2
**line (2)**
3:15;16:18
**lines (1)**
12:23
**listen (1)**
17:17
**litigation (9)**
3:12;8:14;9:22,23;
10:9;13:21;19:8;20:9;
22:12
**little (5)**
5:22;6:16;19:17;
22:19;23:6
**LLC (1)**
10:15
**London (1)**
5:2
**long (3)**
14:22;18:6;20:15
**longer (1)**
14:16
**look (5)**

3:20;13:8,8;18:18;
26:1
**looking (1)**
19:7
**loosely (1)**
5:24
**losing (1)**
7:9
**lost (1)**
21:1
**lot (1)**
25:13
**lots (3)**
17:15,18;25:16
**Luu (2)**
5:1,1

**M**

**making (4)**
6:6;18:24;19:5;
20:14
**manner (1)**
12:12
**many (3)**
7:11;11:3;22:11
**Mark (1)**
4:23
**Market (1)**
5:2
**matter (16)**
6:1,5,12;7:1;8:4,19;
9:4;11:23;17:5;19:17;
20:21;22:24,25;23:5,
20;25:17
**matters (11)**
8:5;11:21;20:4;
21:22;22:8,9,10,18,
22;23:12;25:4
**may (9)**
14:6;16:3,3,4;
20:10;24:14,21,21;
25:19
**maybe (4)**
11:10;19:20;22:10;
24:21
**mean (3)**
17:14,14;25:16
**meaning (2)**
8:10;15:5
**meaningless (1)**
24:15
**means (1)**
18:24
**meantime (1)**
7:13
**mechanism (1)**
25:3
**might (11)**
6:2;11:5;14:11;
15:1;16:16;19:18;
22:17;24:10;25:13,
16,17

**million-and-a-half (1)**
13:21
**mind (4)**
7:23;13:23;16:24;
25:8
**mindful (6)**
17:7;18:15;19:15;
22:8,12,24
**mistake (1)**
18:21
**moment (4)**
5:7,22;14:19;19:5
**moments (1)**
16:21
**monetize (1)**
15:19
**money (1)**
24:6
**monies (1)**
24:9
**months (5)**
7:13
**more (5)**
8:4;11:5;18:12;
24:23,24
**Morris (1)**
5:2
**Moses (7)**
3:24;4:2,11,15,15,
17;21:17
**most (2)**
14:11;24:4
**motion (27)**
3:11;5:23;6:3,9,15;
7:14;9:12,19,20,25;
10:17;17:11;18:4;
20:17,18;21:2,5,11,
12,20;22:3,20;23:6,
12,14,18;25:11
**motions (2)**
6:23;13:12
**Mountain (1)**
10:15
**moved (1)**
3:17
**much (1)**
26:3
**muted (1)**
3:24
**mutually (1)**
6:25
**myself (1)**
5:11

**N**

**name (1)**
14:4
**necessarily (5)**
8:2;9:25;12:16;
16:16,17
**necessary (1)**
12:4

**need (2)**
8:5;17:18
**needed (1)**
15:7
**needs (1)**
4:5
**nefarious (1)**
16:7
**neither (1)**
24:18
**new (1)**
23:1
**next (1)**
20:6
**nobody (1)**
10:9
**nonconfirmable (1)**
9:4
**nonetheless (1)**
13:25
**nonstarter (1)**
17:13
**nor (2)**
15:25;24:19
**Northern (1)**
3:5
**notion (1)**
8:21
**number (6)**
3:15,16;9:10,16;
14:2;22:23

**O**

**OAKLAND (3)**
3:1,16;22:15
**objected (1)**
8:17
**objection (3)**
11:25;12:1;17:25
**Objections (1)**
9:5
**obligated (2)**
6:21,21
**obligations (1)**
20:3
**observation (1)**
10:2
**observations (1)**
20:11
**observe (1)**
20:12
**obvious (3)**
23:24,25;24:4
**obviously (1)**
7:5
**once (1)**
18:19
**one (28)**
5:9,9;6:8,23;7:21;
9:5,12;10:17,25,25;
12:2,6;14:2;15:7,14,
15,19,21,22;16:4,21;

Case: 23-40523    Doc# 2094-3    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 33
of 36

19:23;22:15,21,21;
23:17;24:16;25:18
**online (1)**
4:12
**only (1)**
6:5
**onto (1)**
13:24
**oOo- (1)**
3:2
**OPF (1)**
24:7
**opposition (1)**
23:18
**option (3)**
8:14;12:22;16:15
**options (1)**
16:14
**order (4)**
3:3;9:9;20:10;
24:22
**originally (1)**
9:23
**others (2)**
19:22;23:3
**otherwise (2)**
20:20,20
**out (11)**
8:25;9:6,7,25;
11:13;13:9,18;14:18;
20:6;25:3,23
**outcome (1)**
22:1
**outlines (2)**
11:9,9
**outset (1)**
25:13
**over (10)**
3:17;5:17;7:13;9:1;
15:23;18:17;20:2,7,
15;22:25
**overall (2)**
11:1,11
**owed (1)**
15:13

**P**

**page (1)**
10:16
**papers (3)**
14:25;17:1;23:17
**parlance (1)**
5:14
**part (4)**
8:20;11:22;14:6;
18:11
**particular (1)**
21:21
**parties (12)**
3:17;6:2,25;7:17;
10:6;12:9;14:6;17:2;
18:17;19:14;24:8;

25:7
**parties' (1)**
8:14
**party (8)**
10:18;11:7,8,8;
15:23;18:24;21:17;
24:25
**past (1)**
11:25
**patently (1)**
16:24
**patience (1)**
25:25
**pause (2)**
16:8,15
**paused (1)**
20:15
**pay (1)**
24:17
**paying (1)**
14:6
**pending (6)**
3:12;5:25;11:24;
13:16,17,19
**people (6)**
5:4,9;6:6;21:25;
23:10;25:8
**perfect (1)**
17:14
**perfectly (2)**
7:5;23:20
**performed (1)**
10:21
**Perhaps (4)**
3:21;4:2;6:13;
18:19
**period (1)**
7:13
**permit (1)**
9:15
**person (2)**
20:18;23:4
**persona (1)**
9:8
**perspective (1)**
21:10
**piece (2)**
24:2,4
**place (1)**
18:9
**plaintiff (2)**
3:12;9:22
**plan (24)**
6:11;7:24;8:6,8,11,
18,21;9:1,4,10;12:20;
13:2,22;14:19;16:9,
22,23;17:5,12,16,18,
23;18:8;19:9
**play (2)**
14:18;20:6
**played (1)**
11:12
**pleading (2)**

7:19;13:22
**Please (1)**
3:4
**Plevin (4)**
4:23,23,24;19:22
**PM (2)**
3:1;26:4
**point (4)**
6:24;12:7;16:18;
18:9
**points (4)**
8:25;9:3,24;23:18
**pose (2)**
25:12,14
**position (11)**
7:25;11:1,10,19;
13:20;14:20;15:6;
24:9,14,20;25:20
**possession's (1)**
10:23
**possibility (1)**
8:23
**possibly (1)**
14:5
**potentially (1)**
20:16
**power (1)**
20:24
**practice (1)**
7:14
**preference (1)**
14:12
**prepared (2)**
6:3;25:9
**present (1)**
21:13
**presentation (1)**
25:16
**presented (1)**
11:14
**presently (1)**
11:7
**presiding (2)**
3:7;22:25
**pressed (1)**
14:24
**prevailing (1)**
21:17
**primary (1)**
20:3
**prior (1)**
24:7
**privilege (1)**
20:13
**probably (1)**
17:9
**problem (4)**
4:4;11:3,6;21:9
**proceed (1)**
17:7
**proceeded (1)**
18:25
**proceeding (1)**

20:9
**proceedings (1)**
26:4
**proceeds (1)**
15:21
**process (4)**
7:10;16:1,5;18:1
**progress (1)**
7:19
**progression (1)**
9:9
**prompt (1)**
23:8
**proper (1)**
12:20
**property (2)**
24:10,16
**proposed (2)**
12:20;16:21
**proposes (1)**
18:8
**proposition (1)**
11:18
**prosecute (2)**
10:5;23:15
**prosecuted (2)**
13:19;20:24
**prosecution (1)**
9:16
**protagonist (1)**
18:12
**purposes (6)**
9:20;16:5;19:6,23;
24:11,12
**pursue (4)**
12:22;13:2;14:9;
17:23
**pursuing (3)**
9:18;11:16;19:8
**put (5)**
6:9,25;8:4;12:17;
14:17
**putting (1)**
8:12

**Q**

**quick (1)**
13:10
**quite (2)**
7:5;20:16

**R**

**rare (1)**
8:25
**rather (2)**
8:4;15:22
**RCBO (1)**
4:9
**re (2)**
10:1;20:18
**reached (1)**

17:4
**ready (2)**
5:21;22:18
**reality (1)**
12:24
**really (9)**
5:13;11:16,20;
12:10;13:7;19:23;
24:15,18,23
**reason (2)**
7:8;16:8
**reasonably (1)**
22:23
**reasons (4)**
21:6,10,20;24:21
**reconsidering (1)**
18:10
**record (2)**
19:3;21:20
**reference (1)**
7:1
**referenced (2)**
18:16,16
**reflect (1)**
9:11
**reformulate (1)**
15:19
**reiterate (1)**
15:10
**relationship (1)**
14:14
**relevant (1)**
10:7
**relief (8)**
6:18,19;9:12;11:4;
12:22;22:3,20;23:7
**remark (1)**
19:14
**remarks (1)**
19:22
**remember (1)**
23:3
**represent (1)**
22:11
**representative (1)**
22:23
**represents (1)**
8:23
**request (9)**
6:1;10:9;12:2,3,11;
13:6;14:21;20:12;
21:21
**requests (1)**
11:11
**requirements (1)**
24:24
**resolution (2)**
7:7;22:16
**resolve (1)**
6:3
**respect (12)**
6:18;7:14;8:15;
14:3,4,5;18:17;21:6,

Case: 23-40523    Doc# 2094-3    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 34
of 36

12;22:3;23:14;24:6

**respects (1)**
8:11

**respond (1)**
23:22

**response (3)**
10:3,16;11:12

**responsible (1)**
20:2

**restricted (1)**
24:13

**result (1)**
16:9

**retreated (1)**
15:6

**revealed (1)**
16:1

**review (3)**
18:19,20,24

**reviewing (1)**
18:20

**rewards (1)**
18:2

**RIDLEY (6)**
4:8,9,11,14;5:15,17

**right (12)**
3:23;4:18;5:5;
13:20;15:20;16:14;
17:10;18:13;19:10,
13;21:1;25:24

**rights (2)**
8:14;14:3

**ripe (1)**
19:23

**risks (1)**
18:2

**robust (2)**
7:13;17:15

**robustly (1)**
16:16

**role (2)**
9:21;23:1

**Roman (1)**
3:16

**rule (4)**
12:6;15:1,8;18:25

**ruling (2)**
3:11;6:4

**rulings (1)**
21:18

**run (1)**
20:19

## S

**salient (1)**
19:21

**sartorial (1)**
5:13

**satisfied (1)**
8:11

**satisfy (2)**
15:15;24:24

**Scenario (2)**
15:23;18:11

**schedule (2)**
23:8,19

**second (1)**
22:24

**Secondly (1)**
23:14

**seeing (1)**
26:2

**seem (2)**
11:19;22:19

**seems (4)**
22:22;24:7,20;
25:22

**selected (1)**
22:11

**separate (2)**
7:12;9:6

**series (1)**
6:23

**session (1)**
3:5

**set (4)**
6:8;9:23,25;10:3

**several (3)**
8:11;16:20;24:21

**Shane (1)**
4:15

**shifts (1)**
13:23

**shirt (1)**
5:17

**shows (1)**
4:1

**sic (1)**
3:9

**significant (1)**
14:6

**Simons (2)**
22:13;23:2

**simple (1)**
14:8

**simply (5)**
12:3,11;14:9;17:20;
21:19

**sincere (1)**
20:17

**single (2)**
24:2,4

**sit (2)**
17:3,4

**situated (1)**
11:7

**situation (1)**
18:6

**six (4)**
22:11,14,18,22

**skepticism (1)**
15:11

**smarter (2)**
7:25;25:13

**smarty-pants (1)**

5:19

**somebody (1)**
21:21

**someday (1)**
16:4

**someone (3)**
4:6;18:20;21:16

**Sometimes (2)**
5:8;16:20

**somewhat (3)**
9:13;14:24;22:17

**sorry (3)**
4:3;7:23;21:8

**sort (6)**
8:3;12:22;13:1;
15:22;16:4;23:5

**sought (1)**
6:18

**speak (1)**
9:13

**speaker (1)**
4:5

**speed (3)**
17:12;19:8;20:9

**spent (1)**
13:20

**square (1)**
22:21

**stage (3)**
7:20;11:17;13:22

**stake (2)**
13:7;19:15

**stand (1)**
23:16

**standard (8)**
10:1,4,7,10,14;
11:2;18:16,23

**standards (1)**
18:24

**standing (8)**
9:19;10:1,4,5;11:2;
20:18;21:11;23:15

**standpoint (2)**
8:21;19:12

**stark (1)**
15:22

**state (1)**
12:23

**stated (1)**
21:20

**statement (5)**
6:11;8:6,18;16:23;
20:22

**States (3)**
3:5

**statutorily (1)**
10:18

**stay (4)**
9:13;22:3,20;23:7

**stickler (1)**
5:9

**Still (2)**
3:25;7:19

**stop (2)**
18:1;19:13

**strikes (1)**
19:11

**stronger (1)**
21:3

**substantial (1)**
7:18

**substituted (1)**
3:12

**successful (1)**
10:20

**sue (1)**
14:11

**suggest (3)**
7:11;12:20;20:8

**suggested (1)**
3:9

**suggesting (1)**
23:8

**suggestions (1)**
22:6

**support (1)**
19:3

**sure (1)**
23:7

**survived (1)**
13:11

**survivor (1)**
8:12

**survivors (2)**
8:23;9:2

**sweatshirt (1)**
5:10

**synched (1)**
7:23

## T

**tainted (2)**
15:3,5

**talk (4)**
5:20;17:7,8;25:9

**technically (2)**
12:1;13:12

**telling (2)**
14:15;20:17

**tells (4)**
5:12,20;6:12,13

**terminate (2)**
8:4;14:14

**terminating (2)**
14:15;17:22

**terms (3)**
12:4;16:25;24:12

**test (1)**
12:5

**theoretically (1)**
17:24

**theories (1)**
6:20

**theory (2)**
8:18;14:10

**therefore (3)**
12:4;13:3;24:18

**thereof (1)**
7:7

**third (1)**
9:20

**though (1)**
7:19

**thought (2)**
20:15;22:5

**thoughts (2)**
6:15;22:6

**Three (2)**
10:19;22:14

**threshold (1)**
16:5

**times (1)**
20:2

**timing (1)**
23:11

**today (5)**
3:9;17:3,4;20:11;
23:9

**today's (1)**
9:20

**together (1)**
6:25

**told (3)**
7:16;10:10;22:13

**tomorrow (12)**
5:25;6:6;16:22;
17:9,9,15;20:6;21:23;
22:7;23:10;25:2;26:2

**took (1)**
11:1

**totally (1)**
19:3

**touch (1)**
21:22

**toward (1)**
22:4

**track (1)**
7:12

**tracks (1)**
19:13

**trade (2)**
8:3;14:12

**trading (2)**
14:16;17:22

**traditional (1)**
14:8

**traffic-cop (1)**
9:8

**transfer (2)**
24:5,18

**transferred (1)**
24:6

**tried (2)**
5:17;9:6

**true (2)**
7:12;15:17

**trust (2)**
8:13;24:23

Case: 23-40523    Doc# 2094-3    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 35
of 36

**try (2)**
21:18;25:3
**trying (1)**
13:9
**turn (1)**
17:10
**Turner (1)**
4:24
**two (9)**
5:12;10:18,24;12:3;
13:4;15:13;21:22;
22:12;23:19
**type (1)**
7:6
**types (1)**
6:18

## U

**ultimately (1)**
19:10
**unarticulated (1)**
24:8
**unattractive (1)**
8:22
**unconfirmable (4)**
6:12;16:24;17:5,16
**undeniably (1)**
13:23
**under (3)**
9:25;12:12;21:19
**understandable (1)**
23:22
**understandably (2)**
8:10;12:16
**undertake (1)**
24:16
**United (1)**
3:5
**unjustified (1)**
10:22
**Unless (2)**
21:16,21
**unlikely (2)**
19:3;20:5
**unmuted (1)**
4:2
**unnecessarily (1)**
20:21
**unsecureds (1)**
15:18
**up (5)**
7:23;16:24;18:6;
21:14;23:9
**upon (2)**
8:7;10:17
**usable (2)**
24:11,17
**use (1)**
14:17
**utilize (2)**
12:21;15:19
**utilized (1)**

12:18

## V

**value (2)**
9:3;20:22
**valuing (1)**
8:16
**various (5)**
6:18;8:14;16:14;
23:15;24:11
**vein (1)**
25:14
**version (1)**
11:6
**versus (1)**
19:9
**view (6)**
7:23;9:9;14:18;
15:18,25;17:19
**virtue (1)**
20:1
**volatile (1)**
6:10
**vote (4)**
8:24;9:2;17:6;18:7
**voting (1)**
9:5

## W

**way (19)**
6:8;7:6,21;8:16;
9:11;10:11;11:2,13,
17;12:21;13:1,18;
15:12,16,19,21;18:25;
19:2;24:13
**ways (3)**
7:11;11:3;25:16
**WEDNESDAY (1)**
3:1
**week (1)**
14:24
**weren't (2)**
6:21,22
**Westlaw (1)**
10:15
**what's (4)**
9:8;12:8;13:7;14:8
**whereas (1)**
22:17
**Whereupon (1)**
26:4
**whole (2)**
12:7;17:6
**who's (3)**
14:2;20:3,3
**William (1)**
3:6
**withdrawn (1)**
7:1
**within (1)**
25:10

**without (6)**
11:15;15:15;19:3,5,
9;25:19
**wonderful (3)**
21:7,9;26:1
**word (2)**
8:2;21:3
**work (1)**
16:10
**working (1)**
10:11
**worried (1)**
22:19
**worth (3)**
7:9;15:10;19:8
**writes (1)**
11:8
**wrong (3)**
16:3,17;18:10
**wrongful (2)**
16:7;19:12

## Y

**years (1)**
25:10
**Yellowstone (1)**
10:15

## Z

**zero (1)**
8:24
**Zoom (1)**
5:5
**Zoom-ily (1)**
3:9

## 1

**1 (1)**
3:15
**11 (2)**
10:23;16:19
**13 (1)**
10:16
**15 (1)**
3:1

## 2

**2:01 (1)**
3:1
**2:36 (1)**
26:4
**2025 (1)**
3:1
**23-40523 (1)**
3:16

## 5

**541 (1)**

24:10

## 7

**7052 (1)**
21:19

## 8

**8th (1)**
26:1

Case: 23-40523    Doc# 2094-3    Filed: 06/25/25    Entered: 06/25/25 15:09:50    Page 36 of 36