# Exhibit 4

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

BEFORE THE HONORABLE RAJ CHATTERJEE, JUDGE

DEPARTMENT 21


IN RE NORTHERN CALIFORNIA CLERGY          No. JCCP5108
          CASES.

_____/


REPORTER'S TRANSCRIPT OF PROCEEDINGS


Taken via Zoom Meeting before CHRISTY CURRY, CSR

Certified Shorthand Reporter No. 13982

State of California

Wednesday, May 28, 2025

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 2 of 31

```
 1              A P P E A R A N C E S   V I A   Z O O M

 2      .

 3                    PLAINTIFFS' ATTORNEYS

 4

 5         RICHARD SIMONS, ATTORNEY AT LAW, Furtado, Jaspovice

 6      and Simons, 6589 Bellhurst Lane, Castro Valley,

 7      California 94552, appeared as liaison counsel on behalf

 8      of Various Plaintiffs.

 9

10                    DEFENDANTS' ATTORNEYS

11

12         DANIEL ZAMORA, ATTORNEYS AT LAW, Weintraub Tobin,

13      475 Sansome Street, Suite 510, San Francisco, California

14      94111, (415)433-1400, appeared as Institutional

15      Defendants' Liaison Counsel on behalf of the Roman

16      Catholic Archbishop of San Francisco.

17

18         MART OLLER, ATTORNEY AT LAW, McCormick Barstow,

19      LLP, 7647 North Fresno Street, Fresno, California 93720,

20      (559)433-1300, marty.oller@mccormickbarstow.com appeared

21      as counsel on behalf of the Defendant Diocese of Fresno.

22

23         STEPHEN GREENE, ATTORNEY AT LAW, GREENE & ROBERTS,

24      455 Capitol Mall, Suite 405, Sacramento, California

25      95814, (916)753-1300, sjg@greeneroberts.com, specially

26      appeared for the Defendant Catholic Diocese of

27      Sacramento.

28      ///
```

```
 1                    OTHERS PRESENT:

 2      .

 3          CATHERINE CAWLEY; CHELSIE WARNER; DANIEL R. MAYER;

 4      DAVID COLELLA; DYLAN BONFIGLI; EMIL KHATCHATOURIAN;

 5      ERIKA SCOTT; GARY PARTAMIAN; GLADYS RODRIGUEZ-MORALES;

 6      HUNTER HADDOCK; JASON CHEUNG; JEFFREY SIKKEMA; JENNIFER

 7      STEIN; JENNY HOPPER; JOE GORDON; KELSEY CAMPBELL;

 8      KENDRICK JAN; KRISTEN BUSH; LAURA MALKOFSKY; LAURIE

 9      DEYOUNG; LUIS SAENZ; LUKE SPERDUTO; MACKENZIE L.

10      JOHNSON; MAGNUS FORSYTHE; MAHMOUD SHUKRY; MAREK PINEKOS;

11      MARIA LAFORET; MARIAH OGDEN; MELISSA ROSADINI-KNOTT;

12      MIKAYLA KELLOGG; MICHAEL RECK; NANCY MCPHERSON; NEDA

13      LOTFI; NICHOLAS DEMING; PARKER ESTENSON; PATRICK HUGHES;

14      PETER DAFTER; "PRIYA"; RAYMON DOLEN; REBECCA KIM; RYAN

15      MCINTOSH; SEAN MANEEWONGWATHANA; SHAUNA IMANAKA; SOPHIA

16      ACHERMANN; STEPHANIE WHITE; SUIZI LIN; TIM HALE; TIMOTHY

17      DAVELER; VINCE FINALDI; WILKE FLEURY, LLP.

18

19                    ---o0o---

20

21

22

23

24

25

26

27

28
```

                                                            3

1  Wednesday, May 28, 2025                    2:34 p.m.

2                        ---oOo---

3                  P R O C E E D I N G S

4

5          THE COURT:  Okay.  Let's start over.  How is

6  everybody doing today?

7          MR. ZAMORA:  Doing good.  Thank you.

8          MR. SIMONS:  Madam Reporter can hear, so let's

9  get appearances from liaison counsel, and anybody else

10  that is intending to speak up today.

11          MR. SIMONS:  Yes.  Rick Simons, plaintiffs'

12  coliaison counsel.

13          MR. ZAMORA:  Daniel Zamora, liaison counsel for

14  the institutional defendants.

15          THE COURT:  Okay.  Do we have --

16          (Inaudible.)

17          THE COURT:  Let's start with Prop 51, okay?

18  Here is -- you have gotten my request for further

19  briefing, and I read the briefs.  I have read the cases

20  cited in the briefs.  And I think -- you know, it -- the

21  first -- I think I am going to have to rule on the

22  issue, the picture.  I think it is a significant issue

23  for which we need an order that will apply to the JCCP,

24  so all the different courts aren't reinventing the wheel

25  on this, and we have consistency across the board.

26  Okay?

27          With regard to consistency, does anybody have

28  the answer to my last question with regard to whether

**Jilio-Ryan Court Reporters**
**ph. 714.424.9902  info@jilioryan.com**
Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 5
of 31

1  this issue was raised in LA or in San Diego or back in

2  the 2000s, the prior JCCP?  Do we know?

3        MR. SIMONS:  Your Honor, it was not raised in

4  Clergy III.  And it to my knowledge has not been raised

5  or briefed or subject of an order in either 5101 or 5105

6  this time around.

7        THE COURT:  Okay.

8        MR. ZAMORA:  It has not been raised or briefed

9  in the 5101 proceeding, which is the LA coordination

10  proceeding, Judge; nor the 5105 proceeding, which is the

11  San Diego coronation proceeding.

12        THE COURT:  Okay.

13        MR. ZAMORA:  In the Clergy III proceeding with

14  Judge Sabraw, there was at set of jury instructions that

15  were approved, and the normal CACI allegation of fault

16  was used back in 2005.

17        THE COURT:  Okay.  So looks like we are going to

18  be doing this ground up.  Here -- my -- okay.  That at

19  least says what it says.  We look to the accrual date,

20  and work from which the defense is relying upon applies

21  that rule for latent torts, latent injuries, latent

22  types of diseases.  And if that is the situation held,

23  that you look to when the diagnosis was made, and when

24  the -- or when the injury was discovered for purposes of

25  accrual, for Prop 51.

26        And then at the end of the day, I think the

27  issue that is really concerning me is how the statute of

28  limitations affects accrual for purposes of Prop 51.

5

1    And here we have a situation where if you just draw a
2    continuum -- and I'm assuming these are cases where the
3    injured -- the alleged molestation happened before
4    June 2000- -- in June 1986.  June 1986 is when Prop 51
5    took effect, right?
6            MR. SIMONS:  (Nods head.)
7            THE COURT:  So let's assume the actual or
8    alleged molestation happened before then.  You had a
9    point in time where the statute of limitations lapsed,
10   and then you had a period of time when the claim could
11   not be brought in court, and then you had AB 218 come
12   around and said, Now you can file your claim because we
13   are amending -- we are changing the statute of
14   limitations.  And then the claims were filed, right?
15           So the question is -- the ultimate question you
16   teed up is, when is this -- when do these claims accrue
17   for purposes of Prop 51?  Do they accrue before
18   June 2000- -- do they accrue before June 4, 1986?  Or do
19   they accrue after?  And, you know, there are cases that
20   address what the statute of limitation means, how it
21   applies, how it affects accrual.  And I think the
22   parties need to address that, and to address how AB 218
23   affects this.  Does everybody understand what I mean by
24   this?  Does that make sense?
25           MR. SIMONS:  I understand the Court's question,
26   and am fully prepared to brief it.  I think the Court's
27   allotment of the page limit is generous, and I think the
28   issue can be addressed much more succinctly than the

6

1  number of pages the Court has allowed us.  So I'm
2  prepared to do so.
3       THE COURT:  Shorter and being more concise is
4  always better.
5       Mr. Zamora, does that make sense to you?  Or do
6  you have any thoughts?
7       MR. ZAMORA:  Yeah, no.  I appreciate the Court's
8  comments.  I think I understand what the Court is
9  saying.  I think at least on the defense side, we view
10 the issue slightly differently than the Court does
11 currently.  And, you know, happy to address that in the
12 supplemental briefing as well.
13      THE COURT:  Okay.  Why don't -- why don't you
14 take a crack at responding to the questions.  And you
15 have heard my concerns.  I don't -- I mean, I -- rather
16 than get into argument right now, why don't you respond
17 to those questions, and we can have a full-blown
18 argument on this, and we can go from there.
19      MR. SIMONS:  Your Honor, before today's hearing,
20 Mr. Zamora and I discussed the Court's schedule, and we
21 would like the Court's indulgence in perhaps modifying
22 that schedule slightly because of both -- some other
23 commitments in the next week or so involving these
24 cases, but -- in both bankruptcy court and in other
25 forums; and also Mr. Zamora has some personal time
26 scheduled that is really difficult to interfere with,
27 and that I am sympathetic to because any of us might
28 have that same situation.

7

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 8
of 31

1    So if the Court pleases, perhaps Mr. Zamora
2   could talk about the schedule we have discussed.
3           THE COURT:  Sure.  That is fine.
4           MR. ZAMORA:  Judge, I'm out of the country the
5   week of the 25th, which is the currently scheduled
6   hearing date.  And I'm out of the country on the first
7   week of July.
8           So, you know, Mr. Simons and I agree that there
9   is no case that would benefit from Your Honor's ruling
10  that is going to be going between now and July.  So if
11  it makes sense to put it over to the July CMC, we can
12  retrigger the briefing schedule based on a July CMC
13  date.
14          THE COURT:  I think that is -- that is fine to
15  me.  That is fine with me.  So do you guys want to work
16  out a briefing schedule right now?  Or --
17          MR. ZAMORA:  Sure.
18          THE COURT:  When can we get the supplemental
19  briefs in, then?  Let's just -- do you want to brief
20  this in July, or do you want to brief this -- you tell
21  me what schedule works.
22          MR. SIMONS:  My schedule is more flexible than
23  Mr. Zamora, so I would defer to him on this.
24          MR. ZAMORA:  If we had -- so typically our CMCs
25  are heard on the fourth Wednesday of each month, which
26  if it was on that schedule, Judge, it would be the 23rd
27  of July --
28          THE COURT:  Right.

8

```
 1          MR. ZAMORA:  -- is the hearing date.
 2          THE COURT:  Right.
 3          MR. ZAMORA:  Yeah.  The 16th for the reply, the
 4  9th for the opposition, and then the 2nd for the moving
 5  papers.  Or we could -- we could have it over a longer
 6  period of time.  I'm going to be out of the country on
 7  the 2nd, so it doesn't make -- doesn't make a lot of
 8  sense.
 9          Your Honor, if we can submit a stipulation after
10  the CMC, I think Mr. Simons and I can work out a
11  briefing schedule.  We don't have to take up the Court's
12  time on that, if we have a July 23rd hearing date.
13          THE COURT:  Let's do this.  I'll let you guys
14  submit a stipulation on a briefing schedule.  I think
15  I'd like the reply by the 14th of July, if we can.
16          MR. ZAMORA:  Okay.
17          THE COURT:  Okay?  So it's fully briefed and
18  submitted by the 14th.
19          MR. ZAMORA:  That is fine.  Thank you.
20          THE COURT:  Okay.  Okay?  And with that, I think
21  all the other issues in the CMC statement are
22  straightforward and somewhat -- they are
23  straightforward.  So we will just go through them.  The
24  certificate of merit, I think that is done.  We
25  signed -- we took care of that.
26          With regard to the service issues, I'm not sure
27  what the issue is.  Is the issue whether or not bucket 2
28  cases can be served?  I mean, it --
```

9

1       MR. SIMONS:  The issue as I understand it, Your

2  Honor, is, our responsive pleadings, which involve an

3  appearance by an institutional defendant, are precluded

4  by the Court's bucket 2 state that -- that means those

5  parties -- those defendants are not really before the

6  Court yet.

7       And to the extent that the stay that the Court

8  imposed may preclude the filing of a responsive

9  pleading, which is the defendants' concern, I would

10  suggest that it might be a good move for us to modify it

11  to not have first appearances, whether they be by

12  challenge to the pleadings, or whether they be by filing

13  of an answer, that those should not be stayed, and they

14  are not substantive in the terms of how the cases are

15  going to be handled eventually.  But they do get the

16  parties before the Court and within the JCCP.

17       THE COURT:  Okay.

18       MR. ZAMORA:  Your Honor, it's not my case, the

19  one that was put on the CMC.  I think -- and again, I'm

20  not a bankruptcy attorney, but I think that the -- I

21  think the issue that that particular defendant is having

22  is, if the action is stayed as to the entire action

23  under the Fogerty opinion from the Second Circuit, then

24  the filing of an answer is, I think, more than an

25  administerial act, you know, in prosecution of the case.

26       So I think the position of that defendant would

27  be that that -- not that your stay precludes them from

28  filing an answer, although arguably it does, but that a

10

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 11
of 31

1    potential bankruptcy stay prevents them from filing an

2    answer.

3         THE COURT: Here is my view. If you need to

4    serve -- look. My view is -- maybe this will be

5    helpful. I'm not sure if this is ripe for an order.

6    But I think the best way to go forward is, if plaintiffs

7    need to serve a defendant, you can serve a defendant in

8    a bucket 2 case. The stay doesn't prevent service. I

9    think the stay that I impose on bucket two cases means

10    that, you know, the defendant does not need to file an

11    answer. And once the stay is lifted, then the time to

12    file an answer would start to tick. That is the way I

13    think I see it.

14         Somebody wants to talk. I see Ms. DeYoung is

15    raising her hand. Ms. DeYoung, what do you want to say?

16    You're muted.

17         MR. ZAMORA: I think it has to be allowed, to

18    unmute themselves, Your Honor. The same issue that --

19         MS. DEYOUNG: Mine says it's okay. So, Your

20    Honor, the issue -- thank you so much. I was trying.

21    This is my case, Your Honor, representing the Salesians.

22    The issue was --

23         THE COURT: You're representing the defendants,

24    right?

25         MS. DEYOUNG: Yes.

26         THE COURT: Okay.

27         MS. DEYOUNG: And so the issue is whether we can

28    serve notice of -- execute the notice of acknowledgment

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 12
of 31

1    and receipt, which then does trigger our time to file a
2    responsive pleading.  So that is -- we don't have a
3    problem responding to it or executing the NAR.  It's
4    just an issue of whether or not that triggers and
5    whether it's a violation of stay for us to respond to
6    the NAR.
7           THE COURT:  I think the most practical thing to
8    do is to respond to the request for acknowledgment and
9    notice of receipt so service can get done with the
10   minimal expense on both sides, and the case is stayed,
11   and the time to answer will start to tick once the stay
12   is lifted, if I lift the stay.  That is how I think --
13   that is what makes sense to me.  It's the most practical
14   thing to do because nothing -- nothing is going to
15   happen on these cases until I lift the stay, at least
16   from this Court's perspective.  So -- okay?  Does that
17   give you enough guidance?
18          MS. DEYOUNG:  On that issue it does, Your Honor.
19   There are other issues that are impacted -- that -- both
20   the plaintiffs' attorneys and the defendants' attorneys
21   have questions with respect to the stay -- the one that
22   is in bucket 2 and bucket 3 cases.  And the most
23   immediate one is, there are some fact sheets missing in
24   bucket -- in bucket 2 cases, and we are trying to attend
25   -- we are in the process of attending global mediation,
26   and plaintiffs' attorneys have said that they believe
27   that exchanging the fact sheets for those cases that
28   have been missing them violates the stay.  So it wasn't

12

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 13
of 31

1    just the issue of the NAR.  It was also this issue as

2    well, so I think some guidance on that issue may be

3    helpful as well.

4            THE COURT:  We were going to get there.  That

5    was teed up here.  My thinking is, at this point I

6    haven't ordered the mediation, right?  So mediation is

7    voluntary at this point, right?  Nothing is stopping any

8    plaintiffs from voluntarily cooperating in mediation to

9    get this case resolved.  The stay doesn't preclude a

10   party from voluntarily working towards a resolution.

11           Okay?  And, in fact, I think if you want to

12   meaningfully mediate, which I think you should, then it

13   behooves everybody to get the information exchanged that

14   would be appropriate for the mediation.  How about that?

15           MR. ZAMORA:  Thank you, Your Honor.  I really

16   appreciate it.  Thank you.  I'm now going to mute myself

17   forever.

18           THE COURT:  Okay.  All right.  Thank you,

19   Ms. DeYoung.

20           Okay.  So that is my view of the mediation, is I

21   think plaintiffs should exchange the information that is

22   appropriate to help the mediation go forward.

23           MR. SIMONS:  Your Honor, if I may ask a

24   follow-up question on the Court's order.

25           THE COURT:  Yeah.

26           MR. SIMONS:  I'm a little unclear because the

27   Court is saying you may.  There is a mediator, and the

28   mediation process is confidential.  Fact sheets of the

13

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 14
of 31

1   type that are used in the mediation process, which are

2   different than the fact -- full fact sheets that were

3   approved by the Court and ordered at discovery, the full

4   fact sheets were stayed if the parties are in the

5   mediation process.

6         There is a mini fact sheet that was adopted for

7   use in the mediation process.  However, that is all

8   under the mediation process itself, and subject to

9   mediation privilege.  And I think that the mediators are

10   probably -- and in particular, the mediator that the

11   Salesians have chosen, are probably in the best position

12   and, under the mediation privilege and mediation

13   confidentiality rules, best situated to decide the

14   question of mini fact sheets used in the mediation

15   process only.

16         And I would request that perhaps the Court defer

17   the question that has been presented to you by

18   Ms. DeYoung to the mediator in the global mediation.

19   That mediation does also involve cases -- it's a

20   statewide mediation, so it also involves cases that are

21   not subject to 5108.  They are from Los Angeles, 5101,

22   and some other proceeding.  So I --

23         THE COURT:  Let me try --

24         MR. SIMONS:  -- I think that is kind of half --

25         THE COURT:  I see this is -- I'm not ordering

26   the plaintiffs to do anything.  The stay doesn't

27   preclude plaintiffs' counsel from cooperating in

28   mediation and sharing the information they think is

14

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 15
of 31

1  appropriate to make the mediation meaningful.  So I
2  certainly agree with you that if the mediator says, I
3  think this information is helpful; I think we should do
4  this, then it behooves the parties if they want to
5  mediate and get the case resolved to cooperate.  So I
6  think they should cooperate.  But I'm not ordering it.
7          MR. SIMONS:  I appreciate the clarification,
8  Your Honor.
9          MS. DEYOUNG:  And, Your Honor, I think there is
10  only -- I know I said I was going to mute myself.  Never
11  trust an attorney.  I think there is only two issues or
12  two cases, Rick.  I think there is very few cases that
13  this is an issue.  Maybe one or two in which we are
14  missing a fact sheet.
15          THE COURT:  Okay.
16          MS. DEYOUNG:  And we can -- we can confer
17  with -- among counsel and with the mediator.  I'm
18  totally fine with that.
19          THE COURT:  I think you should meet and confer.
20  What I'm saying is, I'm not ordering -- the stay does
21  not preclude the plaintiff from submitting a fact sheet
22  or any other information the plaintiff wants to submit
23  to move settlement forward.  And I think from a
24  practical stand of view, plaintiffs are well-advised to
25  give information that they think has been helpful to
26  settle if they want to settle.
27          MS. DEYOUNG:  Thank you.
28          THE COURT:  Okay.  So that is my response to

15

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 16
of 31

1    that.

2         That sounds like that was the second issue.  The

3    next issue, then, with regard to the additional trial

4    lists in bucket 1, that is fine.  You need to submit an

5    order, Mr. Simons, on that?

6         MR. SIMONS:  Yes, Your Honor.  I can submit an

7    order.

8         THE COURT:  Yeah.  Just go ahead and submit an

9    order on that.  That should be easy.  The additional

10   sign-on will fix that.  Then it needs to get added on.

11   That case needs to get added on.

12        And then modification of the April 1 CMC order

13   regarding preparation of remand orders.  Well, what is

14   your -- here -- my general view, Mr. Simons, I don't

15   want to burden anybody more than we have to.  Now, you

16   can delegate preparation of the orders to other lawyers,

17   but I think we need one funnel for matters coming to the

18   Court for these recorders.  I'd like it funneled through

19   liaison counsel to get to us so we have a clear channel

20   of communication, and we are not looking for different

21   sources for the number of orders for remand.  Is that

22   going to be a problem?  Or --

23        MR. ZAMORA:  I think he might have frozen.

24        THE COURT:  Okay.  I thought that he was just

25   stonewalling.

26        MR. ZAMORA:  He is pondering your comments,

27   Judge.

28        THE COURT:  Mr. Simons, are you there?  I think

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 17
of 31

1  you're frozen.  There we go.  Mr.  Simons, can you hear
2  me?
3      MR. SIMONS:  I can now, Your Honor.  I could not
4  hear the second half of those remarks, unfortunately.
5      THE COURT:  Okay.  The short of it is, I think
6  it's -- I'm fine with plaintiffs' counsel delegating to
7  other attorneys for the preparation of an order,
8  transferring or remanding a case, but I think I'd like
9  the actual orders to be funneled to the Court through
10  liaison counsel, so we have one clear counsel we are
11  looking to for the comprehensive set of orders that we
12  need to sign.
13      MR. SIMONS:  And that was the concept I had
14  proposed as well, Your Honor.  So I think that works.
15  Thank you.
16      THE COURT:  Okay.  So we are copacetic, then.
17      MR. SIMONS:  Yes.
18      THE COURT:  Okay.  And with regard to the
19  bankruptcy for the bucket 2 cases, we will see what
20  happens with regard to the bankruptcy court and go step
21  by step.
22      MR. ZAMORA:  Judge, just one last thing on the
23  defense side.  I think the counsel for the Diocese of
24  Fresno wanted to raise an issue.
25      THE COURT:  Okay.
26      MR. OLLER:  Good afternoon, Your Honor.  Mart
27  Oller appearing on behalf of the Diocese of Fresno.  We
28  will be filing a motion for a protective order to stay

17

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 18
of 31

1    the deposition of our Bishop, and we will be filing that

2    this afternoon.

3            I haven't been able to get ahold of the Court's

4    clerk to get a reservation number, so I'm sorry to

5    request this and use the Court's time.  But I do need to

6    get that secured so that I can file the motion.

7            THE COURT:  You need a reservation number?

8            MR. OLLER:  Yes.  It's a system that the Court

9    has that we have to put on our pleading.

10           THE COURT:  Can we email that to counsel right

11   after?

12           Okay.  We will email that to you right after

13   this hearing.  Okay?

14           MR. OLLER:  (Nods head.)  And then one other

15   point, Your Honor.  We were going to have the motion

16   heard on June 25th.  But in light of the fact that the

17   CMC is moved out to June 23rd, I would be willing to

18   have it heard still on the 25th.  I'm actually going to

19   be out of the country, so if possible we could do it the

20   next week of July 7th.

21           THE COURT:  Hold on.  We are not continuing the

22   CMC to -- we are not continuing the June 25th CMC.  We

23   are continuing the further hearing on the motion in

24   limine regarding for Prop 51, so if you want to calendar

25   for the 25th that should be fine.

26           MR. OLLER:  Okay.  I'm sorry.  I didn't

27   understand that correctly.  So, yes, that is fine.  We

28   will keep it on the 25th, then.

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 19
of 31

```
 1            THE COURT:  Okay.  Are these bucket 1 cases?
 2            MR. OLLER:  I'm sorry?
 3            THE COURT:  Are these in bucket 1 cases?
 4            MR. OLLER:  Correct.
 5            THE COURT:  Okay.  We will deal with it.
 6            MR. SIMONS:  Your Honor, if I may, on the
 7    subject of the Fresno issues, two things.  Number one
 8    is, the plaintiffs will be bringing a motion to compel
 9    and for sanctions against Mr. Oller and the bishop for
10    refusing to come to the deposition tomorrow; and,
11    secondly, does that motion -- or should that motion be
12    heard simultaneous with Mr. Oller's motion for a
13    protective order, which this is the first I have heard
14    of?
15            THE COURT:  These are the flip sides of the same
16    coin, so it makes sense to hear them together.
17            MR. SIMONS:  Yes, Your Honor.  That is my view.
18            THE COURT:  Let's just have them both heard
19    together at the next -- in our June date, June 25th.
20            MR. SIMONS:  And, Your -- thank you, Your Honor.
21    And there is also -- again, dismays me to report, the
22    plaintiffs wish to bring a motion for sanctions.  We
23    discussed this in the Court's very first appearance in
24    January.  We have, as the Court requested, deferred
25    this, but now the recent events lead us to have little
26    choice.
27            But we will be bringing a motion for sanctions
28    including disqualification of Mr. Oller and his firm for
```

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 20
of 31

 1    violations of Rules of Professional Conduct 3.2, delay
 2    of litigation; and, 3.3, duty of candor to the tribunal,
 3    regarding numerous matters, including some of the
 4    matters directly under the umbrella of discovery and
 5    others that involve trials, et cetera.
 6            Should that motion also be heard simultaneously
 7    with the two that we have just discussed regarding the
 8    bishop's deposition?
 9            THE COURT:  Are there overlapping issues?
10    Sounds like there is overlapping issues to me.
11            MR. SIMONS:  There are in my view as well, Your
12    Honor.
13            THE COURT:  Mr. Oller, are you going to be able
14    respond to this in June?
15            MR. OLLER:  That would be a potential problem
16    because I will be on vacation, Your Honor.  So that
17    could be -- that is the first I have heard of this
18    particular motion.  If that particular motion could be
19    carried over to the July 23rd CMC, I would appreciate
20    that.
21            THE COURT:  Why don't we do that, Mr. Simons?
22    Let's put that motion on for July.  And to the extent
23    there is rulings on the discovery issue that inform that
24    motion, you will have that already done before it's
25    heard in July.
26            MR. SIMONS:  Very good, Your Honor.
27            THE COURT:  Okay.  Anything else for the good of
28    the JCCP?

**Jilio-Ryan Court Reporters**
**ph. 714.424.9902  info@jilioryan.com**

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 21
of 31

1    MR. SIMONS:  Yes, Your Honor.  I'm -- there is a
2    couple of issues that have come up after we submitted
3    the CMC statement.  Let me just make sure that I have
4    them.  One is regarding -- with regards to pro hac vice
5    applications.  During the last five years that the --
6    the procedure we followed was, if a pro hac vice
7    application or renewal is uncontested, we have been
8    putting it before the Court at the CMC rather than
9    having a separate noticed motion on a separate date for
10   hearing, et cetera, or done so by general agreement of
11   all.
12        Is the Court amenable to continuing that
13   process?
14        THE COURT:  Okay.  Mr. Obbard is saying just get
15   a reservation for the fourth Wednesday, and we can take
16   care of it through the CMC at the CMC hearing.  So you
17   don't have to file a separate motion for it.
18        MR. SIMONS:  There is currently one pro hac vice
19   applicant who has four matters before the Court, one of
20   which was heard -- well, actually it was a separate
21   hearing yesterday, and continued to June 3rd, which is
22   not a CMC date, obviously; and three others that have
23   been set for a time that, at least according to my
24   notes, is also not at the time of a CMC.
25        May we have counsel for the plaintiff and the
26   applicant in some way -- I'm not sure what the exact
27   process would be, but I would seek the Court's
28   guidance -- have all of those matters set to be heard at

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 22
of 31

1  the next CMC?

2      THE COURT:  We will move everything to

3  June 25th, the CMC.  They shouldn't be scattered around

4  on the Court's calendar.  I don't know what happened

5  there, but it's an issue that should be fixed.  We will

6  schedule them all for the 25th.  Just get a reservation

7  number for these pro hac motions, and calendar them for

8  our regular Wednesdays of each month.  That is

9  appropriate.

10      MS. ACHERMAN:  Your Honor, if I may be heard.

11      THE COURT:  Okay.

12      MS. ACHERMAN:  Hi.  Good afternoon.  This is

13  Sophia Acherman, counsel for plaintiffs.  These are my

14  motions for pro hac vice.  For various reasons, I was

15  unable to get a reservation number for the JCCP on the

16  fourth Wednesday, and so I had to get reservations in

17  each individual case.  So I have four different

18  reservation numbers under each individual case.  So

19  would the Court provide me with the reservation number

20  that I could resubmit these motions under?

21      THE COURT:  So, Taylor, can you just -- email

22  department 21, and my clerk will get you a reservation

23  number for the 25th, okay?

24      MS. ACHERMAN:  Thank you, Your Honor.

25      THE COURT:  Okay?  Okay.  Anything else?

26      MR. SIMONS:  Yes, Your Honor.  I have one other

27  additional question that has arisen since the CMC

28  statement.  It is anticipated, I'm advised by bankruptcy

22

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 23
of 31

1  counsel, that there will be a motion in the Oakland
2  diocese bankruptcy before Judge Lafferty and the
3  bankruptcy court for relief from the stay for a very
4  limited number of cases to be returned to the state
5  court for purposes of trial.
6         In the San Francisco archdiocese, that order or
7  a similar order has already been given.  However, the
8  cases subject to that order had already been remanded to
9  San Francisco Superior Court.  This would be the first
10  time that a diocese -- if the order is granted, a
11  diocese bankruptcy would involve remanding cases to the
12  coordination judge.
13         Because it is the Oakland diocese, these cases
14  would be properly venued for trial in Alameda County
15  rather than remanded to another venue or forum.  And so
16  we have a practical question that the Court's guidance
17  would be an assistance to the bankruptcy judge.  And I
18  know this because a motion like this was previously
19  heard in Oakland, and these are the questions that the
20  bankruptcy judge asked when Judge Wise was still the
21  coordination trial judge.
22         And that is, what is the anticipated capacity of
23  this Court to either find a department in Alameda County
24  which could hear in reasonably prompt fashion a case
25  from which relief from the stay is granted, and does the
26  Court have a view of how many such cases could be heard
27  within a matter of, you know, something before six
28  months without the extended delays which are a concern

**Jilio-Ryan Court Reporters**
**ph. 714.424.9902  info@jilioryan.com**

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 24
of 31

1  to everyone if the bankruptcy process is waiting for

2  results from cases that are sample cases, bellwether

3  cases, whatever you want to call them, in the state

4  court being held for trial but affecting 300 and some

5  odd cases in the bankruptcy?

6      THE COURT:  How many cases are you

7  anticipating -- well, this is going to be a motion.  So

8  assuming the motion is granted, how many cases would get

9  remanded?

10     MR. SIMONS:  Somewhere between two and six, I

11  would anticipate.

12     THE COURT:  Here is my view.  Cases should go to

13  trial when they are ready, along the lines of what we

14  did in -- for bucket 1 cases.  So if you come to me and

15  say, Judge, this case is going to be ready in five

16  months, and, by the way, the five-year statute is just

17  three or four months later, I can arrange a courtroom to

18  be -- to try that case.

19     In other words, I have -- we have significant

20  latitude here to rearrange the trial schedule among the

21  other trial departments to open up a department to try a

22  case if it needs to go based on what I'll call priority.

23  Not priority under Section 30, but just priority in

24  terms of, you know, how old is the case, and whether

25  it's a bellwether case, and other factors like, is the

26  five-year statute -- is it a five-year case?  We are

27  making it a priority to get cases that are in the fifth

28  year out to trial.

**Jilio-Ryan Court Reporters**
**ph. 714.424.9902  info@jilioryan.com**

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 25
of 31

 1          So I'll give you an example, because -- I don't
 2    know how to answer that question.  Because if a case
 3    needs go go tomorrow because the five-year statute is
 4    going to take in 30 days, I can get it out to trial.  I
 5    can find a courtroom for you.  I could work with Judge
 6    Reilly, and we can get a trial department.
 7          So it's a matter of balancing a need for a
 8    particular case to go to trial.  And I'll balance this
 9    with other cases.  So -- is that helpful in terms of
10    answering the questions?
11          MR. SIMONS:  It is helpful, Your Honor.  I have
12    a follow-up question.  One of the cases for which relief
13    from the stay will be sought is a case that was the
14    first case -- the first bellwether case set for trial in
15    5108, and it was just a couple of weeks short of
16    commencing trial in Alameda County.
17          It would be the first case in 5108 that -- or it
18    would have been the first cause set for trial and to
19    proceed with a trial had it gone.  It was the bankruptcy
20    stay in the filing of the Chapter 11 that brought that
21    case away from the Superior Court and over under the
22    jurisdiction of the bankruptcy court.
23          In that instance, is it the Court's
24    preference -- it was Judge Grillo's; Judge Wise did not
25    have to face this issue -- that the coordination trial
26    judge should try the first case of 5108, the thinking
27    being that rulings that were made by the coordination
28    trial judge would then be available to all the

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 26
of 31

1  subsequent trial judges should any of them have the same
2  issue in their cases.
3          THE COURT:  That would be my preference if we
4  can.  Given my trial schedule -- and I have, just to
5  give you an idea, kind of back-to-back trials from
6  June 30th probably through the middle of October.  So if
7  we can manage it within the department 21's trial
8  schedule, that would be my preference.
9          Now, let me just back up a second.  When you
10 talk about cases that might get remanded from the
11 Northern District bankruptcy court, is it correct that
12 those cases, assuming if they are remanded, would then
13 become bucket 1 cases?
14         MR. SIMONS:  I don't know if they would fit into
15 that category so neatly.  They would be a category of
16 their own in some ways, in which -- cases in which the
17 relief from the stay has been granted by the bankruptcy
18 court for the purposes of the trial in the state court.
19 I don't know what bucket those would fit into.
20         THE COURT:  I think this would be more -- I
21 would be more interested in hearing from you.  But they
22 would be de facto bucket 1 cases.  In other words, they
23 are not subject -- even though, you know, someone --
24 even though some are in bankruptcy, they are not subject
25 to a bankruptcy stay.  They are specifically remanded
26 for purposes of going forward.
27         So they -- unless I hear something different,
28 those types of cases should get distributed among the

26

1   trials just like all the other cases in bucket 1, right?
2   Because they are -- they will be de facto bucket 1
3   cases.
4           MR. SIMONS:  Intellectually I agree with Your
5   Honor.
6           THE COURT:  Mr. Zamora, do you have any thoughts
7   on this?
8           MR. ZAMORA:  You know, I think they may be in
9   their -- again, the disclaimer is that I'm not a
10  bankruptcy judge or a bankruptcy attorney, Your Honor.
11  I think they may be in a bucket of their own because
12  even if they are remanded for purposes of trial, the
13  sort of post-trial enforcement of judgments has to go
14  back to the -- again, this is my understanding, it has
15  to go back to the bankruptcy judge, and I think they
16  will be -- I think they will be limited in scope as to
17  what could be enforced.  I guess it will be an insurance
18  enforcement, not an asset enforcement.  But, again, I
19  don't know.
20          So I think this is -- I don't know if bankruptcy
21  counsel for the Diocese of Oakland is on this, you know,
22  call today, and wants to weigh in.  This is not my
23  client, and it's not my area of expertise on the
24  bankruptcy overlay, Your Honor.
25          Or maybe -- I mean, it sounds like Mr. Simons'
26  motion hasn't been filed yet in front of Judge Lafferty.
27  My assumption is it won't be heard in front of Judge
28  Lafferty by the time we are back here at the 25th of

**Jilio-Ryan Court Reporters**
**ph. 714.424.9902  info@jilioryan.com**

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 28
of 31

1  June, and maybe at that time the Oakland bankruptcy
2  counsel can weigh in with their two cents on this whole
3  thing.
4        THE COURT:  That all sounds fine.  My tentative
5  thought is that if a case that is in bankruptcy is
6  remanded by the bankruptcy judge to the state court for
7  trial purposes, it's a de facto bucket 1 case because
8  there is no bankruptcy impediment to setting it for
9  trial.  And so we would set it for trial along the lines
10  of all of the other bucket 1 cases.
11        So I think the way I would -- I think we would
12  work them in is, we work them into your trial schedule
13  based on age and need, and the same factors we looked at
14  for all the other bucket 1 cases.
15        And if the question is, when can this Court set
16  it for trial, my answer is, again, to summarize it, we
17  have significant latitude depending on need.  We could
18  set it for trial pretty expeditiously.  And, you know,
19  it depends on the age of the case and how close it is to
20  five years and what the priority is going to be.
21        MR. SIMONS:  I think that answers my questions,
22  Your Honor.  Thank you.
23        THE COURT:  Okay.  Anything else from anyone?
24  What is the -- what is going on with the cases that were
25  remanded in San Francisco?  Are they pending in
26  San Francisco?
27        MR. SIMONS:  The stay -- the relief from the
28  stay limited the lifting of the stay to June 30th, so

28

Case: 23-40523   Doc# 2094-4   Filed: 06/25/25   Entered: 06/25/25 15:09:50   Page 29
of 31

1  nothing has happened yet because the stay is still in
2  effect until June 30th.
3       THE COURT:  I see.  Okay.  We will deal with it
4  when it happens.
5       MR. SIMONS:  That case -- there is actually two
6  plaintiffs, two cases.  That case was remanded already.
7  A remand order was signed and filed, remanding it back
8  to San Francisco Superior Court where prior to the
9  filing of the bankruptcy was assigned to Judge Derrick
10  Wong for trial.  So I'm not sure whether -- in the
11  Court's view whether that means that is where the case
12  would still be, or whether the Court would have a
13  different view.
14       THE COURT:  Okay.  If it gets coordinated here,
15  it gets -- if it gets added on, it gets added on.  If it
16  doesn't, you know, well, it doesn't.  Okay?
17       Okay.  So I guess I'll see everybody on
18  June 25th at this point, and we will go from there.  All
19  right.  Thank you, counsel.
20       MR. SIMONS:  Thank you, Your Honor.
21       MR. ZAMORA:  Thank you, Judge.
22       MS. DEYOUNG:  Thank you, Your Honor.
23       (Whereupon, the proceedings concluded at 3:18 p.m.)
24
25
26
27
28

29

```
1   STATE OF CALIFORNIA            )
2                                  )
3   COUNTY OF ALAMEDA              )
4
5         I, CHRISTY CURRY, do hereby certify:
6
7         That the foregoing proceedings were held in the
8   above-entitled action at the time and place therein
9   specified;
10        That said proceedings were taken before me at
11  said time and place, and were taken down in shorthand by
12  me, a Certified Shorthand Reporter of the State of
13  California, and were thereafter transcribed into
14  typewriting, and that the foregoing transcript
15  constitutes a full, true, and correct report of said
16  proceedings that took place;
17
18        IN WITNESS WHEREOF, I have hereunder subscribed
19  my hand this 3rd day of June, 2025.
20
21
22
23
24
25
26        _____
            CHRISTY CURRY, CSR No. 13982
27          State of California
28
```

30