**Exhibit 3**

**Declaration of Dr. Kurt Martens, J.C.D.**

**FOLEY & LARDNER LLP**
Eileen R. Ridley (CA Bar No. 151735)
Tel: (415) 438-6469; eridley@foley.com
Shane J. Moses (CA Bar No. 250533)
Tel: (415) 438-6404; smoses@foley.com
Ann Marie Uetz (admitted *pro hac vice*)
Tel: (313) 234-7114; auetz@foley.com
Matthew D. Lee (admitted *pro hac vice*)
Tel: (608) 258-4203; mdlee@foley.com
Geoffrey S. Goodman (admitted *pro hac vice*)
Tel: (312) 832-4515; ggoodman@foley.com
David B. Goroff (admitted *pro hac vice*)
Tel: (312) 832-5160; dgoroff@foley.com
Mark C. Moore (admitted *pro hac vice*)
Tel: (214) 999-4150; mmoore@foley.com
555 California Street, Suite 1700
San Francisco, CA 94104-1520

*Counsel for the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

In re:

THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,

Debtor.

Case No. 23-40523 WJL

Chapter 11

**DECLARATION OF DR. KURT MARTENS, J.C.D. IN SUPPORT OF CONFIRMATION OF DEBTOR'S MODIFIED FOURTH AMENDED PLAN OF REORGANIZATION**

Judge: Hon. William J. Lafferty

Date: TBD
Time: TBD
Place: United States Bankruptcy Court
1300 Clay Street, Courtroom 220
Oakland, CA 94612



Case: 23-40523 Doc# 3103-3 Filed: 06/05/26 Entered: 06/05/26 18:22:35 Page 2 of 10

I, Dr. Kurt Martens, J.C.D., hereby declare as follows:

## I. **Background and Qualifications**

1. I was retained by the Roman Catholic Bishop of Oakland ("RCBO" or "Debtor"), to provide an expert report and testimony on matters related to the following subjects:

(a) Canon Law regarding liquidation of church assets and use of proceeds;

(b) The nature of juridic persons under Canon Law;

(c) Canon Law applicable to the relationship of the Debtor and the Bishop to non-debtor entities and juridic persons within the Diocese of Oakland;

(d) Canon Law requirements for maintenance and use of restricted assets; and

(e) Clustering and merger of Parishes within a Roman Catholic Diocese.

2. I have personal knowledge of the facts stated herein and am competent to testify to them. If called as a witness, I could and would testify to the following based on my personal knowledge, research, and expertise. I submit this declaration in support of confirmation of *Debtor's Modified Fourth Amended Plan of Reorganization* (the "Plan").

3. I hold a Bachelor's degree in law and a masters degree in law, both from the Katholieke Universiteit Leuven (Catholic University of Leuven) in Belgium. The Licentiate in law is a five-year program that grants access to the legal profession in the European Union.

4. I earned my Doctorate in Canon Law (J.C.D.) from the Katholieke Universiteit Leuven. My doctoral dissertation concerned administrative law in the Church and the protection of rights within the Church's administrative law system. A doctorate in canon law permits me to practice canon law worldwide, as canon law is a universal legal system of the Catholic Church.

5. I am fluent in my native language of Dutch, and also French, English, German, and Italian.

6. Since November 2008, I have served as a consultant to the United States Conference of Catholic Bishops Committee on Canonical Affairs. I am currently serving my fifth three-year term in this role. In this capacity, I provide opinions on canonical issues that arise within the bishops' conference.

7. I have offered expert opinions related to Canon Law in civil cases in the United States approximately 20 or more times. I have never been disqualified as an expert by a court, nor has any of my expert reports or testimony been excluded by a court.

## II. Expert Report

8. On July 1, 2025, I issued an expert report (the "Expert Report") in connection with confirmation of the Plan.

9. Canon Law is the body of law of the Catholic Church. The Catholic Church has the oldest continuous legal system in the Western world. From its inception, the Catholic Church adopted and thereafter developed norms and rules for governance.

10. Originally, canonical legislation was spread throughout various canonical collections. Pope Benedict XV promulgated the 1917 Code of Canon Law on May 27, 1917 (the "1917 Code"). The 1917 Code took effect on May 19, 1918, and remained in force until it was replaced with the 1983 Code of Canon Law (the "1983 Code"). The 1917 Code is also known as the Pio-Benedictine Code, because the work started under Pius X in 1904 and was finished and completed under Benedict XV. In addition to the two Codes, there is other canon law applicable to the whole Catholic Church.

## III. Church Organization

11. The Catholic Church is neither monolithic nor overly hierarchical. Each entity within the Catholic Church has its own responsibilities and powers, and a complex system of checks and balances is in place. The organization of the Catholic Church is not comparable to an ordinary enterprise, but is deeply rooted in theology, in particular in ecclesiology (the theology that pertains to the nature, structure and organization of the Church). In turn, this organizational structure, rooted in ecclesiology, is found in canon law.

12. By virtue of his office, the Pope possesses supreme, full, immediate, and universal ordinary power in the Catholic Church, which he is always able to exercise freely.

13. A "diocese" is a geographical area within the greater universe of the Catholic Church. Under canon law, a diocese is to be divided into distinct parts, called parishes. The bishop of a diocese is the authority within the diocese to erect parishes and to also suppress or notably alter parishes. While the

Pope has supreme power in erecting and changing dioceses, the diocesan bishop does not have that same supreme power: before erecting or changing parishes, the diocesan bishop is to consult with the presbyteral council (c. 515 §2 CIC/83). Should the bishop neglect to consult with the presbyteral council of his diocese, his action pertaining to that particular parish is invalid.

14. In canon law, a distinction is made between physical persons and juridic persons. In the Catholic Church, besides physical persons, there are also juridic persons, meaning, subjects in canon law of obligations and rights which correspond to their nature. The Catholic Church and the Apostolic See have the character of a moral person by divine ordinance, meaning they are juridic persons by divine ordinance and can never be suppressed. In canon law, a distinction is made between public and private juridic persons. Public juridic persons are constituted by competent ecclesiastical authority and fulfill in the name of the Church, according to the norm of canon law and within the purposes set out for them, the proper function entrusted to them in view of the public good. All other juridic persons in the Church are private.

15. A legitimately erected diocese and a legitimately erected parish are each public juridic persons under canon law. A public juridic person is represented by those whose competence is acknowledged by canon law and these persons can act in the name of the public juridic person. The diocesan bishop represents his diocese in all its juridic affairs, while the pastor represents the parish according to the norm of law in all juridic affairs.

16. Since the parish is a juridic person, the parish is perpetual by its nature. Therefore, the merger, division and especially suppression of a parish are such extraordinary events that a just cause is required, even if the canon does not state this requirement explicitly.

17. Once a church building has been relegated to profane but not sordid use, it still is the property of the juridic person that owned it – meaning, the original parish or the merged parish – until the building is sold. Should a parish church be relegated to profane but not sordid use and subsequently alienated, canon law is to be followed with regard to this alienation. The proceeds of the sale of patrimony – meaning, a relegated church or any other property – go to the juridic person who owned the patrimony.

Thus, if a relegated church owned by a parish is sold, under canon law the proceeds from that sale belong to the parish.

18. "Ecclesiastical goods" are all temporal goods belonging to the universal Church, the Apostolic See, or other public juridic persons. Ecclesiastical goods are subject to the norms of Book V of the 1983 Code of Canon Law. Property including church buildings legitimately acquired by the parish – again, a public juridic person – is owned by the parish under canon law, not the diocesan entity.

19. The diocese is a separate public juridic person from the parish under canon law.

20. Canon 1292 governs the valid alienation of property. For parish property to be alienated, permissions by competent ecclesiastical authority will be required. When the value of the goods whose alienation is proposed falls within the minimum and maximum amounts determined by the conference of bishops, the competent ecclesiastical authority is the diocesan bishop with the consent of the diocesan finance council, the college of consultors and those concerned. If the value exceeds the maximum amount, the permission of the Holy See – more precisely, the Dicastery for the Clergy – is also required for valid alienation. The United States Conference of Catholic Bishops (USCCB) has determined that the maximum limit is $3,500,000 and the minimum limit is $25,000 or 10% of the prior year's ordinary annual income, whichever is higher.

21. Churches become sacred places through the solemn rite of dedication with chrism or the less solemn rite of blessing: in both cases, these churches are permanently withdrawn from secular use. Under canon law, a church located in a parish belongs to the juridic person of the parish, even though under civil law it may be titled in the name of a different entity (e.g. the Debtor).

22. The new Book VI of the 1983 Code of Canon Law, promulgated by Pope Francis on May 23, 2021 and in effect since December 8, 2021, foresees stricter and more serious penalties for those "who, without the prescribed consultation, consent, or permission, or without some other requirement of law imposed for validity or for liceity, alienates ecclesiastical goods or performs acts of administration concerning them." The sanctions for ignoring said canonical requirements range from an order to reside in a territory and/or pay a fine, over a prohibition to even a privation of all or some offices, tasks,

ministries, or functions. Thus, a bishop could be removed from office as a penalty for not observing the norms on alienation and administration of ecclesiastical goods.

23. Individuals cannot own the ecclesiastical goods of a diocese or the parishes. In other words, Bishop Barber is the shepherd of his flock in the Diocese of Oakland, but he is not the owner of any ecclesiastical goods of the diocese or any individual parish and he has no personal interest in it. In a sense, he holds it in trust and needs to safeguard it. To be clear, I do not mean this in the civil law sense of holding something in trust. As bishop, canon law charges Bishop Barber with ensuring and enforcing the proper use and, where appropriate, sale of ecclesiastical goods within the diocese. In that sense, he is the caretaker of all such goods, but they do not belong to him individually.

24. From a canonical perspective, cash held by a particular parish is property of that parish – the canonical juridic person to which the funds belong. As to the parochial funds, they belong to the individual parish. This is true even though under civil law the parish may be one and the same with the diocesan entity.

25. Parochial assets have to be administered according to the requirements of book V of the Code of Canon Law. The diocese and the diocesan bishop cannot seize these parochial assets to satisfy the obligations of the diocese in a civil bankruptcy process: as explained above, the bishop would violate canon law and exposes himself to canonical sanctions, including privation from office, should he not follow canon law. To avoid sanction, he must seek and obtain the requisite authority from the Catholic Church (e.g. the Holy See) before alienating the ecclesiastical goods of a separate juridic person such as a parish.

## IV. <u>Donor Intent and Contracts</u>

26. According to canon 1300, "the legitimately accepted wills of the faithful who give or leave their resources for pious causes, whether through an act *inter vivos* or through an act mortis cause, are to be fulfilled most diligently even regarding the manner of administration and distribution of goods."

27. Failure to observe donor intent is a grave wrong under canon law because it violates binding agreements and harms the good of the Church. In as far as the diocese is concerned, the diocesan bishop together with his vicar general and episcopal vicars have the fundamental responsibility to assure fulfillment of donor intent.

28. As a consequence, bequest or trust gifts where the trust instrument or the will requires use for a particular purpose, gifts accompanied by a written instruction (letter, email, check memo, etc.) designating the gift for a particular purpose, or gifts in response to a fundraising appeal for a particular purpose (e.g. second collection, capital campaign, the annual Bishop's appeal) are all examples of donor intent. While these may originate in civil law, canon law also requires them to be respected and enforced.

29. Administrators of ecclesiastical goods must take care that the ownership of ecclesiastical goods is protected by civilly valid methods. Canon 1284 §2, 2° obliges administrators of ecclesiastical goods to "take care that the ownership of ecclesiastical goods is protected by civilly valid methods." The diocesan bishop does not own the ecclesiastical goods: he is to protect and safeguard them as a good administrator.

30. Civil corporations such as the Debtor are created with the intention they will hold ecclesiastical goods in trust consistent with canon law requirements. The California Corporations Code Sec. 9142(c), subsection (c)(2) provides that assets can be held in trust under California law if the "articles or bylaws of the corporation, or the governing instruments of a superior religious body or general church of which the corporation is a member, so expressly provide." Canon law is the "governing [instrument] of a superior religious body or general church."

31. What civil law has established in a given territory for contracts is to be observed with the same effects in canon law, on condition that the provisions of civil law are not contrary to divine law or canon law (c. 1290 CIC/83). The literature calls this the canonization of civil law: by giving civil law the same effects in canon law, this part of civil law now becomes also canon law. The provision of canon 1290 intends to make sure that contracts entered into by ecclesiastical administrators are valid and binding. Gift transfers are a specific form of contract and the norm of canon 1290 would also apply to them.

32. The obligation to follow civil law when it comes to contracts also means that the civil law provisions are to be followed for any of the corporate structures set up at the diocesan and parish levels. In as far as these do not contradict divine law or canon law, the bishop must respect the civil law formalities and requirements when it comes to decision making in these corporate entities. The bishop will have to act in the best interest of the entity for which he is making a decision, and the fiduciary duties of board

members under civil law are to be respected. At the same time, the Bylaws of such civil entities usually incorporate reserved powers for the bishop to make sure these civil entities remain faithfully Catholic and do not become rogue entities.

## V. Canonical Permission for Bankruptcy

33. In March of 2023, Bishop Barber petitioned the Holy See for permission to enter bankruptcy proceedings. The petition was made in accordance with canon 1295: any transaction which can worsen the patrimonial condition of a juridic person is also subject to the requirements of canons 1291-1294. Bishop Barber petitioned the Holy See for permission for the Diocese of Oakland to enter bankruptcy proceedings, thus for the public juridic person of the Diocese of Oakland to enter the civil bankruptcy proceedings. The Dicastery for the Clergy gave the Diocese of Oakland the *nihil obstat* to enter these bankruptcy proceedings in early April of 2023.

## VI. Conclusion

34. Based on my expertise in canon law and my review of the relevant documents, it is my opinion that under canon law:

(a) parishes are separate public juridic persons under canon law, distinct from the diocese;

(b) parish property belongs to the parish, not the diocese;

(c) proceeds from the sale of parish property belong to the parish;

(d) the diocese cannot seize parochial assets to satisfy diocesan obligations without violating canon law;

(e) donor restrictions must be honored under canon law; and

(f) the bishop acts as an administrator and trustee of ecclesiastical goods, not as an owner.

[*signature block on the next page*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on June 5, 2026, at Silver Spring, MD.

*/s/*

Kurt Martens, JCD