## Exhibit 6

## Declaration of Ron Gies

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br>Debtor. | Case No. 23-40523 WJL<br><br>Chapter 11<br><br>**DECLARATION OF RONALD GIES IN SUPPORT OF CONFIRMATION OF DEBTOR'S MODIFIED FOURTH AMENDED PLAN OF REORGANIZATION**<br><br>Judge: Hon. William J. Lafferty<br><br>Date: June 15, 2026<br>Time: 9:00 a.m.<br>Place: United States Bankruptcy Court<br>1300 Clay Street, Courtroom 220<br>Oakland, CA 94612 |

I, Ronald Gies, hereby declare as follows:

1. I am the Chief Financial Officer of the Roman Catholic Cemeteries of the Diocese of Oakland ("RCC"). I am authorized to submit this declaration on behalf of RCC in support of confirmation of the Debtor's Fourth Amended Plan (the "Plan"). Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan. I have read the Plan and understand its terms.

2. Except as otherwise indicated, I have personal knowledge of the matters set forth in this declaration, or knowledge based on my review of RCC's books and records and on information provided to me by RCC's officers, directors, and professionals in the ordinary course. If called as a witness, I could and would testify competently to the matters stated herein.

3. RCC is a non-debtor entity affiliated with the Roman Catholic Bishop of Oakland, the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"). I submit this declaration to describe RCC's role as Exit Facility Lender under the Plan, RCC's Board of Directors' review and approval of the exit facility and the proposed collateral package, the arm's-length nature of the negotiations over the exit facility, and RCC's ability and readiness to fund its obligations under the Plan.

**RCC's Independence and Governance**

4. RCC is a non-profit religious corporation organized under the laws of the State of California. It operates and administers six diocesan cemeteries, five diocesan mortuaries, two mausoleums, and one crematory on land owned by the Debtor. While RCC and the Debtor share a common Catholic charitable mission and operate within the Diocese of Oakland's family of Catholic entities, they are legally distinct corporations with separate governance structures. As correctly defined in the Plan, RCC is "a non-profit religious corporation, separate and distinct from RCBO." *See* Plan § 1.1.132. RCC is not owned or controlled by the Debtor, and the Debtor does not direct or govern RCC's day-to-day operations, finances, or management decisions.

5. RCC is governed by its own Board of Directors, which exercises independent fiduciary oversight over RCC's management, finances, and operations. RCC's Board of Directors acts independently of the Debtor's leadership and the Roman Catholic Bishop of Oakland. RCC

maintains its own officers and administrative staff, and its operations are not subject to direction or control by the Debtor on a day-to-day basis. RCC maintains its own bank accounts, its own financial controls, and its own books and records separate from those of the Debtor.

6. RCC's agreement to provide the Exit Facility reflects a voluntary decision by RCC's Board. It's decision is an exercise of the Board's sound business judgment and in furtherance of RCC's own charitable mission.

**The RCC Pre-Petition Secured Claim**

7. RCC is the Debtor's pre-petition secured lender, pursuant to the RCC Prepetition Loan Documents, and RCC's duly filed proof of claim in this bankruptcy case. In exchange for its Allowed Secured Claim (Class 1), RCC will receive payment under the Plan pursuant to the terms of the RCC Prepetition Loan Documents, provided that: (a) the Debtor shall not be required to pay default interest, late payment fees, or equivalent penalties on account of non-payment of principal due on or before the Effective Date; and (b) any unpaid principal amounts that were due prior to the Effective Date shall be amortized over the remaining term of the loan under the RCC Prepetition Loan Documents. *See* Plan § 4.1.2. These amounts were meaningful economic concessions; the aggregate amount of default interest, late payment fees, and equivalent penalties exceed approximately $2,534,000. The aggregate amount of unpaid principal coming due prior to the Effective Date and that will be amortized over the remaining term of the loan is not less than approximately $1,757,000.

**RCC's Exit Financing in Support of the Plan**

8. Under the Plan, RCC, as Exit Facility Lender, will provide the Reorganized Debtor with a $55,000,000 exit facility (the "Exit Facility") on the Effective Date. *See* Plan § 11.1. The Exit Facility consists of (a) up to $15,000,000 to refinance the then-outstanding balance of the DIP Obligations, and (b) new lending for the remaining balance, which will be new money made available to the Reorganized Debtor on the Effective Date.

9. The proceeds of the Exit Facility will be used to (a) refinance the outstanding DIP Obligations, (b) fund the Initial Debtor Contribution of $40,000,000 to the Survivors' Trust, and (c) fund the operations of the Reorganized Debtor. *See* Plan § 11.1.

10. On the Effective Date, the Exit Facility shall constitute legal, valid, binding, and authorized indebtedness and obligations of the Reorganized Debtor. All liens and security interests granted in accordance with the Exit Facility Documents shall be legal, valid, and binding upon the Reorganized Debtor, automatically perfected without further filing or recordation, and shall not be subject to discharge, avoidance, recharacterization, or subordination. *See* Plan § 11.2.

11. The execution of documents and entry into all agreements necessary in connection with the Exit Facility described in Article XI of the Plan is a non-waivable condition precedent to the effectiveness of the Plan. *See* Plan §§ 10.2.3, 10.2.10. The execution and agreement of the documents governing the Exit Facility, on terms satisfactory to RCC, is a condition precedent to the effectiveness of the Plan. *See* Plan § 10.2.3.

12. RCC has provided the Exit Facility voluntarily, and the terms were negotiated at arm's length and in good faith. RCC is among the parties for whom the Confirmation Order will include a finding of fact that it acted in good faith. *See* Plan § 10.1.6. RCC is also an Exculpated Party entitled to the benefit of the Plan's Exculpation Clause. *See* Plan § 13.6. As an Exculpated Party under the Plan, the protections afforded to RCC apply to acts or omissions in connection with the Chapter 11 case and the Plan, and are not a release by third parties of any separate, pre-petition claims they may hold against RCC.

**The Collateral Package**

13. RCC's Exit Facility will be secured by the collateral described in the Exit Facility Documents (the "Collateral Package") and as set forth in the Amended List of Real Property filed as Exhibit G to the Amendment to Plan Supplement [Docket No. 3037] (the "Plan Supplement"). The Collateral Package includes, without limitation, a first priority security interest in the real properties identified as "RCC Collateral" on Exhibit G to the Plan Supplement, which consist of: (a) cemetery properties including Holy Cross Cemetery (Antioch), St. Mary Cemetery (Oakland), St. Michael Cemetery (Livermore), Holy Sepulchre Funeral Center (Hayward), and Lafayette Retreat Center; (b) whole parish sites including St. Patrick, St. Augustine, Our Lady of Lourdes, St. Paschal, St. Barnabas, St. Albert, Sacred Heart, St. Andrew Korean Pastoral Center, St. Rose, Mary Help of Christians, St. Stephen, Transfiguration, and Our Lady of Guadalupe; (c) the Coopers


Case: 23-40523 Doc# 3103-6 Filed: 06/05/26 Entered: 06/05/26 18:22:35 Page 5 of 8

Mortuary property (Furrer); and (d) certain vacant portions of parish properties and parish houses as further detailed on Exhibit G. .

**Arm's-Length Negotiations and Commercial Terms**

14. The terms of the Exit Facility under the Plan were the product of extensive, good-faith negotiations conducted at arm's length between RCC and the Debtor. At all times during those negotiations, RCC was represented by independent legal counsel. RCC's counsel and the Debtor's counsel engaged in multiple rounds of negotiation over an extended period to reach agreement on the structure, amount, use of proceeds, security, and other material terms of the Exit Facility.

15. The Exit Facility reflects commercially reasonable terms for an exit lending transaction that RCC's Board of Directors, with the benefit of independent legal advice, determined to be appropriate in light of RCC's interests and financial capabilities. The terms include standard protections that RCC bargained for as a secured lender, including: (a) a perfected senior security interest in the Collateral Package under the Exit Facility Documents; (b) the legal, valid, and binding nature of the indebtedness and security interests upon entry of the Confirmation Order under Plan § 11.2; and (c) RCC's right to receive payment in full of its Allowed Class 1 Secured Claim on market terms per the RCC Prepetition Loan Documents. Each of these protections were central to RCC's willingness to make this financing available to the Debtor. The Exit Facility terms were not pre-agreed, dictated by the Debtor, or otherwise established other than through genuine arms-length bargaining. The amount of the Exit Facility represents the maximum amount that the management and board of RCC determined to be appropriate based on RCC's interests and financial capabilities.

**Ability and Readiness to Fund**

16. RCC has the financial capacity and is fully committed to providing the Exit Facility in accordance with the terms of the Plan. Based on my review of RCC's current finances, RCC has sufficient liquid assets to fund the Exit Facility in full on the Effective Date. RCC currently serves as the Debtor's DIP lender and has demonstrated an ongoing commitment to supporting the Debtor's reorganization. RCC is ready to execute the Exit Facility Documents and to fund the Exit

Facility on the Effective Date. As of the date of this Declaration, RCC is not aware of any material adverse change in its financial condition, business operations, or prospects that has occurred or is anticipated and that would impair RCC's ability to provide the Exit Facility as required by the Plan.

17. Other than the occurrence of the Effective Date and satisfaction of the conditions precedent set forth in the Plan, including the execution of the Exit Facility Documents on terms satisfactory to RCC as required by Plan § 10.2.3, there are no conditions remaining that would prevent RCC from providing the Exit Facility. RCC has no pending internal approvals, no outstanding regulatory or governmental conditions, and is not aware of any material adverse change that has occurred or is anticipated that would impair RCC's ability to execute the Exit Facility Documents or to fund the Exit Facility as required by the Plan.

18. The Exit Facility will enable the Reorganized Debtor to refinance the outstanding DIP Obligations, fund the $40,000,000 Initial Debtor Contribution to the Survivors' Trust, and fund post-confirmation operations. Without the Exit Facility, the Plan could not be implemented on its current terms.

**Board Approval**

19. The Board of Directors of RCC has reviewed and approved (a) RCC's provision of the Exit Facility on the terms set forth in the Plan and summarized above, and (b) the proposed Collateral Package securing the Exit Facility.

20. For the foregoing reasons, RCC supports the Debtor's Fourth Amended Plan and respectfully requests that the Court confirm the Plan.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on June 5, 2026.

Ronald Gies



Case: 23-40523 Doc# 3103-6 Filed: 06/05/26 Entered: 06/05/26 18:22:35 Page 7 of 8

# RCBO - Decl (RCC) ISO Modified Fourth Amended Plan (6.5.26)

Final Audit Report 2026-06-05

| | |
|---|---|
| Created: | 2026-06-05 |
| By: | Kim Adams (kim.adams@nortonrosefulbright.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA6Wf8oftUf11I77cw1Ky9TqHzJ9PBPTMf |

## "RCBO - Decl (RCC) ISO Modified Fourth Amended Plan (6.5.26)" History

Document created by Kim Adams (kim.adams@nortonrosefulbright.com)
2026-06-05 - 11:51:12 PM GMT

Document emailed to Ron Gies (rgies@cfcsmission.org) for signature
2026-06-05 - 11:52:13 PM GMT

Email viewed by Ron Gies (rgies@cfcsmission.org)
2026-06-05 - 11:52:34 PM GMT

Document e-signed by Ron Gies (rgies@cfcsmission.org)
Signature Date: 2026-06-05 - 11:53:18 PM GMT - Time Source: server - Signature Appearance Selected: IMAGE

Agreement completed.
2026-06-05 - 11:53:18 PM GMT