**O'MELVENY & MYERS LLP**
ALEXANDRA J. WOLTER (CA Bar # 317951)
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: awolter@omm.com

TANCRED V. SCHIAVONI (NY Bar # 2261097)
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Facsimile: (212) 408-2419
Email: tschiavoni@omm.com

HANNAH V.L. GEORGE (admitted *pro hac vice)*
1625 Eye St. NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: hgeorge@omm.com

*Attorneys for Pacific Indemnity Company, Insurance Company of North America, Pacific Employers Insurance Company, and Westchester Fire Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br>Debtor. | Case No.: 23-40523 WJL<br><br>Chapter 11<br><br>**PACIFIC INSURERS' OBJECTION TO AND REQUEST FOR HEARING ON DEBTOR'S APPLICATION FOR ORDER APPOINTING HON. DANIEL BUCKLEY (RET.) AS MEDIATOR** |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1
ARGUMENT .......... 3
A. The Relief Sought Will Not Produce a Consensual Plan .......... 3
B. Judge Buckley Cannot Serve as Both Plan Fiduciary and Committee Mediator .......... 5
C. Adding Another Mediator Will Lead to Confusion, Delay and Duplicative Costs .......... 6
CONCLUSION .......... 8



Case: 23-40523 Doc# 3623 Filed: 11/13/26 Entered: 11/13/26 06:42:37 Page 2 of 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Herlihy v. DBMP, LLC*,
167 F.4th 142 (4th Cir 2026)........................................ 6

*In re Atkins*,
69 F.3d 970 (9th Cir. 1995)........................................ 3, 7

*In re Boy Scouts of Am. & Del. BSA, LLC*,
No. 20-10343 (LSS) (Bankr. D. Del. Dec. 7, 2021) ........................................ 2, 5

*In re Congoleum Corp.*,
414 B.R. 44 (D.N.J. 2009) ........................................ 4

*In re Hunanyan*,
631 B.R. 904 (Bankr. C.D. Cal. 2021)........................................ 7


**Rules**


B.L.R. 9014-1(b)(3)(A)........................................ 8

B.L.R. 9014-1(b)(3)(B) ........................................ 8


**Statutes**


28 U.S.C. § 455 ........................................ 2, 5, 6





Case: 23-40523 Doc# 3623 Filed: 11/13/26 Entered: 11/13/26 06:42:37 Page 3 of 12

Pacific Indemnity Company, Century Indemnity Company (as successor to CCI Insurance Company, as successor to Insurance Company of North America), Pacific Employers Insurance Company, and Westchester Fire Insurance Company, parties in interest in the above-captioned chapter 11 bankruptcy case (collectively, the "Pacific Insurers") respectfully submit this objection to the Debtor's *Application for Order Appointing Hon. Daniel Buckley (Ret.) as Mediator*, ECF No. 3615 (Nov. 6, 2026) (the "Application").

## PRELIMINARY STATEMENT

The Debtor asks the Court to appoint a new mediator, former Judge Daniel Buckley (Ret.), without a hearing, effective retroactively to October 12, 2026, and without the input of the Insurers. Application at 1, 2, 7. The Official Committee of Unsecured Creditors (the "Committee") selected former Judge Buckley. Application at 4. The Debtor proposes to seat him not as a neutral but as a "Committee Mediator," Application at 6, which places him on the track the Mediation Order reserves to the Debtor and Committee alone. *Order Referring Parties to Mediation, Appointing Mediators, and Granting Related Relief* ("Mediation Order"), ECF No. 810 at ¶¶ 2, 6.

That track covers the subjects that matter most in a settlement: assessment of the abuse claims, the Debtor's liability for them, the process for their allowance and distribution and formulation of a plan. *Id.* at ¶ 6. A settlement struck there, without the Insurers, would effectively decide the claim-assessment and coverage issues the Mediation Order sends to the three-party track. *Id.* ¶ 7. The Insurers' objection is not a criticism of former Judge Buckley. The concern is one of circumstance and appearance: he was the Committee's choice as Abuse Claims Reviewer under the Debtor's plan and agreed to serve. Application at 5; *Decl. of Daniel J. Buckley in Support of Debtor's Application for Order Appointing Hon. Daniel Buckley (Ret.) as Mediator* ("Buckley Decl."), ECF No. 3616 at ¶ 8. He also concurrently serves as the claimants' fiduciary for the Archdiocese of Los Angeles Trust where various claimants assert the same claims against the Debtor. Through no fault of his own, those roles create an appearance of partiality that would become a source of dispute and delay.

The Application should be denied for the following reasons:

***First,*** the relief sought will not produce a consensual plan. Seating the Committee's chosen mediator on a two-party track would exclude the Insurers and shield the Committee's and Debtor's discussions of plan terms that affect the Insurers. This would leave the Committee to mediate against itself on the handling of the claims, the Debtor's liability for them, and their treatment. Because the Debtor has represented that it has offered all of the money it can, the risk is that discussions designed to exclude the Insurers will devolve into the Debtor giving in to demands to prejudice the insurer contracts. A two-party settlement fixing claims or the Debtor's liability would effectively decide the indemnity, defense, and coverage issues that the Mediation Order refers to the three-party track, and would invite misuse of mediation confidentiality. *See* Mediation Order ¶¶ 6, 7(ii).

***Second***, the same person should not be asked to serve as both plan fiduciary and Committee Mediator. Committee counsel asked the Debtor to appoint former Judge Buckley as Abuse Claims Reviewer under the Fourth Amended Plan, and he agreed to serve. That is no reflection on him, but a person the Committee chose to value abuse claims under the Debtor's plan should not now mediate the treatment of those same claims. The Debtor's statement that it will not name him under a future plan binds only the Debtor, not the Committee, and does not address the substantive concern. Former Judge Buckley's concurrent service as Claims Administrator of the Archdiocese of Los Angeles Settlement Program, whose various claimants appear to assert the same claims against the Debtor, compounds the appearance issue. How many of those claimants overlap has not been disclosed. Under 28 U.S.C. § 455(a), the question is not actual bias, but whether impartiality "might reasonably be questioned," and these overlapping roles invite that question and the delay that would follow.

When a sitting mediator in *Boy Scouts* was slotted into a comparable plan role, the court removed him from mediation on the spot. Second Order Supplementing Mediation Order ¶ 1, *In re Boy Scouts of Am. & Del. BSA, LLC*, No. 20-10343 (LSS) (Bankr. D. Del. Dec. 7, 2021), ECF No. 7589; *see* Decl. of Hannah George in Support of Pacific Insurers' Objection to and Request for Hearing on Debtor's Application for Order Appointing Hon. Daniel Buckley (Ret.) as Mediator



Case: 23-40523 Doc# 3623 Filed: 11/13/26 Entered: 11/13/26 06:42:37 Page 5 of 12

("George Decl."), Ex. A at 12–14. And, as former Judge Buckley candidly acknowledges, his Bankruptcy Rule 2014(a) disclosures are not complete. Buckley Decl. ¶ 9.

***Third,*** adding yet another mediator at this late date will add confusion, delay, and duplicative costs. The Mediation Order already appoints former Judge Sontchi, former Judge Newsome, and Mr. Gallagher, each of whom remains available; the Debtor identifies no deficiency in their work. Mediation Order ¶ 2; Application at 3. The Mediation Order does not contemplate additional mediators, so the Application seeks a modification of that order, not an appointment under it. Mediation Order ¶¶ 2, 24. Meanwhile, the Debtor—which has repeatedly told this Court that professional fees have exhausted its funds—would pay former Judge Buckley $2,000 an hour, with fees shared among other members of his firm, Signature Resolution, LLC. Application at 6; Buckley Decl. ¶ 14.

Finally, with the guidance provided by the Court, this case should be close to resolution. In its Memorandum Decision On Confirmation Of Debtor's Modified Fourth Amended Plan Of Reorganization, this Court gave the parties guidance on how a confirmable plan can be achieved. *See generally* ECF No. 3567. The risk of confusion, delay, and duplicative costs that flows from injecting a new mediator at this late stage of the case would be a step backwards. No reason has been offered to start the resolution process from scratch with a new mediator, when the Court has provided the tools necessary to implement its guidance with the three experienced mediators already in place. Adding a fourth mediator now would only muddy the waters and risk setting the parties back.

The Court has already charted the path forward. The parties should be permitted to follow it with the mediators already in place, and the Court should deny the Application.

## ARGUMENT

### A. The Relief Sought Will Not Produce a Consensual Plan

The Application would seat the Committee's selection as a "Committee Mediator" on a two-party track, Application at 6, excluding the Insurers and shielding communications between the Committee and Debtor about plan terms that affect the Insurers. Dividing the mediation in this





Case: 23-40523 Doc# 3623 Filed: 11/13/26 Entered: 11/13/26 06:42:37 Page 6 of 12

way will leave the Committee mediating against itself with regard to the claims, the Debtor's liability for claims, treatment of the claims, and the other terms of the plan that impact the Insurers. Because the Debtor has represented that it has offered all of the money it can, the evident risk is that future discussions designed to exclude the Insurers will devolve into the Committee pressuring the Debtor to shift the financial burden onto its Insurers in disregard of the terms of the insurance contracts. This structure will not produce a consensual plan, and it would move the parties away from the path to a confirmable plan that the Court's confirmation decision has laid out.

The Insurers have a direct interest in the formation and terms of a confirmable plan. *Pacific's Objection to Joint Motion for Entry of Order Referring Parties to Mediation and Granting Related Relief* ("Mediation Order Objection"), ECF No. 748 at 4. The Insurers have a contractual right to participate in and be informed about discussions concerning any liability for which a policyholder may seek coverage.[1] *Id.* The Debtor's insurance contracts obligate it to cooperate with the Insurers in the investigation, defense, and settlement of claims.

Appointing a Committee Mediator in a way that excludes the Insurers from the formation of a plan, and places all communications between the Debtor and the Committee beyond their view, risks misuse of mediation confidentiality. While Paragraph 6 of the Mediation Order includes the "[a]ssessment of sexual abuse claims and the Debtor's potential legal liability for the sexual abuse claims" as a matter referred to mediation for the Debtor and the Committee, Paragraph 7 includes "[a]ssessment of sexual abuse claims" as a matter referred to mediation for the Debtor, the Committee, and the Insurers. A settlement that fixes claims or the Debtor's liability on the two-party track would effectively decide the indemnity, defense, and coverage issues that Paragraph 7(ii) refers to the three-party track. *Id.* at ¶ 7(ii). Without the Insurers at the table, plan terms that

[1] *See In re Congoleum Corp.,* 414 B.R. 44, 49 (D.N.J. 2009) (summarizing the state court coverage judge's opinion, finding "bad faith" execution of an agreement between the debtor and certain claimants, because that agreement "was the product of negotiations by conflicted counsel" who "create[d] a framework that would provide [debtor] with both the insurance money and also protect against the asbestos liability, while having the insurance companies . . . bear the costs.").


Case: 23-40523 Doc# 3623 Filed: 11/13/26 Entered: 11/13/26 06:42:37 Page 7 of 12

impact the Insurers cannot be assessed without prejudice to them. The Insurers are entitled not only to a seat at the table, but also to a say in who conducts the mediation.

### B. <u>The Same Person Should Not Serve as Both Plan Fiduciary and Committee Mediator</u>

Former Judge Buckley was the Committee's chosen Abuse Claims Reviewer under the Fourth Amended Plan. On April 25, 2026, Committee counsel requested that the Debtor appoint former Judge Buckley for the role of Abuse Claims Reviewer. *See* Certain Insurers' Dep. Designation of Attila Bardos, Ex. A (Dep. of Attila Joseph Bardos (May 6, 2026)) ("Bardos Dep.") at 79–80, ECF No. 3201, at 89–90.[2] Former Judge Buckley agreed to serve. Buckley Decl. ¶ 8. The Application's account that the Debtor "proposed" him and the Committee merely "would not object," Application at 5, is not consistent with the Debtor's documents and confirmation testimony.

The court in *Boy Scouts* confronted this conflict and resolved it immediately. There, the plan supplement named former Judge Kevin Carey, a sitting mediator, as the claims reviewer under the plan's trust. George Decl. Ex. A at 12–13. The court called the selection "a nonstarter," explained that "Mr. Carey now has a stake in the outcome of the mediation," and, applying the 28 U.S.C. § 455 standard that governs mediators, found "reason to question his impartiality." *Id.* The court removed him as mediator, "effective immediately," even though it was told progress was being made and a settlement agreement had nearly been reached. *Id.* at 13–14.

The same principle applies here, with the sequence reversed. A person whom the Committee chose to value abuse claims under the Debtor's plan should not now mediate the treatment of those same claims. The Debtor's suggestion that it will not name him Abuse Claims

---

[2] The same day, Debtor's counsel wrote to former Judge Buckley's office that the Committee "has requested we contact Judge Buckley in connection with a potential role as Abuse Claims Reviewer" and that "[w]e understand that their preference is that Judge Buckley be considered in that capacity." *Id.* at 88, ECF No. 3201, at 98. The Debtor's plan supplement stated that the Debtor "anticipates selecting a qualified candidate from among those proposed," *id.* at 76–77, ECF No. 3201 at 86–87, and the Debtor's Rule 30(b)(6) designee testified that former Judge Buckley was "one [candidate] that we'd like to work with, that I think they recommended him anyway," *id.* at 77–78, ECF No. 3201 at 87–88.

Reviewer under a future plan binds only the Debtor; it does not erase the Committee's selection or bar the Committee from proposing him again. Application at 6. The concern is compounded because former Judge Buckley currently serves as the fiduciary of the Archdiocese of Los Angeles's trust, and a number of those claimants appear to have asserted the same claims against the Debtor.[3] Neither the Application nor the Buckley Declaration discloses how many claimants in the Archdiocese of Los Angeles trust also hold claims against the Debtor. That gap is understandable—former Judge Buckley may well not have been told which of those claimants have also filed claims here—but it leaves the Court and the parties unable to assess the extent of the overlap. The question under Section 455 is not whether former Judge Buckley would in fact be impartial, but whether impartiality "might reasonably be questioned"; these circumstances, through no fault of his own, invite that question and the disputes and delay that would follow.

**C. <u>Adding Another Mediator Will Lead to Confusion, Delay and Duplicative Costs</u>**

The problem in this case is not and never has been the number or availability of mediators.[4] The Mediation Order already appoints former Judge Sontchi, former Judge Newsome and Mr. Gallagher by name, Mediation Order at ¶ 2, and each remains appointed, available to the parties and up to speed on the case. *See* Application at 3. The Committee consented to the appointments of all three. The Debtor identifies no deficiency in their work and no matter they cannot handle.

Adding a fourth mediator at this late stage will lead to confusion, delay, and duplicative costs. As the Application acknowledges, former Judge Buckley was not discussed with the Insurers. Application at 2. Indeed, the Debtor has not met with the Insurers at all about its post-confirmation-hearing discussions with the Committee. Nor does the Mediation Order contemplate adding any more mediators. Mediation Order at ¶¶ 2, 24. Adding a fourth mediator is therefore a

---

[3] *See RCALA Settlement Program*, BrownGreer PLC, https://www.browngreer.com/case-studies/rcala-settlement-program/ (last visited Nov. 12, 2026).

[4] Claimant counsel who represent Committee members have little incentive to support a global resolution when they can press forward to verdict instead. *See Herlihy v. DBMP, LLC*, 167 F.4th 142, 150 (4th Cir 2026) (ruling that the bankruptcy court had not abused its discretion in denying several lift-stay motions due to its "experience with similar mass-tort bankruptcies," reasoning that allowing a select number of cases to proceed to trial would "effectively destroy the bankruptcy case") (quotations omitted).

modification of the Mediation Order, not an appointment "pursuant to the terms" of it. Application at 2.

The Debtor offers no explanation for why another mediator is necessary. There is no contention from any party that former Judge Sontchi, former Judge Newsome, or Mr. Gallagher is unavailable or insufficient. *See* Application at 3. Nor is any evidence offered to show that adding a fourth mediator will not lead to confusion, delay, and duplicative costs.

The Debtor has repeatedly told this Court that professional fees have exhausted its funds.[5] The proposed engagement would impose a substantial, unnecessary cost on the estate. Former Judge Buckley would bill $2,000 an hour, payable by the estate as a "Committee Mediator." Application at 6. He also discloses that he will share compensation with three other retired judges on his staff and a fourth "Signature member," Mr. Dario Higuchi. Buckley Decl. ¶ 14.[6] Taking the Debtor at its word, the Court should apply particular scrutiny in considering the Application when three court-appointed mediators are already in place.

Finally, retroactive employment of a mediator selected without the Insurers, on an application filed without their concurrence, should not be approved. *See In re Atkins,* 69 F.3d 970, 974 (9th Cir. 1995) (setting out the test for establishing the presence of exceptional circumstances allowing a court to retroactively approve a professional's unauthorized services as both "(1)

---

[5] In February 2026, the Debtor represented that fees had drained both the roughly $35 million set aside at the outset of the case and other unrestricted reserves, including $10 million once earmarked for the survivors' trust, which is "no longer possible because it's been used to pay professional fees." Hr'g Tr. 15:10–16:2 (Feb. 4, 2026). In August 2026, it told the Court that it "remains in a difficult cash position," that it "assess[es] [its] cash daily," and, most bluntly, that "[w]e're running . . . out of money. I, I don't know how else to say it." Hr'g Tr. 39:18–21, 46:16–19 (Aug. 19, 2026). At closing arguments a month later, the Debtor again stressed that its "cash position remains very tight," pointing the Court to "how much has been spent . . . to date on even just the briefs." Hr'g Tr. 26:16–22 (Sept. 16, 2026). It also represented that on the assumed effective date it would hold only $2.5 million in cash, $500,000 below its normal minimum, and that it "does not have any more cash to be paid out at the effective date." *Id.* at 51:22–52:56. The Debtor further conceded that its position "gets worse because of the continued burden of . . . professional fees," and that it "simply can't pay [more] without putting [itself] in additional financial peril." *Id.* at 52:11–53:9.

[6] Additionally, the ownership of the firm that shares his fees is a connection Bankruptcy Rule 2014(a) requires the applicant professional to disclose.

satisfactorily explain[ing] their failure to receive prior judicial approval; and (2) demonstrat[ing] that their services benefitted the bankrupt estate in a significant manner”)*; In re Hunanyan,* 631 B.R. 904, 909 (Bankr. C.D. Cal. 2021) (explaining that a court’s approval of employment is “necessary initially to be sure the professionals are truly necessary, disinterested, qualified and reasonably priced”); B.L.R. 9014-1(b)(3)(A)–(B).

## CONCLUSION

WHEREFORE, with the Court’s guidance in hand and resolution in sight, the Pacific Insurers respectfully request that the Court sustain this objection and decline to enter the Debtor’s proposed order or, alternatively, defer it until Judge Buckley files a supplemental, verified declaration addressing the gaps identified above. Pursuant to B.L.R. 9014-1(b)(3)(A), the Pacific Insurers request a hearing on the Application.



Case: 23-40523 Doc# 3623 Filed: 11/13/26 Entered: 11/13/26 06:42:37 Page 11 of 12

DATED: November13, 2026

By: /s/ *Tancred Schiavoni*____

Tancred V. Schiavoni (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas
New York, NY 10019
Tel: 212-326-2000
tschiavoni@omm.com

ALEXANDRA J. WOLTER (CA Bar # 317951)
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Tel: (213) 430-6000
awolter@omm.com

HANNAH V.L. GEORGE (admitted *pro hac vice*)
1625 Eye St. NW
Washington, DC 20006
Tel: (202) 383-5300
hgeorge@omm.com

*Counsel for Insurance Company of North America, Westchester Fire Insurance Company, Pacific Indemnity Company, and Pacific Employers Insurance Company*